IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROXIE SIBLEY, et al., | ) |
| | ) |
|                    Plaintiffs, | ) |
| v. | ) CIVIL ACTION |
| | ) No. 08-2063-KHV |
| SPRINT NEXTEL CORPORATION, et al., | ) |
| | ) |
|                    Defendants. | ) |
| _____ | ) |

**MEMORANDUM AND ORDER**

Roxie Sibley, Jeanne Noel, Ernesto Bennett, Jamie Williams, Greg St. Julien, Tracie Hernandez, John Jasinski, Jay Richie and Teisha King bring putative class action claims for unpaid commissions against Sprint Nextel Corporation and Sprint/United Management Company. Specifically, plaintiffs claim that defendants are liable for violation of the Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-313 et seq. (Count I), breach of contract (Count II), quantum meruit (Count III), promissory estoppel (Count IV) and unjust enrichment (Count V). This matter is before the Court on Defendants' Motion To Partially Dismiss Plaintiffs' Amended Complaint (Doc. #15) filed March 28, 2008. Defendants assert that plaintiffs cannot bring claims under the KWPA because they do not live or work in the State of Kansas. Defendants also assert that plaintiffs' breach of contract claims are subject to a one-year limitations period and that plaintiffs cannot prevail on certain state law claims. For reasons stated below, the Court sustains defendants' motion in part.

**I.   Legal Standards**

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well pleaded facts in the complaint and views them in a light most favorable to plaintiffs. See Zinermon v. Burch, 494 U.S. 113, 118 (1990); Swanson v.

Bixler, 750 F.2d 810, 813 (10th Cir. 1984). Rule 12(b)(6) does not require detailed factual allegations, but the complaint must set forth the grounds of plaintiffs' entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. See Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007). In other words, plaintiffs must allege facts sufficient to state a claim which is plausible – rather than merely conceivable – on its face. See id. Plaintiffs bear the burden to frame their complaint with enough factual matter (taken as true) to suggest that they are entitled to relief. Id. at 1965. The Court makes all reasonable inferences in favor of plaintiffs. See Zinermon, 494 U.S. at 118; see also Rule 8(a), Fed. R. Civ. P.; Lafoy v. HMO Colo., 988 F.2d 97, 98 (10th Cir. 1993). The Court, however, need not accept as true those allegations which state only legal conclusions. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). In reviewing the sufficiency of plaintiffs' complaint, the issue is not whether plaintiffs will prevail, but whether they are entitled to offer evidence to support their claims. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). Although plaintiffs need not precisely state each element of their claims, they must plead minimal factual allegations on those material elements which they must prove. See Hall, 935 F.2d at 1110.

**II. Facts**

For purposes of ruling on defendants' motion, the Court accepts as true the following facts:

Sprint Nextel Corporation is a Kansas corporation with its principal place of business in Reston, Virginia. First Amended Class Action Complaint (Doc. #8) filed February 26, 2008 ¶ 10. Sprint/United Management Company is a Kansas corporation with its principal place of business in Overland Park, Kansas. Id. ¶ 11. Together, the companies employ commission-paid employees,

including plaintiffs, at retail stores in many states across the country.  Id. ¶¶ 10-11.

Roxie Sibley resides in Gretna, Louisiana.  Id. ¶ 12.  Since October of 2004, Sibley has worked as retail consultant in defendants' retail stores in Metairie, Louisiana and, most recently, in Gretna, Louisiana.  Id.

Jeanne Noel resides in Terrytown, Louisiana.  Id. ¶ 13.  Since October of 2006, Noel has worked as retail consultant in defendants' retail stores in Harvey, Louisiana and, most recently, in Gretna, Louisiana.  Id.

Ernesto Bennett resides in Kenner, Louisiana.  Id. ¶ 14.  From September of 2001 to July of 2007, Bennett worked as retail consultant and lead retail consultant in defendants' retail store in Harvey, Louisiana.  Id.

Jamie Williams resides in Austin, Texas.  Id. ¶ 15.  From October of 2005 to July of 2007, Williams worked as retail consultant in defendants' retail store in Harvey, Louisiana.  Id.

Greg St. Julien resides in Gretna, Louisiana.  Id. ¶ 16.  Since January of 2007, St. Julien has worked as retail consultant in defendants' retail store in Gretna, Louisiana.  Id.

Tracie Hernandez resides in Marrero, Louisiana.  Id. ¶ 17.  Since May of 2005, Hernandez has worked as store manager in defendants' retail stores in Oceanside, California and, most recently, in Gretna and Algiers, Louisiana.  Id.

John Jasinski resides in Toledo, Ohio. Id. ¶ 18.  Since October of 2003, Jasinski has worked as retail consultant, lead communications consultant, assistant store manager and retail store manager in defendants' retail stores in Toledo, Ohio and, most recently, in Ann Arbor, Michigan.  Id.

Jay Richie resides in Surprise, Arizona.  Id. ¶ 19.  From August of 2005 until February 7,

2008, Richie worked as district manager for defendants.  Id.  As district manager, Richie was responsible for selling defendants' products and services and managing employees at 12 retail stores in the Phoenix, Arizona area.  Id.

Teisha King resides in Nashville, Tennessee.  Id. ¶ 20.  Since May of 2005, King has worked as retail consultant in defendants' retail stores in Brentwood, Tennessee.  Id.

Plaintiffs' employment with defendants is subject to an express and implied incentive compensation plan and commission agreement.  Id. ¶ 21.  Under the commission plan, in addition to other pay which plaintiffs might receive, defendants agreed to pay commissions for products and services which plaintiffs sell.  Id.

In 2005, 2006 and 2007, defendants published Master Incentive Compensation Guides which outlined terms and conditions which apply to plaintiffs' commission plan.  See exhibits 1-3 to Affidavit Of Michele R. Fisher, attached to Plaintiffs' Memorandum In Opposition To Defendants' Motion To Partially Dismiss Plaintiffs' Amended Complaint ("Plaintiffs' Opposition") (Doc. #26) filed April 16, 2008.[1]  Regarding the purpose of the plan, the Master Incentive Compensation Guides provide as follows:

1.1     What Is the Purpose of the Plan?

The purpose of the . . . Master Incentive Compensation Guide (the "Compensation Guide") is to outline the terms and conditions that apply to all commission-eligible positions listed within the Compensation Guide.  The structure and elements of each individual compensation package vary by job title and are detailed in a separate document called the Commissions Acknowledgment Form ("CAF").

---

[1] The Court may consider the Master Incentive Compensation Guides without converting defendants' motion to one for summary judgment because the complaint refers to the documents, they are central to plaintiffs' claims and the parties do not dispute their authenticity.  See Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002).

> The Commissions Acknowledgment Form specific to your job function and title, together with the Compensation Guide, constitute your individual Sales Compensation Plan (the "Plan") unless otherwise directed by the Company. . . . The Plan is designed to provide you with Incentive Compensation (i.e., compensation as a reward) for meeting certain goals. The Plan is not intended to compensate you for your general job duties. Your Base Pay (i.e. your salary or hourly wages) compensates you for performance of your general job duties.
>
> **The Plan is not intended as a contract of employment for any particular period of time. The Plan does not affect the fact that you are employed at-will, meaning either you or the Company may terminate your employment with the Company at any time, with or without cause or notice.**

Id. at ¶ 1.1 (emphasis in originals).

With respect to choice of law and choice of forum, the 2005 and 2006 Master Incentive Compensation Guides provided as follows:

> 1.7(p) What Law Applies Under The Plan?
>
> Kansas law governs the Plan.
>
> 1.7(q) What Is The Proper Forum For Disputes Under The Plan?
>
> Any lawsuit involving claims under the Plan must be brought in Johnson County Kansas District Court or the United States District Court for the District of Kansas.

Exhibits 1-2 to Affidavit Of Michele R. Fisher. The 2007 Master Incentive Guide contained similar choice of law and choice of forum clauses. See Exhibit 3 to Affidavit Of Michele R. Fisher.[2]

---

[2] The 2007 Master Incentive Guide provided as follows:

1.7(o) What Law Applies To The Plan?
Kansas law governs the Plan.

1.7(q) What Is The Proper Forum For Disputes Under The Plan?
Any lawsuit involving claims under the Plan must be brought in Johnson County Kansas District Court or the United States District Court for the District of Kansas. By signing the CAF, you consent to personal jurisdiction in Johnson County, Kansas.

(continued...)

Regarding claims under the plan, the 2005 and 2006 Master Incentive Guides contained a mandatory one-year limitations period:

> 1.7(n) Are There Limitations On Claims You May Have Under The Plan?
>
> Yes.  Any lawsuit involving claims under the Plan *must* be filed within 12 months of the acts or omissions first giving rise to such claims.

Exhibits 1-2 to Affidavit Of Michele R. Fisher (emphasis added).  The 2007 Master Incentive Guide contained a different provision:

> 1.7(l) What Do You Do If You Have A Question Or Concern About How You Were Paid Under The Plan?
>
> * * * Any lawsuit involving claims under the Plan *should* be filed within 12 months of the acts or omissions first giving rise to such claims.

Exhibit 3 to Affidavit Of Michele R. Fisher (emphasis added).

Due to computer problems, defendants customarily and regularly denied plaintiffs commissions which were due under their commission agreements.  Id. ¶ 22.  Typically, defendants denied plaintiffs an average of $100 to $500 in commissions per month.[3]  Id. ¶ 23.  In addition, due to computer failure, defendants made improper deductions from plaintiffs' commissions for allegedly not meeting certain quotas.  Id. ¶ 24.  Occasionally, defendants reconciled some errors regarding commissions due certain retail employees.  Id. ¶ 25.  Defendants failed to reconcile commissions due other retail employees, however, whose commissions should have been increased as a result of the reconciliations.

On many occasions, plaintiffs notified defendants verbally and in writing regarding their

---

[2](...continued)
Exhibit 3 to Affidavit Of Michele R. Fisher.

[3]   The figures are higher for those in managerial positions.  Id. ¶ 23.

failure to pay appropriate commissions. Id. ¶ 26. Defendants were fully aware of the alleged computer problems but failed to take prompt action to resolve the problems and pay plaintiffs commissions which were due. Id. ¶¶ 27, 28.

### III. Analysis

Plaintiffs claim that because defendants did not pay commissions which were due, they are liable for violating the KWPA, breach of contract, quantum meruit, promissory estoppel and unjust enrichment. Defendants assert that because plaintiffs do not live or work in Kansas, they cannot bring claims under the KWPA. In addition, defendants contend that (1) the one-year contractual limitations period bars plaintiffs' breach of contract claims; (2) Arizona and Louisiana law prohibit the quantum meruit claims; and (3) Tennessee, Ohio and Arizona law prohibit the promissory estoppel claims. As to the latter two arguments, plaintiffs do not oppose defendants' motion. Accordingly, the Court will dismiss the quantum meruit claims brought under Arizona and Louisiana law and the promissory estoppel claims brought under Tennessee, Ohio and Arizona law.

#### A. KWPA Claims

Plaintiffs claim that by not paying them commissions which were due, defendants violated the KWPA. The statute provides, in part, as follows:

> Every employer shall pay all wages due to the employees of the employer at least once during each calendar month, on regular paydays designated in advance by the employer.  \* \* \*
>
> Whenever an employer discharges an employee or whenever an employee quits or resigns, the employer shall pay the employee's earned wages not later than the next regular payday . . . .  \* \* \*
>
> If an employer willfully fails to pay an employee wages as required [hereunder], such employer shall be liable to the employee for the wages due and also shall be liable to the employee for a penalty in the fixed amount of 1% of the unpaid wages for each day, except Sunday and legal holidays, upon which such failure continues

>after the eighth day after the day upon which payment is required or in an amount equal to 100% of the unpaid wages, whichever is less. * * *

K.S.A. §§ 44-314(a), 44-315(a)-(b). The statute defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions." K.S.A. § 44-313(c).

Defendants contend that the KWPA does not apply because plaintiffs do not live or work in Kansas. See Defendants' Memorandum (Doc. #16) at 9-10. To support their argument, defendants cite Glass v. Kemper Corp., 133 F.3d 999 (7th Cir. 1998). In that case, plaintiff sued for unpaid wages under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115 et seq. Defendants maintained their principal place of business in Illinois, but plaintiff worked in Spain and did not reside in Illinois. The Seventh Circuit ruled that the IWPCA protected employees in Illinois and did not extend to non-resident employees who worked abroad or in other states. See Glass, 133 F.3d at 1000-01.

Defendants contend that because the KWPA is similar to the IWPCA, the Court should follow Glass and rule that the KWPA does not apply to plaintiffs' claims. See Defendants' Memorandum (Doc. #16) at 11-12. The facts in Glass, however, are distinguishable. In Glass, the alleged employment contract did not contain a choice of law provision. Here, plaintiffs seek to recover commissions due under an agreement which states that it is governed by Kansas law. In light of this distinction, this case seems more analogous to Crites v. Hoogovens Technical Servs. Inc., 43 Pa. D. & C.4th 449 (C.P. of Pa. Allegheny County 2000). In Crites, plaintiff sued for unpaid wages under the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 Pa. Cons. Stat. § 260.1 et seq. Defendant argued that the PWPCL did not apply because plaintiff did not live or

8

work in Pennsylvania.[4]  The Pennsylvania state court disagreed.  Because plaintiff's employment was subject to an agreement which contained Pennsylvania choice of law and choice of forum clauses, the court found that plaintiff could recover under the PWPCL even though he did not live or work in Pennsylvania.  See Crites, 43 Pa. D. & C.4th at 455-57.  The Pennsylvania state court reasoned that to find otherwise (i.e. that plaintiff must bring suit in Pennsylvania but could not avail himself of the protections of the PWPCL) would effectively preclude plaintiff from bringing a statutory wage collection action.  See id. at 456-57.

Here, plaintiffs allege that defendants did not pay commissions due under an agreement which contains Kansas choice of law and choice of forum clauses.  On these facts, defendants have not shown as a matter of law that plaintiffs cannot prevail on their KWPA claims.[5]  Defendants argue

that other states, including California and New York, prohibit employees from waiving rights under their wage statutes and that to allow the KWPA claims will infringe upon other states' interests in regulating their workers.  See Defendants' Memorandum (Doc. #16) at 12-13.  Defendants, however, have not shown that allowing plaintiffs to proceed on the KWPA claims in this case will preclude or conflict with any rights which plaintiffs may have under other state laws.  On this record, defendants have not shown as a matter of law that plaintiffs cannot recover under the KWPA.

---

[4] Defendant's principal office was in Pennsylvania and plaintiff performed work in Mexico.

[5] In their reply, defendants argue that the contractual choice of law clause applies only to disputes about the commission plan, and not to statutory wage claims for unpaid commissions. See Defendants' Reply Brief In Support Of Motion To Partially Dismiss Plaintiffs' Amended Complaint (Doc. #40) filed May 9, 2008 at 4-7.  Because defendants raise this argument for the first time in their reply brief, the record is not sufficiently developed for the Court to rule on the issue at this time.  See, e.g., Continental Coal, Inc. v. Cunningham, 511 F. Supp.2d 1065, 1077 (D. Kan. 2007) (court will not consider new arguments in reply brief).

### B.     Statute Of Limitations On Breach Of Contract Claims

Defendants assert that under the 2005 and 2006 Master Incentive Guides, plaintiffs' breach of contract claims are limited to those which arose within one year of filing the complaint, i.e. on or after February 7, 2007.[6] As noted, the 2005 and 2006 Master Incentive Guides provided as follows:

> 1.7(n) Are There Limitations On Claims You May Have Under The Plan?
>
> Yes.  Any lawsuit involving claims under the Plan must be filed within 12 months of the acts or omissions first giving rise to such claims.

Exhibits 1-2 to Affidavit Of Michele R. Fisher.[7]

Plaintiffs do not dispute the terms of the 2005 and 2006 Master Incentive Guides, but assert that the 2007 Master Incentive Guide supercedes those terms. As noted, the 2007 Master Incentive Guide provided as follows:

> 1.7(l) What Do You Do If You Have A Question Or Concern About How You Were Paid Under The Plan?
>
> * * * Any lawsuit involving claims under the Plan should be filed within 12 months of the acts or omissions first giving rise to such claims.

Exhibit 3 to Affidavit Of Michele R. Fisher. According to plaintiffs, the one-year limitations period in the 2005 and 2006 Master Incentive Guides applies only to those plaintiffs who did not work for defendants on or after June 1, 2007 (the effective date of the 2007 Master Incentive Guide). As to those plaintiffs who worked for defendants on or after June 1, 2007, plaintiffs contend that the one-year limitations period does not apply.

---

[6]     Plaintiffs' filed their complaint on February 7, 2008.  See Doc. #1.

[7]     Absent statutory prohibition, it appears that contractual limitation periods are generally valid under Kansas law.  See, e.g., Coates v. Metro. Life Ins. Co., 515 F. Supp. 647, 650 (D. Kan. 1981).

Defendants disagree with plaintiffs' position, but recognize that arguments on this issue are better saved for later stages in the proceedings. See Defendants' Reply Brief In Support Of Motion To Partially Dismiss Plaintiffs' Amended Complaint (Doc. #40) filed May 9, 2008 at 9.  In reconciling the parties' positions, it appears that the parties agree that as to those plaintiffs whose employment ended before February 7, 2007, the one-year contractual limitations period in the 2005 and 2006 Master Incentive Guides bars their breach of contract claims.  Also, as to any plaintiff whose employment ended between February, 7, 2007 and May 31, 2007, the one-year contractual limitations period in the 2005 and 2006 Master Incentive Guides bars any breach of contract claims which arose before February 7, 2007.  As to those plaintiffs who worked on or after June 1, 2007, their breach of contract claims are not subject to dismissal at this time.

**IT IS THEREFORE ORDERED** that Defendants' Motion To Partially Dismiss Plaintiffs' Amended Complaint (Doc. #15) filed March 28, 2008 be and hereby is **SUSTAINED in part.**  As to breach of contract claims (Count II), the Court dismisses the claims of those plaintiffs whose employment ended before February 7, 2007.  As to any plaintiffs whose employment ended between February, 7, 2007 and June 1, 2007, the Court dismisses the breach contract claims which arose before February 7, 2007.  All other breach of contract claims remain in the case.

In addition, the Court dismisses quantum meruit claims brought under Arizona and Louisiana law (part of Count III) and promissory estoppel claims brought under Tennessee, Ohio and Arizona law (part of Count IV).

Dated this 30th day of July, 2008 at Kansas City, Kansas.

> s/ Kathryn H. Vratil
> Kathryn H. Vratil
> United States District Judge