## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ROXIE SIBLEY, et al.,                    )
                                          )
                    **Plaintiffs,**       )
                                          )         **CIVIL ACTION**
v.                                        )         **No. 08-2063-KHV**
                                          )
SPRINT NEXTEL CORPORATION, et al.,        )
                                          )
                    **Defendants.**       )
_____ )

## <u>MEMORANDUM AND ORDER</u>

Plaintiffs Roxie Sibley, Jeanne Noel, Ernesto Bennett, Jamie Williams, Greg St. Julien, Tracie Hernandez, John Jasinski, Jay Richie and Teisha King bring putative class action claims for unpaid commissions against Sprint Nextel Corporation and Sprint/United Management Company. Specifically, plaintiffs claim that defendants are liable for violation of the Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-313 <u>et seq.</u> (Count I), breach of contract (Count II), quantum meruit (Count III), promissory estoppel (Count IV) and unjust enrichment (Count V). Plaintiffs seek a declaratory judgment that defendants' practices violated the law, unpaid commissions, penalties under the KWPA, attorneys' fees, costs and prejudgment interest. This matter comes before the Court on <u>Plaintiffs' Motion For Rule 23 Class Certification</u> (Doc. #36) filed May 2, 2008. Also before the Court are <u>Defendants' Motion For Leave To File Sur-Reply In Opposition To Plaintiffs' Motion For Class Certification</u> (Doc. #79) filed August 26, 2008; <u>Defendants' Motion For Leave To File Exhibit In Electronic Format And Under Seal</u> (Doc. #82) filed August 27, 2008 and <u>Plaintiffs' Motion Requesting Permission To File Documents Under Seal</u> (Doc. #84) filed August 27, 2008.

As preliminary matters, the Court sustains defendants' motion to file a surreply and grants defendants leave to file an exhibit in electronic format. For reasons set forth below, the Court

overrules the parties' motions to file exhibits and documents under seal.

As to plaintiffs' motion to certify a class, plaintiffs seek class certification on Counts I and II, pursuant to Rule 23(a) and (b)(3), Fed. R. Civ. P., on behalf of

> [a]ll persons nationwide who worked for Defendants' retail stores since their merger with Nextel, including Retail Store District Managers, Retail Store Managers, Assistant Retail Store Managers, Lead Retail Consultants, Retail Consultants, Retail Sales Representatives, and other retail employees whose compensation was based in full or in part on commissions.

Plaintiffs' Memorandum In Support Of Motion For Rule 23 Class Certification ("Plaintiffs' Memorandum") (Doc. #37) at 10.[1]   Defendants challenge whether plaintiffs have properly demonstrated the requirements for class certification under Rule 23.  After thoroughly reviewing the record and carefully considering the parties' arguments, the Court finds that the proposed class should be certified.

## I.      Motions To File Under Seal

Defendants seek leave to file under seal an Excel spreadsheet Exhibit C, which contains information on sales transactions and compensation of plaintiff Teisha King.  Plaintiffs also seek leave to file under seal certain exhibits which defendants have designated as confidential under the

---

[1]      In support of their motion to certify, plaintiffs state as follows:

> Plaintiffs do not move for certification on Counts III-V at this time.  These claims are the subject of Defendants' motion to dismiss (Dkt. 15) currently pending before the Court, and the Court's resolution of that motion will help Plaintiffs assess their viability.

See Plaintiffs' Memorandum (Doc. #37) at 10 n.7.  On July 30, 2008, the Court sustained in part Defendants' Motion To Partially Dismiss Plaintiffs' Amended Complaint (Doc. #15) filed March 28, 2008.  See Memorandum And Order (Doc. #77) at 11.  As to breach of contract claims (Count II), the Court dismissed the claims of those plaintiffs whose employment ended before February 7, 2007.  As to any plaintiffs whose employment ended between February 7 and June 1, 2007, the Court dismissed the breach of contract claims which arose before February 7, 2007.  All other breach of contract claims remain in the case.  In addition, the Court dismissed quantum meruit claims brought under Arizona and Louisiana law (part of Count III) and promissory estoppel claims brought under Tennessee, Ohio and Arizona law (part of Count IV).

existing protective order.  See Protective Order (Doc. #41) filed May 14, 2008.[2]  The protective

order covers all exhibits which the parties have designated as "confidential" and which pertain to

information about individual wage and employment records and proprietary financial information

and confidential business records of defendants.  See id. at 1-2.

Aside from the protective order, any motion to seal must establish that interests which favor

non-disclosure outweigh the public interest in access to court documents.  See Nixon v. Warner

Commc'ns, 435 U.S. 589, 599 (1978); Crystal Grower's Corp. v. Dobbins, 616 F.2d 458, 461 (10th

Cir. 1980).  The public has a fundamental interest in understanding disputes that are presented to a

public forum for resolution.  Crystal Grower's Corp., 616 F.2d at 461.  In addition, the public

interest in district court proceedings includes the assurance that courts are run fairly and that judges

are honest.  Id.  To establish good cause, a moving party must submit particular and specific facts,

and not merely "stereotyped and conclusory statements."  Gulf Oil Co. v. Bernard, 452 U.S. 89, 102

n.16 (1981).

Plaintiffs  and  defendants  state  that  the  proffered  records  and  other  documents  are

"confidential" under the protective order.[3]  The parties do not suggest why this information, if

---

[2]       The protective order provides in part as follows:

In particular, any party to this Stipulation For The Protection And Exchange Of
Confidential Documents may designate as "Confidential:" (1) any personal
non-public, proprietary, business, financial or other protected documents or files,
including personnel files, training materials and payroll, commissions, other
compensation or other records of at least one of the Defendants' current or former
employees relating to or part of the calculation of their pay, that pertain to any
current or former employees of at least one of the Defendants and/or business records
or information about the operation of at least one of the Defendants' business; and
(2) any documents that contain proprietary, financial, confidential, or other protected
documentation pertaining to Plaintiffs or Defendants.

Protective Order (Doc. #41) filed May 14, 2008 at 1-2.

[3]       Plaintiffs seek leave to file under seal six documents which are exhibits to the
(continued...)

disclosed, might be harmful to either party.  Furthermore, the parties do not demonstrate that redaction would be insufficient to protect any information which is legitimately confidential personal information. Instead, the parties base their request fully on the protective order and the joint agreement of the parties to place this information under seal.  The Court therefore denies the parties' request to seal these documents.[4]

## II.      Factual Background

Sprint Nextel Corporation is a Kansas corporation with its principal place of business in Reston, Virginia.  Sprint/United Management Company is a Kansas corporation with its principal place of business in Overland Park, Kansas.  Together, the companies employ commission-paid employees, including plaintiffs, at more than 1,000 retail stores nationwide.

The named plaintiffs are current and former employees in defendants' retail stores in positions including Retail Sales Representative (a/k/a Retail Sales Consultant), Lead Retail Consultant, Assistant Retail Store Manager, Retail Store Manager and Retail Store District Manager.[5]  Amended Complaint (Doc. #8) filed February 26, 2008 ¶¶ 12-20.  The named plaintiffs

---

[3](...continued)
affidavit of Michele Fisher: Exhibit A: email to managers regarding commissions; Exhibit B: Sales Compensation Program Diagnostic; Exhibit C: Complaint filed in Gardner v. Sprint Nextel Corp, 07-0352 (Cent. Dist. Ca); Exhibit D: Commissions Update; Exhibit E: ACT Stakeholder Meeting Powerpoint slides; and Exhibit F: emails concerning paper documents.

[4]      Section II., I. of the District of Kansas Administrative Procedures for Filing, Signing, And Verifying Pleadings and Papers By Electronic Means In Civil Cases provides in part as follows:

> [P]arties may modify or partially redact . . . confidential information as permitted by the court (e.g., driver's license numbers, medical records, employment history, individual financial information, and proprietary or trade secret information). Consistent with the E-Government Act of 2002 . . . a party that files a document with such personal data identifiers or other confidential information redacted may file an unredacted version of the document under seal or file a reference list under seal.

[5]      Exhibit 1 to Plaintiffs' Memorandum (Doc. #37) contains the declarations of all named plaintiffs who worked in defendants' stores in six states.  Roxie Sibley resides in Gretna,
(continued...)

sold telecommunications products and services.  Their employment was subject to an express and implied incentive compensation plan and commission agreement.  Under the commission plan, defendants agreed to pay commissions (in addition to other pay) for products and services which plaintiffs sold.

In 2005, 2006 and 2007, defendants published Master Incentive Compensation Guides ("MICGs") which outlined terms and conditions of plaintiffs' commission plans.  See Exhibit 3 to Plaintiffs' Memorandum (Doc. #37) §§ 1.1, 1.3.  The MICGs provided that the structure and elements of each individual compensation package vary by job title and are detailed in a separate document called the Commissions Acknowledgment Form ("CAF").  Id; see Ex. 4 to Plaintiffs' Memorandum (Doc. #37).

With respect to choice of law and choice of forum, the MICGs from 2005 and 2006 provided as follows:

1.7(p) What Law Applies Under The Plan?

---

[5](...continued)

Louisiana.  Since October of 2004, Sibley has worked as retail consultant in defendants' retail stores in Metairie, Louisiana and, most recently, in Gretna, Louisiana.  Jeanne Noel resides in Terrytown, Louisiana.  Since October of 2006, Noel has worked as retail consultant in defendants' retail stores in Harvey, Louisiana and, most recently, in Gretna, Louisiana.  Ernesto Bennett resides in Kenner, Louisiana.  From September of 2001 to July of 2007, Bennett worked as retail consultant and lead retail consultant in defendants' retail store in Harvey, Louisiana.  Jamie Williams resides in Austin, Texas.  From October of 2005 to July of 2007, Williams worked as retail consultant in defendants' retail store in Harvey, Louisiana.  Greg St. Julien resides in Gretna, Louisiana.  Since January of 2007, St. Julien has worked as retail consultant in defendants' retail store in Gretna, Louisiana.  Tracie Hernandez resides in Marrero, Louisiana.  Since May of 2005, Hernandez has worked as store manager in defendants' retail stores in Oceanside, California and, most recently, in Gretna and Algiers, Louisiana.  John Jasinski resides in Toledo, Ohio.  Since October of 2003, Jasinski has worked as retail consultant, lead communications consultant, assistant store manager and retail store manager in defendants' retail stores in Toledo, Ohio and, most recently, in Ann Arbor, Michigan.  Jay Richie resides in Surprise, Arizona.  From August of 2005 until February 7, 2008, Richie worked as district manager for defendants.  As district manager, Richie was responsible for selling defendants' products and services and managing employees at 12 retail stores in the Phoenix, Arizona area.  Teisha King resides in Nashville, Tennessee.  Since May of 2005, King has worked as retail consultant in defendants' retail stores in Brentwood, Tennessee.

Kansas law governs the Plan.

1.7(q) What Is The Proper Forum For Disputes Under The Plan?

Any lawsuit involving claims under the Plan must be brought in Johnson County
Kansas District Court or the United States District Court for the District of Kansas.

Exhibit 3 to Plaintiffs' Memorandum (Doc. #37).  The MICG for 2007 contained similar choice of

law and choice of forum clauses.[6]

Based on the MICGs and the CAFs, defendants agreed to pay plaintiffs and putative class

members for products and services which they sold for defendants.  Defendants agreed to pay

---

[6]      The MICG for 2007 provided as follows:

1.7(o) What Law Applies To The Plan?
Kansas law governs the Plan.

1.7(q) What Is The Proper Forum For Disputes Under The Plan?
Any lawsuit involving claims under the Plan must be brought in Johnson County
Kansas District Court or the United States District Court for the District of Kansas.
By signing the CAF, you consent to personal jurisdiction in Johnson County, Kansas.

Exhibit 3 to Plaintiff's Memorandum (Doc. #37).

Regarding claims under the plan, the MICGs for 2005 and 2006 contained a mandatory one-
year limitations period:

1.7(n) Are There Limitations On Claims You May Have Under The Plan?

Yes.  Any lawsuit involving claims under the Plan must be filed within 12 months
of the acts or omissions first giving rise to such claims.

Id.

The 2007 MICG contained a different provision:

1.7(l) What Do You Do If You Have A Question Or Concern About How You Were
Paid Under The Plan?

* * * Any lawsuit involving claims under the Plan should be filed within 12 months
of the acts or omissions first giving rise to such claims.

Id.

commissions for sales that qualified as "commissionable events," which included new phone service activation and phone accessory sales.

On or around August 12, 2005, defendants merged.  Plaintiffs assert that since the merger, defendants have not fully paid the commissions due under the commission agreements.  Plaintiffs allege that although they have entered commissionable sales into defendants' computer system, their commissions and payroll departments have not accurately accounted for the commissions earned. Plaintiffs allege that due to computer problems, defendants have denied commissions for activations, contract renewals, hand set upgrades, accessory sales, add-on sales and activity, data sales and text messaging sales.  In addition, in contravention of the MICGs,  defendants have regularly deducted money for deactivations that occur after six months of activation and have improperly classified area code changes as deactivations, resulting in improper deductions.  Also, defendants have improperly deducted cancellations of add-ons that are more than six months old.

Plaintiffs and the putative class members have attempted to recover unpaid commissions through a commissions appeal process.  Plaintiffs assert that the appeal process is a flawed, time-consuming procedure that has not remedied the under-payments and improper deductions. Plaintiffs have experienced lengthy delays, multiple appeals of the same shortages and improper deductions and wholesale failure to respond to their appeals.  Plaintiffs have reported the problem to their managers and to defendants' commissions department.  In weekly commissions calls with retail managers, defendants have acknowledged problems with commission shortages.

To indicate the widespread nature of defendants' failure to pay, plaintiffs have submitted evidence from 50 employees who worked in 20 states.  Defendants acknowledge that their systems negatively affected the commissions of many employees in the putative class.  Defendants created a dedicated task force and spent $8-10 million and more than 35,000 labor hours trying to fix the computer problems.  The issues range from substantial problems which affect a large number of

employees to less significant, discrete issues that affect a relatively small number of employees.

Plaintiffs estimate that for each month of their post-merger employment, defendants have denied them commissions in amounts ranging from hundreds to thousands of dollars. Based on plaintiffs' estimated claims, the size of the putative class and a three-year statute of limitations under the Kansas Wage Payment Act, plaintiffs estimate that the total damages will surpass $5 million.

Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), the named plaintiffs ask the Court to certify a class action with themselves as class representatives.

## III.    Standards

The determination of class certification is committed to the broad discretion of the trial court. See Shook v. El Paso County, 386 F.3d 963, 967 (10th Cir. 2004). In deciding whether to certify, the Court must perform a "rigorous analysis" whether the proposed class satisfies the requirements of Rule 23. Gen. Tel. Co. v. Falcon, 457 U.S. 147, 155 (1982); see Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc., 158 F.R.D. 681, 685 (D. Kan. 1994).

Rule 23 does not give the court any authority to conduct a preliminary inquiry into the merits of the suit to determine whether it may be maintained as a class action. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974); see Anderson v. City Of Albuquerque, 690 F.2d 796, 799 (10th Cir. 1982); Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988). The Tenth Circuit has recently emphasized, however, that the question of class certification involves considerations that are "'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" Shook v. El Paso County, 543 F.3d 597, 612 (10th Cir. 2008) (quoting Falcon, 457 U.S. at 160 (1982) (no "impermeable wall" between merits and decision to certify class)). Although the Court may not evaluate the strength of a cause of action at the class certification stage, it must consider, "without passing judgment on whether plaintiffs will prevail on the merits," whether the requirements of Rule 23 are met. Shook, 543 F.3d at 612; see Eisen, 417 U.S. at 178 (in determining propriety of class

action, question is not whether plaintiffs state cause of action or will prevail on merits, but whether requirements of Rule 23 are met); Gariety v. Grant Thornton, LLP, 368 F.3d 356, 366 (4th Cir. 2004) (court must address factors spelled out in Rule 23 through findings, even if they overlap with issues on merits).[7]

As the parties seeking class certification, plaintiffs have the burden to demonstrate "under a strict burden of proof" that the requirements of Rule 23 are clearly satisfied.  See Trevizo v. Adams, 455 F.3d 1155, 1162 (10th Cir. 2006).  In doing so, plaintiffs first must satisfy the prerequisites of Rule 23(a), that is, they must demonstrate that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact are common to the class, (3) the claims of the representative parties are typical of the claims of the class and (4) the representative parties will fairly and adequately protect the interests of the class.  Rule 23(a), Fed. R. Civ. P.  After meeting these requirements, plaintiffs must demonstrate that the proposed class action fits within one of the categories described in Rule 23(b).  In this case, plaintiffs seek to proceed under 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting individual members" and that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy."[8]

**IV.    Analysis**

**A.    Class Definition**

Defining the class is of critical importance because it identifies the persons (1) entitled to

---

[7]    Where the parties proffer expert testimony on the class certification issue, the Court may need to conduct a limited inquiry under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), to determine whether to utilize the expert testimony.  See Rhodes v. DuPont De Nemours & Co., 2008 WL 2400944, at *7-8, 12 (S.D. W.Va. June 11, 2008).

[8]    Although the amended complaint alleges a class under Rule 23(b) (1), (2) and (3), plaintiffs' motion to certify only addresses a class under Rule 23(b)(3).

relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the "best notice

practicable" in a Rule 23(b)(3) action.  Manual for Complex Litigation § 21.222, at 270 (4th ed.

2005); see Fed. R. Civ. P. 23(c)(1)(B) (court certification order must define class and class claims,

issues or defenses).  The definition must be precise, objective and presently ascertainable.  Id.; see

In re Urethane Antitrust Litig., 237 F.R.D. 440, 444-45 (D. Kan. 2006).  Courts should err on the

side of class certification because they have broad discretion to later redefine (or even decertify) the

class if necessary.  See Esplin v. Hirschi, 402 F.2d 94, 99 (10th Cir. 1968); Clark v. State Farm Mut.

Auto. Ins. Co., 245 F.R.D. 478, 481 (D. Colo. 2007); Heartland Commc'ns, Inc. v. Sprint Corp., 161

F.R.D. 111, 115 (D. Kan. 1995) (court can tailor class as necessary by eliminating class members,

requiring additional class representatives or modifying class definition).

     As noted, plaintiffs seek certification of the following class:

> All persons nationwide who worked for Defendants' retail stores since their merger
> with Nextel, including Retail Store District Managers, Retail Store Managers,
> Assistant Retail Store Managers, Lead Retail Consultants, Retail Consultants, Retail
> Sales Representatives, and other retail employees whose compensation was based in
> full or in part on commissions.

Plaintiffs' Memorandum (Doc. #37) at 10.[9]  Defendants assert that plaintiffs have offered no

---

[9]    Plaintiffs initially sought to certify a class defined as:

> all persons nationwide who worked for Defendants' retail stores since its merger
> with Nextel, including Retail Store District Managers, Retail Store Managers,
> Assistant Retail Store Managers, Lead Retail Consultants, Retail Consultants, Retail
> Sales Representatives, and other retail employees who received some or all of their
> pay in commissions, who did not receive all of their commissions payable pursuant
> to their commissions agreements with Defendants.

Amended Complaint ¶ 29.  In support of their motion to dismiss plaintiffs' amended complaint,
defendants argued that under the foregoing class definition, the class could be determined only after
the Court conducted a liability examination as to each employee.  See Memorandum In Support Of
Motion To Partially Dismiss Plaintiffs' Amended Complaint (Doc. #16) at 6 (citing Nicodemus v.
Union Pac. Corp., 204 F.R.D. 479, 488 (D. Wyo. 2001), rev'd on other grounds, 440 F.3d 1227
(10th Cir. 2006)) (class definition insufficient where it requires Court to review merits of case to

(continued...)

evidence that they under paid the commissions of every employee within the proposed class. Defendants argue that because it encompasses persons not harmed, the proposed class definition is overly broad.  See Owen v. Regence Bluecross Blueshield of Utah, 388 F.Supp.2d 1318, 1334 (D. Utah 2005); Zapka v. Coca-Cola Co., 2000 WL 1644539, at *3 (N.D. Ill. Oct. 27, 2000); Canady v. Allstate Ins. Co., No. 96-0174, 1997 WL 33384270, at *2-3 (W.D. Mo. June 19, 1997); see also Swain v. Brinegar, 517 F.2d 766, 779-80 (7th Cir. 1975).[10]  Plaintiffs counter that the fact that a class may initially include persons who have not suffered harm "is not important at this stage of litigation . . . unless, of course, it is shown that most, if not all, of the potential class members have no claims to be asserted by the class representatives."  Clark, 245 F.R.D. at 483.  If the class definition should require tailoring as the litigation progresses, the Court and parties are authorized to do so.  Fed. R. Civ. P. 23(c)(1), (d); see Cook, 151 F.R.D. at 381-82 (rejecting objection that classes were overbroad because objections would require preliminary hearing on merits not authorized by Rule 23).  The Court finds that defendants' argument is not well taken.

Defendants also argue that the class is overbroad because it requires an individual determination of liability as to each class member.  Plaintiffs correctly point out that although the

---

[9] (...continued)
ascertain class).

[10]       Plaintiffs distinguish the cases which defendants cite for the proposition that a class definition is impermissibly broad if it encompasses persons not harmed.  In Owen, the class definition did not require that individual class members had been billed by a third party, and the amount of the third party billing determined damages.  See 388 F.Supp.2d at 1334.  In Zapka, the disputed class included anyone who drank a certain product because of deceptive marketing.  See 2000 WL 1644539, at *3.  Not only was this class indefinite because it was enormous and consistently growing, membership improperly hinged on state of mind evidence.  See id.  In Canady, the class definition relied on an overbroad definition of "neighborhood," which comprised 93,000 individuals of widely disparate socio-economic backgrounds, many of whom would not automatically have been affected by the practice in question.  See 1997 WL 33384270, at *2-3. Finally, in Swain, the proposed class on its face included individuals whose land would not be affected by condemnation for a highway project.  See 517 F.2d at 779-80.

damages suffered by the prospective class members will vary, this does not defeat class action treatment.  Smith v. MCI Telecomms. Corp., 124 F.R.D. 665, 677 (D. Kan. 1989).

Plaintiffs have proposed a class of individuals who depended on defendants' computer systems for payment of commissions.  This class is easily ascertainable: membership is based on their periods of employment and positions held.  Plaintiffs argue that all putative class members were subject to the same type of harm resulting from defendants' flawed commission systems: the nonpayment of commissions. The Court find that the class definition is sufficiently well-defined so that potential class members may be identified.

**B.      Rule 23(a) Requirements**

1.       Numerosity

To satisfy the numerosity requirement of Rule 23(a)(1), plaintiffs must establish that the class is so numerous as to make joinder impracticable.  Trevizo, 455 F.3d at 1162; Rule 23(a), Fed. R. Civ. P.  Plaintiffs must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved.  See Rex v. Owens ex rel. State of Okla., 585 F.2d 432, 436 (10th Cir. 1978).  The Court has no set formula, however, for determining whether plaintiffs meet this requirement.  Id.

In support of numerosity, plaintiffs point to evidence that Sprint has more than 1,000 retail stores throughout the country and that each retail store commonly employs "several" retail employees whose compensation is based at least in part on commissions.  Based on this evidence, plaintiffs estimate that the class would have several thousand members.

Defendants assert that plaintiffs have not offered evidence that defendants under paid commissions to all employees within the proposed class.  Defendants contend that plaintiffs'

allegation is speculation and does not meet the numerosity requirement.[11]  See, e.g., Marcial v. Coronet Ins. Co., 880 F.2d 954, 957 (7th Cir. 1989) (plaintiffs failed to satisfy numerosity requirement for proposed class of 400 to 600 policyholders); Makuc v. Am. Honda Motor Co., 835 F.2d 389, 394 (1st Cir. 1987) (denying class certification where plaintiff could only speculate concerning whether others in proposed class sustained same injury); Siles v. ILGWU Nat'l Ret. Fund., 783 F.2d 923, 929 (9th Cir. 1986) (denying class certification in action against pension fund where no evidence regarding how many employees did not receive a pension).[12]

Plaintiffs have submitted declarations from 50 retail employees from 20 states, all of whom assert that defendants owe them commissions.  Plaintiffs contend that this evidence demonstrates sufficient numerosity, see In re Aluminum Phosphide Antitrust Litig., 160 F.R.D. 609, 612-13 (D. Kan. 1995) (good faith estimate of hundreds of class members sufficient to satisfy numerosity requirement); Olenhouse v. Commodity Credit Corp., 136 F.R.D. 672, 679 (D. Kan. 1991) (good faith estimate of at least 50 members sufficient size to maintain class action).  The Court agrees and

_____

[11]    In their surreply, defendants point to their expert analysis which concludes that during the year preceding this suit, defendants actually overpaid commissions to the six named plaintiffs.  Plaintiffs counter that defendants' expert analysis is based on flawed data and is therefore inaccurate.  Plaintiffs note that they have provided affidavit evidence that defendants have under paid their commissions, and that they should be allowed to complete discovery before arguing the case on the merits.  The Court agrees.

[12]    Defendants argue that plaintiffs point to no provision of the MICGs which they allegedly breached, and that plaintiffs merely contend that Sprint's computers have made mistakes so that certain occurrences are not recognized as commission events.  Defendants argue that without a record match, no commission event occurs, and that failure to match records in the commission system is not a breach of contract.  Plaintiffs counter that this matching requirement only applies to activations and not to other commission events.  Further, to the extent that matching is required for activations, plaintiffs assert that the contract provision for matching on activations is unenforceable.  Plaintiffs argue that any individual who suffered non-payment of commissions because of the computer system errors is properly included in the proposed class.  Plaintiffs also argue that defendants' matching argument relies on a disputed legal interpretation of the MICGs that goes directly to the merits.  See Heartland, 161 F.R.D. at 114 (court may not inquire into merits of underlying case in determining class certification).

finds that plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1).

    2.   <u>Commonality</u>

To establish commonality, plaintiffs must show that the members of the putative class "possess the same interest and suffer the same injury." <u>Falcon</u>, 457 U.S. at 156. The representative plaintiffs and putative class members all claim that defendants systematically denied them commissions through under-reporting of sales and improper deductions from commissions. Plaintiffs assert that several questions of law and fact are common to plaintiffs' claims: (1) whether defendants systematically denied commissions by under-reporting sales and making improper deductions; (2) whether defendants breached agreements with commissioned employees by under-paying and improperly deducting commissions; and (3) whether defendants violated the Kansas Wage Payment Act. Plaintiffs assert that the same law governs the claims of all class members because the commission agreements all specify that (1) Kansas law governs any disputes and (2) all federal actions must be maintained in the District of Kansas.

Defendants argue that plaintiffs do not allege specific, deliberate practices or policies, but only a wide variety of unanticipated computer issues which Sprint spent millions of dollars to correct. <u>Cf.</u> <u>Smith</u>, 124 F.R.D. at 675. Defendants further argue that plaintiffs cannot articulate common questions of fact because numerous factors govern what is a commissionable occurrence for three different commission plans and more than 50 different CAFs.[13] Further, defendants note that plaintiffs do not point to one, two or even three common computer problems, and that the only way to determine whether defendants have paid plaintiffs the full amount of commissions earned is

---

[13]    Defendants further argue that the fact-finder would also need to examine the timeliness of suit on each occurrence prior to February 7, 2007 to see why each participant did not do what they "should" have done and filed suit within one year of the occurrence at issue. A statute of limitations defense does not prevent certification, however, if the appropriate Rule 23 factors – including numerosity – are otherwise met. <u>See</u> <u>Clark</u>, 245 F.R.D. at 483); <u>Cook</u>,151 F.R.D. at 386; <u>Rishcoff v. Commodity Fluctuations Sys., Inc.</u>, 111 F.R.D. 381, 382-83 (E.D. Pa. 1986).

to review one by one the commission systems' assessment of each of millions of occurrences.  Citing Trevizo, 455 F.3d at 1163, defendants argue that such questions of fact do not support a finding of commonality.

In Trevizo, plaintiffs sought to certify a class of persons who claimed that law enforcement officers violated their civil rights during a business raid.  The district court found that common issues of fact and law did not prevail, and denied certification.  The Tenth Circuit affirmed.  Trevizo, however, is distinguishable from the instant case.  Here, plaintiffs allege that during the class period, defendants routinely breached their contracts by under-paying commissions.  Whether defendants breached the contract by incorrectly determining commissions is an issue which undergirds every claim.  While determining damages will require individual calculations, this does not preclude a finding of commonality.

Defendants argue that "[p]laintiffs' incantation that Sprint has 'systematically' refused to pay its employees commissions does not fill the gap in proof created by their failure to point to any specific policy or discrete legal question that applies to all the putative class members."  Defendants' Opposition To Plaintiffs' Motion For Class Certification Pursuant To Federal Rule Of Civil Procedure 23 ("Defendants' Opposition") (Doc. #45) at 45 (citing J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1289 (10th Cir. 1999) (allegations of systemic failures insufficient to establish commonality); see also Shook, 2006 WL 1801379, at *9 (commonality requires more than "broad legal theme"); Clark K. v. Guinn, No. 06-1068, 2007 WL 1435428, at *26 (D. Nev. May 14, 2007) (generalized policy and practice allegations do not substitute for specific legal and factual showings required by Rule 23).

Plaintiffs and the class members were all subject to the same form commission agreements, or CAFs.  The formulaic differences among the CAFs, including types of commissionable events or commission pay levels, do not bear on the commonality of the class members' claims.  See

Heartland, 161 F.R.D. at 116; Smith, 124 F.R.D. at 677.  Further, where plaintiffs challenge defendants' policies with respect to the class as a whole, it is irrelevant that the amount of damages among individual class members may differ.  See Olenhouse, 136 F.R.D. at 680; Heartland, 161 F.R.D. at 116 (question whether computer program under reported revenues generated by class members and improperly reduced class member commissions satisfied commonality requirement notwithstanding differences among contracts); Smith, 124 F.R.D. at 675 (commonality present where salespersons alleged employer systematically denied commissions because of problems with billing and commissions system).

All members of the proposed class base their claims on the same legal and factual theories – that defendants breached an agreement to pay commissions.  The Court finds that plaintiffs have satisfied the commonality requirement.

3.      Typicality

The typicality element requires that representative plaintiffs possess the same interests and suffer the same injuries as the proposed class members.  Olenhouse, 136 F.R.D. at 680.  This requirement, however,  does not mandate that the claims of the representative plaintiffs be identical to those of the other class members.  Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988).  Rather, the Court should look to whether the claims of the representative plaintiffs are "significantly antagonistic" to the claims of the proposed class.  Olenhouse, 136 F.R.D. at 680.

Like commonality, typicality results directly from the nature of plaintiffs' claims.  Plaintiffs assert that the Court should find typicality because (1) the representatives and class members entered into form contracts with defendants; (2) plaintiffs all assert the same legal theories – that defendants breached a contractual obligation; and (3) the representative plaintiffs and class members suffered

the same type of harm.[14]  Plaintiffs argue that each putative class member suffered from the same problem: Sprint's computer system under-reported and misreported commissionable events, causing lower commission payments.

Defendants argue that plaintiffs have not established that their claims are typical of the claims or defenses of the alleged class. They note that the named plaintiffs complain of different reasons for unpaid commissions.[15]  Plaintiffs correctly note that although class members may have diverse complaints related to their commissions, typicality does not require that the claims be identical.  See Heartland, 161 F.R.D. at  116.  The Court finds that plaintiffs meet the typicality requirement.

    4.    Fair And Adequate Representation

Rule 23(a)(4) requires the named plaintiffs to show that they will fairly and adequately protect the interests of the class.  To meet this requirement, the named plaintiffs must be members of the class they seek to represent.  E. Tex. Motor Freight Sys., Inc., v. Rodriguez, 431 U.S. 395, 403 (1977).  The representative plaintiffs must show (1) that their interests do not conflict with those of the class members and (2) that they will be able to prosecute the action vigorously through qualified counsel.  See Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88 (10th Cir. 2002); Olenhouse, 136 F.R.D. at 680.

Defendants argue that the named plaintiffs are inadequate representatives because of an earlier-filed case raising similar class claims.  Specifically, in Gardner v. Sprint United Mgmt. Co., Case No. 08-2559-KHV, the named plaintiff alleges class claims against defendants under a

---

[14]    In addition, plaintiffs note that the commissions of putative class members who were sales managers were determined by the commissions of their subordinates – thus, within the class, the claims of these managers actually depend upon a proper accounting of their subordinates' commissions.

[15]    For example, plaintiff Hernandez specifically complained about "open tickets" while plaintiff Noel complained that a deactivation was improperly counted against her.

California statute. Defendants assert that the Gardner case creates a conflict of interest between plaintiffs in this case and any putative class members.[16]

Plaintiffs respond that if this Court determines that Kansas statutory law applies to the class, plaintiffs will seek to define subclasses based on state law. The result would be that plaintiffs and the putative class would share common breach of contract claims under Kansas law, but would be divided into subclasses based on state statutory claims. Plaintiffs further point out that defendants' forum selection clause provides that venue lies in this forum. Defendants suggest no other conflict between the named plaintiffs and other class members. Therefore the Court has no reason to doubt that the named plaintiffs will adequately and fairly protect and represent the interests of all members of the proposed class.

**C.     Rule 23(b)(3) Requirements**

In addition to meeting the class certification requirements of Rule 23(a), plaintiffs must satisfy the requirements of one subsection of Rule 23(b). In this case, plaintiffs ask the Court to certify the class under Rule 23(b)(3). Rule 23(b)(3) addresses situations where class action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations, but "may nevertheless be convenient and desirable." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 615 (1997) (further citations omitted). Thus, courts should take a "close look" at the criteria under Rule 23(b)(3). Id.

Rule 23(b)(3) provides for class certification if the Court finds that the criteria of Rule 23(a) have been met, that the "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that a class action is "superior to other

---

[16]     On October 8, 2008, the United States District Court for the Central District of California transferred Gardner v. Sprint United Mgmt. Co., Case No. 07-cv-06352 (C.D. Ca. Sept. 28, 2007) to this Court.

available methods for the fair and efficient adjudication of the controversy."[17]  Mulford v. Altria Group, Inc., 242 F.R.D. 615, 625 (D. N.M. 2007) (predominance requirement similar to but more demanding than Rule 23(a) commonality requirement); see Amchem, 521 U.S. at 623 (predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation").  Defendants argue that the Court should not certify a class under Rule 23(b)(3) because individual rather than common questions predominate, and a class action would be unmanageable and thus not superior to other alternatives.

1.      Predominance Requirement

As noted, defendants argue that individual questions predominate because plaintiffs have not alleged a wrongful policy that applies to all putative class members.  Defendants assert that plaintiffs merely allege a series of discrete issues related to system integration.  Further, defendants contend that whether an employee is entitled to a commission requires numerous individualized determinations and thus individual damage determinations would predominate over common issues.  See Mulford 242 F.R.D. at 627-29 (need for individual evidence strongly suggests proposed class not sufficiently cohesive to warrant adjudication by representation); Zapata v. IBP, Inc., 167 F.R.D. 147, 166 (D. Kan. 1996) (where computation of damages will require separate mini-trials, individualized damage determination predominates over common issues and court should not certify class).[18]

---

[17]      Rule 23(b), Fed. R. Civ. P. provides as follows:

Matters pertinent to the Court's finding on the superiority of the class action method include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

[18]      Defendants argue that here, plaintiffs would need to prove the following for each
(continued...)

The record reveals a common nucleus of operative facts which are relevant to the dispute, and the common questions represent a significant aspect of the case which can be resolved for all members of the class in single adjudication. See Heartland, 161 F.R.D. at 117-18. Specifically, the critical issues for trial are whether Sprint's accounting methods systematically under reported commissions and interpretation of the plans and CAFs under Kansas law. The Court finds that the common questions in this case questions predominate over individual questions as to each commissioned employee.

2.     Superiority Requirement

Defendants argue that plaintiffs cannot meet the superiority requirement because the numerous factual determinations which will be needed to calculate the commissions due each class member render the case unmanageable as a class action.[19] See Zapata, 167 F.R.D. at 169 (declining to certify

---

[18](...continued)
occurrence: (1) the occurrence was eligible for a commission under one of three plans and one of 80 CAFs; (2) the point of sale records and billing system records matched in Sprint's commissions system; (3) Sprint did not previously pay plaintiff for that occurrence; and (4) plaintiff reported the disputed occurrence within 90 days if the Plan so required. Further, as to each claim for an occurrence before February 7, 2007 by a plaintiff who was employed on or after June, 2007, plaintiff must show that he or she was justified in not bringing that claim within one year of the occurrence even though they "should" have.

[19]     In support of their argument that the class is unmanageable, defendants use the claims of plaintiff Ernesto Bennett as an example, as follows:

The Court would have to make the following determinations for 3,156 occurrences just from February 1, 2007 through July 14, 2007 (less than half the class period): (a) Was the occurrence even eligible for Incentive Compensation?; (b) Was there a data match in the commission system?; (c) Has Plaintiff been paid for this occurrence?; (d) Was the occurrence appealable?; (e) If so, was it appealed?; (f) Was the claim on or after 2/7/07?; (g) If not, was the Plaintiff employed on or after June 1, 2007?; (h) If so, what was the Plaintiff's reason for not filing within a year? Just the first five steps in this exercise took over fifteen hours for an experienced commissions supervisor at Sprint to perform, excluding review of add-on activity.

Defendants' Opposition (Doc. #45 ) at 70.

because computation of compensatory damages would require significant individualized consideration for each class member's claims); Zimmerman v. Bell, 800 F.2d 386, 390 (4th Cir. 1986) (large number of individualized determinations would impose excessive managerial burden on court); Andrews v. AT&T, 95 F.3d 1014, 1023 (11th Cir. 1996) (resolution of issues would have broken down into unmanageable legal and factual questions).

Plaintiffs assert that computing damages is a mechanical task and that the evidence – records in defendants' billing, point of sale, payroll and commission systems – must be analyzed in a similar fashion for all plaintiffs. See Smith, 124 F.R.D. at 677 (individualized damages claims no barrier to certification where computation mechanical in nature). Plaintiffs contend that any occurrence-by-occurrence analysis will be automated, will only be required for a representative group and is an admittedly complex but not insurmountable task.[20] Id. at 677-78. The Court is concerned about a manageable method for dealing with individual issues. See Schreiber v. NCAA, 167 F.R.D. 169, 177 (D. Kan. 1996) (certifying class for injunctive relive under Rule 23(b)(2) but declining to certify class as to damage issues due to concerns about manageability). Plaintiffs, however, point out that defendants presumably conduct the same calculations every pay period.

The requirement that a class action be the superior method of resolving claims insures that no other available method of handling the claims has greater practical advantages. See In re Universal Serv. Fund Tele. Billing Practices Litig., 219 F.R.D. 661, 679 (D. Kan. 2004). Here, the obvious alternative to a class action would be for plaintiffs to bring individual suits. This would be inefficient, costly and time consuming and parties, witnesses and courts would be forced to endure unnecessarily

---

[20]     Moreover, the nature of the evidence in this case – electronic data in defendants' possession – is particularly well suited to examination on a class-wide basis. In their sur-reply, defendants note that plaintiffs have now asked that Sprint preserve its paper records. Defendants suggest that this means that plaintiffs intend to rely upon paper records to prove damages. Plaintiffs respond that they only want Sprint to preserve paper records so that they can check the accuracy of electronic records.

duplicative litigation.  The thousands of class members are dispersed across the country, each with relatively similar claims.  A number of the individual claims will likely involve relatively small amounts of money, so that a class action may be the only feasible way for some plaintiffs to pursue their claims.  Thus, the Court is persuaded that a class action is the superior method for resolving the claims at issue in this lawsuit.

The Court will certify the proposed class on Counts I and II.  If the Court is later persuaded that a class action is not the most efficient form of litigating this controversy, it may decertify the class.

## V.      Appointment of Counsel

An order certifying a class must also appoint class counsel that will adequately represent the interests of the class. Fed. R. Civ. P. 23(c)(1)(B), (g)(1).  The Court must consider the work counsel has done in identifying or investigating potential claims in the actions, counsels' experience in handling class actions and other complex litigation and claims of the type asserted in the present action, counsels' knowledge of the applicable law, and the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(C).  After reviewing the record, the Court is satisfied that the firms of Nichols Kaster, PLLP and Stueve Siegel Hanson LLP satisfy these criteria and will adequately represent the interests of the class as counsel.

## VI.     Notice

Rule 23(c)(2)(B) provides that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The Court believes that the overwhelming majority of, if not all, class members can likely be identified through reasonable efforts. To that end, defendants are directed to provide to plaintiffs the names, addresses, and telephone numbers of all employees who are potential members of the class on or before December

22, 2008. Also on or before December 22, 2008, plaintiffs shall prepare and submit to the Court for approval an order regarding notice that complies with the requirements of Fed. R. Civ. P. 23(c).

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion For Rule 23 Class Certification (Doc. #36) filed May 2, 2008 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that Defendants' Motion For Leave To File Sur-Reply In Opposition To Plaintiffs' Motion For Class Certification (Doc. #79) filed August 26, 2008 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that Defendants' Motion For Leave To File Exhibit In Electronic Format And Under Seal (Doc. #82) filed August 27, 2008 is **OVERRULED IN PART**. Defendants may file the exhibit in electronic format but not under seal.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion Requesting Permission To File Documents Under Seal (Doc. #84) filed August 27, 2008 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that the Court appoints as class counsel the firms of Nichols Kaster, PLLP and Stueve Siegel Hanson LLP.

**IT IS FURTHER ORDERED** that **on or before December 22, 2008** defendants provide to plaintiffs the names, addresses, and telephone numbers of all employees who are potential members of the class.

**IT IS FURTHER ORDERED** that **on or before December 22, 2008**, plaintiffs submit to the Court for approval an order regarding notice that complies with the requirements of Fed. R. Civ. P. 23(c).

Dated this 24th day of November, 2008 at Kansas City, Kansas

s/Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge