IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ROXIE SIBLEY, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SPRINT NEXTEL CORPORATION, et al, | ) | Case No. 02:08-CV-02063-KHV/JPO |
| | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT MOTION TO FURTHER STAY PROCEEDINGS PENDING MEDIATION

Plaintiffs and Defendants hereby request that the Court continue the stay of all deadlines in this matter through February 1, 2011 to allow the parties to continue to mediate this action.

In support of this Joint Motion, the parties state as follows:

1. This is a certified nationwide class action concerning commissions that Sprint's retail employees assert they are due.

2. On May 17, 2010, the parties submitted a mediation plan and a request to stay this matter through November 1, 2010 to enable the parties to focus all of their resources on seeking an amicable resolution of this action. (Doc. No. 208.)

3. Also on May 17, 2010, this Court entered a stay of this matter pending mediation until November 1, 2010. (Doc. No. 209.)

4. Since entry of the Court's May 17, 2010 Order, the parties have been working diligently towards a possible resolution and continue to work toward that objective.

5. The parties selected the Hon. James R. Zazzali as mediator. Justice Zazzali is the former Chief Justice of the Supreme Court of New Jersey and is currently Of Counsel at Gibbons P.C. Justice Zazzali served as the New Jersey Attorney General from 1981-1982, the

2

Commissioner of the New Jersey State Commission of Investigation in 1984 and 1987 (as well as the Chair from 1989-1993), and as an Assistant Essex County Prosecutor from 1965-1968. He also is a former adjunct professor at Seton Hall University School of Law, where he taught mediation and arbitration. Justice Zazzali has been involved in large mediations.

6. As an initial starting point, the parties exchanged their respective damages analyses for one of the named plaintiffs. The parties then met with their experts and reviewed their respective analyses and discussed where their positions were different.

7. As a result of these discussions, the parties developed a plan for the exchange of data for a random sampling of class members which they believed would be informative for shaping settlement discussions. After several hours of negotiations, the parties agreed to utilize a random sampling of one hundred (100) class members in a two-year timeframe within the class period. The parties then negotiated the specific data to be exchanged for these one-hundred (100) individuals.

8. The exchange of relevant data for the sample individuals has been time-consuming and labor-intensive.

9. Between July and mid-September 2010, over 3.4 billion records of data have been produced to the Plaintiffs, resulting in 2.04 terabytes of data.

10. The following provides Defendants' summary of the types of data that have been supplied from the various relevant databases (*e.g.*, Ensemble, P2K, HRMS/PeopleSoft), and the number of transaction records for each type. In addition to the datasets, code sets were retrieved as well as file layouts to enable the use of the datasets:

3

| Type of Data | Number of Records of Data |
|---|---|
| Ensemble Billing records | 3,355,547,753 |
| P2K Billing records | 73,905,217 |
| Appeals, Adjustments, and DSC transactions extracted for the mediation sample of 100 | 4,808 |
| HRMS/PeopleSoft payroll data extracted for the mediation sample of 100 | 29,693 |
| Quota transactions extracted for the mediation sample of 100 | 1,044 |
| Valid transactions extracted for the mediation sample of 100 | 308,071 |
| ISTS tickets extracted for the mediation sample of 100 | 285 |
| Order Detail Report transactions extracted for the mediation sample of 100 | 608,685 |
| Retail Management System (RMS) transaction data related to the mediation sample of 100 | 5,092,730 |
| HRMS/PeopleSoft job history data extracted for the mediation sample of 100 | 2,924 |

11.     After the data was extracted, it was reviewed for completeness to ensure that the data was accurately extracted.

12.     With respect to the RMS transactions referenced above, a two-step process was agreed upon by the parties in which transactions directly related to the sample sales representatives were extracted, followed by a second step that retrieved all transactions that may have been related to the customer in a particular sale but associated with a different sales representative.

13.     Hundreds of hours were required to extract the data, and to verify the data and complete the two-step process for the RMS transactions described in Paragraph 12, above.

14.     Both sides and their experts have now begun the process of analyzing the exchanged data. The process of analyzing the data is labor-intensive because it ultimately requires an assessment of all the data associated with each of the randomly selected individuals.

To date, this has taken in excess of six (6) weeks. Because of the volume of the data and its complexity, neither party has completed their analysis.

15. Plaintiffs' experts have spent considerable time importing, standardizing, and validating the voluminous data produced by Defendants, as well as building a system for analyzing the data. The parties have exchanged correspondence, phone calls, and have discussed in-person questions and issues that have arisen relating to the data. The parties' goal in these discussions is to have a clear understanding of the data production so they ultimately have some level of confidence in the respective analyses that are being performed with that data.

16. Both sides have also met separately in person with the mediator, in addition to conferring by telephone. Each party has provided the mediator with multiple written submissions setting forth their respective positions in the case and information pertaining to the data exchange.

17. On October 18, 2010, the parties met together for a full day with the mediator and discussed each side's process for analyzing the data. The parties also started the process of identifying areas of agreement, including the operative commission plans, what is commissionable under each plan and how each different aspect of commissions would be calculated under the operative plans. As a result of this meeting and the parties' ongoing discussions, the parties are in agreement about the mediation efforts that still need to take place and ask the Court's approval of the same.

18. The parties anticipate it will require another month and a half to complete their respective analyses of the data of the sample set of individuals. During this time, the parties will continue to cooperate in good faith to resolve issues that arise regarding the data and their respective analyses.

4

5

19.     The parties are currently working toward reaching agreement on the formulas for calculating commissions, which involves a detailed review of the commission plans in effect during the period of analysis.  The period of analysis covers three compensation plan years, which includes three annual plans (Master Incentive Compensation Guides) and seven related Commission Agreement Forms from Sprint Nextel Corp., as well as a separate compensation plan from Nextel Corp.  The plans each contain their own set of calculations and cover more than ten commissionable components for several positions.  Defendants have provided Plaintiffs with their initial interpretation of the commissions calculations.  Plaintiffs are in the process of comparing Defendants' formulas with their own and will disclose any areas of disagreement to Defendants in November 2010.

20.     The parties will hold additional joint mediation sessions with the mediator in January 2011.  At that time the parties will be prepared to discuss damages in an effort to reach a resolution of the action.

21.     The parties therefore request a continuation of the current stay through February 1, 2011, at which time the parties will present the Court with a report on the status of the mediation, and should the mediation fail, a revised scheduling order.

WHEREFORE, Plaintiffs and Defendants respectfully request that the Court continue the current stay this action to and including February 1, 2011 and order the parties to report back to the Court immediately upon the expiration of that stay, or earlier if the case is resolved or it becomes apparent that the mediation has failed, about the status of the mediation and if the mediation fails, a revised proposed scheduling order.

Dated:  October 29, 2010

| | |
|---|---|
| */s/ George A. Hanson* <br> **STUEVE SIEGEL HANSON LLP** <br> George A. Hanson <br> KS Bar No. 16805 <br> 460 Nichols Road, Suite 200 <br> Kansas City, MO 64112 <br> Tel: 816-714-7100 <br> Fax: 816-714-7101 | */s/ Michael L. Blumenthal* <br> **SEYFERTH, BLUMENTHAL & HARRIS LLC** <br> Michael L. Blumenthal <br> KS Bar No. 18582 <br> 300 Wyandotte, Suite 430 <br> Kansas City, MO  64104 <br> Tel: 816-756-0700 <br> Fax:  816-756-3700 |
| **NICHOLS KASTER, PLLP** <br> Michele R. Fisher* <br> Paul J. Lukas* <br> Charles G. Frohman* <br> 4600 IDS Center <br> 80 South 8th Street <br> Minneapolis, MN 55402 <br> Tel: 612-256-3200 <br> Fax: 612-215-6870 <br> (*Admitted *Pro Hac Vice*) <br><br> *Attorneys for Plaintiffs* | **ROGERS & HARDIN LLP** <br> J. Timothy Mc Donald* <br> Georgia Bar No. 489420 <br> 2700 International Tower <br> Peachtree Center <br> 229 Peachtree Street, N.E. <br> Atlanta, GA  30303 <br> Tel:  404-522-4700 <br> Fax:  404-525-2224 <br><br> **PROSKAUER ROSE LLP** <br> Elise M. Bloom* <br> 1585 Broadway <br> New York, NY 10036 <br> Tel: 212-969-3000 <br> Fax: 212-969-2900 <br><br> (*Admitted *Pro Hac Vice*) <br><br> *Attorneys for Defendants* |

## CERTIFICATE OF SERVICE

      I hereby certify that on <u>October 29, 2010</u> the foregoing **Joint Motion to Further Stay Proceedings Pending Mediation** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

- **Elise M. Bloom**
  ebloom@proskauer.com
- **Michael L. Blumenthal**
  mike@sbhlaw.com
- **Jacqueline M. Dorn**
  jdorn@proskauer.com
- **Michele Renee Fisher**
  fisher@nka.com
- **Charles G. Frohman**
  frohman@nka.com
- **George A. Hanson**
  hanson@stuevesiegel.com
- **Hunter R. Hughes , III**
  hrh@rh-law.com
- **Steven D. Hurd**
  shurd@proskauer.com
- **Joseph H. Knittig**
  joek@c3missions.org
- **Paul J. Lukas**
  lukas@nka.com
- **J. Timothy McDonald**
  jtm@rh-law.com
- **Thomas Joseph Mew , IV**
  tmew@rh-law.com
- **Donald H. Nichols**
  nichols@nka.com
- **Ashlea G. Schwarz**
  ashlea@stuevesiegel.com

And the foregoing document was served via mail to the following non-ECF participant:

Christopher J. Willis
Rogers & Hardin LLP
2700 International Tower
229 Peachtree Street, N.E.
Atlanta, GA 30303-1601

7737/66816-047 Current/20852027v6

8

Dated: <u>October 29, 2010</u>                                         STUEVE SIEGEL HANSON LLP

<u>s/ George A. Hanson</u>
George A. Hanson, KS Bar No. 16805

ATTORNEY FOR PLAINTIFFS