IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X
ROXIE SIBLEY, JEANNE NOEL, ERNESTO      :
BENNETT, JAMIE WILLIAMS, GREG ST.       :
JULIEN, TRACIE HERNANDEZ, JOHN          :
JASINSKI, JAY RICHIE, and TEISHA KING,  :
individually and on behalf of a class of others :
similarly situated,                     :
                                        :
                Plaintiffs,             :
                                        :
        v.                              :   Case No. 02:08-CV-02063-KHV/JPO
                                        :
SPRINT NEXTEL CORPORATION, a Kansas     :
corporation                             :
                                        :
        and                             :
                                        :
SPRINT/UNITED MANAGEMENT                :
COMPANY, a Kansas corporation           :
                                        :
                Defendants.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X
```

**DEFENDANTS' MOTION TO MODIFY THE COURT'S
AMENDED SCHEDULING ORDER REGARDING CLASS-WIDE DISCOVERY**

Defendants submit this motion seeking the Court to modify its prior orders, the January 21, 2009 Amended Scheduling Order (Doc. No. 114) (as modified by the Court's June 2, 2009 Order (Doc. No. 138), October 26, 2009 Order (Doc. No. 163), and February 16, 2010 Order (Doc. No. 197)) and November 24, 2008 class certification order (Doc. No. 99), requiring Defendants to produce data for the entire class and modifying these prior Orders to require Defendants to produce data for a random sampling of 1500 class members.

For the following reasons, good cause exists to make these modifications:

1.      On November 28, 2008, the Court granted Plaintiffs' Motion for Class Certification and ordered Defendants produce class-wide data.  Within the same order (Doc. No.

99), the Court reserved its right to modify, amend or decertify its Class Certification Order pursuant to *Fed. R. Civ. P.* 23(c)(1)(C).

2.	Following the Court's class certification order, the Court issued an Amended Scheduling Order on January 21, 2009, wherein subsequent to other discovery deadlines Defendants were ordered to produce commission data for the entire class, now estimated at approximately 45,000 members ("Stage 3 discovery"). These class-wide discovery orders were prior to the parties conducting any data discovery with respect to the Named Plaintiffs.

3.	On April 19, 2010, at the request of the Parties and prior to the production of any Stage 3 discovery, the Court issued a stay of this matter to allow the parties explore whether they could agree to a plan to mediate this action. (Doc. No. 207.) The parties agreed on a mediation plan, and the Court subsequently continued the stay on several occasions while the parties mediated. (Doc. Nos. 209, 211, 213.)

4.	Although the Parties met and conferred extensively throughout the mediation process, they were unable to resolve this action. The efforts the Parties made during mediation between October 2010 and January 2011 are summarized in the Parties' Joint Motion to Further Stay Proceedings Pending Mediation, filed with the Court on January 11, 2011. (Doc. No. 212.)

5.	As detailed in the Parties' Joint Motion to Further Stay Proceedings Pending Mediation, filed with the Court on January 11, 2011 (Doc. No. 212.), during the course of the stay and the mediation sessions, Parties discussed the differences in their respective commission analyses and agreed to exchange certain information. In particular, in advance of the fourth mediation session on March 3, 2011, Plaintiffs provided Defendants with their experts' commission analysis for the mediation sample set of 95 selected class members, a class-wide

damage calculation, and a settlement demand.[1]  At that meeting, Plaintiffs explained to Defendants how they calculated the class-wide damages, and their experts explained how they came to their conclusions.  Defendants' expert discussed her analysis and how she reached her conclusions, and the experts discussed differences in their methodologies.  Following the Parties fourth mediation session on March 3, 2011, the Parties agreed to provide additional information relating to their analyses and then reconvene the mediation on March 25, 2011.

6. The Parties held a fifth mediation session on March 25, 2011.  Unfortunately, at that meeting the Parties decided that a settlement is not possible at this time.

7. The Court's January 12, 2011 Order stayed the action pending mediation until April 1, 2011, upon which date the Parties were required to submit a revised proposed scheduling order in the event mediation failed.  (Doc. No. 213.)

8. By letter dated April 1, 2011, the Parties reported to the Court on the status of the case, advised the Court that, despite good faith efforts by all parties, the mediation did not result in a successful resolution of this matter, and jointly requested that the deadline for submitting a revised scheduling order be extended to May 2, 2011, for good cause shown.

9. By Order dated April 6, 2011, the Court extended the deadline for submitting a proposed amended scheduling order to May 2, 2011.  (Doc. No. 220.)

10. On May 2, 2011, the Parties submitted their Joint Motion to Modify the Court's Amended Scheduling Order and To Request A Court Conference.  (Ex. A, Doc. No. 221.)  Within that Joint Motion, the Parties informed the Court that they disagree as to the scope of the Stage 3 discovery, specifically whether class-wide data for approximately 45,000 sales

---

[1] Originally, the mediation sample set was 100 class members rather than 95.  However, Plaintiffs objected to 5 members selected; thus, the mediation sample set ended up at 95 class members.

representatives will need to be pulled or whether random sampling of approximately 1500 sales representatives is more appropriate.

11.     As the Court is aware, this is a nationwide class action lawsuit in which Plaintiffs allege Defendants did not pay them all their commissions due.  Because of the very large volume of data at issue, on January 21, 2009 the Court entered a Scheduling Order that provided for a three-stage discovery process for the production of sales and commission related data.  (Doc. No. 114.)  At Stage 1 of that process, Defendants produced to Plaintiffs commissions-related data the Parties agreed was necessary for the six named Plaintiffs who held non-supervisory positions.  (Id. at ¶ 2.e.)  At Stage 2, Plaintiffs were to specify what additional data they believed they would need to perform their analysis for the entire class.  (Id. ¶ 2.f.)  At Stage 3, Defendants were to produce the data the Parties agreed was necessary for the entire class.  (Id. ¶ 2.g.)

12.     On July 13, 2009, Plaintiffs served their Stage 2 demand on Defendants.  That Stage 2 demand requested a substantial production of data, and asked numerous questions regarding Defendants' computer systems and data sets.

13.     In response, Defendants produced a substantial amount of technical information regarding their computer systems and data sets to Plaintiffs, so the Parties could attempt to reach agreement on what would be included in the Stage 3 production.  Moreover, the Parties were working together to try to reach agreement on the queries that Defendants would use to collect the data, and engaging in discovery related to Defendants' systems.

14.     As stated previously, during the mediation process, the Parties agreed that Defendants would produce certain commission related data for the sample mediation set of 95 class members.  Through this process, Defendants have provided additional information about

4

Defendants' data systems and their processes for pulling the data.  The data extraction for the sample mediation set of 95 is substantially similar to that used for Stage 3 discovery.

15. The sample mediation set of 95 was extracted, reviewed and produced over the course of approximately 5 months.  As set forth in the Parties' Joint Motion to Further Stay Proceedings Pending Mediation, filed with the Court on January 11, 2011 (Doc. No. 212.), the Parties each had to spend several months reviewing and analyzing the extracted data on an individual-by-individual basis and then transaction-by-transaction basis for each individual for the limited time period agreed upon by the Parties for the mediation.

16. Knowing how the sample mediation set of 95 took the Parties and how long the litigation has ensued, Defendants proposed to Plaintiffs that a random sampling of 1500 class members[2] be used for the Stage 3 discovery rather than conduct Stage 3 discovery for the entire class, now numbering at approximately 45,000 members. [3]  Despite their arguments to move this litigation forward, Plaintiffs disagreed.

17. The minimum estimated time merely to extract and to produce Stage 3 discovery for an estimated 45,000 class members, employing 6 additional personnel working at least 45 hours a week for 24 weeks or approximately 7,500 man-hours, is estimated at a minimum of 24 weeks/6 months.  (*See* Ex. B, Thornton Aff., ¶¶ 3-7.)  The estimated minimum 24-week extraction period includes an estimate of the time required to accommodate computer system constraints, i.e., the extraction of the data will have to occur when Sprint's computer systems are

---

[2] In addition to the 1500 random sampling, the Parties would reserve the ability to include in any Stage 3 discovery the 9 Named Plaintiffs and any other individuals identified by either Party beyond the 1500 random sampling during the course of litigation.

[3] An end date for membership in the class has not yet been set.  Therefore, additional class members will be added until the end date is established; thus, it is conceivable that should the Court not set an end date for the class, Stage 3 discovery could continue for years.  By way of example, Plaintiffs' April 28, 2011 letter to Defendants set forth several different proposals for pulling Stage 3 discovery for the entire class, each proposal contemplates further extending the cut-off date for the class.  (*See* Ex. C.)  This class that continues in perpetuity is precisely why Stage 3 discovery should be limited to a random sampling of 1500 class members.  (*See* Ex. B, Thornton Aff., ¶¶ 9, 13-14, 18.)

able to execute the scripts without interfering with the day-to-day operation of the commissions processing. After the data is extracted, it will need to be reviewed for completeness to ensure that all of the data was accurately extracted. *Id.*

18. Thereafter, the Parties will have to engage in the respective review and analysis conducted for the 95-mediation sample. For each party to conduct this review and analysis for the approximate 45,000 class members, an additional, and aggressive, minimum of 3-4 months will need to be added to the minimum 6-month extraction period. (Ex. B., Thornton Aff. ¶¶ 3-7.) As the Parties experienced during the mediation process, the review and analysis of Stage 3 discovery requires that an individual-by-individual review occur, and for each individual, a transaction-by-transaction analysis for that particular person spanning the course of 6 years. Not a single transaction entry can be skipped for a single individual.

19. Thus, in short, for the Parties to conduct all of the Stage 3 discovery for the entire class of approximately 45,000 individuals will take a minimum of 10-13 months. (Ex. B., Thornton Aff. ¶¶ 3-7.) Consequently, the litigation will continue for *at least another year*, which is outlined in the Parties' Joint Motion to Modify the Court's Amended Scheduling Order and to Request Court Conference. (Ex. A, Doc. No. 221.)

20. As explained to Plaintiffs, Stage 3 discovery for the entire class is not necessary for the Parties to litigate the case. Rather, a random sampling of 1500 class members is appropriate. (Ex. B, Thornton Aff., ¶¶ 9-18.) As explained in Defendants' expert affidavit, a 1500 random sampling is optimal for this litigation because it has minimizes any margin of error, is the most sufficient number to permit the Parties to litigate the merits of the claims asserted, and is the most efficient way to move the litigation forward. *Id.*

21.     As Defendants' expert affidavit sets forth, usage of a random sampling is appropriate in cases such as this one. (Ex. B, Thornton Aff. ¶¶ 10-12.) Defendants' expert affidavit also sets forth the explanation as to minimizing any margin of error and capture the requisite number either party will need to litigate the respective positions. *Id.*

22.     A random sampling of 1500 class members makes further sense when considering the amount of time and individual analysis that will occur. As set forth in Defendants' expert affidavit, a random sampling of 1500 class members will take 4-5 months alone for data extraction, review and production. (Ex. B, Thornton Aff. ¶¶ 13-14.)

23.     Following extraction and production, the Parties would then have to analyze the random sampling of 1500 on an individual-by-individual basis. Then, for each individual, the Parties would have to examine for each individual each and every transaction spanning 6 years. In summary, for the Parties to conduct the entire Stage 3 discovery for just a random sampling of 1500 individuals will take a minimum of 7 - 9 months. (Ex. B, Thornton Aff. ¶¶ 13-14.)

24.     Therefore, Defendants ask that the Stage 3 discovery be amended for a random sampling of 1500 class members because this modification ensures that this litigation continues to move forward in an effective and efficient manner after pending for over 3 years.[4]

WHEREFORE, for good cause shown, the Defendants respectfully request that the Court grant their Motion to Modify the Amended Scheduling Order, reducing Stage 3 discovery from the entire class of approximately 45,000 members to a random sample of 1500 class members.

Respectfully submitted this 2nd day of May, 2011.

---

[4] Defendants proposed the 1500 random sampling for Stage 3 discovery to Plaintiffs. Part of the proposal included how the Court's Amended Scheduling Order would look should the Parties agree to conduct Stage 3 discovery for a 1500 random sampling of class members. A copy of this draft proposed Amended Scheduling Order is attached as Exhibit D to this Motion.

8

*/s/ Michael L. Blumenthal*
**SEYFERTH, BLUMENTHAL & HARRIS LLC**
Michael L. Blumenthal
KS Bar No. 18582
300 Wyandotte, Suite 430
Kansas City, MO  64105
Tel: 816-756-0700
Fax:  816-756-3700
Email:   mike@sbhlaw.com

*/s/ Elise M. Bloom*
**PROSKAUER ROSE LLP**
Elise M. Bloom*
Eleven Times Square
New York, NY 10036
Tel: 212-969-3410
Fax: 212-969-2900
Email:  ebloom@proskauer.com
(*Admitted *Pro Hac Vice*)

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of May 2011, the foregoing **Motion to Modify the Court's Amended Scheduling Order Regarding Class-Wide Discovery** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

> George A. Hanson
> Steve Siegel Hanson LLP
> 460 Nichols Road, Suite 200
> Kansas City, Missouri 64112
>
> Nichols Kaster, PLLP
> Donald H. Nichols
> Paul J. Lukas
> Michele R. Fisher
> 4600 IDS Center, 80 South 8th Street
> Minneapolis, Minnesota 55402

> Respectfully submitted,
>
> /s/ Michael L. Blumenthal
> Attorney for Defendants