**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

ROXIE SIBLEY, et al,

                 Plaintiffs,

v.

SPRINT NEXTEL CORPORATION, et al,

                 Defendants.

Case No. 02:08-CV-02063-KHV/JPO

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL RESPONSES TO THIRD INTERROGATORIES

### I.      INTRODUCTION

After three years of litigation, and consistent with the Court's scheduling orders, Plaintiffs are a few months away from finally receiving from Defendants the class-wide data necessary to conduct the analysis that will prove their case. Plaintiffs' experts continue to prepare for this class-wide "Stage 3" data production due in December, Plaintiffs have scheduled numerous depositions of 30(b)(6) witnesses, and are preparing the other discovery they will conduct over the next year until the November 2012 discovery deadline. The experts' analysis and the discovery that Plaintiffs will conduct over the next fifteen months is necessary to respond to Defendants' inevitable motion to decertify and to prepare for trial. In the midst of this activity, all of which is consistent with the Court's scheduling order, Defendants bring this motion to compel a "trial plan" and a list of "common issues."

Although this demand is premature, Plaintiffs supplemented their discovery answers in response to Defendants' motion and provided Defendants with the information they seek. Plaintiffs have provided detailed supplemental interrogatory responses setting forth numerous

common issues of fact and law, how they anticipate those issues will be tried, and how their experts plan to analyze damages due to the class. However, Defendants maintain that Plaintiffs' responses are insufficient, and proceed with this motion. Because 1) Defendants are not entitled to this information at this stage of the litigation, 2) Plaintiffs have responded to Defendants' interrogatories with the information they currently have, and 3) Defendants will receive additional information consistent with the Federal Rules of Civil Procedure and this Court's scheduling orders after Plaintiffs have completed discovery and their expert report, Defendants' motion to compel should be denied.

## II.     FACTS RELEVANT TO MOTION

### A.     The Three Stages of Court Ordered Discovery.

As the Court is aware, this is a nationwide class action in which Plaintiffs allege Defendants did not pay them all their commissions due. (Doc. No. 99.) After the Court granted Plaintiffs' motion for class certification, on January 21, 2009 it entered a Scheduling Order that provided for a three-stage discovery process for the production of sales and commission-related data for the class. (Doc. No. 114.) At Stage 1 of that process, Defendants produced to Plaintiffs commissions-related data the parties agreed was necessary for the six named Plaintiffs who held non-supervisory positions. (Id. ¶ 2.e.) At Stage 2, Plaintiffs specified what additional data they believed they needed to perform their analysis for the entire class. (Id. ¶ 2.f.) At Stage 3, Defendants are to produce the data the parties agree is necessary for the entire class. (Id. ¶ 2.g.)

### B.     The Failed Mediation and the Resumption of Litigation.

In May 2010, shortly before Defendants' Stage 3 class-wide data production was due, the parties agreed to mediate, and accordingly, the Court stayed the case pending mediation. (Doc. No. 209.) The parties spent many months in mediation, and resumed litigation in April 2011,

when mediation failed.  In June 2011, the Court entered a Fourth Amended Scheduling Order setting revised deadlines for this case and ordering Defendants to produce commissions-related data for the entire class by December 23, 2011.  (Doc. No. 227.)  The Court set a deadline for initial expert reports of May 21, 2012, a discovery deadline of November 21, 2012, and a trial date of June 13, 2013.  (Id.)  Since litigation resumed, on May 17, 2011, Defendants served a third set of interrogatories and requests for production of documents on the named Plaintiffs, to which all of the named Plaintiffs responded on June 16, 2011.  (Fisher Decl. ¶ 2.)  On June 17, 2011, Plaintiffs provided Defendants with a draft of a notice of deposition pursuant to Fed. R. Civ. P 30(b)(6) and are currently in the process of working through Defendants' objections to each topic, in order to schedule it.  (Id. ¶ 3; Ex. B.)  Moreover, Plaintiffs are awaiting Defendants' production of an updated class list, as the previous list is over two years old, which Defendants have promised to provide by August 5, 2011.  (Fisher Decl ¶ 4.)  In other words, the parties are now beginning the process of getting to the heart of the discovery in this action.

> ### C.    Defendants' Motion to Compel and Plaintiffs' Supplemental Answers.

Defendants move to compel Plaintiffs to provide them with what they refer to as "Plaintiffs' trial plan."  Although Plaintiffs believe that Defendants' request for the information sought in these interrogatories is premature, and more appropriately answered after significant discovery has occurred, Plaintiffs' Counsel sent Defendants a draft version of their supplemental responses to the interrogatories at issue on July 25, 2011.  (Id. ¶ 5.)  Plaintiffs served Defendants with a final version of their supplemental responses on July 29, 2011.[1]  (Id. ¶ 7; Ex. A.)

---

[1] The final version is substantially the same as the draft; Plaintiffs corrected where they had listed the Count I issues under the interrogatory referencing Count II, and vice-versa.  (Fisher Decl. ¶ 7.)

The specific interrogatories at issue and Plaintiffs initial objections, answers, and supplemental answers provided to Defendants are detailed below:

**INTERROGATORY NO. 3.** Set forth, and list separately for each of the following subparagraphs (a) through(c): (a) the questions of law or fact common to the class under Count I of the Complaint and how you propose that they be tried; (b) the questions of law or fact that are individualized and not common to the class under Count I of the Complaint and how you propose that they be tried; and (c) your proposed process for calculation and distribution of damages under Count I of the Complaint.

**ANSWER:** Plaintiffs object that this interrogatory is compound and each subparagraph is properly counted as a separate Interrogatory. Accordingly, Plaintiffs will respond to each subparagraph separately.

(a) Plaintiffs object on the grounds that this interrogatory is vague and ambiguous; seeks information protected by the attorney-client privilege and work product doctrine; calls for legal opinion and legal conclusion; and is premature, as discovery is ongoing. Plaintiffs will comply with the Court's scheduling order and the Federal Rules of Civil Procedure.

(b) Plaintiffs object on the grounds that this interrogatory is vague and ambiguous; overly broad; seeks information protected by the attorney-client privilege and work product doctrine; calls for legal opinion and legal conclusion; and is premature, as discovery is ongoing. Plaintiffs will comply with the Court's scheduling order and the Federal Rules of Civil Procedure.

(c) Plaintiffs object on the grounds that this interrogatory is vague and ambiguous; calls for legal opinion and legal conclusion; seeks information protected by the attorney-client privilege, work product doctrine and non-testimonial expert privilege; seeks information pertaining to Plaintiffs' expert report; and is premature, as discovery is ongoing. Plaintiffs will comply with the Court's scheduling order and the Federal Rules of Civil Procedure.

**SUPPLEMENTAL ANSWER:**

Subject to the foregoing objections, Plaintiffs, on behalf of themselves and the class, provide the following response:

(a) To date, Plaintiffs are aware of the following common issues of law and fact in this case:

- Did the commission system that all Plaintiffs and class members were subject to fail to pay accurate commissions?

- How should various provisions in the applicable commission agreements be interpreted or construed for the purpose of determining commissionable events?

- How should various provisions in the applicable commission agreements be interpreted or construed for the purpose of calculating commissions due?

- Must a "matching" occur between Sprint's billing system and commission system in order for certain transactions to be commissionable?

- Are Plaintiffs and the class entitled to commissions on certain commissionable events if, because of errors in Sprint's commission system, Sprint's commission system failed to match records correctly?

- Does the applicable commission plans' notice requirement for disputed commissions result in a forfeiture of earned commissions?

- Is the language in the compensation agreement that provides for potentially indefinite delay in Sprint's determination of whether commissions are earned enforceable?

- Does the compensation agreement contain conditions precedent that preclude Plaintiffs and the class from bringing their claims for commissions?

- Can Defendants, through a provision in the commission plan, cause Plaintiffs and the class to constrain or waive rights created by the KWPA?

- Was Sprint's failure to pay accurate commissions a violation of the Kansas Wage Payment Act?

- Are liquidated damages/penalties appropriate pursuant to the Kansas Wage Payment Act?

- Is the limitations period set forth in the compensation agreements valid with respect to limiting the timeframe for the Kansas Wage Payment Act claim?

- What is the applicable statute of limitations for the Kansas Wage Payment Act claim?

- If Plaintiffs did not to appeal certain disputed transactions through Sprint's appeals process are they precluded from bringing a Kansas Wage Payment Act claim for those transactions?

- What are the damages for the Plaintiffs and class members?

- Are the experts' testimony and reports admissible for trial?

- Does Sprint's asserted defense of laches apply in this action?

- Is Sprint's asserted defense of waiver valid in this action?

- Is Sprint's asserted defense of estoppel valid in this action?

- Is Sprint's asserted defense of release valid in this action?

- Is Sprint's asserted defense of recoupment or set off valid in this action?

- Is Sprint's asserted defense of unjust enrichment valid in this action?

- Discovery is continuing and investigation into further common issues of law and fact continues.

With respect to the question of how these issues should be tried, Plaintiffs believe that many of these common issues of law and fact can be decided at summary judgment, after the parties have conducted discovery. To the extent any questions remain after the Court's ruling on the parties' motions for summary judgment, those issues will go to the jury for class-wide resolution on common proof, as these issues apply to the entire class.

Plaintiffs anticipate that trial will include testimony from the parties' experts, who will be reviewing and analyzing Sprint's class-wide data production and calculating class-wide damages. Plaintiffs also intend to call several witnesses to support their claims that Sprint's commission system caused Sprint to pay the class inaccurately. Those witnesses will include, but will not be limited to, current and former Sprint retail employees, their managers, upper management, Sprint commission department employees, Sprint appeals department employees, Sprint systems and IT employees, Sprint risk management employees, and various people who were part of Sprint's initiatives relating to its problems with not being able to accurately calculate and pay commissions due to the class. Plaintiffs also plan to introduce numerous documents produced by Sprint detailing, for instance, how its commission system did not accurately determine the commissions due to the class, the problems with the system, and the problems with Sprint's internal appeals process. Plaintiffs cannot identify at this time who they intend to call as witnesses at trial or which documents they will use, as discovery is continuing consistent with the Court's scheduling orders. Plaintiffs will supplement this information consistent with these scheduling orders and the Federal Rules of Civil Procedure.

(b) At this time, Plaintiffs are not aware of any relevant facts or questions of law that are uncommon to Plaintiffs and the class. Plaintiffs will supplement this

information consistent with the scheduling orders applicable to this case and Federal Rules of Civil Procedure.

(c)  With respect to calculating damages, Plaintiffs' experts plan to use the class-wide commission-related data that will be produced by Sprint, in order to run their largely automated process to produce a report identifying the amount of damages each class member sustained as a result of Sprint's failure to pay accurate commissions.  Plaintiffs are developing an automated process to analyze all data related to each transaction found throughout Defendants' various systems to determine if the transaction is commissionable, whether Defendants paid the commission properly, and whether additional compensation is due.  Plaintiffs have set up their system to standardize, process, and import the class-wide data, have developed coding to analyze and search the class-wide data, and have prepared a reporting mechanism to explain their results.  They continue to refine that process in preparation for the class-wide commission-related data production and their expert reports.

Plaintiffs will explain their process for calculating and distributing damages in more detail after their experts have the data and have been able to analyze it.  That information will be provided through their expert reports and testimony consistent with the scheduling orders for this case and Federal Rules of Civil Procedure.

**INTERROGATORY NO. 4.**  Set forth, and list separately for each of the following subparagraphs (a) through (c): (a) the questions of law or fact common to the class under Count II of the Complaint and how you propose that they be tried; (b) the questions of law or fact that are individualized and not common to the class under Count II of the Complaint and how you propose that they be tried; and (c) your proposed process for calculation and distribution of damages under Count II of the Complaint.

**ANSWER:**  Plaintiffs object that this interrogatory is compound and each subparagraph is properly counted as a separate Interrogatory.  Accordingly, Plaintiffs will respond to each subparagraph separately.

(a)  Plaintiffs object on the grounds that this interrogatory is vague and ambiguous; seeks information protected by the attorney-client privilege and work product doctrine; calls for legal opinion and legal conclusion; and is premature, as discovery is ongoing.  Plaintiffs will comply with the Court's scheduling order and the Federal Rules of Civil Procedure.

(b)  Plaintiffs object on the grounds that this interrogatory is vague and ambiguous; overly broad; seeks information protected by the attorney-client privilege and work product doctrine; calls for legal opinion and legal conclusion; and is premature, as discovery is ongoing. Plaintiffs will comply with the Court's scheduling order and the Federal Rules of Civil Procedure.

(c)  Plaintiffs object on the grounds that this interrogatory is vague and ambiguous; calls for legal opinion and legal conclusion; seeks information protected by the attorney-client

privilege, work product doctrine and non-testimonial expert privilege; seeks information pertaining to Plaintiffs' expert report; and is premature, as discovery is ongoing. Plaintiffs will comply with the Court's scheduling order and the Federal Rules of Civil Procedure.

**SUPPLEMENTAL ANSWER:**

Subject to the foregoing objections, Plaintiffs, on behalf of themselves and the class, provide the following response:

See Plaintiffs' supplemental answer to each subsection of Interrogatory No. 3. In addition to Plaintiffs' response to Interrogatory 3(a), to date, Plaintiffs have identified the following common issues of law and fact:

- Was Sprint's failure to pay accurate commissions a breach of its compensation agreement with Plaintiffs and the class?

- Is the limitations period set forth in the applicable compensation agreements valid with respect to limiting the timeframe of the breach of contract claim?

- What is the applicable statute of limitations for the breach of contract claim?

On July 28, 2011, Defendants informed Plaintiffs that it was their position that Plaintiffs responses were still deficient. (Fisher Decl. ¶ 6.)

**D**.      **Plaintiffs Are Proceeding Consistent with the Court's Orders and the Process Defendants Previously Stated Was Necessary to Maintain a Class in this Case.**

Plaintiffs have been open with Defendants about the common issues in this case and how they plan to prove damages. Indeed, in November 2008, the Court analyzed several common issues presented by Plaintiffs and how damages might be handled at trial and concluded that class certification was appropriate. (See Doc. No. 99.) Initially, Plaintiffs proposed analyzing damages for a representative group. (See e.g. Plaintiffs' Class Certification Briefing, Doc. Nos. 66 at 7, and 84, Ex. 1 at 8.) However, Defendants adamantly opposed such a plan, complaining that Plaintiffs "want the Court to hold Sprint liable for unpaid commissions without requiring the

Plaintiffs to prove that all of those commissions were, in fact, unpaid[,]" and stated that if the case was certified as a class action, "Plaintiffs will have to present evidence for every allegedly unpaid commission." (Doc. No. 90 at 5-6 (emphasis in original).)

Plaintiffs have taken Defendants up on this challenge, and, subsequent to certification, reached an agreement with Defendants on how discovery of the commissions-related data would proceed in a three-stage process. The Court approved that process in its January 2009 Amended Scheduling Order. (Doc. No. 114.) As already described above, this staged process contemplated a class-wide production of commissions-related data so Plaintiffs could perform their analysis for the entire class. (Doc. No. 114 at 5.) Furthermore, Plaintiffs had several conversations with Defendants during mediation where they explained in detail and demonstrated how their experts are calculating damages via an automated system that analyzes Defendants' commissions-related data, and shared their individual analyses for the class members. Plaintiffs will follow a similar process when we receive the data for the entire class. (Fisher Decl. at ¶ 8.) Moreover, Plaintiffs' recently reiterated that same plan to the Court in Plaintiffs' Response in Opposition to Defendants' Motion to Modify the Court's Amended Scheduling Order Regarding Class-Wide Discovery:

> Plaintiffs' experts plan to run their largely automated process for the entire class to produce a report identifying the amount of damages for each class member. They have developed an automated process to analyze all data related to a transaction found throughout Defendants' various systems to determine if the transaction is commissionable or not, whether Defendants paid the commission properly, and whether additional compensation is due. Plaintiffs' experts tested this automated process on the mediation sample and have spent considerable time refining and preparing it and their systems to handle the data for the entire class, pursuant to the parties' previous agreement and this Court's order.

* * *

> In short, Plaintiffs' experts' entire system is set up to search class-wide data to find, for instance, transactions that relate to one another but, due to Defendants' system errors, may not necessarily have the correct employee identification numbers on them. They have set up their systems to standardize, process, and import the class-wide data, have developed intricate coding to analyze and search the class-wide data, and have prepared a reporting mechanism to explain their results.

(Doc. No. 224 at 7-9.) This is still Plaintiffs' plan.

## III. ANALYSIS

### A. <u>Defendants are Not Entitled to Plaintiffs' Trial Plan Now.</u>

Defendants' interrogatories at issue are contention interrogatories. Courts, using their Rule 33(a)(2) discretion, commonly find that contention interrogatories need not be answered until the end of discovery. <u>EBay Seller Antitrust Litig.</u>, 2008 WL 5212170, at *1 (N.D. Cal. 2008) (citing <u>Tennison v. City & County of San Francisco</u>, 226 F.R.D. 615, 618 (N.D. Cal. 2005)). Courts tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery is almost over. <u>Id.</u>; <u>see also</u> <u>Manual for Complex Litigation, Fourth</u>, § 11.461 ("Rule 33(c) permits interrogatories that call for 'an opinion or contention that relates to fact or the application of law to fact,' but permits the court to defer an answer 'until after designated discovery has been completed or until a pretrial conference or other later time.'").

There is no requirement that Plaintiffs provide a trial plan either in advance of class certification or during discovery. <u>O'Sullivan v. Countrywide Home Loans, Inc.</u>, 202 F.R.D. 504, 514 (S.D. Tex. 2001) (finding Plaintiffs are under no obligation to submit a trial plan and failing to do so is no bar to certification), rev'd on other grounds, 319 F.3d 732 (5th Cir. 2003)). Defendants cite <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541 (2011), as authority for their argument that Plaintiffs must provide their trial plan now. The <u>Dukes</u> decision does not impose

any such requirement. If anything, a review of the <u>Dukes</u> case confirms how the instant case is inapposite, and is exactly the type of case that should proceed to trial on a class-wide basis. In <u>Dukes</u>, resolution of the plaintiffs' gender-based Title VII claims, brought under Rule 23(b)(2), depended on the reasons for each particular employment decision made by thousands of different managers across the country. <u>Dukes</u>, 131 S. Ct. at 2545-48, 2552. The plaintiffs wanted to sue as a class over "literally millions of employment decisions at once," but the Supreme Court explained that "without some glue holding the alleged reasons for all those decisions together, it [would] be impossible to say that examination of all the class members' claims for relief [would] produce a common answer to the crucial question *why was I disfavored*." <u>Id.</u> at 2552.[2] In contrast, the commissions claims before this Court do not require an examination of the subjective intent behind millions of individual decisions; rather, the crux of this case is whether Defendants' commission system failed to pay the class members accurate commissions, and if so, how much the class members are due. The common contention is that Defendants' commission system did not pay accurate commissions because of technical system problems, a contention that Plaintiffs will prove through Defendants' own documents and data, numerous witnesses, and Plaintiffs' expert reports.

When the Court certified this case as a Rule 23(b)(3) class action, it performed a rigorous analysis to ensure the requirements of Rule 23 were satisfied, and identified several issues that are capable of class-wide resolution. Moreover, the Court found that a class action was superior.

---

[2] Defendants' reliance on tobacco cases to support their position fairs no better. (Doc. No. 230, Defs.' Mem. at 7-8). In those cases, the Court denied class certification because they required individual showings of reliance and addiction. <u>See</u> <u>Benedict v. Altria</u>, 241 F.R.D. 668 at 679-80 (D. Kan. 2007) (finding that the consumer protection statute at issue required individual showings of reliance, as well as individual showings of the amounts of tar and nicotine received by individual smokers); <u>Emig v. Am. Tobacco Co., Inc.</u>, 184 F.R.D. 379, 389 (D. Kan. 1998) ("Determining addiction requires numerous individual inquiries about class members").

The alternative would be tens of thousands of individually filed actions in this Kansas Court,[3] making the exact same assertions—that Plaintiffs were all subject to Defendants commission system that did not pay them accurate commissions—and all relying on the same expert class-wide commission analysis of commissions due.

Plaintiffs have provided Defendants and the Court with information about how they intend to proceed at trial, even though the request is premature. This information is more than sufficient to assist Defendants in determining how to conduct discovery and prepare their case. There is still more than one year left of discovery and initial expert reports are not due until next summer. Indeed, Plaintiffs experts will not receive the class-wide data they need to perform their analysis from Defendants until December 23, 2011. Consistent with their discovery obligations, Plaintiffs will supplement the information sought by Defendants as the case progresses and their trial plan evolves. No more is required of Plaintiffs at this time. See O'Sullivan, 202 F.R.D. at 514 (denying motion to compel trial plan where the plaintiffs had informed the court as to how they intended to proceed).

## B. Plaintiffs Have Identified Issues Common and to the Class and How They Should Be Tried.

Plaintiffs have identified for Defendants numerous issues common to the class and how they should be tried. Again, Plaintiffs will supplement their response as necessary as discovery proceeds. Plaintiffs are not aware of any relevant issues that are not common to the class and have stated so in their answer. There is nothing further to provide at this time on these topics.

---

[3] Defendants' contracts at issue require all Plaintiffs to litigate their claims in Kansas, under Kansas law. (See Doc. No. 77 at 5, n. 2.)

### C. **Plaintiffs Have Provided Sufficient Information at This Time About Their Process for Calculating and Distributing Damages.**

Plaintiffs' Counsel have provided Defendants with information as to how they plan to calculate and distribute damages, have given Defendants a demonstration of their process, and will provide a full explanation in Plaintiffs' expert reports. Defendants are not producing commissions-related data for the entire class until December 2011, and Plaintiffs' experts have not yet seen or analyzed it. Defendants will receive Plaintiffs' expert report and will subsequently have the opportunity to depose the experts on their methods and process, in accordance with the scheduling order and consistent with Federal Rules of Civil Procedure 26(a)(2) and (b)(4)(A). In reality, what Defendants are demanding, is that Plaintiffs produce their expert report now. Such a demand is not appropriate at this time. See Ross v. Abercrombie & Fitch Co., 2010 WL 518169, at *1 (S.D. Ohio, Feb. 4, 2010) (denying request for answers to contention interrogatories where plaintiffs' expert reports, which were not yet due, will disclose in great detail their position on the issues); New Haven Temple SDA Church v. Consol. Edison Corp., 1995 WL 358788, at *5 (S.D.N.Y. June 13, 1995) (stating that contention interrogatories seeking information about damages were premature where parties would be using an expert, and that the Federal Rules of Civil Procedure provided for a process to obtain this information, typically near the close of fact discovery.).

## IV.    CONCLUSION

Despite the authority supporting Plaintiffs' position that disclosure of their trial plan now is premature, Plaintiffs have provided Defendants with supplemental answers containing information more than sufficient to meet their discovery obligations. Plaintiffs will further supplement this information in accordance with the Federal Rules of Civil Procedure, and will

provide further detail when they provide their experts reports in May 2012, consistent with the deadlines set by the Court.

This case was certified by the Court after careful consideration of the claims and defenses asserted and how those claims can be tried. Defendants challenged Plaintiffs to perform a class-wide damage analysis, presumably believing Plaintiffs could not do so. Now that Defendants realize Plaintiffs can do it, they are demanding that Plaintiffs provide what is effectively a preliminary expert report, before Defendants have produced the data Plaintiffs need, and far in advance of when the expert reports are due. This motion to compel is premature, and will likely continue with a premature motion to decertify the class. There will be a time when it is appropriate for Plaintiffs to provide a final trial plan; there will also be a time when Defendants' arguments to decertify the class are appropriate. Now is not the time for either. Accordingly, Defendants' Motion to Compel Responses to Third Interrogatories should be denied.


Dated:  August 1, 2011

*/s/ George A. Hanson*
**STUEVE SIEGEL HANSON LLP**
George A. Hanson
KS Bar No. 16805
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: 816-714-7100
Fax: 816-714-7101

**NICHOLS KASTER, PLLP**
Michele R. Fisher*
Paul J. Lukas*
Charles G. Frohman*
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: 612-256-3200
Fax: 612-215-6870
(*Admitted *Pro Hac Vice*)

ATTORNEYS FOR THE CLASS

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 1, 2011, a true and correct copy of **Plaintiffs' Memorandum in Opposition to Motion to Compel Responses to Third Interrogatories** and all supporting documents were electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send an email notification to the following attorneys:

J. Timothy McDonald
Rogers & Hardin
2700 International Tower,
Peachtree Center
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
tmcdonald@rh-law.com

Hunter Hughes
Rogers & Hardin
2700 International Tower,
Peachtree Center
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
hrh@rh-law.com

Christopher Willis
Rogers & Hardin
2700 International Tower,
Peachtree Center
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
ewillis@rh-law.com

Thomas Mew
Rogers & Hardin
2700 International Tower,
Peachtree Center
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
TMew@rh-law.com

Michael L. Blumenthal
Seyferth, Blumenthal & Harris LLC
300 Wyandotte, Suite 430
Kansas City, MO 64104
mike@sbhlaw.com

Elise M. Bloom
Gregory Rasin
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299
ebloom@proskauer.com
grasin@proskauer.com

Dated: August 1, 2011

**STUEVE SIEGEL HANSON LLP**
*/s/ George A. Hanson*
George A. Hanson, KS Bar # 16805
Email: hanson@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: 816-714-7100
Fax: 816-714 7101

**NICHOLS KASTER, PLLP**
Charles G. Frohman
Email: frohman@nka.com
Paul J. Lukas
Email: lukas@nka.com

16

Michele R. Fisher
Email: fisher@nka.com
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: 612-256-3200
Fax: 612-215-6870
(All Admitted Pro Hac Vice)

ATTORNEYS FOR PLAINTIFFS