**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
ROXIE SIBLEY, JEANNE NOEL, ERNESTO         :
BENNETT, JAMIE WILLIAMS, GREG ST.          :
JULIEN, TRACIE HERNANDEZ, JOHN             :
JASINSKI, JAY RICHIE, and TEISHA KING,     :
individually and on behalf of a class of others :
similarly situated,                        :
                                           :
                Plaintiffs,                :
                                           :
        v.                                 :   Case No. 02:08-CV-02063-KHV/JPO
                                           :
SPRINT NEXTEL CORPORATION, a Kansas        :
corporation                                :
                                           :
        and                                :
                                           :
SPRINT/UNITED MANAGEMENT                   :
COMPANY, a Kansas corporation              :
                                           :
                Defendants.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION
TO COMPEL RESPONSES TO THEIR THIRD INTERROGATORIES**

### I. INTRODUCTION

Defendants move to compel discovery that is provided for under the Federal Rules of Civil Procedure and governing case law. Named Plaintiffs' Opposition and Amended Answers to Defendants' Third Set of Interrogatories, Nos. 3 and 4, failed to rebut sufficiently prevailing case law and to satisfy Fed. R. Civ. P. 23(b)(3)'s requirements. Rather, Plaintiffs' deficient interrogatory answers highlight the necessity of the discovery sought and reinforce Defendants' ultimate argument that the case should be decertified.

## II.    CLASS CERTIFICATION

On or about February 7, 2008, Plaintiffs filed a four count complaint in this Court on behalf of themselves and other individuals similarly situated alleging violations of the Kansas Wage Payment Act, K.S.A. § 44-313, *et seq.* and breach of contract, among other claims, arising from alleged problems with Defendants' computer systems that they claim impacted commission payments.  (Doc. No. 1.)  Plaintiffs amended that complaint on or about February 26, 2008.  (Doc. No. 8.)

Even though discovery had not been conducted, on May 2, 2008, Plaintiffs moved for class certification.  (Doc. No. 36.)  Although lacking *any* evidentiary proof, Plaintiffs represented to the Court that "[s]ince [the merger], Plaintiffs and the class members have been *systematically* denied commissions they are due" as a result of an alleged computer system failure.  (Doc. No. 37, Pls.' Mem. at 4 (emphasis added); Ex. 1, Pls.' Decls. ¶¶ 2 & 5; Ex. 2, Putative Class Members' Decls. ¶¶ 2 & 5.)  Even though the parties had yet to conduct any discovery, Plaintiffs argued that:

> Here, each class member was affected in the same way by the same problem: Defendants' computer system underreported and miscalculated the revenue generated by or attributed to each class member, and as a result, Defendants regularly underpaid and improperly deducted money from each class member's commissions.  (Pls.' Mem. at 18.)

Because Plaintiffs consistently represented that any alleged failure to pay commissions was a result of alleged *systematic* failures by Defendants' commissions systems, the Court certified the class under Fed. R. Civ. P. 23(b)(3).[1]  (Doc. No. 99.)  The Court stated:

---

[1] In fact, Plaintiffs used the words "systematic" or "systematically" twenty times throughout their class certification briefs.  Repeated usage of these words is not without significance; and the fact that Plaintiffs' Amended Answers to Defendants' Third Set of Interrogatories fails to provide a trial plan with any common answers tied to their usage of these words from their class certification briefing suggests that Plaintiffs are unable to provide a trial plan to maintain their class.

> Specifically, the critical issues for trial are whether Sprint's accounting methods *systematically* under reported commissions and interpretation of the plans and CAFs under Kansas law. The Court finds that the common questions in this case predominate over individual questions as to each commissioned employee. (Doc. No. 99 at 20.) (Emphasis added.)

Within the Court's certification order, the Court ordered factual and data discovery, starting with the Named Plaintiffs.[2] In addition, as permitted under Fed. R. Civ. P. 23(c)(1)(C), the Court's certification order indicated that it could decertify the class in the future, specifically reserving the right to modify or amend the Class Certification Order.

In light of the representations made by Plaintiffs to the Court in their class certification briefing and the discovery conducted to date with respect to the Named Plaintiffs, Plaintiffs should be compelled to provide proper answers to Interrogatories Nos. 3 and 4.

### III.  ARGUMENT

To maintain a class under Fed. R. Civ. P. 23(b)(3), Plaintiffs are required to articulate a trial plan that demonstrates the case can proceed on a classwide basis, driving towards a classwide resolution. This type of non-privileged information is unquestionably relevant to Plaintiffs' ability to maintain – and eventually try – this case as a class action.[3] In their Opposition, Plaintiffs fail to address the case law cited on this issue or provide any viable

---

[2] Defendants have propounded discovery on the Named Plaintiffs and the 41 declarants Plaintiffs incorporated into their class certification motion, requesting that each individual identify with specificity the alleged commissions for which they have not been paid *and* the systematic computer system failure that led to identified commissions that were not paid. To date, the Named Plaintiffs and 41 declarants have failed to adequately answer these discovery requests, despite the Court's orders compelling them to do so. (See Doc. Nos. 81 & 159.)

[3] In their Opposition to Defendants' Motion to Compel, Plaintiffs misconstrued Defendants' class certification briefing. Plaintiffs state that Defendants "challenge[d]" them to prove and present evidence for every allegedly unpaid commission. (Doc. No. 232 at 8-9, 14.) That argument is incorrect. Defendants argued then and argue now that Plaintiffs' representations that the failure to pay commissions was a result of a *systematic* failure requires them to identify with specificity what that *systematic* failure is. (Doc. No. 45 at 1, 49-51.) The fact that the Named Plaintiffs still cannot identify *any* commissionable events for which they have not been paid, let alone commissions they have not received as a result of a *systematic* computer failure, underscores the concern Defendants have as to whether class certification is appropriate, including whether the case can be tried as a class.

argument as to why they should not be compelled to supply this information. As a result, Plaintiffs' Amended Answers are deficient because they do not provide the information required. Therefore, Defendants still seek to compel Plaintiffs to answer Defendants' Third Set of Interrogatories Nos. 3 and 4 in their entirety.

### A.   PLAINTIFFS MUST ARTICULATE A SUFFICIENT TRIAL PLAN NOW

#### 1.   Case Law Requires Plaintiffs to Disclose Their Trial Plan

Plaintiffs ignore the case law cited by Defendants in their memorandum as well as misrepresent the outdated case law discussed in their brief. Proper consideration of those cases demonstrates the propriety of Defendants' motion to compel Plaintiffs to disclose their trial plan.

At the outset, Plaintiffs' Opposition starts from the incorrect assumption that the Supreme Court's recent decision in Wal-Mart Stores, Inc. v. Dukes ("Dukes"), 131 S. Ct. 2541 (2011), only applies to Title VII class actions. In addition, Plaintiffs argue that Dukes, Benedict v. Altria Group, Inc., 241 F.R.D. 668, 679-81 (D. Kan. 2007), and Emig v. Am. Tobacco Co., 184 F.R.D. 379, 393-94 (D. Kan. 1998), are inapplicable because their case is unique in that there are *systematic* computer problems that affect the entire class, which do not require individual inquiries. However, the case law *and* Plaintiffs' Amended Answers undermine these arguments.

The cases cited by Defendants in their memorandum clearly demonstrate that Dukes is applicable to all Rule 23 class actions, not just Title VII cases. See, e.g., Altier v. Worley Catastrophe Response, LLC, Nos. 11-241, 11-242, 2011 WL 3205229 (E.D. La. July 26, 2011) (applying Dukes to deny certification in breach of employment contract class action); Martin v. Citizens Fin. Group, Inc., No. 2:10-cv-00260-MSG (E.D. Pa. June 23, 2011) (applying Dukes and granting motion to compel discovery of trial plan in Fair Labor Standards Act case).[4]

---

[4] A copy of this decision is attached as part of Exhibit C to the Declaration of Elise M. Bloom, Esq. to Defendants' Motion to Compel. (Doc. No. 229.)

In <u>Altier</u>, plaintiffs filed a putative class action, seeking payment of monies owed from defendants for breach of employment contract.  2011 WL 3205229 at *1.  Plaintiffs moved for class certification, and the district court denied the motion.  Specifically, the district court held that plaintiffs failed to satisfy Fed. R. Civ. P. 23(b)(3) and denied class certification to plaintiffs in an employment breach of contract class action because plaintiffs could not articulate a sufficient trial plan to satisfy Fed. R. Civ. P. 23(b)(3).  <u>Id.</u> at *15-16.  In <u>Altier</u>, the district court applied <u>Dukes</u> and determined that plaintiffs' failure to submit a trial plan demonstrated that there were not common answers to the triable questions at issue to drive the case to classwide resolution.  Here, Plaintiffs' breach of employment contract claims is no different.  Therefore, Plaintiffs must amend their answers to Interrogatories Nos. 3 and 4, articulating a trial plan that satisfies Fed. R. Civ. P. 23(b)(3)'s requirements.

Plaintiffs' reliance on the district court's opinion in <u>O'Sullivan v. Countrywide Home Loans, Inc.</u>, 202 F.R.D. 504 (S.D. Tex. 2001), is misplaced because Plaintiffs misrepresent what the district court held.  (Doc. No. 232 at 10 & 12.)  In their Opposition, Plaintiffs state the <u>O'Sullivan</u> district court denied a motion to compel the production of a trial plan.  (Doc. No. 232 at 12.)  This is incorrect.  The district court's opinion was *not* rendered on a motion to compel but rather a motion for class certification.  <u>O'Sullivan</u>, 202 F.R.D. 504.  In <u>O'Sullivan</u>, the district court granted certification, satisfied that the plaintiffs had informed the court of how they intended to proceed with the case.  <u>Id.</u> at 514.  However, the Fifth Circuit reversed the district court's opinion, concluding that class certification was not proper because individualized fact-finding would be required for each transaction with respect to one claim, and individualized calculations of damages predominated with respect to another claim.  <u>O'Sullivan v. Countrywide Home Loans, Inc.</u>, 319 F.3d 732, 742 (5th Cir. 2003).  Here, Plaintiffs' Amended Answers

attached to their Opposition show that the only answers they can provide are ones that rely upon individualized calculations, suggesting that a sufficient trial plan cannot be articulated.

In order to have a true "class," plaintiffs must now demonstrate "significant proof" that class members "suffered the same injury" and that their claims "depend upon a common contention . . . capable of class wide resolution," meaning that "the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." See Dukes, 131 S. Ct. at 2551. The Supreme Court's decision emphasizes the importance of a trial plan and the need for plaintiffs' counsel to submit a trial plan at the early stages of the litigation so that the district court may determine whether plaintiffs have demonstrated that their alleged "common contention" is actually "capable of class wide resolution." Id.; see also Altier, 2011 WL 3205229 at *15-16. As such, the Plaintiffs in this matter must present their trial plan and cannot avoid the clear mandate of the courts by ignoring these cases. Because Plaintiffs have failed to address the prevailing case law cited herein, as well as the case law in Defendants' memorandum, Defendants' discovery requests seeking Plaintiffs' trial plan are necessary and relevant to any future decision this Court may make with respect to the continued viability of the class certified in this case.

### 2. Plaintiffs Must Articulate a Trial Plan Now

Plaintiffs also contend in their Opposition that Interrogatories Nos. 3 and 4 seek information that is premature because discovery is ongoing and because the interrogatories seek information pertaining to expert reports.[5] Plaintiffs' arguments are unavailing. Rather, the cases cited by Defendants underscore that the discovery sought is not only appropriate but relevant at

---

[5] Plaintiffs' Opposition references pending Fed. R. Civ. P. 30(b)(6) depositions and classwide data. (Doc. No. 232 at 1-2, 13-14.) However, Plaintiffs fail to articulate how this discovery differs from the extensive discovery produced prior to now pertaining to the Named Plaintiffs, 41 declarants, and 95 random class members examined in mediation such that a trial plan still cannot be articulated, let alone an alleged *systematic* computer failure identified, to show how Plaintiffs intend to try this matter and obtain classwide resolution.

this stage of the proceeding.  See, e.g., Madison v. Chalmette Refining, L.L.C., 637 F.3d 551 (5th Cir. 2011) (reversing class certification because district court failed to obtain plaintiffs' trial plan at that stage in the proceeding); Altier, 2011 WL 3205229 at *15-16 (denying class certification because plaintiffs could not articulate a trial plan at that stage in the proceeding to satisfy Rule 23(b)(3)).  The requirement that Plaintiffs articulate how they will try this case on a class wide basis now is also necessary to ensure the efficient and proper litigation and trial of this case.  Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1278-79 (11th Cir. 2009) (vacating court's Rule 23(b)(3) certification order where plaintiffs had done "nothing to acknowledge" the individualized issues present in plaintiffs' claim for unpaid wages **and had not "propose[d] a trial plan that would feasibly address them,"** explaining that "[b]y putting off these issues until trial . . . both [plaintiff] and the district court ran an unnecessarily high risk of introducing needless and avoidable complexity into an already complex case," and "[t]his is why Rule 23 demands early consideration of class certification, including its practical implication for case manageability") (emphasis added).

Plaintiffs suggest that pending Fed. R. Civ. P. 30(b)(6) depositions and classwide data productions somehow render Defendants' requests for Plaintiffs' trial plan premature.  (Doc. No. 232 at 1-2, 13-14.)  Plaintiffs' suggestion is without merit.  Plaintiffs fail to articulate how this discovery would differ from the extensive discovery already conducted pertaining to the Named Plaintiffs, 41 declarants, and 95 random class members examined in mediation.  The extensive discovery conducted to date undercuts Plaintiffs' objection that additional discovery is needed before they can articulate a trial plan for the class upon which they obtained certification, namely a class of individuals allegedly underpaid commissions due to a *systematic* computer failure.  If the alleged systematic computer failure was sufficiently uniform to permit this case to be tried on

a class basis, then there is no reason Plaintiffs cannot tell Defendants and the Court what that systematic failure was, and how they will prove it at trial. Indeed the very contention that they cannot respond until they receive class-wide data amounts to an admission that this case cannot be maintained as a class action.

If Plaintiffs cannot establish the systematic computer problems that they allege affected commission payments to the class as a whole by using the data received to date, then Defendants have a right to know that now, not later after further expense, time and discovery are undertaken. Thus, the information sought is not an advance preview of Plaintiffs' expert report, but rather relevant discovery that Plaintiffs must provide in order to move forward with their case. That Plaintiffs still cannot prepare or disclose a trial plan after all of the information provided in connection with discovery and mediation is further proof that Defendants are entitled to this information to not only move for decertification, if appropriate, but to continue to affirmatively defend the case going forward.

### B.  **PLAINTIFFS' AMENDED ANSWERS ARE DEFICIENT**

In light of the case law discussed in Section III(A), Plaintiffs' Amended Answers attached to their Opposition are deficient, failing to moot Defendants' motion to compel.

As discussed, the Supreme Court's opinion in Dukes requires that plaintiffs must now demonstrate "significant proof" that class members "suffered the same injury" and that their claims "depend upon a common contention . . . capable of class wide resolution." 131 S. Ct. at 2551. To do so sufficiently for a class certified under Fed. R. Civ. P. 23(b)(3), the Altier court stated that a sufficient trial plan must be articulated. 2011 WL 3205229 at *10, *15-16. In short, the court held that "[w]hat matters . . . is not the raising of common 'questions' — even in droves

— but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." Id. at *7-8, *15-16 (citing Dukes, 131 S. Ct. at 2551).

Plaintiffs' Amended Answers do not offer answers, let alone common ones. For example, Plaintiffs' amended response to Interrogatory No. 3(a) identifies the following question not answer: "Did the commission system that all Plaintiffs and class members were subject to fail to pay accurate commissions?" (Doc. No. 232, Declaration of Michele R. Fisher, ¶ 9, Ex. A at 2.) Within the amended answer, this question is followed by another question: "How should various provisions in the applicable commission agreements be interpreted or construed for the purpose of determining commissionable events?" (Id.) Plaintiffs offer these questions as suitable responses for their trial plan for a class certified based on an alleged *systematic* computer failure. These articulated questions, as well as the others within the amended responses, are not responsive insofar as they do not provide answers as to *how* Plaintiffs intend to try the case for a *systematic* computer failure, let alone try the case classwide, and arrive at a common resolution. Thus, Plaintiffs' Amended Answers to Interrogatories Nos. 3(a), 3(b), 4(a) and 4(b) merely list triable questions, not common answers as required by Fed. R. Civ. P. 23(b)(3) and governing case law.

Further evidencing the impossibility of class-wide resolution are Plaintiffs' Amended Answers to Interrogatories Nos. 3(c) and 4(c). Here, Plaintiffs have failed to explain the process for calculation of damages among the class and how that proposed program will account for all of the various differences among the class. For example, the amended response to Interrogatory No. 3(c) states:

> With respect to calculating damages, Plaintiffs' experts plan to use the class-wide commission-related data that will be produced by Sprint, in order to run their largely automated process to produce a report identifying the amount of damages each class member

> sustained as a result of Sprint's failure to pay accurate commissions. Plaintiffs are developing an automated process to analyze all data related to each transaction found throughout Defendants' various systems to determine if the transaction is commissionable, whether Defendants paid the commission properly, and whether additional compensation is due. (Doc. No. 232, Declaration of Michele R. Fisher, ¶ 9, Ex. A at 5.)

In other words, Plaintiffs merely respond that they are building a database to run each class member's individual transactions and then will look at each individual's transactions to determine whether he or she has been underpaid. Thus, Plaintiffs' plan is to conduct *individual* calculations for each and every class member. However, Plaintiffs obtained class certification based upon their allegation that a *systematic* computer failure resulted in everyone in the class being underpaid in the same way. Plaintiffs' response now suggests that the basis for class certification does not exist because they must analyze each individual's data and perform individualized calculations to see if in fact *anyone* was underpaid, let alone whether a *systematic* computer failure led to any underpayment.

These Amended Answers underscore the need for Plaintiffs to articulate a trial plan that provides Defendants and the Court with an understanding as to how they intend to try this matter in order to drive the matter towards a classwide resolution, rather than offering a solution based on individualized issues. Thus, Plaintiffs' Amended Answers are deficient, and Defendants' motion to compel should be granted.

## IV.   CONCLUSION

Accordingly, Defendants respectfully request that the Plaintiffs be compelled to provide amended answers to Defendants' Third Set of Interrogatories, Nos. 3 and 4, in their entirety.

Respectfully submitted this 12th day of August, 2011.

       */s/ Michael L. Blumenthal*
       **SEYFERTH, BLUMENTHAL &**
       **HARRIS LLC**
       Michael L. Blumenthal
       KS Bar No. 18582
       300 Wyandotte Street, Suite 430
       Kansas City, Missouri 64105
       Tel: 816-756-0700
       Fax:  816-756-3700


       */s/ Elise M. Bloom*
       **PROSKAUER ROSE LLP**
       Elise M. Bloom*
       Eleven Times Square
       New York, New York 10036
       Tel: 212-969-3410
       Fax: 212-969-2900
       (*Admitted *Pro Hac Vice*)

       *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of August, 2011, the foregoing **Defendants' Reply Brief in Support of Their Motion to Compel Responses to Their Third Interrogatories** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

>Stueve Siegel Hanson LLP
>George A. Hanson
>460 Nichols Road, Suite 200
>Kansas City, Missouri 64112
>
>Nichols Kaster, PLLP
>Donald H. Nichols
>Paul J. Lukas
>Michele R. Fisher
>4600 IDS Center, 80 South 8th Street
>Minneapolis, Minnesota 55402

>Respectfully submitted,
>
>/s/ Michael L. Blumenthal
>Michael L. Blumenthal
>Kansas Bar No. 18582
>SEYFERTH, BLUMENTHAL & HARRIS LLC
>300 Wyandotte Street, Suite 430
>Kansas City, Missouri 64105
>Telephone: 816-756-0700
>Facsimile:  816-756-3700
>E-mail:  mike@sbhlaw.com