IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROXIE SIBLEY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 08-2063-KHV |
| ) | |
| SPRINT NEXTEL CORPORATION, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## **ORDER**

Plaintiffs, who are current and former employees of defendants' retail stores, bring this action under the Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-313, and various breach-of-contract theories, alleging defendants failed to pay them earned commissions. Currently before the undersigned U.S. Magistrate Judge, James P. O'Hara, is defendants' motion to compel plaintiffs to fully respond to Interrogatories Nos. 3 and 4 of Defendants' Third Set of Interrogatories **(doc. 229)**. Defendants assert that these interrogatories seek plaintiffs' "trial plan," which is necessary for an evaluation of whether this case may be maintained as a class action. For the reasons discussed below, the motion is denied.

The factual background of this case is set forth in detail in the November 24, 2008 Memorandum and Order of the presiding U.S. District Judge, Kathryn H. Vratil (doc. 99), and will only be summarized here. In their employment with defendants, plaintiffs were compensated under commission agreements (in addition to other pay). Defendants agreed to pay commissions for sales that qualified as "commissionable events," which included new

phone service activation and phone accessory sales.  Plaintiffs allege that due to problems with defendants' computer system, they were denied commissions for certain commissionable events and have had money improperly deducted for phone deactivations and service cancellations that occurred after more than six months had passed.

Plaintiffs moved for class certification on their claims of violation of the KWPA (Count I) and breach of contract (Count II).  After thoroughly reviewing the record and performing a detailed analysis, Judge Vratil concluded that class certification was proper under Fed. R. Civ. P. 23(a) and (b)(3).[1]  She noted, of course, that the court could decertify the class at a later time if it is determined that a class action "is not the most efficient form of litigating this controversy."[2]  She certified a class on November 24, 2008, and ordered defendants to provide the names and contact information for all potential class members.

Following the certification order, the undersigned entered a scheduling order setting dates for production of various stages of discovery.[3]  The parties have exchanged discovery for Stage 1 (data for the named plaintiffs) and Stage 2 (information needed to perform an analysis for the entire class), but Stage 3 discovery (data for the entire class) was stayed while the parties attempted to resolve their differences through mediation.[4]  When mediation

---

[1] Doc. 99.

[2] *Id.* at 22; *see* Fed. R. Civ. P. 23(c)(1)(C).

[3] Doc. 114.

[4] *See* docs. 207, 209, 211, 213, and 220.  During mediation, defendants produced data for a sample of 95 class members.

did not result in settlement, the undersigned entered an amended scheduling order which set December 23, 2011, as the deadline for the production of this Stage 3 data.[5]

On May 17, 2011, defendants served a third set of interrogatories and requests for production of documents on the named plaintiffs. The instant motion pertains to Interrogatories Nos. 3 and 4, which ask plaintiffs to set forth the questions of law or fact common to the class for Counts I and II and "how [plaintiffs] propose that they be tried." Defendants contend that these interrogatories essentially seek plaintiffs' "trial plan," which defendants assert they are entitled to, especially in light of the Supreme Court's recent decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).

In response to the motion, plaintiffs supplemented their answers to Interrogatories Nos. 3 and 4, and now contend that they have fully answered the questions asked. Defendants maintain, however, that the answers remain "deficient because they do not provide the information required."[6] Interrogatories Nos. 3 and 4, and plaintiffs' answers and supplemental answers to the same, read as follows:

> **INTERROGATORY NO. 3.**  Set forth, and list separately for each of the following subparagraphs (a) through (c): (a) the questions of law or fact common to the class under Count I of the Complaint and how you propose that they be tried; (b) the questions of law or fact that are individualized and not common to the class under Count I of the Complaint and how you propose that they be tried; and (c) your proposed process for calculation and distribution of damages under Count I of the Complaint.

---

[5]Doc. 227.

[6]Doc. 239 at 4.

**ANSWER:** Plaintiffs object that this interrogatory is compound and each subparagraph is properly counted as a separate Interrogatory. Accordingly, Plaintiffs will respond to each subparagraph separately.

(a) Plaintiffs object on the grounds that this interrogatory is vague and ambiguous; seeks information protected by the attorney-client privilege and work product doctrine; calls for legal opinion and legal conclusion; and is premature, as discovery is ongoing. Plaintiffs will comply with the Court's scheduling order and the Federal Rules of Civil Procedure.

(b) Plaintiffs object on the grounds that this interrogatory is vague and ambiguous; overly broad; seeks information protected by the attorney-client privilege and work product doctrine; calls for legal opinion and legal conclusion; and is premature, as discovery is ongoing. Plaintiffs will comply with the Court's scheduling order and the Federal Rules of Civil Procedure.

(c) Plaintiffs object on the grounds that this interrogatory is vague and ambiguous; calls for legal opinion and legal conclusion; seeks information protected by the attorney-client privilege, work product doctrine and nontestimonial expert privilege; seeks information pertaining to Plaintiffs' expert report; and is premature, as discovery is ongoing. Plaintiffs will comply with the Court's scheduling order and the Federal Rules of Civil Procedure.

**SUPPLEMENTAL ANSWER:**

Subject to the foregoing objections, Plaintiffs, on behalf of themselves and the class, provide the following response:

(a) To date, Plaintiffs are aware of the following common issues of law and fact in this case:

- Did the commission system that all Plaintiffs and class members were subject to fail to pay accurate commissions?

- How should various provisions in the applicable commission agreements be interpreted or construed for the purpose of determining commissionable events?

- How should various provisions in the applicable commission agreements

be interpreted or construed for the purpose of calculating commissions due?

• Must a "matching" occur between Sprint's billing system and commission system in order for certain transactions to be commissionable?

• Are Plaintiffs and the class entitled to commissions on certain commissionable events if, because of errors in Sprint's commission system, Sprint's commission system failed to match records correctly?

• Does the applicable commission plans' notice requirement for disputed commissions result in a forfeiture of earned commissions?

• Is the language in the compensation agreement that provides for potentially indefinite delay in Sprint's determination of whether commissions are earned enforceable?

• Does the compensation agreement contain conditions precedent that preclude Plaintiffs and the class from bringing their claims for commissions?

• Can Defendants, through a provision in the commission plan, cause Plaintiffs and the class to constrain or waive rights created by the KWPA?

• Was Sprint's failure to pay accurate commissions a violation of the Kansas Wage Payment Act?

• Are liquidated damages/penalties appropriate pursuant to the Kansas Wage Payment Act?

• Is the limitations period set forth in the compensation agreements valid with respect to limiting the time frame for the Kansas Wage Payment Act claim?

• What is the applicable statute of limitations for the Kansas Wage Payment Act claim?

• If Plaintiffs did not [sic] to appeal certain disputed transactions through Sprint's appeals process are they precluded from bringing a Kansas Wage

Payment Act claim for those transactions?

• What are the damages for the Plaintiffs and class members?

• Are the experts' testimony and reports admissible for trial?

• Does Sprint's asserted defense of laches apply in this action?

• Is Sprint's asserted defense of waiver valid in this action?

• Is Sprint's asserted defense of estoppel valid in this action?

• Is Sprint's asserted defense of release valid in this action?

• Is Sprint's asserted defense of recoupment or set off valid in this action?

• Is Sprint's asserted defense of unjust enrichment valid in this action?

• Discovery is continuing and investigation into further common issues of law and fact continues.

With respect to the question of how these issues should be tried, Plaintiffs believe that many of these common issues of law and fact can be decided at summary judgment, after the parties have conducted discovery. To the extent any questions remain after the Court's ruling on the parties' motions for summary judgment, those issues will go to the jury for class-wide resolution on common proof, as these issues apply to the entire class.

Plaintiffs anticipate that trial will include testimony from the parties' experts, who will be reviewing and analyzing Sprint's class-wide data production and calculating class-wide damages. Plaintiffs also intend to call several witnesses to support their claims that Sprint's commission system caused Sprint to pay the class inaccurately. Those witnesses will include, but will not be limited to, current and former Sprint retail employees, their managers, upper management, Sprint commission department employees, Sprint appeals department employees, Sprint systems and IT employees, Sprint risk management employees, and various people who were part of Sprint's initiatives relating to its problems with not being able to accurately calculate and pay commissions due to the class. Plaintiffs also plan to introduce numerous documents produced by Sprint detailing, for instance, how its commission system did not accurately determine the commissions due

to the class, the problems with the system, and the problems with Sprint's internal appeals process. Plaintiffs cannot identify at this time who they intend to call as witnesses at trial or which documents they will use, as discovery is continuing consistent with the Court's scheduling orders. Plaintiffs will supplement this information consistent with these scheduling orders and the Federal Rules of Civil Procedure.

(b) At this time, Plaintiffs are not aware of any relevant facts or questions of law that are uncommon to Plaintiffs and the class. Plaintiffs will supplement this information consistent with the scheduling orders applicable to this case and Federal Rules of Civil Procedure.

(c) With respect to calculating damages, Plaintiffs' experts plan to use the classwide commission-related data that will be produced by Sprint, in order to run their largely automated process to produce a report identifying the amount of damages each class member sustained as a result of Sprint's failure to pay accurate commissions. Plaintiffs are developing an automated process to analyze all data related to each transaction found throughout Defendants' various systems to determine if the transaction is commissionable, whether Defendants paid the commission properly, and whether additional compensation is due. Plaintiffs have set up their system to standardize, process, and import the class-wide data, have developed coding to analyze and search the class-wide data, and have prepared a reporting mechanism to explain their results. They continue to refine that process in preparation for the class-wide commission-related data production and their expert reports.

Plaintiffs will explain their process for calculating and distributing damages in more detail after their experts have the data and have been able to analyze it. That information will be provided through their expert reports and testimony consistent with the scheduling orders for this case and Federal Rules of Civil Procedure.

**INTERROGATORY NO. 4.** Set forth, and list separately for each of the following subparagraphs (a) through (c): (a) the questions of law or fact common to the class under Count II of the Complaint and how you propose that they be tried; (b) the questions of law or fact that are individualized and not common to the class under Count II of the Complaint and how you propose that they be tried; and (c) your proposed process for calculation and distribution of damages under Count II of the Complaint.

**ANSWER:** Plaintiffs object that this interrogatory is compound and each

subparagraph is properly counted as a separate Interrogatory. Accordingly, Plaintiffs will respond to each subparagraph separately.

(a) Plaintiffs object on the grounds that this interrogatory is vague and ambiguous; seeks information protected by the attorney-client privilege and work product doctrine; calls for legal opinion and legal conclusion; and is premature, as discovery is ongoing. Plaintiffs will comply with the Court's scheduling order and the Federal Rules of Civil Procedure.

(b) Plaintiffs object on the grounds that this interrogatory is vague and ambiguous; overly broad; seeks information protected by the attorney-client privilege and work product doctrine; calls for legal opinion and legal conclusion; and is premature, as discovery is ongoing. Plaintiffs will comply with the Court's scheduling order and the Federal Rules of Civil Procedure.

(c) Plaintiffs object on the grounds that this interrogatory is vague and ambiguous; calls for legal opinion and legal conclusion; seeks information protected by the attorney-client privilege, work product doctrine and non-testimonial expert privilege; seeks information pertaining to Plaintiffs' expert report; and is premature, as discovery is ongoing. Plaintiffs will comply with the Court's scheduling order and the Federal Rules of Civil Procedure.

**SUPPLEMENTAL ANSWER:**
Subject to the foregoing objections, Plaintiffs, on behalf of themselves and the class, provide the following response:

See Plaintiffs' supplemental answer to each subsection of Interrogatory No. 3. In addition to Plaintiffs' response to Interrogatory 3(a), to date, Plaintiffs have identified the following common issues of law and fact:

- Was Sprint's failure to pay accurate commissions a breach of its compensation agreement with Plaintiffs and the class?

- Is the limitations period set forth in the applicable compensation agreements valid with respect to limiting the time frame of the breach of contract claim?

- What is the applicable statute of limitations for the breach of contract claim?

The court agrees with plaintiffs that their supplemental answers adequately address Interrogatory Nos. 3 and 4. As requested, plaintiffs set forth what they contend are the questions of law and fact common to the class. They discussed their trial plan, including presenting testimony from certain categories of defendants' employees and from expert witnesses, and presenting documentary evidence regarding such things as the problems with defendants' computer system and the problems with defendants' internal appeals process. Plaintiffs also explained that they have developed (and continue to refine) a largely automated process that will import the class-wide data being produced by defendants related to transactions in defendants' systems, will analyze each transaction and determine if it is "commissionable," and will produce a report identifying the amount of damages sustained by each class member. Plaintiffs state that, although they cannot identify specific witnesses or documents at this time because discovery is ongoing, they will supplement their answers as required by the scheduling order and the Federal Rules of Civil Procedure.

Defendants have cited no caselaw or other authority that would support a finding that plaintiffs' have committed a *discovery violation* that can be remedied via a motion to compel. Rather, defendants focus on caselaw that sets forth the Rule 23 standards for certifying or maintaining a class action.[7] Defendants argue that, pursuant to *Dukes* and other cases, the "commonality" requirement of Rule 23(a) requires plaintiffs to affirmatively demonstrate that their claims depend upon a "common contention . . . capable of classwide

---

[7]The majority of the cases cited by defendants were published before Judge Vratil issued her order on class certification.

resolution."[8] In determining if this standard is met, it may be necessary for the court to "probe behind the pleadings" to determine if plaintiffs are prepared to prove that there are common questions of fact and law.[9] Defendants assert that trial plans are critical for the court to perform this Rule 23 analysis, and that plaintiffs' answers to Interrogatory Nos. 3 and 4 fail to support a finding that the commonality standard has been met.[10]

The problem with defendants' argument is that it is made in the wrong context. Plaintiffs have set forth in their discovery answers their plan for presenting their case. Plaintiffs answered the questions asked and laid out their contentions as to the common issues in the case. Defendants' argument that plaintiffs' trial plan is insufficient to support a class certification finding would be more appropriately raised in a motion to decertify the class.[11] In other words, the issues defendants raise in their motion papers have little to do with seeking discovery. Rather, they inherently seek a new decision on class certification. This is an issue for Judge Vratil to examine if and when a motion to decertify the class is brought.

---

[8]131 S. Ct. at 2551.

[9]*Id.* (quoting *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 160 (1982)). The undersigned notes that Judge Vratil was well aware of the *Falcon* standards when she certified the class, having quoted *Falcon* in her discussion of the commonality requirement. *See* doc. 99 at 14.

[10]For example, defendants make the merits-based argument that plaintiffs will have to perform an individualized damages analysis for each plaintiff, which undercuts maintaining this case as a class action.

[11]All the cases upon which defendants rely arise in the context of motions to certify or decertify a class, not of motions to enforce discovery.

IT IS THEREFORE ORDERED that defendants' motion to compel plaintiffs to further respond to Interrogatories Nos. 3 and 4 (doc. 229) is denied.

Dated October 11, 2011, at Kansas City, Kansas.

      s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge