IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROXIE SIBLEY, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. ) Case No. 08-2063-KHV<br>)<br>SPRINT NEXTEL CORPORATION, )<br>et al., )<br>)<br>Defendants. ) | |

### ORDER

Plaintiffs, who are current and former employees of defendants' retail stores, bring this action under the Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-313, and various breach-of-contract theories, alleging defendants failed to pay them earned commissions. Currently before the undersigned U.S. Magistrate Judge, James P. O'Hara, is plaintiffs' motion to compel defendants to produce certain compensation plans **(doc. 240)**. For the reasons discussed below, the motion is granted.

The factual background of this case is set forth in detail in the November 24, 2008 Memorandum and Order of the presiding U.S. District Judge, Kathryn H. Vratil (doc. 99), and will only be summarized here. In their employment with defendants, plaintiffs earned commissions, in addition to other pay. Defendants agreed to pay commissions for sales that qualified as "commissionable events," which included new phone service activation and phone accessory sales. Plaintiffs allege that due to problems with defendants' computer system, they were denied commissions for certain commissionable events and have had

money improperly deducted for phone deactivations and service cancellations that occurred after more than six months had passed.

Plaintiffs moved for class certification on their claims of violation of the KWPA (Count I) and breach of contract (Count II).  After thoroughly reviewing the record and performing a detailed analysis, Judge Vratil concluded that class certification was appropriate and certified a class.[1]  Following the certification order, the parties agreed that the liability cut-off date would be September 30, 2009, and the damages cut-off date would be January 31, 2010.[2]

In the instant motion, plaintiffs seek compensation plans in effect from October 1, 2009, to January 31, 2010.  The compensation plans are comprised of two types of documents: Master Incentive Compensation Guides ("MICGs") and Commissions Acknowledgment Forms ("CAFs"). MICGs were promulgated once each year and outlined the terms and conditions of receiving compensation, including commissions. CAFs defined the categories of commission-earning transactions for specific employment positions and set forth the requirements for earning those commissions.  Plaintiffs assert that, although the documents cover a time period after the liability cut-off date for the class, they are nonetheless relevant to a damages analysis because the MICGs state that "[a]djustments to

---

[1] Doc. 99.

[2] The four-month period between the liability and damages cut-off dates is to account for any recalculations of commissions earned on transactions that occurred through September 30, 2009.

incentive compensation are paid out in the month they are resolved . . . and paid out in accordance with the compensation Plan in effect at the time of review."

Defendants respond that plaintiffs have misconstrued this sentence. According to defendants, "[t]his sentence relates to *when* sales representatives will receive *payment* for any adjustments made as a result of an appeal/recalculation," and does not govern whether a transaction was commissionable in the first instance.[3] Defendants maintain that "what is commissionable and the amount of any commission" is governed by the compensation plan in effect at the time of the transaction of the commissionable event.[4] Thus, defendants, argue, commission plans that took effect after the liability period are not relevant for purposes of determining liability or damages. "Rather, whether any damages [are] owed for those transactions that occurred on or before September 30, 2009, are governed by the commission plans in effect on or before September 30, 2009, and these plans have been produced."[5]

In their reply brief, plaintiffs accept defendants' representations about which compensation plans govern transactions that occurred during the class liability period, and

---

[3] Doc. 245 at 2–3.

[4] *Id.* at 2. Defendants explain that "what is commissionable and the amount of any commission varies from commission plan to commission plan on a yearly basis, which necessitates that any appeal of a transaction be governed by the commission plan in effect at the time of the transaction otherwise payments on transactions would be inconsistent depending on when a sales representative appealed." *Id.*

[5] *Id.* at 8.

"in response to Defendants' foregoing representations," narrow their motion to compel.[6] Although plaintiffs initially sought to compel the production of both MICGs and CAFs in effect from October 1, 2009, to January 31, 2010, plaintiffs now "withdraw their motion to compel as it applies to CAFs subsequent to September 30, 2009."[7]  Plaintiffs assert, however, that the requested MICGs remain "relevant and should be produced."[8]

Fed. R. Civ. P. 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." "Relevancy is broadly construed during the discovery phase, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."[9]  "When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the

---

[6]Doc. 248. at 2.  The court is dismayed that this clarification and subsequent narrowing of the motion to compel was not resolved during the meet-and-confer process. It raises questions about whether counsel actually conversed and put forth a good-faith effort to resolve this dispute.  The parties are warned that the court will strictly hold them to the letter and spirit of the meet-and-confer requirements of D. Kan. R. 37.2 if future discovery disputes arise.

[7]*Id.* at 4.

[8]*Id.*

[9]*Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 523 (D. Kan. 2010) (quoting *Cardenas v. Dorel Juvenile Grp., Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005) and *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004)).

scope of relevance."[10] The party making the discovery request has the burden if relevance is not readily apparent.[11]

Plaintiffs assert that MICGs in effect from October 1, 2009, to January 31, 2010,[12] are relevant because they may govern certain rights of class members who remained employed during that time period.  Each MICG includes a provision that it supersedes all previous plans and agreements.  "Thus," plaintiffs argue, "as documents that set forth the overall terms of the company's compensation plans, MICGs put into effect after September 30, 2009—to the extent they are enforceable—may still affect the rights of the class members."[13] Plaintiffs note, for example, that the MICGs set forth limitation periods for bringing claims under the compensation plans, and that the stated periods have varied in different editions of the MICGs.[14]  Defendants have not challenged this assertion.[15]

While the undersigned makes no finding that MICGs in effect from October 1, 2009,

---

[10]*Cardenas*, 232 F.R.D. at 380 (quoting *Owens*, 221 F.R.D. at 652).

[11]*Id.*

[12]Although plaintiffs' reply brief requested that defendants "supplement their production as the case proceeds and new MICGs are issued" (doc. 248 at 4), the only issue presently before the court is whether MICGs in effect through January 31, 2010, must be produced.

[13]Doc. 248 at 3.

[14]Judge Vratil recognized this in her July 30, 2008 Memorandum and Order ruling on defendants' motion for partial dismissal.  Doc. 77 at 10–11.

[15]The court recognizes that this particular relevancy assertion was first raised in plaintiffs' reply brief, but defendants have not sought leave to file a sur-reply in response.

to January 31, 2010, *actually do* affect rights of class members on issues involved in this lawsuit, at the discovery stage the relevancy standards do not require such a finding. As mentioned above, a discovery request is deemed relevant if there is "any possibility" that the information sought "may be relevant" to the claim or defense of any party.[16]  Plaintiffs have satisfied this liberal standard favoring disclosure. There is certainly a possibility that MICGs in effect during the damages period could affect a determination of commissions owed class members employed during that time.

IT IS THEREFORE ORDERED that plaintiffs' motion to compel, as limited to seeking MICGs in effect from October 1, 2009, to January 31, 2010, is granted.

Dated October 14, 2011, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[16] *Design Basics*, 271 F.R.D. at 523.