**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ROXIE SIBLEY, JEANNE NOEL, ERNESTO BENNETT, JAMIE WILLIAMS, GREG ST. JULIEN, TRACIE HERNANDEZ, JOHN JASINSKI, JAY RICHIE, and TEISHA KING, individually and on behalf of a class of others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>SPRINT NEXTEL CORPORATION, a Kansas corporation,<br><br>and<br><br>SPRINT/UNITED MANAGEMENT COMPANY, a Kansas corporation,<br><br>                    Defendants. | Case No. 02:08-CV-02063-KHV/JPO |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL RESPONSES
TO THEIR FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Having failed to move to compel responses to their previous document requests seeking class member survey responses, Defendants have attempted to circumvent the Local Rules governing discovery simply by serving a new request for the same materials and moving to compel on that request. Defendants' request is improper and their motion is untimely.

Should the Court reach the merits of Defendants' untimely motion, the motion should be denied because it seeks information that is protected by the attorney-client privilege and work product doctrine, and Defendants have no compelling need that justifies setting aside these protections.

**PROCEDURAL BACKGROUND**

**I.   DEFENDANTS' FIRST REQUESTS FOR CLASS MEMBER SURVEY RESPONSES AND PLAINTIFFS' OBJECTIONS.**

This is a nationwide class action in which Plaintiffs allege Defendants did not pay them all their commissions due. After the Court certified this case as a class action, Class Counsel made a survey on their website available to the class members. (Frohman Decl. ¶ 2.) As of July 12, 2011, the survey was accessed 12,601 times—not all individuals who accessed the survey answered the questions, and some individuals visited the survey more than once. (Id.) The class member responses were confidential and Class Counsel have maintained their confidentiality. (Id.)

On May 17, 2011, Defendants served their Third Set of Interrogatories and Requests for Production of Documents on each of the named Plaintiffs, and Plaintiffs responded on June 16, 2011. (Ex. 1.[1]) Defendants' document request no. 3 sought a copy of the survey sent to class members. (Id. at 2.) Plaintiffs ultimately produced a copy of the survey, which was publicly accessible via Class Counsel's website. Requests 4, 5 and 6 sought documents encompassing the class member responses to the survey. (Id. at 2-4.) Plaintiffs specifically objected to producing the class member survey responses, contending that they called for documents protected by the attorney-client privilege and work product doctrine.

> **REQUEST 4.** All written statements (signed or unsigned) or documents provided to Plaintiff, Named Plaintiffs, and/or their agents or representatives, by any Class Members contacted, interviewed, or otherwise communicated with in connection with the claims in this action.
> **ANSWER:**   Plaintiffs object to this request on the grounds that it is cumulative and duplicative; overbroad and unduly burdensome; vague and ambiguous; and calls for documents protected by the attorney-client privilege and

---

[1] Exhibit 1 contains Named Plaintiff Jay Richie's responses to Defendants' Third Set of Requests for the Production of Documents. Each Plaintiffs' response to requests 3, 4, 5, and 6 were the same.

work product doctrine.  Subject to and without waiving the foregoing objections, Plaintiff answers as follows.

Plaintiffs will produce any responsive, non-protected documents in Plaintiffs' possession.  Plaintiffs have already produced all signed statements and interrogatory responses received from Plaintiffs and class members.  <u>Any class member responses to survey questions distributed by Plaintiffs' counsel after this case was certified as a class action are protected from disclosure by the attorney-client privilege and work product doctrine.</u>  Discovery is ongoing.

**REQUEST 5.** Any and all documents relating to or evidencing any written statements (signed or unsigned), affidavits, declarations, responses to surveys and/or notices, or any other documents that Plaintiff, Named Plaintiffs, and/or their agents or representatives obtained from Class Members relating to the facts, claims, and/or allegations made in the Complaint, and any drafts of these documents.

**ANSWER:**    Plaintiffs object to this request on the grounds that it is cumulative and duplicative; overbroad and unduly burdensome; vague and ambiguous; and calls for documents protected by the attorney-client privilege and work product doctrine.  Subject to and without waiving the foregoing objections, Plaintiff answers as follows.

Plaintiffs will produce any responsive, non-protected documents in Plaintiffs' possession.  Plaintiffs have already produced all signed statements and interrogatory responses received from class members.  See Plaintiffs' answer to request 9.  <u>Any class member responses to survey questions distributed by Plaintiffs' counsel after this case was certified as a class action are protected from disclosure by the attorney-client privilege and work product doctrine.</u>  Discovery is ongoing.

**REQUEST 6.** Any and all documents relating to or evidencing any written statements (signed or unsigned), affidavits, declarations, responses to surveys and/or notices, or any other documents that Plaintiff, Named Plaintiffs, and/or their agents or representatives obtained from Class Members relating to commissions, including, but not limited to the alleged amounts of commissions earned, alleged amounts of commission payments or underpayments, and commissions appeals, and any drafts of these documents.

**ANSWER:**    Plaintiffs object to this request on the grounds that it is cumulative and duplicative; overbroad and unduly burdensome; vague and ambiguous; and calls for documents protected by the attorney-client privilege and work product doctrine.  Subject to and without waiving the foregoing objections, Plaintiff answers as follows.

Plaintiffs will produce any responsive, non-protected documents in Plaintiffs' possession.  Plaintiffs have already produced all signed statements and interrogatory responses received from class members.  See Plaintiffs' answer to request 9.  <u>Any class member responses to survey questions distributed by Plaintiffs' counsel after this case was certified as a class action are protected from disclosure by the attorney-client privilege and work product doctrine.</u>  Discovery

is ongoing.

(Id.) (emphasis added).

The parties discussed the production of class member survey responses in subsequent correspondence. Defendants specifically noted Plaintiffs' objections to producing class member survey responses: "Plaintiffs objected that '[a]ny class member responses to survey questions distributed by Plaintiffs' counsel after this case was certified as a class action are protected from disclosure by the attorney-client privilege and work product doctrine.'"  (See Ex. 2 at 11.) Defendants requested a privilege log, which Plaintiffs later produced, and generally insisted that Plaintiffs produce all responsive documents in their possession.[2]  (Id.)  In response, Plaintiffs stated:

> Plaintiffs have received 12,601 responses to their survey from class members, including duplicate and anonymous responses, which Plaintiffs have not produced. These responses are protected communications between Class Counsel and class members. Similarly, any other documents reflecting communications between class members and Class Counsel "relating to" their survey responses are privileged. However, Plaintiffs will identify the names of the class members who have responded.

(Ex. 3 at 6-7.)  On July 18, 2011, Defendants filed a motion to compel regarding their third set of interrogatories, but they did not move to compel responses to their document requests. (ECF Nos. 229-230.)  Defendants' motion was silent with respect to the survey responses. (Id.)

## II.     DEFENDANTS' SECOND REQUEST FOR CLASS MEMBER SURVEY RESPONSES AND PLAINTIFFS' OBJECTIONS.

On August 11, 2011, nearly a month after filing their motion to compel responses to their third set of discovery requests, Defendants served their Fourth Set of Requests for Production of Documents.  (Ex. 4.)  Defendant' fourth set contained a single document request, again seeking

---

[2] Plaintiffs' privilege log identifies class member survey responses as a category of information protected from disclosure by the attorney-client privilege and work product doctrine. (Frohman Decl. ¶ 3.)

4

the class member survey responses. Plaintiffs again objected on privilege and work-product grounds, and objected further that Defendants had waived their right to seek this information:

> **REQUEST 1.** Any and all surveys completed by Class Members or prospective Class Members regarding this action, including, but not limited to, responses to the survey identified at NKA168709-15.
>
> **ANSWER:** Plaintiffs object to this request on the grounds that it is duplicative and cumulative and seeks information protected by the attorney-client privilege and/or work product doctrine. This request seeks documents already requested and encompassed in Defendants' requests 4, 5 and 6 of Defendants' Second Set of Requests for Production of Documents. Plaintiffs objected to those requests, and Defendants did not move to compel responses. "Any motion to compel discovery . . . must be filed and served within 30 days of the default or service of the response, answer, or objection that is the subject of the motion, unless the court extends the time for filing such motion for good cause. Otherwise, the objection to the default, response, answer, or objection is waived." L.R. 37.1(b). Defendants have waived their objection to Plaintiffs' response to requests seeking these documents.

(Ex. 4.) Now, nearly four months after Plaintiffs first objected to Defendants' requests, Defendants move the Court to compel Plaintiffs to produce the class member survey responses. (ECF No. 261.)

## ARGUMENT

### I. PURSUANT TO LOCAL RULE 37.1(B), DEFENDANTS' MOTION TO COMPEL CLASS MEMBER SURVEY RESPONSES IS UNTIMELY.

District of Kansas Local Rule 37.1(b) sets the time limit for filing a motion to compel. It provides:

> Any motion to compel discovery in compliance with D. Kan. Rules 7.1 and 37.2 must be filed and served within 30 days of the default or service of the response, answer, or objection that is the subject of the motion, unless the court extends the time for filing such motion for good cause. Otherwise, the objection to the default, response, answer, or objection is waived.

5

Dist. Kan. Rule 37.1(b).[3]  The rule "is clear that motions to compel discovery must be filed within 30 days of service or default of the discovery response."  Layne Christensen Co. v. Purolite Co., CIV.A. 09-2381-JWL, 2011 WL 124538, at *3 (D. Kan. Jan. 14, 2011).  "Although courts on occasion have excused the untimely filing of a motion to compel under certain circumstances, those decisions do not indicate a common practice of the court."  Id.

Defendants' motion to compel, filed October 12, 2011, is untimely by nearly four months.  Defendants first sought the class member survey responses at issue on May 17, 2011, in their Third Set of Requests for Production of Documents, requests 4-6.  Plaintiffs filed their responses, unambiguously objecting to the production of those survey responses on June 17, 2011.  The parties specifically discussed Plaintiffs' objections in their correspondence.  A motion to compel their production, therefore, at the latest would have been due thirty days later, on July 18, 2011.  Defendants actually filed a motion to compel responses to their third set of interrogatories, which were served contemporaneously with the document requests, on that date.  (ECF No. 229.)  However, they failed to move to compel regarding document requests 4-6, which sought the class member survey responses.

In an effort to cure this failure, Defendants simply served a new request seeking the very same information sought in their third requests, nos. 4, 5 and 6, and now move to compel on that renewed request.  Defendants argue that the 30-day window in which to file a motion to compel was not triggered until September 12, 2011, when Plaintiffs, for the second time, objected to the production of the class member survey responses.  Defendants are incorrect.  The 30-day window was triggered on June 17, 2011, when Plaintiffs, objected, for the first time, to Defendants' Third Set of Requests for Production of Documents numbers 4, 5 and 6 seeking

---

[3] Defendants are well aware of Rule 37.1(b), having successfully briefed it in opposition to a previous motion to extend the deadline filed by Plaintiffs.  (See ECF No. 201 at 7.)

6

production of the exact same survey responses.  As this Court has explained, D. Kan. Rule 37.1(b) "clearly reflects the triggering event is 'the default or service of the response, answer, or objection which is the subject of the motion.'"  Cont'l Cas. Co. v. Multiserv. Corp., No. 06-2256-CM, 2008 WL 73345, at *4 (D. Kan. Jan. 7, 2008).  "The courts in this district consistently—and correctly—have construed and applied the 30-day time period under D. Kan. Rule 37.1(b) as beginning when specific information <u>first</u> leading to a dispute is discovered."  Id. (emphasis added).  "Any other construction of the rule would allow a virtually indefinite extension of the deadlines[.]"  Id.  As explained above, the event triggering the 30-day deadline in this case occurred on June 17, 2011, when Plaintiffs first objected to the production of the class member survey responses.  Defendants chose not to move to compel this information, and they may not extend the Rule 37.1(b) deadline simply by serving a new request that seeks the same information.

Defendants' argument that they later "issued a more specific request regarding [the] survey responses . . . solely in an effort to address and cure Plaintiffs' objections" to their first requests" also fails.[4]  (ECF No. 261 at 8-9.)  First, as evidenced by Plaintiffs' responses to Defendants' first requests and the parties' subsequent correspondence, Defendants were on clear notice that Plaintiffs specifically objected to producing class member survey responses.  There was nothing to cure.  Second, Defendants' attempt to differentiate the information sought in their third and fourth sets of document requests is disingenuous.  According to Defendants, "whereas Defendants' Third Set of Requests for Production of Documents No. 3 asked for surveys sent <u>to</u> class members, Defendants' Fourth Set of Requests for Production of Documents No. 1 asked for

---

[4] The fact that a party attempts to resolve a discovery issue without judicial involvement "does not excuse an untimely filing or toll the thirty day period in which to file" a motion to compel. Hock Foods, Inc. v. William Blair & Co., L.L.C., No. 09-2588-KHV, 2011 WL 884446, at *3 (D. Kan. Mar. 11, 2011).

7

survey responses <u>received</u> from class members and prospective class members." (ECF No. 261 at 8).  Defendants fail to mention that their Third Set of Requests for Production of Documents Nos. 5 and 6 explicitly requested "Any and all documents relating to or evidencing any . . . responses to surveys."[5]  (Ex. 1 at 3-4.)  Defendants' request no. 3 sought the survey itself and is not in dispute because Plaintiffs already produced it.  Third, Defendants' argument that Plaintiffs' vagueness and overbreadth objections entitle them to serve a new request is simply incorrect.  There was no ambiguity that Plaintiffs considered Defendants' third set of document requests to encompass the class member survey responses and objected accordingly.  The time to resolve Plaintiffs' objections was in the 30 days following Defendants' receipt of their discovery responses.  The practical consequence of Defendants' argument would be to allow a party to disregard the 30-day deadline established by Rule 37.1(b) any time an "overbroad" or "vague and ambiguous" objection is made in response to a request for production of documents.

Pursuant to D. Kan. R. 37.1(b), Defendants have waived their right to compel or otherwise object to Plaintiffs' responses to Defendants' Third Set of Requests for Production of Documents Nos. 4, 5 and 6, which sought the production of class member survey responses.  As a result, the Court should deny Defendants' motion to compel responses to their Fourth Set of Requests for Production of Documents, filed October 12, 2011, as untimely.

**II.    SHOULD THE COURT REACH THE MERITS OF DEFENDANTS' MOTION TO COMPEL, CLASS MEMBER RESPONSES TO PLAINTIFFS' COUNSELS' SURVEY ARE PROTECTED FROM DISCLOSURE.**

Defendants' motion to compel should properly be denied based on Defendants' noncompliance with Local Rule 37.1(b).  Nonetheless, the class member survey responses

---

[5] Document request 4 from Set III is also written broadly enough to encompass class member survey responses: "All written statements (signed or unsigned) or documents provided . . . by any Class Members contacted . . . in connection with the claims in this action." (Ex. 4 at 3.)

8

Defendants seek are protected by the attorney-client privilege and work product doctrine, which provide additional grounds for denial.

> **A.     The Class Member Survey Responses Are Protected by the Attorney-Client Privilege.**

Kansas law governs issues of attorney-client privilege because the claims in this case arise under Kansas state law. Sprague v. Thorn Ams., Inc., 129 F.3d 1355, 1368 (10th Cir. 1997) ("as to the state causes of action, a federal court should look to state law in deciding privilege questions"). Even so, there is no conflict between federal and Kansas law concerning the attorney-client privilege. Simmons Foods, Inc. v. Willis, 191 F.R.D. 625, 632 n.1 (D. Kan. 2000). The elements of the privilege are: "(1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived." Id. at 631. "'Communication' includes advice given by the lawyer in the course of representing the client and includes disclosures of the client to a representative, associate or employee of the lawyer incidental to the professional relationship." K.S.A. 60–426(c)(2), quoted in Simmons, 191 F.R.D. at 632. The attorney-client privilege should not be set aside lightly. Simmons, 191 F.R.D. at 634, quoting Wallace, Saunders, Austin, Brown & Enochs, Chtd. v. Louisberg Grain Co., 824 P.2d 933, 940 (Kan. 1992).

> 1.     Class members are clients of Class Counsel and their communications thereto are protected by the attorney-client privilege.

Defendants cite authority questioning whether class members can be considered clients of Class Counsel for purposes of the attorney-client privilege. (ECF No. 261 at 12, quoting Morisky v. PSE&G, 191 F.R.D. 419, 424 (D.N.J. 2000)). This Court has recognized that class members

9

are clients of Class Counsel following class certification.  In Hammond v. City of Junction City, Kansas, the Court stated that "[i]t is fairly well-settled that prior to class certification, no attorney-client relationship exists between Class Counsel and the putative class members," citing the Manual for Complex Litigation for the principle that "once [a] class is certified, the ethical rules governing communications apply because each class member is deemed a client of class counsel."  167 F. Supp. 2d 1271, 1286 (D. Kan. 2001) (emphasis added).  Furthermore, according to the two leading treatises on class litigation, after a case is certified, class members are treated as clients of Class Counsel.  "After a court has certified a case as a class action and the time for exclusion has expired, the attorney for the named plaintiff represents all class members who are otherwise unrepresented by counsel."  Herbert B. Newberg, 5 Newberg on Class Actions § 15.18 (4th ed. 2002).  "Once a class has been certified, the rules governing communications apply as though each class member is a client of the class counsel."  Manual for Complex Litigation § 21.33 (4th ed. 2004).

      The class members in this case are clients of Class Counsel, and the attorney-client privilege attaches to their confidential communications with Class Counsel.  The survey at issue in this case was completed by the class members following this Court's order granting Plaintiffs' motion for class certification and after the opt-out period had closed, and Class Counsel has maintained the confidentiality of the responses.  Being confidential written communications made directly with Class Counsel, the responses are protected by the attorney-client privilege.

      2.     <u>The class member survey responses are protected communications between class members and Class Counsel.</u>

      Defendants argue that the first element of the privilege, which requires a communication to be made for the purpose of seeking legal advice, is not satisfied: "A review of the survey that Plaintiffs' counsel provided to class members and prospective class members . . . clearly shows

10

that the survey asks for factual information and does not involve legal advice." (ECF No. 261 at 11.) Defendants' argument overlooks a fundamental purpose of the attorney-client privilege: to protect legal advice provided to the client by the attorney as well as disclosures made to the attorney by the client. Sprague, 129 F.3d at 1370-71 ("the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice"), quoting Upjohn Co. v. United States, 449 U.S. 383, 390 (1981). Communications between attorney and client, or class member and class counsel, do not fall outside the attorney-client privilege simply because facts are being communicated. Defendants quote Morisky in support of the broad notion that questionnaires containing factual inquiries "have nothing to do with legal representation." (ECF No. 261 at 13, quoting Morisky, 191 F.R.D. at 424.) In Moriskey, the determination that responses to a survey seeking factual information were not privileged was based on the fact that the survey was distributed in a meeting that was held before the lawsuit was filed and that was open to the public. Morisky, 191 F.R.D. at 423. This case is easily distinguished. Here, the survey responses are communications between the class members and Class Counsel, they occurred after the case was certified, and the sole purpose was to further the litigation—as such they are protected by the privilege.

When the attorney-client privilege attaches to class member communications, those communications are protected from discovery. Connelly v. Dun & Bradstreet, Inc., 96 F.R.D. 339, 342-43 (D. Mass. 1982); see also Hudson, 186 F.R.D. at 276 (denying motion to compel production of answers to questionnaires sent to multiple clients where the requirements for the attorney-client and work-product doctrine were satisfied). In Connelly, the court denied a motion to compel the production of answers to two questionnaires sent to putative class members

11

where the requirements for the attorney-client privilege and work product doctrine were satisfied. In <u>Hudson v. General Dynamics Corp.</u>, another court held that class member questionnaire responses were protected by the privilege, explaining that:

> [i]n actions involving representation of multiple clients like this one, a client questionnaire is often prepared by counsel as an efficient substitute for more time consuming face-to-face interviews to provide the attorney with client information in response to focused questions fashioned by the attorney about the potential client and his or her claims . . . Such questionnaire use is to impart information from client to counsel to promote informed, effective representation . . . .

186 F.R.D. 271, 275 (D. Conn. 1999). The <u>Hudson</u> court concluded that "it was error to compel the production of the plaintiffs' responses to their attorney's questionnaire absent any clear finding that the plaintiffs had waived their attorney client privilege by placing the contents in issue through some affirmative act for [their] own benefit." <u>Id.</u> (internal citation omitted). The confidential class member survey responses should be protected from disclosure in this case for the same reasons they were protected from disclosure in <u>Hudson</u>, 186 F.R.D. 271. The surveys were prepared by Class Counsel as an efficient substitute for face-to-face interviews with the more than 30,000 members in the class and to provide Class Counsel with confidential client information. Like in <u>Hudson</u>, the survey responses will assist Class Counsel in their representation of the class.

Cases compelling the production of survey responses have done so when the communications were between counsel and <u>putative</u> class members. "[W]here courts have specifically addressed the discoverability of questionnaires completed by putative class members, the dispositive factor typically is whether the putative class members were seeking legal advice or representation at the time they filled out the questionnaires." <u>Gates v. Rohm & Haas Co.</u>, No. CIV.A. 06-1743, 2006 WL 3420591, at *3 (E.D. Pa. Nov. 22, 2006); <u>see also</u> <u>Dobbs v. Lamonts Apparel, Inc.</u>, 155 F.R.D. 650, 651 (D. Alaska 1994) (deeming questionnaire

responses from putative class members to be unprotected third-party witness statements and ordering their production); Hudson, 186 F.R.D. at 275-76 (distinguishing between questionnaires completed "by the plaintiffs when they were clients or while attempting to become prospective clients," which were held to be privileged, and questionnaires completed in response to a solicitation for witness statements, which were not protected).  In Gates, the attorney-client privilege attached to questionnaires distributed to putative class members where the requirements for the privilege were satisfied.  2006 WL 3420591, at *5.  Consequently, the court ordered "factual demographic (i.e. identification) information" from the completed questionnaires to be disclosed (the extent to which any other information was ordered to be produced is unclear from the opinion).  Id.  In contrast, in Morisky, plaintiffs' counsel distributed questionnaires to all attendees of a meeting that was open to the public, which was held before the lawsuit was filed, and appeared to be for purposes of solicitation. 191 F.R.D. at 423-24.  The court found that the individuals who responded were not clients, nor did they seek to become clients at the time they answered the questionnaires.  Id. at 423.  Accordingly, it ordered the completed questionnaires to be produced.  Id. at 427.

In this case, it is clear that the surveys were not used for the purpose of soliciting potential clients or communicating with *putative* class members.  Rather, Class Counsel promulgated the survey after this case was certified.  Therefore, Defendants' motion to compel the class member survey responses should be denied.

> 3. <u>The class member survey responses are protected even if the facts they contain are not.</u>

Notably, the actual survey responses remain protected even if the Court should determine that the information they contain is otherwise discoverable.  See Penk v. Oregon State Bd. of Higher Educ., 99 F.R.D. 511, 517 (D. Or. 1983) on reconsideration, No. 80-436 FR, 1983 WL

13

144447 (D. Or. Sept. 1, 1983) (holding that the manner in which facts were collected from class members was not discoverable).[6]  In Upjohn, the U.S. Supreme Court explained the difference between the attorney-client communication, which is protected, and the underlying facts within that communication, which may not be:

> [T]he protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing.  The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981).  In this case, even if the facts contained within the completed class member surveys and survey responses are deemed discoverable, the completed surveys are protected attorney-client communications.  Requiring Plaintiffs to produce the class member survey responses is no different than compelling class members to answer the question, "What did you say or write to your attorney?"  Such an inquiry is prohibited.  Upjohn, 449 U.S. at 395-96.  Alternately, requiring Class Counsel to produce the responses is no different than requiring Class Counsel to produce correspondence between themselves and their clients.  See e.g., Langley v. Coughlin, 84 CIV. 5431 (LBS), 1989 WL 436675, at *1 (S.D.N.Y. June 19, 1989) (holding that the attorney-client privilege applied to correspondence between Class Counsel and the class related to counsel's representation of the class).

      The class members' confidential survey responses satisfy each requirement for the attorney-client privilege.  Because Defendants' motion to compel survey responses seeks confidential communications between Class Counsel and class members, the motion should be

---

[6] In Penk, the court incorrectly determined that class members did not amount to clients of class counsel.  Id. at 516.  Moreover, plaintiffs' counsel notified the survey recipients that they were not attorneys for individual class members.  Id. at 517.

denied.

### B. The Class Member Survey Responses Are Protected by the Work Product Doctrine.

"To establish work product protection, a party must show that '(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party.'" Williams v. Sprint/United Mgmt. Co., 245 F.R.D. 660, 668 (D. Kan. 2007), quoting Johnson v. Gmeinder, 191 F.R.D. 638, 643 (D. Kan. 2000); Fed. R. Civ. P. 26(b)(3). Work product protection may be waived by producing such material during discovery. In re Qwest Commc'ns Int'l Inc., 450 F.3d 1179, 1186 (10th Cir. 2006).

#### 1. Survey responses satisfy each element of the work product doctrine.

Courts have reached different results regarding the discoverability of class member questionnaire responses under the work product doctrine. Defendants rely on Dobbs, in which the Alaska District Court deemed questionnaires answered by putative class members to be discoverable as third-party witness statements, with no showing of need. Dobbs, 155 F.R.D. at 651. In contrast, several cases have held that actual class member survey responses are protected by the work product doctrine and declined to compel their production. See E.E.O.C. v. Pasta House Co., No. 4:94CV1715 TIA, 1996 WL 120648, at *3 (E.D. Mo. Jan. 29, 1996) (discussing cases). The court in E.E.O.C. v. Pasta House ruled that questionnaire responses deserve work product protection and denied the motion to compel seeking them.[7] Id. The court did order the names and addresses of individuals who completed the questionnaires to be produced, which Plaintiffs have already provided in the case at bar. Id. In Connelly, the court held that

---

[7] The court also determined that class counsel's interview notes are protected as work product and their production requires a greater showing than substantial need and undue hardship. Id.

15

"[q]uestionnaires sent to individuals for the purpose of assisting an attorney in giving legal advice in the context of imminent litigation are 'work product'" and denied to compel their production. Connelly, 96 F.R.D. at 342-43. In Hudson, the court distinguished between questionnaires completed by the plaintiffs when they were clients or while attempting to become prospective clients and questionnaires completed in response to the plaintiff attorney's solicitation of witness statements, finding the former to be protected and the latter not. Hudson, 186 F.R.D. at 275-76. The court reasoned that the collection of witness statements had none of the indicia or purpose of any privilege. Id.

The Defendants rely on Morisky for the proposition that work product protection only extends to the attorneys' questions, not the class members' responses. 191 F.R.D. 419 at 425. Morisky does not stand for the principle that survey responses in general are not protected under the work-product doctrine. In Morisky, the survey responses were not entitled to work product protection for the simple reason that none of the respondents were either parties to litigation or clients of the attorneys who distributed the survey: no case had been filed at the time the survey was distributed, and the attorneys had not previously communicated with the respondents. Id. at 424-25. The argument that survey responses are discoverable because class members, and not counsel, completed them has also been rejected. See E.E.O.C. v. Carrols Corp., 215 F.R.D. 46, 51-52 (N.D.N.Y. 2003) (finding that only question regarding questionnaires prepared in anticipation of litigation was substantial need.)

Class member survey responses satisfy each element of the work product doctrine: they are documents, prepared in anticipation of trial, by Class Counsels' clients. As a result, the correct view is that they are protected from disclosure absent a showing of necessity.

16

      2.      <u>Defendants cannot make a showing of necessity to justify the production of survey responses.</u>

Factual work product may be discoverable upon a showing of "substantial need," where the substantial equivalent cannot be obtained by other means without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii). Defendants have not alleged an adequate showing of necessity to overcome the doctrine.[8]

Again, courts have reached different decisions regarding whether a defendant can allege adequate necessity to justify the production of class member survey responses. Cases ordering the production of responses commonly reason that requiring the defendant to pursue this information via deposition or interrogatory imposes undue hardship. See <u>Morisky</u>, 191 F.R.D. at 426 (recognizing hardship); <u>Gates</u>, 2006 WL 3420591, at *5 (same). Other courts have nonetheless rejected such arguments of necessity. "[M]ere inconvenience or expense is not such need as will defeat the 'work product' protection." <u>Connelly</u>, 96 F.R.D. at 343 (denying production). The court in <u>Connelly</u> went on to clarify that relevance is not the proper inquiry:

> It is not enough for defendant to assert that the information is critically important to the issue of class certification, relevant, and not available by practicable means. Substantial information dealing with class action certification has already been tendered to the defendant. A party may not use the liberal rules of discovery to engage in inquiry about the way the other side intends to conduct its case.

<u>Id.</u> Similarly, another court ruled that providing a list of names and contact information of putative class members who attended a public meeting where a questionnaire was distributed provided the defendants with "ample non-privileged opportunities and avenues to discover" the information sought. <u>Vodak v. City of Chicago</u>, No. 03 C 2463, 2004 WL 783051, at *4 (N.D. Ill. Jan. 16, 2004) (holding questionnaires completed by putative class members were not

---

[8] The "necessity" exception in Rule 26 applies only to the attorney work product privilege; it does not apply to information protected by the attorney-client privilege. <u>Vodak v. City of Chicago</u>, No. 03 C 2463, 2004 WL 783051, at *4 (N.D. Ill. Jan. 16, 2004).

discoverable).

The reasoning in the <u>Vodak</u> and <u>Connelly</u> cases is more persuasive here. Defendants argue that they need the survey responses because the only alternative is to seek discovery from the class members via deposition or interrogatory. (ECF No. 172 at 23.) As an initial matter, Plaintiffs disagree that providing confidential answers to a survey distributed by Class Counsel subjects absent class members to the requirements of discovery. Regardless, there is no compelling need for Defendants to seek additional discovery from the class members who responded to Plaintiffs' survey. Plaintiffs intend to prove Defendants' Kansas Wage Payment Act violations and breach of contract, and the resulting damages, via expert analysis of class member commission-related data that is already in Defendants' possession. Defendants have adequate means to discover relevant information about each survey respondent. Plaintiffs have produced the names of each class member who accessed the survey. Defendants have the employment records for each of these individuals, including their personnel files; dates of employment; names of managers and coworkers; their emails and other communications; and all their commissions-related data, including records of appeals. Moreover, Plaintiffs have agreed to produce relevant documents provided by the class members in response to Defendants' other discovery requests. Defendants have shown neither substantial need nor undue hardship necessary to overcome the protection of the work product doctrine as to class member survey responses.

## **CONCLUSION**

Defendants' motion to compel is untimely pursuant to District of Kansas Local Rule 37.1(b) and should be denied on this basis alone. Alternatively, the confidential class member survey responses are protected from production by the attorney-client privilege and work product

doctrine. For these reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to compel.

Dated: October 26, 2011

**STUEVE SIEGEL HANSON LLP**

*/s/Ashlea G. Schwarz*
Ashlea G. Schwarz, KS Bar No. 23491
Email: ashlea@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
Fax: 816-714-7101

**NICHOLS KASTER, PLLP**

*/s/ Charles G. Frohman*
Charles G. Frohman
Email: frohman@nka.com
Michele R. Fisher
Email: fisher@nka.com
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: 612-256-3200
Fax: 612-215-6870
(Admitted Pro Hac Vice)

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 26, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ *Ashlea G. Schwarz*
Ashlea G. Schwarz