IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
ROXIE SIBLEY, JEANNE NOEL, ERNESTO        :
BENNETT, JAMIE WILLIAMS, GREG ST.         :
JULIEN, TRACIE HERNANDEZ, JOHN            :
JASINSKI, JAY RICHIE, and TEISHA KING,    :
individually and on behalf of a class of others :
similarly situated,                       :
                                          :
                Plaintiffs,               :
                                          :
        v.                                :   Case No. 02:08-CV-02063-KHV/JPO
                                          :
SPRINT NEXTEL CORPORATION, a Kansas       :
corporation                               :
                                          :
        and                               :
                                          :
SPRINT/UNITED MANAGEMENT                  :
COMPANY, a Kansas corporation             :
                                          :
                Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO COMPEL RESPONSES TO THEIR
FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

**I.   INTRODUCTION**

Defendants move to compel discovery regarding survey responses they are entitled to under the Federal Rules of Civil Procedure and governing case law. Named Plaintiffs' Opposition failed to articulate a viable basis for withholding the requested documents. Rather, the prevailing case law demonstrates that Defendants are entitled to the survey responses. Indeed, Plaintiffs' deficient response highlights the necessity for the discovery sought. Accordingly, this Court should grant Defendants' motion to compel and order Plaintiffs to provide the requested survey responses.

1

## II. BACKGROUND

### A. SUMMARY OF CORRESPONDENCE BETWEEN THE PARTIES REGARDING THE SURVEY RESPONSES

On May 17, 2011, Defendants served their Third Set of Requests for Production of Documents on each of the Named Plaintiffs. (Doc. No. 260-2.) Document Requests Nos. 4-6 either included or potentially included any responses to class member surveys. (Id.) On June 17, 2011 (although dated June 16, 2011), Plaintiffs provided a set of identical responses, producing the blank survey identified at NKA168709-15 in response to Document Request No. 3 and objecting to Document Requests Nos. 4-6 on the grounds that these Document Requests were "overbroad" and "vague and ambiguous." (Doc. No. 260-3; Doc. No. 260-4.) Plaintiffs produced no documents in response to these specific Document Requests based on those objections. (Id.) On June 30, 2011, Defendants' counsel sent Plaintiffs' counsel a comprehensive letter outlining various issues regarding Plaintiffs' responses to Defendants' Third Set of Requests for Production of Documents. (Doc. No. 260-5.) On July 12, 2011, Plaintiffs' counsel responded by letter and reiterated several of its objections. (Doc. No. 260-6.)

Accordingly, on August 11, 2011, in an effort to cure the objections raised by Plaintiffs in Document Requests Nos. 4-6 coupled with Plaintiffs' production of the blank survey identified at NKA168709-15, Defendants served their Fourth Set of Requests for Production of Documents on each of the Named Plaintiffs. (Doc. No. 260-7.) Defendants' Fourth Set of Requests for Production of Documents No. 1 was more focused than their Third Set of Requests for Production of Documents Nos. 4-6. Specifically, Defendants' Fourth Set of Requests for Production of Documents No. 1 clearly and concisely requested "[a]ny and all surveys completed by Class Members or prospective Class Members regarding this action, including, but not limited

2

to, responses to the survey identified at NKA168709-15." (Id.)  Thus, Defendants provided a more refined document request in attempt to resolve the survey responses issue with Plaintiffs and to avoid seeking court intervention unless and until absolutely necessary.

On September 12, 2011, Plaintiffs provided a set of identical – and deficient – responses. (Doc. No. 260-8.)  Not only did Plaintiffs object to producing the survey responses, Plaintiffs also asserted that Defendants waived their right to file a motion to compel on this issue.  (Id.) Specifically, Plaintiffs claimed that Defendants were required to file their motion to compel survey responses within thirty days (by July 18, 2011) after Plaintiffs served their responses to Defendants' Third Set of Requests for Production of Documents.  (Id.)  On September 30, 2011, Defendants' counsel spoke with Plaintiffs' counsel via telephone to attempt to resolve the alleged waiver issue and the discoverability of the survey responses.  (Doc. No. 260-1 at ¶¶ 9-10.)  Despite their best efforts, the parties were unable to reach agreement on these issues.  (Id.) At this juncture, it became clear that Plaintiffs had no intention of producing the survey responses despite Defendants' efforts to provide a clearer and more concise document request in an attempt to cure any alleged deficiencies in their prior document requests.  As a result, on October 12, 2011, Defendants filed a motion to compel Plaintiffs to produce the survey responses.

## B.   PLAINTIFFS' CLAIMS HIGHLIGHT THE NEED FOR THE SURVEY RESPONSES

Plaintiffs' Complaint emphasizes Defendants' need for the survey responses because Plaintiffs' primary claim is that Defendants' practices resulted in an alleged systematic underpayment of commissions that adversely affected all class members.  On or about February 7, 2008, Plaintiffs filed a four-count complaint in this Court on behalf of themselves and other individuals similarly situated alleging violations of the Kansas Wage Payment Act, K.S.A. § 44-

313, *et seq.* and breach of contract, among other claims, arising from alleged problems with Defendants' computer systems that they claim impacted commission payments. (Doc. No. 1.) Plaintiffs amended that complaint on or about February 26, 2008. (Doc. No. 8.) In their Amended Complaint, Plaintiffs essentially allege that they were not adequately compensated due to an alleged systematic problem with Defendants' computer system (Id.)

Plaintiffs' motion for class certification only further reinforces Defendants' need for the survey responses because Plaintiffs' motion for class certification relies exclusively upon an alleged systematic failure to pay commissions that affected all class members. On May 2, 2008, Plaintiffs moved for class certification. (Doc. No. 36.) In their motion for class certification, Plaintiffs' central argument was that "[s]ince [the merger], Plaintiffs and the class members have been *systematically* denied commissions they are due" as a result of an alleged computer system failure. (Doc. No. 37 at 4 (emphasis added); Doc. No. 37-2 at ¶¶ 2 & 5; Doc. No. 37-3 at ¶¶ 2 & 5.) Specifically, Plaintiffs alleged that:

> Here, each class member was affected in the same way by the same problem: Defendants' computer system underreported and miscalculated the revenue generated by or attributed to each class member, and as a result, Defendants regularly underpaid and improperly deducted money from each class member's commissions. (Doc. No. 37 at 18.)

In granting the Plaintiffs' motion for class certification, the Court recognized that Plaintiffs' claims relied primarily on whether such a systematic failure existed:

> Specifically, the critical issues for trial are whether Sprint's accounting methods *systematically* under reported commissions and interpretation of the plans and CAFs under Kansas law. The Court finds that the common questions in this case predominate over individual questions as to each commissioned employee. (Doc. No. 99 at 20.) (Emphasis added.)

4

Within the Court's certification order, the Court ordered factual and data discovery, starting with the Named Plaintiffs.[1]  In addition, as permitted under Fed. R. Civ. P. 23(c)(1)(C), the Court's certification order indicated that it could decertify the class in the future, specifically reserving the right to modify or amend the Class Certification Order.  Consistent with the Court's order regarding factual and data discovery, Defendants propounded its request for the survey responses.  Indeed, the survey responses fit squarely into the types of discovery encompassed by the Court's discovery order because the survey responses include factual information that is central to this case – whether class members were denied commissions as a result of a systematic computer failure.

Plaintiffs' representations during these proceedings, including in their Complaint and motion for class certification, highlight Defendants' need for the survey responses.  Throughout this litigation, Plaintiffs have continually alleged that they and other class members were systematically denied commissions due to an alleged computer system failure.[2]  The survey responses contain prospective class members' and class members' factual accounts regarding the circumstances surrounding any alleged underpayment of commissions, including the reasons why a prospective class member or class member allegedly experienced an underpayment of commissions (which would include whether any claimed underpayment of commissions was due to an alleged computer system failure).  (See Doc. No. 261 at 11-12; Doc. No. 260-4.)  As a result, the survey responses are clearly highly relevant because they contain prospective class members' and class members' non-privileged individual factual accounts regarding Defendants'

---

[1] Defendants have propounded discovery on the Named Plaintiffs and the 41 declarants Plaintiffs incorporated into their class certification motion, requesting that each individual identify with specificity the alleged commissions for which they have not been paid *and* the systematic computer system failure that led to identified commissions that were not paid.  To date, the Named Plaintiffs and 41declarants have failed to adequately answer these discovery requests, despite the Court's orders compelling them to do so.  (See Doc. Nos. 81 & 159.)

2 In fact, Plaintiffs used the words "systematic" or "systematically" twenty times throughout their class certification briefs alone.

5

alleged systematic underpayment of compensation – the issue that is at the crux of this case. Therefore, this Court should compel Plaintiffs to appropriately respond to Defendants' Fourth Set of Requests for Production of Documents No. 1 because Plaintiffs' claims rely exclusively on the assertion that class members were systematically denied commissions.

### III.    ARGUMENT

Plaintiffs refuse to provide the survey responses requested in Defendants' Fourth Set of Requests for Production of Documents No. 1 on the basis that Defendants waived their right to move to compel the survey responses and that the survey responses are protected by the attorney-client privilege and work-product doctrine. Plaintiffs' arguments are unconvincing. The correspondence between the parties clearly demonstrates that Defendants did not waive their right to move to compel Plaintiffs to provide the survey responses. Additionally, the survey responses are relevant to Plaintiffs' claims and are not protected by the attorney-client privilege or the work-product doctrine because the survey responses contain purely factual material that does not warrant protection from disclosure.

### A.    DEFENDANTS HAVE NOT WAIVED THEIR RIGHT TO MOVE TO COMPEL THE SURVEY RESPONSES

Plaintiffs' argument that Defendants' motion to compel is "untimely by nearly four months" is simply incorrect. (Doc. No. 267 at 6). The facts clearly demonstrate that Defendants' motion to compel is timely because Defendants filed their motion within thirty days (on October 12, 2011) after Plaintiffs' served their deficient responses to Defendants' Fourth Set

of Requests for Production of Documents.[3]

Plaintiffs argue that Defendants' Fourth Set of Requests for Production of Documents No. 1 regarding the survey responses "seek[s] the very same information sought" in Defendants' Third Set of Requests for Production of Documents Nos. 4-6. (Doc. No. 267 at 6.) Therefore, Plaintiffs claim that Defendants have waived their right to file a motion to compel Plaintiffs to produce the survey responses under Local Rule 37.1(b) because Defendants did not move to compel Plaintiffs to produce the survey responses within thirty days after Plaintiffs provided their responses to Defendants' Third Set of Requests for Production of Documents Nos. 4-6. (Id. at 5-8.) In sum, Plaintiffs take the position that Defendants "may not extend the Rule 31.7(b) deadline simply by serving a new request that seeks the same information." (Id. at 7.)

Plaintiffs' argument is misplaced because it ignores the fact that Defendants issued a subsequent document request solely in an attempt to cure Plaintiffs' objections to the prior document requests. As set forth above, Plaintiffs objected to Defendants' Third Set of Requests for Production of Documents Nos. 4-6 on the grounds that these Document Requests were "overbroad" and "vague and ambiguous." (Doc. No. 260-3.) As a result, in their Fourth Set of Requests for Production of Documents No. 1, Defendants served a more focused Document Request explicitly seeking survey responses, including responses to the survey identified at NKA168709-715. (Doc. No. 260-7.) Defendants' served their more specific Fourth Set of Requests for Production of Documents No. 1 to cure Plaintiffs' objections to their Third Set of

---

3 Assuming, *arguendo*, that Defendants' motion to compel is arguably untimely, this Court should still permit Defendants to file the instant motion because good cause exists to extend the timing for any alleged filing delay since Defendants reached out to Plaintiffs in good-faith both before and after July 18, 2011 (in the form of their Fourth Set of Requests for Production of Documents and corresponding communication) to resolve this issue with Plaintiffs. See Sprint Communs. Co. L.P. v. Big River Tel. Co., LLC, No. 08-2046-JWL, 2009 U.S. Dist. LEXIS 49420, at *2-3 (D. Kan. June 12, 2009) (excusing the plaintiff's filing delay because "[the plaintiff] was diligently attempting to obtain technical documents from [the defendant] without court intervention"). Thus, even if this Court determines that Defendants' motion was initially due by July 18, 2011, it should still allow Defendants to file the motion and issue a ruling on the merits because the prevailing case law demonstrates that Defendants' good-faith actions extend the filing period under Local Rule 37.1(b).

7

Requests for Production of Documents Nos. 4-6 by making it explicitly clear the types of documents they were seeking.

As a result, and as set forth in Defendants' memorandum, Plaintiffs cannot claim that a document request is "overbroad" and "vague and ambiguous" and then assert that a subsequent more focused and unambiguous document request issued solely to cure any alleged deficiencies to which Plaintiffs objected is duplicative of that prior document request.  Indeed, an argument that a specific and narrow document request is duplicative of prior document requests that were allegedly "overbroad" and "vague and ambiguous" simply defies logic.  In fact, in their Opposition, it appears that Plaintiffs have recognized the illogical nature of their argument.  In their Opposition, Plaintiffs now assert that "[t]here was no ambiguity that Plaintiffs considered Defendants' third set of document requests to encompass the class member survey responses and objected accordingly."  (Doc. No. 267 at 8.)  Thus, the practical consequence of accepting Plaintiffs' argument would be to allow a party to issue completely meritless objections and then later insulate itself from responding to a subsequent document request that attempts to cure the prior document request's alleged deficiencies on the basis that the prior objections were indeed baseless.  Such a strategy is nonsensical and should be disfavored.

Further, notably, this jurisdiction has recognized that a party may file a more specific document request regarding the information sought in a prior document request if a motion to compel on the prior document request would have been untimely.  See Kankam v. Univ. of Kansas Hospital Authority, No. 07-2554-EFM, 2009 U.S. Dist. LEXIS 5526, at *11 (D. Kan. Jan. 26, 2009) (recognizing that a party could have issued a more specific document request regarding information sought in a prior document request instead of filing an untimely motion to

compel).  Accordingly, Defendants' motion to compel is clearly timely.[4]

## B. PLAINTIFFS MUST PRODUCE THE REQUESTED SURVEY RESPONSES BECAUSE THEY ARE NOT PROTECTED FROM DISCLOSURE UNDER THE ATTORNEY-CLIENT PRIVILEGE OR WORK-PRODUCT DOCTRINE

Plaintiffs refuse to provide the survey responses requested in Defendants' Document Request No. 1 on the basis that the survey responses are protected by the attorney-client privilege and work-product doctrine.  The survey responses requested, however, are not protected by the attorney-client privilege or the work-product doctrine because the survey responses contain purely factual material.  As a result, the survey responses are not protected from disclosure.

### 1. The Survey Responses Are Not Protected By The Attorney-Client Privilege

The survey responses are not protected by the attorney-client privilege because they contain solely factual information.  The fact that the survey responses were sent to Plaintiffs' counsel during the course of these proceedings or that an attorney-client relationship existed between Plaintiffs' counsel and prospective class members and class members is not relevant

---

[4] Even if this Court concludes that Defendants' motion is untimely, the Court should still permit Defendants to file the motion because Defendants acted in good faith in trying to resolve the initial dispute, any delay would be solely attributable to Defendants' attempt to provide a more specific discovery request, Defendants would be severely prejudiced if not provided the responses, Plaintiffs will not be prejudiced by allowing the motion to proceed, and it will not delay the current schedule (discovery is still in progress).  See Hock Foods, Inc. v. William Blair & Co., L.L.C., No. 09-2588-KHV, 2011 U.S. Dist. LEXIS 24874, at *12 (D. Kan. March 11, 2011) (allowing plaintiff to file an otherwise untimely motion to compel because it acted in good faith, allowing the motion would not prejudice defendant, and discovery was ongoing).  Defendants issued a more specific document request in good-faith to cure any alleged deficiencies in the prior document request and have consistently communicated with Plaintiffs in good-faith to resolve the issue.  Hock Foods, Inc., 2011 U.S. Dist. LEXIS at *12-13 (finding that the plaintiff acted in good faith, in part, because the plaintiff attempted to resolve the discovery dispute before filing the motion to compel).  The reason for delay was based on Defendants' understanding that, once they cured the alleged deficiencies in the prior document requests, Plaintiffs would provide the requested information.  Indeed, Defendants did not seek court intervention until it became clear that Plaintiffs were unwilling to appropriately respond to Defendants' more specific request.  Further, it is clear that permitting the motion to compel to proceed will not prejudice Plaintiffs nor will it delay judicial proceedings because discovery is still ongoing.  In fact, there are still several other discovery matters, including a separate motion to compel filed by Plaintiffs, pending before this Court. (See Doc. No. 262.); Hock Foods, Inc., at *13-14 (ruling that the motion should be permitted because discovery was ongoing and there was another discovery dispute pending before the court).

because the survey responses are factual in nature, not legal. Accordingly, Plaintiffs must produce the survey responses because they are discoverable.

As explained in detail in Defendants' memorandum, the survey that Plaintiffs' counsel provided to prospective class members and class members identified at NKA168709-715 clearly shows that any responses would contain solely factual information. (Doc. No. 261 at 11-12; Doc. No. 260-4.) Such factual survey responses are discoverable because they are not protected from disclosure under the attorney-client privilege. Morisky v. PSE&G, 191 F.R.D. 419 (D. N.J. 2000) (granting defendant's motion to compel 141 responses to questionnaires that plaintiffs' counsel sent to potential class members because the questionnaires contained factual information); Penk v. Oregon State Board of Higher Education, 99 F.R.D. 511, 517 (D. Or. 1983) (holding that "factual information gleaned by plaintiffs' counsel from the questionnaires sent to class members is discoverable by defendant through interrogatories served on plaintiffs' counsel"); Gipson v. Southwestern Bell Tel. Co., No. 08-2017-EFM-DJW, 2009 U.S. Dist. LEXIS 25457, at *57 (D. Kan. March 24, 2009) (noting that the attorney-client privilege "protects communications…not facts"); Sprint Communs. Co., L.P. v. Theglobe.com, Inc., 236 F.R.D. 524, 529 (D. Kan. 2006) (holding that "the attorney-client privilege does not protect facts communicated to an attorney").

Further, Plaintiffs' claim that the disclosure of survey responses is only appropriate when it involves putative class members during the pre-certification period is incorrect. (Doc. No. 267 at 12-13) To make this point, Plaintiffs seem to argue that post-certification class member survey responses should be treated like survey responses from putative class members seeking legal advice or representation, as opposed to other putative class member (pre-certification) survey responses, because an attorney-client relationship exists. Plaintiffs, however, ignore the

10

fact that the case they rely upon, Gates v. Rohm and Haas Co., No. 06-1743, 2006 U.S. Dist. LEXIS 85562 (D. Pa. Nov. 22, 2006), for the authority that survey responses from putative class members seeking legal advice or representation are protected by the attorney-client privilege actually found that such information contained within survey responses are discoverable. Specifically, Plaintiffs cite Gates for the proposition that "[w]here courts have specifically addressed the discoverability of questionnaires completed by putative class members, the dispositive factor typically is whether the putative class members were seeking legal advice or representation at the time they filled out the questionnaires." Id. at *9; (Doc. No. 267 at 12.) The Gates court, however, issued the foregoing quote when examining whether the actual questionnaires were discoverable themselves, as opposed to the information contained within the questionnaires. Indeed, when it came to the information contained within the questionnaires, the Gates court stated that "**[e]ven if putative class members are considered clients, the attorney-client privilege does not protect against discovery of factual information conveyed to an attorney by a party/client**." Gates, 2006 U.S. Dist. LEXIS 85562 at *6-7; See also Morisky, 191 F.R.D. at 424 (finding that, even if class members were clients of counsel, "factual [questionnaire] information conveyed to an attorney by a client is not shielded from discovery by the attorney-client privilege" because "the questionnaires contain fact inquiries that have nothing to do with legal representation"). On this basis, the Gates court held that the "factual information contained in the questionnaires is discoverable…even if the questionnaires themselves are not."[5]

---

5 As noted above, in this case, Plaintiffs have already produced a copy of the actual survey sent out to class members and prospective class members.

Gates, 2006 U.S. Dist. LEXIS 85562 at *7.[6]

Therefore, the fact that Plaintiffs' counsel sent out the surveys after class certification and an attorney-client relationship arguably attached between counsel and class members does not have any bearing on whether the survey responses are protected by the attorney-client privilege. As set forth above, the relevant inquiry is whether the survey responses contain factual information. In this situation, based on Plaintiffs' counsel's survey questions, the class member and prospective class member survey responses clearly contain purely factual information. Given the fact that Plaintiffs have already produced a copy of the blank survey, there is no attorney-client privilege basis for withholding either the information contained within the survey responses or the actual survey responses.

The factual nature of the survey questions and responses coupled with the applicable case law makes it clear that the surveys completed by prospective class members and class members are not privileged because they are factual, not legal, in nature. Accordingly, Plaintiffs must answer Defendants' Fourth Set of Requests for Production of Documents No. 1 in its entirety.

## 2. The Survey Responses Are Not Protected By The Work-Product Doctrine

As Plaintiffs point out in their Opposition, courts have reached different conclusions regarding whether survey responses are protected by the work-product doctrine. (Doc. 267 at 15) Given the factual similarities regarding the actual surveys in this case and those in Morisky coupled with the strong policy reasons promoted in Dobbs v. Lamonts Apparel, Inc., 155 F.R.D.

---

[6] Plaintiffs also cite Hudson v. Gen. Dynamics Corp., 186 F.R.D. 271, 275-76 (D. Conn. 1999) in support of their argument that the survey responses are protected by the attorney-client privilege. (Doc. No. 267 at 11-13.) Plaintiffs' reliance on this case is misplaced. As Plaintiffs point out, the Hudson court reviewed a magistrate judge's ruling that plaintiffs waived the attorney-client privilege with respect to the survey responses. (Id. at 12) Conversely, in the instant case, Defendants are not arguing that Plaintiffs waived the attorney-client privilege; rather, Defendants argue that the class members' and prospective class members' factual survey responses were not protected by the attorney-client privilege in the first instance – an issue that was not specifically addressed in Hudson.

650 (D. Alaska 1994), the correct view is that the survey responses are not protected by the work-product doctrine.

As in Morisky, the class member and prospective class member surveys in this case contain factual inquiries into each individual's employment experiences for the purposes of determining whether class members or prospective class members were not adequately compensated during their employment.  Additionally, like the situation in Morisky, Plaintiffs have produced the actual blank questionnaire, identified at HNKA0086310-16.  The Morisky court explained that "the actual questions conceived and organized by [plaintiffs' counsel] are the only arguable work product."  Morisky, 191 F.R.D. at 425; See also Gates, 2006 U.S. Dist. LEXIS 85562 at *18-19 (holding that counsel's survey questions were protected by the work-product doctrine, but that the "purely factual information contained on the completed questionnaires [was] not protected").  As a result, the Morisky court held that the survey responses were not protected by the work-product doctrine because, in part, the lone item afforded protection, counsel's questions, had already been produced.  Morisky, 191 F.R.D. at 425-26.  Indeed, class member survey responses, as opposed to the questions, proffered in response to counsel's questionnaire are not afforded work-product protection.  See Dobbs, 155 F.R.D. at 652 (finding that "[w]hat is qualifiably privileged is the work of counsel," and "[w]hat a witness 'knows' is not the work of counsel").  As the Dobbs court explained, "[t]hat the witness' knowledge should be discoverable on a first-hand basis, but not in the form of answers given to opposing counsel in writing, strikes the court as an example of elevating form above substance; and, as far as the qualified work product privilege is concerned, a fiction."  Id. (noting that "[w]hat counsel are entitled to protect is their work and their thoughts and their analysis of the case," not the knowledge possessed by potential class members).  Accordingly, the survey

13

responses are not protected by the work-product doctrine because they contain class members' and prospective class members' factual accounts regarding their experiences working for Defendants.

Assuming, *arguendo*, that the survey responses are protected by the work-product doctrine, Plaintiffs must still produce those documents because Defendants have substantial need for the information and it would be overly burdensome to obtain the requested information through other means.  As an initial matter, Defendants have substantial need for the survey responses because they contain factual accounts of class members' and prospective class members' commissions issues.  Morisky, 191 F.R.D. at 426 (finding that, in a class-action failure to pay overtime case, the "defendant ha[d] a substantial need for the completed questionnaires" because the "questionnaires contain[ed] specific factual information relating to the job duties and compensation of employees who are potential class members").  Indeed, Defendants have a substantial need for the survey responses because such information is vital to understand and defend against Plaintiffs' claims.  Id. (noting that a defendant has a substantial need for facts that are "crucial" to determining the merits of plaintiffs' claims).

Additionally, Plaintiffs' reliance on Vodak v. City of Chicago, No. 03 C 2463, 2004 U.S. Dist. LEXIS 532, at *14 (N.D. Ill. Jan. 16, 2004) in support of their argument that Defendants cannot demonstrate substantial need is misplaced.  The Vodak court only addressed the attorney-client privilege, not the work-product doctrine.  Id. at 11 n.3 (stating that, "[h]ere, Plaintiffs do not claim that the completed questionnaires are protected under the work product doctrine").  As a result, Plaintiffs' assertion that the "reasoning in Vodak…is more persuasive here" is erroneous.  (Doc. No. 267 at 18.)

Further, forcing Defendants to obtain the requested survey response information through other means would be overly burdensome. As explained by the Gates court:

> "[T]he purely factual information contained on the completed questionnaires should be excepted from work product protection because it appears to the Court to be an inescapable conclusion that requiring the defense to go through the laborious process of using the already produced attendee list for preparing and serving, and the plaintiffs and their counsel to go through the equally laborious process of answering and/or defending, individual interrogatories or depositions would likely be overly burdensome as well as unnecessarily expensive and time-consuming." Gates, 2006 U.S. Dist. LEXIS 85562 at *7.

Exacerbating this issue is the fact that Plaintiffs have stated that they are withholding 12,601 responses to their survey. (Doc. No. 260-6.) Requiring Defendants to depose hundreds of individuals simply to review the same questions as they appear in the disclosed blank questionnaire would be overly burdensome, expensive, and time-consuming. See Morisky, 191 F.R.D. at 426. In addition, since some of the class members no longer work for Defendants, Defendants may not be able to compel their appearance at deposition. Id. Additionally, it would be equally burdensome if Defendants have to propound hundreds of sets of interrogatories. Moreover, the interrogatory answers are likely to be less reliable because "given the opportunity to answer the same question twice at a substantial time interval, almost anyone will answer the question differently unless coached to give the same answer." Dobbs, 155 F.R.D. at 652; Morisky, 191 F.R.D. at 426 (noting that by "provid[ing] the relevant information through interrogatories rather than the actual statements, [plaintiffs' counsel] ironically would be providing the mental impressions that the work product doctrine is intended to protect). In fact, requiring Defendants to gather the information from other avenues would defeat one of the main purposes of discovery in a class action suit, which is to streamline discovery through representative plaintiffs. See Morisky 191 F.R.D. 416 (citing Penk, 99 F.R.D. at 516).

15

Accordingly, Plaintiffs must produce the survey responses because they are not protected by the work-product doctrine.

## IV.   CONCLUSION

Based on the foregoing, Defendants respectfully request that the Plaintiffs be compelled to appropriately respond to their Fourth Set of Requests for Production of Documents No. 1 in its entirety.

Respectfully submitted this 9th day of November, 2011.

*/s/ Michael L. Blumenthal*
**SEYFERTH, BLUMENTHAL & HARRIS LLC**
Michael L. Blumenthal
KS Bar No.18582
300 Wyandotte Street, Suite 430
Kansas City, Missouri 64105
Tel: 816-756-0700
Fax:  816-756-3700


*/s/ Elise M. Bloom*
**PROSKAUER ROSE LLP**
Elise M. Bloom*
Eleven Times Square
New York, New York 10036
Tel: 212-969-3410
Fax: 212-969-2900
(*Admitted *Pro Hac Vice*)

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of November, 2011, the foregoing **Defendants' Reply Brief In Support of Their Motion to Compel Responses to Their Fourth Set of Requests for Production of Documents** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

> George A. Hanson
> Stueve Siegel Hanson LLP
> 460 Nichols Road, Suite 200
> Kansas City, Missouri 64112
>
> Nichols Kaster, PLLP
> Donald H. Nichols
> Paul J. Lukas
> Michele R. Fisher
> 4600 IDS Center, 80 South 8th Street
> Minneapolis, Minnesota 55402

> Respectfully submitted,
>
> /s/ Michael L. Blumenthal
> Michael L. Blumenthal
> Kansas Bar No. 18582
> SEYFERTH, BLUMENTHAL & HARRIS LLC
> 300 Wyandotte Street, Suite 430
> Kansas City, Missouri 64105
> Telephone: 816-756-0700
> Facsimile:  816-756-3700
> E-mail:  mike@sbhlaw.com