IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ROXIE SIBLEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 08-2063-KHV |
| | ) | |
| SPRINT NEXTEL CORPORATION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiffs in this class action are current and former employees of defendants' retail stores.   They complain that defendants failed to pay them earned commissions in violation of the Kansas Wage Payment Act and various breach-of-contract theories.  Defendants have filed a motion to compel plaintiffs' responses to Request No. 1 of defendants' fourth set of requests for production of documents (**doc. 260**).  Because the court finds that Request No. 1 was substantially similar to earlier document requests upon which defendants failed to file a timely motion to compel, the motion is denied.

The instant motion centers around a "client survey" that plaintiffs' class counsel created and posted on their firm website.[1]  The survey asks class members questions about such things as their beliefs about why defendants did not pay commissions owed and the effectiveness of the commissions appeals procedure.  In response to defendants' third set of

---

[1]*See* www.nka.com/case/sprint-nextel-retail-employees (last accessed on November 18, 2011).

requests for production of documents, plaintiffs produced a blank copy of the survey, identified as document NKA168709-15.  Plaintiffs did not, however, produce class-members' responses to the survey, asserting that the responses were "protected from disclosure by the attorney-client privilege and work product doctrine."  Defendants did not file a motion to compel related to their third set of requests for production of documents.

About two months after receiving plaintiffs' responses to their third set of requests for production of documents, defendants served Request No. 1, seeking:

> Any and all surveys completed by Class Members or prospective Class Members regarding this action, including, but not limited to, responses to the survey identified at NKA168709-15.

Plaintiffs objected to Request No. 1 on the grounds that

> it is duplicative and cumulative and seeks information protected by the attorney-client privilege and/or work product doctrine.  This request seeks documents already requested and encompassed in Defendants' requests 4, 5 and 6 of Defendants' [Third] Set of Requests for Production of Documents. Plaintiffs objected to those requests, and Defendants did not move to compel responses. . . . Defendants have waived their objection to Plaintiffs' response to requests seeking these documents.

Defendants "vehemently disagree" with plaintiffs' assessment that Request No. 1 is duplicative of defendants' earlier document requests.[2]  Defendants contend, instead, that Request No. 1 is "a more specific request concerning the survey responses" and that it was propounded because plaintiffs objected (in part) to earlier Request Nos. 4–6 on the grounds they were "overbroad" and "vague and ambiguous."  Defendants therefore ask the court to

---

[2]Doc. 261 at 6.

reject plaintiffs' objections to Request No. 1 and to order plaintiffs to produce the survey responses.

It is undisputed that defendants did not file a timely motion to compel plaintiffs' responses to Request Nos. 4–6 of defendants' third set of requests for production of documents.  D. Kan. R. 37.1(b) states that if a motion to compel is not filed within 30 days of the service of the answer or objection, "the objection to the . . . answer or objection is waived."  The obvious rationale of this 30-day waiver rule, which is also set out in the Scheduling Order,[3] is to ensure that the court can rule on discovery disputes when they're still fresh and to keep cases moving along briskly to final disposition.  "The court has the authority to control discovery that is directly and obviously intended to circumvent the timetable set in the rule and scheduling order."[4]  Thus, the court may find that a party "cannot avoid the deadlines in the scheduling order by simply submitting the same discovery . . . thereby 'restarting the clock' on the time to file a motion to compel."[5]

The question before the court is whether Request No. 1 was an attempt by defendants to circumvent the missed 30-day deadline for filing a motion to compel responses to their third set of requests for production of documents (as plaintiffs argue), or whether Request

_____

[3]Doc. 34 at 9; Doc. 114 at 10, 11.

[4]*Aid for Women v. Foulston*, No. 03-1353, 2005 U.S. Dist. Lexis 8420, at *14 (D. Kan. May 6, 2005).

[5]*Id.*

No. 1 was "a more refined document request"[6] propounded to address plaintiffs' "overbroad" and "vague and ambiguous" objections to Request Nos. 4–6 of defendants' third set of requests for production of documents (as defendants argue).  A comparison of Request Nos. 5 and 6 of defendants' third set of requests for production of documents and plaintiffs' answers to the same, and Request No. 1, leads the court to conclude that Request No. 1 was a duplicative request for survey responses.  Because Request Nos. 5 & 6 are so directly on point, the court need not examine Request No. 4.

Request No. 5 of defendants' third set of requests for production of documents sought:

> Any and all documents relating to or evidencing . . . **responses to surveys** . . . that Plaintiff, Named Plaintiff, and/or their agents or representatives **obtained from Class Members** relating to the facts, claims, and/or allegations made in the Complaint . . . . (emphasis added).

Request No. 6 of defendants' third set of requests for production of documents similarly sought:

> Any and all documents relating to or evidencing . . . **responses to surveys** . . . that Plaintiff, Named Plaintiff, and/or their agents or representatives **obtained from Class Members** relating to commissions, including, but not limited to the alleged amounts of commissions earned, alleged amounts of commission payments or underpayments, and commission appeals . . . . (emphasis added).

Plaintiffs gave the same answer to both requests:

> Plaintiffs object to this request on the grounds that it is . . . overbroad and unduly burdensome; vague and ambiguous; and calls for documents protected

---

[6]Doc. 272 at 3.

by the attorney-client privilege and work product doctrine.  Subject to and without waiving the foregoing objections, Plaintiff answers as follows.

. . . Any **class member responses to survey questions** distributed by Plaintiffs' counsel after this case was certified as a class action **are protected from disclosure by the attorney-client privilege and work product doctrine**. . . . (emphasis added).

As set forth above (and here for the reader's convenience), Request No. 1 sought:

Any and all **surveys completed by Class Members** or prospective Class Members regarding this action, **including**, but not limited to, **responses to the survey** identified at NKA168709-15 (emphasis added).

The parlance used in Request Nos. 5 and 6, as compared to new Request No. 1, is slightly different.  But all three clearly sought the production of class member responses to the survey created by plaintiffs' class counsel.  Even defendants acknowledge in their reply brief that "Document Requests Nos. 4–6 either included or potentially included any responses to class member surveys."  Doc. 272 at 2. Plaintiffs' answers to Request Nos. 5 and 6 support this conclusion, as they make clear that plaintiffs interpreted Request Nos. 5 and 6 to include requests for "class member responses to survey questions"—the exact documents sought in Request No. 1.

The court rejects defendants' argument—asserted in a footnote—that Request No. 1 differed from Request Nos. 5 and 6 because Request No. 1 sought survey responses from "prospective" class members in addition to class members.  The definition section of defendants' third set of requests for production of documents defined "class members" as having "the same meaning as the term used by the Court in the Memorandum and Order

granting Plaintiffs' Motion for Rule 23 Class Certification. (Doc. No. 99)."  Doc. 260-2 at

3.  The Memorandum and Order granting class certification defined the class as "All persons

nationwide who worked for Defendants' retail stores since their merger with Nextel,

including Retail Store District Managers, Retail Store Managers, Assistant Retail Store

Managers, Lead Retail Consultants, Retail Consultants, Retail Sales Representatives, and

other retail employees whose compensation was based in full or in part on commissions."

Doc. 99 at 10.   The court noted that this definition was broad enough to encompass

"potential" and "prospective" class members.  *Id.* at 11–12.  Thus, Request Nos. 5 and 6 by

definition also sought the survey responses of prospective class members.

The court flatly rejects defendants' argument that Request No. 1 was necessary to

address plaintiffs'  overbroad, vague, and ambiguous objections to the earlier document

requests.  Plaintiffs did assert overbroad, vague, and ambiguous objections in their litany of

form objections.  But defendants fail to acknowledge in their motion papers that plaintiffs

went on to answer Request Nos. 5 and 6 and to make the targeted objection that "class

member responses to survey questions distributed by Plaintiffs' counsel . . . are protected

from disclosure by the attorney-client privilege and work product doctrine."

The parties' exchange of golden-rule letters following the service of plaintiffs'

answers to defendants' third set of requests for production of documents further

demonstrates that plaintiffs' assertion that the survey responses were privileged was at the

heart of the dispute over Request Nos. 5 and 6.  Defendants' letter explicitly acknowledged

plaintiffs assertion that the survey response were privileged[7] and requested that plaintiffs "provide a comprehensive privilege log no later than July 7, 2011 [sic] so that we may move to compel discovery, if necessary, within the 30 day time period provided by Local Rule 37.1."[8]  Plaintiffs' letter noted in response that "Plaintiffs have received 12,601 responses to their survey from class members, including duplicate and anonymous responses, which Plaintiffs have not produced.  These responses are protected communications between Class Counsel and class members."[9]

Despite acknowledging the 30-day deadline for filing a motion to compel the survey responses, defendants allowed the deadline to pass without raising their objection to plaintiffs' non-production.  When defendants did not file a timely motion to compel production of the survey responses, they waived their "objection to the . . . objection."[10] Defendants may not circumvent this waiver by filing a new document request for the survey responses.  Permitting defendants to so do would completely abrogate Rule 37.1(b).

The court finds distinguishable the case cited in defendants' reply for the proposition that a party may serve a more specific document request after the time has passed for filing a motion to compel an earlier document request.  In *Kankam v. Univ. of Kan. Hosp. Auth.*,[11]

---

[7]Doc. 260-5 at 10–12.

[8]*Id.* at 1.

[9]Doc. 260-6.

[10]D. Kan. R. 37.1(b).

[11]No. 07-2554, 2009 U.S. Dist. Lexis 5526, at *11 (D. Kan. Jan. 26, 2009).

the plaintiff filed an untimely motion to compel the production of certain emails which were arguably responsive to the plaintiffs' document request but of which the plaintiff did not become aware until after her document request was served and answered.  In holding that the plaintiff failed to show excusable neglect for her untimely motion, the court noted in dicta that the plaintiff "could have made additional requests for production of the contested emails in a more specific request."[12]  In the present case, defendants were aware of the survey responses before drafting their third set of requests for production of documents and clearly sought the survey responses in Request Nos. 5 and 6.  Moreover, although Request No. 1 was worded differently than earlier Request Nos. 5 and 6, the court has found that it was not more specific, given that the parties clearly interpreted Request Nos. 5 and 6 as seeking the survey responses.

In a footnote in their reply brief, defendants argue for the first time that even if the court deems their motion to compel untimely, the court should permit them to file the instant motion because they acted in "good faith" and "good cause" exists for an extension of time.[13] "Courts in this district generally refuse to consider issues raised for the first time in a reply brief."[14] This general rule, which is designed to prevent movants from sand-bagging their opponents, seems particularly applicable here when an argument is raised for the first time

---

[12]*Id.*

[13]Doc. 272 at 7 n.3 & 9 n.4.

[14]*Liebau v. Columbia Cas. Co.*, 176 F. Supp. 2d 1236, 1244 (D. Kan. 2001) (collecting cases).

in a **footnote** of a reply brief and is not given significant attention by the party raising it.

Under D. Kan. R. 37.1(b), the court may extend the time for filing a motion to compel "for

good cause."  Although thus the court usually declines to address this kind of last gasp

argument on the  merits, here the court finds that, even assuming for the sake of discussion

that defendants acted in good faith, they've not demonstrated good cause for extending the

applicable 30-day limitation period.

The court denies defendants' motion to compel plaintiffs' substantive responses to

Request No. 1 because the court finds that Request No. 1 was an attempt to circumvent the

30-day deadline upon which defendants could have moved to compel answers to earlier

document requests.  So finding, the court need not reach the issue of whether plaintiffs

appropriately asserted attorney-client and work-product protection over the survey

responses.

IT IS THEREFORE ORDERED that defendants' motion to compel responses to

Request No. 1 is denied.

Dated November 23, 2011, at Kansas City, Kansas.


 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge