IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROXIE SIBLEY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 08-2063-KHV |
| | ) |
| SPRINT NEXTEL CORPORATION, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Plaintiffs in this class action are current and former employees of defendants' retail stores. Plaintiffs complain that problems with defendants' computer systems led to the failure by defendants to pay plaintiffs' earned commissions in violation of the Kansas Wage Payment Act and various breach-of-contract theories. Plaintiffs have filed a motion to compel defendants to produce a Rule 30(b)(6) corporate designee to testify about Topics 6–12 of plaintiffs' deposition notice, and to produce documents responsive to Request Nos. 32 and 34–36 of plaintiffs' fourth set of requests for production of documents (**doc. 262**).[1] Because the court finds this discovery relevant and that defendants have not established any basis for limiting its scope, the motion is granted.

---

[1] Plaintiffs' motion also moved to compel defendants to produce documents responsive to other document requests and to answer certain interrogatories, but plaintiffs later withdrew that portion of their motion. *See* doc. 278.

## I.     Rule 30(b)(6) Deposition

As permitted by Fed. R. Civ. P. 30(b)(6), plaintiffs named defendants as deponents in a notice that listed twelve topics for examination. Defendants objected to seven of the topics and have refused to produce corporate representatives to testify on them.

### A.  Topics 6 and 8–10

Topics 6 and 8–10 seek testimony about defendants' "problems, issues, or system complications" that affected commissions paid to retail employees:

> Topic 6.  Sprint's problems, issues, or system complications from August 2005 to the present that affected the proper tracking and paying of commissions for activations, contract renewals, handset upgrades, add-ons, recurring revenue, prepaid phone cards, and C-SAT.
>
> Topic 8.  Sprint's problems, issues, or system complications from August 12, 2005 to January 31, 2010 involving data scrubs and data feeds affecting the Retail Sales Channel and its employees' commissions.
>
> Topic 9.  Sprint's problems, issues, or system complications from August 12, 2005 to January 31, 2010 with employee or sales rep related identifiers and sales channel IDs that affected the accurate payment of commissions and resolution of appeals.
>
> Topic 10.  Sprint's problems, issues, or system complications from August 12, 2005 to January 31, 2010 relating to Retail Sales Channel employees' quotas that affected the accurate payment of commissions.

Defendants first object to Topics 6 and 8–10 on the ground that they are overbroad or "beyond the scope of the case."[2]  Defendants argue that these topics seek testimony "relating to *any* problem or issue paying commissions without any limitation to *the*

---

[2]Doc. 269 at 20, 22.

*particular alleged systematic computer systems failure* that is the basis for the complaint."[3] Defendants' argument appears to be that plaintiffs are not permitted to seek discovery into defendants' payment or underpayment of commissions that are not caused by a single systematic computer failure.

Defendants' argument is rejected. Plaintiffs' theory in this case is—and always has been—that problems (plural) in defendants' computer systems led to the underpayment of commissions to class members.[4] Plaintiffs state in their brief that Topics 6 and 8–10 simply seek information about the multitude of computer problems, issues, or system complications within defendants' commissions system leading to this underpayment.[5] The information sought by these topics is clearly relevant to plaintiffs' claims, and Fed. R. Civ. P. 26(b)(1) permits the discovery of "any nonprivileged matter that is relevant to any party's claim or defense."[6] It is significant to note that defendants have not suggested or attempted to demonstrate that preparing a witnesses to testify on these topics will be unduly burdensome.

---

[3]*Id.* at 20 (emphasis in original); *see also, id.* at 23.

[4]*See, e.g.,* Amended Complaint, doc. 8 at 2; Memorandum and Order Certifying Class, doc. 99 at 7, 12, 14; Notice to Putative Class Members, doc. 124-1 at 6.

[5]Doc. 270 at 2–3, 5.

[6]"Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Relevancy is broadly construed during the discovery phase, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 523 (D. Kan. 2010) (quoting *Cardenas v. Dorel Juvenile Grp., Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005) and *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004)).

Defendants next object that Topics 6 and 8–10 fail "to identify with 'reasonable particularity' matters within the corporation's knowledge and 'relevant to the issues in dispute.'"[7] According to defendants, these topics lack the particularity necessary for defendants to "identify and designate an appropriate witness in this case."[8] The court rejects this argument. Defendants have failed to identify any portion of these topics that are confusing or not particular. After reviewing the topics, the court cannot envision a scenario whereby defendants will be at a loss to identify a representative to testify about a particular topic.

Defendants' third objection to Topics 6 and 8–10 is that they contain "phrases that are nothing more than allegations from the complaint that Defendants vigorously deny" and "phrases which assume facts that are in dispute."[9] This objection is also rejected. First, there is nothing inherently wrong with using phrases from one's pleadings in one's discovery requests. Second, defendants have conceded on multiple occasions that systems problems did exist which affected the commissions of many retail employees—these facts are not in dispute.[10] Third, to the extent defendants contend that the particular problems, issues, or

---

[7] Doc. 269 at 22.

[8] *Id.* at 24.

[9] *Id.*

[10] *See, e.g.,* doc. 99 at 7 ("Defendants acknowledge that their systems negatively affected the commissions of many employees in the putative class."); doc. 84-4 at 42 ("Defects and inefficiencies within upstream systems and processes are the root causes of most Commissions inaccuracies that drive appeals, which in turn leads Reps and Managers to have little confidence in their commission payments."); doc. 45-11, at 2 ("Since I began

system complications implicated by a topic do not exist, their corporate representative may state as much in his or her deposition.

The court grants plaintiffs' motion to compel with respect to Topics 6 and 8–10. [11]

### B. Topic 7

Topic 7 seeks testimony about "Sprint's policies and practices relating to recoupment and recalculations related to over- and underpayments in the Retail Sales Channel from August 12, 2005 to January 31, 2010." In response to the motion to compel, defendants simply make the conclusory statement that "Topic 7, as currently phrased, is also an inappropriate topic for a Rule 30(b)(6) deposition."[12] The court rejects this unsupported argument. Topic 7 is straightforward and relevant on its face. Plaintiffs' motion to compel is granted with respect to Topic 7.

### C. Topics 11 and 12

Topics 11 and 12 seek testimony about other investigations or lawsuits involving

---

examining commissions payment issues in August 2007, I have identified a number of distinct issues relating to Sprint's computer systems, the manner in which those systems communicate with one another, and the way in which these systems have been used that have caused, in some circumstances, records in the commissions system not to match. . . . These issues range from substantial problems that affect a large number of retail employees to less significant, discrete issues that affect a relatively small number of retail employees. Some of the issues that have been identified have been resolved while other issues are sufficiently complex that we are still trying to resolve them.").

[11] The court will not address defendants' vague references that plaintiffs have failed to identify a systematic computer failure underlying plaintiffs' claims. The appropriate avenue for defendants to challenge plaintiffs' alleged discovery failure is a motion to compel, where the issue can be raised directly.

[12] Doc. 269 at 25.

defendants' commission-related compensation:

> Topic 11.  Investigations, complaints, inquiries, or communications through the Department of Labor or other governmental agencies regarding Sprint's compensation practices relating to Retail Sales Channel employee commissions from August 12, 2005 to present.
>
> Topic 12.  Lawsuits, or threatened lawsuits by Sprint's employees, third party dealers, or others regarding Sprint's compensation practices relating to commissions.

Defendants object on the ground that Topics 11 and 12 seek information that is not relevant because they are not limited in scope to investigations or lawsuits "arising from *the same* conduct or allegations as are claimed in this case – namely that the class has been underpaid commissions as a result of a systematic computer failure."[13]  But notwithstanding their objection, defendants state that they "are unaware of any investigation and/or complaint relating to alleged underpayment of commissions resulting from either a systematic computer failure . . . or to Defendants' compensation practices as described in Topics 11 and 12."[14]

Plaintiffs are not satisfied with defendants' answer.  Plaintiffs express concern that the answer is premised on defendants' "narrow definition of 'a systematic computer failure,'"[15] and that defendants may be withholding relevant information that would support plaintiffs' claim that defendants' conduct was willful.

---

[13]*Id.* at 26 (emphasis in original).

[14]*Id*.

[15]Doc. 270 at 13.

Defendants' objections to Topics 11 and 12 are overruled.  Information about other investigations, complaints, or lawsuits involving defendants' commission-related compensation are relevant, even if they were not premised on an alleged systematic computer failure.  As noted above, relevancy is broadly construed at the discovery stage and should be permitted if there is any possibility that the information sought may be relevant, i.e., reasonably calculated to lead to the discovery of admissible evidence.[16]  Information about past investigations, complaints, or lawsuits relating to defendants' commission-based compensation system may lead to the discovery of evidence admissible in this case.[17]  The court does find, however, that Topic 12 should be limited in scope to lawsuits or threatened lawsuits "from August 12, 2005 to present"—the relevant class period in the instant case.  Plaintiffs' motion to compel is granted with respect to Topics 11 and 12, but with the time limitation placed on Topic 12.

## II.  Requests for Production of Documents

Plaintiffs' fourth set of requests for production of documents, Request Nos. 32 and 34–36, seek essentially the same information sought by deposition Topics 6 and 8–10:

> Request No. 32. All documents and communications related to Defendants' problems, issues, or system complications that affected the proper tracking

---

[16] *See supra* note 6.

[17] *See Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 646 (D. Kan. 2004) ("The Court . . . finds that these discovery requests—even though they will most likely discover some information about complaints and problems of a different type and magnitude than the alleged complaints and problems relating to Plaintiff—are still likely to lead to the discovery of admissible evidence.").

and/or paying of commissions for activations, contract renewals, handsets, handset upgrades, addons, recurring revenue, prepaid phones, prepaid phone cards, C-SAT, accessories, spiffs, ramp-up payments, and guarantee payments during the class period.

Request No. 34. All documents related to Defendants' problems, issues, system complications, or system failures involving data feeds, data scrubs, process corrections, system workarounds, and system patches that affected the timely and accurate payment of class member commissions during the class period.

Request No. 35. All documents related to Defendants' problems, issues, or system complications with employee or sales rep related identifiers (including Agent Ids) and sales channel IDs that affected the timely and accurate payment of commissions during the class period.

Request No. 36. All documents related to Defendants' problems, issues, or system complications involving retail employees' quotas that affected the timely and accurate payment of commissions during the class period.

Defendants object to responding to these requests on relevancy grounds, asserting that discovery should be limited to a single systematic computer failure and should not extend to "*any* alleged 'problems, issues, or system complications' in connection with the payment (or 'underpayment') of commissions."[18]

Defendants' objection is overruled. As discussed above in Section I.A, given the liberal relevancy standards applicable at the discovery stage, the court finds the information requested relevant. Information about defendants' commission-payment system during the

---

[18]Doc. 269 at 29–30. Defendants asserted a number of other objections in their discovery responses, but in ruling on a motion to compel, the court only considers those objections relied upon in responding to the motion to compel. *Sonnino*, 220 F.R.D. at 641 n.22, 656 ("[A] court will consider only those objections that have been timely asserted in the initial response to the discovery request and subsequently reasserted and relied upon in response to the motion to compel.").

class period could surely lead to the discovery of admissible evidence.  Again, defendants have not articulated or demonstrated any harm that will befall them by producing the requested discovery.  Plaintiffs' motion to compel is granted as to Request Nos. 32 and 34–36.

IT IS THEREFORE ORDERED that plaintiffs' motion to compel is granted. Defendants shall produce documents responsive to Request Nos. 32 and 34–36 by **December 30, 2011**.  Defendants shall produce one or more representatives to testify on deposition Topics 6–12 by **January 27, 2012**.

Dated December 9, 2011, at Kansas City, Kansas.

                                         s/ James P. O'Hara
                                         James P. O'Hara
                                         U.S. Magistrate Judge