IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

------------------------------------- X
ROXIE SIBLEY, JEANNE NOEL, ERNESTO   :
BENNETT, JAMIE WILLIAMS, GREG ST.    :
JULIEN, TRACIE HERNANDEZ, JOHN       :
JASINSKI, JAY RICHIE, and TEISHA KING, :
individually and on behalf of a class of others :
similarly situated,                  :
                                     :
             Plaintiffs,           :
                                     :
             v.                    :  Case No. 02:08-CV-02063-KHV/JPO
                                     :
SPRINT NEXTEL CORPORATION, a Kansas  :
corporation                          :
                                     :
             and                   :
                                     :
SPRINT/UNITED MANAGEMENT             :
COMPANY, a Kansas corporation,       :
                                     :
             Defendants.           :
------------------------------------- X

**REPLY MEMORANDUM IN SUPPORT OF
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT ........................................................................................................................ 2

    A.    Summary Judgment Is Appropriate Because Plaintiffs Offer No Reason To Believe That The Class-wide Data Will Turn Up Any Relevant Material Evidence For The Nine Named Plaintiffs. ................................................................................................................ 2

    B.    There Is No Genuine Issue of Material Fact That The Nine Named Plaintiffs Were Overpaid. ............................................................................................................................ 8

    C.    No Genuine Issue Of Material Fact Exists As To Whether The Nine Named Plaintiffs Are Inadequate Class Representatives. ................................................................................ 10

CONCLUSION .................................................................................................................... 11

## TABLE OF AUTHORITIES

### CASES

PAGE

Anderson v. Farmland Indus., Inc.,
   136 F. Supp. 2d 1192 (D. Kan. 2001) .................................................................... 6, 8

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986) .................................................................................................... 9

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986) .................................................................................................. 10

In re Integra Realty Res., Inc.,
   262 F.3d 1089 (10th Cir. 2001) ................................................................................ 11

Johnson v. Hewlett-Packard Co.,
   No. C 09-03596 CRB, --- F. Supp. 2d ---, 2011 WL 3566605
   (N.D. Cal. Aug. 12, 2011) ....................................................................................... 8-9

Lewis v. City of Ft. Collins,
   903 F.2d 752 (10th Cir. 1990) .............................................................................. 2-3, 8

Price ex rel. Price v. W. Res., Inc.,
   232 F.3d 779 (10th Cir. 2000) ................................................................................ 2, 8

Rector v. City and County of Denver,
   348 F.3d 935 (10th Cir. 2003) ............................................................................. 10-11

Riggs v. Airtran Airways, Inc.,
   497 F.3d 1108 (10th Cir. 2007) ............................................................................ 9-10

Shayesteh v. Raty,
   404 F. App'x 298 (10th Cir. 2010) ............................................................................ 2

Stephenson Oil Co. v. Citgo Petroleum Corp.,
   271 F.R.D. 323 (N.D. Okla. 2010) ........................................................................... 11

Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.,
   616 F.3d 1086 (10th Cir. 2010) .................................................................................. 2

### REGULATIONS

Fed. R. Civ. P. 26 ................................................................................................................ 3

Fed. R. Civ. P 56 ......................................................................................................... *passim*

To defeat summary judgment, Rule 56 requires sworn, competent and admissible evidence to demonstrate a genuine issue of material fact to show that one, or more, of the nine named plaintiffs are owed commissions. Plaintiffs' opposition does not meet these well-established requirements. Despite the volume of its appendices, plaintiffs' opposition to Sprint's motion is more notable for its omissions than its arguments. Plaintiffs concede by silence that the commission data bearing identifiers for the nine named plaintiffs show an overpayment to each of them. Rather than challenging those calculations, they instead ask for time to hunt through the class-wide, Stage 3 data in the speculative hope that somewhere among those 20 billion or so transactions might be some that could be attributed to the named plaintiffs that might overcome the overpayments. Nowhere in their materials do they cite a single example of such a thing, however, or offer any evidence that it has ever occurred to any representative in Sprint's retail channel, let alone the nine named plaintiffs. Sprint produced all of the data <u>and</u> documents relating to the nine named plaintiffs – not just in the RMS system, but the nine named plaintiffs' appeals, ODR reports, and everything else – in 2008 and 2009,[1] after which the parties subjected the information to intense scrutiny. More than three years later, plaintiffs cannot insist on more time based on unsubstantiated allegations unrelated to the nine named plaintiffs. Plaintiffs' opposition boils down to their expert's wholly inadequate statement that "I have observed these problems in the data." Under well-established law, such unsupported speculation

---

[1] <u>See</u> Declaration of Nicole Eichberger, dated January 26, 2012 ("Eichberger Decl."), ¶¶2-6, Exs. A-E, (demonstrating that Sprint produced documents concerning all nine named plaintiffs in 2008 and Sprint produced the underlying data relating to potentially commissionable transactions concerning the six non-supervisory named plaintiffs ("Stage 1 data") on February 27, 2009).

is insufficient to create a genuine issue of material fact as to the nine named plaintiffs. Accordingly, Sprint is entitled to summary judgment as to them.

## ARGUMENT

Plaintiffs premise their opposition on the sole theory that orphaned transactions in the class-wide data will undermine the conclusion that the nine named plaintiffs were overpaid. The data and documents relating to the nine named plaintiffs that the parties have examined since 2008, however, conclusively establish that the nine named were overpaid, and plaintiffs fail to support their opposition with any admissible evidence that shows otherwise. Thus, summary judgment is warranted because there is no genuine issue of material fact that the nine named plaintiffs were overpaid.

      A.      **Summary Judgment Is Appropriate Because Plaintiffs Offer No Reason To Believe That The Class-wide Data Will Turn Up Any Relevant Material Evidence For The Nine Named Plaintiffs.**

To succeed in postponing summary judgment under Rule 56(d), plaintiffs must not only show that additional time will allow them to present facts rebutting summary judgment that are not currently available,[2] but also that the facts exist to be found; mere speculation that something might be uncovered is not sufficient. Price ex rel. Price v. W. Res., Inc., 232 F.3d 779, 783-84 (10th Cir. 2000); Lewis v. City of Ft. Collins, 903 F.2d 752, 759 (10th Cir. 1990). Here, plaintiffs only offer speculation and hypothesis.

Plaintiffs do not challenge the detailed analysis conducted by Sprint's expert, Janet Thornton, as to the transactions that bear identifiers for the nine named plaintiffs. See Doc. No. 282-2, December 16, 2011 Affidavit of Janet R. Thornton ("December 2011 Thornton Aff."),

---

[2] See, e.g., Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd., 616 F.3d 1086, 1096 (10th Cir. 2010) (quoting Comm. for the First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992)); Shayesteh v. Raty, 404 F. App'x 298, 301 (10th Cir. 2010).

¶¶62-65. Rather, they limit their argument to the unsubstantiated possibility that somewhere in the class-wide data there might be evidence of <u>other</u> transactions that were entered into the RMS system by the named plaintiffs, but for which agent codes[3] unassociated with the nine named plaintiffs were somehow deleted or overwritten.  See, e.g., Doc. No. 292-18, Declaration of Nile L. Nickel ("Nickel Decl.") ¶¶14-16.[4]  Plaintiffs suggest that, if such transactions can be found, they might show underpayments, and perhaps those underpayments would add up to large enough amounts to overcome the documented overpayments and result in liability.  However, these allegations are merely speculative, as evidenced by plaintiffs' inability to assert such transactions exist or identify any relevant, admissible evidence tied to the nine named plaintiffs.  Plaintiffs do not cite a single example of such a transaction in their papers (let alone one that relates to the named plaintiffs who are the subject of this motion).  Instead, the offered "evidence" falls far short of providing the Court with any reason to believe that action on the motion should be delayed.

---

[3] Sales representatives ("sales reps") in the Retail Sales Channel do not enter transactions in the point-of-sale system by agent code.  See Declaration of Judith F. Train, dated January 24, 2012 ("Train Decl."), ¶¶ 8-9; Janet R. Thornton, P.h.D. Affidavit, dated January 26, 2012 ("January 2012 Thornton Aff."), ¶6; Eichberger Decl. ¶7, Ex. F, M. Burrow Deposition ("Burrow Dep.") at 27:1-28:5.  Rather, they use a sales representative id or employee id.  Id.

[4] We refer to Mr. Nickel as plaintiffs' "expert" because he says he has been retained by plaintiffs' counsel, Nickel Decl. ¶2, and does not appear to be a fact witness.  Plaintiffs also refer to him as "their expert" in the opposition brief, see, e.g., Pl. Mem. at 31.  But plaintiffs have not made expert disclosures for Mr. Nickel as required by Fed. R. Civ. P. 26, and when Sprint asked for such disclosures, counsel for Plaintiffs stated that a response to the identified deficiencies was forthcoming.  See Eichberger Decl., ¶9.  Sprint accordingly has filed herewith a motion to strike Nickel's declaration.  Either he is offered as an expert, in which case his declaration should be disregarded for failure to comply with plaintiffs' disclosure obligations, or he is not, in which case there is no basis to consider his statements of opinion on which plaintiffs rely.  In any case, as explained in the text, Nickel's declaration is so vague, generalized and lacking <u>any</u> supporting evidence as to prevent it from supporting plaintiffs' Rule 56(d) request.

1.  <u>Sprint's Documents</u>. Most voluminously, plaintiffs attach various Sprint documents that mention problems with the commission system.[5] Many of these documents, however, make no mention of problems with RMS employee identifiers. <u>See, e.g.</u>, Fisher Decl. Exs. 1, 12, 13, 19, 34, 35. Accordingly, those documents do not support plaintiffs' speculation that there may be orphaned transactions lurking in the RMS point-of-sale system. <u>See</u> Eichberger Decl., ¶8, Ex. G, Chart of Plaintiffs' Documents; Eichberger Decl. ¶7, Ex. F, Burrow Dep. at 27:1-28:5. Others of plaintiffs' exhibits contain references to "agent codes," but these documents relate to Sprint's other commission-based channels, not to the Retail Sales Channel, where the nine named plaintiffs worked. <u>See</u> Fisher Decl., Exs. 7 & 9; Train Decl., ¶¶7-9; January 2012 Thornton Aff., ¶¶6-7. It is unsurprising then plaintiffs fail to link their exhibits to the nine named plaintiffs and the plaintiffs' transactions, which are the subject of this pending summary judgment motion. <u>See</u> Eichberger Decl. ¶8, Ex. G, Chart of Plaintiffs' Exhibits. Thus, plaintiffs' opposition fails to support their theory or their request for additional time for responding to summary judgment on the nine named plaintiffs.

Although plaintiffs focus on the recent production of Stage 3 (class-wide) data, plaintiffs cannot escape the fact that Sprint produced complete information on each of the nine named plaintiffs more than **three years** ago. <u>See</u> Eichberger Decl. ¶¶2-6, Exs. A-E (demonstrating that Sprint produced documents concerning all nine named plaintiffs in 2008, and Sprint produced the underlying data relating to potentially commissionable transactions concerning the six non-supervisory Named Plaintiffs ("Stage 1 data") on February 27, 2009). Those productions

---

[5] Eichberger Decl., ¶8, Ex. G is a chart entitled Documents Attached To Plaintiffs' Opposition Do Not Create A Genuine Issue of Material Fact That The Nine Named Plaintiffs Were Overpaid ("Chart of Plaintiffs' Documents"). The chart provides explanations and record citations to competent evidence for the Court as to why each exhibit is not material to the pending motion.

included not only commission data from the various systems, but everything related in any way to the named plaintiffs and their commission payments: emails, commission appeals, ISTS tickets. Yet plaintiffs do not attach to their opposition a <u>single</u> document that suggests <u>any</u> connection between any of the nine named plaintiffs and the general commission issues. <u>See</u> Eichberger Decl. ¶8, Ex. G, Chart of Plaintiffs' Exhibits. It cannot suffice as a matter of law for plaintiffs to say merely that there were problems, generally, that may have affected someone without providing admissible evidence that one or more of the "issues" resulted in underpayments to one or more of the nine named plaintiffs. For over three years, plaintiffs have had all of the information that relates in any way to the nine named plaintiffs that are the subject of the instant summary judgment motion. <u>See, e.g.</u>, Eichberger Decl. ¶2-5, Exs., A-D. Further, there simply is no reason to believe that further sifting of data will turn up anything that can be identified as a transaction unaccounted for in Sprint's expert's analysis with respect to the nine named plaintiffs.

In sum, nothing in the many Sprint documents that plaintiffs attach to their opposition suggests that there are "fragmentary" transactions lurking in the class-wide data that might be attributable to the nine named plaintiffs – much less a sufficient number of such transactions to overcome the documented overpayments to these plaintiffs in Dr. Thornton's analysis. <u>See, e.g.</u>, December 2011 Thornton Aff., ¶126. Accordingly, there is no justification for delay, and plaintiffs' request for a Rule 56(d) postponement should be denied.

   2. <u>Nickel Declaration</u>. As a second source of "evidence" proffered to support their requested delay, plaintiffs offer a declaration from their alleged expert, Nile Nickel. <u>See</u> Nickel Decl. The declaration is unavailing. Most of it is taken up with a description of the analysis Nickel would like to perform as to the class with no supportable evidence. <u>Id.</u>, ¶¶ 23-30; <u>see also</u>

January 2012 Thornton Aff., ¶¶3-5. However, it is lacking on the critical point: whether there is any reason to believe that a delay, and the completion of the proposed analysis, would turn up any admissible evidence of an underpayment to any of the nine named plaintiffs.

While Nickel plainly is of the generalized opinion that there may be problems with employee identifiers in the relevant data, Nickel Decl. ¶¶16, 22, the declaration falls well short of providing <u>any</u> <u>evidence</u> that this is so, or – critically, for purposes of Rule 56(d) – any evidence that further review will turn up any underpayments to any of the nine named plaintiffs. The declaration gives no examples of any such "fragmentary" data, relying instead on vague commentary in support ("I have observed these problems in the data," <u>Id.</u>, ¶16). Under governing case law, such vague statements are legally insufficient to support plaintiffs' requested delay. "Mere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable is insufficient to invoke Rule 56(f)." <u>Anderson</u> v. <u>Farmland Indus., Inc.</u>, 136 F. Supp. 2d 1192, 1194-96 (D. Kan. 2001) (denying plaintiffs' Rule 56(f) motion because, <u>inter alia</u>, plaintiffs "fail[ed] to identify specific facts that would defeat the instant summary judgment motion if given time to be discovered" as "[i]t appear[ed] to the court that plaintiffs [were] attempting to use discovery as a fishing expedition to search for any possible evidence which would support their strict liability claim").

Even as to the "fragmentary transactions" that Nickel speculates exist, <u>Id.</u>, ¶22, he offers no testimony, citations or supporting evidence of any kind that any of that alleged fragmentary data represents a commissionable transaction under the relevant incentive compensation plan but was not paid because of a systematic computer error. Indeed, he does not offer any explanation as to why one should expect that the data he claims to have "observed" <u>might</u> represent a commissionable transaction – let alone one that can be traced to the nine named plaintiffs.

Nor, again, can the generality of his statements be excused by lack of time to review the Stage 3 data.[6] Anything with any connection to the named plaintiffs, in any Sprint system, was produced in discovery years ago. See n.1, supra. As Nickel acknowledges, he was involved in the mediation process, and thus analyzed all of the exhaustive data connected with the named plaintiffs and the 100 randomly selected class members that Sprint produced as part of that exercise. Yet, Nickel does not cite one example, even tentatively, of a problem based on the named plaintiff data provided as part of the "Stage 1" production in February 2009, or his study of the mediation data[7]. Nickel's proposed process, vaguely described as "analyz[ing] all data related to a transaction found throughout Defendants' various systems' data," including those "that did not have the correct employee identifier, or any employee identifier," cannot be connected with the named plaintiffs. Plaintiffs have had all the data that can be identified with the named plaintiffs for years and have not turned up a <u>single</u> example of a commission that was improperly denied. Nickel Decl. ¶¶24, 23. Such glaring omissions further support that summary judgment on the nine named plaintiffs is timely and warranted.

3. <u>Plaintiffs' Testimony</u>. Third, plaintiffs rely on their own deposition testimony and interrogatory answers. Doc. No. 292, p. 8, ¶34 & p. 15 ¶¶63-64. Like Nickel, however, the plaintiffs offer nothing more than a generalized assertion that they are owed something. <u>Id.</u>; <u>see also</u>, <u>e.g.</u>, December 2011 Thornton Aff., ¶¶68, 81, 87 & 99. As explained in the opening brief, such vague claims, especially following three years of discovery, are not sufficient to avoid

---

[6] Nickel's declaration makes an unsupported statement that he did not receive any data until January 11, 2012. Nickel Decl. ¶7. Nickel's declaration fails to substantiate any of his statements with the Stage 1 data and documents relating to the nine named plaintiffs produced from 2008 and 2009.

[7] That data included detailed information not just on the nine named plaintiffs, but on a total of 100 class members. The lack of any example or evidence, or even a reasoned explanation of why such orphaned transactions should be expected, is thus even more telling.

summary judgment.  See, e.g., Johnson v. Hewlett-Packard Co., No. C 09-03596 CRB, --- F. Supp. 2d ---, 2011 WL 3566605, at *10-13 (N.D. Cal. Aug. 12, 2011) (plaintiffs alleging failure to receive commissions because of systematic computer error cannot survive summary judgment based on personal estimates).  Plaintiffs' reliance on their general statements that they believe they have been underpaid, without citing to any of the discovery on the nine named plaintiffs produced over three years ago, is insufficient to warrant additional time under Rule 56(d).

After three years of data and document discovery relating to the nine named plaintiffs, plaintiffs' inability to cite any evidence supporting their general theory of underpayments is dispositive.  See, e.g., Anderson, 136 F. Supp. 2d 1192.  Further, plaintiffs' unsupported allegations and theory of phantom transactions – even if investigated – has no bearing on the expert analysis concluding that the nine named plaintiffs were overpaid;[8] and, neither Nickel's declaration, nor plaintiffs' own generalized statements form a proper basis to delay summary judgment in favor of Sprint.  Price, at 232 F.3d at 783-84; Lewis, 903 F.2d at 759.  Thus, summary judgment on the nine named plaintiffs is not only timely, but warranted.

B.  **There Is No Genuine Issue of Material Fact That The Nine Named Plaintiffs Were Overpaid.**

Plaintiffs' unsubstantiated speculation and hypotheses are also offered in support of their argument that there is a genuine issue of material fact as to whether the nine named plaintiffs were overpaid.  Doc. No. 292, pp. 31-33.  However, under prevailing Tenth Circuit precedent, Plaintiffs' lack of evidentiary support with respect to the nine named plaintiffs dictates that there is no genuine issue of material fact and that summary judgment for the nine named plaintiffs should be granted.

---

[8] Nickel's declaration failed to properly address defendants' expert affidavit.  See January 2012 Thornton Aff., ¶¶ 3-5.

When ruling on a motion for summary judgment, "the court acts as a gatekeeper, granting summary judgment as a matter of law unless the plaintiff has adduced relevant and probative evidence sufficient to support a jury verdict in his or her favor." See Riggs v. Airtran Airways, Inc., 497 F.3d 1108, 1117 (10th Cir. 2007) (affirming summary judgment for defendant because plaintiff "failed to come forth with sufficient evidence to create a genuine issue of material fact"); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (explaining that a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). Thus, summary judgment should be granted where the opposing party offers no relevant and probative evidence, including where the opposing party fails to link speculative, general arguments to the actual, pled claims. Id.; see also Johnson, 2011 WL 3566605, at *10 (holding plaintiffs' personal estimates of commissions owed was insufficient to defeat summary judgment).

As set forth in Section (A), supra, plaintiffs allege that there are genuine issues of material fact that defeat defendants' summary judgment. Plaintiffs' arguments, however, are nothing more than mere speculation, fraught with "if's" and "might's," and not tied to the nine named plaintiffs themselves, nor the data and discovery produced with respect to the nine named plaintiffs from three years ago. See, e.g., Eichberger Decl., ¶8, Ex. G, Chart of Plaintiffs' Documents; Defendants' Response To Plaintiffs' Statements Opposing Defendants' Motion For Summary Judgment, filed concurrently herewith, p. 4, Reply to Statement #10; n.1, supra; January 2012 Thornton Aff., ¶¶3-5. Further, their alleged "expert" affidavit does not dispute defendants' supporting expert affidavit that the nine named plaintiffs were overpaid. Instead, they argue that there may be a fact issue because of an unsubstantiated possibility that somewhere in the class-wide data there might be evidence of other transactions that were entered

into the RMS system by the named plaintiffs. See, e.g., Nickel Decl., ¶¶14-16.[9] This speculation does not create a fact issue because plaintiffs' offer no evidence tying these unsupported statements to the nine named plaintiffs. As previously stated, plaintiffs fail to offer any evidence that such phantom transactions exist; they also fail to cite a single example of such a transaction or offer any document evidence these alleged phantom transactions relate to any of the named plaintiffs. The result is a failure to raise a genuine issue of material fact as to the nine named plaintiffs.

Because there are no genuine issues of material fact as to whether these nine named plaintiffs are overpaid and not underpaid, summary judgment is timely and appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . ."); Riggs, 497 F.3d at 1117 (affirming summary judgment because plaintiff failed offer sufficient evidence that a genuine issue of material fact existed on plaintiff's claims.).

**C. No Genuine Issue Of Material Fact Exists As To Whether The Nine Named Plaintiffs Are Inadequate Class Representatives.**

As set forth in defendants' summary judgment, the nine named plaintiffs are inadequate class representatives because they do not have any claim for unpaid commissions. Apart from the final sentence of their brief, plaintiffs do not address this point.

"A prerequisite for certification is that the class representatives be a part of the class and possess the same interest and suffer the same injury as class members." Rector v. City and County of Denver, 348 F.3d 935, 949 (10th Cir. 2003). At a minimum, plaintiffs who purport to represent others in class litigation must have standing to sue, and "when [a] class representative's

---

[9] As stated, supra at n. 4, Mr. Nickel's declaration is vague, generalized and lacking any supporting evidence.

personal claims are dismissed he has no standing to represent the class." Id. (citing Sample v. Aldi, Inc., 61 F.3d 544, 551 (7th Cir. 1995)); see also Stephenson Oil Co. v. Citgo Petroleum Corp., 271 F.R.D. 323, 332 (N.D. Okla. 2010) ("In the class-action context, 'named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (quoting Lewis v. Casey, 518 U.S. 343, 357 (1996)).

As stated in Sections (A) and (B) of this Reply Brief, there are no genuine issues of material fact that the nine named plaintiffs have been overpaid. Plaintiffs' inability to proffer any evidence, following three years of data and document discovery, that there are specific transactions for which the nine named plaintiffs are owed commissions supports defendants' arguments that the nine named plaintiffs' claims cannot survive a Rule 56 motion. Since the named plaintiffs lack any monetary stake in the litigation, a conflict of interest between them and the class exists, rendering them inadequate class representatives. See also In re Integra Realty Res., Inc., 262 F.3d 1089, 1112 (10th Cir. 2001) ("Once the decision to certify a class has been made, the court remains under a continuing duty to monitor the adequacy of representation to ensure that class counsel provides zealous, competent representation through the proceedings and to address conflicts of interests if they develop."). Accordingly, the Court should dismiss the claims of the nine named plaintiffs under Rule 56 and decertify the class because there are no adequate class representatives.

## CONCLUSION

For all of the foregoing reasons, defendants' motion for summary judgment should be granted in favor of the defendants, the class should be decertified because there are no adequate class representatives, and the Court should enter judgment in favor of the defendants.

Respectfully submitted this 26th day of January, 2012.

*/s/ Michael L. Blumenthal*
**SEYFERTH, BLUMENTHAL & HARRIS LLC**
Michael L. Blumenthal
KS Bar No.18582
300 Wyandotte Street, Suite 430
Kansas City, MO 64105
Tel: 816-756-0700
Fax: 816-756-3700


*/s/ Elise M. Bloom*
**PROSKAUER ROSE LLP**
Elise M. Bloom*
Eleven Times Square
New York, NY 10036
Tel: 212-969-3410
Fax: 212-969-2900
(*Admitted *Pro Hac Vice*)

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January, 2012, the foregoing **Reply Memorandum in Support of Defendants' Motion for Summary Judgment** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

    Stueve Siegel Hanson LLP
    George A. Hanson
    460 Nichols Road, Suite 200
    Kansas City, Missouri 64112
    hanson@stuevesiegel.com

    Nichols Kaster, PLLP
    Donald H. Nichols
    Paul J. Lukas
    Michele R. Fisher
    4600 IDS Center, 80 South 8th Street
    Minneapolis, Minnesota 55402
    nichols@nka.com
    lukas@nka.com
    fisher@nka.com

    Respectfully submitted,

    <u>/s/ Michael L. Blumenthal</u>
    Michael L. Blumenthal
    Kansas Bar No. 18582
    SEYFERTH, BLUMENTHAL & HARRIS LLC
    300 Wyandotte Street, Suite 430
    Kansas City, Missouri 64105
    Telephone: 816-756-0700
    Facsimile: 816-756-3700
    E-mail: mike@sbhlaw.com