## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ROXIE SIBLEY, JEANNE NOEL,
ERNESTO BENNETT, JAMIE WILLIAMS,
GREG ST. JULIEN, TRACIE HERNANDEZ,
JOHN JASINSKI, JAY RICHIE, and TEISHA
KING, individually and on behalf of a class of
others similarly situated,

                    Plaintiffs,

v.

SPRINT NEXTEL CORPORATION,
a Kansas corporation,

and

SPRINT/UNITED MANAGEMENT
COMPANY, a Kansas corporation,

                    Defendants.

Case No. 02:08-CV-02063-KHV/JPO

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' EXPERT AFFIDAVIT AND EXCLUDE TESTIMONY FROM PLAINTIFFS' EXPERT

## <u>INTRODUCTION</u>

Defendants have filed a motion to strike that seeks the drastic sanction of excluding the declaration of Plaintiffs' expert filed in response to Defendants' motion for summary judgment. Defendants' motion is wholly unfounded because it relies on the flawed assumption that an expert declaration filed pursuant to Federal Rule of Civil Procedure 56(d) is the equivalent of a Rule 26(a)(2)(B) expert report.  Ironically, the declaration Defendants strain to construe as an expert report explains why Plaintiffs' expert cannot make his Rule 26(a) disclosures at this time and why he needs the entire time period provided by the Court for making those disclosures.

Even if the Court entertained Defendants' fatally flawed premise that Rule 26 applies to Plaintiffs' expert's declaration, Defendants' motion is both procedurally and substantively defective.  Plaintiffs are not required to constrict themselves to analyzing the incomplete data set Defendants' expert relied on, or recreate Defendants' errors in doing so.  Rather, Plaintiffs should be allowed to complete their analysis of the complete data set, as has been contemplated by the parties and the Court throughout this litigation.  Moreover, given that the deadline for expert reports is not until May 21, 2012 and the parties have an additional period of time to issue their rebuttal reports, Defendants cannot possibly claim that the declaration of Plaintiffs' expert causes the kind of surprise or prejudice to justify striking it from the record.  Ample time remains for both parties to conduct expert discovery.

By filing this motion, Defendants continue to engage Plaintiffs and the Court in a game of procedural "gotcha" they started with their intentionally premature motion for summary judgment.  Defendants are improperly attempting to cut short the period for expert discovery the parties agreed to long ago so they can escape any challenge to their own expert report. Defendants' motion is improper, it lacks a legal and factual basis, and it should be denied.

## FACTS RELEVANT TO MOTION

On January 21, 2009 the Court entered a scheduling order that provided for a three-stage discovery process for the production of sales and commissions-related data.  (ECF No. 114.)  The parties agreed that after the Stage 3 data production, their experts would have approximately five-and-a-half months to analyze the class-wide data in order to provide their expert reports, followed by additional time for rebuttal reports.  (ECF No. 221 at 1, Joint Mot. to Modify Court's Am. Scheduling Order.)  Accordingly, the Court set a December 23, 2011 deadline for Defendants' Stage 3 class-wide data production, a May 21, 2012 deadline for expert disclosures, and a September 21, 2012 deadline for rebuttal reports.  (ECF No. 227 at 4.)

On December 22, 2011, one day before their Stage 3 data production was due, Defendants filed a motion for summary judgment claiming that the Court should rely on their expert's analysis and rule that the named-Plaintiffs have no damages.  (ECF No. 283.)  In conjunction with their motion, Defendants filed a 75-page "initial" Rule 26(a) expert disclosure and report of Janet R. Thornton, containing 49 additional pages of appendices.  (ECF Nos. 282, 282-1, 282-2.)  Dr. Thornton's report analyzed the commissions for the named-Plaintiffs only.

On January 12, 2012 Plaintiffs filed their opposition to Defendants' motion for summary judgment.  (ECF No. 292)  Plaintiffs argued that summary judgment is premature under Federal Rule of Civil Procedure 56(d), explaining that "[t]he timing of Defendants' motion—brought one day before the class-wide data production was due and more than nine months before the Court-ordered deadline for rebuttal reports—guarantees that Plaintiffs will be unable to perform their damages analysis and complete their expert report prior to responding to this motion."  (Id. at 1-2.)  In support of their Rule 56(d) motion, Plaintiffs filed the declarations of counsel Michele R. Fisher and Plaintiffs' expert, Nile L. Nickel.  (See ECF No. 292-1 ¶ 2, "Fisher Decl.")  ("I am

2

presenting this Declaration pursuant to Fed. R. Civ. P. 56(d)") ("Plaintiffs also rely on the Declaration of Nile L. Nickel pursuant to Fed. R. Civ. P. 56(d)"); (ECF No. 292-18, "Nickel Decl.")  Mr. Nickel explained that the Stage 1 data on which Defendants' expert relied was inadequate for her analysis of the named-Plaintiffs'—or any class members'—commissions, and that he will need the full period provided by the scheduling order for expert disclosures and reports to analyze Defendants' Stage 3 data production.  (Nickel Decl. ¶¶ 36-37.)

Plaintiffs argued in the alternative that Defendants' summary judgment motion should be denied because it serves to cement the key disputed issues of material fact: whether Defendants overpaid or underpaid Plaintiffs and the class, and what the proper methodology is for analyzing Plaintiffs' and class members' commissions.  (ECF No. 292 at 29-35.)

After Plaintiffs filed their opposition, Defendants contacted Plaintiffs asking if Plaintiffs were planning to make expert disclosures in conjunction with Mr. Nickel's declaration.  (Frohman Decl. ¶ 2.)  Because Mr. Nickel's declaration was not and did not purport to be a Rule 26(a)(2) expert report, Plaintiffs informed Defendants that they would not be making such disclosures.  By letter dated January 20, 2012, Plaintiffs explained that "Mr. Nickel's declaration is not an expert report as contemplated either by Rule 26(a)(2) or the scheduling order.  We will of course, provide our expert report and corresponding disclosures in the time frame permitted by the scheduling order."  (Id.; Ex. 1.)

On January 26, 2012 Defendants filed a motion pursuant to Fed. R. Civ. P. 37 to strike Mr. Nickel's declaration and for sanctions for Plaintiffs' alleged failure to comply with Rule 26(a)(2).  (ECF Nos. 296, 297.)  In particular, Defendants argued that "Plaintiffs have filed this 'expert' declaration with their Opposition papers, despite failing to disclose the identity of their expert and to provide an expert report, as required by Rule 26(a)(2)."  (ECF No. 297 at 1.)

Although Defendants portray Mr. Nickel's declaration as an expert report under Rule 26(a)(2), they did not file a timely objection to his declaration for failure to comply with the requirements of Rule 26(a).  (Frohman Decl. ¶ 3.)  The scheduling order governing this action requires the parties to file objections to the sufficiency of expert disclosures within eleven days of receiving the disclosures.  (ECF Nos. 114 ¶ 2q; 227 at 5.)

## LEGAL ARGUMENT

### I.      MR. NICKEL'S DECLARATION SATISFIES RULE 56(D).

In their motion to strike, Defendants do not dispute that Mr. Nickel's declaration satisfies Rule 56(d).  Rather, Defendants argue that his declaration fails to satisfy the disclosure requirements of Rule 26(a)(2)(B) and the specificity requirements of Fed. R. Civ. P. 56(e).  In the Tenth Circuit, a declaration provided in support of a Rule 56(d) motion must "explain[] why facts precluding summary judgment cannot be presented."  Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd., 616 F.3d 1086, 1096 (10th Cir. 2010) (citations omitted).  This includes identifying (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment.  Id.

The declarations filed by Ms. Fisher and Mr. Nickel in support of Plaintiffs' Rule 56(d) motion explain in great detail why facts precluding summary judgment cannot be presented.  For example, according to Ms. Fisher's and Mr. Nickel's declarations:

> This case involves commissions-related data for 39,736 class members from over a four-year period.  (Fisher Decl. ¶ 5.)

> The data is voluminous and comes from numerous systems that comprise Defendants' commissions system.  (Nickel Decl. ¶¶ 8-9.)

> Defendants only recently produced this data, and Plaintiffs cannot analyze it and show that their damages calculation differs from the calculation provided by

4

Defendants in the timeframe required to respond to Defendants' motion for summary judgment.  (See Nickel Decl. ¶ 23-39; Fisher Decl. ¶ 22.)

The data set is simply too large and the process too complex for a quick analysis. (See Nickel Decl. ¶¶ 8-9, 23-39.)

Plaintiffs' expert anticipates it will take him five months from the date he receives all the Stage 3 data to perform his damages analysis and complete his expert report.  (Nickel Decl. ¶ 36.)

After completing their expert report, it will take Plaintiffs another four months to review and analyze Defendants' expert report and underlying data, and to conduct the necessary expert discovery in order to rebut the report.  (Id. ¶¶ 36-39; Fisher Decl. ¶ 11.)

Challenging the substance of Mr. Nickel's declaration—that he cannot provide his report without analyzing the stage 3 data—Defendants incorrectly assert that Sprint's summary judgment motion and their expert's analysis "focus on data pertaining to the nine named Plaintiffs, all of which was produced at Stage 1."  (ECF No. 297 at 6; see also Defs.' Reply in Supp. of Defs.' Mot. for Summ. J., ECF No. 298 at 1 ("Sprint produced all of the data and documents relating to the nine named Plaintiffs . . . in 2008 and 2009").)  Defendants did not produce all the necessary data to analyze Plaintiffs' commissions in 2008 and 2009.  As Defendants' letter accompanying the Stage 1 production clearly states, Defendants only produced order data (Point-of-Sale records) for six of the named-Plaintiffs (those who did not hold managerial positions), and only produced one month of data from the Ensemble billing system and three months of data from the P2K billing system.  (Ex. E to Defendants' reply, ECF No. 301-5 at 1.)  Plaintiffs did not have all the data they need for their analysis, for the nine named-Plaintiffs or any class members, until the Stage 3 production in December 2011.

Furthermore, even if at Stage 1 Defendants had produced the Point-of-Sale records for all nine named-Plaintiffs and all billing data from their dates of employment, the data would still have been incomplete.  As Mr. Nickel states, due to documented errors with Defendants' systems

and missing data, "the RMS Point-of-Sale data is missing transactions and employee identifiers"

(among other problems).  (Nickel Decl. ¶¶ 15-18.)  Producing only the Point-of-Sale transactions

containing the named-Plaintiffs' employee identifiers, which Defendants did for Stage 1,[1] will

not capture any of their transactions that may be missing their identifiers.  (Id. at 16.)

Accordingly, Plaintiffs' expert "must review and analyze the Stage 3 data production for the

entire class or their analysis will be incomplete and will be missing many relevant transactions."

(Id. at 34.)

The history of the litigation is important in considering Defendants' motion to strike as

well as their motion for summary judgment.  Defendants entirely gloss over the fact that the

parties never intended the Stage 1 data to be used for a commissions analysis, which also

explains why the Stage 1 data is incomplete.  As Defendants' counsel stated:

> By giving Plaintiffs an opportunity to review commission-related data for the
> Production Plaintiffs *before* Defendants commence production of class-wide data,
> this plan was intended to minimize the substantial time and cost that class-wide
> discovery in this case will impose.  The entire purpose of Stage 2—when
> Plaintiffs have three-and-a-half months to review the data produced for the
> Production Plaintiffs—is to allow Plaintiffs to review the data to identify the
> particular data sets that "they believe they will need to perform their analysis for
> the entire class."  (Doc. No. 114 ¶ 2.f.)  Stage 2, therefore, was not intended to be
> the period during which Plaintiffs would complete an analysis of whether any
> commissions that allegedly should have been paid were not paid, but rather was
> intended to be the period during which Plaintiffs review the sample data for the
> Production Plaintiffs to identify exactly what data they think they will need "to
> perform their analysis."  (Id.)  **The Court, in other words, envisioned
> Plaintiffs' analysis of the commission-related data produced by Sprint
> happening *during Stage 3*.**

[. . . .]

---

[1] With regard to the Point-of-Sale Data produced for the six named-Plaintiffs at Stage 1,
Defendants stated that "the data consists of all records of sales to retail customers between
August 12, 2005 and September 30, 2008, that were made under one of the Production Plaintiffs'
IDs."  (Ex. 2 at 1-2) (emphasis added).

6

> Plaintiffs do not need order data for anyone other than the Production Plaintiffs at Stage 1 of discovery because Plaintiffs can accomplish the purpose of Stage 2—identifying the data sets that Plaintiffs think they will need to perform their analysis of Sprint's commission payments—using only data for the Production Plaintiffs.

(Ex. 3 at 2-3, Feb. 13, 2009 Ltr. from Defs.' Counsel to Plfs.' Counsel) (bold emphasis added).  Defendants may have changed their minds after the fact and decided to reverse course, but they may not force Plaintiffs to accompany them or complain that Plaintiffs intend to stick to the parties' original bargain and perform their analysis after the Stage 3 production.

The testimony in Mr. Nickel's declaration and the history of this litigation sufficiently show why summary judgment is premature, how Plaintiffs have diligently pursued discovery, and why the Court should permit Plaintiffs and their expert to analyze Defendants' Stage 3 data production and issue their report and rebuttal report in accordance with the Fourth Amended Scheduling Order.  See Comm. for First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992) (unless dilatory or lacking in merit, nonmovant's attempt to seek deferral of summary judgment ruling pending discovery should be liberally treated as long as nonmovant furnishes affidavit explaining why facts precluding summary judgment cannot be presented).  Mr. Nickel's declaration is properly submitted under Rule 56(d), and Defendants' motion to strike should be denied.

## II.     MR. NICKEL'S DECLARATION IS NOT A RULE 26(a)(2) EXPERT REPORT.

Mr. Nickel's declaration is not an expert report as contemplated by Rule 26(a)(2), and Defendants' attempt to characterize it as one is disingenuous.  Mr. Nickel's declaration was not filed as an expert report under Federal Rule of Civil Procedure 26(a)(2), it has none of the hallmarks of an expert report, and the deadline for expert disclosures has not yet arrived—expert

disclosures are not due under the current scheduling order until May 21, 2012.  Consequently,

the requirements of Rule 26(a)(2) are inapplicable to Mr. Nickel's declaration.  See Fraser &

Wise, P.C. v. Primarily Primates, Inc., 966 F. Supp. 63, 68 n.2 (D. Mass. 1996) (affidavit

authored by expert and submitted in opposition to summary judgment motion was not report of

expert that had to be disclosed pursuant to federal rules, and thus, Rule 26(a)(2)(B) did not

provide basis to strike affidavit.)

     In Fraser, the court explained that because the non-moving party had "submitted [the

expert's] affidavit in opposition to summary judgment as opposed to in compliance with [the]

court's order regarding the sequence of expert disclosures under Rule 26(a)(2)," Rule

26(a)(2)(B) did not provide the moving party with a basis to strike the affidavit.  Id.  As in

Fraser, Plaintiffs did not submit Mr. Nickel's declaration in satisfaction of—much less in

violation of—the deadline for expert disclosures established by the Court.  This Court should

reach the same conclusion in addressing Defendants' motion to strike Mr. Nickel's declaration.

Plaintiffs submitted Mr. Nickel's declaration in support of their Rule 56(d) response to

Defendants' premature motion for summary judgment.  His declaration actually sets forth the

reasons why Plaintiffs cannot submit his expert report or fully respond to Defendants' expert

report at this time.  As Plaintiffs' counsel explained to Defendants, "Mr. Nickel's declaration is

not an expert report as contemplated either by Rule 26(a)(2) or the scheduling order.  We will of

course, provide our expert report and corresponding disclosures in the time frame permitted by

the scheduling order."  (Ex. 1.)  In their opposition to summary judgment, Plaintiffs clearly

explained that they would not be able to complete their expert report prior to responding to

Defendants' motion.  (ECF No. 292 at 1-2 ("Plaintiffs will be unable to perform their damages

analysis and complete their expert report prior to responding to this motion.").)  Mr. Nickel

explicitly stated in his declaration that he will not be prepared to submit an expert report until the disclosure deadline, after he has had the opportunity to analyze Defendants' Stage 3 data production.  (Nickel Decl. ¶ 36-37.)  Furthermore, the five-month timeframe to analyze the Stage 3 data and issue the initial expert report does not contemplate a contemporaneous analysis and rebuttal report related to Defendants' expert report.  (Nickel Decl. ¶ 37; Fisher Decl. ¶ 10.)  The deadline for any such rebuttal analyses and reports is September 21, 2012, which is four months after the Stage 3 data analyses and reports are to be completed.  (ECF No. 227 at 4.)  After he completes his Stage 3 analysis and report, Plaintiffs' expert needs the additional four-month period to perform his rebuttal analysis.  (Nickel Decl. ¶ 38.)

Clearly, Mr. Nickel's declaration, filed in support of Plaintiffs' Rule 56(d) response, is not an expert report under Rule 26(a).  Defendants' attempt to convert it into one is an exercise in procedural gamesmanship that has no basis in the case law or the Federal Rules of Civil Procedure.  Because Plaintiffs have not yet filed their expert report and are neither able to do so nor required to do so at this time, Defendants' motion to strike should be denied.

## III.   DEFENDANTS OFFER NO LEGITIMATE BASIS FOR MOVING TO STRIKE MR. NICKEL'S DECLARATION UNDER RULE 37(c)(1).

Defendants argue that Mr. Nickel's declaration should be stricken pursuant to Fed. R. Civ. P. 37(c)(1) because it is tantamount to a violation of the disclosure requirements of Rule 26(a)(2).[2]  First, Defendants' entire analysis is misplaced, because Mr. Nickel's declaration is not

---

[2] Because the Court's scheduling order governs the parties' expert disclosures, the Court should look to Fed. R. Civ. P. 16(f) for compliance and sanctions, not Rule 37(c)(1).  See Luma Corp. v. Stryker Corp., 226 F.R.D. 536, 541-42 (S.D. W. Va. 2005) (citing Akeva L.L.C. v. Mizuno Corp., 212 F.R.D. 306, 309 (M.D.N.C. 2002)) ("'[w]hen a dispute arises concerning violation of expert disclosure obligations pursuant to a court-approved discovery plan, the Court should first look to Rule 16(f) for determining both compliance and sanctions as opposed to Rule 37(c)'"); see also Int'l Bus. Machines Corp. v. Fasco Indus., Inc., No. C-93-20326 RPA, 1995 WL 115421, at *2 (N.D. Cal. Mar. 15, 1995) (scheduling order controlled where court gave "explicit

an expert report and cannot be construed as an expert report.  Second, the deadline for expert reports has not passed.  Consequently, Defendants are not entitled to sanctions or relief under either Rule 37(c)(1) or Rule 16(f).  Finally, even if Mr. Nickel's declaration could be construed as an expert report, the disclosure is both substantially justified and harmless.

### A.   The Parties Are Not Obligated To Exchange Expert Reports "Contemporaneously" in Advance of the Expert Disclosure Deadline.

As an initial matter, Defendants' entire argument rests on the faulty premise that there is a separate and distinct Rule 26(a)(2) disclosure requirement "for expert disclosure related to the Stage 1 data production."  (ECF No. 297 at 1-2, n.1.)  In a footnote, Defendants make the novel assertion that because the Court did not set a date for expert disclosures relevant to the Stage 1 data production and the parties made no stipulation regarding any Stage 1 expert disclosures, "pursuant to Rule 26(a)(2)(B), the parties were required to identify expert witnesses and provide their written reports contemporaneously, and prior to relying on their testimony in support of a motion, at a hearing, or at trial."  (Id.)  There is no requirement in Rule 26 that if one party makes its expert disclosures in advance of the deadline, the other party is obligated to make "contemporaneous" early disclosures regarding the same subject matter.[3]  Defendants' attempt to manufacture a new, earlier deadline for expert reports is entirely without merit.  Defendants may regret the May 21, 2012 deadline for expert disclosures, but they may not unilaterally create an earlier deadline.

---

directions regarding the time for disclosing expert witnesses.")  That is because "Rule 16(f) specifically speaks to noncompliance with a scheduling or pretrial order [while] Rule 37(c) . . . is self-executing and will likely come into play later in the court proceedings, often at or near trial." Akeva, 212 F.R.D. at 309.

[3] As Mr. Nickel stated in his declaration, the Stage 3 data will serve as the basis of Plaintiffs' expert report, and a report based on any dataset short of that will be incomplete.  (Nickel Decl. ¶¶ 22-24, 34-35.)

**B.**     **Plaintiffs Are in Compliance with the Expert Disclosure Requirements of Rule 26(a)(2) and the Court's Scheduling Order.**

Defendants argue generally that courts have excluded "expert witness reports" when those reports were filed in opposition to a motion for summary judgment and the experts were not properly disclosed.  Defendants offer no authority for their much broader argument that any declaration filed by a party's expert must comply with the Rule 26(a) disclosure requirements, even when the declaration is filed pursuant to Rule 56(d) before the expert disclosure deadline.

Defendants principally rely on two cases to support their position that Mr. Nickel's declaration should be stricken.  Both are easily distinguished.  In <u>Dunkin Donuts Inc. v. Patel</u>, the defendant attempted to submit an expert report containing the professional opinion of its expert witness in opposition to summary judgment.  174 F. Supp. 2d 202, 207-08 (D. N.J. 2001).  However, the expert disclosure deadline, as well as the deadline for all discovery, had already passed, and the defendant made no expert disclosures in compliance with either deadline.  <u>Id.</u> at 209.  The parties did not dispute whether the defendant's expert submission was actually an "expert report;" the report was simply defective.  <u>Id.</u> at 214 (noting that defendants failed to address the arguments that their expert submissions did not meet the requirements of Rule 26(a)(2)(B) or Federal Rule of Evidence 702).  In the second case Defendants cite, the plaintiff attempted to introduce expert testimony in opposition to summary judgment without having made any Rule 26(a)(2) disclosures.  <u>Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)</u>, 619 F.3d 729, 734 (7th Cir. 2010).  The question before the court was whether a treating physician who provides an expert opinion must file a formal report under Rule 26(a)(2)(B).  <u>Id.</u> at 734.  Finding that compliance with Rule 26 was required, the court struck the expert submissions because they were deficient.  <u>Id.</u> at 735.  Again, in the case at bar, the deadline for expert disclosures has not passed, Mr. Nickel's declaration provides an explanation of why he needs the full time allowed

to prepare his expert report, and Plaintiffs did not submit Mr. Nickel's declaration as their expert

report.  See discussion supra, Part II.B.  Rule 26 is inapplicable, thus Defendants have no basis

for requesting that the Court strike Mr. Nickel's declaration.

      **C.**      **Even if Rule 26(a) Applied to Mr. Nickel's Declaration, Any Noncompliance
Is Justified and Harmless.**

Mr. Nickel's declaration is not an expert report, and Defendants' effort to convert it into

one is unavailing.  Even if Mr. Nickel's expert declaration could be construed as an expert

report, any noncompliance with Rule 26(a)(2) is both justified and harmless.  Defendants are not

prejudiced by Mr. Nickel's declaration, its submission poses no threat of disrupting the trial, and

Defendants cannot demonstrate any willfulness or bad faith on the part of Plaintiffs.

Defendants move to strike Mr. Nickel's declaration under Rule 37(c)(1):

> [i]f a party fails to provide information or identify a witness as required by Rule
> 26(a) or (e), the party is not allowed to use that information or witness to supply
> evidence on a motion, at a hearing, or at a trial, unless the failure was
> substantially justified or is harmless.

"The primary goal of sanctions, including the exclusion of a witness or testimony under Rule

37(c)(1), is to deter misconduct."  A. H., ex rel. Hohe v. Knowledge Learning Corp., No. CIV.

A. 09-2517-DJW, 2010 WL 427284, at *5 (D. Kan. Oct. 25, 2010).  Whether a Rule 26(a)

violation is substantially justified or harmless is a matter of discretion, in which the court

considers the following factors: "(1) the prejudice or surprise to the party against whom the

testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which

introducing such testimony would disrupt the trial; and (4) the [violating] party's bad faith or

willfulness."  Id.  The exclusion of expert testimony is a "drastic sanction."  Id.  Applying these

four factors to the circumstances here does not support sanctions of any sort against Plaintiffs, and once again, Defendants' cited cases are inapplicable.[4]

Defendants argue they will be prejudiced by the introduction of Mr. Nickel's declaration "because it will have been deprived of the opportunity to challenge [his] qualifications, and the validity of his methodology, assumptions, opinions, and analyses." (ECF No. 297 at 6-7.) This is incorrect: discovery is ongoing, expert disclosures are not due until May 21, 2012, and rebuttal reports are not due until September 21, 2012. Defendants continue to ignore that Mr. Nickel's declaration was filed in support of Plaintiffs' Rule 56(d) response, explaining why he could not file an expert report at this time. The time to challenge Plaintiffs' expert's "qualifications, and the validity of his methodology, assumptions, opinions, and analyses" has not yet come. For this same reason, Defendants will have every opportunity to "cure" any such prejudice once Plaintiffs make their expert disclosures in accordance with this Court's scheduling order.

Defendants do not attempt to argue that any prejudice they perceive cannot be cured, because Plaintiffs have not yet made their expert disclosures and expert discovery is ongoing. Similarly, Defendants do not attempt to argue that Mr. Nickel's testimony could possibly disrupt the trial in this matter, which is currently scheduled for June 13, 2013. (ECF No. 227 at 4.) The submission of Mr. Nickel's declaration has no effect on the discovery or trial deadlines. Courts have found no prejudice or disruption in much tighter schedules. See, e.g., A.H., 2010 WL

---

[4] Defendants' cited cases mostly involve situations where the disclosure deadlines passed and a party either made no disclosures at all or later attempted to revise their disclosures. See Gust v. Jones, 162 F.3d 587, 592-93 (10th Cir. 1998) (affirming district court's refusal to allow expert testimony at trial that amounted to an opinion not offered in the expert report); Raytheon Aircraft Co. v. United States, No. 05-2328-JWL, 2008 WL 627488, at *12-13 (D. Kan. Mar. 4, 2008) (denying motion to strike rebuttal expert affidavit because motion was untimely); Mehus v. Emporia State Univ., 326 F. Supp. 2d 1213, 1218 (D. Kan. 2004) (striking lay witnesses not disclosed in party's initial or supplemental Rule 26 disclosures).

427284, at *6 (reopening discovery for limited purpose of expert deposition or extending deadline for rebuttal reports when trial was 15 weeks away adequately cured any prejudice).

Defendants accuse Plaintiffs of "willfully" and "repeatedly" violating Rule 26(a)(2) because they previously filed a declaration from Mr. Nickel without making expert disclosures, in conjunction with Plaintiffs' response to Defendants' motion to amend the scheduling order regarding class-wide discovery (ECF No. 224-2). Defendants' attempts to convert Mr. Nickel's previous declaration into an expert report fail for the same reasons set forth in this memorandum: it was not submitted as a Rule 26(a) expert report; the deadline for submitting expert reports has not passed, and Plaintiffs' expert needs the entire period allotted to prepare his expert report, as the parties originally contemplated.[5] Notably, omitted from Defendants' argument is the fact that they themselves filed three previous affidavits from their expert, Dr. Janet R. Thornton, without making expert disclosures. (See ECF No. 222-2, Thornton Aff. filed in support of Defs.' M. To Amend Scheduling Order); (ECF No. 225-2, Thornton Aff. filed in support of Defs.' Reply in support of M. To Amend Scheduling Order); (ECF No. 269-29, Thornton Aff. filed in support of Defs.' Opp'n to Plfs.' M. To Compel.) Defendants filed two affidavits from Dr. Thornton in conjunction with their motion to amend the scheduling order regarding class-wide discovery without making expert disclosures (ECF Nos. 222-2, 225-2). This is the same motion in which Defendants accuse Plaintiffs of willfully violating Rule 26(a)(2) by failing to make expert disclosures along with Mr. Nickel's declaration. Furthermore, Defendants filed an affidavit containing their expert analysis of one named-Plaintiff's commissions and related

---

[5] Furthermore, Defendants have waived any right to object to Mr. Nickel's previous declaration(s), if that testimony could actually constitute an expert report. Defendants did not object to the sufficiency of any declarations on the basis of Rule 26(a)(2)(B) within eleven days of their disclosure as required by the scheduling order. (Frohman Decl. ¶ 3.) This case is currently governed by the Fourth Amended Scheduling Order, but all other provisions of the previous scheduling orders remain in effect. (ECF No. 114 ¶ 2q; ECF No. 227 at 5.)

opinions in opposition to Plaintiffs' motion for class certification.[6]  (ECF No. 45-8, Decl. of Stacy Franzen.)  Defendants failed to make any semblance of Rule 26(a)(2) disclosures in conjunction with Ms. Franzen's declaration, and cannot be heard now to complain about any such failure on the part of Plaintiffs—particularly when Plaintiffs simply seek the allotted time to make their actual disclosures.

Defendants also accuse Plaintiffs of willful noncompliance for failing to respond to the alleged Rule 26(a) deficiencies after conferring on the matter with Defendants' counsel.  (ECF Nos. 297 at 7; 301 ¶ 9 (Eichberger Aff.).)  Defendants are mistaken.  By letter dated January 20, 2012, Plaintiffs confirmed their position that "Mr. Nickel's declaration is not an expert report as contemplated either by Rule 26(a)(2) or the scheduling order.  We will of course, provide our expert report and corresponding disclosures in the time frame permitted by the scheduling order."  (Ex. 1.)

Ultimately, Plaintiffs' submission of Mr. Nickel's declaration (if possible to construe it as an expert report) is justified because the expert discovery deadline has not yet passed, and Plaintiffs simply seek the full time provided by the Court's scheduling order to make their Rule 26(a) expert disclosures.  Plaintiffs' submission of Mr. Nickel's declaration is harmless because there is no prejudice to Defendants, any perceived prejudice can be cured in discovery once Plaintiffs make their expert disclosures, there is no threat to the trial date, and Plaintiffs filed Mr. Nickel's declaration in good faith.

---

[6] As pointed out in Plaintiffs' opposition, the Court has already ordered that Plaintiffs "should be allowed to complete discovery before arguing the case on the merits," rejecting Defendants' request that the Court rely on Defendants' expert analysis claiming overpayments and deny class certification.  (See ECF No. 99 at 13, n.11.)

**D.      Defendants Waived Their Right To Object to the Adequacy of Mr. Nickel's Declaration on Rule 26(a) Grounds.**

To the extent Defendants consider Mr. Nickel's Rule 56(d) declaration to be an expert report under Rule 26(a), Defendants failed to object to the sufficiency of the disclosure. Defendants did not object on technical grounds within ten days of the disclosure as required by the scheduling order (ECF Nos. 114 ¶ 2q; 227 at 5).  (Frohman Decl. ¶ 3.)  This Court has previously determined such a failure to be fatal to a motion to strike expert testimony.  In McCoy v. Whirlpool Corp., the plaintiffs did not timely object to the sufficiency of the defendants' expert reports or timely object that the reports did not comply with Rule 26(a)(2), as required by the case's scheduling order.  214 F.R.D. 646, 649 (D. Kan. 2003).  Plaintiffs later moved to exclude the expert motions on Daubert grounds, and the Court ruled that the motions were insufficient to preserve the Rule 26(a) objections.  Id.  Moreover, the Court rejected the argument that the failure to object was irrelevant because the plaintiffs' Daubert motions attacked the substance of the expert reports, not their form:

> The purported distinction, however, is illusory.  Plaintiffs' so-called "substantive" challenges are simple variations on one theme: that the reports do not expressly spell out in sufficient detail the facts and scientific methodologies which defendants would be required to introduce into evidence to overcome a Daubert challenge at an evidentiary hearing or at trial . . . .

Id.  The court construed the motions as attacks on the reports' sufficiency under Rule 26(a)(2)(B) and denied the motions.[7]  Id.

Here, even though Mr. Nickel's declaration is not an expert report, Defendants have similarly failed to preserve any objection that the declaration failed to comply with Rule 26(a).

---

[7] The plaintiffs did not seek to exclude the reports as a sanction under Rule 37(c)(1), but nothing in the analysis suggests the Court would have reached a different result, particularly given the plaintiffs' failure to preserve their objections to the adequacy of the disclosures.  McCoy, 214 F.R.D. at 649 n.1.

Plaintiffs filed Mr. Nickel's declaration on January 12, 2012.  (ECF No. 292-18.)  Defendants did not file objections under Rule 26(a) as required by the scheduling order, and filed their motion to strike on January 26, 2012.  (ECF No. 296.)  Defendants did not preserve their objections to the adequacy of Plaintiffs' declaration under Rule 26(a).  Consequently, to the extent it is possible to construe Mr. Nickel's declaration as an expert report, Defendants' motion can be denied on procedural as well as substantive grounds.

## IV.    MR. NICKEL'S DECLARATION PROVIDES SUFFICIENT GROUNDS UNDER RULE 56(e) TO DENY DEFENDANTS' SUMMARY JUDGMENT MOTION.

As discussed in Plaintiffs' Rule 56(d) opposition to Defendants' motion and in Mr. Nickel's declaration, Plaintiffs will present their expert report in the time allowed by the scheduling order, demonstrating that named-Plaintiffs and class members were underpaid. Based in part on statements in Mr. Nickel's declaration, Plaintiffs also point out that summary judgment is not proper because the appropriate method for analyzing commissions for the named-Plaintiffs and class members remains a hotly disputed issue of material fact.  (ECF No. 292 at 29-35.)

It is undisputed that Defendants' commissions system failed to pay the named-Plaintiffs accurate commissions.  (Defs.' Resp. to Plfs.' Statements Opposing Defs.' Mot. for Summ. J., ECF No. 301 at 30 (admitting Fact Statement #34, that Defendants failed to pay accurate commissions).)  The disputed issue of material fact is whether the named-Plaintiffs and the class were overpaid, as Defendants contend, or underpaid, as Plaintiffs contend.  (Id.)  In the alternative to Defendants' Rule 26(a) arguments, Defendants argue that Mr. Nickel's declaration should be stricken because it lacks the requisite specificity and evidentiary support sufficient to present an issue of material fact under Fed. R. Civ. P. 56(e).  (ECF No. 297 at 7.)  In so arguing, Defendants continue to confuse Mr. Nickel's declaration with an expert report, overlook that his

statements are made from his own personal knowledge, and ignore that Plaintiffs have responded

to Defendants' summary judgment motion under Rule 56(d).  The procedural context is

important to consider in this dispute:

> The purpose of [Rule 56(d)] is to provide an additional safeguard against an
> improvident or premature grant of summary judgment and the rule generally has
> been applied to achieve that objective.  Consistent with this purpose, courts have
> stated that technical rulings have no place under the subdivision and that it should
> be applied with a spirit of liberality.

McLoughlin v. Golf Course Superintendents Ass'n of Am., No. 85-4499, 1990 WL 129204, at

*1 (D. Kan. Aug. 16, 1990).  Defendants' arguments that Mr. Nickel's declaration is inadequate

under Rule 56(e) are invalid and provide no basis for their motion to strike.

### A.    Mr. Nickel's Declaration Establishes that the Methodology for Analyzing Commissions Is Disputed.

Mr. Nickel's declaration clearly supports Plaintiffs' contention that the appropriate

method for analyzing commissions is a disputed issue of material fact.  Mr. Nickel states that he

reviewed Dr. Thornton's affidavit, that he disagrees with her methodology, and that he is taking

a different approach in his analysis.  (Nickel Decl. ¶ 12.)  Mr. Nickel provides his observations

of Dr. Thornton's affidavit and the basis for his disagreement with her analysis.  (Id. ¶¶ 12-20.)

Mr. Nickel also provides an overview of the steps he will take to analyze Defendants' Stage 3

data.  (Id. ¶¶ 21-32.)  As Defendants based their summary judgment motion entirely on a

damages calculation that they asserted is undisputed, Mr. Nickel's declaration presents facts that

establish a genuine disputed issue for trial.  Accordingly, the declaration satisfies Rule 56(e).

Defendants complain that Mr. Nickel's declaration contains no charts or diagrams

explaining the functionality of his system and assert that Plaintiffs have not sufficiently rebutted

Defendants' expert report.  (ECF No. 297 at 14.)  Defendants continue to ignore that Mr.

Nickel's declaration is not Plaintiffs' expert report, which when produced according to the

18

scheduling order will contain the details required by Rule 26(a)(2).  Mr. Nickel adequately

explains why he is unable to fully rebut Dr. Thornton's analysis at this time.  (Nickel Decl. ¶¶

34-39.)  The material issue preventing summary judgment is the fact that the parties are taking

different approaches to their analyses.  Whose analysis is correct or superior remains a question

for the jury.  See, e.g., Garcia v. Tyson Foods, Inc., 766 F. Supp. 2d 1167, 1179-80 (D. Kan.

2011) (denying summary judgment where experts disputed how to calculate damages); Law v.

Nat'l Collegiate Athletic Ass'n, 5 F. Supp. 2d 921 (D. Kan. 1998) (denying summary judgment

because experts disputed damages, explaining they were for the jury and not the court to

resolve).  Mr. Nickel's declaration adequately establishes this material dispute.

### B.    Mr. Nickel's Declaration Is Properly Based on His Personal Knowledge.

Defendants cite a number of cases in which expert affidavits filed in opposition to

summary judgment were struck as inadequate under Rule 56(e).  These cases are inapposite.

Notably, none of the cases involved affidavits filed under Rule 56(d) in response to a summary

judgment motion, and all involved affidavits that challenged the merits with no support.[8]  Mr.

Nickel's observations regarding Defendants' data and their expert's analysis are based on his

own personal knowledge and involvement in the case.  As he states in his declaration:

---

[8] See Celestine v. Petroleos de Venezuela SA, 266 F.3d 343, 357 (5th Cir. 2001) (striking expert
affidavit not based upon personal knowledge and relying on unsupported inflammatory
accusations); Noblett v. Gen. Elec. Credit Corp., 400 F.2d 442, 445 (10th Cir. 1968) (striking
layperson affidavit not based on personal knowledge); In re Acceptance Ins. Cos., Inc. Sec.
Litig., 352 F. Supp. 2d 940, 948 (D. Neb. 2004) (noting expert affidavits should contain more
than mere conclusions after expert witness disclosures have been made and depositions taken),
aff'd sub nom In re Acceptance Ins. Cos. Sec. Litig., 423 F.3d 899, 905 (8th Cir. 2005)
(affirming decision to strike expert affidavits that merely provided legal conclusions); Medina v.
Cram, 252 F.3d 1124, 1133 (10th Cir. 2001) (finding inadequate expert affidavit that contained
no disputed issue of fact and simply recited conclusions of law); Matthiesen v. Banc One Mortg.
Corp., 173 F.3d 1242, 1247 (10th Cir. 1999) (rejecting expert statement that merely provided
ultimate conclusion).

He has been working closely with Plaintiffs' counsel since approximately June/July 2008.  (Nickel Decl. ¶ 5.)

He has been involved in the three-stage procedure for Defendants' data production, reviewed several sets of commissions data, and analyzed data for the parties' mediation.  (Id. ¶ 6.)

He has spent several years setting up a system to analyze commission data for the entire class.  (Id. ¶ 7.)

Contrary to Defendants' argument, Mr. Nickel's declaration does not make conclusory statements without explaining his statements.  Rather, the declaration sets forth the specific facts Mr. Nickel upon which he relied in reaching his preliminary opinion that Defendants' expert's method of calculating damages is incorrect.  See M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 166 (4th Cir. 1992) (holding that expert affidavit satisfied Rule 56(e) where it provided the basis for the expert's personal knowledge without the data underlying his facts); Chao v. Moore, No. CIV. A. AW-99-1283, 2001 WL 743204, at *2 (D. Md. June 15, 2001) (holding that affidavit complied with Rule 56(e) because it was "far more than a conclusory statement" based upon general theories that was "devoid of reasoning").  Moreover, Mr. Nickel's expert report will contain his full analysis, his opinions, and the information he relied upon in making his opinions.  Defendants' challenge to Mr. Nickel's declaration under Rule 56(e) is unfounded.

## CONCLUSION

This motion, brought in congruence with Defendants' premature motion for summary judgment, is not only built on an artificial timeline generated by Defendants that ignores their own stipulations and the Court's subsequent orders, it also relies on the inherently incomplete nature of the Stage 1 data that they now trumpet as the beginning of the end of this case.  Why Defendants agreed to Stages 2 and 3 if this Stage 1 data is all that was necessary is a question

Defendants do not answer, but Plaintiffs have.  Stages 2 and 3 were necessary because the Stage 1 data is a sample, and, as Plaintiffs have maintained all along, it represents all of the errors and omissions that lead to this lawsuit in the first place.  The claim that Defendants are somehow "deprived" of anything more than three months before the expert report deadline, and more than nine months before the discovery deadline, is not credible.

Defendants have offered no legitimate basis for the extreme sanction of striking Plaintiffs' expert declaration.  For this reason and all those discussed herein, the Court should reject Defendants' motion to strike in its entirety.

Dated:  <u>February 9, 2012</u>

**STUEVE SIEGEL HANSON LLP**
*/s/Lee R. Anderson*
Lee R. Anderson, KS Bar No. 22755
Email: anderson@stuevesiegel.com
George A. Hanson, KS Bar No. 16805
Email: hanson@stuevesiegel.com
Ashlea G. Schwarz, KS Bar No. 23491
Email: ashlea@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: (816) 714-7100
Fax: (816) 714-7101

**NICHOLS KASTER, PLLP**
*/s/ Michele R. Fisher*
Michele R. Fisher, MN Bar No. 303069*
Email: fisher@nka.com
Donald H. Nichols, MN Bar No. 78918*
Email: nichols@nka.com
Paul J. Lukas, MN Bar No. 22084X*
Email: lukas@nka.com
Charles G. Frohman, MN Bar No. 386695*
Email: frohman@nka.com
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: 612-256-3200
Fax: 612-215-6870
*admitted pro hac vice

ATTORNEYS FOR PLAINTIFFS

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 9, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification to the following attorneys of record:

Hunter Hughes
Rogers & Hardin
2700 International Tower,
Peachtree Center
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
hrh@rh-law.com

Thomas Mew
Rogers & Hardin
2700 International Tower,
Peachtree Center
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
tmew@rh-law.com

Steven D. Hurd
Jacqueline M. Dorn
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
jdorn@proskauer.com
shurd@proskauer.com

Elise M. Bloom
Gregory Rasin
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
ebloom@proskauer.com
grasin@proskauer.com

Nicole A. Eichberger
Proskauer Rose LLP
650 Poydras Street, Suite 1800
New Orleans, Louisiana 70130
neichberger@proskauer.com

Michael L. Blumenthal
Seyferth, Blumenthal & Harris LLC
300 Wyandotte, Suite 430
Kansas City, Missouri 64104
mike@sbhlaw.com

Dated: <u>February 9, 2012</u>

**STUEVE SIEGEL HANSON LLP**
*/s/ Lee R. Anderson*
Lee R. Anderson, KS Bar # 22755
Email: anderson@stuevesiegel.com
George A. Hanson, KS Bar # 16805
Email: hanson@stuevesiegel.com
Ashlea Schwarz, KS Bar # 23491
Email: ashlea@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: (816) 714-7100
Fax: (816) 714 7101

**NICHOLS KASTER, PLLP**
Donald H. Nichols, MN Bar No. 78918*
Email: nichols@nka.com
Paul J. Lukas, MN Bar No. 22084X*
Email: lukas@nka.com
Michele R. Fisher, MN Bar No. 303069*
Email: fisher@nka.com
Charles G. Frohman, MN Bar No. 386695*
Email: frohman@nka.com
4600 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Tel: (612) 256-3200
Fax: (612) 215-6870
*admitted pro hac vice

**ATTORNEYS FOR PLAINTIFFS**