# Exhibit 2

# ROGERS & HARDIN

ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

J. TIMOTHY MC DONALD
DIRECT: (404) 420-4621
DIRECT FAX: (404) 230-0955
EMAIL: JTM@RH-LAW.COM

2700 INTERNATIONAL TOWER, PEACHTREE CENTER
229 PEACHTREE STREET, N.E.
ATLANTA, GEORGIA 30303-1601
(404) 522-4700
FACSIMILE: (404) 525-2224

February 27, 2009

VIA ELECTRONIC MAIL

Michele R. Fisher, Esq.
Nichols Kaster PLLP
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402

Re:  Sibley, et al. v. Sprint Nextel Corporation and Sprint/United Management Company

Dear Michele:

Thank you for your letter of February 20, 2009, regarding Defendants' production of Stage 1 data. I write in response to that letter, and in so doing I have attempted to answer as many of your questions as possible.[1] But many of your questions (e.g., those regarding what the various systems are, what the fields in the data mean, and the like) should be addressed through formal discovery, not through the informal exchange of information in which we are engaging here. My answers to your questions, therefore, are based on our understanding of Sprint's systems and are for informational purposes only; they are not intended to be admissions by Defendants or to otherwise provide Plaintiffs with potential evidence for their claims.

**(1) Order Data:** As I explained previously, Defendants agree to produce order data for the Production Plaintiffs. This production will include data from the following systems: (i) the point-of-sale, walk-in, service-change, and contract feeds from the RMS system[2]; (ii) the GERS system; and (iii) the Daily Sales Collector ("DSC"). As we understand it, the data consists of all records of sales to retail customers between August 12, 2005, and September 30, 2008, that were

---

[1] As usual, nothing in this letter is intended to waive any of Defendants' general or specific objections to Plaintiffs' discovery requests.

[2] As we understand it, these feeds contain the records that are sent from RMS to the commissions system.

# ROGERS & HARDIN
A LIMITED LIABILITY PARTNERSHIP

Michele R. Fisher, Esq.
February 27, 2009
Page 2

made under one of the Production Plaintiffs' IDs. We have not redacted any fields from the data, and we will include informal (i.e., non-evidentiary) explanations of our understanding of what the pertinent fields mean.

The Stage 1 order data is similar to, but not exactly the same as, the data Sprint previously produced at SPRSIB-0000001, SPRSIB-0000002, SPRSIB-0000003, SPRSIB-0001505, SPRSIB-0001506, and SPRSIB0017310. As you know, those documents were created by Stacy Franzen for this specific litigation, and they include just the *one year's worth* of data on which Ms. Franzen relied in performing her analyses. (See Franzen Decl. ¶ 5 (Doc. No. 45-9).) The data in Ms. Franzen's spreadsheets is grouped and presented in ways different than the raw data appears in Sprint's order systems. In addition, Ms. Franzen's spreadsheets contain information that she added to explain her analyses. (See 9/24/2008 Ltr. from Mc Donald to Fisher & Frohman at 6-7.) The Stage 1 production of order data, by contrast, will consist of the raw order data pulled directly from the RMS, GERS, and DSC order-entry systems for the entire relevant time period.

You also asked what the DSC is. As we understand it, the DSC is an order-entry system that was sometimes used by retail sales representatives when other order-entry systems were, for some reason, unavailable.

Contrary to the statement in your letter, we did not agree to produce data "for all the *stores* in which the six non-manager named Plaintiffs worked during the class period." (2/20/2009 Ltr. at 1 (emphasis added).) Rather, we agreed to produce records of orders placed by the Production Plaintiffs, and we said that we would "consider" producing order data for the stores in which the Production Plaintiffs worked. (2/13/2009 Ltr. at 3.) After investigating further the effort that it would take to produce store-wide order data for the Production Plaintiffs' stores, we have concluded that it would be unduly burdensome to produce that data now—when both parties agree that data for anyone other than the Production Plaintiffs is unnecessary for Plaintiffs to fulfill the limited purpose of the Stage 2 discovery period.

The other statements in your letter about the RMS data again reflect fundamental misunderstandings about what the RMS data does and does not contain. You expressed concern, for example, that the RMS data Sprint previously produced does not indicate "the type of transaction being processed (e.g. activation, accessory, boost, esnswap, etc.)." (2/20/2009 Ltr. at 2.) But the RMS data does not indicate the type of transaction because that information *is not contained* in RMS. Rather, the only "Transaction Type" information in RMS shows one of three values: 100 (for a sale), 200 (for a return), or 600 (for an exchange). (See 2/13/2009 Ltr. at 3.) As you will see from the other Stage 1 data that Sprint will produce, more detailed information regarding transaction type is recorded in the *billing data*, not the order data. (See also id. (stating that "Sprint records activations in the billing system, not in RMS").)

**(2) Billing Data:**  Thank you for agreeing to accept billing data from a limited time

# ROGERS & HARDIN
A LIMITED LIABILITY PARTNERSHIP

Michele R. Fisher, Esq.
February 27, 2009
Page 3

period. Per your request, Sprint will produce one month's worth of data from both the Ensemble and P2K billing systems, and the data will come from a month during which Sprint's records show that all of the Production Plaintiffs worked for Sprint.

**(3) Order Detail Report Data:** We are investigating whether any "maps" like the sample you provided exist for the ODR database. If any such maps do exist, and if producing the maps would otherwise not be objectionable, we will produce them to Plaintiffs. In the meantime, Plaintiffs will be able to see what fields exist in the ODR database by reviewing the Stage 1 ODR data that Sprint will produce today.

**(4) Valid Transaction Data:** Your letter's description of the Valid Transaction data is consistent with our understanding of the data: It is data that shows which sales of products or services have been identified by Sprint's commissions systems as potentially Commissionable Events. The Stage 1 production set of Valid Transaction data will include all records from the Valid Transaction table that are associated with one of the Production Plaintiffs.

**(5) Quota Data:** Per your request, we will produce quota data for the Production Plaintiffs in electronic spreadsheet format.

**(6) Appeals Data:** Your letter states that the appeals information produced at SPRSIB-0000001, SPRSIB-0000002, SPRSIB-0000003, SPRSIB-0001505, SPRSIB-0001506, and SPRSIB0017310 "appears to be incomplete." (2/20/2009 Ltr. at 5.) Once again, the documents you cited are Stacy Franzen's analyses of the named Plaintiffs' commissions history. Ms. Franzen compiled these documents specifically for this litigation, and they include only one year's worth of data. (Franzen Decl. ¶ 5.)

Sprint has separately produced an Excel spreadsheet of records of all appeals submitted by all named Plaintiffs (except for Plaintiff Williams) between August 2005 and February 2008. See SPRSIB-00173307.[3] Sprint's production of Stage 1 appeals data will cover the period between February 2008 and September 2008, will be in the same format as SPRSIB-00173307, and will include data for all Production Plaintiffs, to the extent that any such data exists.

**(7) Compensation Data:** Contrary to your letter's statements, Sprint has produced more compensation data than just the records reflected in SPRSIB-0007550. Please see SPRSIB-0007551, which shows compensation records from the PeopleSoft system (including Plaintiff Sibley's). The document you cite, SPRSIB-0007550, contains compensation records from the HRMS payroll system only.

---

[3] While preparing the Stage 1 production, we learned that Plaintiff Williams was inadvertently left off of the original extraction of appeals data that is reflected in SPRSIB-00173307. We are currently investigating whether Plaintiff Williams submitted any appeals between August 2005 and February 2008 and, if any such appeals were submitted, we will produce electronic records of those appeals.

**ROGERS & HARDIN**
A LIMITED LIABILITY PARTNERSHIP

Michele R. Fisher, Esq.
February 27, 2009
Page 4

  Your letter also asked for descriptions of the fields in the compensation data. Although this is a good example of the type of information that Plaintiffs should seek through formal discovery, for informational purposes only I have described the fields in the table below:

| Column Label | Description |
|---|---|
| Name | Employee's name |
| Org | Each ORG represents a different Sprint Company/Fed ID |
| CID | Employee ID, as assigned by the payroll system |
| Payend D | Pay end date |
| Schedule | Contains the ID code for the payroll-processing period. Each period has a different ID code. Each schedule has the same pay end-date for everyone paid in it. |
| Paycycle | The "XX" value indicates that the type of pay at issue can be paid in any of Sprint's various pay cycles. |
| Emp Stat | A value of "A" means that the employee's status is "active." |
| Status Date | Date the employee's current status became effective |
| Chk Date | Date of check or deposit |
| Week Ending Date | Represents the end date of the pay cycle. Commissions are generally paid on a monthly cycle. |
| Job Code | Job code |
| Earning Type | A value of "R14" refers to commission earnings. |
| Earn Description | Describes the entry in the Earning Type field. |
| Earn Hours | Values are "0" because commission payments do not have hours associated with them. |

# ROGERS & HARDIN
### A LIMITED LIABILITY PARTNERSHIP

Michele R. Fisher, Esq.
February 27, 2009
Page 5

| Earn Amount | Earn Amount and Pay Rate are linked fields. When a payment is a lump-sum payment like a commission, the two fields will contain the same value. If a payment was for hourly work, then the Earn Amount field will contain a value equal to the employee's hourly rate times the number of hours worked, and the Pay Rate field would contain the employee's hourly pay rate. |
|---|---|
| | The 1's and 2's that are currently in these fields are a result of the data-extraction process, and they do not signify any substantive information. |
| Pay Rate | Earn Amount and Pay Rate are linked fields. When a payment is a lump-sum payment like a commission, the two fields will contain the same value. If a payment was for hourly work, then the Earn Amount field will contain a value equal to the employee's hourly rate times the number of hours worked, and the Pay Rate field would contain the employee's hourly pay rate. |
| | The 1's and 2's that are currently in these fields are a result of the data-extraction process, and they do not signify any substantive information. |

**(8) Human Resources Data:** As I stated in my February 13th letter, Defendants will produce records of the Production Plaintiffs' job codes and the dates on which those codes became effective. That is enough information for Plaintiffs to determine the "end date" for each job code. (See 2/13/2009 Ltr. at 5.)

Now that Plaintiffs are requesting data regarding leaves of absence, we will investigate whether any such data exists and, if producing any such data would not be objectionable, we will provide it to Plaintiffs.

You also asked whether Sprint's job codes "apply to the calendar year or the year of the CAF plan in place" and whether "job codes carry over occasionally from one year to another." (2/20/2009 Ltr. at 7, 9.) We are looking into these questions and will respond when we are able to answer them.

**(9) Security Issues:** Thank you for describing the security protocols that Nichols Kaster and Balance Engine will apply to the data that Sprint produces. In the first bullet point of your description of Balance Engine's security protocols, you say that "[a]ny work done by *any other party* is only provided under the direct physical monitoring of that party during the time of access to the server room. (Id. at 9 (emphasis added).) What do you mean by "any other party"? Is there a possibility that a third party—i.e., someone *other* than Nichols Kaster or Balance Engines—will have access to Sprint's data?

# ROGERS & HARDIN
A LIMITED LIABILITY PARTNERSHIP

Michele R. Fisher, Esq.
February 27, 2009
Page 6

***********************

      Thank you again for your letter of February 20th. Unless we hear otherwise from Plaintiffs, on February 27, 2009, we will proceed with the production as described in this letter and in my letter of February 13th.

      Very truly yours,

      J. Timothy Mc Donald