## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ROXIE SIBLEY, JEANNE NOEL,
ERNESTO BENNETT, JAMIE WILLIAMS,
GREG ST. JULIEN, TRACIE HERNANDEZ,
JOHN JASINSKI, JAY RICHIE, and TEISHA
KING, individually and on behalf of a class of
others similarly situated,

                  Plaintiffs,

v.

SPRINT NEXTEL CORPORATION,
a Kansas corporation,

and

SPRINT/UNITED MANAGEMENT
COMPANY, a Kansas corporation,

                 Defendants.

Case No. 02:08-CV-02063-KHV/JPO

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION FOR PROTECTIVE ORDER QUASHING NOTICE OF DEPOSITION

## INTRODUCTION

Defendants have served Plaintiffs with a deposition notice—encompassing matters to be addressed in Plaintiffs' expert's forthcoming report—that reflects another attempt by Defendants to circumvent the scheduling order governing this case.[1]  First, Defendants attempted to avoid producing the classwide commissions data in line with the parties' original agreement.  (See ECF No. 227, order denying Defendants' motion to modify the scheduling order.)  Next, one day before the class-wide data production was due, Defendants filed a summary judgment motion on the basis of their own expert's analysis of the named Plaintiffs, attempting to force Plaintiffs to analyze Defendants' commissions data long before the deadline for expert reports and rebuttal reports.  (ECF No. 283.)  Defendants have now served a notice of deposition that is clearly directed to Plaintiffs' expert and covers topics related to his forthcoming expert report. Plaintiffs' expert should be allowed to continue analyzing Defendants' classwide data without interruption before being deposed, as contemplated by the scheduling order and the Federal Rules of Civil Procedure.

Defendants' pending summary judgment motion alleged that Plaintiffs cannot show damages for the named Plaintiffs, even though Defendants filed their motion at the same time they began producing the data necessary for Plaintiffs' expert analysis.  In response, Plaintiffs requested, pursuant to Rule 56(d), that the Court allow Plaintiffs the full time agreed to by the parties and adopted by the Court in its scheduling order to complete their analysis and make their expert disclosures.   Plaintiffs are currently working to complete their expert analysis as contemplated by the scheduling order.  Defendants have no good cause to require Plaintiffs' expert to sit for two depositions—before and after his expert report is filed—in contravention of

---

[1] The deposition notice is filed herewith as Exhibit 1.  All exhibits are attached to the declaration of Charles G. Frohman, filed concurrently with this motion.

Federal Rule of Civil Procedure 26(a), which requires expert depositions to take place after their expert report is filed.  The timing for expert depositions under Rule 26 is intended to reduce the length or need for expert depositions, as the opposing party will have the benefit of first reviewing the expert disclosures and report.  Furthermore, requiring Plaintiffs' expert to prepare and sit for a deposition at this time, when he is working with over a terabyte of data to prepare his expert report, will impose undue delay and unnecessary costs.  Plaintiffs respectfully request that the Court grant their motion for a protective order and quash Defendants' March 7, 2012 notice of deposition.

<u>**FACTS RELEVANT TO MOTION**</u>

**I.      PROCEDURAL BACKGROUND.**

> **A.      The Scheduling Order and Three-Stage Data Production.**

On January 21, 2009, the Court entered a scheduling order that provided for a three-stage discovery process for the production of sales and commissions-related data.  (ECF No. 114.) The parties agreed that after the Stage 3 data production, their experts would have approximately five-and-a-half months to analyze the class-wide data in order to provide their expert reports, followed by additional time for rebuttal reports.  (ECF No. 221 at 1, Joint Mot. to Modify Court's Am. Scheduling Order.)  The scheduling order was subsequently amended as the litigation proceeded.  (ECF Nos. 163, 197.)  When the scheduling order was last addressed, Defendants moved to limit the scope of their data production to a sample.  (ECF No. 222.) Plaintiffs opposed the motion.  (ECF No. 224.)  In support of their opposition, Plaintiffs filed a declaration from their expert, Nile Nickel, which provided an overview of the work he was performing in his expert capacity and explained why a sample of data was insufficient for his analysis.  (ECF No. 224-3 (attached as Ex. 2).)  The Court denied Defendants' motion to limit

the data and set a December 23, 2011 deadline for Defendants' Stage 3 class-wide data

production, a May 21, 2012 deadline for expert disclosures, and a September 21, 2012 deadline

for rebuttal reports.  (ECF No. 227.)

> **B.    Defendants' Summary Judgment Motion and Motion To Strike.**

On December 22, 2011, one day before their Stage 3 class-wide data production was due,

Defendants filed a motion for summary judgment claiming that the Court should rely on their

expert's analysis and rule that the named-Plaintiffs have no damages.  (ECF No. 283.)  In

response, Plaintiffs argued that summary judgment is premature under Rule 56(d), explaining

that "[t]he timing of Defendants' motion—brought one day before the class-wide data production

was due and more than nine months before the Court-ordered deadline for rebuttal reports—

guarantees that Plaintiffs will be unable to perform their damages analysis and complete their

expert report prior to responding to this motion."  (ECF No. 292 at 1-2.)  Plaintiffs argued in the

alternative that Defendants' summary judgment motion should be denied, because it sought a

determination on key disputed issues of material fact: whether Defendants overpaid or underpaid

Plaintiffs and the class, and what the proper methodology is for analyzing Plaintiffs' and class

members' commissions.  (Id. at 29-35.)  In support of their response, Plaintiffs filed the

declarations of counsel Michele R. Fisher (ECF No. 292-1) and Mr. Nickel (ECF No. 292-18

(attached as Ex. 3).)  Mr. Nickel explained that the Stage 1 data on which Defendants' expert

relied was inadequate and that he will need the full period provided by the scheduling order for

expert disclosures and reports to analyze Defendants' Stage 3 data production.  (Nickel Decl. ¶¶

36-37.)

On January 26, 2012, Defendants filed a motion pursuant to Rule 37 to strike Mr.

Nickel's declaration and for sanctions for Plaintiffs' alleged failure to comply with Rule

26(a)(2).  (ECF Nos. 296, 297.)  Defendants argued that Plaintiffs filed an expert declaration "despite failing to disclose the identity of their expert and to provide an expert report, as required by Rule 26(a)(2)."  (ECF No. 297 at 1.)  Plaintiffs opposed Defendants' motion, pointing out that under the most recent scheduling order, Plaintiffs' expert disclosures are not due until May 21, 2012.  (ECF No. 305.)

**C.    Defendants' Trial Plan Interrogatory and Motion To Compel.**

On May 17, 2011, Defendants served the named Plaintiffs with interrogatories seeking a description of the issues for trial regarding Counts I and II of the Complaint.  (Ex. 4, Pls.' Supplemental Resps. to Defs.' Third Interrogs. Nos. 3 & 4.)  As to each Count, Defendants asked Plaintiffs to identify:

> (a) the questions of law or fact common to the class under [Counts I and II] of the Complaint and how you propose that they be tried; (b) the questions of law or fact that are individualized and not common to the class under [Counts I and II] of the Complaint and how you propose that they be tried; and (c) your proposed process for calculation and distribution of damages under [Counts I and II] of the Complaint.

(Id.)  Plaintiffs ultimately answered the interrogatories, and Defendants moved to compel more complete responses (ECF No. 229).  The Court denied Defendants' motion.  (ECF No. 257.)  In response to subsection (c) regarding the calculation and distribution of damages, Plaintiffs stated:

> (c) With respect to calculating damages, Plaintiffs' experts plan to use the class-wide commission-related data that will be produced by Sprint, in order to run their largely automated process to produce a report identifying the amount of damages each class member sustained as a result of Sprint's failure to pay accurate commissions.  Plaintiffs are developing an automated process to analyze all data related to each transaction found throughout Defendants' various systems to determine if the transaction is commissionable, whether Defendants paid the commission properly, and whether additional compensation is due. Plaintiffs have set up their system to standardize, process, and import the class-wide data, have developed coding to analyze and search the class-wide data, and have prepared a reporting mechanism to explain their results.  They continue to refine that process in preparation for the class-wide commission-related data production and their expert reports.

>  **Plaintiffs will explain their process for calculating and distributing damages in more detail after their experts have the data and have been able to analyze it.  That information will be provided through their expert reports and testimony consistent with the scheduling orders for this case and Federal Rules of Civil Procedure.**

(Ex. 4 at 5 (emphasis added).)  It is clear from Plaintiffs' response that Plaintiffs will provide

information about the automated process for analyzing commissions in their expert reports.

## II.   DEFENDANTS' DEPOSITION NOTICE.

Defendants served Plaintiffs with a notice of deposition pursuant to Federal Rule of Civil

Procedure 30(b)(1) on March 7, 2012.  (Ex. 1.)  Defendants seek to depose the "person(s) most

knowledgeable concerning the following topics:"

> (1) The "automated system," or "mechanical" process, Plaintiffs have purportedly created to "standardize, process, and import the class-wide data."  (Doc. No. 224, pp. 7-8; see also Doc. No. 292, pp. 17-20 & 24-27.)[2]

> (2) The "automated system," or "mechanical" process, Plaintiffs have purportedly created to search, analyze, and review commission-related data in this litigation in order to "produce a report identifying the amount of damages for each class member," including, but not limited to, the design, development, costs, components, coding, assumptions, connections, processes, reporting mechanisms, implementation (including, but not limited to, implementation of the compensation plans), and functions of this "automated system." (Id.)

> (3) The "automated system," or "mechanical" process, Plaintiffs have purportedly created and its relationship with and its implementation with respect to Plaintiffs' trial plan set forth in Plaintiffs' July 29, 2011, Supplemental Responses to Defendants' Interrogatories, Set III, Nos. 3 & 4.[3]

> (4) The design, development, and revisions of Plaintiffs' deposition exhibits Rassette Exhibit 1 and McKinney Exhibit 1, including, but not limited to, the

---

[2] ECF Document Number 224 is Plaintiffs' opposition to Defendants' motion to amend the scheduling order.  The declaration of Nile Nickel that Plaintiffs filed in support of their opposition is attached as Exhibit 2.  ECF Document Number 292 is Plaintiffs' opposition to Defendants' motion for summary judgment.  The declaration of Nile Nickel filed in support of Plaintiffs' opposition to Defendants' motion for summary judgment is attached as Exhibit 3.

[3] Plaintiffs' July 29, 2011, Supplemental Responses to Defendants' Interrogatories, Set III are attached as Exhibit 4.

relationship of the exhibits' design, development and revisions with respect to Paragraphs 1, 2, and 3.[4]

(5) The underlying basis and foundation for the Declaration of Nile L. Nickel, dated January 11, 2012 and purportedly submitted pursuant to Rule 56(d) in support of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 292-18), which Plaintiffs maintain "is not an expert report as contemplated either by Rule 26(a)(2) or the scheduling order." (Doc. No. 305, pp. 2-4 & 7-9.)[5]

(Id. at 1-2.)  The notice states further:

By this notice, Defendants are not seeking testimony with respect to Plaintiffs' expert analysis.  Defendants expressly reserve the right to take the deposition(s) of any and all expert(s) identified and disclosed by Plaintiffs pursuant to Rule 26(a) with respect to Plaintiffs' expert analysis and any accompanying report(s), consistent with the Federal Rules of Civil Procedure and the Court's Fourth Amended Scheduling Order.  (Doc. No. 227.)

(Id. at 2-3.)

As Plaintiffs previously represented to Defendants and to the Court, Plaintiffs retained Nile L. Nickel as their expert to analyze and review the commission-related data in this lawsuit. Mr. Nickel will be issuing his expert report pursuant to the deadlines set by the Court.  Each of the noticed topics pertains directly to the work of Plaintiffs' expert in his capacity as Plaintiffs' expert.  Moreover, these topics all directly relate to Plaintiffs' forthcoming expert disclosures and report.

## CERTIFICATION OF COMPLIANCE WITH L.R. 37.2 AND RULE 26(C)

On March 13, 2012, Plaintiffs notified Defendants' counsel by email of their concern that they may need to seek a protective order regarding Defendants' March 7, 2012 deposition notice. (Frohman Decl. ¶ 2.)  Plaintiffs certify that Plaintiffs reasonably and in good faith conferred with

---

[4] The deposition exhibits referenced in topic 4 are attached as Exhibit 5.

[5] The Declaration of Nile Nickel submitted in support of Plaintiffs' response to Defendants' motion for summary is attached as Exhibit 3.

Defendants on this issue by telephone on March 15, 2012.  The parties were unable to reach agreement regarding Defendants' deposition notice.  (Id.)

## LEGAL STANDARD FOR PROTECTIVE ORDER

Like all rules set forth in the Federal Rules of Civil Procedure, the discovery rules "shall be construed to secure the just, speedy, and inexpensive determination of every action."  Fed. R. Civ. P. 1; In re Urethane Antitrust Litig., No. 04-MD-1616-JWL, 2010 WL 4226214, at *3 (D. Kan. Oct. 21, 2010).  The scope of discovery is broad, but the Court must limit the extent of discovery allowed if the discovery sought is unreasonably cumulative or duplicative, or the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).

"The Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1). The Court may order that the requested discovery be forbidden, or specify the terms, including the time and place, for the discovery.  Fed. R. Civ. P. 26(c)(1)(A), (B).  "Rule 26(c) thus provides a means of judicial oversight whereby discovery, although relevant, may be prescribed or limited to prevent abuse."  In re Urethane Antitrust Litig., 2010 WL 4226214, at *2.  The party seeking a protective order carries the burden to show good cause for the order.  Id. at *3. Whether to enter a protective order is a matter of judicial discretion, and "judges should not hesitate to exercise appropriate control over the discovery process."  Id. (quoting Herbert v. Lando, 441 U.S. 153, 177 (1979)).

## ARGUMENT

I.    **PLAINTIFFS' EXPERT SHOULD NOT BE REQUIRED TO SIT FOR A DEPOSITION ON TOPICS PERTAINING TO HIS EXPERT REPORT UNTIL AFTER HIS REPORT IS ISSUED.**

**A.      Defendants' Noticed Topics Are Cumulative and Duplicative Because They Are Directly Related to Plaintiffs' Forthcoming Expert Report.**

Topics 1-5 in Defendants' deposition notice are all directly related to Mr. Nickel's forthcoming expert report.  Topics 1 and 2 refer to Plaintiffs' memos opposing Defendants' motion to amend the scheduling order and Defendants' summary judgment motion, respectively (Doc. No. 224, pp. 7-8; Doc. No. 292, pp. 17-20 & 24-27).  Both topics cite sections from Plaintiffs' memos that are based on Mr. Nickel's declarations explaining generally how he will be analyzing the commissions data for his expert report.  In pages 7-8 of Plaintiffs' Opposition to Defendants' motion to modify the scheduling order, Plaintiffs discuss the steps their expert will be taking to analyze the commissions data, citing Mr. Nickel's declaration.  (ECF No. 224 at 7-8.)  In Plaintiffs' summary judgment opposition, pages 17-20 of Plaintiffs' fact section discuss the steps Plaintiffs' expert has taken or will take to analyze the commissions data, and they are based on Mr. Nickel's declaration.  (ECF No. 292 at 17-20.)  Pages 24-27 contain arguments that are based on those facts.  (Id. at 24-27.)  This subject matter will be encompassed by Mr. Nickel's expert report, and Defendants will have the opportunity to depose Mr. Nickel regarding this subject matter after he makes his report.

Topic 3 refers to Plaintiffs' response to Defendants' Interrogatories Set III, Nos. 3 and 4, which informs Defendants that information about the automated process for analyzing data will be provided in Plaintiffs' expert report.  In their response, Plaintiffs state unambiguously:

> Plaintiffs will explain their process for calculating and distributing damages in more detail after their experts have the data and have been able to analyze it.  That information will be provided through their expert reports and testimony consistent with the scheduling orders for this case and Federal Rules of Civil Procedure.

(Ex. 4 at 5.)

Topic 4 seeks information about a diagram prepared by Mr. Nickel that represents his understanding of Defendants' commission systems. (Frohman Decl. ¶ 3.) This diagram has been modified several times during this case as Plaintiffs learn more about how Defendants' systems function. (Id.) Plaintiffs' counsel has introduced various versions of this diagram during depositions to question Defendants' employees and corporate designees about their processes. (Id.) Again, Defendants will have the opportunity to depose Mr. Nickel regarding the materials he relied on in forming in his opinions in his expert deposition.

Finally, Topic 5 seeks information about the foundation of Mr. Nickel's declaration, filed in Plaintiffs' opposition to Defendants' motion for summary judgment. Just as with Topics 1-2, Mr. Nickel's declaration discusses the steps he is taking to analyze the commissions data in this action, and Defendants will have the opportunity to depose him on this subject during his expert deposition.

Defendants' deposition notice is directed to Mr. Nickel and information pertaining to his forthcoming expert analysis. Any attempt by Defendants to distinguish these topics as fact discovery will be unavailing. Consequently, pursuant to Rule 26(b)(2)(C), the noticed topics are cumulative and duplicative of the topics that are properly covered in Mr. Nickel's expert deposition. To be clear, Plaintiffs are not attempting to prevent Defendants from deposing their expert; they are simply requesting that his deposition be set at the proper time, in accordance with Rule 26(b)(4)(A). The proper time for any such deposition is after Plaintiffs' expert report has been filed, not while he is in the midst of setting up his systems, analyzing the data and preparing his report.

**B.      The Parties' Testifying Experts May Not Be Deposed Until After the Experts File Their Expert Reports.**

The federal rules governing expert discovery allow parties to depose testifying experts, but "if Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided." Fed. R. Civ. P. 26(b)(4)(A). The committee notes to Rule 26(b)(4) explain the rationale behind the rule:

> Past judicial restrictions on discovery of an adversary's expert, particularly as to his opinions, reflect the fear that one side will benefit unduly from the other's better preparation. The procedure established in subsection (b)(4)(A) holds the risk to a minimum. Discovery is limited to trial witnesses, and may be obtained only at a time when the parties know who their expert witnesses will be. A party must as a practical matter prepare his own case in advance of that time, for he can hardly hope to build his case out of his opponent's experts.

Fed. R. Civ. P. 26(b), 1970 advisory committee notes. Further clarification of the rule was provided in 1993:

> The requirement under subdivision (a)(2)(B) of a complete and detailed report of the expected testimony of certain forensic experts may, moreover, eliminate the need for some such depositions or at least reduce the length of the depositions. Accordingly, the deposition of an expert required by subdivision (a)(2)(B) to provide a written report may be taken only after the report has been served.

Id., 1993 advisory committee notes. Thus, the rule barring expert depositions until after the experts have been identified and their reports filed is premised on the practical notions of fairness and efficiency. A party may not build its own case on the work of its opponent's expert, thus depositions may not be had until after the expert's report has been filed. See, e.g., Marsh v. Jackson, 141 F.R.D. 431, 432 (W.D. Va. 1992) ("Rule 26(b)(4) remains a limitation on the right of access by an opposing party to the evidence of experts who have been retained to testify in the case"). Furthermore, having the opportunity to review the expert's disclosures and report may reduce the length or eliminate the need for expert depositions.

Courts have rejected efforts to take expert depositions before expert reports have issued. See, e.g., Enns Pontiac, Buick & GMC Truck v. Flores, No. 1:07CV01043 OWW DLB, 2011 WL 2787729, at *3-4 (E.D. Cal. July 11, 2011) (rejecting the plaintiffs' argument, and granting protective order barring the deposition of the defendants' expert until after his report was issued). In Enns Pontiac, the court rejected the plaintiffs' argument that they had a right to information regarding the basis of the defendants' expert reports, prior to the deadline for expert disclosures, in order to prepare their own expert reports. Id. In Perry v. United States, No. 3:96-CV-2038-T, 1997 WL 53136 (N.D. Tex. Feb. 4, 1997), the court granted a protective order prohibiting discovery of a party's expert until after final expert designations were made in accordance with the scheduling order. The court specifically found that the plaintiffs' attempt to discover expert information was premature until the defendant was required to make a final decision regarding expert testimony. Id., at *3.

The person most knowledgeable about topics 1-5 in Defendants' deposition notice is Nile Nickel, who Plaintiffs have retained as an expert in this matter. By seeking to depose the "person(s) most knowledgeable" about topics that are all related to statements by Plaintiffs' expert or involving his expert analysis, Defendants are attempting to thwart the timing of expert depositions mandated in Rule 26(b)(4)(A). Under Rule 26(b)(4)(A), Defendants have no basis to depose Mr. Nickel on these subjects until after he issues his report. Rule 26(b)(4) limits the right of access by an opposing party to the evidence of another parties' experts. Marsh, 141 F.R.D. at 432. As the committee notes to Rule 26 state, Defendants may not build their own case on the work of Plaintiffs' expert. Just as in Enns Pontiac, Defendants do not have a right to information regarding the basis of the Plaintiffs' expert reports prior to the deadline for expert disclosures. 2011 WL 2787729, at *3-4. Furthermore, like in Perry, Defendants' attempt to discover expert

12

information is premature until the parties are required to disclose their expert testimony.  1997 WL 53136, at *4.  Defendants' deposition notice is premature and should be quashed.

## II.   DEFENDANTS HAVE NO BASIS FOR TAKING TWO DEPOSITIONS OF PLAINTIFFS' EXPERT.

Despite seeking a deposition on topics that are encompassed in Plaintiffs' forthcoming expert report, Defendants state in their notice that they "expressly reserve the right to take the deposition(s) of any and all expert(s) identified and disclosed by Plaintiffs pursuant to Rule 26(a) with respect to Plaintiffs' expert analysis and any accompanying report(s)."  (Ex. 1.)  By including this disclaimer, it is obvious that Defendants are attempting to take two depositions of Plaintiffs' expert.  Even though the notice seeks to depose Mr. Nickel on topics that are directly related to his forthcoming expert report, Defendants intend to conduct another deposition of Mr. Nickel after his expert report is filed.  Multiple depositions of the same witness may not be had without the permission of the court, and this Court does not favor such efforts.

A party must obtain leave of court to proceed with a second deposition if the deponent has already been deposed in the case and the parties have not stipulated to the second deposition. Fed. R. Civ. P. 30(a)(2)(A)(ii).  Whether a second deposition should be allowed is a matter of the Court's discretion, and "[t]he court rarely grants the opportunity for a second deposition." Cuthbertson v. Excel Indus., Inc., 179 F.R.D. 599, 604-05 (D. Kan. 1998).  A second deposition may not proceed without a showing of need or good reason.  Id.; cf. ICE Corp. v. Hamilton Sundstrand Corp., No. 05-4135-JAR, 2007 WL 1652056, at *3 (D. Kan. June 6, 2007) (recognizing that failing to show the reason for scheduling a second deposition will support a finding of annoyance or undue expense, but denying to issue a protective order where the party had not yet taken an initial deposition nor scheduled a second deposition).

This Court has allowed a second deposition of a party's expert to proceed where the expert was first deposed after disclosing his initial expert report, but then issued a subsequent expert report containing new opinions.  ICE Corp. v. Hamilton Sundstrand Corp., No. 05-4135-JAR, 2007 WL 1590845, at *2 (D. Kan. May 30, 2007); see also Presidio Components, Inc. v. Am. Technical Ceramics Corp., No. CIV 08CV335 IEG NLS, 2009 WL 861733, at *5 (S.D. Cal. Mar. 25, 2009) (noting that additional depositions of expert witnesses are permitted in consideration of a subsequent expert report containing new opinions).  However, courts have prohibited efforts to depose experts once before the deadline for expert disclosures and a second time after making those disclosures.  See Enns Pontiac, 2011 WL 2787729, at *3-4 (rejecting the plaintiffs' argument that they had a right to information regarding the basis of the defendants' expert reports in order to prepare their own expert reports, and granting protective order barring the deposition of the defendants' expert until after his report was issued); Presidio Components, 2009 WL 861733, at *5 (denying motion for leave to depose individual identified as expert when the individual was deposed during fact discovery on the same subject matter contained in his subsequent expert report).

Defendants have no good reason for pursuing a deposition on expert topics at this time.  This case is more similar to Enns Pontiac, where the plaintiffs unsuccessfully sought to depose the defendants' expert before and after the submission of expert reports.  2011 WL 2787729, at *3-4.  The deadline for expert reports is still pending.  Topics 1-5 of Defendants' notice each encroach upon the matter of Mr. Nickel's forthcoming expert report.  Even so, as evidenced by their reservation of the right to depose Plaintiffs' experts after the deadline for expert disclosures, Defendants clearly intend to depose Mr. Nickel again after his expert report is filed.  Defendants have no legitimate basis for taking a deposition on expert topics at this time, because they may

pursue these topics after Mr. Nickel's expert report is filed.  Like in <u>Enns Pontiac</u>, Defendants should be limited to one deposition of Plaintiffs' expert, and that deposition should occur after expert disclosures are made.

### III.    QUASHING THE DEPOSITION WILL NOT PREJUDICE DEFENDANTS, BUT ALLOWING THE DEPOSITION TO GO FORWARD WILL PREJUDICE PLAINTIFFS.

Rule 26(c)(1) authorizes the Court to issue an order, for good cause, to protect a party from annoyance and undue burden or expense.  "Scheduling a second deposition of the same person without a showing of good reason will generally support a finding of annoyance and undue burden or expense."  <u>Cuthbertson</u>, 179 F.R.D. at 605 (quotation omitted).  Plaintiffs are not seeking a protective order to prohibit Defendants from taking their expert's deposition, or to evade the topics contained in Defendants' deposition notice.  Defendants will have the opportunity to depose Plaintiffs' expert after he actually issues his report, and Defendants remain free to inquire into the topics contained in their notice at that time.  Consequently, Defendants will not be prejudiced if the Court grants Plaintiffs' motion and quashes the deposition. However, allowing the deposition to go forward at this time violates the attorney work-product doctrine, will further delay Mr. Nickel's analysis, and will cause Plaintiffs to incur the unnecessary costs associated with two duplicative depositions of their expert.

The only reason for seeking a deposition on topics pertaining to Plaintiffs' forthcoming expert report at this time is to provide Defendants with a preview of the report and the expert's work to date, both of which are unfinished.  This is not a legitimate basis for an expert deposition, and it runs directly counter to Rule 26(a)(2)(B).  <u>See, e.g.</u>, <u>Marsh</u>, 141 F.R.D. at 432 (a party may not build its own case on the work of its opponent's expert).  In fact, to some degree

Plaintiffs' expert report may resolve certain of Defendants' questions.  This is why expert depositions are held after expert reports are filed.

Furthermore, Rule 26(b)(4)(B) specifically protects draft reports or disclosures regardless of the form in which they are recorded.  This rule was added in 2010 "to provide work-product protection . . . for drafts of expert reports or disclosures."  Fed. R. Civ. P. 26, 2010 advisory committee notes.  Defendants' deposition notice on the topics identified is the equivalent of seeking a draft, or unfinished, expert report.  In fact, it is more intrusive because Defendants seek to depose Mr. Nickel about his unfinished work.  Allowing a deposition to proceed at this time would be a violation of Rule 26(b)(4)(B).  Moreover, because Mr. Nickels' work is ongoing, the information regarding certain issues may change after the deposition is conducted.  For example, it is very likely that he will continue to make revisions to his automated system and processes for analyzing the classwide commissions data.  It does not make sense to hold a deposition on such topics while Mr. Nickel's work is underway.

Permitting a deposition of Mr. Nickel to proceed now is also prejudicial to Plaintiffs because it will further delay Plaintiffs' expert report.  Mr. Nickel does not currently have time to prepare for a deposition without it adversely affecting the work he is currently performing.  He is in the midst of processing and analyzing Defendants' voluminous classwide data under a tight deadline.  (Frohman Decl. ¶ 4.)  Processing this data requires Mr. Nickel's full attention and oversight, and at this critical juncture, a deposition and all the necessary preparation will be a major interruption of his work.  (Id.)  Mr. Nickel's work has already been delayed as the result of (1) receiving a large quantity of the Stage 3 classwide data from Defendants on a defective hard drive that had to be replaced; (2) Defendants' premature motion for summary judgment that required Plaintiffs to obtain information from their expert to respond; and (3) Defendants' initial

refusal to provide Plaintiffs with certain employee identifiers necessary for processing the data and performing the damages calculations.  (Id. ¶ 5.)

Finally, Plaintiffs will incur significant expert costs associated with meeting with Mr. Nickel to prepare for the deposition, collecting and reviewing documents and data for the deposition, and sitting for the deposition.  These costs will only be repeated after Mr. Nickel's expert report is served on Defendants and they seek to depose him again during the period for expert discovery.

## CONCLUSION

Defendants' deposition notice is improper under Rules 26(b)(4)(A) and (B) and 30(a)(2)(A)(ii), Defendants will not be prejudiced by pursuing these expert deposition topics after Plaintiffs make their expert disclosures, and allowing the deposition to go forward prior to the deadline for expert disclosures and reports will delay Plaintiffs' expert report and cause them to incur significant unnecessary costs.  For these reasons, the Court should grant Plaintiffs' motion for protective order and quash Defendants' notice of deposition.

Dated: <u>March 21, 2012</u>

**STUEVE SIEGEL HANSON LLP**

*/s/Lee R. Anderson*
Lee R. Anderson, KS Bar No. 22755
Email: anderson@stuevesiegel.com
George A. Hanson, KS Bar No. 16805
Email: hanson@stuevesiegel.com
Ashlea G. Schwarz, KS Bar No. 23491
Email: ashlea@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: (816) 714-7100
Fax: (816) 714-7101

**NICHOLS CASTER, PLLP**
*/s/ Charles G. Frohman*
Michele R. Fisher, MN Bar No. 303069*
Email: fisher@nka.com
Donald H. Nichols, MN Bar No. 78918*
Email: nichols@nka.com
Paul J. Lukas, MN Bar No. 22084X*
Email: lukas@nka.com
Charles G. Frohman, MN Bar No. 386695*
Email: frohman@nka.com
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: 612-256-3200
Fax: 612-215-6870
*admitted pro hac vice

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send an email notification to the following attorneys of record:

Hunter Hughes
Rogers & Hardin
2700 International Tower,
Peachtree Center
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
hrh@rh-law.com

Thomas Mew
Rogers & Hardin
2700 International Tower,
Peachtree Center
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
TMew@rh-law.com

Joseph H. Knittig
3000 NW 50th St.
Kansas City, MO 64150
816-547-1495
joek@c3missions.org

Mark W. Batten
Proskauer Rose LLP
One International Place
Boston, Massachusetts 02110
mbatten@proskauer.com

Steven D. Hurd
Jacqueline M. Dorn
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
jdorn@proskauer.com
shurd@proskauer.com

Elise M. Bloom
Gregory Rasin
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
ebloom@proskauer.com
grasin@proskauer.com

Nicole A. Eichberger
Proskauer Rose LLP
650 Poydras Street, Suite 1800
New Orleans, Louisiana 70130
neichberger@proskauer.com

Michael L. Blumenthal
Seyferth, Blumenthal & Harris LLC
300 Wyandotte, Suite 430
Kansas City, Missouri 64104
mike@sbhlaw.com

Dated: March 21, 2012

**STUEVE SIEGEL HANSON LLP**

*/s/ Lee R. Anderson*

Lee R. Anderson, KS Bar # 22755
Email: anderson@stuevesiegel.com
George A. Hanson, KS Bar # 16805
Email: hanson@stuevesiegel.com
Ashlea Schwarz, KS Bar # 23491
Email: ashlea@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: (816) 714-7100
Fax: (816) 714 7101

19

**NICHOLS KASTER, PLLP**
Donald H. Nichols, MN Bar No. 78918*
Email: nichols@nka.com
Paul J. Lukas, MN Bar No. 22084X*
Email: lukas@nka.com
Michele R. Fisher, MN Bar No. 303069*
Email: fisher@nka.com
Charles G. Frohman, MN Bar No. 386695*
Email: frohman@nka.com
4600 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Tel: (612) 256-3200
Fax: (612) 215-6870
*admitted pro hac vice

**ATTORNEYS FOR PLAINTIFFS**