**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ROXIE SIBLEY, JEANNE NOEL, ERNESTO   :
BENNETT, JAMIE WILLIAMS, GREG ST.   :
JULIEN, TRACIE HERNANDEZ, JOHN   :
JASINSKI, JAY RICHIE, and TEISHA KING,   :
individually and on behalf of a class of others   :
similarly situated,   :
  :
           Plaintiffs,   :
  :
           v.   :     Case No. 02:08-CV-02063-KHV/JPO
  :
SPRINT NEXTEL CORPORATION, a Kansas   :
corporation   :
  :
           and   :
  :
SPRINT/UNITED MANAGEMENT   :
COMPANY, a Kansas corporation   :
  :
           Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR**
**PROTECTIVE ORDER QUASHING NOTICE OF DEPOSITION**

Defendants Sprint Nextel Corporation and Sprint/United Management Company

respectfully submit this Opposition to Plaintiffs' Motion for Protective Order Quashing Notice of

Deposition. For the reasons set forth below, this Court should deny Plaintiffs' Motion for

Protective Order Quashing Notice of Deposition because Defendants are entitled to a timely

Federal Rule of Civil Procedure 30(b)(1) deposition on the factual topics listed in their notice

since the notice does not seek expert analysis or testimony.

## I.    INTRODUCTION

Plaintiffs' arguments are unpersuasive because they are based entirely on the false

premise that Defendants are seeking expert testimony from their purported expert Nile Nickel

("Mr. Nickel").  In their Motion, Plaintiffs argue at length that a protective order is warranted because Defendants are prematurely and unjustifiably seeking Mr. Nickel's "expert" analysis as defined in Federal Rule of Evidence 703.  A review of Defendants' Rule 30(b)(1) deposition notice, however, indicates that Defendants have no intention or desire to procure Mr. Nickel's purported expert testimony – the deposition is not noticed for Mr. Nickel or for any expert opinion.  (*See* Doc. No. 312-2 at 1.)  Rather, Defendants' Rule 30(b)(1) deposition notice states that Defendants are seeking deposition testimony from the "person(s) most knowledgeable" on various factual issues regarding Plaintiffs' general "automated system" ("model data system") and "mechanical process."  (*Id*.)  Indeed, the evidence demonstrates that Defendants are permissibly seeking <u>factual</u> <u>non-expert</u> discoverable testimony regarding Plaintiffs' model data system and its mechanical process, just as Plaintiffs sought and obtained Rule 30(b)(6) testimony on Defendants' data systems and their processes.

Throughout this litigation, Plaintiffs have represented to this Court and Defendants that they have built their model data system.[1]  It is Defendants' understanding that Plaintiffs' expert will analyze data that they put into the model data system and issue a report.  Defendants' instant Rule 30(b)(1) deposition notice does not seek that information (i.e. Defendants are not seeking any working report).  Rather, Defendants seek the underlying factual information regarding the set-up, creation, and functions of Plaintiffs' already-created model data system – the building of the model data system and the manner in which it operates (non-expert factual discoverable

---

[1] As set forth in the Background section of this Opposition, Plaintiffs have continually represented that they are developing a straightforward model data system to perform commissions calculations based on information and data provided by Defendants.  Since 2008, Defendants have provided Plaintiffs with a wealth of information concerning its data systems.  In fact, Defendants have satisfied all of their data discovery obligations in this case.  At this point, Plaintiffs have had ample time and opportunity to build and refine their model data system.  Indeed, Plaintiffs have repeatedly represented to this Court and Defendants that they have already prepared a model data system and even used it to process the data exchanged in mediation.

information), as opposed to conclusions/results regarding the analyzed data after the data is put into the model data system (expert opinion).

Additionally, given that the parties are beyond the exchange of data discovery and are currently engaged in factual discovery, Defendants are entitled to this factual information to assess its potential decertification strategy.  As this Court explained in its October 11, 2011 Order regarding Plaintiffs' trial plan, "Defendants' argument that plaintiffs' trial plan is insufficient to support a class certification finding would be more appropriately raised in a motion to decertify the class."  (Doc. No. 257.)  In addition to the myriad reasons requiring decertification of this class, factual information concerning Plaintiffs' model data system and its mechanical process is integral to assess the adequacy of Plaintiffs' trial plan and to evaluate the bases for Plaintiffs' "class-wide" allegations.

Moreover, as noted above, Plaintiffs' Motion ignores the fact that Defendants' deposition notice does not explicitly state that it seeks to depose Mr. Nickel or any other individual – it is Plaintiffs who have designated Mr. Nickel for this noticed deposition.  (*See* Doc. No. 312-2 at 1.)  Rather, Defendants are seeking to depose the "person(s) most knowledgeable" on the noticed factual topics.  (*Id.*)  It would be unjust for Plaintiffs to deny Defendants' right to factual discovery by simply asserting that Mr. Nickel is the most knowledgeable individual about the model data system and that he cannot be deposed until he provides his report.

Further, to the extent that Mr. Nickel is the most knowledgeable person regarding the creation and functions of the model data system, Defendants are entitled to deposition testimony regarding that factual information because Plaintiffs voluntarily chose Mr. Nickel to perform non-expert factually discoverable work regarding the model data system – as he has apparently performed throughout this litigation.  Indeed, in Topic 5 of their Rule 30(b)(1) deposition notice,

Defendants seek information on a declaration by Mr. Nickel that Plaintiffs have repeatedly characterized as "not an expert report." (*See* Doc. No. 312-2 at 2); (*See* Doc. No. 305 at 3, 7-9, 12, 15-16.) Plaintiffs cannot argue on one hand that Mr. Nickel's declaration is "not an expert report," and then argue on the other hand that seeking information regarding that declaration constitutes impermissible expert testimony. As a result, if Mr. Nickel has knowledge on facts concerning Plaintiffs' model data system and its mechanical process, Defendants are entitled to information regarding those facts.

Accordingly, this Court should deny Plaintiffs' Motion for Protective Order Quashing Notice of Deposition because Defendants' deposition notice appropriately and timely seeks non-expert testimony.

## II.     FACTUAL BACKGROUND

Throughout this litigation, Plaintiffs have repeatedly expressed to this Court and Defendants that they are developing a relatively straightforward model data system to process Defendants' data. Since 2008, Plaintiffs have represented to the Court and Defendants, either in court filings or depositions, that they have built and refined this model data system. Now, following Plaintiffs' Rule 30(b)(6) depositions on Defendants' data systems for processing data, the production of documents that set forth the data system, and Plaintiffs' trial plan, Defendants have timely and appropriately noticed a Rule 30(b)(1) deposition seeking non-expert, factual testimony on Plaintiffs' model data system.

## A.     BRIEF SUMMARY OF DISCOVERY TO DATE REGARDING DEFENDANTS' DATA SYSTEMS

During the discovery phase, Plaintiffs have taken significant discovery on Defendants' data systems to prepare a model data system to process Defendants' data. In fact, from 2008 through 2010, Plaintiffs conducted discovery to build this model data system. (Declaration of

Steven D. Hurd Esq. ¶ 2.)[2]  Specifically, Defendants have produced considerable information

through depositions, production of documents, and mediation pertaining to data systems.  (*Id.*)

The Stage 3 data was not needed to prepare this model data system.[3]  Whereas Stage 3 data was

needed to plug data into the model data system for analysis, Plaintiffs were able to prepare the

actual model data system based on prior discovery.  Indeed, as noted in the section below,

Plaintiffs have made numerous representations throughout discovery (both before and after the

Stage 3 data was produced) indicating that they have prepared a model data system.  In fact,

Plaintiffs have expressed that they have used, tested, and refined that model data system with

data exchanged during mediation.

**B.      PLAINTIFFS' MODEL DATA SYSTEM**

   Plaintiffs have made several representations during discovery indicating that their model

data system is built.  In fact, as early as mediation, Plaintiffs have indicated that the model data

system was created and established.  In opposition to Defendants' motion to modify the

scheduling order, Plaintiffs noted that they had already "invested more than $1 million on their

experts, who have prepared an automated system to handle and analyze a class-wide production

and provide a class-wide damage calculation."  (Doc. No. 224 at 2.)  Plaintiffs further explained

that "[b]ecause of missing data and other problems with Defendants' Commission System,

Plaintiffs' experts have created automated processes to search not only the Point-of-Sale system

data for commissionable transactions, but also to search Defendants' various other systems'

---

[2] Referenced documents are cited as "Ex. __" and are attached to the Declaration of Steven D. Hurd, Esq.,
hereinafter cited as "Hurd Decl."

[3] Note that there is no merit to Plaintiffs' insinuation that Defendants somehow withheld or delayed data
productions.  In fact, Defendants completed their production of class-wide data discovery by the Court-ordered
December 23, 2011 deadline. (Hurd Decl. ¶ 3.)  This production included three hard drives containing over 7
terabytes of class-wide commissions data.  (*Id.*)  Accordingly, Defendants have satisfied their discovery obligations
for data purposes.  However, for the reasons stated herein, Defendants' timely Stage 3 data production has no
bearing on Defendants' Rule 30(b)(1) deposition notice because Defendants are not seeking Plaintiffs' expert
testimony regarding the review, analysis, and conclusions of the produced Stage 3 data.

class-wide data for fragments of transactions that do not appear in the Point-of-Sale system."
(*Id.* at 7.)  Additionally, Plaintiffs stated that their "experts plan to run their largely automated
process for the entire class to produce a report identifying the amount of damages for each class
member."  (*Id.* at 8.)  Moreover, Plaintiffs explained that their experts "tested this automated
process on the mediation sample and have spent considerable time refining and preparing it and
their systems to handle the data for the entire class, pursuant to the parties' previous agreement
with this Court's order."  (*Id.*)  Plaintiffs added that they "have set up their systems to
standardize, process, and import the class-wide data, have developed intricate coding to analyze
and search the class-wide data, and have prepared a reporting mechanism to explain their
results." (*Id.*)

Further, Plaintiffs have conducted several Rule 30(b)(6) depositions regarding Sprint's
data systems.  (Hurd Decl. ¶ 4.)  At these Rule 30(b)(6) depositions, Plaintiffs sought and
received factual information regarding how Sprint's data systems work and what happens to a
"transaction" from entry to finish in the data system.  (*Id.*)  Further, at some of these depositions,
Plaintiffs introduced drawings of their model data system.  Specifically, throughout the fall of
2011, Plaintiffs took Rule 30(b)(6) depositions at which they introduced their model data system
diagram and questioned the deponents about the accuracy of the diagram and/or inquired about
Sprint's data systems in relation to their constructed model data system.[4]  (*Id.* at ¶ 5.)  These
Rule 30(b)(6) depositions concerned testimony about the process of the data (a factual issue) and
not analysis of the data.

For example, on October 5, 2011, Plaintiffs deposed Mindy Burrow pursuant to Rule
30(b)(6) regarding Sprint's order entry systems.  (Hurd Decl. ¶ 7.)  Plaintiffs' counsel questioned

---

[4] Mr. Nickel was present during some of these depositions and apparently provided questions to Plaintiffs' counsel relating to Sprint's commissions calculations and Plaintiffs marked their own systems diagram accordingly.  (Hurd Decl. ¶ 6.)  At that time, Plaintiffs did not shield Mr. Nickel and his input from Defendants and the deponents.  (*Id.*)

Burrow about the particular components and connections within order entry, as well as with respect to connections with other data systems.  (*See Id*., Ex. A at deposition transcript pages 13-15, 22-29, 33-40, 44-61, 68-77.)  Additionally, on October 14, 2011, Plaintiffs' counsel deposed Mark McKinney pursuant to Rule 30(b)(6) regarding "Sprint's Retail Sales Channel's overall process, in general terms, of what happens to transactions from the point of sale and order entry through the payment of commissions, and what systems and departments are involved in that process from August 12, 2005, to September 30th of 2009."  (Hurd Decl. ¶ 8, Ex. B at deposition transcript page 6.)  During McKinney's deposition, Plaintiffs' counsel asked McKinney to review and describe how Plaintiffs' data system diagram was correct and how it should be changed:  "This . . . is a diagram that we have drafted based on the information we've received in this case so far.  So I want to ask you some specific questions about the – your understanding with respect to how commissions flow through this system that we've diagrammed here for retail employees."  (*Id*. at deposition transcript page 91.)  Plaintiffs' counsel also asked many specific questions relating to the diagram and connections within and among data systems, including some that reveal how Plaintiffs are refining their diagrams based on Rule 30(b)(6) testimony.  For example:

> Q.   Okay.  So you would have G7L TrueComp and
>       G7L DataMart all combined, but you say they don't
>       apply to retail anyway, so they really shouldn't be
>       on our retail diagram?
> A.   Correct.
> Q.   Okay.
> A.   Yeah.
> Q.   That helps us get rid of some boxes.
> A.   Yeah, I would remove both of those.

(*Id*. at deposition transcript page 102.)

Additionally, the model data system's existence was confirmed via the Court's October 11, 2011 Order regarding the adequacy of Plaintiffs' trial plan. (Doc. No. 257.) Specifically, the Court stated that: "Plaintiffs also explained that they have developed (and continue to refine) a largely automated process that will import the class-wide data being produced by defendants related to transactions in defendants' systems, will analyze each transaction and determine if it is 'commissionable,' and will produce a report identifying the amount of damages sustained by each class member." (*Id*. at 9.)

Most recently, Plaintiffs confirmed the existence of the model data system through its Opposition to Defendants' Motion for Summary Judgment, including Mr. Nickel's non-expert, factual declaration. (Doc. No. 292.) For example, Plaintiffs stated that "[d]uring the course of the mediation, Plaintiffs were busy…developing their system to process the data they would receive in this case." (*Id*. at 6.) Additionally, Plaintiffs noted that "Plaintiffs' experts have spent several years setting up this system to perform this analysis." (*Id*. at 19) Further, Plaintiffs stated that the "automated process will analyze all data related to a transaction…" and that Plaintiffs will "run the data through their automated system." (*Id*. at 18)

## C.   PARTIES ARE CURRENTLY IN FACTUAL DISCOVERY

Given Plaintiffs' numerous representations over the past couple of years regarding the building of their model data system coupled with the fact that Defendants have provided Plaintiffs with a wealth of discovery on their data systems, Defendants' served Plaintiffs with a timely and appropriate deposition notice regarding Plaintiffs' model data system and its mechanical process. (Doc. No. 312-2.)

Further, this Court's October 11, 2011 Order regarding the adequacy of Plaintiffs' trial plans triggered Defendants' deposition notice. (Doc. No. 257.) In its October 11, 2011 Order,

the Court provided that "[t]he problem with defendants' argument [that Plaintiffs' trial plan is insufficient] is that it is made in the wrong context," and that "Defendants' argument that plaintiffs' trial plan is insufficient to support a class certification finding would be more appropriately raised in a motion to decertify the class."  (*Id.* at 10.)  Thus, the Court stated that a decertification motion is the proper platform to use if Defendants wish to contest Plaintiffs' trial plan.  To sufficiently determine the adequacy of Plaintiffs' trial plan, it is integral for Defendants to possess knowledge and information regarding the factual nature of Plaintiffs' model data system and its mechanical process because, in accordance with representations Plaintiffs have made regarding their trial plan,  Plaintiffs intend to use the model data system to prove their case.  Therefore, factual information regarding Plaintiffs' model data system and its mechanical process (*e.g.*, creation, functions, etc.) is critical to Defendants in determining their potential decertification strategy because such information will allow Defendants to evaluate certain bases for Plaintiffs' "class-wide" allegations.  Accordingly, Defendants filed the instant deposition notice seeking this factual information.

### III.   ARGUMENT

### A.   LEGAL STANDARD FOR A PROTECTIVE ORDER

Federal Rule of Civil Procedure 26(c)(1) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…"  Fed. R. Civ. P. 26(c)(1); *see also*, *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, No. 08-2527, 2009 WL 4571845, at *1 (D. Kan. Dec. 3, 2009).  A party seeking a protective order bears the burden of showing good cause for the granting of the order.  *Shockey v. Huhtamaki, Inc.*, No. 09-2260, 2012 WL 780997, at *2 (D. Kan. Mar. 8, 2012); *Cohen-Esrey*, 2009 WL 4571845, at *1.  A court can only grant a protective order if the

requesting party demonstrates the existence of one of the grounds enumerated in Rule 26(c)(1). *Cohen-Esrey*, 2009 WL 4571845, at *1; *P.S. v. The Farm, Inc.*, No. 07-2210, 2009 WL 483236, at *3 (D. Kan. Feb. 24, 2009).

In the deposition context, "merely asserting that a [deposition] topic is overly broad or irrelevant is not sufficient to warrant" a protective order. *Cohen-Esrey*, 2009 WL 4571845, at *1; *The Farm, Inc.*, 2009 WL 483236, at *3.  Neither is the assertion that the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence alone enough to warrant a protective order. *Cohen-Esrey*, 2009 WL 4571845, at *1; *The Farm, Inc.*, 2009 WL 483236, at *3.  Further, a showing of some inconvenience is not good cause for a protective order. *Horsewood v. Kids "R" Us*, No. 97-2441, 1998 WL 526589, at *7 (D. Kan. Aug. 13, 1998).  Rather, the party seeking the protective order must show "'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Cohen-Esrey*, 2009 WL 4571845, at *1 (*quoting Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)). Indeed, a party seeking a protective order must sufficiently "show how providing testimony on that particular topic would be unduly burdensome, unduly expensive, embarrassing, oppressive, or annoying." *Id*.

As a result, an order prohibiting a deposition from being taken is rarely granted. *Horsewood*, 1998 WL 526589, at *5 (noting, *inter alia*, that this Court rarely grants protective orders prohibiting depositions unless "extraordinary circumstances" are present and that this Court has previously characterized a prohibition against a deposition from taking place as a "drastic action").  Plaintiffs' Motion does not satisfy their burden that Defendants' Rule 30(b)(1) factual deposition notice should be prohibited.

**B.      A PROTECTIVE ORDER IS NOT WARRANTED BECAUSE DEFENDANTS ARE NOT SEEKING EXPERT TESTIMONY**

Contrary to Plaintiffs' assertion, a protective order is not appropriate in this situation because Defendants are not seeking expert testimony.  Indeed, Defendants are seeking factual non-expert information regarding Plaintiffs' model data system and its mechanical process.  As a result, Defendants' noticed topics are not cumulative and duplicative of any forthcoming expert report nor is there any justification for postponing the noticed deposition until an expert report is provided.  Moreover, there is no merit to Plaintiffs' argument that Defendants intend to unjustifiably depose Mr. Nickel twice.

1.      <u>Defendants' Noticed Topics Are Not Cumulative and Duplicative of Plaintiffs' Forthcoming Expert Report</u>

In their Motion, Plaintiffs argue that "Topics 1-5 in Defendants' deposition notice are all directly related to Mr. Nickel's forthcoming expert report."  (Doc. No. 312 at 9.)  Plaintiffs further state that "[c]onsequently, pursuant to Rule 26(b)(2)(C), the noticed topics are cumulative and duplicative of the topics that are properly covered in Mr. Nickel's expert deposition."  (*Id.* at 10.)  Plaintiffs' argument, however, ignores the clear distinction between factual testimony sought in Topics 1-5 and the alleged expert analysis that will comprise Mr. Nickel's report.

A review of the information sought in Topics 1-5 demonstrates that Defendants' deposition notice seeks factual non-expert testimony.  Topic 1 seeks general information on the model data system and its "mechanical process" that Plaintiffs have "purportedly created to 'standardize, process, and import the class-wide data."  (Doc. No. 312-2 at 1.)  Topic 2 seeks information concerning the model data system's "design, development, costs, components, coding, assumptions, connections, processes, reporting mechanisms, implementation (including, but not limited to, implementation of the compensation plans), and functions."  (*Id.* at 2)  Topic 3

11

seeks information regarding the model data system's "relationship and its implementation with respect to Plaintiffs' trial plan."  (*Id*.)  Topic 4 seeks information concerning the "design, development, and revisions of Plaintiffs'" model data system that Plaintiffs have introduced during various depositions.  (*Id*.)  Lastly, Topic 5 seeks information regarding the "underlying basis and foundation for the Declaration of Nile L. Nickel, dated January 11, 2012 and purportedly submitted pursuant to Rule 56(d) in support of Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 292-18), which Plaintiffs maintain 'is not an expert report as contemplated either by Rule 26(a)(2) or the scheduling order.'"  (*Id*.)

These Topics do not ask for expert testimony.  Each of the foregoing Topics asks for only factual information concerning Plaintiffs' model data system and its mechanical process.  Indeed, none of the aforementioned Topics seek Mr. Nickel's professed expert analysis as to the results of the process.  For example, none of the Topics ask for Mr. Nickel's conclusions, analysis, findings, etc.  In fact, whereas Mr. Nickel's report will analyze data that is put into the model data system, Defendants are only seeking non-expert factual information regarding the set-up, creation, and functions of the model data system.  To be clear, Defendants are not seeking a working draft of Mr. Nickel's report or any expert opinion.  Rather, as evident by the information sought in Topics 1-5, Defendants are only seeking information regarding the model data system that currently exists and how it functions.  Indeed, the deposition testimony that Defendants seek regarding Plaintiffs' model data system is the same type of information that Plaintiffs successfully sought and received regarding Sprint's data systems through their Rule 30(b)(6) depositions.  In their Rule 30(b)(6) depositions, Plaintiffs obtained information regarding how Sprint's data systems work and what happens to a transaction from entry to finish

in the data system.  (*See* Hurd Decl. ¶¶ 4-8.)  This same factual information (not expert testimony) is what Defendants seek in their current Rule 30(b)(1) deposition.

Moreover, with regards to Topic 5, Plaintiffs have repeatedly stated that Mr. Nickel's declaration in question is "not an expert report" as contemplated either by Rule 26(a)(2) or the scheduling order.  (Doc. No. 305 at 3, 7-9, 12, 15-16.)  As a result, by Plaintiffs' own admission, Mr. Nickel's declaration referenced in Topic 5 does not consist of any expert analysis.  Thus, it would defy logic to conclude that Mr. Nickel's declaration does not contain expert testimony for one purpose but does contain expert testimony for another purpose.

The evidence demonstrates that the information sought in Topics 1-5 is factual and not expert in nature.  Accordingly, in accordance with the Federal Rules of Civil Procedure, Defendants are entitled to proceed with their factual non-expert deposition regarding Plaintiffs' model data system and its mechanical process.

    2.    <u>Plaintiffs' Expert May Be Deposed Before Filing His Expert Report Because Only Factual Testimony Is Sought (Not Expert Testimony)</u>

Plaintiffs argue that Defendants' deposition notice is premature because it seeks expert testimony prior to Mr. Nickel providing his report.  In support of this argument, Plaintiffs cite Federal Rule of Civil Procedure 26(a)(2)(B) and a handful of cases for the proposition that an expert report must first be filed before an opposing party may depose that expert.  As discussed above, however, Plaintiffs' argument is unpersuasive because Defendants are not seeking expert testimony.  Indeed, the cases that Plaintiffs cite are all instances where an opposing party specifically sought expert testimony and/or information from the other party's expert.  *See Marsh v. Jackson*, 141 F.R.D. 431 (W.D. Va. 1992) (stating that "[t]his action is before the court…to resolve the questions raised by plaintiffs' motion to quash two subpoenas duces tecum issued by counsel for defendant to two separate experts"); *Pontiac v. Flores*, No. 1:07-cv-01043, 2011 U.S.

Dist. LEXIS 74308, at *3-4 (E.D. Cal. July 11, 2011) (noting that plaintiffs issued Federal Rule

of Civil Procedure 45 subpoenas on a defendant's experts, including the "person most qualified

on behalf of [defendant's expert company] Salem Engineering Inc."); *Perry v. United States of

America*, No. 96-cv-2038, 1997 U.S. Dist. LEXIS 23875, at *9-11 (N.D. Tex. Feb. 4, 1997)

(finding that plaintiff's attempt to depose defendant's expert was premature because defendant

had yet to designate his experts).

      Unlike the cases above, Defendants are not attempting to specifically depose Plaintiffs'

expert nor are they seeking expert testimony.  Instead, Defendants are seeking to depose the

"person(s) most knowledgeable" on the factual non-expert issue of Plaintiffs' model data system.

In fact, it is Plaintiffs that are alleging that Mr. Nickel is the most appropriate individual to

testify on the noticed Topics.  Thus, it would be unfair to allow Plaintiffs to avoid the noticed

deposition on non-expert topics by simply asserting that their purported expert happens to be the

most knowledgeable individual on these issues.  As a result, a protective order is not warranted

because Defendants are not seeking expert testimony.

      3.    <u>Plaintiffs' Argument That Defendants Have No Basis For Deposing Plaintiffs' Expert Twice Is Unavailing</u>

      Contrary to Plaintiffs' contention, Defendants have no intention of deposing Plaintiffs'

expert twice.  Indeed, as alluded to previously, the only reason that may result in Defendants

deposing Mr. Nickel twice will be that Plaintiffs considered Mr. Nickel the person most

knowledgeable concerning the factual issues identified in Defendants' Rule 30(b)(1) deposition

notice and he subsequently provides expert analysis.  Notably, a first deposition has not been

taken nor has a second deposition been scheduled.  *ICE Corp. v. Hamilton Sundstrand Corp.*,

No. 05-4135, 2007 U.S. Dist. LEXIS 41390, at *11 (D. Kan. June 6, 2007) (finding that

defendants' request for a protective order was not proper where the plaintiff had not yet taken an initial deposition nor scheduled a second deposition).

This Court has repeatedly held that it "will generally not require a deponent to appear for a second deposition absent some showing of a need or good reason for doing so." *Cuthbertson v. Excel Indus., Inc.*,179 F.R.D. 599, 604-05 (D. Kan. 1998) (*quoting Sentry Insurance v. Shivers*, 164 F.R.D. 255, 256 (D. Kan. 1996)).  Nevertheless, "[p]ursuant to Rule 30(a)(2), this Court must grant leave to take a second deposition to the extent consistent with Rule 26(b)(2)." *Foreclosure Mgmt. Co. v. Asset Mgmt. Holdings, LLC*, No. 07-2388, 2008 U.S. Dist. LEXIS 75489, * 10-11 (D. Kan. Aug. 21, 2008) (*citing* Fed. R. Civ. P. 30(a)(2)) (noting that the "Court has considerable discretion in deciding whether to grant a party leave to conduct a second deposition of the same deponent," but "[t]he exercise of that discretion must, however, be guided by the principles set forth in Rule 26(b)(2)").[5]  Indeed, a court "must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." *Id*. at *11 (*quoting* Fed. R. Civ. P. 26 advisory committee's note to 1983 amendments).

In this case, need and good reason would exist to depose Mr. Nickel twice if Plaintiffs decide that he is the most knowledgeable individual on the non-expert deposition topics concerning the model data system and he is Plaintiffs' expert providing expert analysis.  First, need and good reason would exist because both distinct (not cumulative or duplicative) sets of

---

[5] Rule 26(b)(2)(C) only requires a court to limit discovery when: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. *Foreclosure Mgmt. Co.*, 2008 U.S. Dist. LEXIS 75489, at *10-11 (*citing* Fed. R. Civ. P. 26(b)(2)(C)).

information – factual testimony regarding the model data system and expert data opinion – are highly relevant and pertinent to this case.  *Foreclosure Mgmt. Co.*, 2008 U.S. Dist. LEXIS 75489, at *21-22 (holding that a second deposition of the same individual was warranted because the testimony sought "would not be unreasonably cumulative or duplicative and that the likely benefit of the testimony outweighs any burden or expense the deposition might impose on [the opposing party]").  Not allowing Defendants the opportunity to gather adequate and timely deposition testimony on both distinct topics would be detrimental to Defendants' case.  Second, as stated above, there would also be good reason not to permit Plaintiffs to avoid the noticed deposition on the factual topics by simply claiming that their purported expert happens to be the most knowledgeable individual on these issues.  Indeed, even if Mr. Nickel is the most knowledgeable individual on the noticed topics, it is a direct and sole result of Plaintiffs choosing to have Mr. Nickel perform discoverable non-expert work.  (*See* Doc. No. 305 at 3, 7-9, 12, 15-16.)  Accordingly, the fact that Mr. Nickel may be deposed twice is not a sufficient reason to quash Defendants' noticed deposition.

## C.   ALLOWING THE DEPOSITION TO PROCEED AS SCHEDULED WILL NOT PREJUDICE PLAINTIFFS BUT PREVENTING IT WILL PREJUDICE DEFENDANTS

Plaintiffs further argue that "Defendants will not be prejudiced if the Court grants Plaintiffs' motion and quashes the deposition," but allowing the deposition to proceed will prejudice Plaintiffs because it "will further delay Mr. Nickel's analysis" and "will cause Plaintiffs to incur unnecessary costs associated with two duplicative depositions of their expert."[6] (Doc. No. 312 at 15.)  In support of their argument, Plaintiffs allege that the "only reason for

---

[6] Plaintiffs also invoke the attorney work-product doctrine by stating that "Rule 26(b)(4)(B) specifically protects draft reports or disclosures regardless of the form in which they are recorded."  (Doc. No. 312 at 16.)  Since Defendants are seeking only factual information and are not seeking any draft reports or expert opinion, however, the work-product doctrine does not apply, especially where Plaintiffs have disclosed and used the information in dispute as they have here.  (*See, e.g.*, testimony, the diagrams, and Mr. Nickel's non-expert declaration.)

seeking a deposition on topics pertaining to Plaintiffs' forthcoming expert report at this time is to provide Defendants with a preview of the report and the expert's work to date, both of which are unfinished." (*Id.*) This is simply not true. In actuality, Defendants have no intention to seek a preview of Plaintiffs' expert report. Specifically, whereas Plaintiffs' expert report will contain analysis and conclusions regarding the data that is put into the model data system, Defendants' noticed deposition only seeks factual information regarding how the model data system was created and how it functions (Defendants are not seeking expert opinion). As noted above, this information is the same information that Plaintiffs obtained regarding Sprint's data systems through their Rule 30(b)(6) depositions.

Defendants seek the factual testimony outlined in Topics 1-5 to assess potential decertification in this case. As noted previously, in its October 11, 2011 Order regarding Plaintiffs' trial plan, this Court stated that "Defendants' argument that plaintiffs' trial plan is insufficient to support a class certification finding would be more appropriately raised in a motion to decertify the class." (Doc. No. 257.) Thus, the Court invited Defendants to file a decertification motion if they wished to contest Plaintiffs' trial plan. Since Plaintiffs have consistently made representations that they plan to use the model data system to prove their case, it is apparent that factual deposition testimony regarding Plaintiffs' model data system and its mechanical process (*e.g.*, creation, functions, etc.) is integral to determine the adequacy of Plaintiffs' trial plan and evaluate the bases for Plaintiffs' "class-wide" allegations. As a result, this factual information is crucial to Defendants in determining their potential decertification strategy and failure to obtain this factual information until after Mr. Nickel provides his report will result in unnecessary delay and prejudice to Defendants.

On the other hand, permitting Defendants' noticed deposition to proceed will not prejudice Plaintiffs. First, allowing the deposition to proceed should not result in significant further delay to Mr. Nickel's analysis because Defendants are seeking certain factual information regarding Plaintiffs' model data system that, based on Plaintiffs' representations to this Court and Defendants throughout this litigation (as outlined in the Background section above), they appear to already possess. For example, Defendants should be entitled to question Plaintiffs about the model data system diagram that they have shown at various depositions and Mr. Nickel's non-expert declaration. Second, the fact that considerable expense has been expended by both parties in this case also militates against a finding of prejudice to Plaintiffs. *See ICE Corp.*, 2007 U.S. Dist. LEXIS 41390, at *14 (ruling that, "in light of the expense and energy expended by both parties and their counsel in this litigation, the court is not persuaded that a second deposition of [the expert] would prove particularly burdensome"). Therefore, Plaintiffs cannot show that allowing the deposition to proceed will prejudice Plaintiffs and that preventing it will not prejudice Defendants.

Nevertheless, to the extent that this Court determines that allowing the deposition to proceed will significantly take away from Mr. Nickel's time to prepare his report, Defendants request that its Rule 30(b)(1) factual deposition be permitted after Plaintiffs' expert report is issued and that such a Rule 30(b)(1) deposition does not prevent the expert deposition that will be noticed as to Plaintiff's expert and his report.

## IV.   <u>CONCLUSION</u>

Accordingly, Defendants respectfully request that this Court deny Plaintiffs' Motion for Protective Order Quashing Notice of Deposition.

Respectfully submitted this 4th day of April, 2012.


/s/ Michael L. Blumenthal
**SEYFERTH, BLUMENTHAL &**
**HARRIS LLC**
Michael L. Blumenthal
KS Bar No.18582
300 Wyandotte Street, Suite 430
Kansas City, Missouri 64105
Tel: 816-756-0700
Fax:  816-756-3700


/s/ Elise M. Bloom
**PROSKAUER ROSE LLP**
Elise M. Bloom*
Eleven Times Square
New York, New York 10036
Tel: 212-969-3410
Fax: 212-969-2900
(*Admitted *Pro Hac Vice*)

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of April, 2012, the foregoing **Defendants'**

**Opposition to Plaintiffs' Motion for Protective Order Quashing Notice of Deposition** was

electronically filed with the Clerk of Court using the CM/ECF system, which will automatically

send email notification of such filing to the following attorneys of record:

> Stueve Siegel Hanson LLP
> George A. Hanson
> 460 Nichols Road, Suite 200
> Kansas City, Missouri 64112
>
> Nichols Kaster, PLLP
> Donald H. Nichols
> Paul J. Lukas
> Michele R. Fisher
> 4600 IDS Center, 80 South 8th Street
> Minneapolis, Minnesota 55402

> Respectfully submitted,
>
> /s/ Michael L. Blumenthal
> Michael L. Blumenthal
> Kansas Bar No. 18582
> SEYFERTH, BLUMENTHAL & HARRIS LLC
> 300 Wyandotte Street, Suite 430
> Kansas City, Missouri 64105
> Telephone: 816-756-0700
> Facsimile:  816-756-3700
> E-mail:  mike@sbhlaw.com