# EXHIBIT B

MARK MCKINNEY   10/14/2011

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROXIE SIBLEY, et al.,           )
                                )
         Plaintiffs,            )
                                )  Case No. 08-CV-2063
         vs.                    )  KHV/JPO
                                )
SPRINT NEXTEL                   )
CORPORATION, et al.,            )
                                )
         Defendants,            )
_____ )


VIDEOTAPED 30(b)(6) DEPOSITION OF MARK McKINNEY,

produced, sworn, and examined on Friday, the 14th day of October, 2011, between the hours of 8:00 o'clock in the forenoon and 6:00 o'clock in the afternoon of that day at the law offices of Stueve Siegel Hanson, LLP, 460 Nichols Road, Suite 200, in the City of Kansas City, County of Jackson, State of Missouri, before:


CASSANDRA L. SAVAGE, CCR, RPR, CRR, CLR
Registered Professional Reporter


a Certified Shorthand Reporter within and for the State of Kansas and a Certified Court Reporter within and for the State of Missouri.

Taken on behalf of Plaintiffs pursuant to Notice to Take Depositions.

```
 1      A.      Sure.
 2      Q.      Okay.  Have you ever been convicted of a
 3   crime?
 4      A.      No.
 5      Q.      Okay.  You have been identified by Sprint
 6   as what is called a corporate designee pursuant to a
 7   Federal Rule 30(b)(6) Deposition Notice, do you
 8   understand that you're here speaking on behalf of
 9   the company in response to that notice?
10      A.      I do.
11      Q.      Okay.  And the topic articulated in that
12   30(b)(6) deposition notice is topic number three.
13   The topic is, "Sprint's Retail Sales Channel's
14   overall process, in general terms, of what happens
15   to transactions from the point of sale and order
16   entry through the payment of commissions, and what
17   systems and departments are involved in that process
18   from August 12, 2005, to September 30th of 2009."
19              We had Ms. Burrows [sic] testify
20   previously as to part of this topic.  She testified
21   on October 5th of this year about what happens to
22   transactions in the point of sale and order entry
23   processes, but not beyond those systems, so it's my
24   understanding that you're being presented here today
25   to talk about what happens to transactions after the
```

```
 1                    MS. FISHER:  Okay.
 2                    MS. EICHBERGER:  You can ask him what
 3     Care does, but that's about it.
 4                    MS. FISHER:  And I already know what
 5     Care does, so let's mark it as Exhibit No. 1.
 6             (Whereupon, McKINNEY Deposition Exhibit No. 1
 7                was marked for identification by the
 8                reporter.)
 9         Q.    (BY MS. FISHER)  All right.  You're
10     looking at what has been marked as Exhibit No. 1.
11     This is a diagram that I know you just reviewed with
12     your attorney, so you've seen before.  It's a
13     diagram that we have drafted based on the
14     information we've received in this case so far.
15             So I want to ask you some specific
16     questions about the -- your understanding with
17     respect to how commissions flow through this system
18     that we've diagrammed here for retail employees.
19             We already talked, like I mentioned
20     earlier, to Ms. Burrows [sic] about how information
21     got into the RMS system.  And you've confirmed that
22     information flowed out of the RMS system related to
23     retail reps' transactions; is that correct?
24         A.    That's correct.
25         Q.    Okay.  And on this diagram we have the RMS
```

```
 1   with respect to retail, as far as you know?
 2        A.   I would not have separated out a box for
 3   it.  At this level that you have is somewhat of a
 4   topological view, and the DataMart should have been
 5   encompassed within a G7L TrueComp instance, so for
 6   me, that box doesn't make sense.
 7        Q.   Okay.  So you would have G7L TrueComp and
 8   G7L DataMart all combined, but you say they don't
 9   apply to retail anyway, so they really shouldn't be
10   on our retail diagram?
11        A.   Correct.
12        Q.   Okay.
13        A.   Yeah.
14        Q.   That helps us get rid of some boxes.
15        A.   Yeah, I would remove both of those.
16        Q.   Okay.  And then we also have the
17   COS-TrueComp box that contains the information I was
18   asking you about earlier that's been conveyed to us
19   by Sprint.  Do you see anything wrong with our
20   listing of what is contained within COS-TrueComp as
21   it relates to retail employees?
22        A.   Directionally, this looks correct to me.
23        Q.   Okay.  We also have a feed out of
24   COS-TrueComp into COS feed files DataMart, do you
25   know what that is?
```

```
                                                            122
```

1                    C E R T I F I C A T E

2

3           I, CASSANDRA L. SAVAGE, a Certified Court

4   Reporter within and for the State of Missouri,

5   hereby certify that the within-named witness was

6   first duly sworn to testify the truth, and that the

7   deposition by said witness was given in response to

8   the questions propounded, as herein set forth, was

9   first taken in machine shorthand by me and

10  afterwards reduced to writing under my direction and

11  supervision, and is a true and correct record of the

12  testimony given by the witness.

13          I further certify that I am not a relative or

14  employee or attorney or counsel of any of the

15  parties, or relative or employee of such attorneys

16  or counsel, or financially interested in the action.

17          WITNESS my hand and official seal at

18  Kansas City, Jackson County, Missouri, this 16th day

19  of October, 2011.

20

21          _____

22          CASSANDRA L. SAVAGE, CCR, RPR, CRR, CLR

23                  Certified Court Reporter

24  (MO CCR No. 1272, KS CCR No. 1623)

25