**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ROXIE SIBLEY, JEANNE NOEL, ERNESTO BENNETT, JAMIE WILLIAMS, GREG ST. JULIEN, TRACIE HERNANDEZ, JOHN JASINSKI, JAY RICHIE, and TEISHA KING, individually and on behalf of a class of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SPRINT NEXTEL CORPORATION, a Kansas corporation, <br><br> and <br><br> SPRINT/UNITED MANAGEMENT COMPANY, a Kansas corporation, <br><br> Defendants. | Case No. 02:08-CV-02063-KHV/JPO |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF**
**MOTION FOR PROTECTIVE ORDER QUASHING NOTICE OF DEPOSITION**

**INTRODUCTION**

Currently, the parties' experts are deep into their analyses of the commissions-related data produced by Defendants to determine liability and damages due to the class. According to the Fourth Amended Scheduling Order, expert disclosures and reports are due on May 21, 2012. (ECF No. 227 at 4.) Defendants are now attempting to depose Plaintiffs' expert before the deadline for expert disclosures, under the guise of a Rule 30(b)(1) deposition notice. The topics set forth in Defendants' deposition notice seek one thing: an inquiry into how Plaintiffs' expert is calculating damages before he is finished. Defendants are attempting to avoid the Federal Rules of Civil Procedure governing the timing of expert depositions by incorrectly characterizing the

testimony they are seeking as "factual non-expert discoverable testimony." (ECF No. 314 at 2.) The Court should reject Defendants' efforts to thwart the Rules and quash their notice of deposition.

Plaintiffs have retained Nile Nickel of Balance Engines as their expert to process and analyze the class-wide commissions data and provide a damages calculation. Due to the volume of data involved, he has developed a computer system to perform the calculations for the class, and his development of this system is ongoing. Mr. Nickel continues to refine his processes and methodology and will provide his expert report detailing, among other things, how he handled and processed the data and calculated damages. Defendants' attempt to distinguish Mr. Nickel's automated system from the results it will generate is a distinction without a difference—the system is part and parcel of Mr. Nickel's forthcoming expert report. Indeed, the system reflects his methodology. Moreover, the simple fact that Mr. Nickel is using an automated system to perform his expert analysis does not make the details about the development of that system discoverable in a deposition before he is finished. To the contrary, the Federal Rules of Civil Procedure protect draft reports, *regardless of form*, and prohibit parties from deposing experts before they issue their expert reports. Fed. R. Civ. P. 26(b)(4)(A) and (B).

Defendants will have the opportunity to depose Plaintiffs' expert on topics identified in their Rule 30(b)(1) deposition notice after Mr. Nickel issues his expert report and Defendants properly notice his deposition under the Rules.[1]  Complying with the Rules for expert

---

[1] When Defendants served their Rule 30(b)(1) deposition notice they were aware that Mr. Nickel is the one most knowledgeable on the topics identified. In fact, in the notice they specifically mention him by name and seek the factual basis of a declaration he provided. Besides the fact that this deposition notice is premature, the notice is also invalid. A party cannot take the deposition of a non-party without a subpoena. Fed. R. Civ. P. 45; Karakis v. Foreva Jens Inc., No. 08-61470-CIV-COHN, 2009 WL 113456, at *1 (S.D. Fla. Jan. 19, 2009) (rejecting 30(b)(1)

depositions will not prejudice Defendants, and Defendants have shown no possible prejudice. Accordingly, Plaintiffs respectfully request that the Court issue a protective order and quash Defendants' notice of deposition.

## ARGUMENT

The Federal Rules of Civil Procedure are clear as to the timing of expert depositions. The expert's "deposition may be conducted only *after* the report is provided." Fed. R. Civ. P. 26(b)(4)(A) (emphasis added). The advisory committee notes explain that this rule protects the parties from one side benefitting unduly from the other side's preparation. Fed. R. Civ. P. 26(b), 1970 advisory committee notes. They also explain the judicial economy behind the rule, namely, that review of a completed expert report prior to an expert deposition may potentially eliminate the need for the deposition or at least reduce the length of the deposition. Id., 1993 advisory committee notes. The Federal Rules of Civil Procedure also protect "drafts of any report or disclosure under Rule 26(a)(2), regardless of the form in which the draft is recorded." Fed. R. Civ. P. 26(b)(4)(B).

This case involves one commissions system that failed to calculate commissions accurately for an entire class of retail employees. As stated above, due to the nature and volume of data and the complexity of Defendants' commission plans, Plaintiffs hired Mr. Nickel, a commissions reconciliation expert, to assist them with their case. Plaintiffs retained Mr. Nickel to help them understand what data they needed from Defendants' various systems to calculate damages and prove their case, and also to import, process and analyze the data to determine the damages due to the class. It is impossible to analyze the massive data manually, so Mr. Nickel is

---

deposition notice because it was premature, as it sought expert testimony prior to the issuance of the expert report, and explaining that a subpoena is required to depose a non-party).

3

developing an automated computer system to aid him in the process of computing damages and issuing his report.

Defendants analogize their deposition notice to Plaintiffs' Rule 30(b)(6) depositions of Defendants' corporate designees regarding Defendants' commission-related systems, but the analogy is wholly flawed. Through their Rule 30(b)(6) depositions, Plaintiffs sought information about Defendants' pre-existing commissions-related systems and the data those systems process—the heart of this dispute—to enable Plaintiffs' expert to develop a system for analyzing that data. The historical, factual information Plaintiffs sought was not created or produced by Defendants' experts. In fact, Defendants have hired their own expert to analyze the data. (ECF No. 282-2.) In contrast, Mr. Nickel is developing a system to analyze Defendants' data for his expert report, and that system reflects his methodology for analyzing damages. Defendants' deposition notice seeks information about Mr. Nickel's system. Defendants' deposition notice is not the equivalent of a Rule 30(b)(6) notice because it clearly seeks information about Mr. Nickel's work as an expert, performed on behalf of Plaintiffs for the purpose of this litigation.

Topics 1-3 of Defendants' deposition notice seek information about the "automated system," or "mechanical process" Plaintiffs are developing to analyze Defendants' data, calculate damages, and produce their expert report. These topics seek information about the work Mr. Nickel is currently performing, and has not yet finished—information that he will provide in his expert report. Defendants' argument for taking Mr. Nickel's deposition now rather than properly waiting until after he issues his report, is that the information sought purportedly is not a "working report," but rather is what Defendants have labeled, "non-expert factually discoverable work." (ECF No. 314 at 2-3.) To the contrary, Defendants are

prematurely seeking details about precisely what Plaintiffs hired Mr. Nickel to do—analyze the data and determine commissions due—before the Rules allow Defendants to do so.

Furthermore, this information is work product, and the Federal Rules of Civil Procedure protect it from disclosure. To find otherwise would subject damages experts to early and duplicative depositions about how they are calculating damages before they have completed their work and issued their final reports. It would also permit a party to effectively obtain draft versions of their opponent's processes and analyses for calculating damages. The Rules specifically protect parties from having to disclose the information Defendants are currently seeking. See Fed. R. Civ. P. 26(b)(4)(A) and (B); Duncan v. Chevron U.S.A., Inc., No. CIV. A. 10-0298, 2011 WL 2457652, at *2-3 (E. D. La June 16, 2011) (finding deposition notice premature because the deadline for expert reports had not passed and rejecting argument that the notice did not seek reports or opinions but rather only sought data, measurements, and calculations.)

With respect to topic 4, Defendants seek to depose Mr. Nickel regarding a diagram he created for Plaintiffs, entitled "Sprint's Retail Commission System." As Defendants should know, Plaintiffs created and used this diagram while taking depositions in an effort to understand *Defendants'* commissions system. Moreover, Plaintiffs revised it as they learned more about *Defendants'* systems. The diagram is labeled with the names of *Defendants'* commissions-related systems. This is not a diagram reflecting the computer systems Plaintiffs, or their experts, are using to calculate damages, as Defendants claim. This is obvious from Plaintiffs' counsel's questioning. For example:

> This is a diagram that reflects our understanding of some of the pieces of the Sprint commission system, and I want to ask you about the information on this diagram, and I want to understand from you if you see any mistakes or if you see

5

> any errors, if there's anything that appears inaccurate or missing as we go through it.

(Ex. 1, Rassette Depo. at 31:15-21.)  Defendants' characterization of this diagram as descriptive of Mr. Nickel's automated system diagram is, at best, disingenuous.  Regardless, to the extent Mr. Nickel considered these diagrams in forming his opinions in his report, he will answer Defendants' questions about them during his expert deposition.

Finally, topic 5 seeks information about a declaration Mr. Nickel provided pursuant to Rule 56(d) summarizing how he plans to analyze the data for his expert report and briefly explaining how his analysis will differ from the analysis of Defendants' expert.  (See ECF 312, Ex. 5.)  Again, this topic relates directly to the expert report he will be issuing and inquiry into these matters should occur at his expert deposition, not pursuant to a Rule 30(b)(1) deposition notice.

Adhering to Rule 26 and the scheduling order will not prejudice Defendants.  Defendants cite their interest in moving to decertify the class as justification for conducting the deposition at this time, but the possibility of filing a decertification motion does not justify circumventing the Federal Rules of Civil Procedure governing expert discovery.  Indeed, Defendants argue in the alternative that they be allowed to proceed with their deposition on these topics after the parties make their expert disclosures.[2]  This does not comport with any need to conduct an early deposition, and further indicates that Defendants are really seeking two depositions of Plaintiffs' expert.

---

[2] Implicit in the offer to hold the deposition after Plaintiffs' expert disclosures are made is the concession that the information sought is the same as that which will be disclosed by Plaintiffs' expert.

**CONCLUSION**

The Federal Rules of Civil Procedure specifically protect discovery, at this time, of the information Defendants are seeking in their Rule 30(b)(1) deposition notice. Defendants must wait until after Plaintiffs make their expert disclosures and produce their expert reports to inquire about the topics identified in their deposition notice, and then, only upon properly noticing the deposition as an expert deposition. Accordingly, Plaintiffs request that the Court grant their motion for a protective order and quash the subpoena.

Dated:  April 16, 2012                                          **STUEVE SIEGEL HANSON LLP**

/s/Ashlea G. Schwarz
George A. Hanson, KS Bar No. 16805
Email: hanson@stuevesiegel.com
Ashlea G. Schwarz, KS Bar No. 23491
Email: ashlea@stuevesiegel.com
Lee R. Anderson, KS Bar No. 22755
Email: anderson@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: (816) 714-7100
Fax: (816) 714-7101

**NICHOLS KASTER, PLLP**
/s/ Michele R. Fisher
Michele R. Fisher, MN Bar No. 303069*
Email: fisher@nka.com
Paul J. Lukas, MN Bar No. 22084X*
Email: lukas@nka.com
Charles G. Frohman, MN Bar No. 386695*
Email: frohman@nka.com
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: 612-256-3200
Fax: 612-215-6870
*admitted *pro hac vice*

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

  I hereby certify that on April 16, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send an email notification to the following attorneys of record:

Hunter Hughes
Rogers & Hardin
2700 International Tower,
Peachtree Center
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
hrh@rh-law.com

Joseph H. Knittig
3000 NW 50th St.
Kansas City, MO 64150
816-547-1495
joek@c3missions.org

Steven D. Hurd
Jacqueline M. Dorn
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
jdorn@proskauer.com
shurd@proskauer.com

Nicole A. Eichberger
Proskauer Rose LLP
650 Poydras Street, Suite 1800
New Orleans, Louisiana 70130
neichberger@proskauer.com

Thomas Mew
Rogers & Hardin
2700 International Tower,
Peachtree Center
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
TMew@rh-law.com

Mark W. Batten
Proskauer Rose LLP
One International Place
Boston, Massachusetts  02110
mbatten@proskauer.com

Elise M. Bloom
Gregory Rasin
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
ebloom@proskauer.com
grasin@proskauer.com

Michael L. Blumenthal
Seyferth, Blumenthal & Harris LLC
300 Wyandotte, Suite 430
Kansas City, Missouri 64104
mike@sbhlaw.com

           */s/ Ashlea G. Schwarz*
           Attorney for Plaintiffs