## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROXIE SIBLEY, JEANNE NOEL, ERNESTO BENNETT, JAMIE WILLIAMS, GREG ST. JULIEN, TRACIE HERNANDEZ, JOHN JASINSKI, JAY RICHIE, and TEISHA KING, individually and on behalf of a class of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SPRINT NEXTEL CORPORATION, a Kansas corporation, <br><br> and <br><br> SPRINT/UNITED MANAGEMENT COMPANY, a Kansas corporation, <br><br> Defendants. | Case No. 02:08-CV-02063-KHV/JPO |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO MODIFY THE COURT'S FOURTH AMENDED SCHEDULING ORDER

Plaintiffs request that the Court modify the schedule set forth in the June 13, 2011 Fourth Amended Scheduling Order (ECF No. 227) to provide Plaintiffs' experts with sixty-five days of additional time to complete their analysis of the classwide commissions-related data and provide their expert report. Defendants do not object to the extension of deadlines sought by Plaintiffs. Plaintiffs' request is made for good cause and for no improper purpose, and Plaintiffs' proposed modifications will not interfere with the current trial date. A summary of the current deadlines and Plaintiffs' proposed modifications follows.

| SUMMARY OF DEADLINES AND SETTINGS | | |
|---|---|---|
| **Event** | **Current Date** | **Proposed Date** |
| Parties to confirm data necessary to perform commission analysis for entire class | July 11, 2011 | N/A |
| Defendants to produce the data the parties agree is necessary for the entire class | December 23, 2011 | N/A |
| Expert disclosures and reports | May 21, 2012 | July 25, 2012 |
| Rebuttal expert disclosures and reports | September 21, 2012 | November 25, 2012 |
| All discovery completed other than that necessary for responses to rebuttal reports. | November 21, 2012 | November 21, 2012 |
| All discovery for responses to rebuttal reports completed | N/A | January 21, 2013 |
| Deadline for response to a rebuttal report, provided that the party that produced the rebuttal report did not produce a prior expert report | November 30, 2012 | January 30, 2013 |
| Proposed pretrial order due | January 4, 2013 | March 4, 2013 |
| Final pretrial conference | January 14, 2013, at 9:00 a.m. | March 14, 2013 |
| All other potentially dispositive motions (e.g., summary judgment) | January 30, 2013 | March 25, 2013 |
| Motions challenging the admissibility of expert testimony | January 30, 2012 | March 25, 2013 |
| Trial | June 13, 2013, at 9:30 a.m. | June 13, 2013, at 9:30 a.m. |

## I.      LEGAL STANDARD FOR EXTENSION OF TIME.

Local Rule 6.1(a) governs motions for extensions of time, and requires that the requesting party must show:

> (1) whether there has been prior consultation with other parties and the views of other parties;
> (2) the date when the act was first due;
> (3) if prior extensions have been granted, the number of extensions granted and the date of expiration of the last extension; and
> (4) the cause for the requested extension.

D. Kan. Rule 6.1(a).  Parties must file the motion before the specified time expires.  Id.  The Court will grant a motion for extension for good cause shown.  See, e.g., Horizon Holdings, L.L.C., v. Genmar Holdings, Inc., 01–2193–JWL, 2002 WL 1828127, at *1 (D. Kan. May 30, 2002) (granting motion for extension of expert disclosures and extending discovery deadline for

limited purpose of deposing witnesses regarding the disclosures); <u>Sperry v. Werholtz</u>, 04-3125-CM, 2008 WL 941634, at *2 (D. Kan. Apr. 7, 2008) (noting that the excusable neglect standard for a motion filed after the expiration of the specified time "is higher, i.e., harder to meet, than the good cause standard applied when a motion for extension of time is filed before the expiration of the time period at issue.").

## II.   PREVIOUS REVISIONS TO THE SCHEDULING ORDER.

This is a nationwide class action in which Plaintiffs allege Defendants did not pay them all their commissions due.  Because of the very large volume of data at issue, on January 21, 2009 the Court entered a Scheduling Order that provided for a three-stage discovery process for the production of sales and commission related data.  (ECF No. 114.)  At Stage 1 of that process, Defendants produced to Plaintiffs commissions-related data the parties agreed was necessary for the six named Plaintiffs who held non-supervisory positions.  (<u>Id.</u> at ¶ 2.e.)  At Stage 2, Plaintiffs specified what additional data they believed they would need to perform their analysis for the entire class.  (<u>Id.</u> ¶ 2.f.)  At Stage 3, Defendants were to produce the data the parties agreed was necessary for the entire class.  (<u>Id.</u> ¶ 2.g.)

On July 13, 2009, Plaintiffs served their Stage 2 demand on Defendants.  That Stage 2 demand requested a substantial production of data, and asked numerous questions regarding Defendants' computer systems and data sets.

In response, Defendants produced a substantial amount of technical information regarding their computer systems and data sets to Plaintiffs, so the parties could attempt to reach agreement on what would be included in the Stage 3 production.  Moreover, the parties were working together to try to reach agreement on the queries that Defendants would use to collect the data and engaging in discovery related to Defendants' systems.

As a result of Plaintiffs' continued efforts to become educated on Defendants' systems and Defendants' cooperation in providing that information in order to try to reach agreement on the Stage 3 production, the parties requested that the Court revise the deadline for Defendants' Stage 3 production from September 21, 2009 to February 15, 2010.  (ECF No. 162.)  The Court granted that request and issued its Second Amended Scheduling Order.  (ECF No. 163.)

The Court, in its Third Amended Scheduling Order, subsequently extended that deadline, again at the parties' request, to June 15, 2010, so that the parties could continue to try to reach agreement on the class-wide data sets to be produced.  (ECF Nos. 193, 197.)

On April 19, 2010, at the request of the parties, the Court issued a stay of this matter to allow the parties explore whether they could agree to a plan to mediate this action.  (ECF No. 207.)  The parties agreed on a mediation plan, and the Court subsequently continued the stay on several occasions while the parties mediated.  (ECF Nos. 209, 211, 213.)

The parties were unable to resolve this action through mediation.  The efforts the parties made during mediation between October 2010 and January 2011 are summarized in the parties' Joint Motion to Further Stay Proceedings Pending Mediation, filed with the Court on January 11, 2011.  (ECF No. 212.)

On May 2, 2011, the Parties submitted their Joint Motion to Modify the Court's Amended Scheduling Order and To Request A Court Conference.  (ECF No. 221.)  On the same day, Defendants filed their Motion To Modify the Court's Amended Scheduling Order Regarding Class-Wide Discovery (ECF No. 222.)

On June 13, 2011, the Court issued the Fourth Amended Scheduling Order and therein denied Defendants' motion to modify the scheduling order.  (ECF No. 227.)

**III.     THE PARTIES MET AND CONFERRED ON THIS MATTER.**

Plaintiffs notified Defendants of their request for an extension of the deadlines for expert reports and their proposed revisions to the schedule on April 25, 2012.  Counsel for the parties met and conferred by telephone and email on April 26, 2012.  Defendants do not object to the extension of deadlines sought by Plaintiffs.

**IV.     PLAINTIFFS HAVE GOOD CAUSE TO EXTEND THE DEADLINE FOR EXPERT REPORTS.**

Good cause exists for Plaintiffs' requested extension because Plaintiffs' expert experienced a number of unexpected demands and delays that impeded his ability to analyze the Stage 3 data.

**A.     A Large Portion of the Stage 3 Data Was Corrupted and Had To Be Reproduced.**

Defendants produced the Stage 3 class-wide data on December 22 and 23, 2011.  Frohman Decl. ¶ 2.)  Upon receiving the data from Plaintiffs' counsel, Plaintiffs' expert identified a problem with the data produced on one of the hard drives.  (Id.)  Plaintiffs' expert was unable to verify that the large portion of Stage 3 data the hard drive contained matched the list of files detailing what data the hard drive should contain.  (Id.)  Plaintiffs notified Defendants of this issue on January 4, 2012.  (Id.)  The parties surmised that the hard drive was damaged in transit, and Defendants agreed to produce a new hard drive containing the data.  (Id.)  Defendants sent a replacement hard drive on January 6, 2012, received by Plaintiffs on January 9, 2012, that resolved the problem.  (Id.)  Plaintiffs made a copy of the hard drive and sent it to their expert on January 10, 2012, who received it the following day.  (Id.)

As a result of this issue, Plaintiffs' expert's work with the Stage 3 data was delayed until his receipt and verification of the second hard drive.  (Id.)

**B.**      **Plaintiffs Did Not Receive One of the Employee Identifiers Requested for the Class and Necessary for Their Analysis Until February 15, 2012.**

Pursuant to the parties' agreement, Defendants included a list of class members and their various employee identifiers in their Stage 3 production.  Plaintiffs previously moved to compel this information from Defendants.  (ECF Nos. 262, 263).  Plaintiffs later withdrew the portion of their motion regarding employee identifiers based on Defendants' agreement to produce the information.  (ECF No. 278.)

One of the identifiers Plaintiffs sought in their motion to compel is "EMPL_BA_ID." (See ECF No. 263 at 28-29.)  Defendants did not include the EMPL_BA_ID identifier on the list they produced.  (Frohman Decl. ¶ 3.)   During the mediation, Defendants provided these identifiers at Plaintiffs' request for the sample set of class members whose transactions the parties analyzed.  (Id.)  Defendants included this identifier in their initial analyses of Plaintiffs' damages, filed in opposition to Plaintiffs' motion for class certification.  (ECF No. 36; see Ex. 1.[1])  It appears that Defendants' expert also relied on an alias of the EMPL_BA_ID identifier in her analysis.  Defendants' expert stated in her report that "The named plaintiff POS and Walkin Transactions were identified using the sales rep id field, which identifies the id of the person who made the sale . . . ."  (ECF No. 282-2 at 37 n.42.)  POS and Walkin Transactions refer to data in the RMS point of sale system.  (Frohman Decl. ¶ 4.)  Defendants produced diagrams of the RMS system in discovery that show that the sales rep identifier to which Defendants' expert referred is known as SREP_BA_ID, and that in the RMS POS and Walkin data, SREP_BA_ID is an alias of EMPL_BA_ID.  (Nickel Decl. ¶ 3.)

---

[1] Exhibit 1 contains two excerpts of Defendants' analysis of named Plaintiff Ernesto Bennett's commissions that Defendants filed in opposition to Plaintiffs' motion for class certification.  The analysis was attached as Exhibit A to the declaration of Stacey Franzen.

After searching the voluminous Stage 3 data production to ensure EMPL_BA_ID information for class members was not produced, Plaintiffs requested that information on January 5, 2012.  (Frohman Decl. ¶ 5.)  The parties subsequently met and conferred on this matter, and Plaintiffs repeated their request on January 20, 2012.  (<u>Id.</u>)  Plaintiffs advised Defendants that this issue was delaying Plaintiffs' expert analysis.  (<u>Id.</u>) Defendants produced this information for the class members on February 15, 2012.  (<u>Id.</u>)

The EMPL_BA_ID identifier plays a critical role in Plaintiffs' expert analysis of commissions due to the class.  (Frohman Decl. ¶ 6.)  One of the first steps in Plaintiffs' expert's process is to segregate and aggregate Defendants' massive point of sale RMS data by employee—all other steps in the analysis follow this initial work.  (<u>Id.</u>)  The employee identifier he is using to accomplish this is EMPL_BA_ID, or its alias, SREP_BA_ID.  (<u>Id.</u>)  The delay in receiving this data resulted in a day for day setback to Plaintiffs' expert analysis.  (<u>Id.</u>)

### C.    Plaintiffs' Response to Motion for Summary Judgment and Expert Analysis Required Substantial Input from Plaintiffs' Expert.

The same day Defendants began producing the Stage 3 data, Defendants filed their own expert report analyzing the data for the named Plaintiffs (ECF No. 282) and moved for summary judgment as to all Plaintiffs' claims on the basis of their expert report (ECF No. 284).  Their motion included a very technical fact section spanning 36 pages and 208 numbered paragraphs.

Plaintiffs filed a response to Defendants' motion based on Federal Rule of Civil Procedure 56(d).  (ECF No. 292.)  In the alternative, Plaintiffs argued that the Court should deny Defendants' motion because it simply confirms disputed issues of material fact.  (<u>Id.</u>)  Plaintiffs responded separately to Defendants' statement of facts.  (ECF No. 291.)

Due to Defendants' reliance on their expert report and their detailed recital of facts, Plaintiffs' response required significant involvement from their own expert.  (Frohman Decl. ¶

7.)  Plaintiffs' expert spent more than 80 hours reviewing, researching and commenting on Defendants' lengthy fact section and Defendants' expert report.  (Id.)  This is time that Plaintiffs' expert intended to spend analyzing the Stage 3 data in order to produce his expert report.  (Id.)

**D.     Unexpected Demands in the Related Class Action on Behalf of Defendant's Business Channel Employees Required Plaintiffs' Expert's Attention.**

Another class action is proceeding in this Court on behalf of employees in Defendants' business channel.  See Rick Harlow, et al. v. Sprint Nextel Corp., et al., (No. 08-cv-2222, D. Kan.).  The parties in this case and in the Harlow matter are represented by the same counsel. (Frohman Decl. ¶ 8.)  Given the unique demands of the data analysis in both cases, the parties are using the same expert resources in both cases.  (Id.)

Because of the time-consuming nature of these actions, coupled with the fact that the parties are employing the same resources to analyze the Harlow and Sibley data pulls, the parties proposed that the Harlow case trail the schedule in the Sibley matter.  (Id.)

The Harlow matter is following the same three-stage procedure for the production of class-wide commission-related data.  (Id. ¶ 9; see also Ex. 2 (Harlow Fourth Amended Sched. Order).)  At Stage 1 of that process, Defendants produced to the plaintiffs commissions-related data the parties agreed was necessary for the named plaintiffs who held non-supervisory positions.  (Frohman Decl. ¶ 9.)  At Stage 2, Plaintiffs specified what additional data they believed they would need to perform their analysis for the entire class.  (Id.)  At Stage 3, Defendants were to produce the data the parties agreed was necessary for the entire class.  (Id.) The parties completed Stages 1 and 2, and Defendants began producing the Stage 3 class-wide data on January 31, 2012.  (Id.)

As part of the three-stage process in both Harlow and Sibley, Defendants produced, for the plaintiffs' review and approval, the queries Defendants would use to collect the data, as well

as samples of the data and data dictionaries for each dataset.  (<u>Id.</u> ¶ 10.)  The plaintiffs approved the queries for the relevant datasets in <u>Harlow</u> during Stage 2 of the schedule.  (<u>Id.</u>)

On December 20, 2011, Defendants produced new queries for five of the Stage 3 datasets in <u>Harlow</u> and requested that the plaintiffs approve the queries by December 28, 2011.  (<u>Id.</u> ¶ 11.)  After conferring with Defendants, the plaintiffs responded on December 29, 2011, advising that the queries were significantly different than those they previously approved, that they referenced many additional fields that were not described in the existing data specifications, and that Defendants had not produced new sample data productions for the queries.  (<u>Id.</u>)  Defendants produced the requested information on January 31 and March 6, 2012.  (<u>Id.</u>)

Plaintiffs' expert had to turn his attention from the <u>Sibley</u> class analysis to review and comment on the revised queries, data samples, and data dictionaries produced in <u>Harlow</u>. Plaintiffs' expert spent approximately 70 hours reviewing these materials, time he was unable to spend on the <u>Sibley</u> analysis.  (Frohman Decl. ¶ 12.)  The parties continue to discuss these queries and the related information.  (<u>Id.</u>)

When determining the time necessary for the classwide analysis, Plaintiffs and their experts did not factor in the delay in receiving all the Stage 3 data due to a defective hard drive, the delay in Defendants' production of the EMPL_BA_ID identifiers, the need to analyze and respond to Defendants' preliminary expert report in a motion for summary judgment, or the need to review a number of Stage 3 queries from the <u>Harlow</u> matter after the Stage 3 deadline.  (<u>Id.</u> ¶ 13.)  These eventualities have set back Plaintiff's experts more than sixty-five days.  (Nickel Decl. ¶ 4.)

Good cause exists to extend the deadline for expert reports because these significant unforeseen delays have interfered with the ability of Plaintiffs' experts to analyze the Stage 3

data and complete their expert report.  Plaintiffs' experts cannot complete their expert report showing damages without the requested extension.  (Id. ¶ 4.)

Extending the deadline for expert disclosures and reports by 65 days will not impact the trial date for this matter.  Regarding discovery, it will require an extension only for the limited purpose of conducing discovery necessary for the parties' responses to rebuttal reports.

WHEREFORE, Plaintiffs respectfully request that the Court issue a Fifth Amended Scheduling Order with Plaintiffs' proposed deadlines.

Dated:  <u>April 27, 2012</u>

**STUEVE SIEGEL HANSON LLP**
<u>*/s/Ashlea G. Schwarz*</u>
Ashlea G. Schwarz, KS Bar No. 23491
Email: ashlea@stuevesiegel.com
George A. Hanson, KS Bar No. 16805
Email: hanson@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: (816) 714-7100
Fax: (816) 714-7101

**NICHOLS KASTER, PLLP**
<u>*/s/ Charles G. Frohman*</u>
Michele R. Fisher, MN Bar No. 303069*
Email: fisher@nka.com
Donald H. Nichols, MN Bar No. 78918*
Email: nichols@nka.com
Paul J. Lukas, MN Bar No. 22084X*
Email: lukas@nka.com
Charles G. Frohman, MN Bar No. 386695*
Email: frohman@nka.com
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 256-3200
Fax: (612) 215-6870
*admitted *pro hac vice*

ATTORNEYS FOR PLAINTIFFS

11

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on April 27, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification to the following attorneys of record:

Hunter Hughes
Rogers & Hardin
2700 International Tower,
Peachtree Center
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
hrh@rh-law.com

Thomas Mew
Rogers & Hardin
2700 International Tower,
Peachtree Center
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
TMew@rh-law.com

Joseph H. Knittig
3000 NW 50th St.
Kansas City, MO 64150
816-547-1495
joek@c3missions.org

Mark W. Batten
Proskauer Rose LLP
One International Place
Boston, Massachusetts  02110
mbatten@proskauer.com

Steven D. Hurd
Jacqueline M. Dorn
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
jdorn@proskauer.com
shurd@proskauer.com

Elise M. Bloom
Gregory Rasin
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
ebloom@proskauer.com
grasin@proskauer.com

Nicole A. Eichberger
Proskauer Rose LLP
650 Poydras Street, Suite 1800
New Orleans, Louisiana 70130
neichberger@proskauer.com

Michael L. Blumenthal
Seyferth, Blumenthal & Harris LLC
300 Wyandotte, Suite 430
Kansas City, Missouri 64104
mike@sbhlaw.com

Dated: <u>April 27, 2012</u>

         <u>/s/Ashlea G. Schwarz</u>
         Counsel for Plaintiffs