## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ROXIE SIBLEY, JEANNE NOEL,
ERNESTO BENNETT, JAMIE WILLIAMS,
GREG ST. JULIEN, TRACIE HERNANDEZ,
JOHN JASINSKI, JAY RICHIE, and TEISHA
KING, individually and on behalf of a class of
others similarly situated,

        Plaintiffs,

v.

SPRINT NEXTEL CORPORATION,
a Kansas corporation,

and

SPRINT/UNITED MANAGEMENT
COMPANY, a Kansas corporation,

        Defendants.

Case No. 02:08-CV-02063-KHV/JPO

## DECLARATION OF CHARLES G. FROHMAN

1.      My name is Charles G. Frohman and I am one of the attorneys representing the class in this action.

2.      Defendants produced the Stage 3 class-wide data on December 22 and 23, 2011. Upon receiving the data from Plaintiffs' counsel, Plaintiffs' expert identified a problem with the data produced on one of the hard drives. Niether Plaintiffs nor Plaintiffs' expert were able to verify that the large portion of Stage 3 data the hard drive contained matched the list of files detailing what data the hard drive should contain. Plaintiffs notified Defendants of this issue on January 4, 2012. The parties surmised that the hard drive was damaged in transit, and Defendants agreed to produce a new hard drive containing the data. Defendants sent a replacement hard drive on January 6, 2012, received by Plaintiffs on January 9, 2012, that

resolved the problem. Plaintiffs made a copy of the hard drive and sent it to their expert on January 10, 2012, who received it the following day. Plaintiffs' expert work with the stage 3 data was delayed until his receipt and verification of the second hard drive.

3.      Defendants did not include the EMPL_BA_ID identifier on the list of class members identifiers they produced with the Stage 3 data. During the mediation, Defendants provided these identifiers for the sample set of class members whose transactions the parties analyzed. It appears that Defendants' expert relied on an alias of the EMPL_BA_ID identifier her analysis. Defendants' expert stated that "The named plaintiff POS and Walkin Transactions were identified using the sales rep id field, which identifies the id of the person who made the sale . . . ." (ECF No. 282-2 at 37 n.42.)

4.      POS and Walkin Transactions refer to data in the RMS point of sale system. Defendants produced diagrams of the RMS system in discovery that show that the sales rep identifier to which Defendants' expert referred is known as SREP_BA_ID, and that in the RMS POS and Walkin data, SREP_BA_ID is an alias of EMPL_BA_ID.

5.      After searching the voluminous Stage 3 data production to ensure EMPL_BA_ID information for class members was not produced, Plaintiffs requested that information on January 5, 2012. The parties subsequently met and conferred on this matter, and Plaintiffs repeated their request on January 20, 2012. Plaintiffs advised Defendants that this issue was delaying Plaintiffs' expert analysis. Defendants produced this information for the class members on February 15, 2012.

6.      The EMPL_BA_ID identifier plays a critical role in Plaintiffs' expert's analysis of commissions due to the class. After importing the data, one of the first steps in Plaintiffs' expert's process is to segregate and aggregate Defendants' massive point of sale RMS data by

2

employee—all other steps in the analysis follow this initial work. The employee identifier he is using to accomplish this is EMPL_BA_ID, or its alias, SREP_BA_ID. The delay in receiving this data resulted in a day for day setback to Plaintiffs' expert analysis.

7.    Due to Defendants' reliance on their expert report and their detailed recital of facts, Plaintiffs' response required significant involvement from their own expert. Plaintiffs' expert spent more than 80 hours reviewing, researching and commenting on Defendants' lengthy fact section and Defendants' expert report. This is time that Plaintiffs' expert intended to spend analyzing the Stage 3 data in order to produce his expert report.

8.    Another class action is proceeding in this Court on behalf of employees in Defendants' business channel. See Rick Harlow, et al. v. Sprint Nextel Corp., et al., (No. 08-cv-2222, D. Kan.). The parties in this case and in the Harlow matter are represented by the same counsel. Given the unique demands of the data analysis in both cases, the parties are using the same expert resources in both cases. Because of the time-consuming nature of these actions, coupled with the fact that the parties are employing the same resources to analyze the Harlow and Sibley data pulls, the parties proposed that the Harlow case trail the schedule in the Sibley matter.

9.    The Harlow matter is following the same three-stage procedure for the production of class-wide commission-related data. At Stage 1 of that process, Defendants produced to the plaintiffs commissions-related data the parties agreed was necessary for the named plaintiffs who held non-supervisory positions. At Stage 2, Plaintiffs specified what additional data they believed they would need to perform their analysis for the entire class. At Stage 3, Defendants were to produce the data the parties agreed was necessary for the entire class. The parties

completed Stages 1 and 2, and Defendants began producing the Stage 3 class-wide data on January 31, 2012.

10.     As part of the three-stage process in both <u>Harlow</u> and <u>Sibley</u>, Defendants produced, for the plaintiffs' review and approval, the queries Defendants would use to collect the data, as well as samples of the data and data dictionaries for each dataset. The Plaintiffs approved the queries for the relevant datasets in <u>Harlow</u> during Stage 2 of the schedule.

11.     On December 20, 2011, Defendants produced new queries for five of the Stage 3 datasets in <u>Harlow</u> and requested that the plaintiffs approve the queries by December 28, 2011. After conferring with Defendants, the plaintiffs responded on December 29, 2011, advising that the queries were significantly different than those they previously approved, that they referenced many additional fields that were not described in the existing data specifications, and that Sprint had not produced new sample data productions for the queries. Defendants produced the requested information on January 31 and March 6, 2012.

12.     Plaintiffs' expert had to turn his attention from the <u>Sibley</u> class analysis to review and comment on the revised queries, data samples, and data dictionaries produced in <u>Harlow</u>. Plaintiffs' expert spent approximately 70 hours reviewing these materials, time he was unable to spend on the <u>Sibley</u> analysis. The parties continue to discuss these queries and the related information.

13.     Attached are true and correct copies of the following:

Exhibit 1:      Excerpts from Defendants' analysis of named Plaintiff Ernesto Bennett's commissions that Defendants filed in opposition to Plaintiffs' motion for class certification referencing the EMP_BA_ID identifier. The analysis was attached as Exhibit A to the declaration of Stacey Franzen.

Exhibit 2:      Fourth Amended Scheduling Order <u>Rick Harlow, et al. v. Sprint Nextel Corp., et al.,</u> (No. 08-cv-2222, D. Kan.).from

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: _04/27/2012_                    _Charles G. Frohman_
                                       Charles G. Frohman