**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

ROXIE SIBLEY, JEANNE NOEL,
ERNESTO BENNETT, JAMIE WILLIAMS,
GREG ST. JULIEN, TRACIE HERNANDEZ,
JOHN JASINSKI, JAY RICHIE, and TEISHA
KING, individually and on behalf of a class of
others similarly situated,

                Plaintiffs,          Case No. 02:08-CV-02063-KHV/JPO

v.

SPRINT NEXTEL CORPORATION,
a Kansas corporation,

and

SPRINT/UNITED MANAGEMENT
COMPANY, a Kansas corporation,

                Defendants.

## <u>PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE DEFENDANTS' EXPERT REPORT</u>

### <u>INTRODUCTION</u>

       Defendants provided an expert report that contains, as stated by Defendants, certain "opinions she will assert at trial and the data and information underlying those opinions." (Defs. Resp. 1, ECF. No. 369.)  However, the Federal Rules of Civil Procedure require more than just opinions and a massive data production.  Rule 26(a)(2)(B) requires that expert reports contain, among other things,:

        (i)  [The] opinions the witness will express and ***the basis and the reasons for them***, [and]

        (ii) ***The facts or data considered by the witness in forming them***.

Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii) (emphasis added).  Defendants ignore these additional

requirements and ask the Court to find that their expert's broad conclusions and massive data production, both without explanations, are sufficient to meet these requirements.  In the alternative, Defendants argue that, even if their report is deficient, there is little harm because Plaintiffs can simply engage in discovery to try to figure out how Defendants' expert calculated damages and reached her conclusions.

As set forth in detail below, both arguments must be rejected because of the prejudice Plaintiffs will experience if Defendants are not held to the standards required by the Rules. Defendants' failure to comply with the Rules is not justified or harmless.  There is no adequate remedy that will level the playing field at this late juncture of the case or that will not delay trial. As such, the appropriate remedy is to strike Defendants' expert report.

## ARGUMENT

**I)  PLAINTIFFS' CHALLENGE TO THORNTON'S REPORT IS PROPER UNDER BOTH THE FEDERAL RULES AND THE COURT'S SCHEDULING ORDER.**

Defendants first challenge Plaintiffs' motion on procedural grounds, arguing that Plaintiffs' objection to Janet Thornton's ("Thornton") expert report is a premature *Daubert*-attack.[1]  (Defs.' Resp. 7, 11, ECF No. 369.)   This argument misconstrues the civil and evidentiary standards and ignores the scheduling order's requirement that—when an expert report does not contain "all of the information required in Rule 26(a)(2)(B)"—the parties must object within eleven days and file any related motions pursuant to Local Rule 37.2.  (Am. Sch. Order ¶ 2.q, ECF No. 114.)  Rule 26(a)(2)(B) requires that expert reports contain:

(i)   a complete statement of all opinions the witness will express and the basis and the reasons for them;
(ii)   the facts or data considered by the witness in forming them;
(iii)   any exhibits that will be used to summarize or support them;

---

[1]  Plaintiffs' motion is not a *Daubert* challenge.   Plaintiffs are not presently challenging Thornton's qualifications, conclusions, or methodologies.  *Daubert* challenges will come later and in accordance with the deadlines for such motions set by the Court.

     (iv)   the witness's qualifications, including a list of all publications authored in the previous 10 years;

     (v)    a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

     (vi)   a statement of the compensation to be paid for the study or testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).  For the reasons set forth in Plaintiffs' opening memorandum, and as discussed herein, Thornton's report fails to satisfy these requirements.

Plaintiffs complied with the Court's requirements and the Local Rules by timely objecting and filing their motion to strike Thornton's report because of its Rule 26(a)(2)(B) deficiencies.  Objecting to these deficiencies at this time is appropriate because Defendants' failure to fully comply with Rule 26(a)(2)(B) affects Plaintiffs' ability to prepare their rebuttal to Thornton's report, which is due on February 14, 2013.  (7th Am. Sch. Order 2, ECF No. 355.) Moreover, had Plaintiffs failed to object to the Thornton report deficiencies now, Defendants undoubtedly would have argued later that Plaintiffs waived their right to do so.

Thus, Defendants' argument that Plaintiffs' motion is premature must be rejected.

## II)      THORNTON'S REPORT DOES NOT SATISFY RULE 26.

### A)      Plaintiffs Should Not Have to Conduct Expert Discovery To Get Information Defendants Should Have Provided, Nor is There Time to Do So.

Defendants next attempt to justify the Rule 26 deficiencies in Thornton's report by arguing that disclosure is simply the *beginning* of a process and that Defendants can later satisfy the remaining requirements of Rule 26 through discovery.  (Defs.' Resp. 1–2, ECF No. 369 ("[D]isclosure is merely the beginning of th[e] process.").)  Apart from the fact that this appears to be a profound admission that Thornton's report is deficient, this argument ignores the purpose behind Rule 26(a)(2)(B) and the weight of the case law interpreting its requirements.

The Rule's advisory committee notes make clear that a submitted report cannot be "so sketchy and vague that it rarely dispense[s] with the need to depose the expert."  Fed. R. Civ. P.

26 advisory committee's note (1993).  The specific requirements of Rule 26(a)(2)(B) exist so that expert reports are sufficiently detailed so as to eliminate surprise and "unnecessary depositions."  *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996).

In *R.C. Olmstead, Inc. v. CU Interface, LLC*, the court rejected the argument that a party is obligated to depose an expert in order to clear up ambiguities in a report, explaining that such an argument "ignores the purposes for which Rule 26(a)(2)(B) exists—to avoid trial-by-surprise and to avoid wasting unnecessary resources."  657 F. Supp. 2d 905, 913 (N.D. Ohio 2008), *aff'd sub nom.* 606 F.2d 262 (6th Cir. 2010).  Similarly, in *Vision Center Northwest, LLC, v. Vision Value, LLC,* the court explained that "[a]llowing parties to cure a deficient report with later depositions would further undermine the primary goal of Rule 26(a)(2):  'to shorten or decrease the need for expert depositions.'"  No. 3:07-CV-183 RM, 2009 WL 529609, *1 (N.D. Ind. 2009).

Defendants cite *In re Cessna 208 Series Aircraft Products Liability Litig.*, 05-md-1721-KHV, 2008 WL 4937651 (D. Kan. Nov. 17, 2008) for the proposition that a report should not be stricken if there is time for a deposition to cure the defects.  The case does not support such a finding here.  *In re Cessna 208 Series Aircraft Products Liability Litig.* involved a motion to strike an untimely revised expert report, not a failure to provide a complete expert report as required by Rule 26(a)(2)(B).  In that case, this Court found that the revisions to the original report were "relatively minor" and were "simply correcting inaccuracies in the original report." *Id.* at *2.  The Court held that the opposing party would not be prejudiced if it did not strike the revised report because they could simply question the expert about the revisions at the continuation of his deposition.  *Id*.  The Court pointed out that the continued deposition would not impact the deadline for rebuttal reports or trial.  *Id*.

Here, in light of Thornton's inadequate disclosures, Plaintiffs would have to take her

deposition multiple times in order to effectively prosecute their case.  Initially, they would have to depose her to try to get an understanding of how she calculated the damages that form the bases for her conclusions; the bases and the reasons for her conclusions; and to get her to identify precisely which data, documents, and data analyses in her data production supports the broad conclusions she reached.  Plaintiffs will simply be guessing as to how and why Thornton reached her conclusions without this deposition.  *See Reed*, 165 F.R.D at 430 ("Nothing causes greater prejudice than to have to guess how and why an adversarial expert reached his or her conclusion."); *Cohlmia v. Ardent Health Services, LLC*, 254 F.R.D. 426, 433-34 (N.D. Oka. 2008) (striking expert report where party could not prepare to depose expert on the basis for the report because they did not set forth the reasons or methodology to support their conclusions.) Plaintiffs would subsequently need to take her deposition again after she produced her rebuttal report.  As the Court explained in *R.C. Olmstead*, this type of discovery conflicts with the purpose of Rule 26(a)(2)(B) and is prejudicial to the party who has to expend unnecessary sums to depose the expert and try to decipher an incomplete report.  657 F. Supp. 2d at 913.

As this Court stated when it granted Plaintiffs' motion for a protective order preventing Defendants from deposing Plaintiffs' expert Nile Nickel twice, "the time for deposing experts is after their opinions are *thoroughly* disclosed in their expert reports . . . Gathering the necessary participants to depose Mr. Nickel in two separate depositions is a waste of time and money." (Order 7-8, ECF No. 324) (emphasis added.)  Similarly, multiple depositions of Thornton simply to obtain information that should have been provided in her written report and is necessary for Plaintiffs to formulate their rebuttal reports is a waste of time and money.

Additionally, being forced to conduct expert discovery now puts Plaintiffs at an extreme disadvantage, because Defendants do not have to do the same in order to prepare their expert

rebuttal reports.  Plaintiffs' experts provided Defendants with the information required by Rule 26(a)(2)(B),[2] and Defendants are undoubtedly well on their way in reviewing Plaintiffs' experts' analyses and commissions calculations and drafting their rebuttal reports.  The Court should not permit such an unfair disparity in this class action.  Indeed, "[t]o the extent there is a disadvantage created by the expert's failure to disclose it must be borne by the party retaining the expert witness." *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 681 (D. Kan. 1995).

Finally, under the current scheduling order, there is no time for Plaintiffs to engage in this unanticipated staggered expert discovery.[3]  The parties are extremely busy with the approaching deadlines in this case and in the related *Harlow* commissions class action on behalf of Defendants' business channel representatives.  During the months of December and January the parties have scheduled thirteen depositions (including *Harlow* Rule 30(b)(6) deponents) with several more pending confirmation as to witness, location, and date.  The parties' pretrial disclosures in both cases are due in December.  *Sibley* rebuttal reports are due in February and dispositive motions, *Daubert* motions, and the pretrial order submissions required in March.  The *Harlow* expert reports are due in April, and Defendants hopefully will be providing the remaining *Harlow* Stage 3 class data so Plaintiffs' experts (the same experts working on this case) can start setting up their systems to calculate damages and prepare their expert reports.  Although Plaintiffs are requesting a modification to the *Harlow* scheduling order so it trails this

---

[2] Contrary to Defendants' assertions, Plaintiffs' expert reports are organized and cite to the data that support the conclusions.  Moreover, Plaintiffs' experts specifically identified the data in the appendices by name.  Tellingly, Defendants have not filed any objections with the Court to Plaintiffs' expert disclosures.

[3] Defendants try to blame Plaintiffs for a shortened rebuttal period because Plaintiffs requested extensions to the expert disclosure deadline.  (Defs.' Resp. 3-4, ECF No. 369.)  Defendants conveniently omit that they joined Plaintiffs in one of these motions and did not oppose another.  (ECF Nos. 325, 341.)  More importantly, they omit the fact that all extensions were necessary because of problems with the data that Defendants produced, not because of any inaction by Plaintiffs.

matter, the *Sibley* deadlines cannot be further moved without affecting the trial date of August 5, 2013.

Thus, Defendants' failure to provide the information required by Rule 26(a)(2)(B) is not simply cured by permitting Plaintiffs to conduct unanticipated expert depositions or discovery that would not be necessary had they complied with the Rules. The appropriate remedy is to strike Thornton's deficient report.

**B)    Defendants Ignore Certain Requirements Under Rule 26(a)(2)(B) Because They Have Not Satisfied Them.**

*1)    Defendants Fail to Accurately Cite Rule 26(a)(2)(B)'s Requirements.*

Defendants argue that a combination of Thornton's expert report, a prior report she authored in December 2011 for just the named Plaintiffs, and her data production satisfy Rule 26(a)(2)(B). In making this argument, Defendants erroneously instruct the Court that the Federal Rules of Civil Procedure only require them to disclose the following: "(i) certain discrete information about Dr. Thornton; (ii) a complete statement of the opinions she will express at trial to avoid unfair surprise; and (iii) the underlying data and documents upon which she relies." (Defs.' Resp., 11, ECF No. 369.) However, the Rules require not only that the expert disclosure contain a complete statement of the opinions the witness will express at trial, but also, the basis and the reasons for them. Fed. R. Civ. P. 26(a)(2)(B) (requiring "(i) a complete statement of all the opinions the witness will express *and the basis and the reasons for them*.") (emphasis added.) Defendants conveniently omit the second part of the sentence when instructing the Court on the Rule's requirements. The second part of that requirement is very important. In requiring disclosure of "the basis and the reasons" for the expert's opinions, part (i) of the Rule seeks to expose the "how" and "why" the expert reached her particular result. *Reed*, 165 F.R.D. at 428 n.5. As discussed in further detail *infra*, Thornton's report is missing the "how" and the "why"

she reached her conclusions.

Additionally, the Rules do not simply contemplate a data dump as Defendants suggest by erroneously stating the Rules simply require production of the underlying data and documents upon which their expert relied in giving her opinion.  (Defs.' Resp., 11, ECF No. 369.)  Rather, the Rule requires "(ii) the facts or data considered by the witness in forming [her opinion]" and "(iii) any exhibits that will be used to summarize or support [her opinion.]"  Fed. R. Civ. P. 26(a)(2)(B) (ii)-(iii).   A massive data production without citations in the report to any data or documents within it, and without an explanation as to what it contains, does not meet these requirements.  *See Salgado v. Gen Motors Corp.*, 150 F.3d 735, 737-38 (7th Cir. 1998) (affirming striking report because data was not keyed in any way to the report, as the report did not cite to the data that supported the conclusions proffered); *Prien v. AM Gilardi & Sons, Inc.*, No. CIV-01-1020-F, 2003 WL 25764896, *4-6 (W.D. Okla. June 11, 2003) (striking a report that was based on a "massive body of information which is not summarized or tabulated.").

> 2)   ***Thornton Does Not Adequately Disclose "How" or "Why" She Reached Her Conclusions, nor What She Saw, Heard, Considered, Read, Thought About, or Relied Upon in Reaching Her Conclusions.***

As mentioned previously, Rule 26(a)(2)(B) requires disclosure of certain information in conjunction with an expert report.  Although Thornton's report is replete with conclusory statements intended to support Defendants' case, it fails to provide "the reasons and basis for the opinion[s]."  Fed. R. Civ. P. 26(a)(2)(B)(i).  "In simple terminology, this means the 'how' and 'why' the expert reached the conclusions and opinions to be expressed."  *Reed*, 165 F.R.D. at 428 n.5.  Rule 26(a)(2)(B)(ii) and (iii) also require disclosure of the data and information considered by the expert.  Again, "in simple language, this means 'what' the expert saw, heard, considered, read, thought about or relied upon in reaching the conclusions and opinions to be

expressed." *Reed*, 165 F.R.D. at 428 n.6.  It also requires any exhibits the experts will use.  *Id.* at

429.  These requirements contemplate *complete* expert disclosures and not vague disclosures that

necessitate follow-up discovery to understand how and why the experts reached their conclusions

and what they read, reviewed, or analyzed in reaching them.

In *Reed*, the court explained that the strict disclosure requirements of Rule 26(a)(2)(B)

are best understood when read in conjunction with Rule 26(b)(4)(A) and the advisory committee

notes.  165 F.R.D. at 429.  Rule 26(b)(4)(A) states:

> A party may depose any person who has been identified as an
> expert whose opinion may be presented at trial.  If Rule
> 26(a)(2)(B) requires a report from the expert, the deposition may
> be conducted only after the report is provided.

The advisory committee notes state:

> Revised subdivision (b)(4)(A), authorizes the deposition of expert
> witnesses.  Since depositions of experts required to prepare a
> written report may be taken only after the report has been served,
> the length of the deposition of such experts should be reduced, and
> in many cases the report may eliminate the need for a deposition.
>
> ***
>
> The requirement under subdivision (a)(2)(B) of a complete and
> detailed report of the expected testimony of certain forensic
> experts may, moreover, eliminate the need for some such
> depositions or at least reduce the length of the depositions.

*Reed* 165 F.R.D at 429 (*citing* Fed. R. Civ. P. 26 advisory committee's notes; 146 F.R.D. 401,

635, 638-39).  Read together, the Rules contemplate complete expert disclosures, not vague

statements that require the other party to depose their expert to understand them.  Expert reports

exist to eliminate unfair surprise to the opposing party and to conserve resources.  *Reed,* 165

F.R.D. at 429 (citations omitted).  "The test of a report is whether it was sufficiently complete,

detailed, and in compliance with the Rules so that surprise is eliminated, unnecessary depositions

are avoided, and costs are reduced." *Id.*

Defendants assert that in order to figure out how Thornton calculated damages and reached her conclusions, Plaintiffs must review not only Thornton's current written report but also her December 2011 affidavit regarding hand calculations she performed for the nine Named Plaintiffs and the 8.62 terabytes of unidentified data that she produced with her current report.  A review of these three items, however, does not eliminate the deficiencies at issue in this motion.

> **(a)** **Thornton's Current Report Does Not Provide the "How" or "Why."**

The easiest way to understand the deficiencies in Thornton's current report is to first read Plaintiffs' expert reports from Professor Margaret Dunham and Balance Engines LLC.  (Fisher Aff. Ex. A, ECF Nos. 366-1, 366-3.)  Plaintiffs' expert reports provide a step-by-step writing detailing how Balance Engines analyzed the Stage 3 data to calculate commissions and how the experts reached the conclusions set forth in their reports.  For instance, Plaintiffs' expert reports describe in detail:

- what data was input into Balance Engine's system for calculating commissions (e.g. Stage 3 Production Data, Class Member Data, SKU and SOC Data, CAF and MICG Data, Compensation Statements, Quota Files, and Hierarchy Table data);
- how the input data was validated;
- how problems with the input data were resolved;
- how the system is designed;
- how the preprocessing phase worked;
- how the phase of identifying and compiling the non-billing records potentially related to class members worked;
- how the phase of identifying and compiling all billing records potentially related to class members worked;
- how the consolidation of all potentially commissionable transactions for each class member into directories worked;
- how commissions were calculated;
- how commissions were reconciled with compensation and hierarchy data to determine damages (including how problems with adjustments, other credits and debits, and vacation credit data were handled);

- how the testing was performed at each phase to ensure accuracy of the process; and
- the hardware and software used by the system.

*Id.* Plaintiffs' expert reports also pointed to specific documents and data identified in the appendices and produced to Defendants that supported statements made in those reports. *Id.*

In contrast, Thornton's current report fails to explain her methodologies, or how her computer system was designed, processed the data, or calculated damages. Rather, it is full of broad conclusions with no cited support. It leaves readers at a loss as to where to find the data or documents to support her conclusions or understand what formed the bases and reasons for them. Thornton's report is wholly lacking in the "how" and "why" she reached her conclusions. In other words, she provides plenty of opinions but fails to include sufficient detail as to "the basis and the reasons for them" as required by Rule 26(a)(2)(B)(i).

Defendants point to a few vague statements in Thornton's written report when arguing that she provides the "how" and "why" to support her conclusions that most of the class was overpaid or paid correctly:

- "[S]he analyzed each of the millions of sales transactions entered into Sprint's point-of-sale system;"

- "[S]he determined . . . whether each transaction was commissionable;"

- "[S]he applied the terms of the operative commission plans;" and

- "[She] determine[d] if each individual was paid according to the terms of the operative commissions plans . . . the amount of commission . . . paid [and] to whom it was paid."

(Defs.' Resp. 13, ECF No. 369.) These statements are not detailed and complete as the Rules require. Her report simply contains a "high-level description" of what both parties' experts were hired to do in this case. Thornton admits as much in her Affidavit provided in opposition to this motion. (Thornton Aff. ¶ 6, ECF No. 369-9) (explaining that her two reports provided "a high-

level description of [her] analytical approach . . . .")  For each of the statements identified by Defendants above, the key information that Thornton's fails to disclose is "how" or "why" she did what she did.

Additionally, her report fails to explain how or why Thornton was able to conclude that no systematic computer issues existed or that "individualized issues" persist for those whom Defendants agree they underpaid.  Again, she fails to identify the bases or reasons for these broad conclusions in a case where Defendants have already admitted that their systems failed to pay accurate commissions to the class.  (Mem. and Order for Class Certification 7, ECF No. 99 ("Defendants acknowledge that their systems negatively affected the commissions of many employees in the putative class . . . these issues range from substantial problems which affect a large number of employees to less significant, discrete issues that affect a relatively small number of employees.")

As the Rule's advisory committee notes make clear, a submitted report cannot be "so sketchy and vague that it rarely dispense[s] with the need to depose the expert."  Fed. R. Civ. P. advisory committee's notes (1993).  Thornton's report fails this test because there is no way that Plaintiffs or their experts can understand "how" or "why" she reached her conclusions without a deposition.  Without a deposition, they are simply wasting their time and resources guessing at how to piece it together.

Thornton's failure to make proper disclosures puts Defendants at an advantage over Plaintiffs.  Plaintiffs' experts complied with the expert disclosure requirements and provided detailed explanations of how they calculated damages and the basis and reasons as to how they arrived at their conclusions.  They did not simply provide a massive data production with no explanation; rather, they provided citations to the data that supports the statements made in their

reports.  Defendants are currently in a position to review Plaintiffs' calculations without further discovery or depositions, draft their rebuttal reports, and later take Plaintiffs' expert depositions if they choose to do so.  They are doing all of this while Plaintiffs are wasting their time trying to understand what Thornton did to reach her conclusions and seeking to resolve the inequities through this motion.  The prejudice caused by Defendants' failure to make proper disclosures is evident and cannot be cured by anything at this late stage of the case other than exclusion of Thornton's report.

      **(b)**      **<u>Thornton's December 2011 Affidavit Does Not Sufficiently Supplement Her Current Report with the "How" and "Why."</u>**

Defendants urge that to the extent Thornton's current written report is deficient, her December 2011 affidavit, where she analyzes commissions damages for the nine Named Plaintiffs, provides the requisite detail of "how" and "why" she reached her conclusions in her current report.  (*See* Defs.' Resp. 5, 8-9, 13, 15, ECF No. 369.)  This is not the case.  In Thornton's current report, she specifically states that "the methodology for calculating the differences for the nine Named Plaintiffs is necessarily different than the methodology used to analyze the over 30,000 employees."  (Thornton's Aff. ¶ 3, n.6, Fisher Decl. Ex. A, ECF No. 366-2.)  This is because she apparently hand calculated damages for the nine Named Plaintiffs, whereas she used some unexplained computer process to calculate damages for the class.  (*Id.* ¶ 3 n.6, ¶ 4 n.7.)  She admits that her hand calculations for the nine Named Plaintiffs that used the process and methodologies identified in her December 2011 affidavit resulted in different damages amounts than her computerized calculations for the same individuals.  (*Id.* ¶ 3 n.6)  It is disingenuous for Defendants to argue that the methodology Thornton used to hand calculate damages for the nine Named Plaintiffs is "the same" as the methodology used for the class and that the two calculations differ "only in scale."  (Defs.' Resp. 9, ECF No. 369.)  Immediately

after making this statement, Defendants admit that it was not simply the scale that changed but the entire calculation procedure.  (*Id.*)

Plaintiffs' position on the inadequacy of the information provided in the 2011 affidavit to support the "how" and "why" Thornton reached the conclusions she did in her current report for the entire class, is further supported by the fact that Thornton's current report does not incorporate by reference the process or procedure utilized in her 2011 affidavit.  In fact, the only time she references her 2011 affidavit is to explicitly state:  "***The methodology for calculating the differences for the nine Named Plaintiffs is <u>necessarily different</u> than the methodology used to analyze the over 30,000 employees***."  (Thornton's Aff. ¶ 3, n.6, Fisher Decl. Ex. A, ECF No. 366-2 (emphasis added).)

(c)    <u>**Thornton's Data Production Does Not Shed Light on the Deficiencies in Her Report.**</u>

Defendants also assert that to the extent the written reports are deficient, the answers to "how" and "why" Thornton reached the conclusions she did, as required by part (i) of Rule 26(a)(2)(B), and "what" the expert "saw, heard, considered, read, thought about or relied upon in reaching the conclusions and opinions to be expressed" as required by part (ii) of the Rule can be found in the massive data production that accompanied Thornton's report.   The unanswered questions are "What data?" and "Where?"

Defendants appear to argue that this requirement can be satisfied merely by listing and producing certain documents upon which Thornton relied.  (Defs.' Resp. 6, ECF No. 369.)  They appear to believe that the documents identified in the appendices do not need to be referenced, explained, or given any context by Thornton's report itself.  Moreover, they appear to believe that simply instructing Plaintiffs' to review data and documents that Thornton never cites or references anywhere in the report or its appendices solves the problem.  It does not.

14

Defendants do not cite any authority that stands for the proposition that a bare list of documents is sufficient to comply with the rules.  In fact, case law cited by Plaintiffs suggests just the opposite.  In *Cohlmia*—discussed at length in Plaintiffs' opening brief—the expert reports at issue contained a "section outlining what information the expert . . . reviewed," including "enumerated pleadings, motions, and discovery documents."  254 F.R.D. at 430.  Yet, the court still found the reports to be non-compliant with Rule 26 in part because the reports did not "cite to anything specific in the record or transcript," or further explain which data was used to reach the particular conclusions.  *Id.* at 431-32 (stating one expert did "not disclose what th[e] data [was]" and another did not offer any "detail as to what in [the] testimony he relie[d] upon or how that testimony factored into any of his . . . conclusions").  In *Salgado*, the Seventh Circuit held the district court did not abuse its discretion when it found an expert report to be deficient under Rule 26(a)(2)(B) where, among other things, it contained an index to the voluminous materials that the expert had reviewed, but the index was not keyed to the various opinions that the expert had expressed.  150 F.3d at 738.  The lack of keying or reference between the opinions and the reviewed materials violated Rule 26(a)(2)(B)'s command to be "detailed and complete." *Id.* at 741 n.6.  Likewise, in *Reed*, which Defendants also cite as authority, the court took issue with the reference to "massive amounts of documents" when the opinions themselves were "expressed in vague terms with few specific references."  165 F.R.D. at 430.

Thornton only cites to Appendix B which contains her list of "Materials Replied Upon" twice in her report: once to identify it as the list of documents she relied upon and once to simply direct the reader to the list of applicable commission plans.  (Thornton 2012 Aff. ¶¶ 1 n.1, 31 n.42; Fisher Decl. Ex. A, ECF No. 366-2.)  Moreover, as explained above, Thornton's analysis and calculations are located on five hard drives, labeled SPRSIB_DATA_00004 to

SPRSIB_DATA_00008, which she never references once in her report or in her appendices.[4] Plaintiffs created an electronic index from the data on SPRSIB_DATA_00004 to SPRSIB_DATA_00008. (*See* Ex. 1.) None of the over 15,000 files on those drives is referenced anywhere by Thornton. "If conclusions in a report are based all or in part on facts not disclosed in the report, the report does not comply with Rule 26(a)(2)(B). *R.C. Olmstead, Inc.,* 657 F. Supp. 2d at 911.

Next, Defendants claim that within these unreferenced five hard drives is a "step-by-step guide" that would allow Plaintiffs to replicate Thornton's processing of the Stage 3 data. (Defs.' Resp. 17, ECF No. 369 (*citing* Thornton 2012 Aff. ¶¶ 11-12).) This so-called "step-by-step guide" is not as simple as Defendants would have it seem. What Thornton appears to say in her affidavit is that within certain categories of data she produced are programs numbered in a sequential order that she believes reveal her step-by-step analysis, at least by providing a sequential order in which she did things within that specific category. (Thornton 2012 Aff. ¶¶ 11-12, ECF No. 369-9.) She does not say that there is a step-by-step guide explaining how her system actually calculated commissions or dealt with any of the issues as to "how" or "why" she reached her conclusions described above. (*See, e.g.,* Exhibit 1 (a "step-by-step guide" is not readily apparent or existent in the data).) Trying to figure out her step-by-step process from what was produced without explanation is complicated and time consuming. Plaintiffs' experts could attempt to run the programs, review the logs, and analyze the output to try to figure out Thornton's analytical processes and to try to find the support for her purported conclusions.[5] But

---

[4] Arguably, Thornton's failure to identify this data as data relied upon in reaching her conclusions amounts to an inadequate disclosure and waiver.

[5] Plaintiffs are not seeking through this motion information to replicate Thornton's process as Defendants inaccurately suggest. (Defs.' Resp. 13, 15, ECF No. 369.) They are simply trying to understand how she calculated damages and how and why she reached her conclusions proffered

Plaintiffs should not have to do so and do not currently have the time or resources to play that guessing game at this juncture in the case. The information should have been provided in Thornton's report.

### III)   DEFENDANTS DO NOT MEET THEIR BURDEN UNDER RULE 37.

In focusing on the requirements of Rule 26, Defendants do not directly address the Rule 37 standard except to present the unsupported argument that Plaintiffs' requested sanction is too "onerous" and too "extreme" to apply in this case. (Defs.' Resp. 2, 11, 18, ECF No. 369.) Defendants ignore that the sanction is "automatic" unless they are able to show that their violation was either justified or harmless. *Nguyen*, 162 F.R.D. at 679 (*citing* Fed. R. Civ. P. 37(c)(1)). Defendants do not show either and instead simply argue that discovery can later cure the void present in Thornton's disclosures.

Defendants do not cite a single case for the proposition that future discovery renders a deficiency harmless. Instead, Defendants cite cases for the proposition that courts "favor supplementation to exclusion," asking the Court to, without justification, equate the possibility for discovery with the act of supplementing. The case law to which Defendants refer, however, does not support their argument. *See United States v. Sarracino*, 340 F.3d 1148 (10th Cir. 2003) (distinguishable as a criminal case addressing the sufficiency of an expert report under the Federal Rules of Criminal Procedure); *Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co.*, 170 F3.3d 985, 993 (10th Cir. 1999) (distinguishable because it does not deal with report supplementation but rather trial court rulings that affected expert reports and not bad faith); *Gillum v. United States*, 309 F. App'x 267, 270 (10th Cir. 2009) (stands for the proposition that simply denying the opposing party the opportunity to catch the expert "flat footed" in a

in her report.

deposition is not alone sufficient prejudice to warrant exclusion of the expert at trial.  The court was concerned that exclusion of the expert would automatically result in summary judgment in favor of the opposing party).  Courts have made clear that supplemental expert reports are not to be used to cure disclosure defects when the disclosure could have and should have been made at the time the reports were due.  *See, e.g., Dixie Steel Erectors, Inc. v. Grove U.S., L.L.C.*, No. CIV-04-390-F, 2005 WL 3558663, at *8 (W.D. Okla. Dec. 29, 2005) ("Where . . . a significant violation of the Rule 26(a)(2) expert reporting requirement has been clearly established, involving opinions, data, testing or analysis that could have been included in the original report, the court should not, absent extraordinary circumstances, allow the violation to be cured by permitting the submission of a supplemental report after the violation has occurred. That is especially true in an expert-intensive case like this one." (emphasis added).)

Even still, Defendants' focus on supplementation is misplaced because there is not a proposed supplementation before the court upon which to consider.  Defendants are not asking to supplement.  They are instead asking that the Court find the discovery process to be sufficient to fill in the gaps left by Thornton's report.  The discovery process is not synonymous with supplementation.  Defendants provide no justifiable reason why the information sought could not be provided on October 15, 2012, or after Plaintiffs' sent their letter objecting to Thornton's deficiencies.  They offer no reason why Plaintiffs should have to engage in discovery to obtain information Thornton should have provided in a timely manner.  And they do not now even offer any supplementations to cure the issue.  Therefore, striking is appropriate.[6]

---

[6] Discovery is not an alternative sanction that the Court should consider.  Even if the Court does not wish to strike the report, the Court should consider alternative sanctions such as requiring Defendants to provide the required information, requiring Defendants to reimburse Plaintiffs for the cost of seeking the answers themselves (including additional expert fees), and/or providing Plaintiffs with more time to uncover what should have already been disclosed to them.  *See* Fed.

## <u>CONCLUSION</u>

Although Defendants admitted early in this case that they failed to pay the accurate commissions to the class, they retained an expert to testify otherwise at trial.  Indeed, they plan to have that expert testify that nearly all the class members were either correctly paid or overpaid and that there were no commission system problems that caused them to be paid incorrectly.  In order for Defendants to provide that testimony at trial, the Rules require that their expert report provide the bases that form those conclusions and sufficiently identify the documents and data supporting them.  Thornton's report does neither.

Discovery to uncover what Defendants should have provided in Thornton's expert is not an adequate remedy at this late stage of the case and in light of the various other deadlines and work the parties have to do in this action.  Because of the prejudice that will be caused to Plaintiffs if Defendants are allowed to proceed with this deficient report, Plaintiffs respectfully request that the Court strike Defendants' report it its entirety.

---

R. Civ. P. 37(c)(1) (permitting alternative sanctions).  Unfortunately, this would mean a delay to the trial date, which Plaintiffs do not want.  Plaintiffs, and the cases that Plaintiffs cite, do not prefer these lesser sanctions for such violations, but all are preferred over the unfair discovery process that Defendants' propose.  The Court should not permit Plaintiffs to be disadvantaged by Defendants' obstinacy.

Dated:  December 12, 2012          STUEVE SIEGEL HANSON LLP

                                   /s/ Ashlea G. Schwarz
                                   Ashlea G. Schwarz
                                   KS Bar No. 23491
                                   460 Nichols Road, Suite 200
                                   Kansas City, Missouri 64112
                                   Tel: 816-714-7100
                                   Fax: 816-714-7101


                                   NICHOLS KASTER, PLLP

                                   /s/ Michele R. Fisher
                                   Michele R. Fisher*
                                   Paul J. Lukas*
                                   Rebekah L. Bailey*
                                   4600 IDS Center
                                   80 South 8th Street
                                   Minneapolis, Minnesota 55402
                                   Tel: 612-256-3200
                                   Fax: 612-215-6870
                                   (*Admitted Pro Hac Vice)


                                   ATTORNEYS FOR PLAINTIFFS AND THE
                                   CLASS

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on December 12, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification to the following attorneys of record:

Michael L. Blumenthal
Seyferth, Blumenthal & Harris LLC
300 Wyandotte, Suite 430
Kansas City, Missouri 64104
mike@sbhlaw.com

Mark W. Batten
Proskauer Rose LLP
One International Place
Boston, Massachusetts  02110
mbatten@proskauer.com

Steven D. Hurd
Jacqueline M. Dorn
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
jdorn@proskauer.com
shurd@proskauer.com

Elise M. Bloom
Gregory Rasin
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
ebloom@proskauer.com
grasin@proskauer.com

Nicole A. Eichberger
Proskauer Rose LLP
650 Poydras Street, Suite 1800
New Orleans, Louisiana 70130
neichberger@proskauer.com

Dated:  December 12, 2012

         */s/Ashlea Schwarz*
         Attorney for Plaintiffs