IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROXIE SIBLEY, et al.,                          )
                                               )
                 Plaintiffs,                   )
                                               )
v.                                             )        Case No. 08-2063-KHV
                                               )
SPRINT NEXTEL CORPORATION,                     )
et al.,                                        )
                                               )
                 Defendants.                   )

## ORDER

This is a class action in which current and former employees of defendants' retail

stores allege that defendants failed to accurately calculate and pay commissions earned.

Plaintiffs have filed a motion to strike the report of defendants' expert, Janet Thornton,

pursuant to Fed. R. Civ. P. 37 **(doc. 365)**.  Plaintiffs assert that Thornton's report violates

the requirements of Fed. R. Civ. P. 26(a)(2)(B) because it does not disclose the process or

methodology used by Thornton in formulating her opinions regarding whether defendants

underpaid commissions.  While the undersigned U.S. Magistrate Judge, James P. O'Hara,

agrees that Thornton's report fails to satisfy Rule 26's disclosure requirements, this failure

was rendered harmless when Thornton provided a subsequent affidavit further explaining

the process she undertook to reach her conclusions.  Therefore, the motion to strike is

denied.  The court orders defendants, however, to file a revised, self-contained report and

to pay plaintiffs' attorney fees incurred in bringing this motion.

To facilitate the exchange and analyses of documents and data concerning the millions of sales transactions and billions of billing records relevant in this case, discovery proceeded in three stages.[1]  In Stage 1, defendants produced documents and data concerning the named plaintiffs.  In Stage 2, the parties conferred and plaintiffs determined the additional data necessary for the entire class.  This class-wide data was then produced by defendants during Stage 3.  The parties agreed that their respective experts would use this so-called "Stage 3 data" to analyze plaintiffs' claims.  The parties further entered a "Stipulation Regarding Expert Analysis" that set such things as the commission plans at issue, the relevant job codes and job titles, and the types of data to be used by their respective experts to confirm the amount of commissions paid in a given month.[2]

On October 15, 2012, the parties exchanged their expert reports.  Defendants produced two reports rendered by Thornton.  The first, dated December 16, 2011, was a copy of a report submitted earlier in support of defendants' first motion for summary judgment.[3]  It analyzed the individual claims of the nine named plaintiffs and concluded that none had been underpaid.  The second, dated October 15, 2012, related to Thornton's analysis of the Stage 3 data pertaining to the class claims of about 30,000 employees.  It is the October 2012 report that plaintiffs seek to strike for failure to comply with Rule

---

[1]Doc. 114 at 5 (Amended Scheduling Order).

[2]Doc. 357.

[3]Doc. 369-6.  The presiding U.S. District Judge, Kathryn H. Vratil, overruled the motion for summary judgement as premature.  Doc. 334.

26(a)(2)(B).

Rule 26(a)(2)(B) requires that witnesses retained to give expert testimony provide a written report that contains, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." The purpose of this disclosure requirement is "to set forth the substance of the [expert's] direct examination."[4] "Such disclosure is necessary to allow the opposing party 'a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'"[5] "The Rule 26 expert report must be complete such that opposing counsel is not forced to depose an expert to avoid ambush at trial."[6] Thus, the expert report "must be detailed and complete, including how and why the expert reached a particular result, not merely the expert's conclusory opinions."[7] If an expert report does not comply with Rule 26(a)'s disclosure requirements, the offering party is not allowed to use the expert "to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified

---

[4]*Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (quoting Fed. R. Civ. P. 26(a)(2) advisory committee note (1993)).

[5]*Id.* (quoting Fed. R. Civ. P. 26(a)(2) advisory committee note (1993)).

[6]*In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-1840, 2011 WL 5506259, at *1 (D. Kan. Nov. 10, 2011); *see also* Fed. R. Civ. P. 26(a)(2) advisory committee note (1993) (noting that expert reports should, "in many cases," eliminate the need to depose the expert).

[7]*In re Motor Fuel*, 2011 WL 5506259, at *1.

or is harmless."[8]  Instead of this sanction, the court may impose alternative sanctions under the rule.[9]

Plaintiffs assert that Thornton's October 2012 report is deficient because it does not disclose the methodology Thornton used to reach her conclusions.  In other words, according to plaintiffs, Thornton did not set forth the reasons for her opinions or explain why she reached a particular result.  After reviewing the report, the undersigned agrees that it does not satisfy the requirements of Rule 26(a)(2)(B).  In three paragraphs of her fifty-five paragraph report, Thornton sets forth only a vague explanation of how she calculated damages.[10]  She states that she "*analyzed* each of the millions of sales transactions entered into Sprint's point-of-sale system, the billions of billing transactions, and the transactions with commission payments made by Sprint to determine if each individual was paid according to the terms of the operative commission plans."[11]  But Thornton does not state what process she followed in analyzing the data.  Rather, in a footnote she simply notes that the methodology used to process the Stage 3 data was "necessarily different" than the "methodology for calculating the differences for the nine Named Plaintiffs."[12]  She states,

---

[8]Fed. R. Civ. P. 37(c)(1).

[9]*Id.*

[10]*See* doc. 369-3 at ¶¶ 4–6.

[11]*Id.* at ¶ 4 (emphasis added).

[12]*Id.* at 4 n.6.

"For example, different computer programs were used to process all of the data." She also notes what her analysis did *not* include: "My previous affidavit [i.e., report] included manual review of some of the transactions for the nine Named Plaintiffs that cannot be accomplished for the current affidavit due to the billions of transactions that would have to be reviewed."[13]

With Thornton's expert report, defendants also produced five computer hard drives containing 8.62 terabytes of data, including the computer programs that Thornton used to process the Stage 3 data. But neither Thornton nor defendants provided an overview of the data—such as how the programs work or in what order Thornton ran them.

Even taking the October 2012 report and the data files together, the undersigned finds that they provided an inadequate disclosure of the reasons behind Thornton's opinions.[14] "The purpose of Rule 26(a)(2)'s expert disclosure requirements is to eliminate surprise and provide the opposing party with enough information regarding the expert's opinions and *methodology* to prepare efficiently for deposition, any pretrial motions, and trial."[15]

---

[13]*Id.*

[14]Despite defendants' assertion to the contrary, an objection as to the adequacy of an expert report's *disclosure* of the expert's methodology is a technical objection under Rule 26(a)(2)(B), not a *Daubert* objection. *McCoy v. Whirlpool Corp.*, 214 F.R.D. 646, 649 (D. Kan. 2003). The undersigned makes no finding as to the merits of the disclosure under *Daubert*.

[15]*Cook v. Rockwell Intern. Corp.*, 580 F. Supp. 2d 1071, 1122 (D. Colo. 2006) (emphasis added). *See also Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) (ruling, in the *Daubert* context, that "[a]t a minimum, the expert testimony should include a description of the method used" to reach the expert's opinion).

Thornton's expert report failed to meet this test, as it contained no explanation at all about the process or methodology she applied in analyzing the Stage 3 data.[16]

In determining whether the expert report should be stricken under Rule 37(c) as a sanction for its failure to comply with Rule 26(a)(2)(B), the court considers whether the failure was substantially justified or harmless.[17]  While the court "need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose," the court should be guided by the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."[18]

On November 28, 2012 (the day on which defendants served their response to the motion to strike), Thornton executed and provided a subsequent affidavit further explaining the process she undertook to reach her conclusions.[19]  This subsequent affidavit contains the information that should have been in her October 2012 report.  Thornton explained for the

---

[16]Defendants urge the court not to adopt a test requiring an expert report to contain enough information for an opposing expert to replicate the expert's analysis.  The court does not adopt such a test.  Rather, as explained above, the test is whether the expert's description of her methodology is sufficient to eliminate surprise and demonstrate the reasons behind the expert's opinions.

[17]Fed. R. Civ. P. 37(c)(1).

[18]*Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

[19]Doc. 369-9.

first time that the analytical approach described in her December 2011 report was essentially

the approach she followed to analyze the Stage 3 data (with the difference that a manual

review could not be conducted for the Stage 3 data).[20]  She stated,

> paragraphs 44 through 51 and 57 through 65 of my December 16, 2011 report, Doc. No. 282, describe the commission process in detail and the resultant logic that I used in analyzing the data.  For example, paragraph 46 describes the data from the RMS system and paragraph 62 details how I determined each of the commission-related transactions from the RMS system.[21]

Then Thornton explained how the data and programs provided with her report could be run

"to trace the programming path used at each step of my analysis."[22]

Plaintiffs complain that Thornton still has not cross-referenced each piece of data and

document she reviewed to each conclusion she reached, but plaintiffs have cited no

persuasive or controlling authority that requires such an approach.[23]  Moreover, while

plaintiffs urge that the reports of their experts contain more detailed explanations of the

experts' analyses than do Thornton's reports and affidavit, the court only examines whether

Thornton's disclosure satisfies Rule 26(a)(2)(B), not which expert report deserves the blue

ribbon for completeness.  The undersigned is satisfied that, taken together, Thornton's

disclosures in her two reports, affidavit, and computer hard drives meet the requirements of

---

[20]*Id.* at ¶ 6.

[21]*Id.* at ¶ 9.

[22]*Id.* at ¶ 10; *see also id.* at ¶ 11.

[23]Thornton provided an appendix to her report listing the materials upon which she relied.  Doc. 369-3, Appx. B.

Rule 26.

Although plaintiffs were temporarily prejudiced by Thornton's failure to disclosure her methodology because their rebuttal experts could not effectively examine her analysis and their attorneys could not reasonably prepare for cross-examination or deposition, that prejudice was cured by Thornton's November 2012 affidavit. Rebuttal expert reports are not due until February 14, 2013, and expert discovery does not end until March 11, 2013. There is adequate time for plaintiffs to evaluate Thornton's report and take any follow-up discovery they deem necessary. The trial—scheduled for August 5, 2013—will not be disrupted. Finally, plaintiffs have not demonstrated that defendants' initial failure to make a full disclosure was in bad faith or willful.

Striking expert testimony is an extreme sanction disfavored by the court.[24] "Rather, litigation should promote the finding of the truth, and, wherever possible, the resolution of cases on their merits."[25] Under the circumstances presented here, the court finds harmless defendants untimely expert disclosure and declines to strike Thornton's report. However, the piecemeal disclosure of information in three separate documents clearly is not what Rule 26(a)(2)(B) contemplates. Plaintiffs are entitled to a single, complete, expert report. Accordingly, by **December 20, 2012**, defendants shall serve plaintiffs with Thornton's

---

[24]*See Gillum v. United States*, 309 F. App'x 267, 270 (10th Cir. 2009).

[25]*Id.* (finding that "piecemeal disclosures" of expert report "ignored the policies behind Rule 26(a)(2)," but holding that striking expert testimony was too extreme a sanction where it necessarily resulted in the grant of summary judgment).

complete expert report, revised in accordance with this order.

In addition, the court awards plaintiffs their attorney fees incurred in bringing the instant motion.[26] Defendants did not supply Thornton's November 28, 2012 affidavit giving insight into her methodology until they were forced to respond to the motion.  The parties are strongly encouraged to confer and reach agreement on the amount of attorney fees defendants will pay to plaintiffs in connection with this discovery dispute.  In the hopefully unlikely event the parties cannot reach an agreement, by **December 27, 2012**, plaintiffs shall file an accounting of legal fees (including supporting documentation, such as attorney time sheets) sustained in regard to filing and briefing the motion to strike.  Thereafter, defendants may, if they believe it necessary, file a response to plaintiffs' filing by **January 3, 2013**.

IT IS THEREFORE ORDERED that (1) plaintiffs' motion to strike is denied, (2) defendants shall provide plaintiffs a revised, self-contained report of expert Thornton, and (3) defendants shall pay plaintiffs' attorney fees incurred in bringing this motion.

Dated December 13, 2012, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[26]*See* Rule 37(c)(1)(A).