# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

```
------------------------------- X
ROXIE SIBLEY, JEANNE NOEL, ERNESTO      :
BENNETT, JAMIE WILLIAMS, GREG ST.       :
JULIEN, TRACIE HERNANDEZ, JOHN          :
JASINSKI, JAY RICHIE, and TEISHA KING,  :
individually and on behalf of a class of others :
similarly situated,                     :
                                        :
              Plaintiffs,               :
                                        :
      v.                                :  Case No. 02:08-CV-02063-KHV/JPO
                                        :
SPRINT NEXTEL CORPORATION, a Kansas     :
corporation,                            :
                                        :
              and                       :
                                        :
SPRINT/UNITED MANAGEMENT                :
COMPANY, a Kansas corporation,          :
                                        :
              Defendants.               :
------------------------------- X
```

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO COMPEL DISCLOSURES AND DISCOVERY**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

LEGAL ARGUMENT .................................................................................................................. 2

    I.    PLAINTIFFS DELAYED SIX WEEKS IN PRODUCING MILLIONS OF OUTPUT FILES UNDERLYING THEIR UNTIMELY SUPPLEMENTAL EXPERT REPORTS. ........................................................................................................ 2

    II.    PLAINTIFFS' RESPONSES TO DEFENDANTS NOVEMBER 2012 DISCOVERY REQUESTS REMAIN DEFICIENT. ......................................................... 5

        A.  Plaintiffs Have Not Cured Their Deficiencies In Responding To Defendants' Document Requests. ............................................................................................... 5

        B.  Nile Nickel's Declaration, Dated January 22, 2013, Does Not Cure The Deficiencies in Plaintiffs' Answers To Interrogatories. ............................................. 6

    III.  PLAINTIFFS SHOULD REVISE THEIR INADEQUATE PRIVILEGE LOG AND PRODUCE DOCUMENTS IMPROPERLY WITHHELD. ................................... 9

        A.  The Entries in the Supplemental Privilege Log Remain Inadequate. ...................... 10

        B.  The Supplemental Privilege Log Identifies Documents That Should Be Produced In Full or Redacted Form. ........................................................................ 11

    IV.  THE COURT SHOULD IMPOSE APPROPRIATE SANCTIONS FOR PLAINTIFFS' DISCOVERY FAILURES. ................................................................... 13

CONCLUSION........................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Beller ex. Rel. Beller v. U.S.*,
 221 F.R.D. 696 (D.N.M. 2003)..................................................................................................4

*Chevron Corp. v. Weinberg Group*,
 286 F.R.D. 95 (D.D.C. 2012)...................................................................................................11

*Cohlmia v. Ardent Health Servs., LLC.*,
 254 F.R.D. 431-32 (N.D. Okla. 2008) ...........................................................................3, 4, 14

*Continental Coal, Inc. v. Cunningham*,
 No. 06-2122, 2007 WL 3245428 (D. Kan. Nov. 2, 2007) ......................................................10

*Heavin v. Owens-Corning Fiberglass*,
 No. 02-2572, 2004 WL 316072 (D. Kan. Feb. 3, 2004) .........................................................13

*Holt v. Wesley Medical Center, LLC*,
 No. 00-1318, 2006 WL 5556006 (D. Kan. Jan. 25, 2006) ......................................................14

*Kern River Gas Transmission Co. v. 6.17 Acres*,
 156 F. App'x 96 (10th Cir. 2005) ............................................................................................14

*Leviton Mfg. Co., Inc. v. Nicor, Inc.*,
 245 F.R.D. 524 (D.N.M. 2007)..................................................................................................4

*Nguyen v. IBP, Inc.*,
 162 F.R.D. 681 (D. Kan. 1995)....................................................................................4, 6, 9, 14

*Quapaw Tribe v. Blue Tee Corp.*,
 No. 03-cv-0846, 2010 WL 3909204 (N.D. Okla. Sept. 29, 2010)..........................................14

*Reed v. Binder*,
 165 F.R.D 424 (D.N.J. 1996).....................................................................................................2

*In re Universal Service Fund Telephone Billing Practices Litig.*,
 232 F.R.D. 669 (D. Kan. 2005)................................................................................................10

*U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*,
 No. 05-cv-2192, 2008 WL 2222022 (D. Kan. May 28, 2008) .................................................8

*Western Resources, Inc. v. Union Pacific R.R. Co.*,
 No. 00-2043, 2002 WL 181494 (D. Kan. Jan. 31, 2002)........................................................12

### STATUTES & REGULATIONS

Fed. R. Civ. P. 16(f) ..................................................................................................................... 14

Fed. R. Civ. P. 26 .................................................................................................................. *passim*

Fed. R. Civ. P. 37 ......................................................................................................................... 14

**PRELIMINARY STATEMENT**

Since October 15, 2012, Plaintiffs have failed to timely and fully satisfy Rule 26(a)'s expert disclosure requirements and to respond timely and fully to Defendants' expert discovery requests. As the following chart shows, Defendants have only obtained partial responses following the filing of their Motion to Compel:

| Description of Required Conduct | Court Deadline | Date of Partial Compliance |
| --- | --- | --- |
| Exchange of expert disclosures | 10/15/12 | 12/12/12 |
| Production of data considered or relied upon by Plaintiffs' experts (output data) in producing "supplemental" expert reports | 12/12/12 | 1/21/13 |
| Production of complete Volume II of Plaintiffs' Privilege Log | 12/12/12 | 1/22/13 |
| Plaintiffs' Responses to Defendants' Fifth Request for the Production of Documents | 12/28/12 | 1/22/13 |
| Plaintiffs' Answers to Defendants' Fourth Set of Interrogatories | 12/28/12 | 1/22/13 |

As is made plain by the chart above, only after Defendants filed their Motion to Compel did Plaintiffs belatedly satisfy *some* of their obligations set forth by this Court and Rule 26(a).

Plaintiffs' Opposition does not articulate legally supported arguments let alone consistent explanations for their untimely and incomplete disclosures. Thus, Plaintiffs' tardy, piecemeal productions violate the well-established rules regarding testifying experts. Their actions have caused unfair prejudice to Defendants, who have expended considerable time and resources reviewing supplemental reports that should have been filed on October 15, 2012, and pursuing Plaintiffs for data and information that should have been provided contemporaneously.

Plaintiffs' delay in providing information necessary for Defendants to prepare for and respond to expert discovery, and their failure to fully comply with their disclosure obligations

even today, constitutes sanctionable conduct. Thus, Defendants respectfully request that this Court (a) order Plaintiffs to expeditiously serve and produce full responses to Defendants' outstanding discovery requests and produce a revised privilege log with sufficient descriptions of the underlying documents to evaluate Plaintiffs' privilege claims; (b) award Defendants reasonable attorneys' fees and expert fees associated with bringing this motion; and (c) impose other appropriate sanctions the Court deems necessary as a result of Plaintiffs' discovery failures, including filing tardy "supplemental" expert reports on December 12, 2012.

## LEGAL ARGUMENT

### I. PLAINTIFFS DELAYED SIX WEEKS IN PRODUCING MILLIONS OF OUTPUT FILES UNDERLYING THEIR UNTIMELY SUPPLEMENTAL EXPERT REPORTS.

Federal Rule of Civil Procedure 26 requires the disclosure of everything the expert "saw, heard, considered, read, thought about or relied upon in reaching [his or her] conclusions." *Reed v. Binder*, 165 F.R.D 424, 428 n.6 (D.N.J. 1996). Yet it took well over a month and the filing of this motion for Plaintiffs to produce the new output files relied upon in Plaintiffs' supplemental expert reports.

On December 12, 2012, Plaintiffs filed their supplemental expert reports, almost two months after the court-ordered deadline for the exchange of expert disclosures. Plaintiffs' Opposition sets forth two reasons for the untimely supplemental disclosures: (a) Plaintiffs did not have enough time to complete their original reports despite receiving a 142-day extension from the Court; and (b) they believed the October 15, 2012 deadline set by the Court was not controlling. Pls. Opp. Br., pp. 2-6. The supplemental reports, however, do not rely on any *new* data produced by Defendants; instead, Plaintiffs' experts revisit the data produced by Defendants in December 2011 and offer modified methodologies and revised calculations. *See* Dkt. #399-13, Eichberger Decl., ¶13, Exh. L (BE Supplemental Report, ¶¶4, 8, 14, 46).

2

Not only did Plaintiffs file supplemental expert reports almost 60 days after the deadline for expert disclosures, but Plaintiffs failed to produce all of the new "output files" generated by Plaintiffs' experts' revised methodologies and programs. *See* Dkt. #411, Pls.' Opp. Br. pp. 6; Dkt. #399-12, Eichberger Decl., ¶12, Exh. K.  It was not until January 21, 2013, six weeks after serving their supplemental expert reports and only after Defendants filed this Motion, that Plaintiffs produced four hard drives of data – containing additional millions of new individual "output files" – reflecting the newly articulated methodologies outlined in Plaintiffs' supplemental expert reports.  Although Defendants can now confirm this production moots Defendants' motion to compel as to the "output file" issue, there can be no dispute that these hard drives should have been produced on December 12, 2012, contemporaneously with Plaintiffs' supplemental expert reports, as required by Rule 26(a).  *See*, *e.g.*, *Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 431-32 (N.D. Okla. 2008) (holding expert reports did not comply with Rule 26 requirements because, *inter alia*, plaintiffs failed to disclose the "data" experts reference in their reports and provide little assistance to defendants in preparing for expert depositions).

Plaintiffs argument that they "did not believe that the revisions made to the data Defendants were seeking substantially changed it in order to warrant a revised production" (Pls.' Opp. Br. at 6), is belied by their actual production of 4 hard drives containing millions of files and is not excused by Rule 26(a) and governing case law.  Defendants' review of the new "output files" contained on the 4 hard drives produced on January 21, 2013, has shown that they are not the same as those produced in October 2012 with Plaintiffs' original expert reports. Thornton Affidavit, dated Feb. 7, 2013, ¶¶6-10.[1]  Indeed, Plaintiffs' own expert, Margaret

---

[1]  Dr. Thornton's Affidavit, dated February 7, 2013, is filed contemporaneously with this Reply Brief.

3

Dunham, admitted in her supplemental expert report that "programs were used to modify the PCT, VTT, and ODR files" (Dkt. #399-14, Eichberger Decl., ¶14, Exh. M (Dunham Supplemental Report, pp. 3)), which necessarily would change the output data.

Plaintiffs have downplayed the tardy production of "output files" by characterizing them as insubstantial, but Rule 26(a) does not distinguish between "substantial" and "insubstantial" changes to data. Rule 26(a) requires Plaintiffs to produce the files at the same time as their reports, regardless of whether the changes were substantial. Nothing in Rule 26(a) permits Plaintiffs to unilaterally determine what disclosures they want to make. *Nguyen v. IBP, Inc.*, 162 F.R.D. 681 (D. Kan. 1995) ("A party may not simply retain an expert and then make whatever disclosures the expert is willing or able to make notwithstanding the known requirements of Rule 26."). Plaintiffs unquestionably were obligated to produce full and complete output files contemporaneously with their supplemental expert reports on December 12, 2012, and they failed to do so.

As stated in Defendants' moving brief, Plaintiffs' failure to disclose is not harmless: it has highly prejudiced Defendants' ability to produce rebuttal expert reports, complete expert discovery, and file motions challenging admissibility of Plaintiffs' expert reports within the current court-ordered deadlines. Indeed, it took Defendants' expert over a week to conduct even a cursory review of the data and determine that it satisfies Plaintiffs' disclosure obligations. Plaintiffs' untimely supplemental disclosures and delayed, piecemeal productions of underlying data and information are nothing more than an attempt to sandbag Defendants, and should not be countenanced by this Court. *See Cohlmia v. Ardent Health Servs., LLC.*, 254 F.R.D. 426, 433 (N.D. Okla. 2008); *Leviton Mfg. Co., Inc. v. Nicor, Inc.*, 245 F.R.D. 524, 531 (D.N.M. 2007); *Beller ex. Rel. Beller v. U.S.*, 221 F.R.D. 696, 701 (D.N.M. 2003).

4

## II. PLAINTIFFS' RESPONSES TO DEFENDANTS NOVEMBER 2012 DISCOVERY REQUESTS REMAIN DEFICIENT.

On November 28, 2012, Defendants propounded written discovery on Plaintiffs in order to probe certain issues allegedly identified and relied upon by Plaintiffs' experts in their respective reports. On December 28, 2012, despite Defendants' numerous attempts to resolve these discovery disputes without motion practice, Plaintiffs produced incomplete and deficient disclosures and responses to those discovery requests, arguing that the information sought already is contained in the expert reports. Only after Defendants filed this motion to compel did Plaintiffs produce what they refer to in their opposition brief as "temporary files," as well as a Declaration of Nile Nickel, dated January 22, 2013, which does little more than direct Defendants to search through millions of files of Stage 3 data. Notwithstanding this tardy supplementation of their responses, Plaintiffs still have failed to fully and completely respond to Defendants' November 2012 discovery requests. This Court should compel Plaintiffs to produce all documents and data responsive to Defendants' requests and to fully answer all interrogatories.

### A. Plaintiffs Have Not Cured Their Deficiencies In Responding To Defendants' Document Requests.

In responding to Request No. 32 of Defendants' Fifth Set of Requests for Production of Documents to Plaintiffs – in which Defendants seek the production of, *inter alia*, 154 data files listed in Balance Engines' ("BE") log files – Plaintiffs continue to assert that they are not "able to produce" many of these files because they either do not exist or were not relied upon by their experts in forming their opinions expressed in their expert reports. *See* Dkt. #411, Pls.' Opp. Br., pp. 11. This assertion defies logic.

Upon receipt of Plaintiffs' First Supplemental Responses to Defendants' Fifth Set of Requests for Production of Documents to Plaintiffs – which, notably, were served on January 9, 2013, only after Defendants notified Plaintiffs that their original responses were deficient –

5

Defendants' expert, Janet Thornton, reviewed the new explanation given by Plaintiffs for failing to produce certain of these 154 data files. *See* Dkt. #400-1, Thornton Aff., ¶¶6-7. Dr. Thornton found inconsistencies in Plaintiffs' explanations. For example, with respect to entry 9 of Exhibit 1 to the First Supplemental Responses, Plaintiffs state the following reason for refusing to produce the table "ensemble_logs": "Table created and dropped before Stage 3 analysis. As a result, the table is empty." Dkt. #411-7, Fisher Decl., Exh. 6 at First Supp. Exh. 1. Yet, Dr. Thornton's review shows no record of this data file being deleted by a program. Dkt. #400-1, Thornton Aff., ¶7 & n. 3. Additionally, although Plaintiffs claim many files were not used in the stage 3 analysis (*see, e.g.*, entry 93 of Exhibit 1 to the First Supplemental Responses), Dr. Thornton found that these files were discussed in the log file submitted by BE as having been reviewed. *Id.* ¶7 & n.4.

The inconsistencies between the data itself and Plaintiffs' explanations for refusing to produce the data cannot be ignored. Plaintiffs' refusal to produce data relied upon by their experts has interfered with Defendants' ability "to prepare for cross-examination at deposition or trial," *Nguyen*, 162 F.R.D. at 682, and therefore unduly prejudiced Defendants. Consequently, this Court should compel Plaintiffs to immediately correct this discovery failure.

> **B. Nile Nickel's Declaration, Dated January 22, 2013, Does Not Cure The Deficiencies in Plaintiffs' Answers To Interrogatories.**

Plaintiffs' experts raised certain issues with the Stage 3 data in their reports, but they failed to specifically identify the data issues underlying their conclusions. For example, in its original report, BE made blanket statements that key identifiers were overwritten and that "averages" were needed to calculate commissions owed, Dkt. #411-12, Fisher Decl., Exh. 11 (BE Report, ¶¶40, 79, 124, 146), but failed to specify exactly what identifiers were overwritten, which of BE's calculations involved averages, or how their conclusions were impacted by these

6

issues. Defendants propounded interrogatories to obtain further information about the issues raised by Plaintiffs' experts in order to understand Plaintiffs' conclusions and narrow the issues. Despite Defendants' efforts to obtain full and complete answers to these interrogatories, Plaintiffs have not specifically identified the issues underlying their conclusions and continue to change their reasons for failing to do so:

| **Defendants' Request** | **Plaintiffs' Deficient Response** |
|---|---|
| November 28, 2012 – Defendants propound 10 interrogatories (Nos. 18-26) asking Plaintiffs to identify, *e.g.*, "all instances supporting the assertion that 'employee identifiers were missing or overwritten by Sprint's systems'" (No. 21) and "all of the Balance Engines calculations involving 'averages'" (No. 25). | December 28, 2012 – Plaintiffs respond to Defendants' interrogatories citing to "an example" (Answer to No. 21) and/or generally directing Defendants to "expert reports, supplemental reports, and the data produced with them" (Answer to No. 21) or "its expert report and accompanying data" (Answer to No. 25). |
| January 7, 2013 – Defendants request full answers to interrogatories, noting that Plaintiffs' references to deficient previous disclosures are not proper. | January 22, 2013 – Plaintiffs produce the Declaration of Nile Nickel, which directs Defendants to "search the Stage 3 data and find examples themselves." |

As demonstrated above, Plaintiffs' answers to interrogatories merely directed Defendants back to Plaintiffs' expert reports – the same reports that failed to specifically identify the issues probed by Defendants' discovery requests. Even where limited examples were provided, those answers were non-responsive to the interrogatories. For instance, in responding to Interrogatory No. 21, Plaintiffs produced Exhibit A, which contains limited examples of identifiers allegedly missing or overwritten by Sprint's systems. Thornton Affidavit, dated Feb. 7, 2013, ¶14. However, the examples provided by Plaintiffs relate to dealer codes, which are not relevant to retail commissions and are not responsive to the inquiry about missing identifiers. *Id.* Similarly, in response to the second Interrogatory No. 26, Plaintiffs produced Exhibit F, which purports to give a limited example of RMS Point-of-Sale transactions missing from RMS or retrieved from

7

other parts of the commissions system.  *Id.*, ¶17.  Yet Defendants have reviewed the listed transactions, which primarily are accessories transactions from August 2005, and have located these transactions in RMS, belying Plaintiffs' experts' assertion that they do not exist in RMS.  *Id.*  Thus, Plaintiffs' reference to their expert reports and to limited examples does not satisfy their obligation to fully answer interrogatories pursuant to Rule 26.  *See, e.g.*, *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-cv-2192, 2008 WL 2222022, at *6 (D. Kan. May 28, 2008).  As a result, Defendants were forced to serve this motion to compel, in part, because Plaintiffs failed to fully respond to their requests.

*After* Defendants filed this motion, Plaintiffs produced the Declaration of Nile Nickel, dated January 22, 2013, which purports to provide additional information responsive to Defendants' discovery requests.  Yet Mr. Nickel's declaration provides additional responses to only two of the ten interrogatories that are deficient (Interrogatory Nos. 21 and 26).[2]  More importantly, Mr. Nickel's declaration merely directs Defendants to "search the Stage 3 data and find examples themselves."  Dkt. #411-6, Fisher Decl., Exh. 5, (Declaration of Nile Nickel, ¶5).  As stated in Defendants' moving brief, Plaintiffs must produce everything their experts saw, heard, considered, read, thought about or relied upon in reaching their conclusions.  Mr. Nickel's declaration is unhelpful because Defendants seek the specific data items underlying **his** assertions and conclusions.  Plaintiffs have yet to provide the specific data items underlying their expert's assertions and conclusions, and therefore Plaintiffs should be required to produce this information.

In sum, Plaintiffs' discovery responses and declaration fall well-short of their Rule 26 expert disclosure obligations.  Under the Federal Rules of Civil Procedure, "[a] party may not

---

[2] All of the interrogatories which require a full response are attached hereto as Exhibit 1.

8

simply retain an expert and then make whatever disclosures the expert is willing or able to make notwithstanding the known requirements of Rule 26." *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 681 (D. Kan. 1995). In this case, Plaintiffs' expert reports failed to specify the issues underlying their conclusions. When Defendants propounded interrogatories to obtain these specifics, Plaintiffs merely directed Defendants to re-review the same expert reports that failed to contain the information supporting their expert's assertions. Now, Plaintiffs invite Defendants to search all of the Stage 3 data to re-create Nile Nickel's conclusions. Defendants are entitled to learn from Plaintiffs the specifics of the alleged issues identified by Plaintiffs' experts in their reports and how those alleged issues contributed to their experts' conclusions, but Plaintiffs have resisted providing this information every step of the way.

Plaintiffs' outright refusal to produce the information requested by Defendants has delayed and undermined Defendants' ability to understand the assertions made by Plaintiffs' experts and to prepare rebuttal reports and for expert depositions. Plaintiffs' efforts to prejudice Defendants' abilities to properly litigate this case and prepare for trial should not be countenanced by the Court. Therefore, the Court should compel Plaintiffs to fully and immediately answer the Interrogatories propounded by Defendants on November 28, 2012.

### III.   PLAINTIFFS SHOULD REVISE THEIR INADEQUATE PRIVILEGE LOG AND PRODUCE DOCUMENTS IMPROPERLY WITHHELD.

On December 12, 2012, Plaintiff served Volume II of the Privilege Log ("Privilege Log"). By letters dated December 28, 2012 and January 7, 2013, Defendants notified Plaintiffs that their Privilege Log was inadequate and that they had to produce documents improperly withheld from disclosure, Dkt. #399-18 & 20, Eichberger Decl., ¶¶18 & 20, Exhs. Q & S, but Plaintiffs resisted complying with their disclosure obligations, Dkt. #399-19, Eichberger Decl., ¶19, Exh. R. Following the filing of Defendants' Motion to Compel, Plaintiffs supplemented the

9

Privilege Log, amending many of the descriptions of the withheld documents but still refusing to produce *any* challenged documents. The production of the Supplemental Privilege Log made it abundantly clear that Plaintiffs' Privilege Log was facially defective. *Compare* Dkt. #411-13, Fisher Decl., Exh. 12 *with* Dkt. #411-16, Fisher Decl., Exh. 15. Nonetheless, the Supplemental Privilege Log remains inadequate to sustain Plaintiffs' burden with respect to their claims of privilege. Moreover, the Supplemental Privilege Log does not exempt select documents from production.

### A. The Entries in the Supplemental Privilege Log Remain Inadequate.

The Supplemental Privilege Log still does not meet Plaintiffs' burden of making a "fairly detailed and specific showing to withhold discovery on privilege grounds." *In re Universal Service Fund Telephone Billing Practices Litig.*, 232 F.R.D. 669, 671 (D. Kan 2005). Plaintiffs continue to assert the work product privilege over **all** of the documents identified in the Supplemental Privilege Log, notwithstanding the fact that the vast majority of the entries appear to be communications between Plaintiffs' counsel and their experts. *See generally* Dkt. #411-16, Fisher Decl., Exh. 15. Thus, it is not clear that the work product privilege has been properly asserted. *See, e.g.*, *Continental Coal, Inc. v. Cunningham*, No. 06-2122, 2007 WL 3245428, at *1 (D. Kan. Nov. 2, 2007) ("Because CCI has chosen to repeatedly assert such broad privilege, the court is unable to determine precisely what privilege is claimed and if it is, indeed, applicable."). It is highly unlikely that each document is protected by the work product privilege. *Id.*

The descriptions provided also fail to provide the requisite detail to allow Defendants and this Court to determine whether the underlying documents are in fact privileged. For example, Item No. 535 purports to be an email from Plaintiffs' counsel to Mr. Nickel "addressing expert analysis of Sprint's commissions systems or processes." Dkt. #411-16, Fisher Decl., Exh. 15,

10

pp. 2. From the description provided for Item No. 535, Defendants cannot discern whether the communication identifies facts, data, or assumptions considered or relied upon by Mr. Nickel in forming his opinion, which are not protected by disclosure under Rule 26(b)(4)(C). Dozens of other entries in the Supplemental Privilege Log (*see* the entries identified in Section III(B), below) utilize the same or similar boilerplate description, which is not sufficient. *See, e.g.*, *Chevron Corp. v. Weinberg Group*, 286 F.R.D. 95, 99 (D.D.C. 2012) (finding to be inadequate boilerplate descriptions that read "E[-]mail between and among Ecuadorian Plaintiffs consulting experts prepared in furtherance of litigation . . ."). These descriptions require more detail.

Plaintiffs have made the conclusory assertion that, by the information provided in the Supplemental Privilege Log, Defendants and the Court are "immediately capable" of assessing the basis of the privilege. Dkt. #411, Pls.' Opp. Br, pp. 15. This assertion is undermined by the fact that Plaintiffs previously disclosed several of non-protected expert communications in connection with their initial October 15 expert reports. Dkt. #399-17, Eichberger Decl., ¶17, Exh. P. Because these disclosures suggest that there may be other additional non-protected expert documents that have been incorrectly withheld, and Plaintiffs still have not provided the requisite detail to ascertain whether additional non-protected expert documents do in fact exist, the Court should conduct an *in camera* review to determine whether these documents have been properly withheld.

**B.  The Supplemental Privilege Log Identifies Documents That Should Be Produced In Full or Redacted Form.**

The Supplemental Privilege Log identifies a number of documents that appear to reflect underlying facts, data, or assumptions that Plaintiffs' experts considered in forming their opinions. For example:

- Item No. 517: "Email between attorney(s) and expert(s) regarding expert analysis of Sprint's data, systems, or processes."

11

- Item No. 519: "Email enclosing deposition exhibit, with deposition notes, for expert review."

- Item No. 540: "Sprint commissions document with expert notes on systems, data, or processes attached to above email chain."

- Item No. 583: "Email addressing expert's analysis of Sprint's commissions documents."

*See also* Item Nos. 513-516, 519-520, 524, 525, 529, 530-533, 535, 536-539, 541-564, 566-571, 573-581, 585, 588A-595, 608-609, 616-617, 625-628, 643-644, 651-652, 665-665B, 666A-668, 672-673, and 675-676. To the extent that any of these documents identify facts, data or assumptions considered or relied upon by the expert in forming his or her opinion, they must be produced pursuant to Fed. R. Civ. P. 26(b)(4)(C).

Plaintiffs have taken the position that where a document is a communication to or from an expert – rather than the underlying document considered or analysis conducted by the expert – that communication need not be produced. *See* Dkt. #411, Pls.' Opp. Br., pp.13. That position is untenable. Rule 26(b)(4)(C) expressly excepts from protection *communications* that identify facts, data, or assumptions that the expert considered in forming his or her opinions. Any documents that the expert read or reviewed before or in connection with formulating his or her opinion must be produced. *Western Resources, Inc. v. Union Pacific R.R. Co.*, No. 00-2043, 2002 WL 181494, at *9 (D. Kan. Jan. 31, 2002) (*citing Johnson v. Gmeinder*, 191 F.R.D. 638, 645-47 (D. Kan. 2000)). Even if the communication is privileged, it loses its privileged status "when disclosed to, and considered by, a testifying expert." *Id.* at *9 n.15.

Moreover, Plaintiffs cannot claim protection over an entire communication merely because a piece of it is privileged and does not meet the Rule 26(b)(4)(C) exceptions. If any portions of the above-cited items in the Supplemental Privilege Log meet one of the Rule 26(b)(4)(C) exceptions, those portions of the documents must be produced. Plaintiffs cannot

shield the non-privileged portions of the documents from disclosure by interlacing them with privileged material. *See, e.g.*, *Heavin v. Owens-Corning Fiberglass*, No. 02-2572, 2004 WL 316072, at *3, 6 (D. Kan. Feb. 3, 2004) ("if relevant facts are incorporated into an otherwise attorney-client protected document, the document still will be subject to disclosure after redaction of the privileged material"). Thus, Plaintiffs should be compelled to produce all non-privileged portions of the cited documents, redacting the remaining privileged portions to the extent there are any.

Finally, Item Nos. 680-682 appear to relate to expert compensation. Rule 26(b)(4)(C)(i) requires the production of communications that "relate to the compensation for the expert's study or testimony." Therefore, the Court should compel these documents be produced, even if the attorney account and credit card information must be redacted.

## IV. THE COURT SHOULD IMPOSE APPROPRIATE SANCTIONS FOR PLAINTIFFS' DISCOVERY FAILURES.

As detailed above and in Defendants' moving brief, Defendants attempted in good faith to obtain expert disclosures from Plaintiffs without court action, but Plaintiffs nonetheless defied the Federal Rules and this Court's scheduling order by improperly serving supplemental expert reports, nearly 60 days after the expert disclosure deadline, and failing to provide full disclosures relating to their initial and supplemental expert reports. For instance, not only did Plaintiffs serve untimely supplemental reports, but they failed to produce the underlying output data – consisting of 4 hard drives and millions of new files – until January 19, 2013, less than one month before the February 14, 2013, deadline for expert rebuttal reports. Even today, Plaintiffs' disclosures remain incomplete.

Plaintiffs' delay has, and continues to, unfairly prejudice Defendants' ability to produce rebuttal expert reports, complete expert discovery, and file motions challenging admissibility of

13

Plaintiffs' expert reports within the fast-approaching court-ordered deadlines.  In addition, Defendants commissioned expert reports in response to Plaintiffs' initial expert disclosures and now must incur substantial, additional expense to redraft and revise their rebuttal expert reports to address Plaintiffs' disclosure failures and improper supplemental disclosures.  Defendants have spent significant time reviewing the recently produced output files simply to determine their completeness.  Finally, Plaintiffs' improper supplemental reports threaten to impact this Court's scheduling order, which was already extended three times at Plaintiffs' request.  Therefore, pursuant to Federal Rule of Civil Procedure 37, the Court should require Plaintiffs to pay Defendants reasonable expenses, including attorneys' fees, expert fees, and costs, caused by their failure to comply with the Federal Rules and this Court's scheduling orders.

Additionally, the Court should exercise its authority to impose additional sanctions against Plaintiffs, such as striking Plaintiffs' supplemental expert disclosures if Plaintiffs continue to refuse to comply with Rule 26(a) requirements.  *See* Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 16(f); *see also Kern River Gas Transmission Co. v. 6.17 Acres*, 156 F. App'x 96, 101 (10th Cir. 2005); *Quapaw Tribe v. Blue Tee Corp.*, No. 03-cv-0846, 2010 WL 3909204, at *4 (N.D. Okla. Sept. 29, 2010) (excluding "supplemental" expert report as untimely where it provided new calculations based on new sampling of data); *Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 433 (N.D. Okla. 2008) (same); *Holt v. Wesley Medical Center, LLC*, No. 00-1318, 2006 WL 5556006, at *2, *8 (D. Kan. Jan. 25, 2006) (striking parties' improper supplemental expert report); *Nguyen*, 162 F.R.D. at 680 (same).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court compel Plaintiffs to provide full disclosures relating to remaining issues raised above, provide an adequate privilege log and produce all documents that fall outside of the narrow categories of

14

privilege. Defendants further request that the Court require Plaintiffs to pay their reasonable expenses and impose other appropriate sanctions for Plaintiffs' discovery failures.

This 7th day of February, 2013.

    s/ Michael Blumenthal
**SEYFERTH, BLUMENTHAL & HARRIS LLC**
Michael L. Blumenthal
KS Bar No.18582
300 Wyandotte Street, Suite 430
Kansas City, MO 64105
Tel: 816-756-0700
Fax:  816-756-3700


    s/ Elise Bloom
**PROSKAUER ROSE LLP**
Elise M. Bloom*
Eleven Times Square
New York, NY 10036
Tel: 212-969-3410
Fax: 212-969-2900
(*Admitted *Pro Hac Vice*)

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of February, 2013, the foregoing **Reply Memorandum Of Law In Further Support Of Defendants' Motion To Compel Disclosures And Discovery** was electronically served on the following attorneys of record consistent with the parties' agreement and this Court's rules:

Stueve Siegel Hanson LLP
George A. Hanson
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
hanson@stuevesiegel.com

Nichols Kaster, PLLP
Donald H. Nichols
Paul J. Lukas
Michele R. Fisher
4600 IDS Center, 80 South 8th Street
Minneapolis, Minnesota 55402
nichols@nka.com
lukas@nka.com
fisher@nka.com

Respectfully submitted,

  s/ Michael Blumenthal
Michael L. Blumenthal
Kansas Bar No. 18582
SEYFERTH, BLUMENTHAL & HARRIS LLC
300 Wyandotte Street, Suite 430
Kansas City, Missouri 64105
Telephone: 816-756-0700
Facsimile:  816-756-3700
E-mail:  mike@sbhlaw.com

16