# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Roxie Sibley, et al. on behalf of themselves and similarly situated employees,<br><br>    Plaintiffs,<br><br>v.<br><br>Sprint Nextel Corporation, et al.<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   NO. 2:08-cv-02063-KHV/JPO<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### AFFIDAVIT OF JANET R. THORNTON, Ph.D.

**STATE OF FLORIDA**           )
                                              ) ss.
**COUNTY OF LEON**           )

Dr. Janet R. Thornton, affiant, affirms under oath as follows:

1. I am a labor economist with a Ph.D. in Economics (1992) from Florida State University. I am currently a Managing Director at ERS Group,[1] where I have been employed since 1986. ERS Group is a consulting firm that engages in research on economic issues. My fields of special interest include computer analysis of large databases, applied econometrics and statistical analysis. I have provided expert testimony in arbitration hearings and before federal and state courts and regulatory agencies at the request of both plaintiffs and defendants. No court has rejected me as an expert qualified to testify in my fields.

---

[1] ERS Group (ERS) is a SourceHOV company and provides quantitative analysis of economic decisions to a variety of clients, including individuals, corporations, universities and government agencies.

1

2. Plaintiffs in the above captioned matter claim that they were improperly denied commission payments due to systematic computer system failures. In support of their claims, Plaintiffs served four (4) expert reports:

    a. October 15, 2012 Report of Balance Engines LLC

    b. October 15, 2012 Report of Margaret H. Dunham

    c. December 12, 2012 First Supplemental Report of Balance Engines LLC

    d. December 12, 2012 First Supplemental Report of Margaret H. Dunham

3. Plaintiffs rely on the data analysis and commissions calculations performed by Balance Engines (BE) to support their claims that errors in Sprint's data systems resulted in the underpayment of commissions. Dr. Dunham does not perform independent data calculations, but opines that BE's conclusions are "the product of reliable principles and methods."[2]

4. In my capacity as Defendants' expert in this matter, I am currently reviewing the conclusions in the four reports noted above, and need access to the information and data considered by Plaintiffs' experts in reaching their conclusions to draft my rebuttal report. To date, Plaintiffs have produced some, but not all, of the information, computer programs, log files, and data files underlying their experts' conclusions.

**Output Files**

5. In October 2012, Plaintiffs produced more than 600 million output files to support their claims of commissions underpayments.

---

[2] Dkt. #366-1, Report of Dr. Dunham, October 15, 2012, page 5.

6.   In December 2012, Plaintiffs served supplemental expert reports, noting changes in their methodology for analyzing Sprint's data: "Subsequent to the production of [the October] report, BE modified its approach to use full and native SOCs from the Valid Transaction Table (VTT) and the Order Detail Report (ODR) for processing."[3]

7.   Because Plaintiffs' experts changed their methodology, I expected to receive new output files supporting their revised calculations. Indeed, Dr. Dunham's December 12, 2012 Supplemental Report stated that new "programs were used to modify the PCT, VTT, and ODR files."[4]

8.   Following the filing of Defendants' Motion to Compel, on January 21, 2013, Plaintiffs produced four additional hard drives of output files supporting their December 12, 2012 supplemental reports.

9.   My review of the files on the four hard drives produced January 21, 2013, demonstrates that the information contained in these files *did* change. To illustrate, there were changes in the SOC field between the files produced for BE's Report and Supplemental Report for class member Amanda Bernabe. The following illustrates the difference in this field for one of many files with changes between the Report and Supplemental Report for Ms. Bernabe, as well as for the other class members.

---

[3] Dkt. #399-13, Supplemental Report of Balance Engines, December 12, 2012, paragraph 7.
[4] Dkt. #399-14, Supplemental Report of Dr. Dunham, December 12, 2012, page 3.

| Data in SOC field from October 15, 2012 Report | Data in SOC field from December 12, 2012 Report |
|---|---|
| #CI 800MUNUPLR.99 | #CI 800MUNUPLR$79.99 |
| #C OFFPEAK AMER6P | #C OFFPEAK AMER6P$10 |
| #C VISPLUSPRINTV3 | #C VISPLUSPRINTV3$15 |
| TEP BOTH ERP ESRP | TEP BOTH ERP ESRP |
| #C UNL 2WAY SMS | #C UNL 2WAY SMS $15 |
| #CI 800MUNUPLR.99 | #CI 800MUNUPLR$79.99 |
| #C UNL 2WAY SMS | #C UNL 2WAY SMS $15 |
| TEP BOTH ERP ESRP | TEP BOTH ERP ESRP |
| #C VISPLUSPRINTV3 | #C VISPLUSPRINTV3$15 |
| #C OFFPEAK AMER6P | #C OFFPEAK AMER6P$10 |
| Source: File "015600.csv" from October 15, 2012 report and December 12, 2012 report for class member Amanda Bernabe. ||

10. These differences are important because the SOC field is truncated in the earlier submission and in the process of preparing my rebuttal report and to calculate commissions correctly, it is necessary to have the corrected value.

**Discovery Responses**

11. Plaintiffs claim that certain data issues impacted commission payments. More specifically, BE asserts that employee identifiers were missing or overwritten in Sprint's systems and that BE had to retrieve RMS "fragments" from other data systems to perform their commissions calculations.

12. To gather additional information and analyze the data issues identified by BE in this matter, Defendants served expert discovery requests – in the form of interrogatories and requests for the production of documents – on November 28, 2012.

13. For example, Defendants' Interrogatory No. 21 requested that Plaintiffs "[i]dentify all instances supporting the assertion that 'employee identifiers were missing

4

or overwritten by Sprint's systems,' including but not limited to being overwritten with 'A# codes.'"[5]

14.  As an initial response to Interrogatory No. 21, Plaintiffs produced their "Exhibit A" containing an example of their employee identifier issues.  Exhibit A contains a list of 476,297 entries for August 2005 from Ensemble with an A# in the Dealer_Code field.  However, for retail transactions, this field is *not* used as an employee identifier.  After Defendants filed the motion to compel, on January 22, 2013, Plaintiffs produced additional information purportedly responsive to Interrogatory No. 21 in the form of a Declaration by Nile Nickel.  However, Mr. Nickel's declaration merely states that "Defendants can search the Stage 3 data and find examples [of employee identifier issues] themselves as well."[6]

15.  Because Plaintiffs' failed to fully respond to Interrogatory No. 21 and Mr. Nickel's January Declaration is unhelpful in identifying the issues that he observed in the data, Plaintiffs' missing employee identifier claim remains unsupported.

16.  Additionally, Defendants' Interrogatory No. 26 requested that plaintiffs "[i]dentify all 'fragments of RMS Point-of-Sale transactions' that Balance Engines 'retrieved from other parts of Sprints commissions system,' as well as the transactions 'missing entirely from RMS, but appear[ing] in the Valid Transactions or ODR data' and explain how Balance Engines determined that these alleged 'fragments' were 'RMS Point-of-Sale transactions.'"[7]

17.  In response to Interrogatory No. 26, Plaintiffs produced their "Exhibit F" containing 192,242 Valid Transaction entries that BE claims were not found in RMS.

---

[5] Dkt. #399-8, Defendants' Fourth Set of Interrogatories to Plaintiffs, November 28, 2012, page 9.
[6] Dkt. #411-6, Declaration of Nile Nickel, January 22, 2013, paragraph 5.
[7] Dkt. #399-8, Defendants' Fourth Set of Interrogatories to Plaintiffs, November 28, 2012, page 10.

The vast majority of these entries are associated with Accessory transactions from August 2005. I reviewed a sample of these Valid Transaction entries and have determined that they do, in fact, exist in RMS. Therefore, Plaintiffs' data "fragment" assertion remains unsupported.

18. Without complete and timely responses to Defendants' discovery requests, I am unable to fully evaluate Plaintiffs' expert reports by the February 14, 2013 rebuttal deadline.

I have read the foregoing statement consisting of 18 paragraphs and swear that it is true and accurate to the best of my knowledge and belief.

FURTHER THE AFFIANT SAYETH NOT.

*Janet R. Thornton*

Janet R. Thornton, Ph.D.

Subscribed and sworn to before me this 7th day of February, 2013.

*Vertalee P. Fordham*

VERTALEE P. FORDHAM
Commission # EE 169277
Expires April 19, 2016
Bonded Thru Troy Fain Insurance 800-385-7019