IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ROXIE SIBLEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 08-2063-KHV |
| | ) | |
| SPRINT NEXTEL CORPORATION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This is a class action in which current and former employees of defendants' retail stores allege that defendants failed to accurately calculate and pay commissions earned. For whatever reason, the case has been riddled with discovery disputes, the most recent of which, unfortunately, is now before the court. On January 11, 2013, defendants filed a motion asking the court to compel plaintiffs to produce data relied upon by plaintiffs' experts, fully respond to discovery requests, and provide a detailed privilege log related to communications with plaintiffs' experts **(doc. 399)**. For the reasons discussed below, the motion is denied to the extent that it seeks the production of data files, granted in part and denied in part to the extent that it seeks interrogatory responses, and granted to the extent that it challenges plaintiffs' privilege log.

## I.    Background

To facilitate the exchange and analyses of documents and data concerning the

millions of sales transactions and billions of billing records relevant in this case, discovery proceeded in three stages.[1]  In Stage 1, defendants produced documents and data concerning the named plaintiffs.  In Stage 2, the parties conferred and plaintiffs determined the additional data necessary for the entire class.  This class-wide data was then produced by defendants during Stage 3.  The parties agreed that their respective experts would use this so-called "Stage 3 data" to analyze plaintiffs' claims.  The parties further entered a "Stipulation Regarding Expert Analysis" that set such things as the commission plans at issue, the relevant job codes and job titles, and the types of data to be used by their respective experts to confirm the amount of commissions paid in a given month.[2]

On October 15, 2012, the parties exchanged expert reports.  Plaintiffs served a report authored by both Barry Ezell and Nile Nickel of Balance Engines, LLC, and a separate report of Margaret H. Dunham.  Defendants served the report of Janet R. Thornton.  On December 12, 2012, plaintiffs served supplemental expert reports of both Balance Engines[3] and Dunham.[4]  Defendants, upon the court's order,[5] served the supplemental expert report of Thornton on December 20, 2012.

---

[1]Doc. 114 at 5 (amended scheduling order).

[2]Doc. 357.

[3]Doc. 399-13.

[4]Doc. 399-14.  Dunham's supplemental report simply analyzes Balance Engines's supplemental report.

[5]Doc. 380.

On November 28, 2012, defendants served requests for production of documents seeking 154 data files identified in Balance Engines's initial report but not produced with the report.[6]   That same day, defendants served interrogatories requesting information regarding particular statements made by plaintiffs' experts in their initial reports.[7] Defendants are not satisfied with plaintiffs' discovery responses and ask the court to compel plaintiffs to respond fully.

With their supplemental expert reports, plaintiffs produced a privilege log related to their initial and supplemental expert disclosures.  The privilege log lists communications with Nickel and Dunham that plaintiffs assert are protected from disclosure by the attorney-client and/or work-product privilege.  Plaintiffs served a more detailed privilege log ("supplemental privilege log") on January 22, 2013, after the instant motion was filed. Defendants contend that the log still fails to provide sufficient descriptions to determine whether the communications listed are protected.

## II.    Requests for Production of Data Files Identified in Plaintiffs' Expert's Report

Defendants' fifth set of requests for production of documents, Request No. 32, sought 154 data files identified in Balance Engines's initial report.  Plaintiffs responded on December 28, 2012 and, as a result of the meet-and-confer process, supplemented their response on January 9, 2013.  In the supplemental response, plaintiffs included a chart listing

---

[6]Doc. 399-7.  Specifically, defendants requested "the intermediary data files created by Balance Engines during their analyses."  Doc. 400 at 8.

[7]Doc. 399-8.

each of the 154 requested files and stating whether each was produced or could be produced, and if not, the reason why it could not be produced.[8]  The chart indicated plaintiffs either had produced or would produce 60 of the requested files.  For the remaining 94 files, plaintiffs stated that 15 were "empty and not used for Stage 3 production," 53 were "not used for Stage 3 analysis," 8 were "temporary files" that no longer exist, 4 were "unknown" or did not exist in the Stage 3 database, 12 were simply example file names with no actual files, 1 was a "table created and dropped before Stage 3 analysis" that is now empty, and 1 was an "empty file used for tests" that no longer exists.[9]  Two days later, without further indication to plaintiffs that they were unsatisfied with the supplemental response, defendants filed the instant motion to compel.

The motion to compel asserts, "Plaintiffs' explanations are nonsensical at best because Plaintiffs' own data logs demonstrate that the 154 items requested by Defendants not only exist, but were considered or relied upon in drafting Plaintiffs' October 15 expert reports."[10]  The motion cites an affidavit provided by defendants' expert Thornton, stating that her "limited review" of the items listed on the chart showed that some data files were created with no record of being deleted, and that some data files were created and were

---

[8]Doc. 411-7 at 6–10.

[9]*Id.*

[10]Doc. 400 at 14–15.

discussed by Balance Engines as having been reviewed.[11]   The motion asks the court to either "compel Plaintiffs to immediately correct this discovery failure or require Plaintiffs to provide expert confirmation that these files no longer exist."[12]

In response to this motion-made request, plaintiffs then provided defendants with a declaration from their expert Nickel, specifically addressing each of the files that plaintiffs did not produce.[13]   Nickel explained, for example, that most of the listed files were not considered by Balance Engines in performing their Stage 3 analysis, and thus did not provide a basis for the conclusions or opinions expressed in the report.   The files simply "appeared in the data log as part of the program documentation maintained by Balance Engines" because the log "covers periods prior to the expert reports."[14]   For other files, Nickel explained that they were temporarily created as part of Balance Engines's process, but that they cease to exist after running the program and, thus, cannot be produced.

Defendants' reply brief does not address the explanations provided by Nickel. Rather, it states in conclusory, abstruse fashion that the "inconsistencies between the data itself and Plaintiffs' explanations for refusing to produce the data cannot be ignored."[15]   The court rejects defendants' continued crusade for the listed data files.   The court is satisfied

[11]Doc. 400-1 at 4.   Thornton cites only two specific files that she reviewed.

[12]Doc. 400 at 15.

[13]Doc. 411-6 at 5–6.

[14]*Id.* at 4.

[15]Doc. 416 at 10.

that plaintiffs have produced all data files in existence that Balance Engines relied upon in rendering its expert report.  Defendants' motion is denied in this respect.

## III.   Interrogatories Regarding Plaintiffs' Expert's Report

After receiving the initial reports from plaintiffs' experts, defendants served their fourth set of interrogatories, asking plaintiffs for information regarding certain statements made in Balance Engines's report.[16]  Plaintiffs responded to the interrogatories on December 28, 2012.[17]  Defendants object that plaintiffs' responses "merely refer to limited 'examples' instead of fully addressing the questions posed in the Interrogatories."[18]   Although defendants broadly state that they are moving to compel full responses to Interrogatory Nos. 18–26, the parties' briefs only specifically address Interrogatory Nos. 21 and 26.[19] Additionally, it appears from the record that the parties only specifically addressed these two

_____

[16]Doc. 399-8.   Defendants' fourth set of interrogatories included twelve interrogatories numbered 18–28, with two numbered 26.

[17]Doc. 411-5.

[18]Doc. 400 at 16.

[19]The reference here is to the first of two interrogatories numbered 26.  Although defendants' expert Thornton discusses the second of the two interrogatories numbered 26 in an affidavit executed after the filing of the parties' principal briefs on this motion, doc. 416-1, and defendants specifically mention the second interrogatory numbered 26 for the first time in their reply brief, doc. 416 at 11–12, the court believes that this discussion was due to confusion created by defendants' misnumbering of their interrogatories. Defendants attached to their reply brief "Exhibit 1," which defendants stated was a list of all the interrogatories at issue.  Doc. 416 at 12 n.2.  The second interrogatory numbered 26 was not included on Exhibit 1.  Doc. 416-2.

interrogatories during their meet-and-confer sessions.[20]  Accordingly, the court will limit its discussion to Interrogatory Nos. 21 and 26.[21]  This discussion should guide the parties in resolving disputes—in the hopefully unlikely event there are any—about the remaining interrogatories.

## A.   Interrogatory No. 21

Interrogatory No. 21 asked plaintiffs to "[i]dentify all instances supporting the assertion [in the Balance Engines report] that 'employee identifiers were missing or overwritten by Sprint's systems,' including but not limited to being overwritten with 'A#

---

[20]The record reflects that the parties held a meet-and-confer conference on December 31, 2012.  *See* 411-14.  Defense counsel summarized the parties' discussion in a letter dated January 7, 2013.  *Id.*  The letter only mentions Interrogatory Nos. 21 and 26.  *Id.*  Likewise, in response to the instant motion, plaintiffs produced a declaration of their expert Nickel on January 22, 2013, addressing Interrogatory Nos. 21 and 26.  Doc. 411-6.  Believing that they had satisfied their discovery obligations, plaintiffs asked whether defendants would withdraw this motion.  *See* doc. 411-17.  Again discussing only Interrogatory Nos. 21 and 26, defendants responded by letter that their "motion to compel remains pending because Plaintiffs have not complied with their expert disclosure obligations."  *Id.* (the court notes that defendants' letter contains a typographical error, referring to "Interrogatory No. 25" but quoting and discussing the substance of Interrogatory No. 26).

[21]*See Bixler v. Foster*, 596 F.3d 751, 757 n.5 (10th Cir. 2010) (declining to consider an issue raised by movant but for which movant presented no reasoned argument); *Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1281 (10th Cir. 2003) (concluding that movant waived an argument that was mentioned but not specifically addressed in analysis); *Haid v. Wal-Mart Stores, Inc.*, No. 99-4186, 2001 WL 1819193, at *1 n.1 (D. Kan. Jan. 11, 2001) (declining to address interrogatories movant listed as "at issue," but did not  address in her supporting brief); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 671 n.37 (D. Kan. 2004) (noting that the party filing a motion to compel has the burden of addressing each discovery objection in its motion in order to bring the objection "into play"); *see also* D. Kan. Rule 37.2 (stating that the requirement that parties confer before filing discovery motions "requires that the parties in good faith converse, confer, compare views, consult, and deliberate").

codes.'"[22]  This question was based on a section in the Balance Engines report discussing the data that Balance Engines inputted into the system it developed to calculate commissions due class members.  In that section, Balance Engines stated that because there were problems with the unique employee identification number that each class member was supposed to have been assigned by Sprint, Balance Engines was required to assign its own employee identifier to each class member before Balance Engines could do its analysis.[23]  Balance Engines concluded that problems with Sprint's employee identifiers "affected Sprint's ability to pay accurate commissions."[24]

In their motion to compel, defendants assert Interrogatory No. 21 "seeks facts and information underlying Plaintiffs' expert reports and, therefore, Defendants are entitled to full discovery pursuant to Rule 26."[25]  Plaintiffs object to Interrogatory No. 21 on the basis that it seeks information that plaintiffs' experts did not compile.  According to plaintiffs, Balance Engines did not compile a list of the instances in which Sprint's employee identifiers were missing or overwritten.  Rather, Balance Engines "set up their system to work around these problems."[26]  Plaintiffs assert that, although they had no obligation to do

---

[22]Doc. 399-8.

[23]Doc. 411-12 at 5–11.

[24]*Id.* at ¶ 40; *see also id.* at ¶ 192 ("It is also clear that Sprint failed to standardized [sic] and synchronize data across systems.  It is BE's opinion that this also resulted in Sprint's commissions system's failure to pay accurate commissions to the class.").

[25]Doc. 400 at 15.

[26]Doc. 411 at 9; *see also* 411-6 at 3 (January 22, 2013 declaration of Nile Nickel).

so, they performed a search of the Stage 3 data and provided defendants examples of employee identifier problems in Exhibit A to their interrogatory answers.

Defendants are correct that Fed. R. Civ. P. 26(a)(2)(B)(ii) mandates that expert reports contain "the facts or data considered" by experts in forming their opinions. Balance Engines necessarily must have considered at least *some* alleged errors in Sprint's employee identification numbers in reaching its opinion that problems in Sprint's data systems directly related to Sprint's failure to pay accurate commissions.[27]  Thus, the instances of Sprint's missing employee identifiers that Balance Engines identified and considered are "facts or data" required to be disclosed.  This does not mean, of course, that plaintiffs must disclose facts or data *not* considered by their experts.  Thus, for example, if Balance Engines formed its opinion that problems with Sprint's employee identifiers affected Sprint's ability to correctly pay commissions after encountering, say, ten such problems, then plaintiffs are only required to disclose the ten identified problems.  It is unclear whether Exhibit A to plaintiffs' interrogatory responses includes all the examples of employee identifier problems relied upon by Balance Engines in reaching its opinion.[28]  Mindful that the final pretrial

---

[27]*See supra* note 24 and accompanying text.  Plaintiffs note that Balance Engines did not use Sprint's employee identification data in reaching its ultimate conclusions regarding the amount of commissions owed, instead creating a "work around" in their system. Nonetheless, Balance Engines did consider the alleged problems with Sprint's employee identifiers in forming opinions about Sprint's ability to pay accurate commissions.

[28]Defendants' expert Thornton suggests that it does not: "Exhibit A contains a list of 476,297 entries for August 2005 from Ensemble with an A# in the Dealer_Code field. However, for retail transactions, this field is not used as an employee identifier."  Doc. 416-1

conference will be held on March 7, 2013, the court hereby orders that by **March 6, 2013**, plaintiffs shall either confirm that they have fully disclosed all of the alleged errors relied upon by their experts or supplement their answer to Interrogatory No. 21.

### B.    Interrogatory No. 26

Interrogatory No. 26 asked plaintiffs to "[i]dentify all of the Balance Engines calculations involving 'averages' as that term is used by Balance Engines, [at report] ¶79 & ¶124, and explain in all instances how Balance Engines created these 'averages.'"[29]   This question was based on statements in the Balance Engines report that, where Sprint failed to provide compensation statements and RMS[30] data for certain class members or for certain time periods, Balance Engines "used averages" in performing its damages calculations.[31]

In support of their motion to compel, defendants assert the general argument that under Rule 26, "Plaintiffs must produce everything their experts saw, heard, considered, read, thought about or relied upon in reaching their conclusions."[32]   Defendants complain plaintiffs have not disclosed "the specifics of the alleged issues identified by Plaintiffs'

---

at ¶ 14.

[29]Doc. 399-8.

[30]Balance Engines defined "RMS" as "the Sprint retail channel's order entry (or 'point-of-sale') system, [which] contains records of the sales and other transactions the class members made during the class period."  Doc. 366-3 at ¶ 24.

[31]*Id.* at ¶¶ 79, 124.

[32]Doc. 416 at 12.

experts in their reports," but instead refer plaintiffs back to the expert reports.[33]

To the extent this general argument is meant to attack Balance Engines's disclosure regarding its use of averages or plaintiffs' answer to Interrogatory No. 26, it is rejected. Balance Engines specifically reflected the averages it applied in an appendix to its report.[34] Thus, it was logical for plaintiffs to refer defendants back to the report in response to Interrogatory No. 26. In addition, in answering Interrogatory No. 26, plaintiffs attached two additional reports by Balance Engines (in the form of data files) compiling the data on averages and summarizing where the averages were applied.[35] Without any specific argument from defendants about why these disclosures were insufficient, defendants' motion to compel is denied with respect to Interrogatory No. 26.

## IV.    Privilege Log for Expert Communications

As noted above, on January 22, 2013, plaintiffs served their supplemental privilege log listing purportedly protected communications between their counsel and their retained experts. The supplemental privilege log lists 268 documents, the vast majority of which are withheld on work-product grounds. Defendants assert that the supplemental privilege log fails to satisfy plaintiffs' burden of demonstrating that each of the withheld documents is "in

---

[33]*Id.* at 13.

[34]Doc. 366-3 at ¶ 124 (referring to Appendix D). The court notes that neither party has provided the court copies of the appendices cited.

[35]Doc. 411-5 at 11 (referring to Exhibits D and E). Again, neither party provided the court copies of the exhibits cited.

fact privileged."[36]

The parties recognize that recently added Fed. R. Civ. P. 26(b)(4)(C) protects as trial-preparation materials communications between a party's counsel and retained expert, with three exceptions. Under this rule, "communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B)" are protected, "except to the extent that the communications:

(1) relate to compensation for the expert's study or testimony;

(2) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

(3) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed."[37]

The Advisory Committee Note to the 2010 Amendments states that the rule is "designed to protect counsel's work product and ensure that lawyers may interact with retained experts without fear of exposing those communications to searching discovery."[38] It seems that the Committee intended the new rule to provide broad protection to attorney-expert communications, stating, "even when the excepted topics are included among those involved in a given communication, the protection applies to all other aspects of the communication

---

[36]Doc. 416 at 14.

[37]Fed. R. Civ. P. 26(b)(4)(C) (added as part of the 2010 amendments to Rule 26).

[38]Fed. R. Civ. P. 26 advisory committee's note, 2010 amendments.

beyond the excepted topics."[39]   The Committee notes, for example, that while communications "identifying" the facts or data provided by counsel are not protected, "further communications about the potential relevance of the facts or data are protected."[40]

Despite this expansive language, however, the Committee also cautioned that the new protections for attorney-expert communications (as well as the protection for draft expert reports and disclosures) "do not impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions."[41]   Thus, for example, notes taken by an expert while "testing . . . material involved in litigation . . . would not be exempted from discovery by this rule."[42] And, as courts that have interpreted Rule 26(b)(4)(C) have recognized, communications between an expert (and/or his staff) and any non-attorneys are not protected, even if an attorney is copied on the communication, and

---

[39]*Id.*

[40]*Id.*; *see also Int'l Aloe Sci. Council, Inc. v. Fruit of the Earth, Inc.*, No. DKC-11-2255, 2012 WL 1900536, at *1 (D. Md. May 23, 2012) (noting that counsel's mental impressions about facts or data are protected).

[41]Fed. R. Civ. P. 26 advisory committee's note, 2010 amendments.

[42]*Id.*; *see also Dongguk Univ. v. Yale Univ.*, No. 3:08-CV-00441, 2011 WL 1935865, at *1 (D. Conn. May 19, 2011) (ruling, "an expert's notes are not protected by 26(b)(4)(B) or (C), as they are neither drafts of an expert report nor communications between the party's attorney and the expert witness").  *But see Int'l Aloe Sci. Council*, 2012 WL 1900536, at *2 (holding that expert notes not drafted in developing opinions to be provided at trial, but rather, to prepare counsel for deposing the opposing party's expert and to help counsel understand the report provided by the opposing party's expert, are protected).

must be produced.[43]

Defendants contend that the descriptions in plaintiffs' supplemental privilege log of withheld documents fail to provide the level of detail that would enable defendants and the court to determine whether plaintiffs are properly asserting the work-product privilege. The court agrees. Although Fed. R. Civ. P. 26(b)(5)(A) doesn't expressly require a privilege log, a party withholding information on privilege grounds generally satisfies the tenets of that rule by providing a privilege log that, at the very least, contains sufficient information so that the opposing party and the court can evaluate the claimed privilege.[44] If a party fails to carry its burden of establishing that documents withheld are subject to privilege, the court may conclude that the privilege is waived, although this is not required if a good-faith attempt at compliance or other circumstances mitigate against such a finding of waiver.[45]

It appears from the very general descriptions in the supplemental privilege log, taken together with the more detailed explanation in plaintiffs' response brief, that at least *some* documents have been properly withheld under Rule 26(b)(4)(C).[46] Without viewing the

---

[43]*See, e.g., Republic of Ecuador v. Bjorkman*, No. 11-1470, 2013 WL 50430, at *4 (D. Colo. Jan. 3, 2013)*; In re Application of Republic of Ecuador*, 280 F.R.D. 506, 513–16 (N.D. Cal. 2012).

[44]*Farha v. Idbeis*, No. 09-1059, 2010 WL 3168146, at *4 (D. Kan. Aug. 10, 2010).

[45]*New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 448 (D. Kan. 2009).

[46]It is unclear from the supplemental privilege log whether plaintiffs also are asserting attorney work-product protection under Fed. R. Civ. P. 26(b)(3).

documents, however, it is very difficult for the court to determine whether all the withheld documents are protected under the standards set forth above.  Given the record presented, the court respectfully declines the parties' implicit invitation to devote its relatively limited resources to view and evaluate all 268 documents *in camera*.  This court's experience has been that even careful and ethical lawyers tend to be far too aggressive in asserting privileges.  Accordingly, plaintiffs shall conduct another thorough analysis of their privilege assertions, strictly applying the standards discussed in this order, and thereby attempt to narrow the range of documents over which they claim privilege.  Plaintiffs shall then submit copies of all the documents that they continue to withhold from defendants, grouped into categories (e.g., communications to counsel regarding expert's analysis of defendants' expert's report, communications from counsel regarding counsel's mental impressions about data, etc.), to the chambers of the undersigned for *in camera* inspection, by **March 6, 2013** (i.e., the day before the final pretrial conference).  The undersigned will then review a sample of no more than five documents from each category of withheld documents (e.g., perhaps the first five, the last five, five in the middle, or five at random).  Plaintiffs are forewarned that, should the court's selected sample reveal that plaintiffs have improperly withheld *any* document, the court shall deem the privilege waived as to *all* the documents in that category.  The court also may reconsider the sanctions ruling set out below.

## V.    Sanctions

Defendants seek the entry of sanctions against plaintiffs under Fed. R. Civ. P. 37.

Specifically, defendants assert that plaintiffs should be ordered to pay defendants' "reasonable expenses, including attorneys' fees, expert fees, and costs" caused by plaintiffs' service of "supplemental expert reports, nearly 60 days after the expert disclosure deadline, and failing to provide full disclosures relating to their initial and supplemental expert reports."[47]

Fed. R. Civ. P. 37(a)(5)(C) provides that when a motion to compel is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses of the motion." Fed. R. Civ. P. 37(a)(5)(A) provides that if requested discovery is provided after a motion to compel is filed, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless the court finds that the opposing party's response or objection was "substantially justified" or that "other circumstances make an award of expenses unjust." "A nondisclosure, response, or objection is 'substantially justified' if it is 'justified to a degree that could satisfy a reasonable person' or where 'reasonable people could differ as to the appropriateness' of the nondisclosure, response, or objection."[48]

---

[47]Doc. 416 at 17–18. Defendants also vaguely request the imposition of "additional sanctions against Plaintiffs, such as striking Plaintiffs' supplemental expert disclosures," but only if plaintiffs "continue to refuse to comply with Rule 26(a) requirements"—this contingency has yet to occur, and the court therefore denies the request.

[48]*Hamner v. Assoc. Wholesale Grocers, Inc.*, No. 07-2314, 2008 WL 917900, at *2 (D. Kan. March 31, 2008) (internal citations omitted).

The court denies defendants' request for sanctions.  Under the circumstances surrounding the instant discovery disputes, the court finds plaintiffs' actions substantially justified.  With respect to plaintiffs' December 12, 2012 supplemental expert reports, the court notes that the scheduling order,[49] set the deadline for supplementation required by Fed. R. Civ. P. 26(e) (which includes subsection (e)(2), supplementation of expert reports) at 40 days before the discovery deadline, making plaintiffs' supplements to their expert reports due the day the supplemental reports were served—December 12, 2012.  Defendants make no detailed or persuasive argument that the December 12, 2012 expert reports of Balance Engines and Dunham were wholly new reports, rather than appropriate Rule 26(e)(2) supplementations.  In any event, the court finds that a reasonable person could have interpreted the deadline in the manner plaintiffs did.

With respect to disclosures related to plaintiffs' expert reports, defendants obtained mixed results on their motion to compel.  Although plaintiffs apparently only produced "output" files related to their supplemental expert reports after the filing of the motion to compel, they explain that they "did not believe that the revisions to the data Defendants were seeking substantially changed it in order to warrant revised production."[50]  The parties eventually resolved their dispute through the meet-and-confer process.  Defendants' motion was denied or only conditionally granted with respect to the other discovery sought.  This

---

[49]Doc. 114.

[50]Doc. 411 at 6.

is simply not a circumstance in which justice requires the entry of sanctions.

IT IS THEREFORE ORDERED:

(1) Defendants' motion to compel is granted in part and denied in part, as discussed herein.

(2) Plaintiffs shall provide defendants a further response with respect to Interrogatory No. 21 by **March 6, 2013**.

(3) Plaintiffs shall submit withheld documents for *in camera* review by **March 6, 2013**.

Dated February 21, 2013, at Kansas City, Kansas.

 s/ James P. O'Hara   
James P. O'Hara
U.S. Magistrate Judge
