# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROXIE SIBLEY, et al, | Case No. 02:08-CV-2063-KHV/JPO |
| Plaintiffs, | |
| v. | |
| SPRINT NEXTEL CORPORATION, and SPRINT/UNITED MANAGEMENT COMPANY, | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO SUPPLEMENT EXPERT REPORTS

### INTRODUCTION

This is a certified class action on behalf of nearly 40,000 retail employees seeking to recover unpaid commissions from Sprint. The class' claims include breach of contract and a violation of the Kansas Wage Payment Act.

Plaintiffs bring this motion to request that the Court permit them to produce second supplemental reports from their experts in this matter. Plaintiffs make this request not to raise new arguments or reach new conclusions, but rather, to simply refine their damages calculation to ensure its accuracy. Plaintiffs make this request in light of their obligation under Fed. R. Civ. P. 26(e) to supplement their reports, and their continuing desire to calculate commissions accurately for the class.

## FACTS RELEVANT TO MOTION

### A.    Expert Reports Production

The parties' experts used data produced by Sprint to calculate commissions due to the class and compare those calculations to the commissions Sprint paid.  The parties produced their initial expert reports on October 15, 2012, consistent with the Seventh Amended Scheduling Order.  (Seventh Am. Sched. Order, ECF No. 355; Fisher Decl. ¶ 2.)  Plaintiffs produced one expert report from Balance Engines LLC, which calculated damages in this action, and another expert report from Dr. Margaret Dunham, who performed a technical review to ensure Balance Engines' work was the product of reliable principles and methods.  (Fisher Decl. ¶ 3; Expert Report of Balance Engines LLC, ECF No. 366-3, Ex. A; Expert Report of Margaret H. Dunham, ECF No. 366-1, Ex. A.)  Defendants produced an expert report from Dr. Janet Thornton of ERS Group.  (Fisher Decl. ¶ 3; Thornton Aff., ECF No. 366-2, Ex. A.)

On November 14, 2012, Plaintiffs moved to strike Defendants' expert report because it failed to provide an explanation as to how the expert arrived at her conclusions.  (ECF No. 366.)  In response, Defendants argued that their expert report was complete.  (ECF No. 369.)  On December 13, 2012, the Court ordered Defendants to provide an expert report that consolidated expert information previously produced, and ordered Defendants to pay Plaintiffs' attorneys' fees incurred in bringing the motion.  (ECF No. 380.)  The Court explained that Plaintiffs were "entitled to a single, complete, expert report" and that Defendants did not give "insight into [their expert's] methodology until they were forced to respond to the motion."  (Id. at 8-9.)  On December 20, 2012, Defendants produced an expert report, as ordered by the Court.  This expert report, not only consolidated information previously produced, but also added a significant

2

amount of new information about their expert's methodologies.  (See Thornton Aff., ECF No. 411, Ex. 1 (highlighting added to show new content).)

As Plaintiffs' expert testified in his deposition, the damages calculations for the initial expert report had only finished processing the morning that the initial expert reports were due. (Ezell Dep.[1] at 11.)[2]  This resulted in Plaintiffs' experts finding certain revisions to be made to their calculations but not having time to make them until after the deadline for the initial expert report.   As a result, Plaintiffs' experts subsequently modified their calculations, re-ran their processes and output, and supplemented their expert reports on December 12, 2012.  (Fisher Decl. ¶ 4; See First Supp. Expert Report of Balance Engines LLC, ECF No. 411, Ex. 2; First Supp. Expert Report of Margaret H. Dunham, ECF No. 411, Ex. 3.)  Plaintiffs' experts made five minor modifications to refine the accuracy of their calculations.  (See Plt. Resp. in Opp. to D Mot., ECF No. 411 at 3.)  These modifications resulted in a decrease in damages.  (See id. at 1.) Regardless of the decrease, Defendants asked the Court to strike Plaintiffs' supplemental expert reports.   The Court refused, explaining that Plaintiffs' experts did not produce wholly new reports, but rather, the appropriate Rule 26(e)(2) supplementations.  (See generally Order, ECF No. 421 at 17.)  The Court also found that the supplementation was timely, explaining that "the scheduling order set the deadline for supplementation required by Fed. R. Civ. P. 26(e) (which includes subsection (e)(2), supplementation of expert reports) at 40 days before the discovery deadline, making plaintiff's supplements to their expert reports due the day the supplemental reports were served—December 12, 2012."  (Order, ECF No. 421 at 17.)

---

[1] The deposition of Barry Ezell is a rough draft.  Plaintiffs are not yet in possession of a final draft despite requesting expedited service.
[2] Defendants' expert admitted that Defendants provided her with the data necessary to do her analysis well in advance of Defendants providing it to Plaintiffs'.  (Thornton Dep., Ex. 7 at 245-46; Ezell Dep., Ex. 5 at 142-43 (explaining that Thornton's programs show she was running reports on the data at least three months before Sprint produced it to Plaintiffs).)

On February 14, 2013, the parties exchanged rebuttal reports. (Fisher Decl. ¶ 6.) Plaintiffs produced rebuttal reports from Balance Engines and Dr. Dunham. (Exs. 1, 2.) Defendants produced a rebuttal report from Dr. Thornton. (Ex. 3.)

**B.    Expert Depositions**

After producing rebuttal reports, the parties took expert depositions. Plaintiffs deposed Dr. Thornton on February 28, 2013. (Fisher Decl. ¶ 7.) Defendants deposed Dr. Dunham on March 1, 2013, and then Nile Nickel and Barry Ezell of Balance Engines on March 5th and 6th respectively. (Id.)

During those depositions, both parties' experts testified that their expert calculations could be refined to make the class calculations more accurate. Dr. Thornton testified that she agreed with several of the critiques Plaintiffs' experts made of her calculations. (Thornton Dep., Ex. 7 at 228-233.) More specifically, Dr. Thornton testified to the following:

- She did not include information from the ODR (Sprint's Order Detail Reports) in her calculations but should have done so. (Id. at 231.)

- She should have used gross rather than net figures in calculating Boost and Virgin activations. (Id. at 232.)

- She erroneously excluded Reboost and Virgin card revenue from her calculations. (Id. at 233.)

- She needs to revise her calculations to use the amount paid by Sprint as opposed to a target amount. (Id. at 229.)

Thornton testified that certain revisions to her calculations were just completed by ERS group and she still had to review the changes and the programming code when she returned to her office after the deposition. (Id. at 247.) When asked if she planned to produce new calculations to correct the inaccuracies, she testified that she did not know. (Id. at 248.)

4

Since the rebuttal reports and expert depositions, Plaintiffs' experts have similarly discovered information about their calculations that lead them to believe that making certain revisions to their code will result in more accurate commissions calculations for the class. These include a possible revision to calculating activations/deactivations and addons (Nickel Dep.[3], Ex. 6 at 132-45, 150-51; Ezell Dep., Ex. 5 at 116-120), revisions to roll up calculations (Nickel Dep., Ex. 6 at 150-51; Ezell Dep., Ex. 5 at 115-116), a revision to handling the "$" issue in Sprint's P2K records (Ezell Dep., Ex. 5 at 122-23), possible modifications to ramp up/guarantees (Id. at 188-89), possible revisions to vacation revenue/credit (Nickel Dep., Ex. 6 at 131-32), and using SKU actual sale price rather than SKU unit price (Id. at 131-32, 146-47). These issues were discussed during the depositions and are no surprise to Defendants.[4] Plaintiffs' experts do not plan to revise their overall methodology for processing and calculating damages, rather they have found certain places where their code that processes the transactions and calculations commissions should be refined to ensure accuracy. (See generally Nickel Decl., Ex. 4 ¶ 4-5.) The information Plaintiffs' experts learned during the rebuttal report process and expert depositions have caused Plaintiffs' experts to believe that further refinement of their calculations is warranted.

Plaintiffs believe that they can provide their revised calculations and Balance Engines' and Dr. Dunham's second supplemental expert reports explaining the revisions to the calculations within five weeks. (Id. ¶ 4.) While Balance Engines believes that it can research the changes and write the code for them within approximately one week, it typically takes two to

---

[3] The deposition of Nile Nickel is a rough draft version. Plaintiffs are not yet in possession of a final draft despite requesting expedited service.

[4] There is one additional minor revision Plaintiffs' experts are researching that was not discussed in the deposition, that is, merging certain PCT files that may not have been originally merged. (Fisher Decl. ¶ 8.)

three weeks for the revisions to run and process due to the volume of data involved and the complexity of the calculations.  (Id.)  Plus, Balance Engines needs time to test the changes and results, perform any necessary re-runs, produce the revised calculations, and Plaintiffs' experts need time to draft a supplemental report describing the corrections.  (Id.)

### C.    Plaintiffs' Request to Supplement Reports Made at Pretrial Conference

The parties attended the pretrial conference on March 7, 2013.  During that conference Plaintiffs alerted the Court that they planned to supplement their expert reports in light of the rebuttal reports and the expert deposition testimony.  Pursuant to the Court's directive, Plaintiffs file this motion to request that the Court permit their experts to provide second supplemental expert reports in this action.

### LEGAL ARGUMENT

### A.    The Court Should Permit Supplementation So The Parties Can Correct Inaccuracies in Their Calculations

Federal Rules of Civil Procedure 26(e) provides for the supplementation of expert reports:

> (1)   **In General**.  A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response:
>
> (A)    in a timely manner if the party learns that response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B)    as ordered by the court.
>
> (2)   **Expert Witness**. For an expert whose report must be disclosed under Rule 26(1)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition.  Any additions or changes to this

6

information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.[5]

Fed. R. Civ. P. 26(e)(1), (2) (emphasis in original).  Rule 26(a)(3)(B) discusses the deadline for pretrial disclosures, stating, "[u]nless the court orders otherwise, [pretrial] disclosures must be made at least 30 days before trial."

Plaintiffs have an obligation to supplement their expert reports to ensure the class' damages calculations are accurate in this certified class action.  "Rule 26(e)(1) permits, indeed requires, that an expert supplement his report and disclosures in certain limited circumstances.  Those circumstances are when the party or expert learns the information previously disclosed is incomplete or incorrect in some material respect."  Cook v. Rockwell Intern. Corp., 580 F. Supp.2d 1071, 1169 (D. Colo. 2006).  Permissible supplementation "means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure."  In re Cessna 208 Series Aircraft Products Liability Litig., No. 05-md-1721-KHV, 2008 WL 4937651 (D. Kan. Nov. 17, 2008).

Judge Vratil addressed this issue in the case of In re Cessna 208 Series Aircraft Products Liability Litig. 2008 WL 4937651 at *2-3.  In that case, during the expert deposition, the expert concluded that two of the opinions sections of his report did not meet certain criteria and should be eliminated from the analysis.  Id. at *1.  Subsequently, he provided a supplemental expert report to revise his opinion as to the total percentages previously mentioned in his report.  Id. at *2.  In that case, the defendant moved to strike the revised report, claiming it was not a proper supplement to the original report because the information in the revised report was available to the expert when he prepared the original report.  Judge Vratil allowed the supplementation,

---

[5] The parties had the pretrial conference on March 7, 2013 and the Court is still working with the parties on the final pretrial order.

stating that the changes were relatively minor and could be characterized as simply correcting inaccuracies in the original report.  She explained that except for minor changes to the percentages (one that benefitted the defendant and one that benefitted the plaintiffs), the opinion portion of the report was not changed.  Id. at *2.

In this case, the parties should be permitted to supplement their reports to revise their damages calculations for the class to make them more accurate.  Both parties' experts have admitted that there are areas in which their calculations can and should be improved.  These revisions are material because they will affect the damages calculations for this certified class action, however, as the Court can see from Plaintiffs' first supplemental expert reports, the modifications Plaintiffs make when simply changing code do not change the overall methodology, processes, or opinions offered by Plaintiffs' experts.  See First Supp. Expert Report of Balance Engines LLC, ECF No. 411, Ex. 2; First Supp. Expert Report of Margaret H. Dunham, ECF No. 411, Ex. 3); E.E.O.C. v. Outback Steak House of Florida, Inc., 2008 WL 3992172, *9-10 (D. Colo. Aug. 20, 2008) (allowing supplemental report where expert utilized same analytical approach, discussed the same problems she has with the data, analyzed a subset of the same data she originally analyzed, reached the same conclusions—just limited to one region, and was made at least 30 days prior to trial).  Nor have Plaintiffs' supplemental reports been provided in an attempt to strengthen or deepen the existing opinion or theory.  See Cook, 580 F. Supp. at 1069 (explaining supplemental reports that intend to strengthen or deepen opinions exceed the bounds of permissible supplementation).  Plaintiffs have simply supplemented in the past to correct inaccuracies in the calculations.

The same is true for the revisions Plaintiffs' experts would like to make to their class-wide damages calculations through their second supplemental expert reports.  Plaintiffs learned

about the issues they intend to correct by reviewing Defendants' rebuttal reports and through the expert depositions.  Plaintiffs brought these issues to the attention of the Court immediately, by raising their intent to supplement the day after the expert depositions concluded.  There is no surprise to Defendants here, and Plaintiffs' intent to supplement was made during their depositions and by the time of the pretrial conference.  See Kansas EPA Laboratory, LLC v. Koll Construction, L.P., No. 04-2422-CM-DJW, 2006 WL 1360083 (D. Kan. May 16, 2006) (finding the supplemental expert report was within realm of appropriate "periodic supplementation" contemplated by Rule 26(e) where the supplemental report was filed a year ahead of trial, promptly following a key deposition, in order to clarify discrete issues related to question of causation already disclosed in initial report as issue expert would be testifying on).  As such, Plaintiffs' ask that their request to supplement be granted.

### B.      Plaintiffs' Supplementation is Harmless

If the Court finds that Plaintiffs' request to supplement is untimely, Plaintiffs must demonstrate that their failure to supplement earlier was substantially justified or is harmless.  Fed. R. Civ. P. 37(c)(1).  The Court need not make explicit findings whether nondisclosure was justified or harmless.  In re Cessna, 2008 WL 4937651 at *3.  Rather, the Court should use its discretion in evaluating the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." Id.

First, there is no prejudice or surprise to Defendants that Plaintiffs plan to refine their calculations to make them more accurate.  Both parties' experts in their rebuttal reports pointed out inaccuracies in the other party's expert calculations.  Because of the complexity of the

calculations and the massive volume of data analyzed, it cannot be said that it was unexpected that revisions would need to be made. Moreover, in their depositions last week, both parties' experts testified that they were considering revising their calculations to make them more accurate. Plaintiffs also raised this issue with the Court during the pretrial conference that followed one day after the expert depositions ended.

Second, there is no prejudice to Defendants if Plaintiffs' experts revise their calculations to make them more accurate. Indeed, last time Plaintiffs made such revisions, damages actually decreased. In addition, Defendants reserved time to continue the depositions of Plaintiffs' experts. During the continuation of those depositions, and, in light of other discovery issues about which the parties must meet and confer, Plaintiffs do not anticipate challenging Defendants' ability to reconvene the depositions. Defendants can question Plaintiffs' experts further about the revisions made to the calculations during those depositions. As mentioned previously, Plaintiffs experts are not revising their overall processes or methodology. They are simply making certain changes to their code to make the calculations more accurate—changes to which they already testified during their depositions.

Third, the revisions will not disrupt trial. The Court just extended the trial date by two months and trial is now seven months away—set for October 7, 2013. There will be sufficient time for Defendants to review Plaintiffs' revisions to the calculations and depose the experts about those revisions should they choose to do so. The deadline for *Daubert* motions should remain unaffected, as the only item Plaintiffs plan to revise is certain code used to calculate damages—not their overall methodology. Accordingly, there will be no surprise or disruption to the trial.

Fourth, there is no bad faith or willfulness by Plaintiffs in requesting that they be permitted to supplement.  Plaintiffs' goal has always been to calculate damages accurately, even if that means damages decrease due to any revisions made.  Plaintiffs reviewed the rebuttal reports of Defendants' experts and have been challenged by Defendants during their depositions and agree that there are areas they can refine to make their calculations more accurate for the class.  In light of their obligation to do so, they are requesting that they be allowed to supplement those calculations.  Kerns v.  Board of Commissioners of Bernalillo County, No. 07-0771, 2010 WL 1632732, *7 (D.N.M. Mar. 31, 2010) (allowing supplementation, explaining the duty to disclose supplemental information regarding calculations and finding the prejudice minimal and that the defendants can have additional discovery).

## CONCLUSION

Plaintiffs respectfully request that the Court allow them to file second supplemental expert reports on or before April 16, 2013.  This request is being made in an effort to correct inaccuracies recently discovered in the damages calculations for the class.  Failure to permit or require that both parties' experts make these revisions when they have testified that revisions should be made only prejudices the class.  As such, Plaintiffs ask that their motion be granted.

Dated:  March 11, 2013                    STUEVE SIEGEL HANSON LLP

                                          /s/ Ashlea G. Schwarz
                                          George A. Hanson, KS Bar No. 16805
                                          Email: hanson@stuevesiegel.com
                                          Ashlea G. Schwarz, KS Bar No. 23491
                                          Email: ashlea@stuevesiegel.com
                                          460 Nichols Road, Suite 200
                                          Kansas City, Missouri 64112
                                          Tel: 816-714-7100
                                          Fax: 816-714-7101


                                          NICHOLS KASTER, PLLP

                                          /s/ Michele R. Fisher
                                          Michele R. Fisher*
                                          Email: fisher@nka.com
                                          Paul J. Lukas*
                                          Email: lukas@nka.com
                                          Rebekah L. Bailey*
                                          Email: bailey@nka.com
                                          4600 IDS Center
                                          80 South 8th Street
                                          Minneapolis, Minnesota 55402
                                          Tel: 612-256-3200
                                          Fax: 612-215-6870
                                          (*Admitted Pro Hac Vice)


                                          ATTORNEYS FOR PLAINTIFFS AND THE
                                          CLASS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 11, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification to the following attorneys of record:

Elise M. Bloom
Gregory Rasin
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
ebloom@proskauer.com
grasin@proskauer.com

Steven D. Hurd
Jacqueline M. Dorn
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
jdorn@proskauer.com
shurd@proskauer.com

Michael L. Blumenthal
Seyferth, Blumenthal & Harris LLC
300 Wyandotte, Suite 430
Kansas City, Missouri 64104
mike@sbhlaw.com

Nicole A. Eichberger
Proskauer Rose LLP
650 Poydras Street, Suite 1800
New Orleans, Louisiana 70130
neichberger@proskauer.com

Mark W. Batten
Proskauer Rose LLP
One International Place
Boston, Massachusetts  02110
mbatten@proskauer.com

Dated: <u>March 11, 2013</u>

<u>/s/Ashlea G. Schwarz</u>
Counsel for Plaintiffs

13