## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROXIE SIBLEY, et al, | Case No. 02:08-CV-2063-KHV/JPO |
| Plaintiffs, | |
| v. | |
| SPRINT NEXTEL CORPORATION, and SPRINT/UNITED MANAGEMENT COMPANY, | |
| Defendants. | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO SUPPLEMENT EXPERT REPORTS

### I.      INTRODUCTION

Plaintiffs' goal in this class action case is simple:  To calculate commissions in the most accurate manner possible to ensure that the class is paid fairly.  Consistent with this goal and their Rule 26(e) duty, Plaintiffs seek to supplement their expert reports immediately after rebuttal reports and expert depositions when they learned of possible revisions to their calculations that could make their class-wide damages results more accurate.  When Plaintiffs disclosed to the Court at the pretrial conference their intent to supplement, Sprint opposed the request, and the Court instructed Plaintiffs to bring the current motion seeking permission from the Court to do so.

Sprint's opposition to this motion is disingenuous.  In opposing Plaintiffs' request to supplement, Sprint withheld material information from the Court directly related to the motion by failing to inform the Court that it produced a new expert report on March 11, 2013—two

business days after the pretrial conference, and the same day that Plaintiffs filed this motion.  So while Sprint argues that the December 12, 2012 deadline to supplement expert reports bars Plaintiffs from supplementing, it omits the fact that it just produced a new expert report without seeking permission from the Court to do so—three months after the date it argues is the "deadline."  This material omission[1] and gamesmanship should not go unnoticed.

In short, because Plaintiffs have an obligation to refine their calculations to make their class damages calculation more accurate without changing their overall methodology or process, and because there is no harm to Sprint, Plaintiffs respectfully request that the Court grant their motion.

## II.      ADDITIONAL FACTS RELEVANT TO MOTION

### A.      Previous Extensions to the Initial Expert Report Deadline

As the Court is aware, this case involves voluminous commissions-related data and a very complex data analysis and calculation to determine class-wide damages.  (Fisher Decl. ¶ 2.) Sprint implies that the Court should deny Plaintiffs' motion to supplement because the Court previously granted three extensions to the *initial* expert report deadline over the past year.  (See Ds. Opp. to Ps Mot., ECF No. 437 at 2.)  Sprint states that it was Plaintiffs who sought and received those extensions.  (Id.)  What Sprint fails to mention is that Plaintiffs' first request for the extension it cites was unopposed because much of the reason for the needed extension was Sprint's fault.  (ECF Nos. 326, 327.)  The second request was a joint one.  (ECF No. 342.)  The third request was made by Plaintiffs and Sprint opposed it.  (ECF No. 355.)  It was a request for a thirty-five day extension to finish processing the data, validating the results, performing the analysis, and finalizing the expert written reports.  (Id.)  Sprint opposed the extension because it

---

[1] This conduct calls into question Sprint's obligation of candor toward the Court.  Model Rules of Prof'l Conduct R. 3.3.

gave its expert the Stage 3 class-wide data to analyze and process months in advance of producing it to Plaintiffs.  (See ECF No. 433, Thornton Dep., Ex. 7 at 245-46; ECF No. 433, Ezell Dep., Ex. 5 at 142-43 (explaining that Thornton's programs show she was running reports on the data at least three months before Sprint produced it to Plaintiffs).)  Sprint waited to give it to Plaintiffs until the final deadline for its Stage 3 production, and then opposed Plaintiffs' motion for a thirty-five day extension after giving its expert a ninety-day head start.  (See Fisher Decl. ¶ 3.)  As such, Plaintiffs have not been dilatory in their calculation of damages and production of their expert reports.

### B.    Supplemental Expert Reports

During depositions, both parties' experts agreed to certain inaccuracies the other party's experts found in their calculations.  (See Ps Mem. In Supp. of Mot. to Supp., ECF No. 433 at 4-5.)  As part of those depositions, Plaintiffs' experts informed Sprint of their plan to supplement to make their calculations more accurate.  (Id.)  Sprint's expert testified that she did not know if she was going to revise her calculations and supplement her report.  (ECF No. 433 at 4; ECF No. 433, Thornton Dep., Ex. 7 at 248.)

At the pretrial conference on Thursday, March 7, 2013, which took place the day after expert depositions concluded, Plaintiffs alerted the Court to their need to supplement their expert reports.  (Fisher Decl. ¶ 4.)   Sprint objected to Plaintiffs' request and the Court instructed Plaintiffs to file a motion seeking permission from the Court to supplement.  (Id.)

On Monday, March 11, 2013, Plaintiffs' filed this motion.  (ECF No. 433.)  On the same day, shortly after Plaintiffs filed their motion, Sprint produced to Plaintiffs another report from their expert, Dr. Janet Thornton.  (Fisher Decl. ¶ 5; Thornton Aff. (3/11/13), Ex. 1.)  Rather than a permissible supplement under Rule 26(e), most of her new written report consists of a further

3

critique of Plaintiffs' experts and a deepening of her previous arguments and analysis.  (See Thornton Aff. (3/11/13), Ex. 1.)  The only true supplements she provided were included in three paragraphs where she explained how she recently fixed inaccuracies in her calculations that Plaintiffs' experts pointed out in their rebuttal reports and depositions.  (Id. at ¶¶ 19, 22, 28.) Paragraphs 29-32 of her March 11, 2013 report contain revised graphs reflecting information from these new calculations. (Id. at 29-32.)  On March 13, 2013, Plaintiffs received from Sprint two DVDs containing new data files, output files and programs for her revised calculations.[2] (Fisher Decl. ¶ 6.)  Plaintiffs intend to move to strike all but paragraphs 19, 22, 28-32 of Thornton's new report as impermissible under Rule 26(e) and the relevant case law.

## III.    ARGUMENT

In opposing Plaintiffs' motion, Sprint makes two primary arguments:[3] (1) that Plaintiffs' supplementation will modify Plaintiffs' methodology and is thus improper; and (2) that Plaintiffs cannot show that supplementation is harmless or substantially justified.  Both arguments should be rejected.

### A.    Plaintiffs are Not Changing Their Methodology

Both parties' experts learned through dueling rebuttal reports and depositions that there were places in their complex calculations that could be refined to make those calculations more accurate.  During their depositions, Plaintiffs' experts disclosed where they intended to or were considering supplementing their reports by making some revisions to their coding.  As Plaintiffs previously explained, these changes will be made using the same system created to calculate the

---

[2] To date, Plaintiffs' experts have not had time to review all of this new data Sprint provided as they are currently working on revising their calculations.  (Fisher Decl. ¶ 6.)

[3] Sprint states in its fact section that Plaintiffs' supplementation is untimely, but does not proffer any legal arguments about timeliness.  That is likely because Sprint produced an untimely supplemental expert report and does not want to make arguments that might result in the Court striking it.

commissions and same overall methodology detailed in Plaintiffs' initial expert reports.  These changes will simply result in a revision to the coding, a re-running of the commission calculation, and a supplemental report detailing the refinements—similar to the first supplemental reports Plaintiffs produced on December 12, 2012.  (See ECF No. 433; First Supp. Expert Report of Balance Engines LLC, ECF No. 411, Ex. 2; First Supp. Expert Report of Margaret H. Dunham, ECF No. 411, Ex. 3.)

Sprint's expert made similar changes to her code a week ago to correct errors Plaintiffs found in her calculations, and she produced a new report explaining these changes and new data files, output files and programs that contain her revisions and new calculations.  She failed to disclose this to the Court because she did precisely what Sprint is arguing the Court should restrict Plaintiffs from doing—she corrected inaccuracies in her calculations and produced the new data, programs, output and calculations that resulted.  If Sprint's expert can fix errors in her calculations based on information she learned through rebuttal reports and deposition testimony, Plaintiffs should be able to do the same.

Next, the changes Plaintiffs' experts are making or considering making are not all a result of errors that are the fault of Plaintiffs' experts in performing the calculations.  For example, Sprint incorrectly argues that "possible modifications to ramp up/guarantees" is only necessary as a result of "flawed methodology."  (ECF No. 437 at 6.)  Plaintiffs' experts calculated ramp up and guarantees consistent with the Expert Stipulation.  (Ezell Dep., Ex. 2, 181-85, 194-99; ECF No. 357 ¶¶ 5-7, 15.)  The issue is whether the parties should look to Sprint's compensation statement data or quota data to determine whether an employee was on ramp up or guarantee in a certain month.  (Ezell Dep., Ex. 2, 181-85, 194-99)  Plaintiffs' experts looked to Sprint's quota data to find this information.  (Id.)  Sprint's expert apparently looked to Sprint's compensation

statement data to find this information.  Because of conflicting information contained in the data produced by Sprint, both methods are arguably acceptable according to the Expert Stipulation. (ECF No. 357 ¶¶ 5-7, 15.)  Regardless, Plaintiffs' experts are considering using the compensation statement data instead of the quota data to eliminate this difference between the parties' expert calculations.

Finally, the changes Plaintiffs' experts are making to their calculations have to do with information they learned via the rebuttal process and expert depositions.  They are not seeking permission to provide a supplemental report for an improper purpose, such as to provide additional opinions or rationales or to strengthen or deepen their opinions expressed.  See Cook v. Rockwell Intern. Corp., 580 F.Supp.2d 1071, 1169 (D. Colo. 2006) (explaining that a supplemental report that states additional opinions or rationales or seeks to strengthen or deepen opinions expressed in the original expert report exceeds the bounds of permissible supplementation.)  Furthermore, they are not seeking to provide a sur-rebuttal.  Plaintiffs' experts are simply seeking to supplement by making revisions to their calculations to make them more accurate for the class.  See In re Cessna 208 Series Aircraft Products Liability Litig., No. 05-md-1721-KHV, 2008 WL 4937651 (D. Kan. Nov. 17, 2008) (explaining that permissible supplementation "means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.")

### B.   Supplementation Does Not Harm Sprint

As Plaintiffs stated in their initial Memorandum, if the Court finds that Plaintiffs' request to supplement is untimely, Plaintiffs must demonstrate that their failure to supplement earlier was substantially justified or is harmless.  Fed. R. Civ. P. 37(c)(1).  The Court need not make explicit findings whether nondisclosure was justified or harmless.  In re Cessna, 2008 WL

4937651 at *3.  Rather, the Court should use its discretion in evaluating the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  Id.

Sprint's claim of harm is entirely unsupported.  It fails to articulate how it is harmed, or address all of the factors this Court reviews in making this determination.  While Sprint argues that it will incur additional costs, it fails to explain why.  While Sprint argues that Daubert motions will be affected, it does not explain how.   Sprint fails to provide these explanations because any arguments it makes hold true for Sprint's recent production of its supplemental expert report and revised damages calculation.

Making a few changes to the coding to calculate damages more accurately does not affect Sprint's ability to timely file its Daubert motion on March 25, 2013.  Sprint is fully aware of Plaintiffs' proposed revisions to their calculations and already questioned Plaintiffs' experts about them in their depositions.  Sprint has not requested any further discovery, and has not met or conferred with Plaintiffs' counsel about a need to depose Plaintiffs' experts further.  This is because Sprint already has all the information it needs to challenge the qualifications and methodologies used by the experts in their Daubert motion.

Finally, Plaintiffs' experts are not seeking permission to submit "brand new reports" as Sprint asserts.  As the Court can see from Plaintiffs' prior supplemental expert reports, when Plaintiffs supplement, the information they provide is truly just a supplement to fix an inaccuracy in a calculation—unlike Sprint's report it just produced, most of which cannot be considered supplemental.  Plaintiffs' experts have an obligation under the Federal Rules to make this

7

supplement, and a similar duty to the class as well.  They have shown that supplementation is substantially justified and harmless and that their motion should be granted.

## III.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant their motion.

Dated: <u>March 18, 2013</u>                         STUEVE SIEGEL HANSON LLP

                                                     /s/ Ashlea G. Schwarz
                                                     George A. Hanson, KS Bar No. 16805
                                                     Email: hanson@stuevesiegel.com
                                                     Ashlea G. Schwarz, KS Bar No. 23491
                                                     Email: ashlea@stuevesiegel.com
                                                     460 Nichols Road, Suite 200
                                                     Kansas City, Missouri 64112
                                                     Tel: 816-714-7100
                                                     Fax: 816-714-7101


                                                     NICHOLS KASTER, PLLP

                                                     /s/ Michele R. Fisher
                                                     Michele R. Fisher*
                                                     Email: fisher@nka.com
                                                     Paul J. Lukas*
                                                     Email: lukas@nka.com
                                                     Rebekah L. Bailey*
                                                     Email: bailey@nka.com
                                                     4600 IDS Center
                                                     80 South 8th Street
                                                     Minneapolis, Minnesota 55402
                                                     Tel: 612-256-3200
                                                     Fax: 612-215-6870
                                                     (*Admitted Pro Hac Vice)


                                                     ATTORNEYS FOR PLAINTIFFS AND THE CLASS

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 18, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification to the following attorneys of record:

Elise M. Bloom
Gregory Rasin
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
ebloom@proskauer.com
grasin@proskauer.com

Steven D. Hurd
Jacqueline M. Dorn
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
jdorn@proskauer.com
shurd@proskauer.com

Michael L. Blumenthal
Seyferth, Blumenthal & Harris LLC
300 Wyandotte, Suite 430
Kansas City, Missouri 64104
mike@sbhlaw.com

Nicole A. Eichberger
Proskauer Rose LLP
650 Poydras Street, Suite 1800
New Orleans, Louisiana 70130
neichberger@proskauer.com

Mark W. Batten
Proskauer Rose LLP
One International Place
Boston, Massachusetts  02110
mbatten@proskauer.com

Dated: <u>March 18, 2013</u>

<u>/s/Ashlea G. Schwarz</u>
Counsel for Plaintiffs