**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ROXIE SIBLEY, et al, | Case No. 02:08-CV-2063-KHV/JPO |
| Plaintiffs, | |
| v. | |
| SPRINT NEXTEL CORPORATION, and SPRINT/UNITED MANAGEMENT COMPANY, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO STRIKE 3/11/13 AFFIDAVIT OF JANET R. THORNTON**

**I.   INTRODUCTION**

When the parties attended the pretrial conference on March 7, 2013, Plaintiffs alerted the Court of their intent to file a supplemental report to fix inaccuracies in their calculations they discovered through rebuttal reports and expert depositions. Sprint objected and the Court instructed Plaintiffs to file a motion requesting permission to supplement. Plaintiffs filed that motion on March 11, 2013. An hour and a half later, Sprint produced a new report from their expert, Janet Thornton ("Thornton"), without first requesting leave from the Court.

While Plaintiffs agree to supplementation that is permissible under the Rules and the case law, namely, to fix inaccuracies in the calculations, the latest filing by Sprint's expert can only be described as a "sur-rebuttal" that repeats arguments already made and adds new arguments Sprint's expert has never before made. As such, other than the three paragraphs that discuss the fixes Sprint's expert made to ensure her calculations were more accurate, the four paragraphs

that summarize the changes to her resulting damages calculation, and a couple of introductory paragraphs, Sprint's March 11, 2013 sur-rebuttal report should be stricken.

## II.     FACTS RELEVANT TO MOTION

### A.     Expert Reports Production

The parties' experts used data produced by Sprint to calculate commissions due to the class and compare those calculations to the commissions Sprint paid.  The parties produced their initial expert reports on October 15, 2012, consistent with the Seventh Amended Scheduling Order.  (Seventh Am. Sched. Order, ECF No. 355; Fisher Decl. ¶ 2.)  Plaintiffs produced one expert report from Balance Engines LLC, which calculated damages in this action, and another expert report from Dr. Margaret Dunham ("Dunham"), who performed a technical review to ensure Balance Engines' work was the product of reliable principles and methods.  (Fisher Decl. ¶ 3; Expert Report of Balance Engines LLC, ECF No. 366-3, Ex. A; Expert Report of Margaret H. Dunham, ECF No. 366-1, Ex. A.)  Sprint produced an expert report from Thornton of ERS Group.  (Fisher Decl. ¶ 3; Thornton Aff., ECF No. 366-2, Ex. A.)

On November 14, 2012, Plaintiffs moved to strike Sprint's expert report because it failed to provide an explanation as to how the expert arrived at her conclusions.  (ECF No. 366.)  In response, Sprint argued that its expert report was complete.  (ECF No. 369.)  On December 13, 2012, the Court ordered Sprint to provide an expert report that consolidated expert information previously produced, and ordered Sprint to pay Plaintiffs' attorneys' fees incurred in bringing the motion.  (ECF No. 380.)  The Court explained that Plaintiffs were "entitled to a single, complete, expert report" and that Sprint did not give "insight into [their expert's] methodology until they were forced to respond to the motion."  (Id. at 8-9.)  On December 20, 2012, Sprint produced an expert report, as ordered by the Court.  This expert report not only consolidated information

previously produced, but also added a significant amount of new information about their expert's methodologies. (See Thornton Aff., ECF No. 411, Ex. 1 (highlighting added to show new content).)

On December 12, 2012, Plaintiffs produced their first supplemental expert reports. (Fisher Decl. ¶ 4; First Supp. Expert Report of Balance Engines LLC, Ex. 1; First Supp. Expert Report of Margaret H. Dunham, Ex. 2.) As Plaintiffs' expert testified in his deposition, the damages calculation for the initial expert report had only finished processing the morning that the initial expert reports were due. (Ezell Dep., Ex. 7 at 16-17.) This resulted in Plaintiffs' experts finding certain revisions to be made to their calculations but not having time to make them until after the deadline for the initial expert report.[1] In their first supplemental report, Plaintiffs' experts made five minor modifications to refine the accuracy of their calculations. (See Plt. Resp. in Opp. to D. Mot., ECF No. 411 at 3.) These modifications resulted in a decrease in damages. (See id. at 1.)

Despite the decrease, Sprint asked the Court to strike Plaintiffs' supplemental expert reports. The Court refused, explaining that Plaintiffs' experts did not produce wholly new reports, but rather, the appropriate Rule 26(e)(2) supplementations. (See generally Order, ECF No. 421 at 17.) The Court also found that the supplementation was timely, explaining that "the scheduling order set the deadline for supplementation required by Fed. R. Civ. P. 26(e) (which includes subsection (e)(2), supplementation of expert reports) at 40 days before the discovery deadline, making plaintiff's supplements to their expert reports due the day the supplemental reports were served—December 12, 2012." (Order, ECF No. 421 at 17.)

---

[1] Sprint's expert admitted that Sprint provided her with the data necessary to do her analysis well in advance of Sprint providing it to Plaintiffs. (Thornton Dep., Ex. 8 at 245-46; Ezell Dep., Ex. 7 at 151 (explaining that Thornton's programs show she was running reports on the data at least three months before Sprint produced it to Plaintiffs).)

3

On February 14, 2013, the parties exchanged rebuttal reports, consistent with the scheduling order.  (Fisher Decl. ¶ 5.)  Plaintiffs produced rebuttal reports from Balance Engines and Dunham.  (Exs. 3, 4.)  Sprint produced a rebuttal report from Thornton.  (Ex. 5.)

### B.      Expert Depositions

After producing rebuttal reports, the parties took the four expert depositions in a seven day span including the weekend.  (Fisher Decl. ¶ 6.)  Plaintiffs deposed Thornton on February 28, 2013.  (Id.)  Sprint deposed Dunham on March 1, 2013, and then Nile Nickel and Barry Ezell of Balance Engines on March 5th and 6th respectively.  (Id.)

During depositions both parties' experts agreed to certain inaccuracies the other party's experts found in their calculations, and Plaintiffs' experts informed Sprint of their plan to supplement to make their calculations more accurate.  (See Ps Mem. In Supp. of Mot. to Supp., ECF No. 433 at 4-5.)  Sprint's expert testified that she did not know if she was going to revise her calculations and supplement her report.  (Thornton Dep., Ex. 8 at 248.)

At the pretrial conference on Thursday, March 7, 2013, which took place the day after expert depositions concluded, Plaintiffs alerted the Court to their need to supplement their expert reports.  (Fisher Decl. ¶ 7.)   Sprint objected to Plaintiffs' request and the Court instructed Plaintiffs to file a motion seeking permission from the Court to supplement.  (Id.)

On Monday, March 11, 2013, Plaintiffs filed a motion seeking leave to file second supplemental expert reports.  (ECF No. 433.)  The same day, shortly after Plaintiffs filed their motion, Sprint produced another report for their expert.  (Fisher Decl. ¶ 8; Thornton Aff. (3/11/13), Ex. 6.)  Most of Thornton's new written report consists of sur-rebuttal, a further critique of Plaintiffs' experts and reports, new arguments, and a deepening of her previous arguments and analysis.  (See Thornton Aff. (3/11/13), Ex. 6.)  The only true supplement she

provides is found in three paragraphs where Thornton explains how she recently fixed inaccuracies in her calculations that Plaintiffs' experts pointed out in their rebuttal reports and depositions. (Id. at ¶¶ 19, 22, 28.) Paragraphs 29-32 of her March 11, 2013 report contain revised graphs reflecting information from her new calculations. (Id. at 29-32.) On March 13, 2013, Plaintiffs received from Sprint two DVDs containing new data files, output files and programs for Thornton's revised calculations. (Fisher Decl. ¶ 9.)

### III. ARGUMENT

#### A. Thornton's Report Should Be Stricken as Untimely for Failure to Seek Leave

Federal Rules of Civil Procedure 26(e) explains when expert reports can be supplemented:

> (1) **In General**. A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response:
>
>     (A) in a timely manner if the party learns that response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
>     (B) as ordered by the court.
>
> (2) **Expert Witness**. For an expert whose report must be disclosed under Rule 26(1)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e)(1), (2) (emphasis in original). Rule 26(a)(3)(B) discusses the deadline for pretrial disclosures, stating, "[u]nless the court orders otherwise, [pretrial] disclosures must be made at least 30 days before trial."

When Plaintiffs produced their first supplement expert reports on December 12, 2012, Sprint objected to the production arguing that those reports were not timely and should be

5

stricken. (ECF No. 400 at 13, 19-20.) Sprint also argued for sanctions and stated "Plaintiffs did not seek leave of court to serve these supplemental disclosures nor are they timely 'supplemental' disclosures." (Id.) The Court rejected Sprint's arguments, explaining that "the scheduling order set the deadline for supplementation required by Fed. R. Civ. P. 26(e) (which includes subsection (e)(2), supplementation of expert reports) at 40 days before the discovery deadline, making plaintiffs' supplements to their expert reports due the day the supplemental reports were served—December 12, 2012." (ECF No. 421 at 17.) It explained that a reasonable person could have interpreted the deadline in the manner as did Plaintiffs. (Id.)

With respect to expert rebuttal reports, the scheduling order sets a deadline of February 14, 2013 for the production of those reports and does not provide for the production of expert sur-rebuttal reports. (Seventh Am. Sched. Order, ECF No. 355.)

This Court has specific rules for filing a motion for leave related to documents that may not be filed as a matter of right. D. Kan. Rule 15.1. Although Sprint argued that Plaintiffs' first supplemental reports filed *last year* were untimely, that Plaintiffs should have sought leave to file them, and that Plaintiffs should be sanctioned for their supplementation, Sprint wholly ignored these arguments when it produced its new expert report on March 11, 2013. Because Sprint did not seek leave from the Court to produce its recent report as required by the Local Rules, and as the Court instructed Plaintiffs to do during the pretrial conference, the Court should strike it in its entirety. (See e.g. Leviton Mfg. Co., Inc. v. Nicor, Inc., 245 F.R.D. 524, 529-31 (D. New Mexico 2007) (excluding "supplemental" expert report as untimely as no motion for leave was filed and finding it was not a permissible supplement because it was not submitted to fix a prior incorrect report); Howard v. TMW Enter., Inc., 32 F.Supp.2d 1244, 1253 (D. Kan. Dec. 7, 1998) (J. Vratil) (refusing to consider expert affidavit where it was not timely filed under

6

scheduling order, the plaintiffs did not seek leave of court to file it before the deadline expired pursuant to D. Kan. Rule 6.1, and no excusable neglect shown for failure to do so.); see also D.G. ex rel v. Henry, No. 08-cf-74-GKF-FHM, 2011 WL 2881461,*1-3 (denying the plaintiffs' request to provide sur-rebuttal expert reports).

### B.   If the Court Permits Thornton to Supplement, Her Report Should Be Limited to Items that Are Permissible Supplementation Under the Law

Federal Rule of Civil Procedure 26(e)(1) permits expert supplementation in certain limited circumstances. "Those circumstances are when the party or expert learns the information previously disclosed is incomplete or incorrect in some material respect." Cook v. Rockwell Intern. Corp., 580 F. Supp.2d 1071, 1169 (D. Colo. 2006). Permissible supplementation "means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." In re Cessna 208 Series Aircraft Products Liability Litig., No. 05-md-1721-KHV, 2008 WL 4937651, *2 (D. Kan. Nov. 17, 2008) (J. Vratil.) "A supplemental expert report that states additional opinions or rationales or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)." Cook v. Rockwell Intern. Corp., 580 F.Supp.2d 1071, 1069 (D. Colo. 2006). "To rule otherwise would create a system where preliminary expert reports could be followed by supplementary expert reports and there would be no finality to expert reports, as each side, in order to buttress its case or position could 'supplement' existing reports and modify opinions given. Id.

First, rebuttal is not permissible supplementation. As explained above, the parties and this Court set a deadline for rebuttal reports of February 14, 2013. The parties did not agree to sur-rebuttal reports and the Court did not order them. Thus, sur- rebuttal should be precluded.

7

Second, most of the information Thornton provided in her March 11, 2013 report is not permissible supplementation. Although the expert reports in this case have been complicated, it is easy to review Thornton's recent report and readily discern what is permissible supplementation and what is sur-rebuttal and/or additional opinions, rationale, or new arguments made in an attempt to bolster Thornton's analysis.

| Para. in 3/11/13 report | Topic | Classification of Content | Citation to Other Relevant Report | Plaintiffs' Position |
|---|---|---|---|---|
| 1 | Into and qualifications | Intro material and repeat from Thornton's prior report | N/A | No opposition |
| 2 | Assignment to further review rebuttals and testimony and restatement of prior conclusions | Intro material and repeat from Thornton's prior report | N/A | No opposition |
| 3 | Repeat from prior reports about Stage 3 data she relied on. Argument against rebuttal of Ps' experts calling into question whether Thornton relied solely on Stage 3 data | Repeat from Thornton's prior report and additional opinions or rationales to bolster Thornton's analysis | Ex. 6 ¶ 3 (Thornton provides references to her prior reports) | Should be stricken—not permissible supplementation |
| 4 | Summary of point of report | Introductory material | N/A | No opposition |
| 5 | Argument against rebuttal reports of Ps' experts questioning Thornton's use of Stage 3 data | Rebuttal to Ps' expert rebuttal reports and additional opinions or rationales to bolster Thornton's analysis | Ex. 3 ¶ 49 | Should be stricken—sur-rebuttal and not permissible supplementation |
| 6 | Argument against initial reports of Ps' experts re missing RMS files from Stage 3 production | Rebuttal to Ps' initial expert reports and additional opinions or rationales to bolster Thornton's analysis | ECF No. 366-3, Ex. A ¶ 24 fn.2 | Should be stricken—sur-rebuttal and not permissible supplementation |
| 7 | Argument against rebuttal reports of Ps' experts questioning number of class members Thornton analyzed | Rebuttal to Ps' expert rebuttal reports and additional opinions or rationales to bolster Thornton's analysis | Ex. 4 p.16; Ex. 3 ¶ 45 | Should be stricken—sur-rebuttal and not permissible supplementation |
| 8 | Argument against rebuttal | Rebuttal to Plaintiffs' | Ex. 4 p. 15 and | Should be |

8

|  | reports and deposition testimony of Ps' experts stating Thornton discarded first month of data | expert rebuttal report and additional opinions or rationales to bolster Thornton's analysis | deposition testimony on same topic cited by Sprint | stricken—sur-rebuttal and not permissible supplementation |
|---|---|---|---|---|
| 9 | Argument against rebuttal reports of Ps' experts stating Thornton was missing data for class member Bremmeyer | Rebuttal to Ps' expert rebuttal reports and additional opinions or rationales to bolster Thornton's analysis | Ex. 4 p. 15 | Should be stricken—sur-rebuttal and not permissible supplementation |
| 10 | Argument against rebuttal reports of Ps' experts stating Thornton dropped data for class member Santana | Rebuttal to Ps' expert rebuttal reports and additional opinions or rationales to bolster Thornton's analysis | Ex. 4 pp. 16-17 | Should be stricken—sur-rebuttal and not permissible supplementation |
| 11-13 | Argument against rebuttal reports of Ps' experts stating Thornton did not include all relevant SOCs and new arguments about her further analysis of SKUs and SOCs | Rebuttal to Ps' expert rebuttal reports and additional opinions or rationales to bolster Thornton's analysis and new argument and analysis not previously disclosed | Ex. 3 ¶¶ 8-12 | Should be stricken—sur-rebuttal and not permissible supplementation, |
| 14-18 | Arguments against rebuttal reports of Ps' experts stating Thornton did not include all relevant SKUs and new arguments about her further analysis of SKUs | Rebuttal to Ps' expert rebuttal reports and additional opinions or rationales to bolster Thornton's analysis and new argument and analysis not previously disclosed | Ex. 3 ¶¶ 13-15 | Should be stricken—sur-rebuttal and not permissible supplementation, |
| 19 | Describing errors in her prior calculations discovered by Ps' experts and fixes she made | Fix made to correct inaccuracy | N/A | No opposition |
| 20-21 | Arguments against rebuttal reports of Ps' experts stating Thornton calculated commissions for pre-owned and reconditioned phones incorrectly | Rebuttal to Ps' expert rebuttal reports and additional opinions or rationales to bolster Thornton's analysis | Ex. 3 ¶ 90. | Should be stricken—sur-rebuttal and not permissible supplementation |
| 22 | Describing errors in her prior calculations discovered by Ps' experts and fixes she made | Fix made to correct inaccuracy | N/A | No opposition |
| 23-24 | Arguments against rebuttal reports of Ps' experts re failure to apply caps and new | Rebuttal to Ps' expert rebuttal reports and additional opinions or | Ex. 3 ¶ 43 | Should be stricken—sur-rebuttal and not |

9

|  | | | | |
|---|---|---|---|---|
|  | arguments not previously disclosed | rationales to bolster Thornton's analysis | | permissible supplementation |
| 25-27 | Arguments against rebuttal reports of Ps' experts re Thornton's erroneous use of margin of error | Rebuttal to Ps' expert rebuttal reports and additional opinions or rationales to bolster Thornton's analysis | Ex. 4 pp. 2, 10-12 | Should be stricken—sur-rebuttal and not permissible supplementation |
| 28 | Describing errors in her prior calculations discovered by Ps' experts and fixes she made | Fix made to correct inaccuracy | N/A | No opposition |
| 29-32 | Summary of Thornton's conclusions after making the fixes to her calculations | Charts showing results after fixes made to correct inaccuracies. | N/A | No opposition |
| 33 | Introduction to sections where Thornton makes further arguments against rebuttal reports of Ps' experts | Rebuttal to Ps' expert rebuttal report | None | Should be stricken—sur-rebuttal |
| 34 | Arguments against rebuttal reports of Ps' experts re failure to test | Rebuttal to Ps' expert rebuttal reports and additional opinions or rationales to bolster Thornton's analysis | Ex. 4 pp. 6; Ex. 3 ¶ 48 | Should be stricken—sur-rebuttal and not permissible supplementation |
| 35 | Statement that Thornton retained certain data | New argument about document retention in light of her deposition testimony she and her team did not maintain all data or destroyed it | None | Should be stricken—sur-rebuttal and not permissible supplementation |
| 36 | Arguments against rebuttal reports of Ps' experts re flow of execution of programs and new argument about Ps' experts programs | Rebuttal to Ps' expert rebuttal reports and additional opinions or rationales to bolster Thornton's analysis and new argument not previously disclosed | Ex. 4 p. 6; Ex. 3 ¶¶ 46-48 | Should be stricken—sur-rebuttal and not permissible supplementation |
| 37 | Arguments against rebuttal reports of Ps' experts re lack of traceability and validation | Rebuttal to Ps' expert rebuttal reports and additional opinions or rationales to bolster Thornton's analysis | Ex. 3 ¶¶ 46-48; Ex. 4 p. 6, 20 | Should be stricken—sur-rebuttal and not permissible supplementation |
| 38 | Arguments against rebuttal reports of Ps' experts re ODR records with missing valid transaction sequence | Rebuttal to Ps' expert rebuttal reports and additional opinions or rationales to bolster Thornton's analysis | Ex. 3 ¶ 28 | Should be stricken—sur-rebuttal and not permissible supplementation |
| 39-40 | Arguments against rebuttal | Rebuttal to Ps' expert | Ex. 3 ¶¶ 30-32 | Should be |

|  |  |  |  |  |
|---|---|---|---|---|
|  | reports of Ps' experts re collapsing of data, new argument regarding manual review, and new critique of Ps' expert processes not previously disclosed | rebuttal reports and additional opinions or rationales to bolster Thornton's analysis |  | stricken—sur-rebuttal and not permissible supplementation |
| 41-42 | Arguments against rebuttal reports of Ps' experts re flaws in bucketing approach to calculations and further critique of Ps' expert process | Rebuttal to Ps' expert rebuttal reports and additional opinions or rationales to bolster Thornton's analysis | Ex. 3 ¶¶ 33-36 | Should be stricken—sur-rebuttal and not permissible supplementation |
| 43-44 | Arguments against rebuttal reports of Ps' experts re program warning errors ignored | Rebuttal to Ps' expert rebuttal reports and additional opinions or rationales to bolster Thornton's analysis | Ex. 3 ¶¶ 37-40 | Should be stricken—sur-rebuttal and not permissible supplementation |
| 45 | Arguments against rebuttal reports of Ps' experts re data fragments and new arguments about process and manual review | Rebuttal to Ps' expert rebuttal reports and additional opinions or rationales to bolster Thornton's analysis | Ex. 3 ¶ 41 | Should be stricken—sur-rebuttal and not permissible supplementation |
| 46 | Arguments against rebuttal reports of Ps' experts re flawed appeals analysis and new analysis not previously disclosed regarding appeals | Rebuttal to Ps' expert rebuttal reports and additional opinions or rationales to bolster Thornton's analysis (including new charts and appendices with analyses previously not disclosed) | Ex. 4 pp. 17-20 | Should be stricken—sur-rebuttal and not permissible supplementation |
| 47-49 | New arguments about revisions Thornton purportedly made to Ps experts' calculations and the results not previously disclosed, and new criticism of Ps' experts not previously disclosed | Rebuttal to Ps' expert rebuttal reports and additional opinions or rationales to bolster Thornton's analysis and new argument and analysis not previously disclosed | None | Should be stricken—sur-rebuttal and not permissible supplementation |
| 50-53 | New argument because an example cited in previous report did not support Thornton's position so she created an entirely new one and further critique of Ps' experts' calculations not previously disclosed | New arguments | None | Should be stricken—sur-rebuttal and not permissible supplementation |

11

If the Court decides not to strike Thornton's report in its entirety for failure to seek leave, Plaintiffs do not oppose paragraphs 1, 2, and 4 remaining as they contain introductory content. Nor do Plaintiffs oppose paragraphs 19, 22, or 28-32, as they contain true supplementation required under the Rules. However, the remaining paragraphs should be stricken because they either: (1) contain sur-rebuttal (arguments made directly to Plaintiffs' rebuttal reports) intended to bolster Thornton's analysis and further critique Plaintiffs' experts, or (2) make new or additional arguments intended to strengthen or deepen opinions Thornton previously disclosed. See Akeva L.L.C. v. Mizuno Corp., 212 F.R.D. 306, 310 (M.D.N.C. 2002) (stating that to construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation; distinguishing additional rebuttal from permissible supplementation when a party learns the information disclosed was incomplete or incorrect).

While Judge Vratil permits supplementation to fix inaccuracies, as described in In re Cessna, 2008 WL 4937651 at *2-3, this Court should not allow Sprint to file a sur-reply or new arguments when the filing of such were not agreed to by the parties in the scheduling order, or ordered by the Court.

## C. Thornton's Entire March 11, 2013 Report Should Be Stricken if Plaintiffs Are Not Permitted to Supplement

As described in detail in Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Supplement Expert Reports (ECF No. 433) and their Reply (ECF No. 438) Plaintiffs wish to revise their damages calculation to fix inaccuracies they discovered through the rebuttal reports and expert depositions in order to ensure the accuracy of the damages calculation for the class. In Thornton's March 11, 2013 report she does the same, making revisions to her calculations in an attempt to fix certain inaccuracies she discovered from Plaintiffs' experts, and producing new

data files, output files and programs for her new calculations. While Plaintiffs believe that it would be best if the Court allow each party to provide their supplemental reports with these fixes, it would be unfair to permit one party to do so and not the other. Accordingly, if the Court denies Plaintiffs' motion to supplement (ECF No. 433) Plaintiffs request that it strike Thornton's March 11, 2013 report in its entirety as well.

## IV.    CONCLUSION

The goal in this case should be to determine the damages due to the class as accurately as possible. Allowing each party's expert to supplement to fix inaccuracies in their calculations they discovered as part of the rebuttal and expert deposition process furthers that goal. Accordingly, the Court should allow both parties to do so, but should strike the information in Thornton's report that is not permissible supplementation. As such, Plaintiffs request that the Court strike Thornton's March 11, 2013 report, with the exception of paragraphs 1, 2, 4, 19, 22, and 28-32, and grant Plaintiffs' motion to supplement their expert reports, which was filed on March 11, 2013. (See ECF No. 433.)

Dated:  March 18, 2013                          STUEVE SIEGEL HANSON LLP

*/s/ Lee Anderson*
George A. Hanson, KS Bar No. 16805
Email: hanson@stuevesiegel.com
Ashlea G. Schwarz, KS Bar No. 23491
Email: ashlea@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
Fax: 816-714-7101

        NICHOLS KASTER, PLLP

        /s/ *Michele R. Fisher*
        Michele R. Fisher*
        Email: fisher@nka.com
        Paul J. Lukas*
        Email: lukas@nka.com
        Rebekah L. Bailey*
        Email: bailey@nka.com
        4600 IDS Center
        80 South 8th Street
        Minneapolis, Minnesota 55402
        Tel: 612-256-3200
        Fax: 612-215-6870
        (*Admitted *Pro Hac Vice*)

        ATTORNEYS FOR PLAINTIFFS AND THE CLASS

# CERTIFICATE OF SERVICE

      I hereby certify that on March 18, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification to the following attorneys of record:

Elise M. Bloom
Gregory Rasin
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
ebloom@proskauer.com
grasin@proskauer.com

Michael L. Blumenthal
Seyferth, Blumenthal & Harris LLC
300 Wyandotte, Suite 430
Kansas City, Missouri 64104
mike@sbhlaw.com

Mark W. Batten
Proskauer Rose LLP
One International Place
Boston, Massachusetts  02110
mbatten@proskauer.com

Steven D. Hurd
Jacqueline M. Dorn
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
jdorn@proskauer.com
shurd@proskauer.com

Nicole A. Eichberger
Proskauer Rose LLP
650 Poydras Street, Suite 1800
New Orleans, Louisiana 70130
neichberger@proskauer.com

Dated: <u>March 18, 2013</u>                                                  <u>/s/Lee Anderson</u>
                                                                               Counsel for Plaintiffs