# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROXIE SIBLEY, JEANNE NOEL, ERNESTO BENNETT, JAMIE WILLIAMS, GREG ST. JULIEN, TRACIE HERNANDEZ, JOHN JASINSKI, JAY RICHIE, and TEISHA KING, individually and on behalf of a class of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SPRINT NEXTEL CORPORATION, a Kansas corporation, <br><br> and <br><br> SPRINT/UNITED MANAGEMENT COMPANY, a Kansas corporation, <br><br> Defendants. | Case No. 02:08-CV-02063-KHV/JPO |

**SECOND SUPPLEMENTAL EXPERT REPORT OF DR. MARGARET H. DUNHAM**

**I.   INTRODUCTION**

The objective of my report is to provide an audit of the work performed by Balance Engines LLC in producing its second supplemental expert report with the goal of determining if this work was the product of reliable principles and methods. It is my understanding that the purpose of the work performed by Balance Engines was to incorporate changes into its software to address issues recently discovered and then to rerun its class calculations.

The major inputs to my analysis are previous expert and rebuttal reports provided by Plaintiffs' and Defendants' experts, logs created by Balance Engines that provide an overview of its work, and code and output produced by the new runs performed.[1] It is my understanding that the need

---

[1] In this document I refer to the original implementation of The Product by Balance Engines as The First Calculation. The implementation produced for the First Supplemental Report will be referred to as The First Supplemental Calculation and the implementation of The Product performed for this report will be referred to as The Second Supplemental Calculation.

for such changes and the efficacy of their implementation was determined by Balance Engines personnel with approval from Class Counsel.

The purpose of my audit is to analyze the work performed by Balance Engines in preparation of its Second Supplemental Report. I am not evaluating that report itself, but rather, the work performed in preparing their report and in deriving new damages calculations. Most changes made by Balance Engines in its Second Supplemental Calculation have been based on issues raised by Dr. Thornton in her Rebuttal Report (App. C, 1) and her Supplemental Report (App. C, 2) with respect to The First Calculation and the First Supplemental Calculation. Even so, Balance Engines, disagreed with many of Dr. Thornton's claims and thus in its Second Supplemental Calculation did not make changes for all of the issues raised by Dr. Thornton.

My approach used in this work is two fold: 1) review the analysis performed by Balance Engines in identifying changes to make; and 2) audit work performed by Balance Engines to ensure that work performed was the product of reliable software engineering principles and methods. Thus, in the first part of my work, I examine the issues raised by Dr. Thornton, related to the Product. The purpose here is to determine if the conclusions made by Balance Engines as to what changes should be made are reasonable. The second part of my work is to perform an audit of Balance Engines' implementation of the Second Supplemental Calculation. My audit here is similar to that performed in my Expert Report (App. A, 1) and my First Supplemental Expert Report (App. A, 2).

As I indicated in my Expert Report (App. A, 1) and in my First Supplemental Expert Report (App. A, 2), daily logs are used by Balance Engines to document work performed on The Product. Separate logs have been created based upon the ongoing objective of its work:

| Log Name | Date | Purpose |
|---|---|---|
| *stage3.log* | 10/15/12 | The First Calculation |
| *stage3_b.log* | 12/12/12 | The First Supplemental Calculation |
| *stage3_c.log* | 01/04/13 | Interrogatories |
| *stage3_d.log* | 02/20/13 | Miscellaneous |
| *stage3_e.log* | current | The Second Supplemental Calculation |
| *depo_prep.txt* | 03/04/13 | Analyze Dr. Thornton's Rebuttal Report |

I relied heavily on *stage3.log* in preparation of my first expert report and *stage3_b.log* for my First Supplemental Report. *Stage3_c.log* documents much work performed by Balance Engines in addressing interrogatories, and *stage3_d.log* contains descriptions of various work including analysis of data and programs produced by Sprint with their Expert Report. In preparing this report I have primarily relied on the *stage3_e.log* (App. B, 1) which documents the work performed by Balance Engines in preparation of its Second Supplemental Report. Another log was created, *depo_prep.txt* (App. B, 2), that describes some work performed by Balance Engines in preparation for depositions.

## II. ANALYSIS OF WORK PERFORMED BY BALANCE ENGINES IN IDENTIFYING CHANGES FOR SECOND SUPPLEMENTAL CALCULATION

Dr. Thornton identified issues that she claimed to have with Balance Engines' calculations in her rebuttal report (App. C, 1), her Supplemental Report (App. C, 2), and during expert depositions. These issues have subsequently been summarized in Defendants' Memorandum of Law in Support of Defendants' <u>Daubert</u> Motion to Exclude Testimony of Balance Engines LLC and Margaret Dunham (App. C, 3, section IV.A). Thus, I reference this document for the complete list of issues that Balance Engines should consider in its Second Supplemental Calculation. These are summarized in Table 1.

TABLE 1. Issues Raised by Dr. Thornton

| Issue | BE Inclusion | Causes |
|---|---|---|
| [1] Applying Contract Rules for New Hires | • First Supplemental Calculation<br>• Second Supplemental Calculation | • Implemented Differently<br>• Conflicting Sprint Data indicating guarantee<br>• Data in Compensation Statements and Quota |
| [2] Improper application of "Look-Back" Periods | • Second Supplemental Calculation | • Nonexistent Sprint Data<br>• Inconsistent Sprint Data |
| [3] Using incorrect Accessory price | • Second Supplemental Calculation | • Used SKU price instead of unit price. |
| [4] Improper Application of Contract Rules for Customer Retention | • No Change | • No complete SKU list provided by Sprint |
| [5] Incorrect calculation of non-recurring revenue component | • No Change | • No complete SKU list provided by Sprint |
| [6] Incorrect calculation of upgrades | • No Change | • No complete SKU list provided by Sprint |
| [7] Incorrect calculation of Add-ons | • Second Supplemental Calculation | No complete SOC list provided by Sprint |
| [8] Incorrect Application of Hierarchy Data | • Second Supplemental Calculation | • Inconsistent Sprint data (SCID)<br>• No complete SCID list provided by Sprint |
| [9] Exclusion of Appeals Data | • No Change | • Appeals not needed |

The first column identifies the issue using a number that corresponds to that used by Sprint (App. C, 3). The second column identifies if and where changes to implement correction of the issue are made. The last column indicates the ultimate cause of the issue. After an analysis of the issues, I conclude that only one of these (Issue [3]) is due, in part, to logic/implementation errors. Issue [9] is not really even an issue as appeals are not needed if the implementation is done correctly. Thus 7/9 of the issues identified by Sprint are not caused by Balance Engines' implementation problems but rather by errors found within the Sprint production database

Dunham Expert Report 3

systems (Issues [1], [2]), or are caused because Sprint failed to provide complete and accurate lists of attribute values need to properly calculate commissions (Issues [4], [5], [6], [7], [8]).

After examination by Balance Engines, some issues were deemed to not warrant software modifications as they reflected differences in the methodology used to implement the CAF/MICG requirements, and not mistakes in the code (Issues [4], [5], [6], [9]). I believe it is important to briefly summarize the analysis performed by Balance Engines to examine each of these issues. This investigative work performed by Balance Engines represents a conscientious effort by them to identify if errors in their code exist. Below I summarize the analysis of these issues. Plaintiffs' Counsel has similarly provided an analysis of these nine issues (App. A, 3, section III.B).

Issue [1] is based on the claim by Dr. Thornton that she believes Balance Engines did not properly implement Guarantee and Ramp-up. This issue was addressed as part of the First Supplemental Calculation and described in both my First Supplemental Report (App. A, 2) and Balance Engines' Supplemental Report (App. B, 4, ¶¶ 53-58). A possible example of incorrect calculation for plaintiff M. Craigen was discussed by Dr. Thornton (App. C, 1, ¶ 31-32). Balance Engines investigated this claim studying quota data to determine if further changes were warranted. Their conclusions conflict with Dr. Thornton's observation (App. B, 2, lines 3-49). Balance Engines identifies whether an employee is in a ramp-up period or guarantee period by looking at Sprint's Quota data. This technique is justified in a Sprint Data Specification (App. C, 4). In this document the description of the Quota Data identifies the use of a field named GENERICBOOLEAN4 to indicate guarantee and GENERIC BOOLEAN2 to indicate ramp-up. Associated with each of these is a date range (Start Date and End Date) that indicates the dates when the employee is on guarantee or ramp-up. I further examined code found in *commission.rb* and *commission_final_report.rb* as were modified for the First Supplemental Calculation and found appropriate implementations for properly handling guarantee and ramp-up. The issues appear to be caused by conflicting values of redundant data. That is, cases where the Compensation Statement value does not agree with the Quota value. Thus, I concur with Balance Engines' opinion that no changes were needed in the Second Supplemental Calculation for this issue. However, Balance Engines did decide to add logic in The Second Supplemental Calculation to compensate for the inconsistencies in the data. While I do not believe that this is needed as the inconsistency exists in Sprint's data (not any programming or logic problems within Balance Engines' work product), the conservative approach taken by Balance Engines was acceptable.

Issue [2] claims that Balance Engines included some non-commissionable transactions in its final calculations based on improper application of the "look-back" periods. Dr. Thornton indicated four particular cases where she claims this has occurred (App. C, 1, ¶¶ 36-51). Balance Engines evaluated the claim that deactivations were counted as activations (App. B, 2, lines 52-75). Balance Engines investigated this issue, for instance, by looking at the data for plaintiff Ms. Teisha King as discussed in Dr. Thornton's report (App. C, 1, ¶ 38). It found data inconsistencies, missing data, and other issues with respect to this one individual's data (App. B, 2). This issue was also discussed during Nile Nickel's deposition (App. A, 6, lines 145;1-152;19). This discussion shows that in addition to the inconsistent data there are issues associated with the handling of activations/deactivations. Thus Balance Engines decided to

implement changes to their code to address this issue – even if incorrect handling is due to inconsistent data.

Issue [3] claims that incorrect SKU prices are used for accessories. Balance Engines has agreed that SKU price should be used in place of unit price as they had originally done. In addition Balance Engines had to revise its code because Sprint's data had revenue target amounts in fields where they should not have been, which was causing them to be calculated as accessory sales.

Issues [4], [5], and [6] are actually caused by the same underlying problem: no complete set of SKUs was provided. Without this SKU list, the list compiled by Balance Engines should be viewed as accurate and complete as it was obtained from all the Stage 3 Sprint Commissions data provided.

Issue [7] claims that Balance Engines failed to use the correct price for add-ons. In addition, in some cases deactivation of add-ons was not properly considered. This problem is similar to the SKU list above, in that the lack of a complete SOC list is to blame. However, Balance Engines did implement changes in The Second Supplemental Calculation to address deactivations of add-ons that were not being correctly calculated.

Issue [8] claims that Balance Engines incorrectly applied roll-up processing. After an examination of the logic used by Balance Engines to perform roll-up I believe that their logic is accurate. Correct results from roll-up processing, as with any other software algorithm, depends on accurate input data. In this case the culprit of the incorrect output results is not the programs but the data provided by Sprint in Stage 3. Specifically store ids, SCIDs, are problematic (just as with SOCs and SKUs). Further study by Balance Engines analyzed the SCIDs found in RMS, Hierarchy, Valid Transactions, Compensation Statements and other Sprint data. For instance, more SCIDs are found in the Compensation Statements than in RMS and Hierarchy (App. B, 1, line 363). So this issue with respect to roll-ups appears to be caused by the list of SCIDs. Again it appears that the redundancy of Sprint data across systems (SCID in this case) has resulted in inconsistencies. The major issue then is how to compensate for data inconsistencies. Balance Engines compiled SCIDs from the Compensation Statements, RMS, Valid Transactions, Hierarchy, and other Sprint data into a master SCID list for use in its calculations.

Issue [9] relates to appeals data. Balance Engines did not consider appeals made by employees in performing their calculations. Appeals are needed to identify and correct mistakes in Sprint's Commissions System. Balance Engines did not duplicate the work performed in Sprint's Commissions System, rather it calculated commissions based on guidelines specified in the CAFs and MICGs. Thus no appeals data is needed for the calculations.

### III. ANALYSIS OF BALANCE ENGINES' SECOND SUPPLEMENTAL CALCULATION

Here I briefly summarize the work performed by Balance Engines in implementing changes to the First Supplemental Calculations. Table 2 summarizes the changes Balance Engines made to The Product in its Second Supplemental Calculation. These are consistent with the results of the analysis performed in the last section which examined the issues raised by Dr. Thornton.

TABLE 2. Changes Implemented in Second Supplemental Calculation[2]

| Change | Issue | Programs | Lines in Log | Description |
|---|---|---|---|---|
| 1. Guarantee | [1] | *commission.rb* | 118-191<br>1071-1073<br>1109-1111<br>1311-1313 | Identify guarantee if either source indicates such. |
| 2. Look-back[3] | [2] | *pct_search_matrix.rb*<br>*cr_net_act.rb* | 601-645<br>1055-1063 | • Allow matching with filler and garbage data in attribute values.<br>• Treat special vcgroup1_ordered value as nonevent<br>• If it is supposed to be CR it will be assumed as such |
| 3. Accessory SKU | [3] | *accessory.rb*<br>*sku_transactions.rb*<br>*handset.rb* | 833-857 | Use unit price as opposed to SKU price. |
| 4. Add-on | [7] | *addon.rb* | 53-68 | Use transaction date as opposed to activation date. |
| 5. Roll-Up | [8] | *hierarchies.rb*<br>*commission.rb*<br>*scid_groups_report.rake*<br>*scid.rb* | 257-372<br>390-593<br>655-661<br>1119-1175 | Ensure uniqueness when finding locations. Use new SCID MySQL table. Develop a more standard way to refer to SCIDs |
| 6. $ in P2K | N/A | *addon.rb*<br>*pct_soc_repair_indexer.rb* | 648-652<br>690-692<br>742-809<br>937-1007 | Perform updates in P2K similar to those already performed in the First Supplemental Calculation. |
| 7. PCT Merge | N/A | *pct_merge.rb*<br>*commission_sub_report.rb*<br>*sub_report_data.rb* | 727-739<br>1316-1322 | Merge all parts of a PCT row together into one record to compensate for inconsistent serial numbers or transaction numbers. |
| 8. Injected Transactions | N/A | *injected_transactions.rb* | 1098-1106 | Compensate for invalid "2 Commissionable Event" data. |

Log line numbers are for *stage3_e.log* and include analysis of the problem as well as implementation.

---

[2] I created this list of changes to be consistent with Dr. Thornton's list as much as possible but to also be consistent with the lists found in the log.
[3] Some items discussed in this row have alternatively been identified under Contract Renewal or Counting of Non-Commissionable Transactions (App. C, 1).

Dunham Expert Report                                                                                      6

**Change 1.**   A change to identify Guarantee periods was made to examine data found both in Compensation Statements and in Quota information (App. B, 1, line 1073). This change was made to compensate for the fact that guarantee information is found in both sources but conflicting values between the two exist.  As part of the analysis of the impact of this data inconsistency issue, Balance Engines examined the conflicting values (App. B, 2, lines 1078-1090).  A report file, *guarantee_report.txt*, was created which shows that there are discrepancies for 47,930 employee/period combinations.  This shows that the impact of the Sprint data inconsistencies with respect to the two duplicate guarantee values is quite high.  This change was not made to correct any logic problem within Balance Engines' code.  Looking at *commission.rb*, I found these changes on lines 231-243.  The logic here will identify a guarantee period if either source indicates guarantee.  A subsequent change was made to exclude "from calculation any employee/period where their *actual_quota* is <=1." (App. B, 1, line 1313).  While this is reasonable, it is extremely difficult to determine the best way to handle conflicting information like this.  The data produced by Sprint from the two sources should be consistent but is not.

**Change 2.**   The look-back issue includes a few revisions. The first change implemented here by Balance Engines was to allow matching in the face of placeholder values and garbage values found within an attribute itself.  The general logic is found in the log (App. B, 1, lines 641-645) and updated in program *pct_search_matrix.rb*.  The next change I include in this group was made to treat a *vcgroup1_ordered* attribute value of "13 Postpaid Return Activation Reconciliation" as if it did not exist.  This is an example of an extremely poor data quality issue that Sprint has with its Commissions System data.  This required a hard-coded change to the *cr_net_act.rb* in order to accurately handle this invalid attribute value.  Another change included was based upon the assumption that if an event was supposed to be a contract renewal, a look-back would be performed to look for any evidence of prior activity.

**Change 3.**   The First Supplemental Calculation erroneously used the *sku_price* for accessory calculations.  In the Second Supplemental Calculation Balance Engines made changes to the *accessory.rb* program to use the accessory *unit_price* instead.  This change is evident on line 215 of this program.  Similar changes were made to *handset.rb* and *sku_transactions.rb* as they also were using *sku_price*.  Balance Engines identified all places where *sku_price* was used and changed it to *unit_price*.  I checked all programs used to collect commissions related data and none were found to use *sku_price* so I agree that the implemented changes should correct the problem.

**Change 4.**   This problem was caused by using the wrong date for add-on matching. Balance Engines corrected this problem by changing the date to use *transaction_date* as opposed to *activation_date*.  Looking at *addon.rb* this use can be seen in line 59.  Also, line 74 is an assertion that uses the *transaction_date* as well.  Other correct uses of *transaction_date* can be seen within the program.  No uses of the *activation_date* are found.

**Change 5.**   Analyzing their programs, Balance Engines found their roll-up logic to be correct. However analysis of the store id values, SCID, found that there were many inconsistencies (App. B, 1, lines 257-372; 390-593; 655-661).  Analysis showed that SCIDs found in different systems (e.g. Compensation Statements, RMS, Hierarchy) did not always match.  Dr. Thornton also knew of the discrepancies among the various SCID values and developed a kind of standard to correct

these inconsistencies.  Recall from my expert report that this is a common approach (App. A, 1). I looked at Dr. Thornton's SPSS program named *hier.sps*.  In lines 250-379, Dr. Thornton replaces some SCID strings with others.  This would be done to be sure that during roll-up, SCIDs match when they should.  After looking at Dr. Thornton's issues list and evaluating SCID values, Balance Engines decided to implement a cleansing approach similar to that used by Dr. Thornton.  The solution to the problem, caused completely by Sprint's inconsistent data across systems, was to create a look up table (much like Dr. Thornton's code) to convert any SCID to a standard format.  Thus when roll-up occurs, the SCIDs would match if they should.  The master lookup table was placed in a MySQL table named *scids* (App. B, 1, lines 1121-1175).  Each *scid* in this table is associated with a *standard_scid*.  This table has 4235 *scid* values (App. B, 1, line 1298).

**Change 6.**  This involves an issue where a $ value in P2K billing data needed to be handled. While this is not a problem with the logic of Balance Engines' programs, it occurred during Balance Engines' handling of Stage 3 data using a Unix echo command.  The code to make this correction is found in *addon.rb* in lines 198-202 where the repaired SOC is placed in the PCT row.

**Change 7.**  The PCT Merge represents a slight change in logic used in creation of PCT transactions.  The original approach used by Balance Engines could potentially place information about the same transaction into two different PCT files for processing.  This would not have been a problem if those fragments matched on a field (such as serial number or transaction number). However, due to the duplication of data values and inconsistency between those values, there were some cases where the two parts would not be matched because of different values in these fields.  The PCT Merge is an extra step inserted into Balance Engines' logic to specifically address this problem prior to calculating commissions.  Although other approaches were discussed to get around the Sprint data problem, Balance Engines determined this was the best (App. B, 1, lines 729).  If data inconsistencies did not exist within the Sprint data, use of transactions without this step would yield the same results in damages calculations as use of transactions after this step.  However this is not the case given the state of the data.  Program *pct_merge.rb* was created to perform this extra merge step.  Each resulting PCT record is uniquely associated with one *pct_number* and only one record exists for each *pct_number*. Testing of the output of the PCT Merge step validated its results.  The code implemented should handle the merging well and adequate testing was performed.  An analysis by Balance Engines after running the PCT Merge process revealed that a few add-on duplicates still existed (App. B, 1, lines 1316-1322).  Spot checks revealed that these were due to RMS records that did not match on serial numbers.  Special logic was added to *commission_sub_report.rb* and *sub_report_data.rb*.  My opinion is that this logic will indeed facilitate matching where the underlying Sprint data existing in the Commissions System would not have supported it.

**Change 8.**  Sprint placed a value of "2 Commissionable Event" in accessory target number data. Balance Engines added logic to a program *injected_transactions.rb* to not count these as commissionable.  The logic ensures that target values are not counted as accessory revenue.  This change impacts add-on commissions calculations.

Dunham Expert Report                                                                                                        8

Finally, a review of the log revealed that adequate testing and postmortem analysis of results was performed by Balance Engines. Each Ruby file has associated with it an RSpec program. RSpec is a tool used to test Ruby programs (App. A, 4). I examined the spec directory and found updated code/tests for all changed programs.

## IV. CONCLUSION

My opinion is that Balance Engines has made a conscientious effort to address calculations issues. Of the seven issues raised four resulted in no change to The Product. The remaining three resulted in changes to The Product in The Second Supplemental Calculation. The Second Supplemental Calculation consisted of these three changes and five additional ones identified by Balance Engines. Of these eight changes made by Balance Engines, five were implemented to compensate for Sprint Commissions System data problems and three were implemented because of actual errors found in The First Supplemental Calculation. These data problems in the Sprint Commissions System involved (at least the following) SCIDs, SKUs, SOCs, serial numbers, transaction numbers, Compensation Statements, and Quota data.

I concur with Balance Engines in their decision not to implement changes for all identified issues.

The programs I examined were well commented and tested. The log provides sufficient documentation that shows the design of the changes and the implementation. Thus I conclude Balance Engines' work was the product of reliable principles and methods. Balance Engines also followed Software Engineering Code of Ethics guidelines. Of particular relevance for the implementation of The Second Supplemental Calculation are the following components:

> "3.10. Ensure adequate testing, debugging, and review of software and related documents on which they work."
> "3.11. Ensure adequate documentation, including significant problems discovered and solutions adopted, for any project on which they work."
> "6.08. Take responsibility for detecting, correcting, and reporting errors in software and associated documents on which they work."

(App. A, 5).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: 4/17/2013

MARGARET H. DUNHAM

Dunham Expert Report                                                                                                    9

## SUPPLEMENTAL APPENDIX A
## REFERENCE MATERIALS

1. Expert Report of Margaret H. Dunham, 10/15/12.

2. First Supplemental Expert Report of Margaret H. Dunham, 12/12/12.

3. Plaintiffs' Reply in Support of Motion to Strike 3/11/13 Affidavit of Janet R. Thornton, 04/04/13.

4. RSpec, accessed 6/24/12, http://rspec.info/.

5. IEEE-CS/ACM Joint Task Force on Software Engineering Ethics and Professional Practices, "Software Engineering Code of Ethics and Professional Practice," 1999.

6. Deposition of Nile Nickel.

## SUPPLEMENTAL APPENDIX B
## MATERIALS FROM BALANCE ENGINES

1.  Second Supplemental Stage 3 Log, *~/project/dev/stage3_e.log*.[4]

2.  *depo_prep.txt*.

3.  Stage 3 Log, *~/project/dev/stage3.log*.

4.  First Supplemental Expert Report of Balance Engines LLC.

---

[4] Date of last access was 4/11/13.

## SUPPLEMENTAL APPENDIX C
## MATERIALS FROM SPRINT

1. Rebuttal Report of Janet R. Thornton, 2/14/13.

2. Supplemental Report of Janet R. Thornton, 3/11/13.

3. Memorandum of Law in Support of Defendants' <u>Daubert</u> Motion to Exclude Testimony of Balance Engines LLC and Margaret Dunham, 3/25/13.

4. Sprint Data Specification – 11-24-2009.xls.