IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROXIE SIBLEY, et al., )
 )
        Plaintiffs, )
 )
v. ) Case No. 08-2063-KHV
 )
SPRINT NEXTEL CORPORATION, )
et al., )
 )
        Defendants. )

# ORDER

This is a class action brought by the former and current employees of defendants' retail stores. Plaintiffs allege that defendants breached the terms of their compensation plans and violated the Kansas Wage Payment Act by underpaying commissions to thousands of employees as a result of systematic flaws in defendants' computer systems. The case is again before the undersigned U.S. Magistrate Judge, James P. O'Hara, on disputes over expert discovery. Plaintiffs have moved the court to permit them to produce a second round of supplemental reports from their experts **(doc. 432)**. Plaintiffs have also moved to strike a supplemental report of defendants' expert that was produced on March 11, 2013 **(doc. 439)**. Although the court concludes that the supplemental expert reports of *both* sides' experts contain revisions that cannot be deemed proper supplementation under Fed. R. Civ. P. 26(e), the court will nonetheless permit them, in large part, to be served under Fed. R. Civ. P. 37(c). Accordingly, plaintiffs' motion for leave to supplement expert reports is

granted and plaintiffs' motion to strike the report of defendants' expert is granted in part and denied in part.

I.  **Background**

The parties exchanged the initial reports of their experts on October 15, 2012. Plaintiffs served a report authored by both Barry Ezell and Nile Nickel of Balance Engines, LLC, and a separate report of Margaret H. Dunham. Defendants served the report of Janet R. Thornton. On December 12, 2012, plaintiffs served timely[1] supplemental expert reports of both Balance Engines and Dunham. Defendants, upon the court's order,[2] served a supplemental expert report of Thornton on December 20, 2012. The parties exchanged rebuttal expert reports on February 14, 2013. Expert depositions followed. Plaintiffs deposed Thornton on February 28, 2013. Defendants deposed Dunham on March 1, 2013, Nickel on March 5, 2013, and Ezell on March 6, 2013. During the depositions, each expert testified that his or her calculations could be refined in ways that would make his or her conclusions more accurate. At the pretrial conference held on March 7, 2013, plaintiffs informed the court of their intention to file supplemental expert reports to correct inaccuracies in expert calculations. Defendants objected to the supplementation, and the court directed plaintiffs to file a motion seeking leave to supplement.

---

[1]*See* Doc. 421 at 17.

[2]Doc. 380.

## A. Plaintiffs' Second Supplemental Expert Reports

On March 11, 2013, plaintiffs filed their motion for leave to produce supplemental reports of their experts. Plaintiffs represent that their experts have "discovered information about their calculations that lead them to believe that making certain revisions to their code will result in more accurate commissions calculations for the class."[3] Plaintiffs filed their proposed second supplemental expert reports on April 17, 2013.[4] Plaintiffs assert that the revisions therein do not change their experts' "overall methodology."[5]

Defendants contend that plaintiffs' proposed modifications "necessarily require a change in their experts' previous methodology."[6] Citing an affidavit by their expert, Thornton, defendants argue that the proposed revisions would alter five of the six stages of Balance Engines's methodology. Thus, rather than supplement previous expert reports, plaintiffs would be "wholly revis[ing] them."[7] Defendants also argue that they would be prejudiced by the late supplementations because March 25, 2013, was the deadline for dispositive and *Daubert* motions, and because they have already spent time and money analyzing plaintiffs' past expert reports, and preparing for and conducting the depositions of

---

[3]Doc. 433 at 5.

[4]Docs. 472-1, 472-2.

[5]Doc. 433 at 5.

[6]Doc. 437 at 4.

[7]*Id.* at 5.

plaintiffs' experts.

B.   **Defendants' Second Supplemental Expert Report**

On March 11, 2013, defendants served a second supplemental report of Thornton without requesting or obtaining the court's leave. Thornton's second supplemental report purports to address issues raised by plaintiffs' counsel during Thornton's deposition, admissions during the depositions of plaintiffs' experts, and the rebuttal reports of plaintiffs' experts.[8] According to defendants, Thornton's report concludes that her underlying methodology and conclusions were sound, but makes discrete updates to her programming code.

On March 18, 2013, plaintiffs moved to strike Thornton's second supplemental report. Based on plaintiffs' motion to strike, defendants agreed to withdraw twenty-eight paragraphs of Thornton's report.[9] Plaintiffs contend, however, that fifteen additional paragraphs contain improper sur-rebuttal to the rebuttal reports of plaintiffs' experts and must be stricken.[10] Plaintiffs state that they do not object to the portions of Thornton's

---

[8] Doc. 440-1 at ¶ 2. Although defendants' brief states that Thornton also reexamined her methodology based, in part, on data and documents produced by plaintiffs between March 4 and March 8, 2013, doc. 458 at 9, Thornton's second supplemental report does not suggest this.

[9] Defendants have withdrawn paragraphs 5–18 and 33–46 of Thornton's March 11, 2013 report. Doc. 458 at 11.

[10] Plaintiffs object to paragraphs 3, 20, 21, 23–27, and 47–53 of Thornton's March 11, 2013 report. Doc. 460 at 18 n.5.

report correcting inaccurate calculations, so long as plaintiffs are permitted to serve revised expert reports doing the same.

## II.     Analysis

Fed. R. Civ. P. 26 governs the disclosure of expert testimony. It provides, in relevant part, that an expert must submit a report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them."[11] Courts may set a time by which the parties must submit their experts' reports.[12] A party bears a continuing obligation to supplement expert reports if the party later learns the information initially provided is incomplete or incorrect.[13] When the expert disclosure rules are violated, Fed. R. Civ. P. 37(c) mandates that the information or witness not fully disclosed is barred, unless the failure to disclose was "substantially justified or harmless."[14]

### A.     Do the Supplemental Reports Violate Rule 26?

The scheduling order set October 15, 2012, as the deadline for filing expert reports and December 12, 2012 (i.e., forty days before the discovery deadline), as the deadline for supplementing expert reports.[15] The latest round of supplemental reports clearly fall outside those scheduling-order deadlines.

---

[11] Fed. R. Civ. P. 26(a)(2)(B)(i).

[12] Fed. R .Civ. P. 26(a)(2)(D).

[13] Fed. R. Civ. P. 26(a)(2)(E) and 26(e).

[14] Fed. R. Civ. P. 37(c)(1).

[15] Docs. 114, 355.

Looking to the procedural rules governing supplementation, Rule 26(e)(2) requires that supplemental expert information be disclosed by the time pretrial disclosures are made under Rule 26(a)(3), i.e., thirty days before trial unless otherwise set by the court. In this case, the pretrial order—which now controls these proceedings—set the pretrial disclosure deadline at twenty-one days before trial.[16] Courts have made clear, however, that Rule 26(e)(2) does not permit a party to use the supplementing procedure to submit an amended or rebuttal report not based on new information. Rather, "supplementation may only be based upon additional or corrective information that was unavailable when the expert made his or her initial report."[17] "A supplemental expert report that states additional opinions or rationales or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)."[18] Supplemental reports with relatively minor changes that simply correct inaccuracies in the original report may be permitted, however.[19]

Such was the case in *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*[20] There, U.S. District Judge Kathryn H. Vratil, who is also the presiding judge in the present wage

---

[16] Doc. 436 at 29.

[17] *Bruner-McMahon v. Sedgwick Cnty. Bd. of Comm'rs*, No. 10-1064-KHV, 2012 WL 33837, at *2 n.16 (D. Kan. Jan. 6, 2012).

[18] *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, No. 05-1721-KHV, 2008 WL 4937651, at *2 (D. Kan. Nov. 17, 2008).

[19] *Id.*

[20] *Id.*

case, permitted the filing of a supplemental expert report which made two minor changes to the expert's opinions. During his deposition, the expert concluded that he had included three incidents in his calculations that failed to meet his criteria and should have been eliminated from his analysis. The expert then revised his report to reflect changes to his opinions and findings that occurred when the extraneous data was eliminated. Judge Vratil characterized this as "simply correcting inaccuracies in the original report" and found the supplementation proper under Rule 26(e).[21]

Applying these principles below, the court finds that only portions of the proposed reports of plaintiffs' experts are proper Rule 26(e) supplements, while none of the report of defendants' expert is a proper Rule 26(e) supplement.

### 1. Plaintiffs' Second Supplemental Expert Reports

Plaintiffs have filed the proposed second supplemental report of Balance Engines,[22] as well as the corollary second supplemental report of Dunham which opines on whether Balance Engines's new report is "the product of reliable principles and methods."[23] The Balance Engines's report includes changes to six areas of Balance Engines's earlier reports.[24]

---

[21]*Id.*

[22]Doc. 472-1.

[23]Doc. 472-2.

[24]The court notes that although plaintiffs' motion to file supplemental expert reports also sought leave to possibly revise "vacation revenue/credit" and to possibly merge "certain

First, plaintiffs submit Balance Engines's new calculations relating to "addons."[25] Balance Engines states that in its previous calculations, there were rare instances in which addons were double counted and in which addons that fell within the look back period were improperly counted. Balance Engines asserts that the cause of the errors was a small error in its code caused by poor data standards in defendants' underlying data. Balance Engines also finished revising its calculations affected by defendants improperly coding data with the "$" symbol—a problem Balance Engines had previously identified but had not had time to fix.

The court will permit these proposed revisions under Rule 26(e). While a close call, the court finds that these changes amount to corrections to inaccuracies in the first reports. They result from a coding error and are not changes to Balance Engines's methodology. They are not changes made for the purpose of "deepening" Balance Engines's conclusions. Rather, they appear to make technical adjustments like the ones permitted in *In re Cessna*.

Balance Engines's second category of revisions to its report involve calculations for commissions that "roll up" from retail employees to their store managers and store hosts. Balance Engines states that "[a] value called an 'SCID' is important in determining which sales from which employees should roll up to whom in calculating commissions," and that

---

PCT files," it does not appear that the proposed reports plaintiffs ultimately filed made such changes. Doc. 433 at 5.

[25]The governing compensation plans set as commissionable events "add-ons"—services such as text messaging—but with the exclusion of services that were deactivated during a prescribed look-back period.

defendants did not provide a comprehensive SCID list.[26]  As a result, Balance Engines attempted to create a standardized SCID list from various data produced by defendants.  It appears (though plaintiffs do not make this clear) that Balance Engines initially relied on two data sets to compile SCID information, but because those data sets had incomplete and conflicting SCID information, Balance Engines's calculations were inaccurate.  In Balance Engines's second supplemental report, Balance Engines seeks to report its roll-up calculations reached when Balance Engines used many more data sets to complete its SCID list.

The court will permit supplementation related to roll-up commissions.  Again, Balance Engines has not changed its underlying methodology.  Balance Engines did not change its determination of which sales from which employees should roll up when calculating commissions.  Rather, it revised its code to identify said group of sales from a more comprehensive SCID list.  The court deems this a technical correction of the sort to be expected given the extraordinarily large data set with which the experts in this case were working.

The third change to Balance Engines's report relates to commissions for accessory sales.  Balance Engines proposes to use actual sales price in its commissions calculations, rather than suggested retail price.  Unlike the first two revisions, this revision does reflect a change to Balance Engines's analytical approach. Balance Engines has decided to rely on

---

[26]Doc. 472-1 at ¶11.

a different price to calculate these commissionable events. Plaintiffs provide no specific reason why this change should be permitted. Balance Engines seems to be acting in response to Thornton's rebuttal analysis, rather than in response to new information or discovery of a technical miscalculation. Thus, the court does not find this to be a proper supplementation under Rule 26(e).

Balance Engines's proposed second supplemental report also states that Balance Engines "revised its code logic to address revenue targets being incorrectly calculated as accessory sales."[27] It appears that this change was necessitated by a coding error. Given that this makes a technical correction, it is a permissible supplementation.

Next, Balance Engines seeks to change an unspecified number of transactions from being processed as "activations" to "neither an activation nor a deactivation" based on the contentions of defendants' expert.[28] Balance Engines would also like to verify, "when the relevant historical data exists," that a contract renewal had no activity within governing look-back periods. Plaintiffs do not explain what previously unavailable information justifies these changed analyses. Nor do these proposed changes simply correct inaccurate calculations. Instead, they appear to reflect a change in how Balance Engines has decided to treat certain data, and appear to be based on criticisms from defendants and their expert.

---

[27]Doc. 472-1 at ¶ 21.

[28]The compensation plans set as commissionable events "net activations," which were defined as the total number of activations of service, less any subsequent deactivations during a prescribed look-back period.

Plaintiffs have failed to demonstrate that these changes amount to permissible supplementation.

Finally, Balance Engines revised its calculations for employees on "guarantee" status.[29] Under the parties' joint stipulation regarding expert analysis, it was agreed that the experts would not calculate commissions for months in which defendants paid a class member on a guarantee basis.[30] Whether a class member was on guarantee status was purportedly indicated on both the compensation statements and quota files that defendants produced. Balance Engines used data from the quota files in making its initial calculations. Balance Engines learned during the expert rebuttal process that there were discrepancies between the compensation statements and quota files, with some employees being listed on one but not the other.[31] In Balance Engines's proposed second supplemental report, Balance Engines excluded from its calculations employees identified on either data set. This change resulted in fewer months of unpaid commissions and the exclusion of certain class members from Balance Engines's damages' calculation.

The court will permit these revisions affecting guarantee-status employees. They do not change Balance Engines's methodology or seek to strengthen or deepen its opinions.

---

[29]New hires were not immediately placed on commission-based pay. Rather, they were placed on a status called "guarantee" or "ramp-up" for a specified period of time at a set rate of pay.

[30]Doc. 357 at ¶¶ 5–7.

[31]Defendants have not disputed the existence of these discrepancies.

Rather, they correct technical errors caused by discrepancies in the data produced by defendants. The resulting supplementation is therefore proper.

In summary, the court holds that the following portions of Balance Engines's proposed second supplemental report are proper supplements under Rule 26(e): new calculations relating to addons, revisions related to roll-up commissions, revisions to Balance Engines's code logic to address revenue targets being calculated as accessory sales, and new calculations for employees on "guarantee" status. The proposed second supplemental report of Dunham does not stand independently, but instead provides an audit of work performed by Balance Engines in producing its proposed second supplemental report. Thus, the portions of Dunham's report that correlate to Balance Engines's permitted changes are also deemed proper supplements.

### 2. Defendants' Second Supplemental Expert Report

As noted above, the second supplemental report of Thornton that defendants served on March 11, 2013, has been winnowed by the motions process.[32] Defendants have agreed

---

[32] The court fully agrees with defendants that plaintiffs should have followed the directive of D. Kan. Rule 37.2 to meet and confer before filing their motion to strike the report, and that so doing would have slimmed the report prior to the filing of the motion. Despite this violation, the court will exercise its discretion and address the merits of the motion. *See White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, No. 07-2319, 2009 WL 722056, at *2 (D. Kan. March 18, 2009) (waiving non-compliance with duty to confer to avoid further delay of resolution of the matter); *Strasburg-Jarvis, Inc. v. Radiant Sys., Inc.*, No. 06-2552, 2009 WL 129361, at *2 (D. Kan. Jan. 20, 2009) (electing to address the merits of discovery dispute despite failure to confer).

to remove over half the paragraphs in the report,[33] and plaintiffs have agreed to deem ten paragraphs of the report that contain introductory remarks or that, in plaintiffs' estimation, correct simple inaccuracies in Thornton's calculations to be proper supplementations—so long as the court also grants plaintiffs leave to file supplemental reports.[34] Plaintiffs contend, however, that the remaining fifteen paragraphs in the report should be stricken as improper sur-rebuttal. The court agrees.

The court has carefully reviewed paragraphs 3, 20, 21, 23–27, and 47–53. The court finds that each of these paragraphs contain Thornton's response to issues raised in the rebuttal reports of plaintiffs' experts and generally attempt to provide additional rationale for Thornton's original calculations and conclusions. For example, in paragraph 3, Thornton quotes from her previous reports and states that she has verified that her earlier conclusions regarding Stage 3 data were correct, despite plaintiffs' experts' comments to the contrary. Likewise, in paragraphs 20 and 21, Thornton addresses Balance Engines's specific criticism regarding her treatment of upgrades for pre-owned and reconditioned phones, and explains why her original calculations are correct. Paragraphs 3, 20, 21, 23–27, and 47–53 do not contain revised conclusions based on newly available information, nor do they correct inaccuracies in Thornton's calculations. Because these additions simply attempt to strengthen Thornton's opinions expressed in earlier reports, they "exceed the bounds of

---

[33]*See supra* note 9.

[34]Plaintiffs do not object to paragraphs 1, 2, 4, 19, 22, and 28–32.

permissible supplementation."[35]

As to the remaining portions of Thornton's second supplemental report, even plaintiffs characterize the modifications as fixing "calculation inaccuracies."[36] Plaintiffs have a motivation to define them in this manner, as they mirror many of the sort of changes plaintiffs' experts propose to make (which the court rejected above). The court has independently reviewed the modifications set out in paragraphs 19, 22, and 28–32, however, and finds that they make substantive changes to Thornton's approach to the data, rather than simply correct calculations.

In paragraph 19, Thornton explains that in response to two specific paragraphs in Balance Engines's rebuttal report, which claimed that Thornton "failed to include ESPN activations, included Net rather than Gross Boost and Virgin Mobile activations, failed to apply the 2X payment for two Boost SKUs, failed to include modem cards in Customer Retention, and excluded Reboost and Virgin Mobile card revenue . . . [and] failed to include the additional ODR ["Order Detail Reports"] transactions related to Activations in my analysis," she "reviewed the programming logic and [] incorporated any necessary modifications."[37] Defendants have not attempted to demonstrate that the "necessary modifications" Thornton made after analyzing all of the identified problems were purely

---

[35]*In re Cessna*, 2008 WL 4937651, at *2.

[36]Doc. 460 at 18.

[37]Doc. 440-1 at 177.

technical, such as corrections to computer coding, rather than changes to her substantive decision of what to include or not include in her analysis.

Likewise, in paragraph 22, in specific response to Balance Engines's rebuttal report, Thornton states that she "modified [her] calculations to include pre-owned phones as commissionable Upgrades" and also, as it relates to customer retention, "included any SKU that was identified as a 'Gross Handset.'"[38] These are clearly substantive changes to her approach to calculating commissionable events.

Finally, paragraph 28 reports that in calculating the margin of error for her analysis, Thornton "modified [her] calculations to rely on the commissions paid by Sprint as suggested by Dr. Dunham."[39] Again, this reflects a substantive change to her methodology and is not based on an earlier calculation error or newly available information.

The court strongly disagrees with defendants' argument that criticisms of an expert's report that arise during the expert-rebuttal process amount to "new information" that may be the basis for untimely expert supplementations.[40] The data that Thornton used to perform her revised analyses was available at the time of her earlier reports. Moreover, the court rejects defendants' argument that these revisions are simply "minor corrections."[41] While

---

[38]*Id.* at 178.

[39]*Id.* at 180.

[40]Doc. 458 at 15.

[41]*Id.* at 14.

the determination of whether a change is "minor" may be subject to a fuzzy interpretation, what is clear is that Thornton's substantive changes discussed in paragraphs 19, 22, and 28 are no more minor than the substantive changes in Balance Engines's proposed report to which defendants object. Defendants can't have it both ways. The changes reflected in paragraphs 19, 22, and 28 amount to improper supplementation of Thornton's expert report.

Paragraphs 29–32 state Thornton's conclusions based on her new calculations. As the new calculations are not proper supplements, nor are Thornton's conclusions arising therefrom. With this finding, there are no portions of Thornton's second supplemental report that remain as proper Rule 26(e) supplementations.

**B.  Should the Reports be Permitted under Rule 37(c)?**

Although the court finds the second supplemental expert reports untimely under Rule 26(a) and, except for modifications in four areas of the reports of plaintiffs' experts, not appropriate supplements under Rule 26(e), the court could nonetheless permit the filing of the reports under Rule 37(c). "Rule 37(c) permits a district court to refuse to strike expert reports and allow expert testimony even when the expert report violates Rule 26(a) if the violation is justified or harmless."[42] "The determination of whether a Rule 26(a) violation

---

[42]*Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952 (10th Cir. 2002); *see also Cessna*, 2008 WL 4937651, at *3 ("Rule 37(c)(1) provides that a party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e) is not—unless such failure is harmless—permitted to use as evidence at a trial, at a hearing or on a motion any witness or information not so disclosed.").

is justified or harmless is entrusted to the broad discretion of the district court."[43] While the court "need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose," the court should be guided by the following factors: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability to cure any prejudice; (3) the potential for trial disruption if the testimony is allowed; and (4) the erring party's bad faith or willfulness.[44]

Plaintiffs make no argument that Thornton's second supplemental report should be excluded under Rule 37(c).

Defendants do argue that the second supplemental reports of Balance Engines and Dunham should be excluded under Rule 37(c). First, defendants assert that they will be prejudiced if plaintiffs are permitted to serve the reports, which were disclosed for the first time on April 17, 2013, because the deadline for *Daubert* and dispositive motions was March 25, 2013. Defendants filed both a summary judgment motion[45] and a *Daubert* motion,[46] based in part on the Rule 26 reports of plaintiffs' experts as they stood on that date. Defendants broadly suggest that allowing plaintiffs' requested supplements will necessitate

---

[43]*Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (quoting *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996)).

[44]*Id.; see also Gutierrez v. Hackett*, 131 F. App'x 621, 625–26 (10th Cir. 2005).

[45]Doc. 447.

[46]Doc. 445.

additional expert depositions and new *Daubert* motions.

The court agrees with plaintiffs, however, that defendants' claims of prejudice are unsupported: "While Sprint argues that it will incur additional costs, it fails to explain why. While Sprint argues that *Daubert* motions will be affected, it does not explain how."[47] Plaintiffs note that defendants became aware of the proposed revisions to their experts' reports when plaintiffs filed their motion to supplement on March 11, 2013—before the *Daubert* and dispositive motion deadlines (and on the same day that defendants' served the supplemental report of Thornton)—yet did not request further discovery. Moreover, defense counsel questioned plaintiffs' experts about the proposed changes at their depositions. The court therefore finds that defendants have not supported their assertion of prejudice and cannot claim surprise at the supplemental reports of Balance Engines and Dunham.

In any event, even if some prejudice to defendants does exist, that prejudice likely can be cured. The trial in this case is not scheduled to begin until October 7, 2013—more than five months from now. Should defendants truly believe it necessary, they may seek leave to reopen expert discovery and/or to supplement their *Daubert* motion (mindful that the court will extend plaintiffs the same courtesies). The trial date should not be affected.

Finally, there are no allegations that either side or their experts acted in bad faith or attempted to "sandbag" their opponents by intentionally withholding information from earlier expert reports. Rather, it is clear to the court that the modifications the experts now

---

[47]Doc. 438 at 7.

propose have arisen out of the expert rebuttal and deposition process, and are the result of a conscientious effort to ensure that their analyses are accurate such that this case is decided on a correct presentation of the facts.

The court therefore concludes that the failure of the parties to produce the new calculations discussed in the second supplemental reports of their experts within the Rule 26(a) time constraints was harmless. The court will not require the exclusions of these portions of the reports under Rule 37(c). Accordingly, the reports of Balance Engines and Dunham may be produced in their entirety. The report of Thornton may be produced in corrected format, containing only paragraphs 1, 2, 4, 19, 22, and 28–32.[48]

IT IS THEREFORE ORDERED:

(1) Plaintiffs' motion for leave to supplement expert reports (doc. 432) is granted. Plaintiffs shall produce the second supplemental reports of Balance Engines and Dunham by **May 3, 2013.**

(2) Plaintiffs' motion to strike the March 11, 2013 second supplemental report of Thornton (doc. 439) is granted in part and denied in part. Thornton's original second supplemental report shall be stricken, and defendants shall produce a revised second supplemental report by **May 3, 2013.**

---

[48]Defendants shall remove the paragraphs that they have agreed to withdraw in response to plaintiffs' motion to strike (i.e., paragraphs 5–18 and 33–46) and the paragraphs that the court has found to be purely sur-rebuttal without any new calculations (i.e., paragraphs 3, 20, 21, 23–27, and 47–53).

Dated April 30, 2013, at Kansas City, Kansas.

                                            s/ James P. O'Hara
                                            James P. O'Hara
                                            U.S. Magistrate Judge