## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROXIE SIBLEY, et al., | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | )     Case No. 08-CV-2063-KHV |
| | ) |
| SPRINT NEXTEL CORPORATION, et al., | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

### ORDER OF APPOINTMENT

On March 5, 2014, the Court entered an <u>Order To Show Cause</u> (Doc. #526) noting the extremely complex and technical nature of the commissions reconciliation process at the heart of this case. Accordingly, the Court proposed appointment of one or more independent experts and also a Special Master to assist the Court with pending motions and other issues related to the commissions reconciliation process. The Court directed the parties to show cause why the Court should not make those appointments.

In response, defendants (1) agreed with the Court's proposal to appoint a Special Master and an independent expert; (2) set out a proposed scope of work for the two appointees; and (3) offered suggestions as to whom the Court should appoint. <u>See</u> Doc. #529.

In contrast, plaintiffs stated they believed appointment of a Special Master and an independent expert was "not warranted because it will cause unreasonable expense and delay, will not simplify the case, and will provide unfair 'litigation assistance' to [defendants]." <u>See</u> Doc. #530 at 9. Plaintiffs further stated that, if the Court chose to make the appointments anyway, the Court should (1) charge the appointees with a scope of work different than the one proposed by defendants; (2) choose appointees different from those suggested by defendants; and (3) impose the

costs of any appointees entirely upon defendants.

Having considered carefully the parties' positions, the Court now holds as follows.  As described in the Court's <u>Order To Show Cause</u>, the ultimate issue in this case – that is, the extent to which errors in defendant Sprint's admittedly inaccurate computer systems caused it to pay incorrect amounts to the plaintiff class of Sprint employees – depends heavily on expert testimony.  The parties' experts offer opinions regarding the proper methodology for (1) investigating enormous databases, (2) writing specialized code to create forensic computer programs, (3) manipulating complex data fields, (4) applying numerous interrelated accounting variables, and (5) calculating sales commissions specific to tens of thousands of employees in the telecommunications industry.  Because the subject matter is highly technical and complicated, the Court has struggled to understand the parties' experts.  Further, the Court's greater concern is that a jury will find the experts' opinions so opaque that the jury will be forced simply to guess whether plaintiffs' expert is correct and Sprint *underpaid* the class $171 million, or defendants' expert is correct and Sprint *overpaid* the class $72.9 million, or something in between.

In these circumstances, the Court concludes that it is reasonable and appropriate to: (1) appoint a Special Master to supply the Court with recommended rulings on (a) the pending <u>Daubert</u> motion and related pending motions to supplement or strike expert reports, as well as (b) defendants' motion to decertify the class; and (2) appoint an independent expert to assist the jury at trial.

In its <u>Order To Show Cause</u>, the Court suggested the independent expert might offer opinions to the jury and also provide assistance to the Court.  Having reviewed the parties' responses and also additional case law, the Court now concludes that these functions should be kept separate. Accordingly, the Court will authorize the Special Master to obtain assistance from a technical

advisor, who will report only to the Special Master and the Court, and who will not be answerable to the parties.[1]  Separately, the Court will appoint an independent expert, who will offer testimony to the jury and whom the parties may depose as they would any other expert.[2]  These appointments are described more fully below.

## I.   Appointment of the Special Master.

The parties, having had notice and an opportunity to be heard, each offered suggestions as to whom the Court should appoint as Special Master; however, the parties' suggestions did not overlap.  Thus, the Court undertook its own research to locate an individual with the appropriate background and expertise who had no prior relationship with any of the parties or counsel.  The Court now appoints as Special Master David R. Cohen, Esq., of the following law firm:

> David R. Cohen Co. LPA
> 24400 Chagrin Blvd., Suite 300
> Cleveland, OH  44122
> 216-831-0001  tel
> 866-357-3535  fax
> E-Mail: david@specialmaster.biz

This appointment is made pursuant to Fed. R. Civ. P. 53 and the inherent authority of the

---

[1]    See TechSearch, L.L.C. v. Intel Corp., 286 F.3d 1360, 1379-80 (Fed. Cir. 2002) (affirming trial court's use of technical advisor because case was "highly technical" and "far beyond the boundaries of the normal questions of fact and law with which judges routinely grapple").  A technical advisor's "role is limited to explaining [to the Court] the terminology and theory underlying the evidence offered by the parties."  Id. at 1380.

[2]    See In re Joint Eastern and Southern Districts Asbestos Litig., 830 F. Supp. 686, 694 (E. & S.D.N.Y. 1993) ("A mere technical advisor 'is called upon to make no findings and to supply no evidence' so that 'provisions for depositions, cross-questioning, and the like are inapposite.' * * * A Rule 706 expert witness, however, presents testimonial, documentary and other evidence and is subject to the requirements of advance notice and opportunity for testing that apply to all evidence in civil cases.") (citations omitted); Fed. R. Evid. 706 (a court-appointed expert "(1) must advise the parties of any findings the expert makes; (2) may be deposed by any party; (3) may be called to testify by the court or any party; and (4) may be cross-examined by any party").

Court.[3] As Rule 53 requires, the Court sets out below the duties and terms of the Special Master and reasons for appointment, and orders the Master to "proceed with all reasonable diligence." Rule 53(b)(2).

## II.     **Rule 53(b)(2)**.

Rule 53 requires an order of appointment to include certain contents. *See* Fed. R. Civ. P. 53(b)(2). The following discussion sets forth the matters required.

### A.     **Special Master's Duties**.

Rule 53(a)(1)(A) states that the Court may appoint a Special Master to "perform duties consented to by the parties." In addition, Rule 53(a)(1)(C) states the Court may appoint a Special Master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." The Court has reviewed legal authority addressing the duties of a Special Master that are permitted under the Federal Rules of Civil Procedure and Article III of the Constitution.[4] Consistent with this legal authority and the currently-anticipated needs of the Court, as well as defendants' consent, the Court states that the Special Master shall have the authority to perform the following duties.[5]

---

[3]     "Beyond the provisions of [Fed. R. Civ. P. 53] for appointing and making references to Masters, a Federal District Court has 'the inherent power to supply itself with this instrument for the administration of justice when deemed by it essential.'" Schwimmer v. United States, 232 F.2d 855, 865 (8th Cir. 1956) (quoting In re: Peterson, 253 U.S. 300, 311 (1920)); see Ruiz v. Estelle, 679 F.2d 1115, 1161 n.240 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983) (same); Reed v. Cleveland Bd. of Educ., 607 F.2d 737, 746 (6th Cir. 1979) (authority to appoint "expert advisors or consultants" derives from either Rule 53 or Court's inherent power).

[4]     See generally Fed. R. Civ. P. 53, advisory committee's notes, 2003 amendment (discussing the range of duties and authority of a Special Master); *Appointing Special Masters and Other Judicial Adjuncts: A Handbook for Judges* (5th ed. 2013).

[5]     This list is meant to be illustrative, not comprehensive. The Court may amend this Order to add additional duties.

4

**Initial Duties**

As indicated in the <u>Order To Show Cause</u>, the Special Master's initial duties shall be as follows:

•     Evaluate the sufficiency of the current expert reports and submit recommended rulings on the pending <u>Daubert</u> motion and related motions.[6]

•     Submit a recommended ruling on the pending motion to decertify the class (Doc. #450).[7]

•     Work with the parties to identify a neutral technical advisor, who will provide assistance to the Court and the Special Master as needed in connection with evidentiary matters related to the motions listed above.[8]  The Special Master shall draft for Court signature an Order of Appointment of the technical advisor.

•     Work with the parties to (a) identify a neutral court-appointed expert, who may provide certain opinions and testimony to the jury, and (b) determine the activities required of the court-appointed expert, and the schedule therefor.[9]  The Special Master shall draft for Court signature an Order of Appointment of the independent expert.

•     Assist the court-appointed expert in obtaining all materials necessary on which to base an independent analysis.

---

[6]     These motions are filed at docket nos. 506, 509, 511 and 515.

[7]     The Special Master need not await receipt of the court-appointed expert's opinions to submit recommended rulings on the decertification motion or the motions related to expert reports.

[8]     The Special Master should take heed of the procedural steps recommended for appointment of a technical advisor set out in <u>Federal Trade Commission v. Enforma Natural Products, Inc.</u>, 362 F.3d 1204, 1215 (9th Cir. 2004) ("(1) utilize a fair and open procedure for appointing a neutral technical advisor; (2) address any allegations of bias, partiality, or lack of qualification; (3) clearly define and limit the technical advisor's duties; (4) make clear to the technical advisor that any advice he or she gives to the court cannot be based on any extra-record information; and (5) make explicit, either through an expert's report or a record of *ex parte* communications, the nature and content of the technical advisor's advice.").

[9]     The Special Master may conclude, as plaintiffs suggest, that the appropriate scope of the court-appointed expert's efforts shall be limited to examining and critiquing the existing reports, testimony, and calculations of the parties' experts, as opposed to conducting an entirely independent damages calculation. <u>Plaintiffs' Response</u> at 14 (Doc. #530). Alternatively, the Special Master may conclude that the appropriate scope of the court-appointed expert's efforts may be more broad. <u>Cf.</u> <u>Defendants' Response</u> at 2-3 (Doc. #529).

- Work with the parties to develop a stipulated analytical framework and job description for the court-appointed expert.

- Assist the court-appointed expert in finalizing a report and preparing for hearings, testimony and trial.

- Assist the Court and the court-appointed expert in evaluating legal issues relevant to the matters listed above.

- Provide periodic status reports to the Court.

- Make formal or informal recommendations and reports to the parties, and make recommendations and reports to the Court, regarding any matter pertinent to the above-listed duties.

- Communicate and meet with the parties and attorneys as needs may arise in order to permit the full and efficient performance of these duties.

- Employ staff as may be necessary to assist the Special Master in performing his duties.  The Special Master shall incur only such fees and expenses as may be reasonably necessary to fulfill his duties.

**Other Duties**

The Court may also call upon the Special Master to undertake any of the following additional duties.

- Submit a recommended ruling on the pending motions for summary judgment,[10] as well as any other motions the parties may file.

- Assist with preparation for attorney conferences (including formulating agendas), court scheduling, and case management.

- Compile data and assist with, or make findings and recommendations with regard to, interpretation of scientific and technical evidence.

- Assist with legal analysis of the parties' motions or other submissions, whether made before, during or after trials, and make recommended findings of fact and conclusions of law.

---

[10]     These motions are filed at Doc. ##443 & 447.

6

- Assist with responses to media inquiries.

- Help to coordinate other related litigation.

- Direct, supervise, monitor and report upon implementation and compliance with the Court's Orders, and make findings and recommendations on remedial action if required.

- Interpret any agreements reached by the parties.

- Propose structures and strategies for settlement negotiations on the merits, and on any subsidiary issues, and evaluate parties' class and individual claims, as may become necessary.

- Propose structures and strategies for attorney's fee issues and fee settlement negotiations, review fee applications, and evaluate parties' individual claims for fees, as may become necessary.

- Administer, allocate and distribute funds and other relief, as may become necessary.

- Adjudicate eligibility and entitlement to funds and other relief, as may become necessary.

- Monitor compliance with structural injunctions, as may become necessary.

**B.     Communications with the Parties and the Court**.

Rule 53(b)(2)(B) directs the Court to set forth "the circumstances, if any, in which the [Special Master] may communicate ex parte with the court or a party."  The Special Master may communicate ex parte with the Court at the Special Master's discretion, without providing notice to the parties, regarding logistics, the nature of his activities, management of the litigation and other appropriate procedural matters, and also to assist the Court with legal analysis of the parties' submissions.  The Special Master may communicate ex parte with any party or their counsel, as the Special Master deems appropriate, for the purposes of ensuring the efficient administration and management and oversight of this case, and for the purpose of mediating or negotiating a resolution of any dispute related to this case.  The Special Master shall not communicate to the Court any substantive matter the Special Master learned during an ex parte communication between the Special

7

Master and any party.[11]

### C.    Special Master's Record.

Rule 53(b)(2)(C) states that the Court must define "the nature of the materials to be preserved and filed as a record of the [Special Master's] activities." The Special Master shall maintain normal billing records of his time spent on this matter, with reasonably detailed descriptions of his activities and matters worked upon. If the Court asks the Special Master to submit a formal report or recommendation regarding any matter, the Special Master shall submit such report or recommendation in writing, for filing on the case docket. The Special Master need not preserve for the record any documents created by the Special Master that are docketed in this or any other court, nor any documents received by the Special Master from counsel or parties in this case.

### D.    Review of the Special Master's Rulings.

Rule 53(b)(2)(D) directs the Court to state "the time limits, method of filing the record, other procedures, and standards for reviewing the [Special Master's] orders, findings, and recommendations." The Special Master shall either (1) reduce any formal order, finding, report, ruling or recommendation to writing and file it electronically on the case docket via Electronic Case Filing ("ECF"); or (2) issue any formal order, finding, report, ruling or recommendation on the record before a court reporter. Pursuant to Rule 53(f)(2), any party may file an objection to an order, finding, report, ruling or recommendation by the Special Master within 21 calendar days of the date

---

[11]    The Court may later limit the Special Master's ex parte communications with the Court with respect to certain functions, if the role of the Special Master changes. See, e.g., In re: Propulsid Prods. Liab. Litig., 2002 WL 32156066 (E.D. La. Aug. 28, 2002) (after Special Master was given additional mediation duties, scope of his ex parte communications with parties and Court, as well as his record-keeping obligations, changed); Fed. R. Civ. P. 53(b)(4) (noting that order of appointment may be amended). On the other hand, such imposition of different limits on ex parte communications does not necessarily require amendment of this Order.

it was filed; failure to meet this deadline results in permanent waiver of any objection to the Special Master's orders, findings, reports, rulings or recommendations.[12]   Absent timely objection, the orders, findings, reports, rulings and recommendations of the Special Master shall be deemed approved, accepted and ordered by the Court, unless the Court explicitly provides otherwise.

If the Special Master issues an informal ruling or order that is not on the record (such as the resolution of a discovery dispute) either orally, via email, or through other writing, and a party wishes to object to that ruling or order, the party shall ask the Special Master to formalize the ruling or order by filing it on the docket or appearing before a court reporter.   Such request shall be made within three days of issuance of the informal order or ruling, else the opportunity to object shall be waived.   The procedures and deadlines outlined in this section shall then apply.

As provided in Rule 53(f)(4, 5), the Court shall decide de novo all objections to conclusions of law made or recommended by the Special Master; and the Court shall set aside a ruling by the Special Master on a procedural matter only for an abuse of discretion.   The Court shall retain sole authority to issue final rulings on matters formally submitted for adjudication, unless otherwise agreed by the parties, and subject to waiver of objection to written orders or recommendations as noted above.   To the extent that the Special Master enters an order, finding, report, ruling or recommendation regarding an issue of fact, the Court shall review such issue de novo, if any party timely objects pursuant to the Rules and within the 21 calendar day time period set forth herein.   See

---

[12]      Rule 53(f)(2) provides that parties may file objections "no later than 21 days after a copy of the [Special Master's order, report or recommendations] is served, unless the court sets a different time."   Motions for extensions of time to file objections will not normally be granted unless good cause is shown.   The Special Master may, however, provide in his order, finding, report or recommendation that the period for filing objections to that particular document is some period longer than 21 calendar days, if a longer period appears warranted.

Rule 53(f)(3). Failure to meet this deadline results in permanent waiver of any objection to the Special Master's findings of fact.

**E.      Compensation**.

Rule 53(b)(2)(E) states that the Court must set forth "the basis, terms, and procedure for fixing the [Special Master's] compensation;" see also Rule 53(g) (addressing compensation). The Special Master shall be compensated at his current rate of $500 per hour, with defendants bearing 85 per cent of this cost and plaintiffs bearing 15 per cent of this cost.[13] Normal annual increases to this rate of compensation shall be calculated by reference to the Laffey Index.[14] The Special Master shall incur only such fees and expenses as may be reasonably necessary to fulfill his duties under this Order, or such other Orders as the Court may issue. The Court has "consider[ed] the fairness of imposing the likely expenses on the parties and [has taken steps to] protect against unreasonable expense or delay." Rule 53(a)(3).

---

[13]      The Court concludes that imposing half of the cost on each side is not appropriate in this case. See Atl. Richfield Co. v. Am. Airlines, Inc., 98 F.3d 564, 572 (10th Cir. 1996) (noting that "[d]istrict courts have discretion to apportion the compensation of a special master among the parties," including assigning entire expense to one party). The Court reaches this conclusion for three reasons. First, the parties have dramatically different access to resources. Sprint had operating revenues in 2012 in excess of $35 billion, while the average annual compensation of a Sprint sales representative during the class period was about $37,000. Second, Sprint consented to the appointments, while plaintiffs did not (although plaintiffs recognized that Court still had authority to appoint a Special Master pursuant to Rule 53(a)(1)(C)). And third, Sprint has conceded that its computer systems failed for years to pay sales commissions accurately; the essential issue in this litigation is the extent to which this failure caused plaintiffs to suffer damages. It is thus fair and appropriate to impose most of the cost of the Special Master on defendants.

For the same reasons, the Court also imposes on defendants 85 per cent of the cost of the technical advisor and the court-appointed expert, with the remaining 15 per cent imposed on plaintiffs.

[14]      See www.laffeymatrix.com/see.html. Annual increases will be limited to the *percentage* increases shown in the Laffey Matrix, not the *numerical* increases.

From time to time, on approximately a monthly basis, the Special Master shall file <u>under seal</u> an Itemized Statement of fees and expenses (not to include overhead).  Given that, at this juncture in the litigation, one of the duties of the Special Master is to assist the Court with legal analysis of the parties' submissions, the Court expects these Itemized Statements may reveal confidential communications between the Special Master and the Court.  Accordingly, the Court shall maintain these Itemized Statements under seal, and they shall not be made available to the public or counsel. The Special Master shall file with the Itemized Statement a Summary Statement, which shall list only the total amount billed, <u>shall not be filed under seal</u>, and shall contain a signature line for the Court, accompanied by the statement "approved for disbursement."  If the Court determines the Itemized Statement is regular and reasonable, the Court will sign the corresponding Summary Statement and transmit it to the parties.  The parties shall then remit to the Special Master their proportionate share of any Court-approved amount, within 20 calendar days of Court approval.[15]

**F.    Other Matters**.

**1.    Affidavit**.

Rule 53(b)(3)(A) notes that the Court may enter an order of appointment "only after the [Special Master] files an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. § 455."  <u>See also</u> Rule 53(a)(2) (discussing grounds for disqualification).  The required affidavit is attached.

**2.    Cooperation**.

---

[15]    The Court adopts this procedure from Judge Kathleen M. O'Malley, who used it in her MDL proceedings.  <u>See</u> <u>In re: Welding Rod Prods. Liab. Litig.</u>, 2004 WL 3711622, at *5 (N.D. Ohio Nov. 10, 2004).

The parties and their counsel, including their successors in office, agents and employees, shall provide full cooperation to the Special Master, and any staff or consultant employed by the Special Master, and observe faithfully the requirements of any orders of the Court and rulings by the Special Master.  The Parties shall timely comply with rulings of the Special Master issued pursuant to this Order.  Pursuant to Rule 53(c)(2), the Special Master may, if appropriate, "impose on a party any noncontempt sanction provided by Rule 37 or 45, and may recommend a contempt sanction against a party and sanctions against a nonparty."  As an agent and officer of the Court, the Special Master (and those working at his direction) shall enjoy the same protections from being compelled to give testimony and from liability for damages as those enjoyed by other federal judicial adjuncts performing similar functions.[16]

**3.     Access to Information**.

The parties will make readily available to the Special Master any and all individuals, information, documents, materials, programs, files, databases, services, facilities and premises under their control that the Special Master requires to perform his duties.  The parties will make readily available to the Special Master any and all facilities, files, databases, computer programs and documents necessary to fulfill the Special Master's functions under this Order.

The Special Master may require reports from any party in a format specified by the Special Master, as reasonably required to enable the Special Master to perform all assigned duties.

**IT IS SO ORDERED.**

Dated this 14th day of April, 2014 at Kansas City, Kansas.

_____

[16]     See, e.g., Atkinson-Baker & Assocs., Inc. v. Kolts, 7 F.3d 1452, 1454-55 (9th Cir. 1993) (applying doctrine of absolute quasi-judicial immunity to Special Master).

12

<u>/s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
UNITED STATES DISTRICT JUDGE