**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **ROXIE SIBLEY, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 08-CV-2063-KHV** |
| **SPRINT NEXTEL CORPORATION, et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

**SHOW CAUSE ORDER REGARDING JUDGMENT AS A MATTER OF LAW**

As discussed at length in the Special Master's *Report Regarding Cross-Motions to Exclude Expert Testimony* (Doc. # 701) (hereinafter, "*Daubert Report*"), plaintiffs and defendants each filed expert reports addressing the question whether Sprint paid members of the certified class the correct amount of commissions. For each class member, each expert calculated whether class members were underpaid, overpaid or paid correctly. Plaintiffs' expert, known as "BE," calculated that Sprint underpaid the class as a whole about $102 million, while Sprint's expert, Dr. Thornton, calculated that Sprint overpaid the class about $75 million. *Daubert Report* at 7 n.6.

On a more granular basis, the experts were in agreement about certain, individual class members. As shown in the chart below (which the Court asked the Technical Advisor to create), although the experts disagreed whether about 90% of the class members were underpaid or overpaid, the experts agreed that (a) Sprint overpaid 2,572 individual class members, (b) Sprint underpaid 537 individual class members and (c) Sprint correctly paid two individual class members.

|  | **Thornton's Analysis** | **BE's Analysis** | **Overlap** |
|---|---|---|---|
| **Total Class Size** | 30,392 | 32,941 | 29,843 |
| **Overpaid** | 29,746 | 3,498 | 2,572 |
| **Underpaid** | 629 | 28,988 | 537 |
| **Correctly Paid** | 17 | 455 | 2 |

In Exhibit C to this Order, the Technical Advisor explains the derivation of this chart. The Technical Advisor will produce directly to the parties Exhibits A1, A2, B1 and B2, which are lists of class members that fall into the cells of the chart, as well as the programs she used to create these lists.

The chart reveals certain critical facts. It appears plaintiffs have ***conceded*** that 3,953 (=3,498+455) employees have no damages. Accordingly, the Court is inclined to enter an Order granting judgment as a matter of law in favor of Sprint and dismissing with prejudice the remaining claims of each of these 3,953 class members. Moreover, beyond plaintiffs' concession, the parties ***agree*** that 2,574 (=2,572+2) of these employees have no damages. Accordingly, the Court is inclined to enter an Order granting judgment as a matter of law in favor of Sprint and dismissing with prejudice the remaining claims of each of these 2,574 class members.

Further, it appears Sprint has ***conceded*** that it underpaid 629 employees by some amount. Accordingly, the Court is inclined to (i) enter an Order granting judgment as a matter of law in favor of these 629 plaintiffs on the question of liability, and (ii) set a date for jury trial to determine damages for each of these plaintiffs. Moreover, beyond Sprint's concession, it appears the parties ***agree*** that Sprint owes 537 of these employees some amount of money, even if the parties disagree on specific amounts. Accordingly, the Court is even more strongly inclined to (i) enter an Order granting judgment as a matter of law in favor of these 537 plaintiffs on the question of liability, and

(ii) set a date for jury trial to determine damages for each of these plaintiffs.

Finally, the Court is also inclined to combine the damages trial for the conceded/agreed underpaid plaintiffs with a full trial on liability and damages for the remaining 27,000+ class members regarding whom the experts do not agree. Thus, the Court would enter an Order setting a date for jury trial of all remaining issues.[1]

The parties are directed to **SHOW CAUSE** why the Court should not enter these Orders. The show-cause submissions should not assert arguments that the Court has already resolved – for example, that the Court should not enter the proposed Orders because class certification is inappropriate, or because an expert report is inadmissible.

The parties shall file their show-cause submissions as follows: (1) initial show-cause cross-submissions of no more than 25 pages are due on July 7, 2017; (2) cross-responses of no more than 20 pages are due on July 21, 2017; and (3) no replies are permitted. These deadlines will not be

---

[1] The Court is aware that the vagaries of the parties' competing analyses raise complications with regard to the Court's proposed orders. As revealed in the Technical Advisor's analysis, for example, it appears there are *competing* concessions regarding 64 individual class members – that is, BE concedes they were overpaid, while Dr. Thornton concedes they were underpaid. One possible resolution of this complication is not to enter judgment as a matter of law either way regarding these 64 individuals, and let a jury decide their claims; another possible resolution is to enter judgment as a matter of law against these 64 individuals, on the basis that BE's concession carries more weight than does Sprint's; and there are other possibilities.

Another example is that Dr. Thornton includes in her class list 549 individuals whom BE does not include, and BE includes 3,098 individuals in its class list whom Dr. Thornton does not include. It thus remains unclear precisely who all of the "remaining" class members would be, following entry of the proposed orders. One possible resolution of this complication is to define the class broadly to include all of the individuals on either expert's list; another possible resolution is to define the class to include only some of these "non-overlapping" individuals (such as, including the 3,098 but not the 549); another possible resolution is to enter judgment as a matter of law in favor or against some or all of these "non-overlapping" individuals; and there are other possibilities.

In their show-cause submissions, the parties should set out their positions on how the Court should resolve these complications, and any others they identify.

3

continued.  The Court will hold a show-cause hearing on July 28, 2017 at 9:00 a.m. in Courtroom 476.

**IT IS SO ORDERED.**

/s/ Kathryn H. Vratil
KATHRYN H. VRATIL
UNITED STATES DISTRICT JUDGE

**Dated:**   June 13, 2017

## Exhibit C – Technical Advisor's Identification from Experts' Analyses of Class Members Who Were Underpaid, Overpaid, and Correctly Paid

### Experts' Class Member Counts

Each expert produced with their 2015 expert reports calculation summary files listing the computed under, over, or correct payments for each class member.

- For BE, the produced summary file is "NKA1413025.xlsxs" which lists 32,941 employees.[1] Counsel for plaintiffs produced a corrected version of this summary table on March 17, 2016.[2]
- For Dr. Thornton, the produced summary file is SAS dataset "countsbyemp2015update.sas7bdat" which lists 30,392 employees.[3] **Table 1** summarizes the difference between BE and Dr. Thornton in total class member counts:

| Table 1 - Class Member Counts Difference Between BE and Thornton's Analysis | | |
|---|---|---|
| | | |
| Total Class Members Included in Dr. Thornton's Analysis | [1] | 30,392 |
| Total Class Members Included in BE's Analysis | [2] | 32,941 |
| | | |
| Class Members Included by BE but not Dr. Thornton | [3] | 3,098 |
| Class Members on ramp-up for only month in data | [3a] | 1,043 |
| Additional Class Members with only one month in data | [3b] | 671 |
| Class Members that worked only in an 'LA' store | [3c] | 734 |
| Class Members without current explanation for difference | [3d]=[3]-[3a-c] | 650 |
| | | |
| Class Members Included by Thornton but not BE | [4] | 549 |
| References: | | |
| [1] Thornton 2015 Report, pg. 5, fn. 10: "cnts2015update" SAS dataset. | | |
| [2] BE 2016 Rebuttal Report, p. 34 (¶96) cites an employee count of 33,941, while BE's final underpayment dataset contains exactly 32,941 Class Members (Dkt. 626-3, NKA1413025.xlsx). The report count appears to be a typo. | | |
| [3a] Class Members on ramp-up according to Dr. Thornton's ramp-up dataset ("rebutcomp.dta" in DATA10). | | |
| [3c] See NKA1413008,NKA1413010, NKA1413012, NKA1413014, NKA1413016, NKA1413018 datasets, employees with scid starting with the words "LA". | | |
| Assumptions: | | |
| [3b] These may correspond to employees with only partial months which Dr. Thornton excluded but BE kept. | | |
| [3d] This remaining unexplained difference could include, for example, Class Members who always have a negative "tearn" value in the Compensation Statement data and Class Members whose only commission calculation months resulted in extreme values (outliers identified and excluded by Dr. Thornton). | | |

[1] See, e.g., BE 2015 Report, ¶246, App. D.
[2] See March 17, 2016 email from Alex Baggio to Elise M. Bloom and Nicole Eichberger, et. al.
[3] See, e.g., Dr. Thornton's "cnts4update" SAS program (see "DATA21\Programs").

As shown in **Table 1**, the number of total class members included in BE's analysis (32,941) is different from the total included in Dr. Thornton's analysis (30,392). BE analyzes 3,098 employees not included in Dr. Thornton's class member list, and Dr. Thornton analyzes 549 employees not included in BE's.

**Experts' Counts of Class Members Underpaid, Overpaid, or Correctly Paid**

BE calculated that out of 32,941 employees, 28,988 were <u>under</u>paid, 3,498 were <u>over</u>paid, and 455 were correctly paid. Dr. Thornton calculated that out of 30,392 employees, 29,746 were <u>over</u>paid, 629 were <u>under</u>paid, and 17 were correctly paid. **Table 2** presents this summary.

| Table 2 - Experts' Counts of Class Members Overpaid, Underpaid, and Correctly Paid | | |
|---|---|---|
| | Number of Class Members from Dr. Thornton's Analysis | Number of Class Members from BE's Analysis |
| Total Class Size | 30,392 | 32,941 |
| Overpaid | 29,746 | 3,498 |
| Underpaid | 629 | 28,988 |
| Correctly Paid | 17 | 455 |

**Requests from the Court**

The Court has asked me to produce the following lists of class members under two approaches: "Concession" and "Overlap".

*Concession:*
- For the 3,953 (=3,498+455 in **Table 2**) class members for whom BE calculated <u>over</u>payments or correct payments, produce the list as **Exhibit A1**;
- For the 629 class members for whom Dr. Thornton calculated underpayments, produce the list as **Exhibit B1**.

Under "Concession", it may be that a subset of the 3,953 employees for whom BE calculated overpayments or correct payments was not among those in Dr. Thornton's class list of 30,392. Similarly, it may be that a subset of the 629 employees for whom Dr. Thornton calculated overpayments was not among those in BE's class list of 32,941.

*Overlap:*
- Identify the class members for whom <u>both</u> BE and Dr. Thornton calculated <u>over</u>payments or correct payments, produce this list as **Exhibit A2**;

- Identify the class members for whom <u>both</u> BE and Dr. Thornton calculated <u>under</u>payments, produce this list as **Exhibit B2**.

**Summary of Technical Advisor's Findings**

| Table 3 - "Overlap" versus "Concession" Counts of Employees | | | |
|---|---|---|---|
| | | | |
| | Number of Class Members from Dr. Thornton's Analysis | Number of Class Members from BE's Analysis | Number of Overlap Class Members between Dr. Thornton and BE |
| Total Class Size | 30,392 | 32,941 | 29,843 |
| Overpaid | 29,746 | 3,498 | 2,572 [1] |
| Underpaid | 629 | 28,988 | 537 [2] |
| Correctly Paid | 17 | 455 | 2 [3] |
| [4] Number of Class Members Underpaid According To Dr. Thornton's Calculation | | | 629 |
| [5] Number of Class Members Overpaid or Correctly Paid According To BE | | | 3,953 |
| [6] Overlap Number of Class Members Between [4] and [5] | | | 64 |
| Overlap Approach | | | |
| Exhibit A2 Class Member Count = [1]+[3] | | 2,574 | |
| Exhibit B2 Class Member Count = [2] | | 537 | |

**Method Used By The Technical Advisor**

BE's summary file "NKA1413025.xlsx":

- Uses the corresponding unique employee identifier "UEID" <u>created by BE</u>[4]; and
- Contains employee names;

Dr. Thornton's summary file "countsbyemp2015update. sas7bdat":

- Uses an employee identifier originated from the data field "hdr_vc_empnum" found in the Sprint data; and
- Does <u>not</u> contain employee names.

In order to compare BE's file with Dr. Thornton's file to identify overlaps, an employee identifier crosswalk file is needed to merge the two, given the different employee ID types included in each summary file.

---

[4] See, e.g., BE 2015 Report, ¶47.

The produced employee ID crosswalk file "beids.txt" lists the BE UEID identifiers and the corresponding Sprint employee ID ("hdr_vc_empnum" aka "repid"[5]), the latter of which is listed in Dr. Thornton's damages summary file. The "beids.txt" employee ID crosswalk is a file used and referenced by Dr. Thornton as part of an ID match for her 2016 rebuttal analysis where she quantifies critiques/adjustments for BE's analysis.[6] As part of this analysis, Dr. Thornton generates the "hdr_vc_empnum" employee ID variable and sets it equal to the "repid" employee ID variable listed in the crosswalk file.

Merging the summary calculation data with the UEID-repid crosswalk enables the assignment of the employee names to Dr. Thornton's calculation summary file. Once the data is merged, it can be determined whether both BE and Dr. Thornton computed an overpayment, underpayment, or correct payment for each employee.

**Attachment A** outlines the information I have reviewed for the determination of using "beids.txt" as a crosswalk to link the experts' class member lists.[7]

I will produce **Exhibits A1, B1, A2,** and **B2**, along with the SAS program and loglst file, to the Court, Special Master Cohen, and the parties' Counsel and Experts.

---

[5] See, e.g., Dr. Thornton's "COMPONENT.do" STATA program, lines 7-15 (see "DATA21\Programs"); BE 2016 rebuttal report, ¶81.

[6] See, *e.g.*, Dr. Thornton 2016's rebuttal report, ¶121, fn. 115, which references the STATA program "COMPONENT.do".

[7] Exhibit B1 includes 28 class members not found BE's class list and therefore the employees do not have an assigned BE ID. Thus, for these individuals, the employee names are determined using the following Dr. Thornton datasets: "ids.xlsx" (see DATA2); and "comp_s3.sas7bdat" (see DATA20\Data).

**Attachment A – Information Reviewed**

1) Employee ID crosswalk files: **beids.txt**; **ids.xlsx**; **NKA1201436.xlsx**

- **beids.txt**
  - File location: "DATA10\Data"
  - Lists BE's UEID (under heading "BEUEID") and corresponding RepID (under heading "Redpid (1)")
  - File does not include employee names
- **NKA1201436.xlsx**
  - File location: Appendix Docs for BE's first expert report, dated 10.15.12
  - File includes BE's ID's and corresponding RepID's (and other ID's)
  - File does not include employee names
- **ids.xlsx**
  - File location: "DATA2"
  - File includes various corresponding Sprint system ID's
  - File does include employee names
  - File does not include BE's ID's

2) Locations of summary calculation files

- **NKA1413025**
  - Appendix Docs for BE's current report, dated 9.28.15
- **countsbyemp2015update.sas7bdat**
  - "DATA21\Data"