**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ROXIE SIBLEY, JEANNE NOEL, ERNESTO BENNETT, JAMIE WILLIAMS, GREG ST. JULIEN, TRACIE HERNANDEZ, JOHN JASINSKI, and TEISHA KING, individually and on behalf of the class,<br><br>         Plaintiffs,<br><br>v.<br><br>SPRINT NEXTEL CORPORATION, and SPRINT/UNITED MANAGEMENT COMPANY,<br><br>         Defendants. | Case No. 02:08–CV–2063–KHV/JPO |

**DECLARATION OF MICHELE R. FISHER IN SUPPORT OF PRELIMINARY APPROVAL OF SETTLEMENT**

1.    My name is Michele R. Fisher ("Fisher"), and I am one of the attorneys representing the class at the law firm Nichols Kaster, PLLP ("Class Counsel").

2.    Class Counsel's law firm, Nichols Kaster, PLLP, is a nationally recognized plaintiffs' firm that has existed for over forty years and is focused on advocating for employee and consumer rights. With offices in Minneapolis, Minnesota and San Francisco, California, the firm has represented thousands of workers in hundreds of cases. The firm has 34 attorneys and 37 support staff. Our attorneys are highly skilled in handling major complex litigation and have extensive experience litigating wage and hour class actions.

3.    Work performed by Nichols Kaster, PLLP attorneys and legal staff is recorded contemporaneously using a timekeeping system. Those entries reflect 39,614.31 hours expended

on this matter over the past ten years.  Based on our standard hourly rates, the value of this time

(on a lodestar basis) is $13,918,213.75.  The table below summarizes those hours:

| Name | Hours | Rate | Total |
|---|---|---|---|
| Michele Fisher (Partner) | 6,105.65 | $550.00 | $3,358,107.50 |
| Paul Lukas (Partner) | 3,684.40 | $650.00 | $2,394,860.00 |
| Alex Baggio (Associate) | 4,704.82 | $375.00 | $1,764,307.50 |
| Charles Froman (Associate) | 2,752.20 | $375.00 | $1,032,075.00 |
| Rebekah Bailey (Partner) | 1,403.40 | $450.00 | $631,530.00 |
| Donald Nichols (Partner) | 446.30 | $600.00 | $267,780.00 |
| Robert Schug (Partner) | 95.62 | $475.00 | $45,419.50 |
| Doc. Review & Research  Attorneys | 11,337.31 | $250.00 | $2,834,327.50 |
| Staff | 9,084.61 | $175.00 | $1,589,806.75 |
| **TOTAL** | **39,614.31** | | **$13,918,213.75** |

I exercised billing judgment and omitted time for those who performed less than 20 hours of

work and two associates and one partner who only worked on the case a couple of weeks or less.

We also retained Stueve Siegel Hanson LLP as local counsel.  Their time has been minimal so is

not included.

4.      These hours included many things, such as investigating claims, interviewing and

communicating with class members, preparing and responding to discovery, preparing for taking

and defending depositions, analyzing data, damages, and documents, working with and meeting

with experts, expert reports, preparing for and meeting with clients, drafting and responding to

numerous non-dispositive and dispositive motions, responding to motions for interlocutory

appeal, preparing and responding to objections to reports and recommendations, meetings with

the Special Master and Technical Advisor, hearings, travel, file organization and management,

legal research, management of client database and data, case strategy and trial preparation, and

mediation.

5.      During discovery, we engaged in extensive efforts to reach class members to discuss their claims, and were able to make affirmative contact with over 30,000 class members. We maintained contact by providing update letters and emails, website updates, and maintaining staff to respond to class member communications.

6.      In addition to our hours expended, we will also spend additional time finalizing the preliminary approval briefing and exhibits for filing, finalizing the settlement agreement, preparing for and attending the preliminary approval hearing, and if the Court grants the motion, drafting the final approval papers, preparing for and attending the final approval hearing, working with the Claims Administrator and Sprint to ensure the settlement is administered correctly, and answering questions from class members for years to come.

7.      Paul Lukas ("Lukas") and I shared primary reasonability for the case.  Earlier, we received assistance from a third partner, Donald Nichols ("Nichols"), who has since retired, and we also received assistance from another partner, Robert Schug ("Schug"), when preparing for trial.  We have had three associates on the matter over the years, Alex Baggio ("Baggio"), Charles Frohman ("Frohman"), and Rebekah Bailey ("Bailey").  This case often occupied the constant attention of two partners nearly full-time, who are essential to originating and litigating other cases, training and supervising associates, and running the firm.

8.      We also staffed this case with several document review and research attorneys who spent considerable time reviewing, coding, and summarizing Sprint's production of over 18 million pages of documents, researching legal issues, and investigating witnesses.  Document review and research played a central role in this case, as the attorneys carefully worked through millions of pages of often very technical documents, coding them according to a matrix of many issues, identifying and analyzing "hot" documents, summarizing key documents, drafting

detailed analyses on specified topics based on targets searches, and providing critical exhibit identification assistance for depositions. That work was instrumental, as it permitted Class Counsel to decide who to depose, locate key exhibits for depositions, obtain the facts to support the extensive briefing we performed, and was crucial to our ability to support Plaintiffs' allegations that Sprint's commission system had problems using the produced documents and depositions.  It also helped us locate documents related to complex technical questions the experts had about Sprint's data and systems for the expert calculations and reports.  It allowed the attorneys managing the case to focus their time on, among other things, case strategy, discovery, motion practice, expert damages models and reports, and preparing for trial.  The hourly rate for these attorneys is $250.

9.     We also relied extensively on highly-skilled non-attorneys, such as paralegals, class action clerks, law clerks, and damages clerks to perform other important day-to-day administrative functions and legal research.  The hourly rate for these staff members is $175. These employees are integral to the success of a case such as this with a massive record, numerous filings, and large class of employees to manage.

10.     I have been practicing law for over 17 years, and have been a partner at Nichols Kaster, PLLP since 2008.  I was admitted to practice in 2000.  My time is billed at $550 per hour.  My practice is primarily dedicated to national wage and hour class and collective action litigation. I have represented over a hundred thousand employees seeking to recover overtime pay, minimum wages and commission payments. I have successfully handled numerous jury trials and arbitrations. I am a member of the firm's management committee and the chair of its Business Development and Marketing Groups, which originate class and collective actions and market the firm.  I am also one of the leaders of our firm's Wage and Hour Litigation group.  I

am a regular speaker at local and national conferences, routinely act as an author and editor for wage and hour publications, and am active in several organizations. I am the co-chair and a faculty member of the Practicing Law Institute's Wage & Hour Litigation and Compliance conference, and the Co-Chair of the ABA Federal Labor Standards Legislation Committee. I have also served as the Co-Editor-in-Chief of the ABA Federal Labor Standards Legislation Committee's Midwinter Report, a chapter editor for BNA's Wage and Hour Laws: A State-by-State Survey, and an editorial board member for BNA's the Fair Labor Standard Act Treatise. I have been named to the Super Lawyers, Top Women Attorneys, and Rising Star lists repeatedly, am a member of the Top 100 National Trial Lawyers, and Top 10 Wage and Hour Lawyers, and a Lawyer of Distinction. I provide pro bono representation for the Children's Law Center.

11.     Lukas has been practicing law since 1991 and has close to 30 years of litigation experience.  His time is billed at $650 per hour.  Since starting with the firm as a law clerk during law school, Lukas has worked his entire career at Nichols Kaster, PLLP.  In addition to his role as a leader in the firm's Wage and Hour litigation group, he is also a leader in the firm's consumer and ERISA litigation group.  Lukas has extensive trial experience, having tried nearly 50 cases to verdict, including large wage and hour and ERISA class actions.  He has obtained favorable verdicts for employees in overtime and minimum wage, age, race, national origin, sex discrimination, sex harassment, whistleblower, sexual assault, retaliation, and minority shareholder cases.  His experience and energy toward the practice of law have made him a popular lecturer nationally on employment and consumer law related issues, and on civil litigation strategies.  Paul has been recognized as one of "The Best Lawyers in America" and is consistently named to the Super Lawyers list.

12.     Bailey was one of the associates on this case for a period of time, who moved to

the status of partner at our firm in 2017.  Bailey is a 2008 law school graduate, and has been litigating wage and hour class and collective actions for nearly 10 years.  Her time is billed at $450 hour.  She is a member of the firm's ESI and Discovery Committee, and is also active in organizations and publications nationally.

13.     Baggio is the associate currently assigned to this case.  He is a 2009 law school graduate and has focused on wage and hour litigation since joining the firm's wage and hour group in 2012.  His time is billed at $375 per hour.  Baggio has represented thousands of employees seeking unpaid wages in class and collective actions.  He is a contributor to BNA's The Fair Labor Standards Act treatise and a chapter editor for BNA's Wage and Hour Laws, a State-by-State Survey.  Prior to joining Nichols Kaster, he clerked for two Minnesota state court judges.

14.     Frohman, a 2006 law school graduate, also served as an associate on this case. While he is no longer with the firm, he dedicated his practice with us to wage and hour litigation.  His time is billed at $375 per hour.  Frohman currently works as a partner at the Maslon LLP business litigation law firm in Minneapolis.

15.     Nichols founded the firm in 1974, and was one of the partners involved in assisting with the management and strategy of this case for many years, until his retirement. Nichols has over 40 years of experience in the practice of law, was a MSBA Certified Trial Specialist, has tried over 100 cases to verdict, and frequently lectured at seminars across the country.  He litigated close to 50 overtime and minimum wage class and collective actions. Nichols' time is billed at $600 hour.

16.     Schug was admitted to the bar in 2006 and is a partner at the firm.  His billable rate is $475 per hour.  He has dedicated his career to workers' rights in complex class action

litigation.  Schug has over a decade of experience litigating cases through trial in both court and arbitration and has represented thousands of workers in areas such as employee misclassification, gender discrimination, and unpaid wages.   He previously served as the Director of Litigation at the Impact Fund, a nationally recognized non-profit law firm.

17.     Our firm handled this case on a contingency basis.  Because of this contingency fee arrangement, we did not receive any payment for our time spent litigating the case, nor did we receive reimbursement for the significant out of pocket costs expended during the litigation. We, alone, undertook a significant financial risk of unsuccessful litigation. Our fee agreement with our class representatives provides for recovery of one-third of the settlement, plus reimbursement for costs we advanced.  The fee agreement here is commonly used by our firm in wage and hour cases.

18.     With respect to litigation costs, our firm has advanced $6,449,293.12 to prosecute this case and we anticipate spending approximately $123,854.04 more, for a total of approximately $6,573,147.16.  A summary of current costs expended is below:

| Category | Totals |
|---|---|
| Printing | $25,650.03 |
| Advertising | $4,184.87 |
| Photocopies | $21,616.04 |
| Postage Mailings | $59,163.67 |
| Travel | $269,716.26 |
| Depositions | $84,146.89 |
| Balance Engines | $4,235,230.40 |
| Margaret Dunham | $1,092,515.20 |
| Federal Express/Courier | $12,281.93 |
| Court Costs | $1,436.67 |
| Office Supplies | $372.10 |
| Conference Calls | $1,777.94 |
| Equipment/Software | $33,942.47 |
| Westlaw | $11,249.80 |
| Pacer | $1,165.92 |

7

| FOIA | $339.35 |
|------|---------|
| Mock Trial | $33,046.40 |
| Press Release | $2,070.00 |
| Special Master | $83,236.63 |
| Technical Advisor | $449,451.85 |
| Miscellaneous | $1,443.70 |
| Technical Support | $255.00 |
| Mediation | $25,000.00 |
| **Total:** | **$6,449,293.12** |

A summary of estimated future costs is below:

| Description | Total |
|-------------|-------|
| Balance Engines December/January | $116,689.04 |
| Final approval flights, hotel, transportation | $1,000.00 |
| Class member dismissal notices (12,330 x $.50) | $6,165.00 |
| **Total:** | **$123,854.04** |

Any future costs not incurred, will be reallocated to members of the Settlement Class who timely return a Release of Claims form.  Detailed costs information is provided in the Costs Detail at Exhibit 4.

19.     The advancement of these costs was invariably a financial drain on the firm, and detracted from our ability to take on, and expend financial resources, on other matters we might otherwise pursue.

20.     Evidence of the reasonableness of the expert fees is demonstrated by comparing them to the fees of the Technical Advisor, who was tasked by the Court with reviewing the expert models and trying to understand them.  In just three years, the Technical Advisor's services cost the parties $2,996,345.23.  Class Counsel was responsible for 15% of those charges, which totaled $449,451.85.  These costs are provided in the Costs Detail at Exhibit 4.

21.     Class Counsel was also responsible for 15% of the $554,910.86 total cost of the Special Master's services, which was $83,236.63.  These costs are provided in the Costs Detail at Exhibit 4.

22.     Our firm also incurred expenses for printing, advertising, courier and overnight services, copies, postage, transcripts, court costs, office supplies, conference calls, equipment and software, computerized research and Pacer charges, data practices requests, mock trial, press releases, and travel related expenses for numerous court hearings, expert meetings, expert summits, depositions, mediations, mock trial, and witness deposition and trial preparation. These costs are provided in the Costs Detail at Exhibit 4.

23.     The settlement provides that Plaintiffs may seek an award of $15,000.00 for each of the nine class representatives.  These class representatives conferred a substantial benefit on the Settlement Class by bringing the instant lawsuit, without which this settlement would not exist.  The requested award is appropriate to compensate them for the time and effort they expended to benefit the Settlement Class, including meetings with Class Counsel, reviewing case filings, producing documents, responding to written discovery, preparing for and attending their deposition, and assisting Class Counsel with the prosecution of this case for over ten years.  We were incredibly lucky to have such conscientious and dedicated class representatives who remained active for so many years.  More specific details about each of these nine class representatives' involvement is below:

- **Roxie Sibley ("Sibley")**:   Sibley was involved in starting the case as a class representative and the first named Plaintiff, spoke with our office several times, and reviewed and provided feedback on the Complaint.  She was a current Sprint employee at the time she initiated the action, working as a retail consultant in Louisiana.  She participated in discovery by completing multiple phone interviews, answering discovery requests, completing a survey about her experiences, and preparing for and attending her deposition.  She met with our attorneys at least twice for group meetings, once to prepare

for her deposition, and another time to prepare for trial.  Sibley provided information for the declaration she produced, and the discovery she provided included answering interrogatories, requests for production, requests for admission, and providing documents.  She provided supplemental interrogatories in 2008 and responded to additional interrogatories in 2011.  Sibley had frequent communication with us throughout the past ten years of litigation, routinely checking in for updates and to discuss how the case was being litigated.  She also routinely responded to communications from our office requesting information, and reviewed briefing and orders we provided.

- **Jeanne Noel ("Noel")**:  Noel was similarly involved in initiating the case as a class representative.  She spoke with our office many times and reviewed and provided feedback on the Complaint.  She was a retail consultant for Sprint in Louisiana at the time the case started.  Noel participated in discovery by completing multiple phone interviews, answering discovery requests, completing a survey about her experiences, and preparing for and attending her  full day deposition.  She met with our attorneys at least twice for group meetings, and also met with us to prepare for her deposition.  Noel provided information for the declaration she produced, and the discovery she provided included answering interrogatories, requests for production, requests for admission, and providing documents.  She provided supplemental interrogatories in 2008 and responded to additional interrogatories in 2011.  Noel routinely contacted our office for updates and to strategize on the case.  She responded to many requests from our office for information, and reviewed briefing and orders we provided.

- **Tracie Hernandez Mincks ("Hernandez")**:  Hernandez helped initiate the case.  She had several calls with our office and reviewed and provided feedback on the Complaint. She later became a class representative when we filed the First Amended Complaint. Hernandez was a store manager at that time in Louisiana.  Hernandez participated in discovery by completing multiple phone interviews, answering discovery requests, and preparing for and attending her full day deposition.  She met with our attorneys at least twice for group meetings, once to prepare for her deposition, and twice to prepare for her testimony at trial.  Hernandez provided information for the declaration she produced, and the discovery she provided included answering interrogatories, requests for production, requests for admission, and providing documents.   She provided supplemental interrogatories in 2008 and responded to additional interrogatories in 2011.  Hernandez regularly contacted our office for updates and to discuss the case.  She also responded to many requests from our office for information, and reviewed briefing and orders we provided.

- **Ernesto Bennett ("Bennett")**:  Bennett assisted with starting the case by speaking with us, agreeing to serve as a class representative, and reviewing the Complaint.   He participated in discovery by completing multiple phone interviews, completing a survey about his experience at Sprint, answering discovery requests, and preparing for and attending his deposition.  Bennett met with us once to prepare for his deposition, and once to prepare for trial.  Bennett provided information for the declaration he produced, and the discovery he provided included answering interrogatories, requests for production, requests for admission, and providing documents.  He provided supplemental interrogatories in 2008 and responded to additional interrogatories in 2011.  Bennett kept

in regular contact with our office, responded to requests from us for information, and reviewed briefing and orders we provided.

- **Jamie Williams ("Williams")**:  Williams was involved in the initiation of the case as one of the class representatives.  She had several calls with us about her claims, and reviewed the Complaint.  Williams participated in discovery by completing multiple phone interviews, completing a survey about her experience at Sprint, answering discovery requests, and preparing for and attending her deposition.  Williams met with us once to prepare for her deposition, and twice to prepare for her testimony at trial. Williams provided information for the declaration she produced, and the discovery she provided included answering interrogatories, requests for production, requests for admission, and providing documents.  She provided supplemental interrogatories in 2008 and responded to additional interrogatories in 2011.  Like the other class representatives, Williams kept in regular contact with our office, responded to requests for information, and reviewed briefing and orders we provided.

- **Greg St. Julien ("St. Julien")**:  St. Julien had several calls with our office and agreed to be a class representative when we filed the First Amended Complaint.  He was working for Sprint at that time as a retail consultant in Louisiana.  St. Julien participated in discovery by completing multiple phone interviews, completing a survey about his claims, answering discovery requests, and preparing for and attending his deposition.  St. Julien met with us once to prepare for his deposition, and on another occasion to prepare for trial.  Bennett provided information for the declaration he produced, and the discovery he provided included answering interrogatories, requests for production, requests for admission, and providing documents.  He provided supplemental interrogatories in 2008

and responded to additional interrogatories in 2011.  St. Julien kept in regular contact with our office, responded to our requests for information, and reviewed briefing and orders we provided.

- **Jay Richie ("Richie"):**  Richie had several calls with us and agreed to be a class representative when we filed the First Amended Complaint.  He was a former district manager for Sprint in Arizona.  Richie participated in discovery by completing multiple phone interviews, completing a survey about his claims, answering discovery requests, and preparing for and attending her deposition.  Richie met with us once to prepare for his deposition, once to prepare for trial, and attended the 2-day settlement conference in Kansas City, Kansas as our class representative.  Richie provided information for the declaration he produced, and the discovery he provided included answering interrogatories, requests for production, requests for admission, and providing documents.  He provided supplemental interrogatories in 2008 and responded to additional interrogatories in 2011.  Richie kept in regular contact with our office, responded to requests for information, and reviewed briefing and orders we provided.  He was also involved in settlement discussions that resulted in the parties reaching a settlement.

- **Teisha King ("King"):**  King had several discussions with us and agreed to be a class representative when we filed the First Amended Complaint.  King participated in discovery by completing multiple phone interviews, completing a survey about her experience at Sprint, answering discovery requests, and preparing for and attending her deposition.  She also met with us to prepare for her deposition.  King provided information for the declaration she produced, and the discovery she provided included

13

answering interrogatories, requests for production, requests for admission, and providing documents. She provided supplemental interrogatories in 2008 and responded to additional interrogatories in 2011. King kept in regular contact with our office about the status of the case, and provided information when needed. Class Counsel and their experts used specific examples from King's damages calculation in many of the reports and briefs filed.

- **John Jasinski ("Jasinski"):** Jasinski had several conversations with us and agreed to be a class representative when we filed our First Amended Complaint. He was a current Sprint employee at the time in Ohio, having worked as a retail consultant, lead communications consultant, assistant store manager, and then retail store manager. He participated in discovery by completing multiple phone interviews, completing a survey about his claims, answering discovery requests, and preparing for and attending his deposition. Jasinski met with us to prepare for his deposition, and once in preparation for trial. He provided information for the declaration he produced, and the discovery he provided included answering interrogatories, requests for production, requests for admission, and providing documents. He provided supplemental interrogatories in 2008 and responded to additional interrogatories in 2011. Jasinski kept in regular contact with our office, and reviewed briefing and orders we provided. He was very knowledgeable on Sprint's commission system and was responsive to our questions about it.

24.     The settlement also provides for a service award of $5,000 to each of the eleven class members who were instrumental to Class Counsel in preparing this case for trial. They met with Class Counsel, reviewed documents and briefing, and spoke with Class Counsel several

times in preparation to testify at trial.  Their willingness to prepare for and testify at trial was greatly beneficial to the class.  Details about each of these class members is below:

- **Veronica Batarseh (Borrego) ("Batarseh")**:  Batarseh was a Sprint district manager for one of the top districts in the country, supervising approximately 9 to 11 stores.  She completed a survey with details about her claim.  She also talked with us several times and met with us to prepare for her testimony at trial.  She also agreed to meet with us recently to further prepare for trial, but it was canceled the same day of the meeting in light of the settlement.  She provided substantial information we planned to use at trial.  For instance, she provided details about the alleged biggest problem areas in Sprint's commissions calculations, the timing of the alleged problems, the appeals process, the alleged underpayments, the alleged impact on the employees, managers, and their hours.  She was also a source for useful information about alleged complaints to management, and connected us with others to testify at trial.  Batarseh planned to travel from California to Kansas to testify with one of her subordinates Sameer Mohammad (see below).  She also reviewed briefing and orders provided.

- **Christopher Giardina ("Giardina")**:  Giardina was a current store manager at Sprint when he first met with us and agreed to testify at trial.  He again met with us a second time to prepare for trial.  Giardiana talked with us several times and provided detailed information during his meetings that were important to helping us develop our case strategy.   Having worked his way up from a sales representative, senior sales representative, store manager, and ultimately to a district manager, he was aware of the alleged issues class members faced in the various positions included in the class.  He planned to testify about the alleged problems with the commission calculations, Sprint's

appeals process, and the alleged commission underpayments. He also suggested additional witnesses for trial. Giardina also reviewed briefing and orders provided.

- **Jonathan Housknecht ("Housknecht")**: Housknect worked for Sprint as a district manager in Washington. At his peak, he managed approximately 13 stores with over 100 employees. He completed a survey about his claims. He also spoke with us by phone, and met with us twice to prepare for trial. He agreed to testify and had useful information about how his recollection of Sprint's alleged commission problems were consistent with the damages calculations provided by the class's experts. He also provided details about Sprint's internal appeal process. Housknecht's story was a centerpiece to Class' Counsel's briefing, as he sent an email to Sprint's CEO regarding the alleged commission problems. He connected us with other potential trial witnesses and agreed to travel from Texas, where he now resides, for trial. He also reviewed briefing and orders provided.

- **Jimmie Kelley ("Kelley")**: Kelley's story was also a centerpiece in Class Counsel's briefing and critical to Class Counsel's trial preparation. Kelley was Plaintiffs' witness for the alleged problems Sprint had paying accurate commissions and its alleged efforts to fix them. An entire section of Plaintiffs' statement of uncontested facts in the summary judgment briefing was dedicated to Kelley, who worked closely with Sprint's Project Management Team tracking his individual sales and the alleged resulting underpayments. Kelley was going to be an important witness at trial, necessary to fully and accurately tell his story to help prove Sprint's alleged problems with its commission system caused alleged substantial underpayments for years. Class Counsel had numerous conversations with Kelley to discuss his testimony for trial and was scheduled to meet with him the week the case was settled. He also reviewed briefing and orders provided.

- **Ryan Maier ("Maier")**:   Maier was a store manager for Sprint in Minnesota.   He completed a client survey about his experiences at Sprint.   He also spoke with us by phone, and met with Class Counsel twice to discuss his testimony for trial.   The information he provided was useful to prosecuting this case because he worked as a retail consultant, assistant manager, and then store manager in multiple stores.   His testimony would have included details about the categories of alleged commission issues and the appeals process.   He was going to testify in conjunction with a sales representative Kyle Neubauer with whom he worked, which would have required him to fly from Minnesota to Kansas.   Maier also reviewed briefing and orders provided.

- **Sameer Mohammad (Sam Salma) ("Mohammad")**:   Mohammad worked for Sprint as a manager at four stores.   He was known as a "fixer" and his boss Batarseh would send him to stores that were struggling.   He completed a client survey about his time with Sprint.   He spoke with us by phone, and met with Class Counsel once in person to prepare for trial.   He also agreed to meet with Class Counsel recently to further prepare for trial, but that meeting was canceled the same day of the meeting in light of the settlement.   Similar to the others, his testimony would include details about Sprint's alleged commissions problems.   He would have also testified to lending money to employees who needed it due to the alleged commissions shortages.   His testimony was useful to Class Counsel in developing their story for trial.   He also reviewed briefing and orders provided.

- **Kyle Neubauer ("Neubauer")**:   Neubauer worked as a retail consultant in Minnesota. He spoke with us several times regarding his story, and met with us in preparation for his testimony at trial.   He also agreed to meet with Class Counsel recently to further prepare

for trial, but that meeting was canceled in light of the settlement.  Class Counsel planned to use several compelling emails and appeals records for Neubauer at trial.  He connected us with Ryan Maier, his boss, who also agreed to testify.  He also reviewed briefing and orders provided.

- **William Ray ("Ray")**:  Ray started with Sprint in Tennessee as a sales representative and quickly moved into the assistant manager and then store manager position.  He completed a client survey about his claims and produced documents.  He spoke with us by phone several times, and met with us to prepare his testimony for trial.  He also agreed to meet with Class Counsel recently to further prepare for trial, but that meeting was canceled in light of the settlement.  He provided details about alleged unpaid commissions and the appeals process, and his alleged complaints to his district manager.  He provided detailed information in a survey we sent to class members, and participated in several interviews by our team.  Ray also reviewed briefing and orders provided.

- **Jason Renner ("Renner")**:  Renner worked for Sprint as a retail consultant and lead retail consultant in Kansas City.  He spoke with us by phone and met with us three times about his testimony for trial.  Renner produced many documents helpful to litigating this case.  For example, he provided data trackers useful to telling the story of the alleged efforts employees went through to try to track their sales independent of Sprint's systems.  He also reviewed briefing and orders provided.

- **Alden Smith ("Smith")**:  Smith was a district manager for Sprint in Louisiana who was in charge of many of the class representatives.  He completed a client survey about his work at Sprint.  Smith talked with us by phone many times, and also met with us twice in person to prepare his testimony for trial.  He provides compelling testimony about

fighting hard for his employees regarding commissions.  Several of his emails with his employees, and with Sprint's executives were used in Class Counsel's briefing, and would have been used as key documents at trial.  He agreed to travel from Louisiana to Kansas for trial.  He also suggested other good trial witnesses.  Smith reviewed briefing and orders provided.

- **Michael Tallon ("Tallon")**:  Tallon worked as a sales representative, assistant manager, store manager, and risk prevention consultant for Sprint in California.  He completed a client survey detailing the alleged issues he had at Sprint.  In addition to have many conversations with us by phone, he met with Class Counsel to prepare for trial.  He also agreed to meet with Class Counsel recently to further prepare for trial, but that meeting was canceled the same day of the meeting in light of the settlement.  He planned to testify about the alleged commission shortages. He also provided details regarding his role in the risk prevention consultant position.  Tallon reviewed briefing and orders provided.

25.     Attached are true and correct copies of the following:

Exhibit 1      Settlement Agreement with Ex. A Proposed Notice of Settlement to Class with Claim Form, and Ex. B Confidentiality Agreement for Claims Administrator;

Exhibit 2      Preliminary Approval Settlement Allocation Spreadsheet;

Exhibit 3      9/1/17 Hearing Transcript;

Exhibit 4      Costs Detail;

Exhibit 5      Claims Administrator, Rust Consulting, Bid for *Sibley* Case;

Exhibit 6      *Lengel v. HomeAdvisor, Inc.*, Civ. No. 2:15-cv-02198-KHV-KGS, Order (D. Kan. Oct. 31, 2017);

Exhibit 7      Nichols Kaster, PLLP Firm Resume;

Exhibit 8      Attorney Website Biography of Michele Fisher;

Exhibit 9      Attorney Website Biography of Paul Lukas;

Exhibit 10       Attorney Website Biography of Rebekah Bailey;

Exhibit 11       Attorney Website Biography of Donald Nichols;

Exhibit 12       Attorney Website Biography of Alexander Baggio; and

Exhibit 13       Attorney Website Biography of Robert Schug.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:   March 2, 2018                                    *s/Michele R. Fisher*
                                                          Michele R. Fisher