<u>**SETTLEMENT AGREEMENT**</u>

This Settlement Agreement is made by and between the Class Representatives, the Settlement Class Members (as defined below in Sections 1(jj) and 4), and Defendants Sprint Nextel Corp. and Sprint/United Management Company, (collectively, "Defendant") (as defined below in Section 1(m)) (collectively, the "Parties") to fully and completely settle ***Roxie Sibley, et al. v. Sprint Nextel Corp., et al.,*** No. 08-2063 (D. Kan.) (Vratil, J.) (the "Class Litigation");

WHEREAS, on February 7, 2008, the Class Representatives, on behalf of themselves and other purportedly similarly situated individuals, initiated the Class Litigation by filing a Class Action Complaint against Defendant in the United States District Court for the District of Kansas;

WHEREAS, on February 26, 2008, the Class Representatives, on behalf of themselves and other purportedly similarly situated individuals, filed the First Amended Class Action Complaint against Defendant in the United States District Court for the District of Kansas;

WHEREAS, Defendant denies that it, its current or former parents, subsidiaries, affiliates and each of their divisions, officers, directors or employees have committed any wrongdoing or violated any federal, state, or local laws, vigorously disputes the claims asserted in the Class Litigation and continues to assert that it has strong and meritorious defenses to any and all such claims;

WHEREAS, the Parties have vigorously litigated the Class Litigation and wish to avoid uncertainty and the expense and burdens of further litigation, including trial;

WHEREAS, the Parties have engaged in substantial, arms-length settlement negotiations, including a two-day mediation in Kansas City, Kansas on January 8th and 9th, 2018, before The Honorable Daniel D. Crabtree, and desire to resolve the Class Litigation; and

WHEREAS, on January 18, 2018 the Parties, by and through their Counsel, entered into a Memorandum of Understanding (the "MOU") setting forth the material terms of the settlement and agreed to memorialize those terms in further detail in this formal Settlement Agreement;

NOW, THEREFORE, the Parties agree as follows:

1.     <u>**Definitions**</u>.  As used in this Settlement Agreement, the following terms have the following meanings:

    a.     "**Applicable Class Period**" means, the class period from August 15, 2005 through September 30, 2009.

    b.     "**Attorneys' Fees**" means the amount to be paid to Class Counsel pursuant to Class Counsel's motion and subject to the Court's approval and the limitations described in Section 8 below.

    c.     "**Claims Administrator**" means Rust Consulting, Inc.

d.   "**Claims Administrator Fees and Costs**" means the amount to be paid to the Claims Administrator pursuant to Class Counsel's motion and subject to the Court's approval and the limitations described in Section 10(i) below.

e.   "**Claim Form**" means the claim form attached as part of **Exhibit A**.

f.   "**Claim Period**" means the period beginning immediately after the Claims Administrator mails a Notice Form and Claim Form to any of the Class Members and ending on the later of: (i) the 90th calendar day after the first Notice Form and Claim Form is sent; or (ii) with respect to any Class Member whose Notice Form and/or Claim Form is returned as undeliverable, the 20th day after the remailing and/or emailing of the Notice and Claim Form. In both cases, the period is to run continuously, without interruption or extension.

g.   "**Class Counsel**" means Nichols Kaster, PLLP.

h.   "**Class Litigation**" means *Roxie Sibley, et al. v. Sprint Nextel Corp., et al.*, No. 08-2063 (D. Kan.) (Vratil, J.).

i.   "**Class Members**" are the 27,366 individuals falling within the Settlement Class, as described in Section 4 below.

j.   "**Class Representatives**" are Roxie Sibley, Jeanne Noel, Ernesto Bennett, Jamie Williams, Greg St. Julien, Tracie Mincks (formerly "Hernandez"), John Jasinski, Jay Richie and Teisha King.

k.   "**Court**" means the United States District Court for the District of Kansas.

l.   "**Defendant**" means Sprint Nextel Corp., and Sprint/United Management Company ("Sprint") and Sprint's past and present parent companies, subsidiaries and affiliates, including any and all entities named as a defendant in the Class Litigation.

m.   "**Defendant's Counsel**" means Proskauer Rose LLP and Dentons US LLP.

n.   "**Effective Date**" shall be the last of the following dates: (i) if no appeal is taken from the Final Approval Order, the day after the 30-day deadline for taking an appeal has passed; or, (ii) if an appeal is taken from the Final Approval Order, the date on which all such appeals (including, *inter alia*, petitions for rehearing or reargument, petitions for rehearing *en banc*, and petitions for *certiorari* or any other form of review) have been finally disposed and can no longer be appealed or reviewed.

o.   "**Employer Payroll Taxes**" means all federal, state and local payroll taxes and withholdings an employer is required to make arising out of or based upon the W-2 portion of the payment of compensation under the Agreement.

p.    "**Final Approval Hearing**" means the final hearing scheduled in front of the Court on the question of whether the Settlement, including payment of Attorneys' Fees, Lawsuit Costs and other expenses and the Service Payment, should be finally approved as fair, reasonable and adequate as to the Class Members.

q.    "**Final Approval Order**" means the Court's order granting final approval of the Settlement.

r.    "**Lawsuit Costs**" means the monies to be paid to Class Counsel for litigation expenses, subject to the Court's approval and the limitations and procedures described in Section 8(a) below.

s.    "**Net Settlement Fund**" means the Total Settlement Amount after deductions for: (1) the Claims Administrator's Fees and Costs, as described in Section 10(i); (2) Court-approved Attorneys' Fees and Lawsuit Costs for Class Counsel, as described in Section 8; (3) Court-Approved Service Payments, as described in Section 9; and (4) the Reserve Fund to Cover errors and omissions, as described in Section 10(c).  The Net Settlement Fund will be used to pay Settlement Payments to Participating Class Members.  Participating Class Members will also be responsible for the employees' share of income and payroll taxes as described in Section 16.  Any unclaimed, unapproved or unused portions of the Total Settlement Amount will become a part of the Net Settlement Fund, and be redistributed *pro rata* to Participating Class Members consistent with the terms of this Settlement Agreement.

t.    "**Notice Form**" means the notice form to be distributed to Settlement Class Members, which the Parties shall request be substantially in the form attached as **Exhibit A**.

u.    "**Notice Package**" means, for each Settlement Class Member, the package compiled by the Claims Administrator, which shall include the applicable Notice Form, Claim Form, and a postage-paid, pre-addressed return envelope that the Class Member may use to return the Claim Form to the Claims Administrator.

v.    "**Objector**" means an individual who timely and correctly submits an objection to this Settlement Agreement, and does not include any individual who excludes themselves from this Settlement.

w.    "**Participating Class Member**" means a Class Member who submits a Valid Claim Form and who does not submit a Request for Exclusion.

x.    "**Parties**" means Defendant and the Class Representatives.

y.    "**Portion of the Settlement Payment to Participating Class Members on IRS 1099 Form**" means the fifty percent (50%) of the Settlement Payment not subject to payroll taxes and withholdings, and one hundred percent (100%) of Service Payments that will be reflected in an IRS 1099 Form issued by the Claims Administrator to the Participating Class Member for that tax year.

z.     "**Portion of the Settlement Payment to Participating Class Member on IRS W-2 Form**" means the fifty percent (50%) of the Settlement Payment issued in the form of a payroll check from which the Claims Administrator shall withhold all taxes and withholdings ordinarily borne by employees.  This payment will be reported as wages and reflected in an IRS W-2 Form issued by the Claims Administrator to the Participating Class Member for that tax year.

aa.     "**Preliminary Approval Date**" means the date the Preliminary Approval Order is entered by the Court.

bb.     "**Preliminary Approval Order**" means the Court's order preliminarily approving this Settlement.

cc.     "**QSF**" means the Qualified Settlement Fund to be established and administered by the Claims Administrator, which will consist of the Total Settlement Amount, as defined in below in Section 1(ll).  Separate and apart from Defendant's payment of the Total Settlement Amount into the QSF, Defendant shall be responsible for the Employer Payroll Taxes as defined in Section 1(o).

dd.     **"Released Claims"** means any and all claims for, or related to, unpaid commissions due under state (including the Kansas Wage Payment Act), federal, or common law (including but not limited to breach of contract) from August 12, 2005 through September 30, 2009.

ee.     **"Released Parties"** means Defendant Sprint Nextel Corporation, Sprint/United Management Company, and Sprint Communications Inc., their past, present and future subsidiaries and affiliates and their past, present and future parent companies, owners, partners,  predecessor companies, members, managers, legal representatives, employees, fiduciaries, trustees, employee benefit plan administrators, agents, insurers, re-insurers, successors and assigns, each whether acting in his or her official or individual capacity, and all persons and/or entities acting by, through, under or in concert with any of them and any individual or entity which could be jointly liable with any of them, each whether acting in his or her official or individual capacity.

ff.     **"Reserve Fund"** means the sixty-thousand dollars and no cents ($60,000.00) set aside from the Total Settlement Amount available to be used to correct any errors and omissions, as described in Section 10(c).

gg.     "**Service Payments**" means the payments of fifteen thousand dollars and no cents ($15,000.00) to the nine (9) Class Representatives and the payments of five thousand dollars and no cents ($5,000.00) to the following eleven (11) Class Members who prepared to testify at trial (Veronica Batarseh (Borrego), Christopher Giardina, Jonathan Housknecht, Jimmie Kelley, Ryan Maier, Sameer Mohammad (Sam Salma), Kyle Neubauer, William Ray, Jason Renner, Alden Smith, and Michael Tallon) that Class Counsel will request and are subject to the Court's approval and the limitations/procedures described in Section 9 below.

4

hh.   "**Settlement**" means the terms described in this Settlement Agreement.

ii.   **"Settlement Checks"** means checks issued to Participating Class Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.

jj.   "**Settlement Class**" means the grouping of Class Members described in Section 4 below.

kk.   **"Settlement Payment"** means the portion of the Net Settlement Fund attributable to each Participating Class Member based on the allocation formula agreed to by the Parties as set forth in Section 6.

ll.   "**Total Settlement Amount**" means the payment of thirty million five hundred thousand dollars and no cents ($30,500,000.00), which, as set forth in Section 2, shall fully resolve any and all amounts to be paid to Participating Class Members, attorneys' fees and costs approved by the Court, Court-approved Service Payments to the nine (9) Class Representatives and eleven (11) Class Members as more fully set forth herein, and all other applicable taxes (except the Employer Payroll Taxes), interest, the Claims Administrator's Fees and Costs and the Reserve Fund.  For purposes of this Settlement, the Parties have agreed that there are 27,366 Class Members.

mm.   "**Valid Claim Form**" means a completed and signed (electronically or manually) Claim Form that satisfies the requirements described in Section 11(d)(ii) below.

2.   **Total Settlement Amount**.  Defendant will pay no more than the Total Settlement Amount of thirty million five hundred thousand dollars and no cents ($30,500,000.00) to resolve the Class Litigation.  Other than the employer's share of Employer Payroll Taxes on the W-2 Portion of the Settlement Payments (as described in Section 16), Defendant will not be required to pay more than the Total Settlement Amount of thirty million five hundred thousand dollars and no cents ($30,500,000.000) under the terms of this Settlement Agreement to completely and entirely resolve the Class Litigation.  This Settlement however, does not absolve Defendant of its separate reponsbility to pay its share of any invoices oustanding from the Special Master or Technical Advisor.

3.   **No Admission of Liability and No Concession as to the Merits**.  Defendant denies that it violated the law in any manner alleged in or related to the Class Litigation.  The Parties enter into this Settlement Agreement to avoid the risks, uncertainty, expense and burden of further litigation.  This Settlement shall not be construed or deemed to be an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant.

4.   **Settlement Class**.  All persons nationwide who worked in Sprint's retail stores during the Class Period of August 12, 2005 through September 30, 2009, including Retail Store District Managers, Retail Store Managers, Assistant Retail Store Managers, Lead Retail Consultants, Retail Consultants, Retail Sales Representatives, and other retail employees for whom the class's experts calculated were overall underpaid commissions during the

Class Period (although such underpayment is vehemently denied by Defendant). The parties have agreed there are 27,366 such individuals in the Settlement Class.

5. **Process for Preliminary Approval of Settlement**. By March 2, 2018, Class Counsel shall submit to the Court all papers necessary to obtain preliminary approval of this Settlement.

6. **Net Settlement Fund and Determining the Settlement Payments to Participating Class Members**. Settlement Payments to Participating Class Members shall be made from the Net Settlement Fund. The Claims Administrator will use the allocations provided by Class Counsel and approved by Defendant to determine the Settlement Payments to Settlement Class Members. These initial allocations will be based on one hundred percent (100%) participation by Settlement Class Members. The Claims Administrator will reallocate any portion of the Total Settlement Amount that is unclaimed, unapproved or unused *pro rata* to Participating Class Members.

7. **Funding the QSF**: On the Effective Date, Defendant shall deposit the Total Settlement Amount into the QSF, and shall also separately deposit the Employer Payroll Taxes as defined in Section 1(o) above and described in Section 10 below.

8. **Attorneys' Fees and Lawsuit Costs**.

   (a)   Class Counsel will file with the Court a motion seeking the Court's approval for up to thirty-three and one-third percent (33.33%) of the Total Settlement Amount for Attorneys' Fees and up to an additional seven million dollars and no cents ($7,000,000.00) in Lawsuit Costs, which shall be deducted from the Total Settlement Amount. The Attorneys' Fees and Lawsuit Costs awarded to Class Counsel shall be at the sole discretion of the Court, and this Settlement is not contingent upon the Court's approval of such Attorneys' Fees and Lawsuit Costs. Defendant shall not oppose Class Counsel's application for the recovery of Attorneys' Fees and/or Lawsuit Costs, subject to the limitations herein.

   (b)   Any Attorneys' Fees and Lawsuit Costs awarded by the Court in connection with this Settlement shall be paid by Defendant into the QSF on the Effective Date, as part of the Total Settlement Amount; the Claims Administrator shall distribute them to Class Counsel no later than fourteen (14) days after the Effective Date.

   (c)   Payments made pursuant to this Section shall be reported to all governmental taxing authorities by the Claims Administrator on IRS 1099 Forms.

   (d)   Any portion of the Attorneys' Fees or Costs not approved by the Court or not sought by Class Counsel shall be distributed *pro rata* to Participating Class Members.

9. **Service Payments**.

   (a)   Class Counsel intends to file with the Court a motion seeking the Court's approval for the following Service Payments to be paid from the Total Settlement

95300332v12

Amount: (1) fifteen thousand dollars and no cents ($15,000.00) for each of the nine (9) class representatives; and (2) five thousand dollars and no cents ($5,000.00) for up to the following eleven (11) Settlement Class Members identified in Section 1(gg) who prepared to testify at trial.  The Service Payments shall be at the sole discretion of the Court, and this Settlement is not contingent upon the Court's approval of the Service Payments.  Defendant shall not oppose Class Counsel's petition or motion for the payment of the Service Payments, subject to the limitations herein.

(b)     Any Service Payment approved by the Court in conjunction with the Settlement shall be paid from the QSF and shall be in addition to the Participating Class Member Payments otherwise owed to the Class Representatives or Settlement Class Members.  Defendant shall pay the Service Payment into the QSF on the Effective Date, as part of the Total Settlement Amount, and the Service Payments shall be distributed by the Claims Administrator in a separate check mailed to those individuals no later than fourteen (14) days after the Effective Date.

(c)     The Service Payment made pursuant to this Section 9 shall be reported by the Claims Administrator on an IRS 1099 Form.  The Claims Administrator shall be responsible for any required tax withholding in connection with the Service Payments.

(d)     Any portion of the Service Payments not approved by the Court or not sought by Class Counsel shall be reallocated *pro rata* to Participating Class Members.

10.    **Claims Administrator's Duties and Responsibilities**.

(a)     Class Counsel has retained the Claims Administrator, who shall serve as the administrator of the Settlement and perform the services described in this Settlement Agreement and any other services mutually agreed to by the parties. The Claims Administrator shall be required to be bound by the Protective Order in this matter, which is annexed hereto as **Exhibit B**.

(b)     The Claims Administrator will be responsible for all aspects of the claims administration process, including:  locating Class Members addresses; mailing and re-mailing Notices to Class Members in accordance with the Settlement Agreement and the Court's Preliminary Approval Order; promptly reporting to the Parties the substance and status of any challenges or disputes raised by Settlement Class Members; collecting claim forms, performing TIN matching on social security numbers for Participating Class Members and sending to and collecting from Participating Class Members any necessary tax forms; reallocating any unclaimed, unapproved, and unused portion of the Total Settlement Fund to the Participating Class Members; distributing Settlement Checks and Service Payments (withholding Participating Class Members' share of taxes and remitting such taxes to the appropriate taxing authorities); providing proof of check cashing (via a bank summary of checks cashed) by the Participating Class Members to Defendant and Class Counsel; preparing a

declaration regarding its due diligence in the claims administration process; and performing such other duties as the Parties may jointly direct or as are specified herein.

(c) The Claims Administrator shall set aside sixty-thousand dollars and no cents ($60,000.00) (the Reserve Fund) of the QSF to cover any correctable errors or omissions, and satisfy any claim for relief allowed pursuant to FRCP 60(b)(1) or 60(d). If $60,000 is not sufficient to cover any correctable errors or omissions, and satisfy any claim for relief allowed pursuant to FRCP 60(b)(1) or 60(d), any additional amounts shall come from the Total Settlement Amount. Defendant shall pay the Reserve Fund into the QSF on the Effective Date, as part of the Total Settlement Amount, and any portion of the Reserve Fund remaining after the Claim Period shall be distributed *pro rata* to Participating Class Members. Defendant shall be provided with detailed information regarding the use of the Reserve Fund. Class Counsel will be responsible for any additional costs or expenses associated with the Settlement that arise after the Settlement Checks are issued and/or that exceed the Reserve Fund.

(d) The Claims Administrator shall, within ten (10) days of the filing of the Preliminary Approval motion, provide notice as required by the Class Action Fairness Act ("CAFA") and provide copies of such to Class Counsel and Defendant's Counsel.

(e) The Parties will have equal access to the Claims Administrator and all information related to the administration of the settlement. The Claims Administrator will provide weekly reports to the Parties regarding the status of the mailing of the Notices to Class Members; the claims administration process (including the number of Requests for Exclusion and Objections received, as well as the percentage of the Net Settlement Fund that was apportioned to the Class Members who submitted Requests for Exclusions and Objections); the substance and status of disputes raised by Class Members regarding the calculation of Settlement Payments; and distribution of the Settlement Checks.

(f) The Parties, through their counsel, will cooperate in good faith to resolve any disputes regarding the Claims Administrator's ability or need to perform certain duties under this Settlement Agreement, and any unresolved disputes shall be referred to the Court. The Claims Administrator will create the Claim Forms and documentation, using the attachments to this Settlement Agreement and records provided by Class Counsel in accordance with this Settlement Agreement. The Claims Administrator shall report on at least a weekly basis, in summary or narrative form, the substance of its findings.

(g) Class Counsel shall provide the Claims Administrator with certain data regarding the Class Members, as described in Section 11(b), in order for the Claims Administrator to perform its duties.

(h)   The Claims Administrator shall perform an accounting of all Settlement Payments to Participating Class Members proposed to be paid within seven (7) days of the expiration of the Claim Period, and in time for the parties to have that information prior to filing for Final Approval with the Court.

(i)   The Claims Administrator shall be paid its reasonable and actual fees and costs in connection with the Class Litigation, which subject to being approved by the Court, shall be paid from the Total Settlement Amount.  The Claims Administrator's Fees and Costs approved by the Court shall be paid by Defendant into the QSF on the Effective Date, as part of the Total Settlement Amount.

11.   **Notice and Claim Process**.

(a)   <u>Form of Notice</u>:  Notice to each respective Class Member shall inform him or her of the Settlement, the claims he or she is releasing, and to the extent possible his or her minimum anticipated Settlement Payment assuming one hundred percent (100%) participation of the Settlement Class.  The Notice Form is attached as **Exhibit A**.

(b)   <u>Information to be Provided by Class Counsel</u>:  Within five (5) days after the Preliminary Approval Date, Class Counsel will provide the Claims Administrator with the names, last known addresses, and allocations for the Settlement Class Members that have been approved by Defendant.

(c)   <u>Mailing of the Notice Package</u>.  Within thirty (30) days after the Preliminary Approval Date, the Claims Administrator will send by first class mail the Notice Package to each Settlement Class Member.

(d)   <u>Claims Process</u>.  The Net Settlement Fund shall be disbursed under the process described herein.  Class Members will participate in the settlement by submitting a Valid Claim Form.

(i)   If the Claim Form is not postmarked or transmitted electronically through the website set up by the Claims Administrator, to the Claims Administrator within the Claim Period, then that Settlement Class Member will be deemed to have forever waived his or her right to be a Participating Class Member and receive a Settlement Payment.

(ii)   To be a Valid Claim Form, the Claim Form must be completed and provide all of the information as instructed on the Claim Form, and be signed, dated and postmarked or otherwise returned electronically through the website to the Claims Administrator within the Claim Period.

(iii)   For any deadline under this Settlement Agreement that is based on a postmark (i.e., documents that are transmitted via regular mail), in the event that there is no postmark date of the document being mailed by the Class Member, it shall be presumed the document was mailed three (3)

9

days prior to the date received by the Claims Administrator, excluding any Sunday or other day for which no postal service was provided.

(iv)    Excluding Claim Forms not returned in a timely fashion, if a Claim Form is returned to the Claims Administrator and not completed as described above and/or the Claims Administrator determines additional information is needed to effectuate the settlement, or withhold applicable taxes, for that particular Class Member, within five (5) days of its receipt, the Claims Administrator shall send a notice to this Class Member of the defects and include a new claim form and/or a tax form to be completed and returned within seven (7) days of the Class Member's receipt.  The Claims Administrator is to notify Class Counsel and Defendant's Counsel of any deficient claim forms received and whether the deficiencies are cured within the period set forth in this Section 11(c)(iv).

(v)    Settlement Class Members who do not return a Valid Claim Form to the Claims Administrator in compliance with this Section will have released the Released Claims against the Released Parties as described in Section 19 below and waived any right to receive any payment associated with the Settlement, unless that Class Member excludes themselves as described in Section 13 below.

(vi)    Failure of any of those Participating Class Members sent a tax form by the Claims Administrator to return that tax form will not prevent them from participating in the Settlement.  The Claims Administrator will simply withhold any employee-side payroll taxes at the highest applicable tax rate when issuing the Settlement Check for that Participating Class Member.

(vii)    For purposes of determining the eligibility of individuals to participate in the Settlement, and for purposes of calculating Settlement Payments pursuant to Section 6, Class Counsel's records are presumed to be correct and will govern such determinations.  If a Participating Class Member disputes a determination regarding his or her eligibility or the amount of his or her Settlement Payment, such disputes will be resolved as set forth in Section 10.   Defendant reserves its right to verify any and all claims submitted, and the Parties agree to cooperate in good faith to resolve any disputes with respect to eligibility and for purposes of calculating Settlement Payments to Participating Class Members.

(e)    <u>Returned Notice Packages</u>.  If a Settlement Class Member's Notice Package is returned with a forwarding address, the Claims Administrator shall re-mail the Notice Package to the forwarding address within seven (7) days.  If a Settlement Class Member's Notice Package is returned without a forwarding address, the Claims Administrator shall attempt to locate the Settlement Class Member in an effort to determine the Settlement Class Member's current address, including by calling the Settlement Class Member if a telephone number is available and/or performing one standard Level 2 Skip Trace in the manner that the Claims

10

Administrator customarily performs such skip traces.  If a new address is obtained, the Claims Administrator will promptly re-mail the Notice Package to the Class Member, and in no event later than five (5) days after receiving the updated information.  Any Class Member whose Notice Package is re-mailed shall have the remainder of the ninety (90) days or twenty (20) days from the end of the original Claim Period.  No Notice Packages shall be mailed after the Claim Period.  Any costs related to re-mailing or re-issuing Notice Packages shall come out of the Total Settlement Amount.

(f)     <u>Pro Rata Allocation of Net Settlement Fund to Participating Class Members.</u>  Within seven (7) days of the deadline to return the Claim Forms, the Claims Administrator shall provide to Class Counsel and Defendant's Counsel the revised pro rata allocations for Participating Class Members as well as the Claims Administrator's proposed declaration in support of final approval.

(g)     <u>Affidavit of Claims Administrator</u>.  Class Counsel shall provide to the Court with the Final Approval Motion, an affidavit by the Claims Administrator detailing the due diligence and providing proof of mailing with regard to the mailing of the Notice and Claim Forms and the *pro rata* allocation of the Net Settlement Fund to Participating Class Members.  The affidavit will also identify the number of exclusion requests and any objections.

12.  **Objecting to the Settlement.**  Settlement Class Members (described in Section 4) who do not exclude themselves from the Settlement (described below) may object to the Settlement.

(a)     An Objector must submit a written objection by following the instructions described in the Notice Form and submitting it to the Claims Administrator.

(b)     To be valid, an objection must be sent to the Claims Administrator and postmarked within the Claim Period.  It is the responsibility of the individual who is objecting to retain a copy of the objection and proof of timely mailing, emailing or electronic submission.

(c)     An objection submitted by a Settlement Class Member who has submitted a Request for Exclusion is not valid.

(d)     The Claims Administrator shall provide the Parties' Counsel copies of all objections on a weekly basis and indicate the date received.  Class Counsel shall file such objections with the Court with Class Counsel's motion for final approval.

(e)     An Objector has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.  An Objector may withdraw his or her objections at any time.

13.  **Exclusions from the Settlement.**  Settlement Class Members may exclude themselves from the Settlement by following the instructions described in the Notice Form.

11

(a)     To be valid, an exclusion must be sent to the Claims Administrator within the Claim Period.

(b)     The Claims Administrator shall send to the Parties' Counsel copies of all exclusions within two (2) business days of their receipt, and Class Counsel shall promptly file such exclusions with the Court with Class Counsel's motion for final approval.

(c)     A Settlement Class Member who submits a Request for Exclusion and also submits a Claim Form, shall be sent a cure letter by the Claims Administrator seeking clarification of whether they intend to exclude themselves from the Settlement or become a Participating Class Member.  Absent a response to the contrary, such Class Member shall be excluded from the Settlement.

14.     **Final Approval of the Settlement.**

(a)     At least thirty (30) days before the end of the Claim Period, Class Counsel will provide Defendant's Counsel with a draft motion for final approval of the settlement and dismissal of the action for Defendant's review and approval.

(b)     Within ten (10) days after the Claim Period ends, Class Counsel will file a motion for final approval of the settlement and dismissal with the Court.  Defendant will not oppose this motion.

15.     **Payments to Participating Class Members.**

(a)     Within fourteen (14) days after the Effective Date, the Claims Administrator shall mail to each Participating Class Member Settlement Checks written from the QSF's bank account(s) and equaling his/her Settlement Payment, including any pro rata allocations from remaining portions of the Net Settlement Fund, less any applicable taxes withheld that are the responsibility of the Participating Class Member.

(b)     Each settlement check shall expire one hundred-eighty (180) days after it is mailed by the Claims Administrator and the uncashed funds shall be sent by the Claims Administrator to the March of Dimes, the *cy pres* recipient agreed to by the Parties.  Each settlement check will contain a notice stating that the settlement check shall expire one hundred-eighty (180) days after the date it was mailed by the Claims Administrator.

(c)     The Claims Administrator shall report to Defendant and Class Counsel every two (2) weeks all checks mailed and cashed, and the dates thereof.

(d)     Unless the Claims Administrator has received updated contact information, the Settlement Checks issued pursuant to this Section will be mailed by the Claims Administrator to the Participating Class Member at the address listed on the Participating Class Member's Claim Form.  If a Participating Class Member's Settlement Check is returned with a forwarding address, the Claims Administrator

shall promptly re-mail the settlement checks to the forwarding address. For Participating Class Members whose checks are re-mailed, the one hundred-eighty (180) day period during which Participating Class Members must cash their checks will run from the date that appears on the check. No Settlement Checks will be re-issued more than one hundred-ninety (190) days after the date of the first check to that Settlement Class Member. Any costs related to re-mailing or reissuing Settlement Checks shall come out of the Total Settlement Amount in the QSF.

(e)     If a Participating Class Member reports that his or her Settlement Checks were lost, stolen, or undelivered, the Claims Administrator shall promptly issue a stop payment order on the original Settlement Check and issue a new Settlement Check to such Participating Class Member in accordance with the terms of this Settlement Agreement. The Claims Administrator shall cooperate with the Settlement Class Members and Class Counsel to reissue any Settlement Checks within seven (7) days of request by the Settlement Class Member or Class Counsel.

16.     **Tax Characterization of Participating Class Member Payments**

(a)     For tax purposes, fifty percent (50%) of Settlement Payments to Participating Class Members pursuant to Section 15 shall be treated as wages and fifty percent (50%) shall be treated as interest and/or liquidated damages. One hundred percent (100%) of the Service Payments pursuant to Section 9 shall be treated as other income.

(b)     Payments treated as wages pursuant to Section 1(z) shall be made net of all applicable employment taxes (excluding Employer Payroll Taxes), including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as Service Payments, interest and/or liquidated damages pursuant to Section 1(y) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS 1099 Form. The Participating Class Members will be exclusively responsible for the employee's share of all payroll taxes, and such amounts will be withheld from Participating Class Member Payments. The Participating Class Members will also be exclusively responsible for any income or tax liability on any and all Participating Class Member Payments received by the Participating Class Member, except for the Employer Payroll Taxes.

(c)     The Claims Administrator shall calculate, report and pay, from the QSF and under the QSF's EIN, Employer Payroll Taxes owed on the Participating Class Member Payments.

(d)    The Claims Administrator shall calculate, and withhold, the amount equal to the payroll taxes on the W-2 Payment to Participating Class Members. The Claims Administrator shall be responsible for all required reporting, filing deposits, withholdings and (with respect to the Employer Payroll Taxes) payments of the payroll taxes and otherwise with respect to all amounts payable to the Class Representatives and Participating Class Members pursuant to this Settlement Agreement and to any federal, state or local tax law or regulation, under the EIN of the QSF.

(e)    The Claims Administrator shall perform a TIN match on the social security numbers previously provided by Sprint for the Settlement Class Members who timely return a Claim Form.  Class Counsel will provide the social security numbers to the Claims Administrator with the allocations as set forth in Section 11(b).  Settlement Class Members shall not be required to complete any tax forms unless the Claims Administrator determines it needs more information after attempting the TIN match.  The Claim Form shall include a request for the Settlement Class Member to identify the state in which they primarily worked for Sprint during the class period.  To the extent it is not provided, it shall default to the state in which they currently reside for purposes of tax withholdings.

(f)    Should any government authority determine that all or any part of the payment(s) made to Class Counsel or Participating Class Members under an IRS 1099 Form under this Settlement Agreement are taxable as wages, Participating Class Members will be solely responsible for the payment of all such taxes.

(g)    The employee portion of all applicable income and payroll taxes will be the responsibility of the individual Settlement Class Member receiving a Settlement Check.

(h)    The Claims Administrator shall calculate, report and pay, the Employer Payroll Taxes on the Participating Class Member Payments pursuant to this Settlement Agreement, pursuant to any federal, state or local tax law or regulation, under the EIN of the QSF.

(i)    The Claims Administrator shall handle all tax reporting with respect to the payments made pursuant to this Settlement Agreement, and, regardless of any provision in this Agreement, shall report the payments in accordance with applicable law.

(j)    Within the (10) days after the Final Approval Order, the Claims Administrator shall inform the Parties of an estimate of the Employer Payroll Taxes with respect to the amounts treated as wages pursuant to  Section 1(o).  Defendant shall pay this amount into the QSF on the Effective Date, and the Claims Administrator shall remit all such taxes withheld to the IRS and/or other appropriate taxing agencies.

(k)     Neither Defendant nor any of the Released Parties makes any representation regarding the tax consequences owed by or associated with any amounts received by the Participating Class Members, Class Representatives and Class Counsel pursuant to this Settlement Agreement.  The Parties further agree that if any local, state or federal authority determines that the tax treatment of the payments to Participating Class Members, Class Representatives and Class Counsel made under this Settlement Agreement is improper or impermissible, Participating Class Members, Class Representatives, and Class Counsel shall be solely responsible for the payment of all such taxes due (excluding those related to the Employer Payroll Taxes).  Pursuant to the Claims Administrator's Bid, Terms & Conditions, (Exhibit 5 to Plaintiffs' Motion for Preliminary Approval), which is incorporated by reference herein, the Claims Administrator shall indemnify Defendant and the Released Parties for any and all tax liability arising out of the Claims Administrator's responsibilities and duties set forth in Paragraphs 10(b) and 11(d), including interest and penalties, stemming from the Claims Administrator's performance of TIN matching on social security numbers for Participating Class Members; sending to and collecting from the Participating Class Members any necessary tax forms; distributing Settlement Checks and Service Payments (withholding Participating Class Members' share of taxes and remitting such taxes to the appropriate taxing authorities); and the withholding of any employee-side payroll taxes at the highest applicable tax rate when issuing the Settlement Check for that Participating Class Member when any of Participating Class Member fails to send the requisite tax form to the Claims Administrator.  To the extent that Defendant or any of the Released Parties is penalized for any failure to withhold or pay taxes as a result of the Claims Administrator's duties and responsibilities set forth in Paragraphs 10(b) and 11(d), the Claims Administrator will indemnify Defendant and any of the Released Parties for its costs, expenses, fees (including reasonable attorneys' fees) and/or penalties with respect to taxes or the failure to withhold consistent with the terms of the Claims Administrator's Bid, Terms & Conditions.

(i)     Neither Class Counsel nor Defendant's Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

17.     **Settlement Payments Do Not Trigger Additional Benefits**.  All payments to Settlement Class Members shall be deemed to be paid to such Class Members solely in the year in which such payments actually are received by the Class Members.  The Parties agree and the Class Members acknowledge that the payments provided for in this Settlement Agreement are the sole payments to be made to the Class Members, and that the Class Members are not entitled to any new or additional compensation or benefits as a result of having received the payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the period covered by this Settlement).

18.     **Right of Defendant to Reject Settlement.**  If ten  percent (10%) or more of the Settlement Class Members, or a number of Class Members whose Settlement Awards in

15

the aggregate total 10% or more of the total Net Settlement Fund, file timely and valid Requests for Exclusion, then Defendant will have the right to rescind the Settlement, and the Settlement and all actions taken in its furtherance will be null and void.  Defendant must exercise this right within seven (7) days after the Claims Administrator notifies them of the number of Requests for Exclusions received that meet this threshold.

19.   **Release**.  By operation of the entry of the Final Approval Order, and except as to such rights or claims as may be created by this Settlement Agreement, each Settlement Class Member who has not properly excluded himself or herself from the Settlement as set forth in Section 13, and each Participating Class Member, on his or her own behalf and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, trustees, agents, assigns and legal representatives, forever and fully releases and discharges the Released Parties (as defined in Section 1(ee)) and their current and former directors, officers, legal representatives, members, managers, employees, fiduciaries, trustees, employee benefit plan administrators, agents, insurers, re-insurers, successors and assigns, and their predecessors, and all persons and/or entities acting by, through, under or in concert with any of them, each whether acting for Defendant or in their individual capacities, and any individual or entity which could be jointly liable with any of them, from any and all claims for, or related to, unpaid commissions under state law (including, but not limited to, under the Kansas Wage Payment Act), federal, or common law (including but not limited to breach of contract) from August 12, 2005 through September 30, 2009.

(a)   <u>Settlement Does Not Invalidate Prior Releases</u>.  The Settlement Class Members who have not properly excluded themselves from the Settlement pursuant to Section 13, acknowledge that their participation in the Settlement does not rescind, invalidate, modify, or otherwise affect any prior release(s) that they have or may have executed with Defendant.

20.   **Settlement Contingent on Court Approval**. This Settlement Agreement is contingent upon the Court's approval of the Settlement.

(a)   If the Court does not grant Preliminary or Final Approval or the Effective Date does not occur, excluding modifications that the Parties determine in their reasonable and good faith judgment not to be material modifications, this Settlement Agreement may be voided at either party's option, in which case this Settlement Agreement (including its Exhibits) will become void and will not be used for any purpose in connection with any further litigation in the Class Litigation or any other lawsuit, administrative or other legal proceeding, claim, investigation, or complaint.

(b)   If the Court does not grant Preliminary or Final Approval or the Effective Date does not occur, the Class Litigation shall proceed without prejudice as if this Settlement Agreement had not been executed unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

95300332v12

(c)     Notwithstanding any other provision of this Settlement Agreement, no order of the Court, or modification or reversal on appeal of any order of the Court, reducing the amount of any Attorneys' Fees or Lawsuit Costs to be paid to Class Counsel, or reducing the amount of the Service Payments, shall constitute grounds for cancellation or termination of or to void the Settlement Agreement or grounds for limiting any other provision of the judgment.

(d)     If the Settlement Agreement is terminated after the Notice Package is mailed, the Claims Administrator shall provide notice to all Participating Class Members informing them that the Settlement was voided, that as a result, no payments will be made to Participating Class Members under the Settlement Agreement, and that the Class Litigation will continue, along with any additional information jointly agreed to by Class Counsel and Defendant's Counsel.  Such notice shall be mailed by the Claims Administrator via first class mail, postage prepaid, to the addresses contained on the Participating Class Member's Claim Form and/or on his or her updated address.  The costs of such mailing, as well as all prior costs incurred by the Claims Administrator, shall be split equally between the Parties.

21.     **Mutual Full Cooperation**.  The Parties will fully cooperate with each other and with the Claims Administrator to accomplish the terms of this Settlement Agreement, including but not limited to, the preparation and execution of documents necessary to implement this Settlement Agreement.  The Parties will use their best efforts to effectuate this Settlement Agreement, including during any appeals, and will use their best efforts to obtain the Court's approval of the Settlement and to defend the Settlement from any legal challenge.

22.     **Complete Agreement**.  No representation, promise, or inducement has been offered or made to induce any Party to enter into this Settlement Agreement, which contains the entire, complete, and integrated statement of all settlement terms and supersedes all previous oral or written agreements.  This Settlement Agreement may not be amended or modified except by a writing signed by the Parties' authorized representatives.

23.     **Knowing and Voluntary Agreement**.  The Parties enter into this Settlement Agreement knowingly, voluntarily, and with full knowledge of its significance.  The Parties have not been coerced, threatened, or intimidated into signing this Settlement Agreement and have consulted with legal counsel regarding the Settlement Agreement.

24.     **Notifications and Communications**.  Any notifications or communications made in connection with this Settlement Agreement shall be sent to the Parties at the addresses of their respective counsel as follows:

95300332v12

*For the Class Representatives*
*and Settlement Class Members*:

*For Defendant:*

**NICHOLS KASTER, PLLP**
Michele R. Fisher
Paul J. Lukas
Alexander M. Baggio
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: 612-256-3200
Fax: 612-215-6870

**PROSKAUER ROSE LLP**
Elise M. Bloom
Steven D. Hurd
Nicole A. Eichberger
Eleven Times Square
New York, NY 10036
Tel: 212-969-3410
Fax: 212-969-2900

**DENTONS US LLP**
Gregory T. Wolf
4520 Main Street, Suite 1100
Kansas City, MO 64111
Tel: 816-460-2400

25. **Severability**.  If any part of this Settlement Agreement is found to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect the validity of any other part of this Settlement Agreement, which shall be construed, reformed and enforced to affect the purposes thereof to the fullest extent permitted by law.

26. **Captions and Interpretations**.  Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision hereof.  Each term of this Settlement Agreement is contractual and not merely a recital.

27. **Binding on Assigns**.  This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns.

28. **Enforcement of Settlement Agreement and Governing Law**.  This Settlement Agreement will be governed by Kansas law without giving effect to Kansas's choice of law principles.  The Parties submit to the jurisdiction of the Court for all purposes relating to the review, approval, and enforcement of this Settlement Agreement.

29. **Settlement Agreement Form and Construction**.

    (a)    The terms and conditions of this Settlement Agreement are the result of lengthy, carefully considered, arms-length negotiations between the Parties and this Settlement Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Settlement Agreement.

95300332v12

(b)      This Settlement Agreement may be executed in electronic counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one binding Settlement Agreement.

(c)      This Settlement Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Settlement, for a complete resolution of the Class Litigation.

30.      **Parties' Authority**.  The signatories hereto hereby represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties hereto and the Class Members to the terms and conditions thereof.

95300332v12

**IN WITNESS WHEREOF**, the Parties each voluntarily and without coercion have caused this Settlement Agreement to be signed on the dates entered below:

_____       03/02/2018
ROXIE SIBLEY                                Date

STATE OF _____  )
                            ) ss.:
COUNTY OF _____  )

On this ___ day of _____, 2018, before me personally came Roxie Sibley, to me known and known to me to be the person described in and who executed the foregoing Settlement Agreement, and she duly acknowledged to me that she executed the same.

_____
Notary Public

20

_____        $\underline{3\text{-}2\text{-}18}$
JEANNE NOEL                                    Date

STATE OF _____Arkansas_____ )
                                                      ) ss.:
COUNTY OF ___Faulkner___ )

On this __2__ day of __March__, 2018, before me personally came Jeanne Noel, to me known and known to me to be the person described in and who executed the foregoing Settlement Agreement, and she duly acknowledged to me that she executed the same.

_____
Notary Public

AMANDA PARKER
NOTARY PUBLIC - ARKANSAS
FAULKNER COUNTY
Commission Expires 02-06-2027
Commission # 12700290

21

*Jamie Williams*                    03/02/2018
JAMIE WILLIAMS                              Date

STATE OF _____ )
                                ) ss.:
COUNTY OF _____ )

On this ___ day of _____, 2018, before me personally came Jamie Williams, to me known and known to me to be the person described in and who executed the foregoing Settlement Agreement, and he duly acknowledged to me that he executed the same.

_____
Notary Public

23

_Ernesto Bennett_
_____     ___03/02/2018___
ERNESTO BENNETT                              Date

STATE OF _____ )
                                                          ) ss.:
COUNTY OF _____ )

On this ___ day of _____, 2018, before me personally came Ernesto Bennett, to me known and known to me to be the person described in and who executed the foregoing Settlement Agreement, and he duly acknowledged to me that he executed the same.

_____
Notary Public

_____       03/02/2018
GREG ST. JULIEN                          _____

                                                Date


STATE OF _____ )
                                ) ss.:
COUNTY OF _____ )

On this ___ day of _____, 2018, before me personally came Greg St. Julien, to me known and known to me to be the person described in and who executed the foregoing Settlement Agreement, and he duly acknowledged to me that he executed the same.


_____
Notary Public

95300332v12

_____     ___03/02/2018___
TRACIE HERNANDEZ                              Date

STATE OF _____ )
                                                     ) ss.:
COUNTY OF _____ )

On this ___ day of _____, 2018, before me personally came Tracie Hernandez, to me
known and known to me to be the person described in and who executed the foregoing
Settlement Agreement, and she duly acknowledged to me that she executed the same.

_____
Notary Public

25

_____     _____
JOHN JASINSKI                                    Date

STATE OF _____ )
                                                      ) ss.:
COUNTY OF _____ )

On this ____ day of _____, 2018, before me personally came John Jasinski, to me known and known to me to be the person described in and who executed the foregoing Settlement Agreement, and he duly acknowledged to me that he executed the same.

_____
Notary Public

26

_____     03/02/2018
JAY RICHIE                                   Date

STATE OF _____ )
                                           ) ss.:
COUNTY OF _____ )

On this ____ day of _____, 2018, before me personally came Jay Richie, to me known and known to me to be the person described in and who executed the foregoing Settlement Agreement, and he duly acknowledged to me that he executed the same.

_____
Notary Public

27

_____     _____
TEISHA KING                                              Date

STATE OF _____ )
                                                          ) ss.:
COUNTY OF _____ )

On this ___ day of _____, 2018, before me personally came Teisha King, to me known and known to me to be the person described in and who executed the foregoing Settlement Agreement, and she duly acknowledged to me that she executed the same.

_____
Notary Public

95300332v12

NICHOLS KASTER, PLLP

By: _____          3-2-18
                                     _____
                                     Date

SPRINT COMMUNICATIONS, INC. F/K/A
SPRINT NEXTEL CORPORATION AND
SPRINT/UNITED MANAGEMENT COMPANY


By: _____          _____
                                     Date

24

96421880v4

# EXHIBIT A

**UNITED STATES DISTRICT COURT DISTRICT OF KANSAS**

**Notice of Settlement**

You are receiving this notice because you have been identified as someone eligible to receive money from a proposed settlement of a class action lawsuit. That case is entitled *Sibley et al. v. Sprint Nextel Corp., et al.*, Case No. 08-CV-2063-KHV (District of Kansas) and was filed in February 2008. The lawsuit alleges that because of problems with Sprint's commissions system, Sprint did not pay all of the commissions due to former or current retail employees.

The Settlement Class includes: all persons nationwide who worked in Sprint's retail stores during the Class Period of August 12, 2005 through September 30, 2009, including Retail Store District Managers, Retail Store Managers, Assistant Retail Store Managers, Lead Retail Consultants, Retail Consultants, Retail Sales Representatives, and other retail employees for whom the class's experts calculated were overall underpaid commissions during the Class Period.

Sprint denies the claims, that the Settlement Class was net underpaid commissions under the terms of the commission contracts and that the Settlement Class are entitled to relief. However, the parties believe that the proposed settlement is a fair and reasonable resolution in light of the risk and expense of continued litigation. The settlement provides that Sprint will pay $30,500,000.00 to settle this case (the "Total Settlement Amount"). This proposed settlement has received *preliminary* approval from the Court and will resolve all claims of the parties who wish to participate or who do request exclusion from the settlement.

If you timely complete and return your Release of Claims form enclosed with this Notice, you will receive your share of the Net Settlement Fund through a settlement payment in the pre-tax amount of at least [$**XXXXXXX**]. Your actual payment will depend on how many members of the Settlement Class participate in the settlement, but will at least be this minimum. As detailed below, you will receive that payment only after the Court grants final approval of the settlement, and only if you complete and return your Release of Claims form.

**YOUR LEGAL RIGHTS ARE AFFECTED BY THIS SETTLEMENT AND YOU HAVE A <u>CHOICE</u> TO MAKE NOW. PLEASE REVIEW THE FOLLOWING PAGES CAREFULLY.**

| You May: | Effect of Choosing the Option: | Due Date: |
|---|---|---|
| *Include yourself by completing a Release of Claims form.* | • You will release any and all claims for commissions due under state (including but not limited to the Kansas Wage Payment Act), federal, or common law (including but not limited to breach of contract) that you have, or may have brought, against Sprint and the Released Parties as defined in the Settlement Agreement from August 12, 2005 through September 30, 2009. | *You must return a signed Release of Claims form to the Claims Administrator no later than [DATE].* |
| *Exclude yourself by making a written exclusion request.* | • You can elect to opt-out of the lawsuit and retain your right to sue Sprint.<br>• To exclude yourself, you **must** submit a signed exclusion request. If you exclude yourself, you will not receive a settlement check. | *The exclusion request must be sent to the Claims Administrator no later than [DATE].* |
| *Submit an objection, and complete a Release of Claims form* | • If you do not exclude yourself, you can remain in the lawsuit and still write to the Court explaining why you object or disagree with the settlement.<br>• <u>However, you must also return a Release of Claims form or you will not receive a settlement check but will still release any and all claims for commissions due under state (including but not limited to the Kansas Wage Payment Act), federal, or common law (including but not limited to breach of contract)</u> | *The objection must be sent to the Claims Administrator no later than [DATE].*<br><br>*You must also return a signed Release of Claims form to the Claims Administrator no later than [DATE].* |

| | | |
|---|---|---|
| | **that you have, or may have brought, against Sprint and the Released parties as defined in the Settlement Agreement from August 12, 2005 through September 30, 2009.** | |
| *Appear at the hearing* | • If you do not exclude yourself, you can also ask to speak to the Court about the fairness of the settlement. | *The hearing is scheduled for [DATE]. This date may change without further notice* |

## 1.    WHY DID I GET THIS NOTICE?

The Court directed this Notice be sent to you because Sprint's records show you worked in Sprint's retail stores during the Class Period of August 12, 2005 and September 30, 2009 as either a Retail Store District Manager, Retail Store Manager, Assistant Retail Store Manager, Lead Retail Consultant, Retail Consultant, Retail Sales Representative, or other retail position, and the class's experts calculated an overall commissions underpayment for you during the Class Period.

## 2.    WHAT ARE THE SETTLEMENT BENEFITS?

Sprint agreed to pay a "Total Settlement Amount" of $30,500,000.00.  Deducted from the Total Settlement Amount will be sums, to be approved by the Court, for Class Counsel's fees of $8,614,528.84 and costs of $6,573,147.16. $124,648.00 will be set aside for settlement administration.  Thus, the amount available to the class is $15,187,676.00 ("Net Settlement Fund").  In addition, $15,000.00 will be allocated to each of the nine class representatives as service payments, $5,000.00 will be allocated to each of the eleven class members who prepared to testify at trial, and  $60,000.00 in a reserve fund for the class to correct any errors.

Based on your commissions data, your settlement share, after attorneys' fees, costs, class member service payments, settlement administration, and the reserve fund, is a pre-tax minimum of **[XXX].**  Your actual payment may increase depending on how many members of the Settlement Class participate in the settlement.  Any unclaimed funds will be redistributed on a pro rata basis to members of the Settlement Class who timely return a Release of Claims form.

Payments to the Settlement Class will be reported as 50% W-2 wage earnings and 50% liquidated damages, penalties, and/or interest, and reported on an IRS Form 1099.  Each member of the Settlement Class will be responsible for the payment of any personal taxes owing on that amount.

## 3.    WHAT HAPPENS IF I DO NOTHING?

If you do nothing, you will not receive a settlement check, but you will release any and all claims for, or related to, commissions due, under state (including but not limited to the Kansas Wage Payment Act), federal, or common law (including but not limited to breach of contract), that they have, or may have brought, against Sprint and/or Sprint's past, present and future subsidiaries and affiliates and their past, present and future owners, partners, predecessor companies, members, managers, legal representatives, employees, fiduciaries, trustees, employee benefit plan administrators, agents, insurers, re-insurers, successors and assigns, each whether acting in his or her official or individual capacity, and all persons and/or entities acting by, through, under or in concert with any of them and any individual or entity which could be jointly liable with any of them, each whether acting in his or her official or individual capacity (the "Released Parties), from August 12, 2005 through September 30, 2009.

## 4.    WHAT HAPPENS IF I TIMELY COMPLETE A RELEASE OF CLAIM FORM?

If you complete and return a Release of Claims form to the Claims Administrator identified in response to Question 8 by mail, or the designated website, and it is postmarked or submitted by [**DATE**], you will receive a settlement check, and will release any and all claims for, or related to, commissions due, under state (including the Kansas Wage Payment Act), federal, or common law, that they have, or may have brought, against Sprint and/or Sprint's past, present and future subsidiaries and affiliates and their past, present and future owners, partners, predecessor companies, members, managers, legal representatives, employees, fiduciaries, trustees, employee benefit plan administrators, agents, insurers, re-insurers, successors and assigns, each whether acting in his or her official or individual capacity, and all persons and/or entities acting by, through, under or in concert with any of them and any individual or entity which could be jointly liable with any of them, each whether acting in his or her official or individual capacity (the "Released Parties), from August 12, 2005 through September 30, 2009.

Within approximately 45 days of the Court's order granting final approval of the settlement, the Claims Administrator will mail the settlement funds to the members of the Settlement Class who timely returned a Release of Claims form.

| 5. | WHAT HAPPENS IF I REQUEST EXCLUSION FROM THE SETTLEMENT? |
| --- | --- |

You can exclude yourself from the settlement and from receiving a settlement check by timely requesting exclusion.  If you exclude yourself, then you will not get the benefits of the settlement and will not be legally bound by the Court's judgment in this case.

If you wish to start your own lawsuit against Sprint for claims covered by this lawsuit, you will have to represent yourself or hire and pay your own lawyer for that lawsuit and prove your own claims.  If you choose to do so, you should talk to your own lawyer soon because your claims may be barred by the applicable statute of limitations.

To request exclusion from this lawsuit and settlement, you must send a letter asking to be excluded that contains your name, address, telephone number, last four digits of your social security number, and signature.  That letter must be postmarked by [**DATE**] and sent to the Claims Administrator identified in response to Question 8.

**Unless you timely complete and return a request for exclusion, you will be bound by any judgment in this case and you will not be permitted to pursue any pending or future litigation regarding matters resolved in this settlement. Should you wish to exclude yourself from this settlement, it is important that you follow these instructions carefully.**

| 6. | HOW DO I OBJECT TO THE SETTLEMENT? |
| --- | --- |

If you do not like the settlement, but do not want to be excluded from it, you may file an objection to it.  This means you can tell the Court that you disagree with the settlement or some of its terms.  The Court will consider your views but may approve the settlement anyway.

Members of the Settlement Class may object by mailing objections to the Claims Administrator identified in response to Question 8, if the objection is postmarked by [**DATE**].  Your objection must contain your name, address, telephone number, last four digits of your social security number, and signature.  You may also appear at the Court's fairness hearing if you timely submit your written objection.  That date and location are identified in response to Question 10.

Any member of the Settlement Class who fails to submit a written objection in the manner described here will be deemed to have waived any objections and will be foreclosed from making any comments on or objections to the settlement (whether by appeal or otherwise).

**If you object to the settlement, in order to receive a settlement check you must still return a Release of Claims form by mailing or submitting it through the website to the Claims Administrator identified in response to Question 8.  It**

**must be submitted or postmarked by [DATE].**  If you object, but do not timely complete and return a Release of Claims form, you will not receive a settlement check, but will release any and all claims for, or related to, commissions due, under state (including but not limited to the Kansas Wage Payment Act), federal, or common law (including but not limited to breach of contract), that they have, or may have brought, against Sprint and/or any of Sprint's past, present and future subsidiaries and affiliates and their past, present and future owners, partners, predecessor companies, members, managers, legal representatives, employees, fiduciaries, trustees, employee benefit plan administrators, agents, insurers, re-insurers, successors and assigns, each whether acting in his or her official or individual capacity, and all persons and/or entities acting by, through, under or in concert with any of them and any individual or entity which could be jointly liable with any of them, each whether acting in his or her official or individual capacity (the "Released Parties), from August 12, 2005 through September 30, 2009.

| 7. | WHAT HAPPENS IF I DO NOT CASH MY SETTLEMENT PAYMENT? |
|---|---|

If you do not cash your settlement check within 180 days, you will give up the right to sue the Released Parties for your Released Claims, and your settlement amount will be donated to charity.  You will be legally bound by the Court's judgment.

| 8. | WHERE DO I SUBMIT A RELEASE OF CLAIMS FORM, OBJECTION, AND/OR REQUEST FOR EXCLUSION? |
|---|---|

**Submit approval of your Release of Claims form by [DATE] at [website] using your Claimant ID # from that form.** Any Release of Claims form, objection, and request for exclusion may alternatively be mailed if postmarked by [DATE] to:

Sibley v. Sprint Claims Administrator
C/O Rust Consulting, Inc.
P.O. Box 2396
Faribault, MN 55021

| 9 | DO I HAVE A LAWYER REPRESENTING MY INTERESTS IN THIS CASE? |
|---|---|

Yes. The Court appointed the following lawyers to serve as Class Counsel:

Michele Fisher and Paul Lukas
NICHOLS KASTER, PLLP
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Website: www.nka.com

| 10. | HOW WILL THE LAWYERS BE PAID? |
|---|---|

Subject to the Court's final approval, the settlement provides for a payment from the Total Settlement Amount of $8,610,041.49 for attorneys' fees and $6,576,634.51 for costs to Class Counsel.

| 11. | WHEN AND WHERE IS THE FAIRNESS HEARING? |
|---|---|

The Court will hold a fairness hearing to consider whether to grant final approval of the settlement on [**insert date/time/location**]. The hearing may be moved to a different date and/or time without additional notice.  At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate and decide whether to grant final approval. If there are objections, the Court will consider them. The Court will also decide how much from the Total Settlement Amount to award to Class Counsel in attorneys' fees and costs. We do not know how long these decisions will take. A member of the Settlement Class who timely submits an objection, may appear at the final approval hearing and present his or her objection to the Court.

| 12. | DO I HAVE TO ATTEND THE HEARING? |
|---|---|

No, but you may appear at your own expense.  If you send a written objection, the Court will consider it even if you are not present.  You may also pay your own lawyer to attend the hearing if you desire.

| 13. | WHERE DO I OBTAIN MORE INFORMATION? |
|---|---|

If you want additional information, you may call or write Class Counsel at the address and telephone number listed above. The specific terms of the settlement have also been filed with the Court.  You can look at and copy these documents at any time if you have a Public Access to Court Electronic Records ("PACER") account, where you may view the documents on the Court's Case Management/Electronic Court Filing website: www.pacer.gov.

Sibley v. Sprint Claims Administrator
C/O Rust Consulting, Inc. – [XXXX]
P.O. Box XXXX
Faribault, MN 55021

**IMPORTANT LEGAL MATERIALS**

☐ If the pre-printed information to the left is not correct or if there is no pre-printed information, please check the box and provide the information below

[FIRST] [LAST]
[ADDRESS 1]
[ADDRESS 2]
[CITY], [STATE] [ZIP]

Name: _____
Address:_____
City:_____
State: _____ Zip Code: _____

## RELEASE OF CLAIMS

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

ROXIE SIBLEY, et al,

                   Plaintiffs,

v.

SPRINT NEXTEL CORPORATION, et al,

                   Defendants.

Case No. 02:08–CV–2063–KHV/JPO

**[CLASS MEMBER NAME]**

**Claimant ID: # [INSERT]**

I received the Notice of Settlement which informed me that upon final approval by the Court, I will receive a settlement payment totaling at least [$XXXX.XX] if I complete and return this Claim Form so that it is received by the Claims Administrator by [DATE].

By signing and returning this Release of Claims form, I agree that in exchange for my settlement payment, I will release any and all claims for, or related to, commissions due, under state (including but not limited to the Kansas Wage Payment Act), federal, or common law (including but not limited to breach of contract), that I have, or may have brought, against Sprint Nextel Corporation, Sprint/United Management Company, and/or any of Sprint's past, present and future subsidiaries and affiliates and their past, present and future owners, partners, predecessor companies, members, managers, legal representatives, employees, fiduciaries, trustees, employee benefit plan administrators, agents, insurers, re-insurers, successors and assigns, each whether acting in his or her official or individual capacity, and all persons and/or entities acting by, through, under or in concert with any of them and any individual or entity which could be jointly liable with any of them, each whether acting in his or her official or individual capacity (the "Released Parties), from August 12, 2005 through September 30, 2009.

To receive your settlement payment, provide the last four digits of your Social Security Number (SSN) identify the last state in which you worked for Sprint during the class period of August 12, 2005 through September 20, 2009.

___ ___ ___ ___                   _____

**Last Four (4) Digits of SSN**          **State Worked**

_____      _____

**Your Signature**                   **Date**

Submit by mail or the claims website by [DATE] to:
Sibley v. Sprint Claims Administrator
C/O Rust Consulting, Inc., Claims Administrator
P.O. Box 2396
Faribault, MN 55021
Website: [INSERT] (use your Claimant ID located in case caption above)

6

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROXIE SIBLEY, et al.,                   )
                                        )
                Plaintiffs,             )
                                        )
v.                                      )        Case No. 08-2063-KHV
                                        )
SPRINT NEXTEL CORPORATION, et al.,      )
                                        )
                Defendants.             )

**PROTECTIVE ORDER**

The court finds good cause to enter the following protective order.  IT IS HEREBY
STIPULATED AND AGREED by and between Plaintiffs and their counsel, and Defendants
("Defendants") (collectively the "Parties"), and their counsel, by and through their undersigned
counsel in the above-captioned action (the "Litigation'), as follows:

1.      This case involves allegations that Defendants have failed to properly compensate
Plaintiffs for commissions owed.  It will involve highly confidential and personal information
about individuals' wages and employment records, as well as personal and proprietary financial
information and confidential business records of at least one of the Defendants.  In particular,
any party to this Stipulation For The Protection And Exchange Of Confidential Documents may
designate as "Confidential:"  (1) any personal non-public, proprietary, business, financial or
other protected documents or files, including personnel files, training materials and payroll,
commissions, other compensation or other records of at least one of the Defendants' current or
former employees relating to or part of the calculation of their pay, that pertain to any current or
former employees of at least one of the Defendants and/or business records or information about

the operation of at least one of the Defendants' business; and (2) any documents that contain proprietary, financial, confidential, or other protected documentation pertaining to Plaintiffs or Defendants.

2.      Confidential matter shall be labeled or otherwise designated "Confidential" or the equivalent.  Any Confidential designation which is omitted inadvertently prior to or subsequent to the execution of this Stipulation may be corrected by written notification to opposing counsel.

(a)      In the case of electronically-stored information in any form (including embedded data and metadata) (collectively "Electronic Data"), the producing party shall designate the Electronic Data as Confidential in a cover letter accompanying the production of the Electronic Data.  Where feasible, counsel for the producing party will also mark the disk, tape or other electronic media on which the Electronic Data is produced with the appropriate designation.  If a party reduced Confidential Electronic Data to hardcopy form, it shall mark the hardcopy with the appropriate designation.   Whenever any Confidential Electronic Data is copied, all copies shall be marked with the appropriate designation.

(b)      In the case of depositions or other pretrial testimony, the party using such Confidential information shall designate the relevant portion of the deposition Confidential; (i) by a statement on the record, by counsel, at the time of such disclosure, or (ii) by written notice sent to all counsel of record for the Parties within fifteen business days after receipt of the transcript of the deposition.  All transcripts shall be considered Confidential and subject to this Protective Order until expiration of that fifteen-day period.  All videotapes of depositions shall be clearly labeled confidential pursuant to this Protective Order.

(c)      To the extent that a person described in Paragraph 3 creates, develops, establishes, or otherwise maintains, on any computer, network, disk, tape, or other digital or

analog machine-readable device, any information, files, databases or programs that contain Confidential Material, such person shall take all necessary steps to insure that access to any Confidential Material is restricted to those persons who, by the terms of this Protective Order, are allowed access to the Material.

3.      Except as provided in Paragraph 6, absent written consent from the Producing Party or unless otherwise directed by the Court, Confidential Material may be disclosed only to the following persons:

(a)      Parties to this lawsuit who are actively involved in assisting with the prosecution or defense of this litigation;

(b)      Outside counsel of record for the Parties;

(c)      In-house counsel for the Parties who are actively involved in assisting with the prosecution or defense of this Litigation;

(d)      Outside experts or consultants who are not regular employees of a Party but are retained on behalf of any of the Parties by their outside counsel to assist in the preparation of this case;

(e)      Outside photocopying, graphic production services or litigation support services employed by the Parties' counsel to assist in this Litigation, and computer service personnel performing duties in relation to a computerized litigation system;

(f)      The Court, court reporters, videographers, stenographers, and court personnel; and

(g)      The direct staff of, and any contract support personnel employed or retained by, any of the foregoing persons, provided that such persons are actively involved in assisting with the prosecution or defense of this Litigation.

4.       Each person given access to Confidential Material shall be advised that the Confidential Material is being disclosed pursuant to and subject to the terms of this Protective Order and may not be disclosed or used other than as set forth in this Protective Order.

(a)       Before any person described above in Paragraph 3(d) is given access to Confidential Material, that person must read and agree in writing, by signing an acknowledgement in the form attached hereto as Exhibit A, to be bound by the provisions of this Protective Order.

(b)       Before any other person described in Paragraphs 3(a), (e), (f) or (g), (except for the Court or any of its personnel) is shown any Confidential material, that person must be shown a copy of this Protective Order and instructed to honor its terms.

5.       Counsel for any Party wishing to use Confidential material to examine fact witnesses who are not currently employed by the producing Party, who were not employed by the producing Party at the time the material was created, or did not create or receive the material, shall deliver a copy of such material to designated counsel for the producing Party at least two business days and at least forty-eight hours prior to the start of the deposition.  If the producing Party objects to the use of the Confidential material at the deposition, the document may not be introduced, and its contents not disclosed, without leave of court.

6.       If counsel for any party to this action determines to file with, or submit to, the Court (other than at trial) (a) any Confidential matter, or (b) any pleading or other document making any reference to the specific content of Confidential matter, the filing party will seek leave to file the material under seal with the Court in accordance with current District Court procedures and requirements.   In addition, each party may redact certain confidential information pursuant to D. Kan. Rule 5.4.14 by covering that information, marking that portion

of the materials as "Redacted" and providing opposing counsel with a general written description of the information redacted.

7.     Upon final adjudication (including any appellate proceedings) of the claims at issue, the parties shall return to counsel for the producing party the Confidential matter produced by the other party and all copies thereof, or the parties may agree upon appropriate methods of destruction.   The parties need not return to counsel for the producing party or destroy any documents which were produced and not designated as Confidential matter.

8.     Notwithstanding the provisions of Paragraph 6, Counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product, even if such materials contain Confidential matter.   Any such archival copies that contain or constitute Confidential matter remain subject to this Protective Order. Any Confidential matter retained pursuant to this paragraph shall not be used for any purpose other than in connection with this action.

9.     If Confidential matter or information in the possession of a receiving party is subpoenaed by any court, administrative or legislative body, or any other person or organization purporting to have authority to subpoena such data or information, the party to whom the subpoena is directed shall not provide or otherwise disclose such documents or information without first notifying counsel for the producing party in writing in a reasonable amount of time of :  (1) the information and documentation which is requested for production in the subpoena; (2) the date on which compliance with the subpoena is requested; (3) the location at which compliance with the subpoena is requested; (4) the identity of the party serving the subpoena; and (5) the case name, jurisdiction and index, docket complaint, charge, civil action or other

identification number or other designation identifying the litigation, administrative proceeding or other proceeding in which the subpoena has been issued.

10.     To the extent not inconsistent with any other paragraph, this paragraph shall govern information that has been produced and inadvertently not initially designated "Confidential."  The initial failure to designate information in accordance with this Stipulation shall not preclude the producing party at a later date, from designating any information "Confidential."  The producing party may, by written notice to counsel of record for the receiving party, within thirty days of the discovery of the inadvertent disclosure of "Confidential" information, designate previously produced information as "Confidential" which it had inadvertently failed to designate as "Confidential."  Upon receipt of such notice, the receiving party shall promptly mark its copies of the material accordingly, shall thereafter treat the information as if it has been designated "Confidential," shall restrict the disclosure or use of such information to only those persons qualified pursuant to this Stipulation, and if such information has previously been disclosed to persons not qualified pursuant to this Stipulation, take reasonable steps to obtain all such previously disclosed information and advise such persons to treat the designated materials confidentially as though originally so designated.

11.     If a party wishes to use any confidential information in any affidavits, briefs, memorandum of law, oral argument, or other papers filed in this court in this litigation, such papers or transcript may be filed under seal only upon separate, specific motion and later order of the court.[1]  With respect to the disclosure of Confidential matter during argument, hearings or trial before the Court, the parties agree to advise the Court in advance of said disclosure so that the Court may take appropriate action to protect its confidentiality.

---

[1] *See Holland v. GMAC Mortgage Corp.*, No. 03-2666, 2004 WL 1534179, at *1-*2 (D. Kan. June 30, 2004) (citations omitted).

12.     In the event of a breach of this Stipulation, the parties shall be subject to all remedies recognized under law and equity.

13.     Consistent with the protective order guidelines posted on the court's website, the court's jurisdiction to enforce the provisions of this protective order shall be terminated upon the final disposition of this case, unless and until a party seeks leave to reopen the case to enforce the provisions of this protective order.


SO STIPULATED:                         SO STIPULATED:


*/s/ George A. Hanson*                     */s/ Michael L. Blumenthal*
George A. Hanson                        Michael L. Blumenthal
Kansas Bar No. 16805                    Kansas Bar No. 18582
Stueve Siegel Hanson LLP                Seyferth, Blumenthal & Harris LLC
460 Nichols Road, Suite 200             300 Wyandotte, Suite 430
Kansas City, Missouri 64112             Kansas City, MO  64104
hanson@stuevesiegel.com                 Telephone: 816-756-0700
                                        Facsimile:  816-756-3700
                                        E-mail:  mike@sbhlaw.com



*/s/ Michele R. Fisher*                    */s/ J. Timothy McDonald*
Michele R. Fisher                       Hunter R. Hughes
Paul J. Lukas                           J. Timothy Mc Donald
Donald H. Nichols                       Ashley R. Hurst
Charles Frohmn                          Rogers & Hardin LLP
Nichols Kaster & Anderson, PLLP         2700 International Tower
4600 IDS Center, 80 South 8th Street    229 Peachtree Street NE
Minneapolis, Minnesota 55402            Atlanta, GA 30303


Admitted *pro hac vice*                    Admitted *pro hac vice*


Counsel for Plaintiffs                  Counsel for Defendants

        SO ORDERED this 14th day of May, 2008 at Kansas City, Kansas.

   s/James P. O'Hara
_____
James P. O'Hara
U.S. Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROXIE SIBLEY, et al.,                      )
                                           )
                    Plaintiffs,            )
                                           )
v.                                         )          Case No. 08-2063-KHV
                                           )
SPRINT NEXTEL CORPORATION, et al.,         )
                                           )
                    Defendants.            )


I hereby certify my understanding that Material designated "Confidential" is being provided to me pursuant to the terms and restrictions of the Protective Order entered in this action by the United States District Court for the District of Kansas on May 14, 2008 (the "Order").  I have read and understand the terms of the Order, I agree to be fully bound by it, and I hereby submit to the jurisdiction of the United States District Court for the District of Kansas for the purposes of enforcement of this Order.

Dated:_____          Signature:_____

                                         Name:_____