**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ROXIE SIBLEY, JEANNE NOEL, ERNESTO BENNETT, JAMIE WILLIAMS, GREG ST. JULIEN, TRACIE HERNANDEZ, JOHN JASINSKI, JAY RICHIE, and TEISHA KING, individually and on behalf of the class,<br><br>Plaintiffs,<br><br>v.<br><br>SPRINT NEXTEL CORPORATION, and SPRINT/UNITED MANAGEMENT COMPANY,<br><br>Defendants. | Case No. 02:08–CV–2063–KHV/JPO |

**DECLARATION OF MICHELE R. FISHER IN RESPONSE TO ORDER TO SHOW CAUSE**

1.  My name is Michele R. Fisher, and I am one of the attorneys representing the class.

2.  The attorneys who worked on this case dedicate their practice to representing workers in contingency fee litigation and do not charge them on an hourly basis for this work. For example, I have worked on only contingent fee cases during my career. Paul Lukas has not billed a client by the hour in over 20 years. Even so, other attorneys at Class Counsel's firm of similar qualification and experience work in practice groups that do handle both hourly and contingency fee employment and wage and hour matters. We provide to the Court, for in camera review, an accounting of bills that were invoiced and paid by hourly clients for Nichols Kaster attorneys, James Kaster (37 years of experience; $650 per hour) and Steven Smith (22 years of experience; $600 per hour) and declarations from these attorneys detailing their experience.

3. We secured a neutral website dedicated to the settlement, sprintretailsettlement.com, which we will launch upon preliminary approval of the settlement, that will set forth information about the settlement similar to that in the Notice of Settlement, and provide links to settlement documents such as the Court's order preliminarily approving settlement, the most recent Settlement Agreement, and the most recent settlement allocations spreadsheet provided as Exhibit 11. It will also provide information on how to contact our firm with questions and where class members can update their addresses.

4. Upon preliminary approval, we will issue a national press release through 24-7 Press Release, which reaches journalists from across the country, including, but not limited to PR newswire's 4,500+ websites, databases and online services, including Yahoo Finance, MSNBC, MarketWatch and Bizjournals, and the Associated Press, which includes USA Today, the New York Times, the Wall Street Journal and the AP Exchange for 30,000+ journalists to access. The press release will discuss the Court's preliminary approval order, describe the settlement, direct people to the websites for more information, and direct class members on where to update their contact information.

5. For any class members whose Settlement Postcards are returned as undeliverable and for whom a Level 2 Skip Trace by the Claims Administrator does not produce an updated address, our firm will assist by calling, emailing, and trying to locate those class members by other means (e.g. social media such as LinkedIn and Facebook) to ensure they receive the Settlement Postcard.

6. We have used the Claims Administrator, Rust Consulting, as a settlement administrator on other cases and have found them to be competent, qualified, and knowledgeable.

7. The parties agreed to a settlement allocation floor of $25. $25 is allocated to 2,507 class members (274 Period 65 class members and 2,233 other class members who received or benefitted from the allocation floor).

8. We previously provided the Court with information about the extensive efforts we have made to ensure the adequacy of the Settlement Class Members' addresses. The culmination of these efforts resulted in a recent report on April 11, 2018 from our third-party's National Change of Address system, confirming that just 47 of the 34,909 Settlement Class Members have potential problems with their address. More specifically, we received a prior NCOA report on April 9, 2018 from this company identifying 333 Settlement Class Members with potential problems with their addresses. We then searched for current addresses for each of those 333 Settlement Class Members using LexisNexis Accurint, another public records database, using each individual's name, address, and Social Security Number. We were able to identify a potential updated address for all of them. To cross-check the Accurint results, we had the 333 updated addresses for the Settlement Class Members re-run through the NCOA database. This most recent NCOA report on April 11, 2018 confirmed the accuracy of the addresses for 286 additional individuals, leaving just 47 Settlement Class Members with potential address problems. Last week, we began attempting to make contact with these 47 Settlement Class Members to obtain an updated address and plan to continue until we have exhausted these efforts. As of the date of this filing, we have called 42 of these individuals and reached 2 of them to confirm their address. We also plan to email them if we have their email address. Exhibit 13 provides the NCOA code descriptions.

9. The Court asked for the number of telephone numbers that have been verified. While we maintain a database of telephone numbers previously provided for class members by

Sprint and by class members, our last attempt to call those to verify them was during our nearly year long calling campaign to over 25,000 class members from June 2010 to May 2011. We have not found NCOA or other databases to be reliable for automatically updating telephone numbers. With respect to email addresses, while Sprint did not maintain or produce class member email addresses, we have maintained a database of emails previously provided to us by class members. We have at least one email address for 7,574 of the 34,909 Settlement Class Members. While we do not know precisely how many of these email addresses are still valid, they still provide a useful method of providing yet another form of notice of the settlement to Settlement Class Members.

10. In calculating damages for the class members, Balance Engines used an average for any months where the data was insufficient to calculate that month, *if* the experts had data for that class member during other months that could provide an average to use. This was the case for class representatives Tracie Hernandez, Teisha King, and Roxie Sibley; Balance Engines used averages from months with data to perform their calculation for the insufficient data months. For those 2,787 Insufficient Data class members, no such data was available for them, and thus, the Class Expert was unable to perform such a calculation. Even so, the settlement provides these 2,787 Insufficient Data class members will receive the average allocation derived from the other Settlement Class Members' settlement allocations.

11. With respect to the 4,482 Over/Correctly paid class members, these class members are receiving a $0 allocation because Balance Engines' calculations, using those class member's data Sprint produced, showed they were overall over or correctly paid. These individuals were not the only ones for whom the Class Expert found over or correct payments. Indeed, the Class Expert found several of the class representatives were over or correctly paid in

4

at least one month. Class representatives Ernesto Bennett, Tracie Hernandez, John Jasinski, Teisha King, Jeanne Noel, Jay Richie, Roxie Sibley, and Greg St. Julien, all had months where the Class Expert found they were over or correctly paid, which reduced their damages calculation. The only difference was that these class representatives also worked additional months were the Class Expert found they were underpaid.

12. Attached are true and correct copies of:

Exhibit 1  Legal Services Agreements for Class Representatives Ernesto Bennett, John Jasinski, Teisha King, Tracie Hernandez, Jeanne Noel, Jay Richie, Gregory St. Julien, Roxie Sibley, and Jamie Williams;

Exhibit 2  Declaration of Susan Coler;

Exhibit 3  Declaration of Clayton Halunen;

Exhibit 4  Declaration of Susan Ellingstad;

Exhibit 5  Declaration of Anne Regan;

Exhibit 6  Declaration of Steven A. Smith;

Exhibit 7  Declaration of James H. Kaster;

Exhibit 8  Declaration of Nicholas G.B. May;

Exhibit 9  Accounting and invoices for Kaster hourly files (for in camera review);

Exhibit 10  Accounting and invoices for Smith hourly files (for in camera review);

Exhibit 11  4/2018 *Sibley* Settlement Allocations;

Exhibit 12  Settlement Postcard;

Exhibit 13  NCOA Return Codes;

Exhibit 14  4/2018 Settlement Agreement (this will be supplemented when fully executed) with Ex. A 4/2018 Notice of Settlement and Ex. B Protective Order;

Exhibit 15  Rust Consulting Address Location Services;

Exhibit 16  Rust Consulting Qualifications Summary;

Exhibit 17    NCOA 3rd Party Report 4/11/18;

Exhibit 18    *Mayfield-Dillard v. Direct Home Health Care, Inc.,* No. 16-cv-3489 (TNL), Dkt. No. 123, Order Approving Settlement;

Exhibit 19    Email Notice; and

Exhibit 20    Declaration of Eric Bishop, Senior Vice President, Rust Consulting.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Date: 4/16/18                     *s/Michele R. Fisher*
                                  Michele R. Fisher