# EXHIBIT 1

<u>**SETTLEMENT AGREEMENT**</u>

This Settlement Agreement is made by and between the Class Representatives, the Settlement Class Members (as defined below in Sections 1(ii) and (4), and Defendants Sprint Nextel Corp. and Sprint/United Management Company, (collectively, "Defendant") (as defined below in Section 1(k)) (collectively, the "Parties") to fully and completely settle **Roxie Sibley, et al. v. Sprint Nextel Corp., et al.,** No. 08-2063 (D. Kan.) (Vratil, J.) (the "Class Litigation");

WHEREAS, on February 7, 2008, the Class Representatives, on behalf of themselves and other purportedly similarly situated individuals, initiated the Class Litigation by filing a Class Action Complaint against Defendant in the United States District Court for the District of Kansas;

WHEREAS, on February 26, 2008, the Class Representatives, on behalf of themselves and other purportedly similarly situated individuals, filed the First Amended Class Action Complaint against Defendant in the United States District Court for the District of Kansas;

WHEREAS, Defendant denies that it, its current or former parents, subsidiaries, affiliates and each of their divisions, officers, directors or employees have committed any wrongdoing or violated any federal, state, or local laws, vigorously disputes the claims asserted in the Class Litigation and continues to assert that it has strong and meritorious defenses to any and all such claims;

WHEREAS, the Parties have vigorously litigated the Class Litigation and wish to avoid uncertainty and the expense and burdens of further litigation, including trial;

WHEREAS, the Parties have engaged in substantial, arms-length settlement negotiations, including a two-day mediation in Kansas City, Kansas on January 8th and 9th, 2018, before The Honorable Daniel D. Crabtree, and desire to resolve the Class Litigation; and

WHEREAS, on January 18, 2018 the Parties, by and through their Counsel, entered into a Memorandum of Understanding (the "MOU") setting forth the material terms of the settlement and agreed to memorialize those terms in further detail in this formal Settlement Agreement;

NOW, THEREFORE, the Parties agree as follows:

1.     <u>**Definitions**</u>.  As used in this Settlement Agreement, the following terms have the following meanings:

    a.     "**Applicable Class Period**" means, the class period from August 15, 2005 through September 30, 2009.

    b.     "**Attorneys' Fees**" means the amount to be paid to Class Counsel pursuant to Class Counsel's motion and subject to the Court's approval and the limitations described in Section 8 below.

    c.     "**Claims Administrator**" means Rust Consulting, Inc.

d.      "**Claims Administrator Fees and Costs**" means the amount to be paid to the Claims Administrator pursuant to Class Counsel's motion and subject to the Court's approval and the limitations described in Section 10(j) below.

e.      "**Class Counsel**" means Nichols Kaster, PLLP and Stueve Siegel Hanson LLP.

f.      "**Class Expert**" means, for purposes of this Agreement, Balance Engines LLC.

g.      "**Class Litigation**" means Roxie Sibley, et al. v. Sprint Nextel Corp., et al., No. 08-2063 (D. Kan.) (Vratil, J.).

h.      "**Class Members**" are the 34,909 individuals falling within the Settlement Class, as described in Section 4 below.

i.      "**Class Representatives**" include the original nine (9) Class Representatives: Roxie Sibley, Jeanne Noel, Ernesto Bennett, Jamie Williams, Greg St. Julien, Tracie Mincks (formerly "Hernandez"), John Jasinski, Jay Richie and Teisha King, and also include three (3) additional Class Representatives, as set forth in the Court's May 9, 2018 Order (Dkt. 829), for settlement purposes: Henry Goins, Clayton Johnson, and Anthony Scarpelli.

j.      "**Court**" means the United States District Court for the District of Kansas.

k.      "**Defendant**" means Sprint Nextel Corp., Sprint/United Management Company ("Sprint"), and Sprint's past and present parent companies, subsidiaries and affiliates, including any and all entities named as a defendant in the Class Litigation.

l.      "**Defendant's Counsel**" means Proskauer Rose LLP and Dentons US LLP.

m.      "**Effective Date**" shall be the last of the following dates:  (i) if no appeal is taken from the Final Approval Order, the day after the 30-day deadline for taking an appeal has passed; or, (ii) if an appeal is taken from the Final Approval Order, the date on which all such appeals (including, inter alia, petitions for rehearing or reargument, petitions for rehearing en banc, and petitions for certiorari or any other form of review) have been finally disposed and can no longer be appealed or reviewed.

n.      "**Employer Payroll Taxes**" means all federal, state and local payroll taxes and withholdings an employer is required to make arising out of or based upon the W-2 portion of the payment of compensation under the Settlement Agreement.

o.      "**Final Approval Hearing**" means the final hearing scheduled in front of the Court on the question of whether the Settlement, including payment of Attorneys' Fees, Lawsuit Costs and other expenses and the Service Payment, should be finally approved as fair, reasonable and adequate as to the Settlement Class Members.

p.        **"Final Approval Order"** means the Court's order granting final approval of the Settlement.

q.        **"Lawsuit Costs"** means the monies to be paid to Class Counsel for litigation expenses, subject to the Court's approval and the limitations and procedures described in Section 8(a) below.

r.        **"Net Settlement Fund"** means the Total Settlement Amount after deductions for: (1) the Claims Administrator's Fees and Costs, as described in Section 10(j); (2) Court-approved Attorneys' Fees and Lawsuit Costs for Class Counsel, as described in Section 8; (3) Court-Approved Service Payments, as described in Section 9; and (4) the Reserve Fund to Cover errors and omissions, as described in Section 10(c). The Net Settlement Fund will be used to pay Settlement Payments to Participating Settlement Class Members. Settlement Class Members and/or Participating Settlement Class Members will also be responsible for the employees' share of income and payroll taxes as described in Section 16. Any unclaimed, unapproved or unused portions of the Total Settlement Amount will become a part of the Net Settlement Fund, and be redistributed pro rata to Settlement Class Members and/or Participating Settlement Class Members consistent with the terms of this Settlement Agreement.

s.        **"Notice of Settlement"** means the notice to be distributed to Settlement Class Members, which the Parties shall request be substantially in the form attached as **Exhibit A**.

t.        **"Notice Period"** means the period beginning immediately after the Claims Administrator mails a Notice of Settlement to any of the Settlement Class Members and ending on the later of: (i) the 60th calendar day after the first Notice of Settlement is sent; or (ii) with respect to any Settlement Class Member whose Notice of Settlement is returned as undeliverable, the 20th day after the end of the original Notice Period, as described in Section 11(h). In both cases, the period is to run continuously, without interruption or extension.

u.        **"Objector"** means an individual who timely and correctly submits an objection to this Settlement Agreement, and does not include any individual who excludes themselves from this Settlement.

v.        **"Participating Settlement Class Member"** means a Settlement Class Member who timely cashes their settlement check(s).

w.        **"Parties"** means Defendant and the Class Representatives.

x.        **"Portion of the Settlement Payment to Participating Settlement Class Members on IRS 1099 Form"** means the fifty percent (50%) of the Settlement Payment not subject to payroll taxes and withholdings, and one hundred percent (100%) of Service Payments that will be reflected in an IRS 1099 Form issued by the Claims Administrator to the Participating Settlement Class Member for that tax year.

y.  "**Portion of the Settlement Payment to Participating Settlement Class Member on IRS W-2 Form**" means the fifty percent (50%) of the Settlement Payment issued in the form of a payroll check from which the Claims Administrator shall withhold all taxes and withholdings ordinarily borne by employees.  This payment will be reported as wages and reflected in an IRS W-2 Form issued by the Claims Administrator to the Participating Settlement Class Member for that tax year.

z.  "**Preliminary Approval Date**" means the date the Preliminary Approval Order is entered by the Court.

aa.  "**Preliminary Approval Order**" means the Court's order preliminarily approving this Settlement.

bb.  "**QSF**" means the Qualified Settlement Fund to be established and administered by the Claims Administrator, which will consist of the Total Settlement Amount, as defined in below in Section 1(mm).  Separate and apart from Defendant's payment of the Total Settlement Amount into the QSF, Defendant shall be responsible for the Employer Payroll Taxes as defined in Section 1(n).

cc.  "**Released Claims**" means any and all claims for unpaid commissions due under state (including the Kansas Wage Payment Act), federal, or common law (including but not limited to breach of contract) from August 12, 2005 through September 30, 2009.

dd.  "**Released Parties**" means Defendant Sprint Nextel Corporation, Sprint/United Management Company, and Sprint Communications Inc., their past, present and future subsidiaries and affiliates and their past, present and future parent companies, owners, partners,  predecessor companies, members, managers, legal representatives, employees, fiduciaries, trustees, employee benefit plan administrators, agents, insurers, re-insurers, successors and assigns, each whether acting in his or her official or individual capacity, and all persons and/or entities acting by, through, under or in concert with any of them and any individual or entity which could be jointly liable with any of them, each whether acting in his or her official or individual capacity.

ee.  "**Reserve Fund**" means the sixty-thousand dollars and no cents ($60,000.00) set aside from the Total Settlement Amount available to be used to correct any errors and omissions, as described in Section 10(c).

ff.  "**Service Payments**" means the payments of ten thousand dollars and no cents ($10,000.00) to the following nine (9) Class Representatives:  Roxie Sibley, Jeanne Noel, Ernesto Bennett, Jamie Williams, Greg St. Julien, Tracie Mincks (formerly "Hernandez"), John Jasinski, Jay Richie and Teisha King; payments of two hundred fifty dollars and no cents ($250.00) to the following three (3) Class Representatives, as set forth in the Court's May 9, 2018 Order (Dkt. 829): Henry Goins, Clayton Johnson, and Anthony Scarpelli; and payments of three thousand

dollars and no cents ($3,000.00) to the following eleven (11) Settlement Class Members who prepared to testify at trial: (Veronica Batarseh (Borrego), Christopher Giardina, Jonathan Housknecht, Jimmie Kelley, Ryan Maier, Sameer Mohammad (Sam Salma), Kyle Neubauer, William Ray, Jason Renner, Alden Smith, and Michael Tallon) that Class Counsel will request and are subject to the Court's approval and the limitations/procedures described in Section 9 below.

gg.    "**Settlement**" means the terms described in this Settlement Agreement.

hh.    **"Settlement Checks"** means checks issued to Settlement Class Members for their share of the Net Settlement Fund calculated in accordance with this Settlement Agreement.

ii.    "**Settlement Class**" or **"Settlement Class Member"** means the grouping of individuals described in Section 4 below.

jj.    **"Settlement Allocation"** means the portion of the Net Settlement Fund allocated to each Settlement Class Member based on the formula agreed to by the Parties as set forth in Section 6.

kk.    **"Settlement Payment"** means the portion of the Net Settlement Fund issued to each Participating Settlement Class Member and cashed or deposited by the Participating Settlement Class Member.

ll.    **"Settlement Subclasses"** means subclasses of Settlement Class Members who, according to the Class Expert calculations, were (1) correctly paid or overpaid (4,482 Class Members); (2) only worked in Period 65 (August 2005) (274 Class Members); or (3) had insufficient data to calculate an underpayment (2,787 Class Members).  The Class Representative for the first group is Henry Goins, the second group is Clayton Johnson, and the third group is Anthony Scarpelli.  The identification of which Class Members fall within the Settlement Subclasses is located in the Settlement Allocations at Docket No. 832–1.

mm.    "**Total Settlement Amount**" means the payment of thirty million five hundred thousand dollars and no cents ($30,500,000.00), which, as set forth in Section 2, shall fully resolve any and all amounts to be paid to the Settlement Class, attorneys' fees and costs approved by the Court, Court-approved Service Payments to the nine (9) Class Representatives and eleven (11) Settlement Class Members as more fully set forth herein, and all other applicable taxes (except the Employer Payroll Taxes), interest, the Claims Administrator's Fees and Costs and the Reserve Fund.  For purposes of this Settlement, the Parties have agreed that there are 34,909 Settlement Class Members.

2.    **Total Settlement Amount**.  Defendant will pay no more than the Total Settlement Amount of thirty million five hundred thousand dollars and no cents ($30,500,000.00) to resolve the Class Litigation.  Other than the employer's share of Employer Payroll Taxes on the W-2 Portion of the Settlement Payments (as described in Section 16), Defendant will not be required to pay more than the Total Settlement Amount of thirty million five

hundred thousand dollars and no cents ($30,500,000.000) under the terms of this Settlement Agreement to completely and entirely resolve the Class Litigation.  This Settlement however, does not absolve Defendant of its separate responsibility to pay its share of any invoices oustanding from the Special Master or Technical Advisor.

3.   **No Admission of Liability and No Concession as to the Merits**.  Defendant denies that it violated the law in any manner alleged in or related to the Class Litigation.  The Parties enter into this Settlement Agreement to avoid the risks, uncertainty, expense and burden of further litigation.  This Settlement shall not be construed or deemed to be an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant.

4.   **Settlement Class**.  All persons nationwide who did not opt out of the Class Litigation and worked in Sprint's retail stores during the Class Period of August 12, 2005 through September 30, 2009, including Retail Store District Managers, Retail Store Managers, Assistant Retail Store Managers, Lead Retail Consultants, Retail Consultants, Retail Sales Representatives, and other retail employees  (all of whom held at least one of the job titles set forth in Exhibit A to the Expert Stipulation entered at Docket No. 357-1 in the Class Litigation) and whose compensation was based in full or in part on commissions.  The parties have agreed there are 34,909 individuals in the Settlement Class, which is also inclusive of those Settlement Class Members in the Settlement Subclasses defined in Section 1(ll).

5.   **Process for Preliminary Approval of Settlement**.  By March 2, 2018, Class Counsel shall submit to the Court all papers necessary to obtain preliminary approval of this Settlement.   By March 16, 2018, Class Counsel shall submit to the Court all amended papers as instructed by the Court on March 8, 2018.  By April 16, 2018, Class Counsel shall submit to the Court additional papers as instructed by the Court on April 5, 2018.  By May 21, 2018, Class Counsel shall submit to the Court additional papers as instructed by the Court on May 9, 2018.  By June 18, 2018 Class Counsel shall submit to the Court additional papers as instructed by the Court on June 4, 2018.

6.   **Net Settlement Fund and Determining the Settlement Allocations and Settlement Payments**.  Settlement Allocations to the Settlement Class Members shall be made from the Net Settlement Fund.  The Claims Administrator will use the allocations provided by Class Counsel calculated pursuant to the plan of allocation formula reviewed by Class Counsel and Defendant to determine the Settlement Allocations to Settlement Class Members.  The allocations will be based off of the damages calculations performed by the Class Expert using Sprint's data.  The Class Expert's damages calculation results for each Settlement Class Member can be found in the 5/2018 Sibley Settlement Allocations (Ex. 2) filed with the Court on May 21, 2018 at Docket No. 832–1.  If the Class Expert calculated a Settlement Class Member was overall correctly paid or overpaid, then the Settlement Class Member is allocated $0.  If the Class Expert determined a Settlement Class Member only worked during August 2005 (Period 65) then the Settlement Class Member is allocated $25.  If the Class Expert determined a Settlement Class Member had insufficient data to calculate commissions, then the Settlement Class Member is allocated in the range of $541.73, which is the average settlement allocation for those Settlement Class Members receiving an allocation.  All other Settlement Class Members are

allocated their pro rata share of the Net Settlement Fund, using the Class Expert's damages calculations, with such allocations made after allocations for Settlement Class Members with insufficient data and the Settlement Class Members who only worked during August 2005 (Period 65).  The minimum allocation for Settlement Class Members allocated settlement funds pursuant to this allocation plan will be $25.

These initial  allocations will be based on one hundred percent (100%) participation by Settlement Class Members.  The Claims Administrator will reallocate any portion of the Net Settlement Fund that was allocated to individuals who timely requested exclusion from the Settlement, and any portion of the Total Settlement Amount that is not approved by the Court at preliminary and/or final approval,  pro rata to Settlement Class Members. After the expiration of the Check Cashing Period, the Claims Administrator will reallocate any portion of the Total Settlement Amount remaining due to unused, unapproved, or uncashed funds on a pro rata basis to Participating Settlement Class Members.

7.      **Funding the QSF**:  On the Effective Date, Defendant shall deposit the Total Settlement Amount into the QSF, and shall also separately deposit the Employer Payroll Taxes as defined in Section 1(n) above and described in Section 10 below.

8.      **Attorneys' Fees and Lawsuit Costs**.

(a)      Class Counsel will file with the Court a motion seeking the Court's approval for up to twenty-three percent (23%) of the Total Settlement Amount for Attorneys' Fees and up to an additional seven million dollars and no cents ($7,000,000.00) in Lawsuit Costs, which shall be deducted from the Total Settlement Amount.  The Attorneys' Fees and Lawsuit Costs awarded to Class Counsel shall be at the sole discretion of the Court, and this Settlement is not contingent upon the Court's approval of such Attorneys' Fees and Lawsuit Costs.

(b)      Any Attorneys' Fees and Lawsuit Costs awarded by the Court in connection with this Settlement shall be paid by Defendant into the QSF on the Effective Date, as part of the Total Settlement Amount; the Claims Administrator shall distribute them to Class Counsel no later than fourteen (14) days after the Effective Date.

(c)      Payments made pursuant to this Section shall be reported to all governmental taxing authorities by the Claims Administrator on IRS 1099 Forms.

(d)      Any portion of the Attorneys' Fees or Costs, which at Preliminary Approval or Final Approval are not approved by the Court or not sought by Class Counsel, shall be distributed pro rata to Settlement Class Members.

9.      **Service Payments**.

(a)      Class Counsel intends to file with the Court a motion seeking the Court's approval for the following Service Payments to be paid from the Total Settlement Amount: (1) ten thousand dollars and no cents ($10,000.00) for each of the following nine (9) Class Representatives: Roxie Sibley, Jeanne Noel, Ernesto

Bennett, Jamie Williams, Greg St. Julien, Tracie Mincks (formerly "Hernandez"), John Jasinski, Jay Richie and Teisha King; (2) two hundred fifty dollars and no cents ($250.00) to each of the following three (3) Class Representatives, as set forth in the Court's May 9, 2018 Order (Dkt. 829), Henry Goins, Clayton Johnson, and Anthony Scarpelli; and (3) three thousand dollars and no cents ($3,000.00) for the following eleven (11) Settlement Class Members identified in Section 1(ff) who prepared to testify at trial. The Service Payments shall be at the sole discretion of the Court, and this Settlement is not contingent upon the Court's approval of the Service Payments. Defendant shall not oppose Class Counsel's petition or motion for the payment of the Service Payments, subject to the limitations herein.

(b) Any Service Payment approved by the Court in conjunction with the Settlement shall be paid from the QSF and shall be in addition to the Settlement Class Payments otherwise owed to the Class Representatives or Settlement Class Members. Defendant shall pay the Service Payment into the QSF on the Effective Date, as part of the Total Settlement Amount, and the Service Payments shall be distributed by the Claims Administrator in a separate check mailed to those individuals no later than fourteen (14) days after the Effective Date.

(c) The Service Payment made pursuant to this Section 9 shall be reported by the Claims Administrator on an IRS 1099 Form. The Claims Administrator shall be responsible for any required tax withholding in connection with the Service Payments.

(d) Any portion of the Service Payments not approved by the Court or not sought by Class Counsel shall be reallocated pro rata to Settlement Class Members.

10. **Claims Administrator's Duties and Responsibilities**.

(a) Class Counsel has retained the Claims Administrator, who shall serve as the administrator of the Settlement and perform the services described in this Settlement Agreement and any other services mutually agreed to by the parties. The Claims Administrator shall be required to be bound by the Protective Order in this matter, which is annexed hereto as **Exhibit B**.

(b) The Claims Administrator will be responsible for all aspects of the claims administration process, including: locating Settlement Class Members addresses; mailing and re-mailing Settlement Postcards and Notices of Settlement to Settlement Class Members in accordance with the Settlement Agreement and the Court's Preliminary Approval Order; performing TIN matching on social security numbers for Settlement Class Members and sending to and collecting from Settlement Class Members any necessary tax forms; reallocating any unclaimed, unapproved, and unused portion of the Total Settlement Fund to the Settlement Class Members or the Participating Settlement Class Members consistent with the Settlement Agreement; distributing Settlement Checks and Service Payments (withholding Participating Settlement Class Members' share of taxes and

remitting such taxes to the appropriate taxing authorities); providing proof of check cashing (via a bank summary of checks cashed) by the Participating Settlement Class Members to Defendant and Class Counsel; preparing a declaration regarding its due diligence in the claims administration process; and performing such other duties as the Parties may jointly direct or as are specified herein.

(c)     The Claims Administrator shall set aside sixty-thousand dollars and no cents ($60,000.00) (the Reserve Fund) of the QSF to cover any correctable errors or omissions, and satisfy any claim for relief allowed pursuant to FRCP 60(b)(1) or 60(d).  If $60,000 is not sufficient to cover any correctable errors or omissions, and satisfy any claim for relief allowed pursuant to FRCP 60(b)(1) or 60(d), any additional amounts shall come from the Total Settlement Amount.  Defendant shall pay the Reserve Fund into the QSF on the Effective Date, as part of the Total Settlement Amount, and any portion of the Reserve Fund remaining after the Check Cashing Period shall be distributed pro rata to Participating Settlement Class Members. Defendant shall be provided with detailed information regarding the use of the Reserve Fund.  Class Counsel will be responsible for any additional costs or expenses associated with the Settlement that arise after the Settlement Checks are issued and/or that exceed the Reserve Fund.

(d)     The Claims Administrator shall, within ten (10) days of the filing of the Preliminary Approval motion, provide notice as required by the Class Action Fairness Act ("CAFA") and provide copies of such to Class Counsel and Defendant's Counsel.

(e)     The Parties will have equal access to the Claims Administrator and all information related to the administration of the settlement.  The Claims Administrator will provide weekly reports to the Parties regarding the status of the mailing of the Notices of Settlement to Settlement Class Members; the number of Requests for Exclusion and Objections received, as well as the percentage of the Net Settlement Fund that was apportioned to the Settlement Class Members who submitted Requests for Exclusions and Objections).

(f)     The Parties, through their counsel, will cooperate in good faith to resolve any disputes regarding the Claims Administrator's ability or need to perform certain duties under this Settlement Agreement, and any unresolved disputes shall be referred to the Court.  The Claims Administrator will use the attachments to this Settlement Agreement and records provided by Class Counsel in accordance with this Settlement Agreement.  The Claims Administrator shall report on at least a weekly basis, in summary or narrative form, the substance of its findings.

(g)     Class Counsel shall provide the Claims Administrator with certain data regarding the Settlement Class Members, as described in Section 11(c), in order for the Claims Administrator to perform its duties.

(h)     The Claims Administrator shall perform an accounting of all Settlement Payments to Settlement Class Members within seven (7) days of the expiration of the Notice Period, and in time for the parties to have that information prior to filing for Final Approval with the Court.

(i)     The Claims Administrator shall also perform an accounting of the reallocation proposed to be paid to Participating Settlement Class Members from uncashed Settlement Payments, and any other unused portion of the Total Settlement Fund, within thirty (30) days of the expiration of the Check Cashing Period.

(j)     The Claims Administrator shall be paid its reasonable and actual fees and costs in connection with the Class Litigation, which subject to being approved by the Court, shall be paid from the Total Settlement Amount.  The Claims Administrator's Fees and Costs approved by the Court shall be paid by Defendant into the QSF on the Effective Date, as part of the Total Settlement Amount.

11.   **Notice of Settlement Process**.

(a)     Form of the Notice of Settlement.  A Notice of Settlement to each respective Settlement Class Member shall inform him or her of the Settlement, the claims he or she is releasing, and to the extent possible his or her minimum anticipated Settlement Payment assuming one hundred percent (100%) participation of the Settlement Class.  The Notice of Settlement is attached as **Exhibit A**.

(b)     Form of the Settlement Postcard.   A Settlement Postcard to each respective Settlement Class Member shall place Settlement Class Members on notice of the settlement; the forthcoming Notice of Settlement and Settlement Checks; their ability to opt out; the need to update their contact information; and will direct them on where to obtain more information about the Settlement.

(c)     Information to be Provided by Class Counsel.  Within five (5) days after the Preliminary Approval Date, Class Counsel will provide the Claims Administrator with the names, last known addresses, and allocations for the Settlement Class Members, calculated pursuant to the plan of allocation reviewed by Class Counsel and Defendant.

(d)     Notice of Settlement via Press Release.  Within five (5) days after the Preliminary Approval Date, Class Counsel will issue a national press release.  The Parties will jointly work on the content of the press release, which will contain information on the Court's Preliminary Approval Order and describe the Settlement.  It will also direct people to websites for more information, and direct Class Members on where to update their contact information.

(e)     Mailing of the Settlement Postcard. Within thirty (30) days after the Preliminary Approval Date, the Claims Administrator will send by first class mail the Settlement Postcard to the Settlement Class Members.  Within thirty (30) days after the mailing of the Settlement Postcard to the Settlement Class Members, the

Claims Administrator will provide an update to the Parties and the Court, containing sufficient information to receive permission from the Court to send the Notice of Settlement as set forth in Paragraph 11(f).

(f)     <u>Mailing of the Notice of Settlement</u>.  Within seven (7) days of receiving permission from the Court to send the Notice of Settlement, the Claims Administrator will send by first class mail the Notice of Settlement to the Settlement Class Members.

(g)     <u>Mailing of the Email Notice</u>.  Within fourteen (14) days after the mailing of the Notices of Settlement, Class Counsel will send by email the Email Notice to those Settlement Class Members for whom Class Counsel has email addresses.

(h)     <u>Settlement Process</u>.  The Net Settlement Fund shall be disbursed under the process described herein.

(i)     If, upon the expiration of the Notice Period, the Claims Administrator determines additional information is needed to withhold applicable taxes for a Settlement Class Member the Claims Administrator shall send the necessary tax form to the Settlement Class Member.  The Settlement Class Member shall have fourteen (14) days from mailing to provide the completed tax form to the Claims Administrator.  Failure of any of those Settlement Class Members sent a tax form by the Claims Administrator to return that tax form will not prevent them from participating in the Settlement; however, for these individuals the Claims Administrator will make tax backup withholdings, not otherwise made, to the Portion of the Settlement Payment to Participating Settlement Class Members on IRS 1099 Form.

(ii)    Within fourteen (14) days of the Effective Date, the Claims Administrator shall send by U.S. Mail the Settlement Checks to the Settlement Class Members.

(iii)   Settlement Class Members who do not timely cash their Settlement Check(s) will have released the Released Claims against the Released Parties as described in Section 19 below and waived any right to receive any payment associated with the Settlement.

(iv)    Any Settlement Class Member who wishes to dispute the amount allocated to him or her, may do so by following same process set forth in Section 12 of the Settlement Agreement.

(i)     <u>Returned Settlement Postcards, Settlement Notices, and Settlement Checks</u>.  If a Settlement Class Member's Settlement Postcard, Notice of Settlement, or Settlement Checks are returned with a forwarding address, the Claims Administrator shall re-mail the Notice of Settlement to the forwarding address within seven (7) days.  If they are returned without a forwarding address, the Claims Administrator shall attempt to locate the Settlement Class Member in an effort to determine the Settlement Class Member's current address, including by calling the Settlement Class Member if a telephone number is available and/or

performing one standard Level 2 Skip Trace in the manner that the Claims Administrator customarily performs such skip traces.  If a new address is obtained, the Claims Administrator will promptly re-mail it to the Settlement Class Member, and in no event later than five (5) days after receiving the updated information.  Any Settlement Class Member whose Notice of Settlement is re-mailed shall have twenty (20) days from the end of the original Notice Period to timely object or request exclusion.  No Notice of Settlement shall be mailed after the Notice Period.  Any costs related to re-mailing or re-issuing Notices of Settlement or Settlement Checks shall come out of the Total Settlement Amount. Any costs related to mailing or re-mailing the Settlement Postcards to Settlement Class Members, will be paid separate and apart from the Settlement by Class Counsel.

(j)     Pro Rata Allocation of Net Settlement Fund to Participating Settlement Class Members.  Within seven (7) days of the expiration of the Notice Period, the Claims Administrator shall provide to Class Counsel and Defendant's Counsel the revised pro rata allocations for Settlement Class Members as well as the Claims Administrator's proposed declaration in support of final approval.

(k)     Affidavit of Claims Administrator.  Class Counsel shall provide a report to the Court thirty (30) days after the mailing of the Settlement Postcard, which outlines the number of class members who updated their contact information, the number of Settlement Postcards which were returned undeliverable or mailed to the wrong address and other relevant data to confirm the adequacy of the current address data. Class Counsel shall provide to the Court with the Final Approval Motion, an affidavit by the Claims Administrator detailing similar information, its due diligence in ensuring adequate notice to Settlement Class Members, proof of mailing with regard to the mailing of the Notices of Settlement, and the pro rata allocation of the Net Settlement Fund to Settlement Class Members.  The affidavit will also identify the number of exclusion requests and any objections.

12.   **Objecting to the Settlement.**  Settlement Class Members (described in Section 4) who do not exclude themselves from the Settlement (described below) may object to the Settlement.

(a)     An Objector must submit a written objection by following the instructions described in the Notice of Settlement and submitting it to the Claims Administrator.

(b)     To be valid, an objection must be sent to the Claims Administrator and postmarked within the Notice Period.  It is the responsibility of the individual who is objecting to retain a copy of the objection and proof of timely mailing.

(c)     An objection submitted by a Settlement Class Member who has submitted a Request for Exclusion is not valid.

(d)     The Claims Administrator shall provide the Parties' Counsel copies of all objections on a weekly basis and indicate the date received. Class Counsel shall file such objections with the Court with Class Counsel's motion for final approval.

(e)     An Objector has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector may withdraw his or her objections at any time.

13.     **Exclusions from the Settlement.**  Settlement Class Members may exclude themselves from the Settlement by following the instructions described in the Notice of Settlement.

(a)     To be valid, an exclusion must be sent to the Claims Administrator within the Notice Period.

(b)     The Claims Administrator shall send to the Parties' Counsel copies of all exclusions within two (2) business days of their receipt, and Class Counsel shall promptly file such exclusions with the Court with Class Counsel's motion for final approval.

14.     **Final Approval of the Settlement.**

(a)     At least thirty (30) days before the end of the Notice Period, Class Counsel will provide Defendant's Counsel with a draft motion for final approval of the settlement and dismissal of the action for Defendant's review and approval.

(b)     Within ten (10) days after the Notice Period ends, Class Counsel will file a motion for final approval of the settlement and dismissal with the Court. Defendant will not oppose this motion.

15.     **Settlement Payments.**

(a)     Within fourteen (14) days after the Effective Date, the Claims Administrator shall mail to each Settlement Class Member their Settlement Checks written from the QSF's bank account(s) and equaling his/her Settlement Payment, including any pro rata allocations from remaining portions of the Net Settlement Fund, less any applicable taxes withheld that are the responsibility of the Participating Settlement Class Member.

(b)     Each settlement check shall expire ninety (90) days after the issuance date that appears on the Settlement Check. Each settlement check will contain a notice stating that the settlement check shall expire ninety (90) days after issuance.

(c)     Unless the Claims Administrator has received updated contact information, the Settlement Checks issued pursuant to this Section will be mailed by the Claims Administrator to the Settlement Class Member at the address provided to the Claims Administrator by Class Counsel. If a Settlement Class Member's Settlement Check is returned with a forwarding address, the Claims Administrator

13

shall promptly re-mail the settlement checks to the forwarding address. For Settlement Class Members whose checks are re-mailed, the ninety (90) day period during which Settlement Class Members must cash their checks will run from the date that appears on the check. No initial Settlement Checks will be re-issued more than one hundred (100) days after the date of the first check to that Settlement Class Member. Any costs related to re-mailing or reissuing Settlement Checks shall come out of the Total Settlement Amount in the QSF.

(d)     For Settlement Checks sent to Participating Settlement Class Members after the reallocation of the Settlement Fund, the same process applies as set forth in Section 15(c).

(e)     Within thirty (30) days of the expiration date of the Settlement Checks initially sent to Settlement Class Members, the Claims Administrator shall provide Class Counsel and Defendant an accounting of any uncashed Settlement Checks and any funds remaining in the Net Settlement Fund. These funds shall be reallocated by the Claims Administrator pro rata to Participating Settlement Class Members, and Settlement Checks sent to Participating Class Members within one-hundred-forty-five (145) days of the initial date the Settlement Checks were issued, subject to the same process set forth in Section 15(c).

(f)     Within thirty (30) days of the expiration of the Settlement Checks sent to Participating Settlement Class Members, the Claims Administrator shall provide Class Counsel and Defendant an accounting of any uncashed Settlement Checks and any funds remaining in the Net Settlement Fund. These remaining funds shall be donated to the Cy Pres Boys and Girls Club of America-CyberSafety Program within fourteen (14) days thereafter on a 1099 basis. The Claims Administrator will remit to Defendant any refund it receives with respect to the employer payroll taxes previously paid by Defendant with respect to those uncashed Settlement Checks.

(g)     If a Settlement Class Member or Participating Settlement Class Member reports that his or her Settlement Checks were lost, stolen, or undelivered, the Claims Administrator shall promptly issue a stop payment order on the original Settlement Check and issue a new Settlement Check to them in accordance with the terms of this Settlement Agreement. The Claims Administrator shall cooperate with the Settlement Class Members, Participating Class Members, and Class Counsel to reissue any Settlement Checks within seven (7) days of request.

16.     **Tax Characterization of Settlement Class Member and Participating Settlement Class Member Payments**

(a)     For tax purposes, fifty percent (50%) of Settlement Payments to Settlement Class Members and/or Participating Settlement Class Members pursuant to Section 15 shall be treated as wages and fifty percent (50%) shall be treated as interest and/or liquidated damages. One hundred percent (100%) of the Service Payments pursuant to Section 9 shall be treated as other income.

(b)     Payments treated as wages pursuant to Section 1(y) shall be made net of all applicable employment taxes (excluding Employer Payroll Taxes), including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2.  Payments treated as Service Payments, interest and/or liquidated damages pursuant to Section 1(x) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS 1099 Form. The Settlement Class Members and Participating Settlement Class Members will be exclusively responsible for the employee's share of all payroll taxes, and such amounts will be withheld from Settlement Class Member and Participating Settlement Class Member Payments.  The Settlement Class Members and Participating Settlement Class Members will also be exclusively responsible for any income or tax liability on any and all Settlement Checks they received, except for the Employer Payroll Taxes.

(c)     The Claims Administrator shall calculate, report and pay, from the QSF and under the QSF's EIN, Employer Payroll Taxes owed on the Settlement Class Member and Participating Settlement Class Member Payments.

(d)     The Claims Administrator shall calculate, and withhold, the amount equal to the payroll taxes on the W-2 Payment to Settlement Class Members and Participating Settlement Class Members. The Claims Administrator shall be responsible for all required reporting, filing deposits, withholdings and (with respect to the Employer Payroll Taxes) payments of the payroll taxes and otherwise with respect to all amounts payable to the Class Representatives, Settlement Class Members, and Participating Settlement Class Members pursuant to this Settlement Agreement and to any federal, state or local tax law or regulation, under the EIN of the QSF.

(e)     The Claims Administrator shall perform a TIN match on the social security numbers previously provided by Sprint for the Settlement Class Members.  Class Counsel will provide the social security numbers to the Claims Administrator with the allocations as set forth in Section 11(c).  Settlement Class Members shall not be required to complete any tax forms unless the Claims Administrator determines it needs more information after attempting the TIN match.  The state in which the Settlement Class Member currently resides will be used for purposes of tax withholdings.

(f)     Should any government authority determine that all or any part of the payment(s) made to Class Counsel or Participating Settlement Class Members under an IRS 1099 Form under this Settlement Agreement are taxable as wages, Participating Settlement Class Members will be solely responsible for the payment of all such taxes.

(g)     The employee portion of all applicable income and payroll taxes will be the responsibility of the individual Participating Settlement Class Member receiving a Settlement Check.

(h)     The Claims Administrator shall calculate, report and pay, the Employer Payroll Taxes on the Settlement Class Member and Participating Class Member Payments pursuant to this Settlement Agreement, pursuant to any federal, state or local tax law or regulation, under the EIN of the QSF.

(i)     The Claims Administrator shall handle all tax reporting with respect to the payments made pursuant to this Settlement Agreement, and, regardless of any provision in this Settlement Agreement, shall report the payments in accordance with applicable law.

(j)     Within the ten (10) days after the Final Approval Order, the Claims Administrator shall inform the Parties of an estimate of the Employer Payroll Taxes with respect to the amounts treated as wages pursuant to Section 1(y).  Defendant shall pay this amount into the QSF on the Effective Date, and the Claims Administrator shall remit all such taxes withheld to the IRS and/or other appropriate taxing agencies.

(k)     Neither Defendant nor any of the Released Parties makes any representation regarding the tax consequences owed by or associated with any amounts received by the Settlement Class, Participating Settlement Class Members, Class Representatives and Class Counsel pursuant to this Settlement Agreement.  The Parties further agree that if any local, state or federal authority determines that the tax treatment of the payments to the Settlement Class, Participating Settlement Class Members, Class Representatives and Class Counsel made under this Settlement Agreement is improper or impermissible, the Settlement Class, Participating Settlement Class Members, Class Representatives, and Class Counsel shall be solely responsible for the payment of all such taxes due (excluding those related to the Employer Payroll Taxes).  Pursuant to the Claims Administrator's Bid, Terms & Conditions, (Exhibit 5 to Plaintiffs' Motion for Preliminary Approval), which is incorporated by reference herein, the Claims Administrator shall indemnify Defendant and the Released Parties for any and all tax liability arising out of the Claims Administrator's responsibilities and duties set forth in Paragraphs 10(b) and 11(h), including interest and penalties, stemming from the Claims Administrator's performance of TIN matching on social security numbers for Settlement Class Members; sending to and collecting from the Settlement Class Members any necessary tax forms; distributing Settlement Checks and Service Payments (withholding Settlement Class Member and Participating Settlement Class Members' share of taxes and remitting such taxes to the appropriate taxing authorities); and the withholding of any employee-side payroll taxes at the highest applicable tax rate when issuing the Settlement Check for that Participating Class Member when any of Participating Settlement Class Member fails to send the requisite tax form to the Claims Administrator.  To the extent that Defendant or any of the Released Parties is penalized for any failure to

withhold or pay taxes as a result of the Claims Administrator's duties and responsibilities set forth in Paragraphs 10(b) and 11(h), the Claims Administrator will indemnify Defendant and any of the Released Parties for its costs, expenses, fees (including reasonable attorneys' fees) and/or penalties with respect to taxes or the failure to withhold consistent with the terms of the Claims Administrator's Bid, Terms & Conditions.

(l)    Neither Class Counsel nor Defendant's Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

17.    **Settlement Payments Do Not Trigger Additional Benefits**.  All payments to Settlement Class Members and Participating Settlement Class Members shall be deemed to be paid to such individuals solely in the year in which such payments actually are received by them.  The Parties agree and the Settlement Class Members acknowledge that the payments provided for in this Settlement Agreement are the sole payments to be made to the Settlement Class Members, and that the Settlement Class Members are not entitled to any new or additional compensation or benefits as a result of having received the payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the period covered by this Settlement).

18.    **Right of Defendant to Reject Settlement.**  If ten percent (10%) or more of the Settlement Class Members, or a number of Settlement Class Members whose Settlement Allocations in the aggregate total of ten percent (10%) or more of the Net Settlement Fund, file timely and valid Requests for Exclusion, then Defendant will have the right to rescind the Settlement, and the Settlement and all actions taken in its furtherance will be null and void.  Defendant must exercise this right within seven (7) days after the Claims Administrator notifies them of the number of Requests for Exclusions received that meet this threshold.

19.    **Release**.  By operation of the entry of the Final Approval Order, and except as to such rights or claims as may be created by this Settlement Agreement, each Settlement Class Member who has not properly excluded himself or herself from the Settlement as set forth in Section 13, and each Settlement Class Member and Participating Settlement Class Member, on his or her own behalf and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, trustees, agents, assigns and legal representatives, forever and fully releases and discharges the Released Parties (as defined in Section 1(dd)) and their current and former directors, officers, legal representatives, members, managers, employees, fiduciaries, trustees, employee benefit plan administrators, agents, insurers, re-insurers, successors and assigns, and their predecessors, and all persons and/or entities acting by, through, under or in concert with any of them, each whether acting for Defendant or in their individual capacities, and any individual or entity which could be jointly liable with any of them, from any and all claims for unpaid commissions under state law (including, but not limited to, under the Kansas Wage Payment Act), federal, or common law (including but not limited to breach of contract) from August 12, 2005 through September 30, 2009.

(a)     <u>Settlement Does Not Invalidate Prior Releases</u>.  The Settlement Class Members who have not properly excluded themselves from the Settlement pursuant to Section 13, acknowledge that their participation in the Settlement does not rescind, invalidate, modify, or otherwise affect any prior release(s) that they have or may have executed with Defendant.

20.     **Settlement Contingent on Court Approval**. This Settlement Agreement is contingent upon the Court's approval of the Settlement.

(a)     If the Court does not grant Preliminary or Final Approval or the Effective Date does not occur, excluding modifications that the Parties determine in their reasonable and good faith judgment not to be material modifications, this Settlement Agreement may be voided at either party's option, in which case this Settlement Agreement (including its Exhibits) will become void and will not be used for any purpose in connection with any further litigation in the Class Litigation or any other lawsuit, administrative or other legal proceeding, claim, investigation, or complaint.

(b)     If the Court does not grant Preliminary or Final Approval or the Effective Date does not occur, the Class Litigation shall proceed without prejudice as if this Settlement Agreement had not been executed unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

(c)     Notwithstanding any other provision of this Settlement Agreement, no order of the Court, or modification or reversal on appeal of any order of the Court, reducing the amount of any Attorneys' Fees or Lawsuit Costs to be paid to Class Counsel, or reducing the amount of the Service Payments, shall constitute grounds for cancellation or termination of or to void the Settlement Agreement or grounds for limiting any other provision of the judgment.

(d)     If the Settlement Agreement is terminated after the Notices of Settlement are mailed, the Claims Administrator shall provide notice to all Settlement Class Members informing them that the Settlement was voided, and that as a result, no payments will be made to Settlement Class Members under the Settlement Agreement, and that the Class Litigation will continue, along with any additional information jointly agreed to by Class Counsel and Defendant's Counsel.  Such notice shall be mailed by the Claims Administrator via first class mail, postage prepaid, to the addresses contained on the Settlement Class Member's Notice of Settlement and/or on his or her updated address.  The costs of such mailing, as well as all prior costs incurred by the Claims Administrator, shall be split equally between the Parties.

21.     **Mutual Full Cooperation**.  The Parties will fully cooperate with each other and with the Claims Administrator to accomplish the terms of this Settlement Agreement, including but not limited to, the preparation and execution of documents necessary to implement

this Settlement Agreement.  The Parties will use their best efforts to effectuate this Settlement Agreement, including during any appeals, and will use their best efforts to obtain the Court's approval of the Settlement and to defend the Settlement from any legal challenge.

22.   **Complete Agreement**.  No representation, promise, or inducement has been offered or made to induce any Party to enter into this Settlement Agreement, which contains the entire, complete, and integrated statement of all settlement terms and supersedes all previous oral or written agreements.  This Settlement Agreement may not be amended or modified except by a writing signed by the Parties' authorized representatives.

23.   **Knowing and Voluntary Agreement**.  The Parties enter into this Settlement Agreement knowingly, voluntarily, and with full knowledge of its significance.  The Parties have not been coerced, threatened, or intimidated into signing this Settlement Agreement and have consulted with legal counsel regarding the Settlement Agreement.

24.   **Notifications and Communications**.  Any notifications or communications made in connection with this Settlement Agreement shall be sent to the Parties at the addresses of their respective counsel as follows:

| For the Class Representatives and Settlement Class Members: | For Defendant: |
|---|---|
| **NICHOLS KASTER, PLLP** | **PROSKAUER ROSE LLP** |
| Michele R. Fisher | Elise M. Bloom |
| Paul J. Lukas | Steven D. Hurd |
| Alexander M. Baggio | Nicole A. Eichberger |
| 4600 IDS Center | Eleven Times Square |
| 80 South 8th Street | New York, NY 10036 |
| Minneapolis, MN 55402 | Tel: 212-969-3410 |
| Tel: 612-256-3200 | Fax: 212-969-2900 |
| Fax: 612-215-6870 | |
| | **DENTONS US LLP** |
| | Gregory T. Wolf |
| | 4520 Main Street, Suite 1100 |
| | Kansas City, MO 64111 |
| | Tel: 816-460-2400 |

25.   **Severability**.  If any part of this Settlement Agreement is found to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect the validity of any other part of this Settlement Agreement, which shall be construed, reformed and enforced to affect the purposes thereof to the fullest extent permitted by law.

26.   **Captions and Interpretations**.  Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or

describe the scope of this Settlement Agreement or any provision hereof.  Each term of this Settlement Agreement is contractual and not merely a recital.

27.   **Binding on Assigns**.  This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns.

28.   **Enforcement of Settlement Agreement and Governing Law**.  This Settlement Agreement will be governed by Kansas law without giving effect to Kansas's choice of law principles.  The Parties submit to the jurisdiction of the Court for all purposes relating to the review, approval, and enforcement of this Settlement Agreement.

29.   **Settlement Agreement Form and Construction**.

(a)   The terms and conditions of this Settlement Agreement are the result of lengthy, carefully considered, arms-length negotiations between the Parties and this Settlement Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Settlement Agreement.

(b)   This Settlement Agreement may be executed in electronic counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one binding Settlement Agreement.

(c)   This Settlement Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Settlement, for a complete resolution of the Class Litigation.

30.   **Parties' Authority**.  The signatories hereto hereby represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties hereto and the Class Members to the terms and conditions thereof.



**IN WITNESS WHEREOF,** the Parties each voluntarily and without coercion have caused this Settlement Agreement to be signed on the dates entered below:

ROXIE SIBLEY

06/18/2018

Date

STATE OF _____ LA _____ )

COUNTY OF _____ Jefferson _____ ) ss.:

On this 21 day of _____ June _____, 2018, before me personally came Roxie Sibley, to me known and known to me to be the person described in and who executed the foregoing Settlement Agreement, and she duly acknowledged to me that she executed the same.

Notary Public

Usman Javaid

JUN 2 1 2018

State Wide Jurisdiction
Notary For Life

JEANNE NOEL                                    6-14-18
                                               Date

STATE OF Arkansas          )
                           ) ss.:
COUNTY OF Faulkner         )

On this 14 day of June , 2018, before me personally came Jeanne Noel, to me known and known to me to be the person described in and who executed the foregoing Settlement Agreement, and she duly acknowledged to me that she executed the same.

Jeee R Smarr
Notary Public

TERRI R. SMARR
NOTARY PUBLIC - ARKANSAS
FAULKNER COUNTY
My Commission Expires 5-21-2027
Commission # 12398208

_____      _6-14-18_
ERNESTO BENNETT                          Date

STATE OF ___Louisiana___ )
PARISH                   ) ss.:
COUNTY OF ___Jefferson___ )

On this _4th_ day of ___June___, 2018, before me personally came Ernesto Bennett, to me known and known to me to be the person described in and who executed the foregoing Settlement Agreement, and he duly acknowledged to me that he executed the same.

_____
Notary Public

```
┌─────────────────────────────────────┐
│        GLORIA T. LASTRA              │
│     Notary Public # 132432           │
│   Louisiana Bar Roll # 25442         │
│        2100 Bruin Drive              │
│   Kenner, Louisiana  70065           │
│    Telephone (504) 712-2003          │
│  My commission expires at death      │
└─────────────────────────────────────┘
```



_____     6-15-2018
JAMIE WILLIAMS                            Date

STATE OF ___Texas_____ )
                                         ) ss.:
COUNTY OF ___Travis_____ )

On this 15th day of ___June___, 2018, before me personally came Jamie Williams, to me known and known to me to be the person described in and who executed the foregoing Settlement Agreement, and she duly acknowledged to me that he executed the same.

_____
Notary Public

JACKSON DEE LONG
Notary Public, State of Texas
Comm. Expires 07-12-2021
Notary ID 129485369

RightSignature » Sibley Settlement Agre... [Pending your signature]

_Gregory St Julien Jr_          06/18/2018
GREG ST. JULIEN                    Date

STATE OF _Louisiana_ )
                                   ) ss.:
COUNTY OF _East Baton Rouge_

On this _18_ day of _June_, 2018, before me personally came Greg St. Julien, to me known
and known to me to be the person described in and who executed the foregoing Settlement
Agreement, and he duly acknowledged to me that he executed the same.

Notary Public   Daniel L. Lopez, #37563

26

TRACIE MINCKS (F/K/A HERNANDEZ)

06/15/2018
Date

STATE OF _____ STATE OF LOUISIANA )
              PARISH OF ASCENSION ) ss.:
COUNTY OF _____ )

DOCUMENT NOT PREPARED
BY NOTARY, ATTESTING TO
SIGNATURES ONLY

On this 15 day of _____June_____, 2018, before me personally came Tracie Mincks (f/k/a Hernandez), to me known and known to me to be the person described in and who executed the foregoing Settlement Agreement, and she duly acknowledged to me that she executed the same.

Notary Public

OLESYA NADING
Louisiana Notary ID # 142338
My Commission Is For Life

27

_____          
JOHN JASINSKI                             _____
                                          Date

STATE OF Oregon _____ )
                                ) ss.:
COUNTY OF Washington _____ )

On this 19th day of June _____, 2018, before me personally came John Jasinski, to me known
and known to me to be the person described in and who executed the foregoing Settlement
Agreement, and he duly acknowledged to me that he executed the same.

_____
Notary Public

OFFICIAL STAMP
**ISABELLE MAVIS EVANS**
NOTARY PUBLIC-OREGON
COMMISSION NO. 970319
MY COMMISSION EXPIRES JANUARY 10, 2022

_____

JAY RICHIE

4/15/18

Date

STATE OF _Arizona_____ )
                                                         ) ss.:
COUNTY OF _Maricopa_____ )

On this 15th day of _June_____, 2018, before me personally came Jay Richie, to me known and known to me to be the person described in and who executed the foregoing Settlement Agreement, and he duly acknowledged to me that he executed the same.

_____

Notary Public

Brian Barton
Notary Public
Maricopa County, Arizona
My Comm. Expires 01-06-2021

_____            06/15/2018
TEISHA KING                          _____
                                     Date

STATE OF _Tennessee_____ )
                         ) ss.:
COUNTY OF _Davidson_____ )

On this _15_ day of _June_____, 2018, before me personally came Teisha King, to me known
and known to me to be the person described in and who executed the foregoing Settlement
Agreement, and she duly acknowledged to me that she executed the same.

_____
Notary Public

Exp 6-29-2019

30

_____    **6-16-18**
Henry Goins                   **Date**

STATE OF _Louisiana_ )
                          ) ss.:
COUNTY OF _Jefferson_ )

On this _16th_ day of _June_ , 2018, before me personally came Henry Goins, to me k
and known to me to be the person described in and who executed the foregoing Settlemen
Agreement, and he duly acknowledged to me that he executed the same.

_Everett Russell IDB7087_
Notary Public

┌─────────────────────────┐
│     EVERETT RUSSELL      │
│ Notary Public - Louisiana │
│     Jefferson Parish     │
│     Notary ID 137087     │
└─────────────────────────┘

_Clayton Johnson_    6/16/18

_____    _06/15/2018_
Clayton Johnson                 Date

STATE OF _Nevada_ )
                       ) ss.:
COUNTY OF _Clark_ )

On this _16_ day of _June_ , 2018, before me personally came Clayton Johnson, to me known and known to me to be the person described in and who executed the foregoing Settlement Agreement, and he duly acknowledged to me that he executed the same.

_____
Notary Public

CHRISTY A. PEREZ
Notary Public, State of Nevada
Appointment No. 05-98829-1
My Appt. Expires Jan 11, 2021

32

_____     06/18/2018
Anthony Scarpelli                         Date

STATE OF _____ )
                                                          ) ss.:
COUNTY OF _____ )


On this ____ day of _____, 2018, before me personally came Anthony Scarpelli, to me known and known to me to be the person described in and who executed the foregoing Settlement Agreement, and he duly acknowledged to me that he executed the same.

_____
Notary Public

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**      **CIVIL CODE § 1189**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California           )
County of _Placer_          )

On _06|18| 2018_ before me, _Michele Kyotani_ ,
    *Date*                   *Here Insert Name and Title of the Officer*

personally appeared _Anthony Scarpelli_
                               *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> MICHELLE KYOTANI
> Commission # 2125352
> Notary Public - California
> Placer County
> My Comm. Expires Aug 29, 2019

Signature _____
               *Signature of Notary Public*

*Place Notary Seal Above*

———————————— **OPTIONAL** ————————————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____
Document Date: _____ Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Individual     ☐ Attorney in Fact
☐ Trustee      ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Individual     ☐ Attorney in Fact
☐ Trustee      ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2015 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

NICHOLS KASTER, PLLP

By: _____          _____
                                              June 18, 2018
                                              Date

SPRINT COMMUNICATIONS, INC. F/K/A
SPRINT NEXTEL CORPORATION AND
SPRINT/UNITED MANAGEMENT COMPANY

By: _____          _____
                                              June 18, 2018
                                              Date

# EXHIBIT A

# UNITED STATES DISTRICT COURT DISTRICT OF KANSAS

## Notice of Settlement

You are receiving this notice because you have been identified as someone included in the Settlement Class for a class action lawsuit. That case is entitled *Sibley et al. v. Sprint Nextel Corp., et al.*, Case No. 08-CV-2063-KHV (District of Kansas) and was filed in February 2008. The lawsuit alleges that because of problems with Sprint's commissions system, Sprint did not pay all of the commissions due to former or current retail employees. You should have received notice of this lawsuit in 2009 and/or 2014.

The Settlement Class includes: All persons nationwide who did not opt out of the Class Litigation and worked in Sprint's retail stores during the Class Period of August 12, 2005 through September 30, 2009, including Retail Store District Managers, Retail Store Managers, Assistant Retail Store Managers, Lead Retail Consultants, Retail Consultants, Retail Sales Representatives, and other retail employees (all of whom held at least one of the job titles set forth in Exhibit A to the Expert Stipulation entered at Docket No. 357-1 in the Class Litigation) and whose compensation was based in full or in part on commissions.

Sprint denies the claims, that the Settlement Class was net underpaid commissions under the terms of the commission contracts and that the Settlement Class are entitled to relief. However, the parties believe that the proposed settlement is a fair and reasonable resolution in light of the risk and expense of continued litigation. The settlement provides that Sprint will pay $30,500,000.00 to settle this case (the "Total Settlement Amount"). This proposed settlement has received *preliminary* approval from the Court and will resolve all claims of the Settlement Class Members who do not request exclusion from the settlement.

If you do not request exclusion from this case, you will receive your share of the Net Settlement Fund through a settlement payment in the pre-tax amount of at least [$**XXXXXXX**]. Your actual payment will depend on how many members of the Settlement Class participate in the settlement, but will at least be this minimum. As detailed below, you will receive that payment only after the Court grants final approval of the settlement, and if you timely cash your payment, you may also receive a second payment of your *pro rata* share of any remaining uncashed, unapproved, or unused settlement funds.

### YOUR LEGAL RIGHTS ARE AFFECTED BY THIS SETTLEMENT AND YOU HAVE A <u>CHOICE</u> TO MAKE NOW. PLEASE REVIEW THE FOLLOWING PAGES CAREFULLY.

| You May: | Effect of Choosing the Option: | Due Date: |
|---|---|---|
| *Do nothing.* | • You will release any and all claims for unpaid commissions due under state (including but not limited to the Kansas Wage Payment Act), federal, or common law (including but not limited to breach of contract) that you have, or may have brought, against Sprint and the Released Parties as defined in the Settlement Agreement from August 12, 2005 through September 30, 2009. | *Not applicable.* |
| *Exclude yourself by making a written exclusion request.* | • You can elect to opt-out of the lawsuit and retain your right to sue Sprint.<br>• To exclude yourself, you **must** submit a signed exclusion request. If you exclude yourself, you will not receive a settlement check. | *The exclusion request must be sent to the Claims Administrator no later than [DATE].* |
| *Submit an objection.* | • If you do not exclude yourself, you can remain in the lawsuit and still write to the Court explaining why you object or disagree with the settlement.<br>• You will release any and all claims for unpaid commissions due under state (including but not limited to the Kansas Wage Payment Act), federal, or common law | *The objection must be sent to the Claims Administrator no later than [DATE].*<br><br>*If you exclude yourself from the settlement, you cannot object to* |

| | (including but not limited to breach of contract) that you have, or may have brought, against Sprint and the Released Parties as defined in the Settlement Agreement from August 12, 2005 through September 30, 2009. | *the settlement.* |
| *Appear at the hearing* | • If you do not exclude yourself, you can also ask to speak to the Court about the fairness of the settlement. | *The hearing is scheduled for [DATE]. This date may change without further notice* |

## 1.     WHY DID I GET THIS NOTICE?

The Court directed this Notice be sent to you because Sprint's records show you worked in Sprint's retail stores during the Class Period of August 12, 2005 through September 30, 2009, as a Retail Store District Manager, Retail Store Manager, Assistant Retail Store Manager, Lead Retail Consultant, Retail Consultant, Retail Sales Representative, or other retail employees (in at least one of the job titles set forth in Exhibit A to the Expert Stipulation entered at Docket No. 357-1 in the Class Litigation) and whose compensation was based in full or in part on commissions.

## 2.     WHAT ARE THE SETTLEMENT BENEFITS AND HOW WERE THE ALLOCATIONS DETERMINED?

Sprint agreed to pay a "Total Settlement Amount" of $30,500,000.00. Deducted from the Total Settlement Amount will be sums, to be approved by the Court, for Class Counsel's fees of $7,014,250.00 and costs of $6,573,147.16. Additional deductions from the Total Settlement Amount will be made in the amount of $178,723.00 for settlement administration, $60,000.00 for a reserve fund for the class, $90,000.00 for the nine class representatives as service payments ($10,000.00 each), $33,000.00 for the eleven Settlement Class members who prepared to testify at trial ($3,000.00 each), and $750.00 for three additional class representatives ($250.00 each). Thus, the Net Settlement Fund available for initial allocations to the Settlement Class is $16,550,129.84.

The allocations will be based off of the damages calculations performed by the Class Expert using Sprint's data. The Class Expert's damages calculation results for each Settlement Class Member, and whether they fall within a Settlement Subclass, can be found in the 5/2018 *Sibley* Settlement Allocations (Ex. 2) filed with the Court on May 21, 2018 at Docket No. 832–1. If the Class Expert calculated a Settlement Class Member was overall correctly paid or overpaid, then the Settlement Class Member is allocated $0. If the Class Expert determined a Settlement Class Member only worked during August 2005 (Period 65) then the Settlement Class Member is allocated $25. If the Class Expert determined a Settlement Class Member had insufficient data to calculate commissions, then the Settlement Class Member is allocated in the range of $541.73, which is the average settlement allocation for those Settlement Class Members receiving an allocation. All other Settlement Class Members are allocated their *pro rata* share of the Net Settlement Fund, using the Class Expert's damages calculations, with such allocations made after allocations for Settlement Class Members with insufficient data and the Settlement Class Members who only worked during August 2005 (Period 65). The minimum allocation for Settlement Class Members allocated settlement funds pursuant to this allocation plan will be $25.

Based on your commissions data, your settlement share, after attorneys' fees, costs, Settlement Class Member service payments, settlement administration, and the reserve fund, is a pre-tax minimum of [XXX].

Actual payments may increase for those Settlement Class Members allocated more than $0 depending on how many members of the Settlement Class participate in the settlement by cashing their payment. Any uncashed, unused, or unapproved funds will be redistributed on a *pro rata* basis to members of the Settlement Class who timely cash their payment.

Payments to the Settlement Class will be reported as 50% W-2 wage earnings and 50% liquidated damages, penalties, and/or interest, and reported on an IRS Form 1099.  Each member of the Settlement Class will be responsible for the payment of any personal taxes owing on their amounts received.

| 3. | WHO ARE THE CLASS REPRESENTATIVES? |
|---|---|

The original nine (9) Class Representatives are Roxie Sibley, Jeanne Noel, Ernesto Bennett, Jamie Williams, Greg St. Julien, Tracie Mincks (formerly "Hernandez"), John Jasinski, Jay Richie and Teisha King.  The Class Representatives for the Settlement Subclasses of Settlement Class Members (1) who were correctly paid over overpaid is Henry Goins, (2) who only worked in Period 65 (August 2005) is Clayton Johnson, and who had insufficient data to calculate an underpayment is Anthony Scarpelli.

| 4. | WHAT HAPPENS IF I DO NOTHING? |
|---|---|

If you do nothing, you will receive a settlement check, and will release any and all claims for unpaid commissions due under state (including but not limited to the Kansas Wage Payment Act), federal, or common law (including but not limited to breach of contract), you have, or may have brought, against Sprint and/or Sprint's past, present and future subsidiaries and affiliates and their past, present and future owners, partners, predecessor companies, members, managers, legal representatives, employees, fiduciaries, trustees, employee benefit plan administrators, agents, insurers, re-insurers, successors and assigns, each whether acting in his or her official or individual capacity, and all persons and/or entities acting by, through, under or in concert with any of them and any individual or entity which could be jointly liable with any of them, each whether acting in his or her official or individual capacity (the "Released Parties), from August 12, 2005 through September 30, 2009.

Within approximately 45 days of the Court's order granting final approval of the settlement, the Claims Administrator will mail the settlement funds to the members of the Settlement Class who did not request exclusion.  Shortly after the 90-day period for cashing those checks expires, the Settlement Administrator will send additional settlement checks based on a reallocation of any uncashed, unused, or unapproved settlement funds *pro rata* to those Settlement Class members who timely cashed their settlement checks.

| 5. | WHAT HAPPENS IF I REQUEST EXCLUSION FROM THE SETTLEMENT? |
|---|---|

You can exclude yourself from the settlement and from receiving a settlement check by timely requesting exclusion.  If you exclude yourself, then you will not get the benefits of the settlement and will not be legally bound by the Court's judgment in this case.

If you wish to start your own lawsuit against Sprint for claims covered by this lawsuit, you will have to represent yourself or hire and pay your own lawyer for that lawsuit and prove your own claims.  If you choose to do so, you should talk to your own lawyer soon because your claims may be barred by the applicable statute of limitations.

To request exclusion from this lawsuit and settlement, you must send a letter asking to be excluded that contains your name, address, telephone number, last four digits of your social security number, and signature.  That letter must be postmarked by [**DATE**] and sent to the Claims Administrator identified in response to Question 8.

**Unless you timely complete and return a request for exclusion, you will be bound by any judgment in this case and you will not be permitted to pursue any pending or future litigation regarding matters resolved in this settlement. Should you wish to exclude yourself from this settlement, it is important that you follow these instructions carefully.**

**6.      HOW DO I OBJECT TO THE SETTLEMENT?**

If you do not like the settlement, but do not want to be excluded from it, you may file an objection to it.  This means you can tell the Court that you disagree with the settlement or some of its terms.  The Court will consider your views but may approve the settlement anyway.

Members of the Settlement Class may object by mailing objections to the Claims Administrator identified in response to Question 8, if the objection is postmarked by [**DATE**].  Your objection must contain your name, address, telephone number, last four digits of your social security number, and signature.  You may also appear at the Court's fairness hearing if you timely submit your written objection.  That date and location are identified in response to Question 12.

Any member of the Settlement Class who fails to submit a written objection in the manner described here will be deemed to have waived any objections and will be foreclosed from making any comments on or objections to the settlement (whether by appeal or otherwise).

If you object to the settlement, you will still receive a settlement check and will release any and all claims for unpaid commissions due under state (including but not limited to the Kansas Wage Payment Act), federal, or common law (including but not limited to breach of contract), that you have, or may have brought, against Sprint and/or any of Sprint's past, present and future subsidiaries and affiliates and their past, present and future owners, partners,   predecessor companies, members, managers, legal representatives, employees, fiduciaries, trustees, employee benefit plan administrators, agents, insurers, re-insurers, successors and assigns, each whether acting in his or her official or individual capacity, and all persons and/or entities acting by, through, under or in concert with any of them and any individual or entity which could be jointly liable with any of them, each whether acting in his or her official or individual capacity (the "Released Parties), from August 12, 2005 through September 30, 2009.

**7.      WHAT HAPPENS IF I DO NOT CASH MY SETTLEMENT PAYMENT?**

If you do not cash your settlement check(s) within 90 days, you will give up the right to sue the Released Parties for your Released Claims, and your settlement amount will be redistributed to other Participating Settlement Class Members and/or donated to charity.  You will be legally bound by the Court's judgment.

**8.      WHERE DO I SUBMIT AN OBJECTION AND/OR REQUEST FOR EXCLUSION?**

If you wish to object or request for exclusion from this case, you must send your request or objection, as described in Question 5 or 6, postmarked by [**DATE**] to:

Sibley v. Sprint Claims Administrator
C/O Rust Consulting, Inc.
P.O. Box 2396
Faribault, MN 55021

**9.      HOW DO I UPDATE MY CONTACT INFORMATION?**

If your address has changed from where this Notice of Settlement was sent, send a letter explaining your address has changed, and include your name, case name (*Sibley et al. v. Sprint Nextel Corp., et al.*), former address, new address, and last four digits of your social security number to the Claims Administrator identified in Question 8.  You may also update your address electronically through Class Counsel's webpage at www.nka.com/case/sprintretailsettlement.

**10.      DO I HAVE A LAWYER REPRESENTING MY INTERESTS IN THIS CASE?**

Yes. The Court appointed the following lawyers to serve as Class Counsel:

Michele Fisher and Paul Lukas
NICHOLS KASTER, PLLP
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Website: www.nka.com

| 11. | HOW WILL THE LAWYERS BE PAID? |
|-----|-------------------------------|

Subject to the Court's final approval, the settlement provides for a payment from the Total Settlement Amount of $7,015,000.00 for attorneys' fees and $6,573,147.16 for costs to Class Counsel.

| 12. | WHEN AND WHERE IS THE FAIRNESS HEARING? |
|-----|-----------------------------------------|

The Court will hold a fairness hearing to consider whether to grant final approval of the settlement on [**insert date/time/location**]. The hearing may be moved to a different date and/or time without additional notice. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate and decide whether to grant final approval. If there are objections, the Court will consider them. The Court will also decide how much from the Total Settlement Amount to award to Class Counsel in attorneys' fees and costs. We do not know how long these decisions will take. A member of the Settlement Class who timely submits an objection, may appear at the final approval hearing and present his or her objection to the Court.

| 13. | DO I HAVE TO ATTEND THE HEARING? |
|-----|----------------------------------|

No, but you may appear at your own expense. If you send a written objection, the Court will consider it even if you are not present. You may also pay your own lawyer to attend the hearing if you desire.

| 14. | WHERE DO I OBTAIN MORE INFORMATION? |
|-----|-------------------------------------|

If you want additional information, you may visit the case webpage at www.sprintretailsettlement.com, or Class Counsel's webpage at www.nka.com/case/sprintretailsettlement. You may also call or write Class Counsel at the address and telephone number listed above. The specific terms of the settlement have also been filed with the Court. You can look at and copy these documents at any time if you have a Public Access to Court Electronic Records ("PACER") account, where you may view the documents on the Court's Case Management/Electronic Court Filing website: www.pacer.gov.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ROXIE SIBLEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 08-2063-KHV |
| | ) | |
| SPRINT NEXTEL CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **PROTECTIVE ORDER**

The court finds good cause to enter the following protective order. IT IS HEREBY
STIPULATED AND AGREED by and between Plaintiffs and their counsel, and Defendants
("Defendants") (collectively the "Parties"), and their counsel, by and through their undersigned
counsel in the above-captioned action (the "Litigation'), as follows:

1.     This case involves allegations that Defendants have failed to properly compensate
Plaintiffs for commissions owed. It will involve highly confidential and personal information
about individuals' wages and employment records, as well as personal and proprietary financial
information and confidential business records of at least one of the Defendants. In particular,
any party to this Stipulation For The Protection And Exchange Of Confidential Documents may
designate as "Confidential:"   (1) any personal non-public, proprietary, business, financial or
other protected documents or files, including personnel files, training materials and payroll,
commissions, other compensation or other records of at least one of the Defendants' current or
former employees relating to or part of the calculation of their pay, that pertain to any current or
former employees of at least one of the Defendants and/or business records or information about

the operation of at least one of the Defendants' business; and (2) any documents that contain proprietary, financial, confidential, or other protected documentation pertaining to Plaintiffs or Defendants.

2.      Confidential matter shall be labeled or otherwise designated "Confidential" or the equivalent.  Any Confidential designation which is omitted inadvertently prior to or subsequent to the execution of this Stipulation may be corrected by written notification to opposing counsel.

(a)      In the case of electronically-stored information in any form (including embedded data and metadata) (collectively "Electronic Data"), the producing party shall designate the Electronic Data as Confidential in a cover letter accompanying the production of the Electronic Data.  Where feasible, counsel for the producing party will also mark the disk, tape or other electronic media on which the Electronic Data is produced with the appropriate designation.  If a party reduced Confidential Electronic Data to hardcopy form, it shall mark the hardcopy with the appropriate designation.   Whenever any Confidential Electronic Data is copied, all copies shall be marked with the appropriate designation.

(b)      In the case of depositions or other pretrial testimony, the party using such Confidential information shall designate the relevant portion of the deposition Confidential; (i) by a statement on the record, by counsel, at the time of such disclosure, or (ii) by written notice sent to all counsel of record for the Parties within fifteen business days after receipt of the transcript of the deposition.  All transcripts shall be considered Confidential and subject to this Protective Order until expiration of that fifteen-day period.  All videotapes of depositions shall be clearly labeled confidential pursuant to this Protective Order.

(c)      To the extent that a person described in Paragraph 3 creates, develops, establishes, or otherwise maintains, on any computer, network, disk, tape, or other digital or

analog machine-readable device, any information, files, databases or programs that contain Confidential Material, such person shall take all necessary steps to insure that access to any Confidential Material is restricted to those persons who, by the terms of this Protective Order, are allowed access to the Material.

3.     Except as provided in Paragraph 6, absent written consent from the Producing Party or unless otherwise directed by the Court, Confidential Material may be disclosed only to the following persons:

(a)     Parties to this lawsuit who are actively involved in assisting with the prosecution or defense of this litigation;

(b)     Outside counsel of record for the Parties;

(c)     In-house counsel for the Parties who are actively involved in assisting with the prosecution or defense of this Litigation;

(d)     Outside experts or consultants who are not regular employees of a Party but are retained on behalf of any of the Parties by their outside counsel to assist in the preparation of this case;

(e)     Outside photocopying, graphic production services or litigation support services employed by the Parties' counsel to assist in this Litigation, and computer service personnel performing duties in relation to a computerized litigation system;

(f)     The Court, court reporters, videographers, stenographers, and court personnel; and

(g)     The direct staff of, and any contract support personnel employed or retained by, any of the foregoing persons, provided that such persons are actively involved in assisting with the prosecution or defense of this Litigation.

4.     Each person given access to Confidential Material shall be advised that the Confidential Material is being disclosed pursuant to and subject to the terms of this Protective Order and may not be disclosed or used other than as set forth in this Protective Order.

(a)     Before any person described above in Paragraph 3(d) is given access to Confidential Material, that person must read and agree in writing, by signing an acknowledgement in the form attached hereto as Exhibit A, to be bound by the provisions of this Protective Order.

(b)     Before any other person described in Paragraphs 3(a), (e), (f) or (g), (except for the Court or any of its personnel) is shown any Confidential material, that person must be shown a copy of this Protective Order and instructed to honor its terms.

5.     Counsel for any Party wishing to use Confidential material to examine fact witnesses who are not currently employed by the producing Party, who were not employed by the producing Party at the time the material was created, or did not create or receive the material, shall deliver a copy of such material to designated counsel for the producing Party at least two business days and at least forty-eight hours prior to the start of the deposition.  If the producing Party objects to the use of the Confidential material at the deposition, the document may not be introduced, and its contents not disclosed, without leave of court.

6.     If counsel for any party to this action determines to file with, or submit to, the Court (other than at trial) (a) any Confidential matter, or (b) any pleading or other document making any reference to the specific content of Confidential matter, the filing party will seek leave to file the material under seal with the Court in accordance with current District Court procedures and requirements.   In addition, each party may redact certain confidential information pursuant to D. Kan. Rule 5.4.14 by covering that information, marking that portion

of the materials as "Redacted" and providing opposing counsel with a general written description of the information redacted.

7.    Upon final adjudication (including any appellate proceedings) of the claims at issue, the parties shall return to counsel for the producing party the Confidential matter produced by the other party and all copies thereof, or the parties may agree upon appropriate methods of destruction.    The parties need not return to counsel for the producing party or destroy any documents which were produced and not designated as Confidential matter.

8.    Notwithstanding the provisions of Paragraph 6, Counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product, even if such materials contain Confidential matter.    Any such archival copies that contain or constitute Confidential matter remain subject to this Protective Order. Any Confidential matter retained pursuant to this paragraph shall not be used for any purpose other than in connection with this action.

9.    If Confidential matter or information in the possession of a receiving party is subpoenaed by any court, administrative or legislative body, or any other person or organization purporting to have authority to subpoena such data or information, the party to whom the subpoena is directed shall not provide or otherwise disclose such documents or information without first notifying counsel for the producing party in writing in a reasonable amount of time of :  (1) the information and documentation which is requested for production in the subpoena; (2) the date on which compliance with the subpoena is requested; (3) the location at which compliance with the subpoena is requested; (4) the identity of the party serving the subpoena; and (5) the case name, jurisdiction and index, docket complaint, charge, civil action or other

identification number or other designation identifying the litigation, administrative proceeding or other proceeding in which the subpoena has been issued.

10.     To the extent not inconsistent with any other paragraph, this paragraph shall govern information that has been produced and inadvertently not initially designated "Confidential."  The initial failure to designate information in accordance with this Stipulation shall not preclude the producing party at a later date, from designating any information "Confidential."   The producing party may, by written notice to counsel of record for the receiving party, within thirty days of the discovery of the inadvertent disclosure of "Confidential" information, designate previously produced information as "Confidential" which it had inadvertently failed to designate as "Confidential."  Upon receipt of such notice, the receiving party shall promptly mark its copies of the material accordingly, shall thereafter treat the information as if it has been designated "Confidential," shall restrict the disclosure or use of such information to only those persons qualified pursuant to this Stipulation, and if such information has previously been disclosed to persons not qualified pursuant to this Stipulation, take reasonable steps to obtain all such previously disclosed information and advise such persons to treat the designated materials confidentially as though originally so designated.

11.     If a party wishes to use any confidential information in any affidavits, briefs, memorandum of law, oral argument, or other papers filed in this court in this litigation, such papers or transcript may be filed under seal only upon separate, specific motion and later order of the court.[1]  With respect to the disclosure of Confidential matter during argument, hearings or trial before the Court, the parties agree to advise the Court in advance of said disclosure so that the Court may take appropriate action to protect its confidentiality.

---

[1] *See Holland v. GMAC Mortgage Corp.*, No. 03-2666, 2004 WL 1534179, at *1-*2 (D. Kan. June 30, 2004) (citations omitted).

12.     In the event of a breach of this Stipulation, the parties shall be subject to all remedies recognized under law and equity.

13.     Consistent with the protective order guidelines posted on the court's website, the court's jurisdiction to enforce the provisions of this protective order shall be terminated upon the final disposition of this case, unless and until a party seeks leave to reopen the case to enforce the provisions of this protective order.

SO STIPULATED:                              SO STIPULATED:


/s/ George A. Hanson                        /s/ Michael L. Blumenthal
George A. Hanson                            Michael L. Blumenthal
Kansas Bar No. 16805                        Kansas Bar No. 18582
Stueve Siegel Hanson LLP                    Seyferth, Blumenthal & Harris LLC
460 Nichols Road, Suite 200                 300 Wyandotte, Suite 430
Kansas City, Missouri 64112                 Kansas City, MO  64104
hanson@stuevesiegel.com                     Telephone: 816-756-0700
                                            Facsimile:  816-756-3700
                                            E-mail:  mike@sbhlaw.com



/s/ Michele R. Fisher                       /s/ J. Timothy McDonald
Michele R. Fisher                           Hunter R. Hughes
Paul J. Lukas                               J. Timothy Mc Donald
Donald H. Nichols                           Ashley R. Hurst
Charles Frohmn                              Rogers & Hardin LLP
Nichols Kaster & Anderson, PLLP             2700 International Tower
4600 IDS Center, 80 South 8th Street        229 Peachtree Street NE
Minneapolis, Minnesota 55402                Atlanta, GA 30303

Admitted *pro hac vice*                     Admitted *pro hac vice*


Counsel for Plaintiffs                      Counsel for Defendants

          SO ORDERED this 14th day of May, 2008 at Kansas City, Kansas.

s/James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROXIE SIBLEY, et al.,     )
            )
       Plaintiffs,  )
            )
v.            )  Case No. 08-2063-KHV
            )
SPRINT NEXTEL CORPORATION, et al., )
            )
       Defendants. )

I hereby certify my understanding that Material designated "Confidential" is being provided to me pursuant to the terms and restrictions of the Protective Order entered in this action by the United States District Court for the District of Kansas on May 14, 2008 (the "Order"). I have read and understand the terms of the Order, I agree to be fully bound by it, and I hereby submit to the jurisdiction of the United States District Court for the District of Kansas for the purposes of enforcement of this Order.

Dated:_____  Signature:_____

                Name:_____